WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Matthew P. Goren

*Proposed Attorneys for the Parent Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------x
                                          :
In re                                     :
                                          :          Chapter 11
ALL YEAR HOLDINGS LIMITED                 :
                                          :          Case No. 21-12051 (MG)
        Debtor.                           :
                                          :
Fed. Tax Id. No. 98-1220822              :
-------------------------------------------------------x
```

### DECLARATION OF ASSAF RAVID PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 IN SUPPORT OF ALL YEAR HOLDINGS LIMITED'S CHAPTER 11 PETITION

I, Assaf Ravid, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.      On March 4, 2021, I was retained as the Chief Executive Officer and Chief Restructuring Officer (the "**CRO**") of All Year Holdings Limited (the "**Parent Debtor**" and, together with its direct and indirect subsidiaries, the "**Company**"). Prior to my current position at the Parent Debtor, I served as an official representative of the Parent Debtor's Series B, C, D and E bondholders. Before this position, I was the managing director of CGI Strategies ("**CGI**"), a domestic development real estate company focused on developing and operating multi-family units, condominiums, and commercial properties in California, the South East, and the North East.

In this capacity, I managed the operations of CGI's New York office by overseeing the full real estate development cycle from acquisitions, construction, sales and marketing, to financing and refinancing. Prior to this role, I served as a managing director of Aura Investments, Ltd, a global investment company specializing in real estate development and property management from 2007-2012. Before that I was a co-founder and attorney of Raveh-Ravid & Co., a leading Israeli law firm specializing in real estate and commercial law.

2.      On the date hereof (the "**Petition Date**"), the Parent Debtor filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). On February 22, 2021, Evergreen Gardens Mezz LLC ("**EGM**") commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. On September 14, 2021, Evergreen Gardens I LLC ("**EG I**") and Evergreen Gardens II LLC ("**EG II**", and together with EG I and EGM, the "**Evergreen Debtors**") each commenced a voluntary case with this Court under chapter 11 of the Bankruptcy Code. Each of the Evergreen Debtors is a wholly-owned, indirect subsidiary of the Parent Debtor. The Parent Debtor's Chapter 11 Case is being separately administered from the Evergreen Debtors' chapter 11 cases.[1]

3.      I am knowledgeable and familiar with the Parent Debtor's business and financial affairs. The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Company working under my supervision, or my opinion based upon experience, knowledge, and information concerning

---

[1] The Evergreen Debtors' chapter 11 cases are being jointly administered for procedural purposes only under the lead case, *In re Evergreen Gardens Mezz LLC, et al.,* Case No., 21-10335 (MG). The joint chapter 11 plan for the Evergreen Debtors was confirmed by order of the Bankruptcy Court dated November 5, 2021. The Evergreen Debtors' chapter 11 plan became effective and was substantially consummated on December 2, 2021.

WEIL:\98321995\1\12817.0005

the Parent Debtor and the Company.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4.      This Declaration is submitted pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**") to apprise the Court and other parties in interest of the circumstances that compelled the commencement of the Parent Debtor's voluntary case under the Bankruptcy Code (the "**Chapter 11 Case**") and in support of its chapter 11 petition.  I am authorized to submit this Declaration as an authorized signatory and representative of the Parent Debtor.

5.      This Declaration is intended to provide a summary overview of the Chapter 11 Case, and is organized as follows: Section I describes the Parent Debtor's business and operations; Section II describes the Parent Debtor's prepetition capital structure; Section III describes the key events that led to the commencement of the Chapter 11 Case; and Section IV sets forth the factual support for and identifies the attached schedules of information required by Local Bankruptcy Rule 1007-2.

## Preliminary Statement

6.      Founded in 2014 as a British Virgin Islands Company, the Parent Debtor operates as a holding company that, through its direct and indirect subsidiaries, focuses on the development, construction, acquisition, leasing and management of residential and commercial income producing properties in Brooklyn, New York.  The Company's portfolio includes approximately 1,648 residential units and 69 commercial units in Bushwick, Williamsburg, and Bedford-Stuyvesant, with an aggregate net book value in excess of $1.17 billion.  As of the Petition Date, the Company has approximately $1.6 billion of outstanding funded debt obligations comprised of

(i) approximately $800 million in bonds issued by the Parent Debtor,[2] and (ii) approximately $760 million in property level mortgage debt.

7.      Like many real estate businesses, the Parent Debtor struggled to service its significant debt burden as its revenues, derived primarily from residential and commercial rental income streams, were adversely impacted by the ongoing COVID-19 pandemic.  Despite the recent modest uptick in the New York real estate market, the Parent Debtor's current and projected revenues remain insufficient to service its debt.

8.      Faced with insolvency, the Parent Debtor engaged with various stakeholders throughout the Company's capital structure to identify a path forward to maximize the value of its assets, including opportunistically disposing of a number of underperforming assets and settling certain outstanding claims since my retention as CRO.  In connection with these efforts, the Evergreen Debtors previously commenced voluntary chapter 11 cases with this Court to consummate a value-maximizing sale of the Denizen, a luxury rental complex in Bushwick (the "**Denizen**"), for the benefit of their creditors.

