**Davis Polk**

Elliot Moskowitz
+1 212 450 4241
elliot.moskowitz@davispolk.com

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
davispolk.com

January 7, 2022

Honorable Martin Glenn
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

Re: *In re All Year Holdings Limited*, Chapter 11 Case No. 21-12051 (MG)

Dear Judge Glenn:

We represent Mr. Yoel Goldman, the Sole Shareholder of the Parent Debtor and a creditor in this chapter 11 case.[1] We write to provide the Court with Mr. Goldman's perspective regarding certain matters set forth in the letter submitted to the Court by the Parent Debtor on December 21, 2021 (Dkt. #13, the "Debtor's Letter").

Mr. Goldman is a renowned real estate developer who has built or acquired more than 150 residential and commercial properties located primarily in Brooklyn, New York, including The William Vale Hotel and the Denizen Bushwick apartment complex. These properties are currently owned in whole or in part by the Parent Debtor, a BVI holding company Mr. Goldman founded in 2014.[2] As set forth in the First Day Declaration, the Parent Debtor and its subsidiaries were severely impacted by the ongoing pandemic, which exacerbated existing pressures created by significant changes in New York State's rent regulations.

As noted in the Debtor's Letter, Mr. Goldman voluntarily relinquished day-to-day control of the Parent Debtor to the Bondholders by consenting to the issuance of the Class A Share on January 4, 2021. Although Mr. Goldman consented to multiple extensions of the Class A Share since that time, the Class A Share was never intended to be issued in perpetuity. Moreover, in agreeing to issue the Class A Share, Mr. Goldman received assurances that the result would be a collaborative process where he would work together with the Bondholders to achieve a value-maximizing solution to the Parent Debtor's challenges. Instead, the Bondholders ultimately exercised complete control over the Parent Debtor's affairs, excluded Mr. Goldman from critical decisions and strategic initiatives, and were uninterested in any proposal in which he was involved. At the same time, Mr. Goldman has grown concerned about actions the Bondholders have taken, and in particular the chaotic and thus far unsuccessful marketing process they have conducted in Israel with respect to the Parent Debtor's assets. Mr. Goldman was thus not inclined to extend the Class A Share beyond its expiration date on January 4, 2022. However, Mr. Goldman was open to discussions regarding a further extension on mutually acceptable terms, and expressed as much to the Parent Debtor.

The Debtor's Letter suggests that prior to the commencement of this chapter 11 case, the Parent Debtor's attempts to seek an extension were rebuffed. In reality, the Parent Debtor's representatives and Board and Mr. Goldman were engaged in active discussions regarding a consensual extension, had exchanged multiple versions of a term sheet, and, from Mr. Goldman's vantage, the parties were close to an agreement. Mr. Goldman was not aware that the Parent Debtor was secretly planning to seek the

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Debtors' Letter (as defined below).

[2] As the Court knows, the Denizen complex was recently sold pursuant to a chapter 11 proceeding before this Court.

**Davis Polk**

appointment of joint provisional liquidators in the BVI Court, and to have those liquidators cede all authority over the enterprise right back to the Parent Debtor and its professionals.  Rather, the Parent Debtor took this step without providing any notice or opportunity to be heard in a BVI proceeding to either Mr. Goldman or (to Mr. Goldman's knowledge) any party other than the Bondholders.  Even assuming this maneuver is legal—something Mr. Goldman continues to review and as to which he reserves all of his rights—the net effect is that the Bondholders, rather than Mr. Goldman or a chapter 11 trustee, will continue to exercise complete control over the Parent Debtor and its entire enterprise.  Indeed, Mr. Goldman believes that the Parent Debtor took these steps because the Bondholders wanted the CROs they had previously installed to continue to control the enterprise, rather than seek appointment of a neutral chapter 11 trustee who they could not control.

Mr. Goldman well understands that the Bondholders have made allegations about him and do not want him to be associated with the Parent Debtor or the marketing of its assets.[3]  For his part, Mr. Goldman believes that the Bondholders and their designees have made significant errors while in control of the Parent Debtor, including rejecting (or failing even to consider) proposals by Mr. Goldman that would have maximized or preserved value, selling assets at fire-sale prices, and recklessly neglecting or causing injury to Mr. Goldman's interests along the way (e.g., by unilaterally restructuring certain of the Parent Debtor's debts without even attempting to address Mr. Goldman's personal guarantees).

Now that the Parent Debtor finds itself in chapter 11, Mr. Goldman believes it is in the interest of all stakeholders that a stable and transparent marketing process be completed under the supervision of this Court.  By contrast, the marketing process the Bondholders have undertaken in Israel has been shrouded in secrecy, with periodic disclosures posted in Hebrew, proposed deals voted upon and then withdrawn, and even a lawsuit from a supposed buyer accusing the Parent Debtor and Bondholders of breaching their contractual obligations.  The end result has contributed to the Parent Debtor's chapter 11 filing in this Court.

Mr. Goldman is hopeful that the chapter 11 process triggered by the Parent Debtor's filing will look markedly different from the Israel-based process that preceded the commencement of this case.  If the Bondholders and their designees are to keep control of the Parent Debtor, Mr. Goldman believes it is important that they welcome ideas and proposals from any party-in-interest, including Mr. Goldman, who is deeply familiar with these assets and the many partners and lenders in scores of partnerships involving the Parent Debtor.  In particular, Mr. Goldman believes that the Parent Debtor should be required to deliver regular status reports to the creditor body and this Court; that any parties interested in the Parent Debtor's assets be afforded a fair opportunity to obtain information and make proposals regarding their outcome; and that the process otherwise be conducted as a chapter 11 marketing process ordinarily would proceed before this Court.

Notwithstanding the allegations that have been made against him, Mr. Goldman intends to engage in good faith with all parties-in-interest for the benefit of the estate.

We are available to discuss these matters further at the upcoming initial case conference before this Court scheduled for January 10, 2022.

---

[3] The Debtor's Letter references a $37 million confession of judgment recently filed by a creditor of the Parent Debtor.  The Debtor's Letter neglects to mention that this creditor has for months been engaged with the Parent Debtor and Bondholders regarding a comprehensive transaction for the sale of the Parent Debtor's assets.  On information and belief, the Parent Debtor's representatives were aware of the existence of the confession of judgment long before it was filed on December 9, 2021.

**Davis Polk**

Respectfully submitted,

<u>/s/ Elliot Moskowitz</u>
Elliot Moskowitz

**Via Email and ECF**

January 7, 2022　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　3