9.      During this process, the Parent Debtor has also engaged in extensive and ongoing discussions with its bondholders and other constituents regarding potential transactions to restructure its other holdings.  Since April, 2021, the Parent Debtor and representatives of the Series B, C, D, and E bondholders (the "**Bondholders**"), have engaged in a robust and wide-ranging, public process to solicit interest and offers from potential third-party investors to either recapitalize the Parent Debtor or undertake an outright purchase of the Parent Debtor.  Through

---

[2] The Series C and Series E Bonds issued by the Parent Debtor are secured by assets of indirect subsidiaries of the Parent Debtor, but not by any assets of the Parent Debtor.

this process, the Parent Debtor garnered substantial interest and is now advanced in selecting and finalizing an exit transaction for the purchase of the equity of the Parent Debtor.

10.     During this period, the Parent Debtor's board of directors (the "**Board**") has overseen its restructuring with the protection of an agreement with the Sole Shareholder under which he cannot change the Board or take actions that would adversely impact the process.  The agreement with the Sole Shareholder, which expires at 11:59 pm (British Virgin Islands Time) on January 4, 2022, was reached after he previously took control of the Board and authorized payments satisfying obligations of the Parent Debtor that he also personally guaranteed.

11.     Unable to extend the arrangement with the Sole Shareholder past January 4, 2022 on acceptable terms, and facing bondholder threats to commence involuntary insolvency proceedings in Israel due to existing defaults, the Parent Debtor's restructuring process became exposed to potential insolvency litigation across multiple jurisdictions.  Finally, on December 13, 2021, the day before the Petition Date, the Parent Debtor became aware that a judgment in the amount of $37 million was entered on December 9, 2021 against the Parent Debtor in connection with certain confessions of judgment executed by the Sole Shareholder on behalf of the Parent Debtor (without receiving Board or other necessary approvals).  The threat that this judgment could be levied against assets of the Parent Debtor, including its cash, precluded the Parent Debtor from continuing its restructuring process outside of the protections available under chapter 11 of the Bankruptcy Code.  Accordingly, the Parent Debtor has commenced the Chapter 11 Case with the consent and support of the Trustee, on behalf of the Bondholders, to foster an orderly and value maximizing restructuring.

12.     The Parent Debtor is also considering filing an application with the Courts in the British Virgin Islands to assist in the implementation of a transaction through the Chapter 11 Case.

WEIL:\98321995\1\12817.0005

In addition, as the deeds of trust and other documents governing the Parent Debtor's relationship with the Bondholders are governed by Israeli law, it may also become necessary at some point for the Parent Debtor to commence a recognition proceeding in Israel to facilitate the Parent Debtor's overall restructuring.

13.     The Parent Debtor is not seeking any first day relief at this time and it currently has sufficient liquidity to manage its ongoing cash needs and the needs of its subsidiaries.  Rather, the Parent Debtor intends to use the period immediately following the Petition Date to continue its negotiations with the potential bidder and other stakeholders and to promptly propose to the Court a path forward for an efficient and value-maximizing restructuring.

## I.
## The Parent Debtor's Business and Operations

14.     The Parent Debtor was established and incorporated on September 17, 2014, as a BVI Business Company under the laws of the British Virgin Islands.  Principally all of the Parent Debtor's assets are located in the United States in New York.

15.     The Parent Debtor, through its subsidiaries, owns approximately 120 properties (including properties under development), consisting of approximately 1,648 residential units and 69 commercial units in Brooklyn, New York.  The Parent Debtor was founded by Mr. Yoel Goldman (the "**Sole Shareholder**"), who is the Parent Debtor's sole economic shareholder.  The Company's most valuable assets include, without limitation, the William Vale Hotel, a luxury hotel in Williamsburg, and recently included the Denizen,[3] a luxury rental complex in Bushwick. An organizational chart of the Parent Debtor and its direct and indirect subsidiaries, as of the Petition Date, is annexed hereto as **Exhibit A**.

---

[3] A sale of the Denizen was consummated when the Evergreen Debtors' chapter 11 plan became effective on December 2, 2021.

WEIL:\98321995\1\12817.0005

16.     Historically, the Parent Debtor received funds through debt issuances, asset sales, and the operations of its direct and indirect, non-debtor property level subsidiaries (the "**PropCos**").  More recently, because the Parent Debtor's last debt issuance was in 2019, its funds now largely consist of cash generated by asset sales and settlements with contract counterparties. The Parent Debtor uses these funds to pay various operating expenses and advances funds in the amount of approximately $200,000 on a monthly basis to the PropCos to fund any shortfalls of their property level mortgage debt.

17.     The Parent Debtor does not have its own employees.  Mr. Ephraim Diamond, the Associate Restructuring Officer (the "**ARO**"), and I are paid in advance by the Parent Debtor on a monthly basis for our consulting services.   In addition, six individuals, including the Chief Financial Officer, three Analysts and Associates, and two administrative assistants, are paid as individual contractors through Smart Management, Inc.[4]

## II.

## The Parent Debtor's and the Company's Capital Structure

18.     The Parent Debtor has approximately $800 million of outstanding funded debt comprised of (i) $461 million in borrowings on the Parent Debtor's Series C and E bonds secured by certain assets owned by indirect subsidiaries of the Parent Debtor;[5] and (ii) $338 million in

---

[4]Although typically paid in arrears on a bi-weekly basis, the six independent contractors have been paid in full for their services to be provided through and including December 16, 2021, in the total aggregate amount of approximately $32,000.

[5]Although the Series C and Series E Bonds were issued as secured debt, owing to (i) the consummation of the Evergreen Debtors' chapter 11 plan and (ii) the assignment of the mortgage pledged as collateral for the Series C Bonds to the Trustee, the Series C and Series E Bonds are currently not secured with respect to any assets of the Parent Debtor.

WEIL:\98321995\1\12817.0005

unsecured borrowings on the Parent Debtor's Series B and D bonds (collectively, the "**Bonds**").[6]
In addition, the Parent Debtor is aware of approximately $37 million in claims that the Sole
Shareholder purportedly incurred on behalf of the Parent Debtor and potentially certain of its
subsidiaries.  As of the Petition Date, the Parent Debtor had approximately $4.05 million in
unencumbered cash on hand to fund its operations, and the operations of the PropCos, during the
Chapter 11 Case.

19.    At issuance, the Series C Bonds were secured by a collateral assignment of a loan
and mortgage delivered by the Parent Debtor, which loan was secured by a mortgage delivered by
a subsidiary of the Parent Debtor that owns a property located in Brooklyn, New York, known as
the William Vale Hotel.  This loan and mortgage was subsequently assigned in March, 2021 by
the Parent Debtor to Mishmeret Trust Company Ltd., who serves as trustee with respect to the
aforementioned series of Bonds (in such capacity, the "**Trustee**").

20.    At issuance, the Series E Bonds were secured by a mortgage on one of the two
buildings comprising the Denizen, a property owned at the time by subsidiaries of the Parent
Debtor.  The sale of the Denizen pursuant to a plan of reorganization for the Evergreen Debtors
was approved by this Court on November 5, 2021, and substantially consummated on December
2, 2021.

21.    The Bonds were issued on the Tel Aviv Stock Exchange ("**TASE**") in New Israel
Shekel and the deeds of trust and other documents governing the relationship between the Parent
Debtor and the Bondholders are governed by Israeli law.  The Parent Debtor temporarily
suspended interest payments on its Series C and E Bonds and Series B and D Bonds in November,

---

[6] The Bonds were issued in New Israel Shekel, and these amounts approximate the equivalent of the outstanding
Bonds in United States Dollars based on the conversation rate as of December 1, 2021.

WEIL:\98321995\1\12817.0005

2020 and January, 2021, respectively.  On January 3, 2021, the four series of Bonds were de-listed and suspended from trading by TASE.

22.    In addition to the approximately $800 million in Bonds issued by the Parent Debtor, the Company has approximately $760 million in property level mortgage debt secured by the Parent Debtor's subsidiaries issued by various U.S. lenders.

**III.**

**The Need for Chapter 11 Relief and
The Events Leading to the Parent Debtor's Chapter 11 Filing**

23.    As previously stated, the ongoing COVID-19 pandemic severely impacted the Parent Debtor because it derives its revenues primarily from residential rental income streams.  As a result, the Parent Debtor began struggling to service its debt, which necessitated discussions with third parties regarding a path forward to prevent any additional leakage of value.

24.    Following the Parent Debtor's suspension of interest payments on the Series B and Series D Bonds, the Parent Debtor entered into an agreement with the Trustee, dated December 10, 2020, whereby the Parent Debtor, among other things, agreed to appoint Mr. Joel Biran as CEO and CRO and Mr. Ephraim Diamond as ARO.  The Board approved these retentions on December 30, 2020.  On February 19, 2021, Mr. Biran provided notice to the Parent Debtor that he would be resigning his positions as CEO and CRO, effective as of February 28, 2021.  On March 4, 2021, I was appointed by the Board of Directors as the CEO and CRO of the Parent Debtor.

25.    Upon the CRO and ARO appointments, the Parent Debtor, with the assistance of its advisors, quickly moved to engage with the Bondholders and other stakeholders in a cooperative process to explore potential restructuring alternatives for the Parent Debtor and its subsidiaries.  This has included a robust and wide-ranging public process to solicit interest and offers from

potential third-party investors to either recapitalize the Parent Debtor or undertake an outright purchase of the Parent Debtor.  The Parent Debtor has garnered substantial interest from potential investors and, with the consent of the Bondholders, is advanced in selecting and finalizing an exit transaction for the purchase of the equity of the Parent Debtor.

26.     Nevertheless, the Parent Debtor is faced with potential litigation in multiple jurisdictions in light of its insolvency and defaulted Bonds.  The commencement of cross-border litigation subject to differing legal regimes would undermine the Parent Debtor's ability to effectuate a holistic, value-maximizing restructuring transaction in an orderly manner.   On December 13, 2021, the Parent Debtor became aware of a $37 million judgment entered against it in New York State Supreme Court on December 9, 2021, resulting from outstanding confessions of judgment that the Sole Shareholder unilaterally entered into on behalf of the Parent Debtor without consultation of the Board.  The existence of this judgment poses a threat that the judgment creditor may attempt to attach a lien on the Company's assets, including its cash, thereby divesting the Company of its ability to continue its ongoing operations and to support the operations of the PropCos.

27.     In addition, following a prior attempt by the Sole Shareholder to take control of the Parent Debtor's Board, the Parent Debtor issued a single Class A voting share (the "**Class A Share**") to myself and the ARO entitling us to vote on the appointment or removal of the directors of the Parent Debtor, as the owner of each of its direct and indirect subsidiaries, but conferring no other voting rights.[7]  These voting rights are set to expire at 11:59 pm (British Virgin Islands Time) on January 4, 2022 unless the Sole Shareholder agrees to amend the organizational documents of

---

[7] The Class A Share is entitled to $1.00 upon the liquidation of the Parent Debtor but confers no rights to participate in any dividend or other distribution of the Parent Debtor at any time.

the Parent Debtor to extend the voting rights associated with the Class A Share.[8]  The expiration

of these voting rights would deprive the Bondholders and other parties in interest of their ability

to continue their discussions and finalize an exit transaction for the Parent Debtor.

28.    To preserve the integrity of its restructuring process, the Parent Debtor was forced

to commence this Chapter 11 Case to safeguard its assets for the benefit of its creditors and other

parties in interest.  In light of the above, the Parent Debtor is also considering filing an application

with the Courts in the British Virgin Islands to assist in the implementation of a transaction through

the Chapter 11 Case.  In addition, as the deeds of trust and other documents governing the Parent

Debtor's relationship with its Bondholders are governed by Israeli law, it may also become

necessary for the Parent Debtor to commence a recognition proceeding in Israel to assist in the

implementation of the Parent Debtor's overall restructuring.

29.    As set forth above, the Parent Debtor is not seeking any first day relief.  The Parent

Debtor is focused on continuing its discussions with its Bondholders and promptly presenting to

the Court a restructuring solution that maximizes value for its creditors and estate.

## IV.

## Information Required by Local Bankruptcy Rule 1007-2

30.    In accordance with Local Bankruptcy Rule 1007-2, the schedules attached hereto

provide certain information related to the Parent Debtor.

31.    Pursuant to Local Bankruptcy Rule 1007-2(a)(3), **Schedule 1** hereto lists the names

and addresses of the members of, and attorneys for, any committee organized prior to the Petition

---

[8] In addition, the Sole Shareholder was replaced as the managing member of certain of the PropCos and was removed
as a signatory from all accounts of the Parent Debtor and the PropCos.

Date and a brief description of the circumstances surrounding the formation of the committee and the date of its formation.

32.     Pursuant to Local Bankruptcy Rule 1007-2(a)(4), **Schedule 2** hereto lists the following information with respect to each of the holders of the Parent Debtor's twenty (20) largest unsecured claims, excluding claims of insiders: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), and telephone number; the name(s) of persons(s) familiar with the Parent Debtor's accounts, the approximate amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed, or partially secured.

33.     Pursuant to Local Bankruptcy Rule 1007-2(a)(5), **Schedule 3** hereto provides the following information with respect to each of the holders of the five (5) largest secured claims against the Parent Debtor: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), and telephone number; the approximate amount of the claim; a brief description of the collateral securing the claim; an estimate of the value of the collateral, and whether the claim or lien is disputed.

34.     Pursuant to Local Bankruptcy Rule 1007-2(a)(6), **Schedule 4** hereto provides a summary of the (unaudited) assets and liabilities for the Parent Debtor.

35.     Pursuant to Local Bankruptcy Rule 1007-2(a)(7), **Schedule 5** hereto provides the following information: the number and classes of shares of stock, debentures, and other securities of the Parent Debtor that are publicly held and the number of record holders thereof; and the number and classes of shares of stock, debentures, and other securities of the Parent Debtor that are held by the Parent Debtor's directors and officers, and the amounts so held.

36.     Pursuant to Local Bankruptcy Rule 1007-2(a)(8), **Schedule 6** hereto provides a list of all of the Parent Debtor's property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, secured creditor, or agent for any such entity, giving the name, address, and telephone number of each such entity and the location of the court in which any proceeding relating thereto is pending.

37.     Pursuant to Local Bankruptcy Rule 1007-2(a)(9), **Schedule 7** hereto provides a list of the premises owned, leased, or held under other arrangement from which the Parent Debtor operates its business.

38.     Pursuant to Local Bankruptcy Rule 1007-2(a)(10), **Schedule 8** hereto provides the location of the Parent Debtor's substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Parent Debtor outside the territorial limits of the United States.

39.     Pursuant to Local Bankruptcy Rule 1007-2(a)(11), **Schedule 9** hereto provides a list of the nature and present status of each action or proceeding, pending or threatened, against the Parent Debtor or its property where a judgment against the Parent Debtor or a seizure of its property may be imminent.

40.     Pursuant to Local Bankruptcy Rule 1007-2(a)(12), **Schedule 10** hereto provides a list of the names of the individuals who comprise the Parent Debtor's existing senior management, their tenure with the Parent Debtor, and a brief summary of their relevant responsibilities and experience.

41.     Pursuant to Local Bankruptcy Rule 1007-2(b)(1)-(2)(A), **Schedule 11** hereto provides the estimated amount of weekly payroll to the Parent Debtor's employees (not including officers, directors, stockholders, and partners) and the estimated amount to be paid to officers,

13

stockholders, directors, members of any partnerships, and financial and business consultants retained by the Parent Debtor for the thirty (30) day period following the filing of the Parent Debtor's chapter 11 petition as the Parent Debtor intends to continue to operate its business.

42.     Pursuant to Local Bankruptcy Rule 1007-2(b)(3), **Schedule 12** hereto provides, for the thirty (30) day period following the filing of the chapter 11 petition, a list of estimated cash receipts and disbursements, net cash gain or loss, obligations, and receivables expected to accrue that remain unpaid, other than professional fees.

## V.

## <u>Conclusion</u>

43.     The above illustrates the factors that have precipitated the commencement of the Chapter 11 Case and the need for the Parent Debtor to restructure its financial affairs.

14

I declare under penalty of perjury that, to the best of my knowledge and after reasonable

inquiry, the foregoing is true and correct.

Dated: December 14, 2021
      New York, New York

                                                       _____
                                                        Assaf Ravid
                                                        Chief Executive Officer and
                                                        Chief Restructuring Officer,
                                                        All Year Holdings Limited

## Schedule 1

### Committees

Pursuant to Local Bankruptcy Rule 1007-2(a)(3), the Parent Debtor understands that Chapman and Cutler LLP, Gornitzky & Co., and Amir Flamer & Co. have been retained by Mishmeret Trust  Company Ltd., in its capacity as Trustee for those certain Series B, C, D, and E bonds issued by the Parent Debtor.  The attorneys for the Trustee are:

Chapman and Cutler LLP
1270 Avenue of the Americas
30th Floor
New York, NY 10020-1708
Facsimile:    212.697.7210
Attention:    Michael Friedman, Esq.

Gornitzky & Co.
HaHarash Street 20
Tel Aviv, Israel 6761310
Facsimile:    972-3-5606555
Attention:    Ofer Tzur

Amir Flamer & Co.
Mezada 7, B.S.R Tower 4 (36th floor)
Bnei Brak, Israel 5126112
Facsimile:    972-3-3730650
Attention:    Evyatar Kramer, Adv.

In addition, to the best of the Parent Debtor's knowledge, belief, and understanding, as of the Petition Date, three individual bondholder representatives have been appointed to represent the various interests of holders of the Series B, C, D, and E bonds.

### Schedule 2

**Consolidated List of 20 Largest Unsecured Claims (Excluding Insiders)[1]**

Pursuant to Local Bankruptcy Rule 1007-2(a)(4), the following is a list of creditors holding, as of the Petition Date, the twenty (20) largest, unsecured claims against the Parent Debtor, excluding claims of insiders as defined in section 101 of the Bankruptcy Code.

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim[2] |
| 1.  Mishmeret Trust Company Ltd. Of 48 Derech Menachem Begin Tel Aviv-Yafo, Israel 6618003 | Attn: Michael Friedman, Esq. Telephone: +1 212 655 2508 Fax: +1 212 697 7210 Email: friedman@chapman.com | Series D Debentures | | | | ILS 562,912,019 ($181,525,965) |
| 2.  Mishmeret Trust Company Ltd. Of 48 Derech Menachem Begin Tel Aviv-Yafo, Israel 6618003 | Attn: Michael Friedman, Esq. Telephone: +1 212 655 2508 Fax: +1 212 697 7210 Email: friedman@chapman.com | Series B Debentures | | | | ILS 440,161,597 ($141,941,824) |
| 3.  Mishmeret Trust Company Ltd. Of 48 Derech Menachem Begin Tel Aviv-Yafo, Israel 6618003 | Attn: Michael Friedman, Esq. Telephone: +1 212 655 2508 Fax: +1 212 697 7210 Email: friedman@chapman.com | Series E Debentures | | | | ILS 106,433,061[3] ($34,322,174) |
| 4.  Mishmeret Trust Company Ltd. Of 48 Derech Menachem Begin Tel Aviv-Yafo, Israel 6618003 | Attn: Michael Friedman, Esq. Telephone: +1 212 655 2508 Fax: +1 212 697 7210 Email: friedman@chapman.com | Series C Debentures | | | | ILS 641,606,871[4] ($206,903,215) |

---

[1] The information herein shall not constitute an admission of liability by, nor is it binding on, the Parent Debtor. All claims are subject to customary offsets, rebates, discounts, reconciliations, credits, and adjustments, which are not reflected on this schedule.

[2] Unsecured claim amounts for Mishmeret Trust Company Ltd. are as of December 13, 2021 and were converted from ILS to USD on the same date.

[3] Pursuant to the Evergreen Debtors' joint chapter 11 plan, which became effective and was substantially consummated on December 2, 2021, the holders of the allowed Series E Bond claims received a distribution from EG II on account of such allowed claims. The claim amount provided herein reflects the Series E Bondholders' deficiency claim against the Parent Debtor, as a co-obligor under the Series E Bonds. The Series E Bondholders, however, have indicated that they may assert a claim against the Parent Debtor for all principal and unpaid interest on the Series E Bonds.

[4] The Series C Debentures were secured by a mortgage delivered by a subsidiary of the Parent Debtor, which jointly owns a property located in Brooklyn, New York, known as the William Vale. The mortgage secured by the William Vale was made in favor of the Parent Debtor and further secured by a collateral assignment of such mortgage in favor of the Series C Debentures which was subsequently assigned in March, 2021 to Mishmeret Trust Company Ltd., as trustee for the Series C Debentures.

| | | | | | | |
|---|---|---|---|---|---|---|
| 5. | Downtown Capital Partners, LLC<br>360 Hamilton Avenue, Suite 1110<br>White Plains, New York 10601 | Attn.: Frank Reddick<br>Phone: +1 310 728 3204<br>Fax: +1  310 229 1001<br>Email: freddick@akingump.com | Preferred Equity<br>Guaranty | Contingent,<br>Unliquidated,<br>and Disputed | | $56,900,000 |
| 6. | DCP Kings Point LLC<br>360 Hamilton Avenue, Suite 1110<br>White Plains, New York 10601 | Attn.: Frank Reddick<br>Phone: +1 310 728 3204<br>Fax: +1  310 229 1001<br>Email: freddick@akingump.com | Mezzanine Loan<br>Guaranty | Contingent,<br>Unliquidated,<br>and Disputed | | $3,600,000 |
| 7. | Taz Partners LLC<br>22 Pleasant Ridge Road<br>Spring Valley, New York 10977 | Attn: Ira Lipsius<br>Phone: +1 212 981 8442<br>Email: iral@lipsiuslaw.com | Confession of<br>Judgment | Contingent,<br>Unliquidated,<br>and Disputed | | $37,870,000[5] |
| 8. | MREF REIT Lender 9 LLC<br>60 Columbus Circle, 20th Floor<br> New York, NY 10023 | Attn.: Kizzy L. Jarashow<br>Phone: +1 212 459 7338<br>Email: kjarashow@goodwinlaw.com | Claims Related to<br>Mezzanine Loan | Contingent,<br>Unliquidated,<br>and Disputed | | Unknown |
| 9. | Blank Rome LLP<br>1271 Avenue of the Americas<br>New York, New York 10020 | Attn.:  Stephen E. Tisman<br>Phone:  +1 212 885 5581<br>Email:  stisman@blankrome.com | Legal Fees | Unliquidated | | Unknown |

---

[5] Prior to the date hereof, a confession of judgment in favor of Taz Partners LLC was unilaterally entered into by the Sole Shareholder on behalf of the Parent Debtor.  On December 9, 2021, a judgment in the amount of $37,870,000 in connection with that certain confession of judgment was entered by the clerk for the Kings County Supreme Count.

### Schedule 3

### List of Holders of Five Largest Secured Claims

Pursuant to Local Bankruptcy Rule 1007-2(a)(5), to the best of the Parent Debtor's knowledge, belief, and understanding, the following chart lists the creditors holding, as of the Petition Date, the five (5) largest secured, non-contingent claims against the Parent Debtor, excluding claims of insiders as defined in section 101 of the Bankruptcy Code.

| No. | Creditor | Contact Mailing Address, Telephone Number/Fax Number, Email | Approximate Amount of Claim | Type of Collateral |
|---|---|---|---|---|
| 1. | Pilgrim Chester Lender, LLC | Gary Katz Downtown Capital Partners, LLC 360 Hamilton Ave., Suite 1110 White Plains, NY 10601 Main: 914-683-9610 Direct: 914-683-9613 gkatz@downtownlp.com<br><br>Joseph E. Kraus, Esq. Cooperman Lester Miller Carus LLP 1129 Northern Boulevard, Suite 402 Manhasset, New York 11030 Direct Dial: (516) 365-1400 ext. 114 Fax: (516) 365-1404 jkraus@clmclaw.com | $10,000,000.00 | Greens at Chester LLC ("**Chester PropCo**"), an indirect subsidiary of the Parent Debtor, is a borrower under the loan (the "**Chester PropCo Loan**"). The Parent Debtor's equity interests in its direct subsidiary, Chester Holdings NY LLC ("**Chester OpCo**"), which is a member of Chester PropCo, are pledged as collateral under the Chester PropCo Loan. |

## Schedule 4

## All Year Holdings Limited Unaudited Consolidated Balance Sheet

Pursuant to Local Bankruptcy Rule 1007-2(a)(6), the following provides the most recently available summary (unaudited) for the assets and liabilities for the Parent Debtor on an unconsolidated basis.

|  | As of June 30 |
|---|---|
|  | 2020 |
|  | USD thousands (Unaudited) |
| **Assets** | |
| **Current assets** | |
| Cash and cash equivalents | |
|   Held by the Company | 47 |
|   Held by a subsidiary for the parent company | - |
| Other accounts receivable | 2,813 |
| Loans for financing of real estate | 5,693 |
| Investment property held for sale | 69,939 |
|  | 78,492 |
| **Non-current assets** | |
| Restricted and designated deposits | 9,357 |
| Equity-accounted investments | 27,042 |
| Financial assets | 22,964 |
| Investment in subsidiaries | 901,195 |
|  | 960,558 |
| **Total assets** | 1,039,050 |
| **Liabilities and Equity** | |
| **Current liabilities** | |
| Other accounts payable | 11,975 |
| Current maturities of debentures | 45,944 |
| Payables in respect of controlling shareholder | 1,150 |
|  | 59,069 |
| **Non-current liabilities** | |
| First-lien debentures | 379,480 |
| Debentures | 216,737 |
|  | 596,217 |
| **Equity** | |
| Share capital | |
| Capital reserves | 100,655 |
| Retained earnings | 283,109 |
|  | 383,764 |
| **Total equity and liabilities** | 1,039,050 |

## Schedule 5

**Publicly Held Securities**

Pursuant to Local Bankruptcy Rule 1007-2(a)(7), the Parent Debtor does not have any publicly traded stock, debentures, or securities traded in United States markets.

The following securities issued by the Parent Debtor have been suspended from trading on the Tel Aviv Stock Exchange as of January 3, 2021:

| | | |
|---|---|---|
| Series B Debentures | ISIN: IL0011397812 | Symbol: ALYR.B2 |
| Series C Debentures | ISIN: IL0011401366 | Symbol: ALYR.B3 |
| Series D Debentures | ISIN: IL0011412744 | Symbol: ALYR.B4 |
| Series E Debentures | ISIN: IL0011433047 | Symbol: ALYR.B5 |

## Schedule 6

**Parent Debtor's Property Not in the Parent Debtor's Possession**

In response to the information requested in Local Bankruptcy Rule 1007-2(a)(8), to the best of the Parent Debtor's knowledge, belief, and understanding, as of the Petition Date, the Parent Debtor does not have any property that is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, secured creditor, or agent for any such entity.

## Schedule 7

Pursuant to Local Bankruptcy Rule 1007-2(a)(9), the following lists the property or premises owned, leased, or held under other arrangement from which the Parent Debtor operates its businesses.  In addition to the properties listed below, the Parent Debtor through its direct and indirect non-debtor subsidiaries holds, owns, and/or leases a large portfolio of residential and commercial real estate properties in Brooklyn, New York.  None of these properties are held, owned, and/or leased directly by the Parent Debtor and the entities that hold, own, and/or lease such properties are not currently debtors in the Chapter 11 Case.

### Leased Property

| Debtor | Street Address | City | State | Zip Code | Country |
|---|---|---|---|---|---|
| All Year Holdings Limited | 12 Spencer Street, 3rd Floor[6] | Brooklyn | NY | 11205 | USA |

### Owned Property

| Debtor | Street Address | City | State | Zip Code | Country |
|---|---|---|---|---|---|
| None | | | | | |

---

[6] The 12 Spencer Street property is also referred to as 725 Bedford Avenue, which is the address of the alternate entrance to the building.

## Schedule 8

**Location of Parent Debtor's Assets, Books, and Records**

Pursuant to Local Bankruptcy Rule 1007-2(a)(10), the following lists the locations of the Parent Debtor's substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Parent Debtor outside the territorial limits of the United States.

### Location of Parent Debtor's Substantial Assets

Substantially all of the Parent Debtor's assets are located in New York.

### Books and Records

The Parent Debtor's books and records are located at 12 Spencer Street, 3rd Floor, Brooklyn, NY 11205.

### Parent Debtor's Assets Outside the United States

The Parent Debtor maintains approximately $15,000 in cash held at two bank accounts with the Israel Discount Bank, located in Tel Aviv-Yafo, Israel.

## Schedule 9

### Litigation

Pursuant to Local Bankruptcy Rule 1007-2(a)(11), to the best of the Parent Debtor's knowledge, belief, and understanding, the following is a list of the nature and present status of each action or proceeding, pending or threatened, against the Parent Debtor or its properties where a judgment against the Parent Debtor or a seizure of its property may be imminent.

| Action or Proceeding | Nature of Proceeding | Status of Proceeding |
|---|---|---|
| Lawsuit filed in Tel Aviv brought by Ardon Wiener of Chestnut Holdings | Securities law | Pending |
| Israeli Class Action Lawsuit regarding Financial Statements<br><br>*Gilui Naot v. All Year Holdings Limited & et al.* | Securities Litigation | Pending |
| All Year Holdings Limited individually and on behalf of Lofts on Devoe LLC v. Abraham Greenhut, et. al. | Real Property - Quiet Title | Pre-Request for Judicial Intervention |
| Taz Partners LLC v. Yoel Goldman and All Year Holdings Limited | Confession of Judgment | Pending at Kings County Supreme Court |

10

## Schedule 10

### Senior Management

Pursuant to Local Bankruptcy Rule 1007-2(a)(12), the following provides the names of the individuals who comprise the Parent Debtor's existing senior management, a description of their tenure with the Parent Debtor, and a brief summary of their relevant responsibilities and experience.

| Name & Position | Responsibilities & Experience |
|---|---|
| **Assaf Ravid**<br><br>*Chief Executive Officer and Chief Restructuring Officer* | On March 4, 2021, Mr. Ravid was retained as the Chief Executive Officer and Chief Restructuring Officer of All Year Holdings.<br><br>Mr. Ravid has been the managing director of CGI Real Estate Investment Strategies, a domestic developmental real estate company, since 2013. Prior to this, he served as a managing director of Aura Investments, Ltd, a global investment company specializing in real estate development and property management from 2007-2012. Mr. Ravid also has prior experience as an attorney of Yehudan Raveh & Co., a leading Israeli law firm specializing in commercial law, from 2005-2007, and as an attorney at Danziger, Klagsbald, Rosen & Co., an Israeli law firm specializing in antitrust, trade regulations and commercial law from 2004-2005. |
| **Ephraim Diamond**<br><br>*Associate Restructuring Officer* | In January 2021, Mr. Diamond was appointed as Associate Restructuring Officer of All Year Holdings. Mr. Diamond's responsibilities include assisting the board of directors with the restructuring of All Year.<br><br>Mr. Diamond is the founder and managing member of Arbel Capital Advisors LLC, an advisory firm providing restructuring and bankruptcy advisory and fiduciary services for the real estate, investable litigation and litigation funding industries. Mr. Diamond has approximately 20 years of experience in bankruptcy and restructuring. |
| **Yizhar Shimoni**<br><br>*Chief Financial Officer* | Yizhar Shimoni has served as Chief Financial Officer of All Year Holdings since 2016.<br><br>Prior to joining the Company, Mr. Shimoni served as Secretary and Director at U.S. Real Estate Representation Ltd., representing various United States real estate companies in Israel. Prior to that, Mr. Shimoni was a Certified Public Accountant with Amit Halfon, a leading accounting firm in Israel. |

## Schedule 11

### Payroll

Pursuant to Local Bankruptcy Rule 1007-2(b)(1)-(2)(A) and (C), the following provides the estimated amount of weekly payroll to the Parent Debtor's employees (not including officers, directors, and stockholders) and the estimated amount to be paid to officers, stockholders, directors, and financial and business consultants retained by the Parent Debtor for the 30-day period following the filing of the chapter 11 petition.

| | |
|---|---|
| **Payments to Employees (Not Including Officers, Directors, and Stockholders)** | $37,000 |
| **Payments to Officers, Stockholders, and Directors** | $209,000 |
| **Payments to Financial and Business Consultants** | $0[7] |

---

[7] Pursuant to the retention applications filed, or to be filed, by these professionals, and the applicable Bankruptcy Rules and Local Bankruptcy Rules, the Parent Debtor will not make any payments in the 30-day period following the filing of the chapter 11 petition.

## Schedule 12

**Cash Receipts and Disbursements,
Net Cash Gain or Loss, Unpaid Obligations and Receivables**

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides, for the 30-day period following the filing of the chapter 11 petition, the estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

| | |
|---|---|
| **Cash Receipts** | $400,000.00 |
| **Cash Disbursements** | $450,000.00 |
| **Net Cash Loss** | $(50,000.00) |
| **Unpaid Obligations** | $6,780,504.13 |
| **Uncollected Receivables** | $15,548,491.39 |

# EXHIBIT A

# All Year Holdings Limited (BVI) Organizational Chart of the Corporate Group:



# All Year Holdings Limited (BVI) Organizational Chart of the Corporate Group:



# All Year Holdings Limited (BVI) Organizational Chart of the Corporate Group:



# All Year Holdings Limited (BVI) Organizational Chart of the Corporate Group:

