21-12051-mg   Doc 71   Filed 04/07/22   Entered 04/07/22 16:01:20   Main Document
Pg 1 of 41

Presentment Date and Time:  April 15, 2022 at 10:00 a.m. (Eastern Time)
Objection Deadline:  April 14, 2022 at 4:00 p.m. (Eastern Time)
Hearing Date and Time (Only if Objections Filed):  To Be Determined

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Jacqueline Marcus
Matthew P. Goren

*Attorneys for the Parent Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------x
                                        :
In re                                   :
                                        :
ALL YEAR HOLDINGS LIMITED,              :
                                        :
        Debtor.¹                        :
                                        :
Fed. Tax Id. No. 98-1220822             :
-------------------------------------------------------x
```

Chapter 11

Case No. 21-12051 (MG)

**NOTICE OF PRESENTMENT OF APPLICATION PURSUANT**
**TO 11 U.S.C. §§ 327(a) AND 328, FED. R. BANKR. P. 2014(a) AND 2016,**
**AND L.B.R. 2014-1 AND 2016-1 FOR AUTHORITY TO**
**RETAIN AND EMPLOY CFGI AS FINANCIAL ADVISOR FOR**
**THE PARENT DEBTOR *NUNC PRO TUNC* TO MARCH 22, 2022**

**PLEASE TAKE NOTICE** that All Year Holdings Ltd. (the "**Parent Debtor**"), as

debtor and debtor in possession in the above-captioned chapter 11 case, will present the annexed

application (the "**Application**"),² pursuant to sections 327(a) and 328 of title 11 of the United

States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), for

entry of an order authorizing the Parent Debtor to retain and employ CFGI, as financial advisor

for the Parent Debtor, *nunc pro tunc* to March 22, 2022, all as more fully set forth in the

Application, to the Honorable Martin Glenn, Chief United States Bankruptcy Judge for the

---

¹ The Parent Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

² Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Application

Southern District of New York, for signature on **April 15, 2022 at 10:00 a.m. (Prevailing Eastern Time)**.

      **PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Application shall be in writing, shall conform to the Bankruptcy Rules and the Local Bankruptcy Rules, shall be filed with the Bankruptcy Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and

(ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with two single-sided hard copies delivered to the Judge's Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399, the Bankruptcy Rules, and the Local Bankruptcy Rules, so as to be filed and served upon (i) William K. Harrington, the U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq. and Shara Cornell, Esq.), (ii) the Parent Debtor's top twenty (20) unsecured creditors, (iii) the Internal Revenue Service, (iv) the United States Attorney's Office for the Southern District of New York, (v) counsel to  Mishmeret Trust Company Ltd., as Trustee for the BVI Bondholders, Chapman & Cutler LLP, 1270 Sixth Avenue, New York, New York 10020 (Attn: Michael Friedman, Esq., Stephen R. Tetro II, Esq., and Aaron Krieger, Esq.), and (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**") by no later than **April 14, 2022 at 4:00 p.m. (Prevailing Eastern Time) (**the "**Objection Deadline**").

      **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the above referenced Application, the Parent Debtor may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Application, which order may be entered without further notice or opportunity to be heard.

WEIL:\98560005\6\12817.0005

**PLEASE TAKE FURTHER NOTICE** that, if an objection is timely filed and served with respect to the Application, a hearing (the "**Hearing**") will be held to consider the Application before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 523, One Bowling Green, New York, NY 10004-1408 on a date to be announced.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE that, due to the COVID-19 pandemic, the Hearing, if held, will be conducted using Zoom for Government. Parties should not appear in person and those wishing to appear or participate at the Hearing (whether "live" or "listen only") must make an electronic appearance through the Court's website prior to 4:00 p.m. (Prevailing Eastern Time) on the day prior to the Hearing. Instructions for making an eCourt Appearance and additional information on the Court's Zoom procedures can be found at http://www.nysb.uscourts.gov/content/judge-martin-glenn.**

WEIL:\98560005\6\12817.0005

Dated: April 7, 2022
New York, New York

/s/ *Matthew P. Goren*

WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Jacqueline Marcus
Matthew P. Goren

*Attorneys for the Parent Debtor*

WEIL:\98560005\6\12817.0005

WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary Holtzer
Jacqueline Marcus
Matthew P. Goren

*Attorneys for the Parent Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
**In re**                                            :
                                                     :
**ALL YEAR HOLDINGS LIMITED,**        :          **Chapter 11**
                                                     :
          **Debtor.**[1]                        :          **Case No. 21-12051 (MG)**
                                                     :
**Fed. Tax. Id. No. 98-1220822**      :
-------------------------------------------------------x

**APPLICATION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328,**
**FED. R. BANKR. P. 2014(a) AND 2016, AND L.B.R. 2014-1**
**AND 2016-1 FOR AUTHORITY TO RETAIN AND EMPLOY**
**CFGI AS FINANCIAL ADVISOR FOR THE PARENT DEBTOR**
***NUNC PRO TUNC* TO MARCH 22, 2022**

TO THE HONORABLE MARTIN GLENN,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

  All Year Holdings Limited (the "**Parent Debtor**"), as debtor and debtor in possession in the

above-captioned chapter 11 case (the "**Chapter 11 Case**"), respectfully represents as follows in

support of this application (the "**Application**"):

<u>**Background**</u>

  1.  On December 14, 2021 (the "**Petition Date**"), the Parent Debtor commenced with

---

[1] The Parent Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Parent Debtor is authorized to continue to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in this Chapter 11 Case.[2]

2.      Information regarding the Parent Debtor's business, capital structure, and the circumstances leading to the commencement of this Chapter 11 Case is set forth in the *Declaration of Assaf Ravid Pursuant to Local Bankruptcy Rule 1007-2 in Support of All Year Holdings Limited's Chapter 11 Petition* [ECF No. 4] (the "**Ravid Declaration**").

### Jurisdiction and Venue

3.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

4.      The Parent Debtor submits the Application, pursuant to sections 327(a) and 328 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the

---

[2] On February 22, 2021, Evergreen Gardens Mezz LLC (the "**Initial Debtor**") commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. On September 14, 2021, Evergreen Gardens I LLC and Evergreen Gardens II LLC (the "**Subsidiary Debtors**" and, together with the Initial Debtor, the "**Evergreen Debtors**") commenced their own voluntary cases with the Court under chapter 11 of the Bankruptcy Code. The Evergreen Debtors are each wholly-owned, indirect subsidiaries of the Parent Debtor. The Evergreen Debtors' chapter 11 cases are being jointly administered for procedural purposes only under the lead case, *In re Evergreen Gardens Mezz LLC, et al.,* Case No., 21-10335 (MG). On November 5, 2021, the Court entered an order confirming a joint chapter 11 plan for the Evergreen Debtors [ECF No. 222], which chapter 11 plan became effective and was substantially consummated on December 2, 2021. The Parent Debtor's Chapter 11 Case is being separately administered from the Evergreen Debtors' chapter 11 cases.

WEIL:\98560005\6\12817.0005

Southern District of New York (the "**Local Rules**"), for authority to retain CFGI ("**CFGI**") as financial advisor in accordance with the terms and conditions set forth in that certain engagement letter dated March 27, 2022 (the "**Engagement Letter**"), *nunc pro tunc* to March 22, 2022.

5.      A proposed form of order approving CFGI's retention and employment is annexed hereto as **Exhibit A** (the "**Proposed Order**"). A copy of the Engagement Letter is annexed to the Proposed Order as **Exhibit 1**.   In support of this Application, the Parent Debtor submits the declaration of Joseph Baum (the "**Baum Declaration**"), which is annexed hereto as **Exhibit B** and is incorporated herein by reference.

6.      The Parent Debtor requires the engagement of a financial advisor to, inter alia, (i) advise the Parent Debtor on matters regarding its restructuring and reorganization, (ii) make recommendations to the Parent Debtor, and (iii) otherwise assist and advise the Parent Debtor in all matters regarding its Chapter 11 reorganization. In order for the Parent Debtor to be successful in its reorganization efforts, it requires a knowledgeable and well-experienced financial advisor with extensive experience in complex chapter 11 and insolvency matters such as the Chapter 11 Case.

7.      The Parent Debtor seeks to retain CFGI as its financial advisor because of its extensive experience in providing financial and operational guidance to companies in distressed situations and in restructuring scenarios. The partners, managing directors, directors, senior managers, managers, associates, and other professional staff of CFGI have extensive experience working with financially troubled companies in complex financial restructurings both out-of-court and in comparable chapter 11 cases. *See, e.g., In re Dean & Deluca New York, Inc.*, Case No. 20-10916 (Bankr. S.D.N.Y.) [ECF No. 446]; *In re L&L Wings, Inc.*, Case No. 21-bk-10795 (Bankr. S.D.N.Y.) [ECF No. 102]; *In re Tousa, Inc.*, Case No. 08-bk-10928 (Bankr. S.D.F.L.) [ECF No.

WEIL:\98560005\6\12817.0005

1090]; *In re Conye Int'l Enterprises Corp.*, Case No. 15-bk-31160 (Bankr. N.D.N.Y.) [ECF No. 239]; *In re Interfaith Medical Center*, Case No. 12-bk-48226 (Bankr. E.D.N.Y.) [ECF No. 142]; *In re Apex Xpress, Inc.*, Case No. 18-bk-13134 (Bankr. D.N.J.) [ECF No. 66]. As such, the Parent Debtor believes that CFGI is well qualified to act as its financial advisor and to perform necessary services for the Parent Debtor necessary for this Chapter 11 Case.

8.      Subject to this Court's approval, CFGI is prepared to provide a range of strategic financial advisory services to the Parent Debtor. The Parent Debtor submits that CFGI possesses the requisite resources and is both highly qualified and uniquely able to act as financial advisor to the Parent Debtor. CFGI is qualified to perform such services that are necessarily required by and for the Parent Debtor.

9.      The resources, capabilities, and experience of CFGI in advising the Parent Debtor is crucial for a successful restructuring. CFGI intends to work closely with the Parent Debtor, the Parent Debtor's representatives and the other professionals retained by the Parent Debtor to, inter alia, ensure there is not unnecessary duplication of services performed or charged to the Parent Debtor's estate. The Parent Debtor intends to carefully monitor and direct the services to be provided to maximize efficiencies and promote economy for the benefit of the estate. Accordingly, authorizing the relief requested herein is appropriate in this Chapter 11 Case.

**Scope of Services**

10.      CFGI will provide various services that may include, but are not necessarily limited to, the following (the "**Services**"):

    a.   Assist the Parent Debtor in obtaining debtor in possession financing;

    b.   Prepare and validate rolling 13-week cash flow projections, including analyzing historical cash disbursements and receipts and results of operations to determine the reasonableness of projected cash flows and short- term cash needs;

    c.   Prepare weekly monitoring reporting of the Parent Debtor's compliance with approved budget;

    d.   Assist the Parent Debtor in the preparation of short and long-term projections (balance sheet, profit and loss, and cashflows);

    e.   Assist the Parent Debtor in the preparation of a chapter 11 plan and disclosure statement and any associated schedules or exhibits;

    f.   Preparation of financial statements and other reports as may be required by the Court or under the Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees, revised December 17, 2019;

    g.   Prepare for and provide court testimony, if required; and

    h.   Render such other general services consulting or other such assistance as the Parent Debtor or its counsel may deem necessary.

11.    Subject to this Court's approval of the relief requested in this Application CFGI will provide the Services to the Parent Debtor.

## CFGI's Disinterestedness

12.    CFGI has reviewed its electronic database (the "**Database**") and, to the best of its knowledge, except to the extent disclosed in the Baum Declaration, CFGI (i) is a "disinterested person" with the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code and does not hold or represent an interest adverse to the Parent Debtor's estate, and (ii) has no connection to the Parent Debtor, its creditors or its related parties. CFGI will periodically review its files during the pendency of the Parent Debtor's case to ensure that no conflicts or other disqualifying circumstances exist or arise. If CFGI discovers any new relevant facts or relationships pertaining to the matters described herein during the period of its retention, CFGI will promptly file a supplemental declaration with the Court.

13.    To the best of the Parent Debtor's knowledge, CFGI has no connection with the

Parent Debtor's creditors or any other parties in interest or their respective attorneys, except as set forth in the Baum Declaration annexed hereto as **Exhibit B**. To the best of the Parent Debtor's knowledge, CFGI represents no interest adverse to the Parent Debtor's estate, or any other interested person in the matters with respect in which CFGI is to be engaged as financial advisor.

14.     CFGI believes it is a "disinterested person" as that term is defined in Bankruptcy Code §101(14) in that said firm:

(a)     is not a creditor, an equity security holder, or an insider;

(b)     is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the Parent Debtor; and

(c)     does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Parent Debtor, or for any other reason.

*See* 11 U.S.C. § 101(14).

15.     As a result of the foregoing, the Parent Debtor believes that, not only is CFGI a disinterested person within the meaning of section 101 of the Bankruptcy Code but is best qualified professional to perform services which are necessarily required.

## **CFGI's Compensation**

16.     The proposed fee structure for CFGI's retention and services as compensation for the Services is reflected in the rates set forth in the Baum Declaration filed contemporaneously herewith. All charges for fees and expenses are subject to review by the Court, in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court. Compensation will be payable to CFGI on an hourly basis, plus reimbursement of actual and necessary expenses incurred by CFGI. CFGI's billing rates for the financial advisory and accounting services of the nature to be rendered

to the Parent Debtor are as follows (the "**Compensation Structure**"):

| Professional | Hourly Rate |
|---|---|
| Partner | $625.00 |
| Director/Managing Director | $475.00 |
| Senior Manager | $375.00 |
| Manager | $300.00 |
| Consultant | $250.00 |

CFGI's hourly rates vary with the experience and seniority of the individuals assigned. The hourly rates of CFGI are subject to periodic adjustments to reflect economic and other conditions. In the normal course of business, CFGI revises its hourly rates each year. The Parent Debtor and CFGI respectfully submit that such rates are reasonable in light of the quality and specialized nature of the services being provided and are consistent with the market.

17.    The Parent Debtor and CFGI understand that any compensation paid to CFGI must be approved by this Court upon application consistent with the Bankruptcy Code, the applicable Bankruptcy Rules, the Local Bankruptcy Rules, and any further Order of this Court. In addition, CFGI will also seek reimbursement for actual and necessary out-of-pocket expenses incurred in connection with its engagement with the Parent Debtor in this Chapter 11 Case, which may include, but are not limited to, postage, overnight mail, courier delivery, transportation, computer assisted legal research, photocopying, outgoing facsimile transmissions, airfare, meals and lodging. Consistent with local practice, nonworking travel time will be charged at half of actual time incurred. Expenses for actual costs incurred will be charged in accordance with the General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013 (Morris, C.J.)), and the U.S. Trustee Guidelines

WEIL:\98560005\6\12817.0005

for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330 (Appendix A to 28 C.F.R. § 58) (collectively, the "**Fee Guidelines**").

18.     CFGI is neither a pre-petition creditor of the Parent Debtor nor has it received any

retainer heretofore or provided pre-petition financial advisory services to the Parent Debtor.  Other

than as set forth herein or in the Baum Declaration, there is no proposed arrangement between the

Parent Debtor and CFGI for compensation to be paid in this Chapter 11 Case.

19.     Due to the complex and sensitive nature of the Parent Debtor's case, there is an

immediate need for CFGI to perform services for the Parent Debtor, and the Parent Debtor has

sought authorization to retain and employ CFGI as soon as reasonably practicable.  CFGI has

begun familiarizing itself with the Parent Debtor's books, records, and operations and, therefore,

the Parent Debtor's estate would bear significant additional and unnecessary expense should it be

required to obtain a new financial advisor that was unfamiliar with the Parent Debtor and its

operations.  Accordingly, the Parent Debtor requests approval of the Application *nunc pro tunc* to

March 22, 2022.

20.     The Parent Debtor desires to retain CFGI to perform services, which are necessary

to the administration of the Chapter 11 Case, and the Parent Debtor believes that CFGI's

Compensation Structure is consistent with and typical of compensation arrangements entered into

by CFGI and less or equal to other comparable firms in connection with the rendering of similar

services under similar circumstances. The Parent Debtor is satisfied and believes that the

Compensation Structure requested by CFGI as compensation for the services to be rendered by

the firm is ordinary, fair and in fact reasonable.

**<u>Indemnification Related Provisions</u>**

21.     As part of the Compensation Structure provided for in the Engagement Letter, the

8

Parent Debtor has agreed to certain indemnification and related obligations, which provide, among other things, that the Parent Debtor will indemnify and hold harmless CFGI and its present and former members, managers, partners, principals, directors, employees, subcontractors, agents, parent organizations, and subsidiaries associated with any third-party claim arising from or relating to (i) the Parent Debtor's material misrepresentations, or (ii) false or materially incomplete information provided by any of the Company's personnel or agents to CFGI in the performance of its services to the Company.  These indemnification provisions are subject to customary carve-outs for willful misconduct or fraudulent behavior of CFGI.  The Parent Debtor and CFGI believe that these indemnification provisions are customary and reasonable for financial advisory engagements, both out-of-court and in chapter 11.  In connection with the Chapter 11 Case, CFGI has agreed to certain modifications to the indemnification provisions, as set forth in the proposed order.

## Notice

22.    Notice of this Application will be provided to (i) William K. Harrington, the U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq. and Shara Cornell, Esq.), (ii) the Parent Debtor's top twenty (20) unsecured creditors, (iii) the Internal Revenue Service, (iv) the United States Attorney's Office for the Southern District of New York, (v) counsel to  Mishmeret Trust Company Ltd., as Trustee for the BVI Bondholders, Chapman & Cutler LLP, 1270 Sixth Avenue, New York, New York 10020 (Attn: Michael Friedman, Esq., Stephen R. Tetro II, Esq., and Aaron Krieger, Esq.), and (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002. The Parent Debtor respectfully submits that no further notice is required.

## <u>No Prior Request</u>

23.    No previous request for the relief sought herein has been made to this or any other

Court.

**WHEREFORE**, for the reasons set forth herein, the Parent Debtor respectfully requests

entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:  April 7, 2022
         New York, New York

/s/ *Matthew P. Goren*_____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Jacqueline Marcus
Matthew P. Goren
*Attorneys for the Parent Debtor*

WEIL:\98560005\6\12817.0005

**Exhibit A**
**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
                                                        :
**In re**                                               :
                                                        :                    **Chapter 11**
**ALL YEAR HOLDINGS LIMITED,**                          :
                                                        :                    **Case No. 21-12051 (MG)**
        **Debtor.**[1]                                  :
                                                        :
**Fed. Tax Id. No. 98-1220822**                         :
--------------------------------------------------------x

**ORDER PURSUANT**
**TO 11 U.S.C. §§ 327(a) AND 328, FED. R. BANKR. P. 2014(a) AND 2016,**
**AND L.B.R. 2014-1 AND 2016-1 AUTHORIZING AND APPROVING RETENTION**
**AND EMPLOYMENT OF CFGI AS FINANCIAL ADVISOR FOR**
**THE PARENT DEBTOR _NUNC PRO TUNC_ TO MARCH 22, 2022**

Upon the application (the "**Application**")[2] of All Year Holdings Limited, as debtor and

debtor in possession (the "**Parent Debtor**") in the above-captioned chapter 11 case (the "**Chapter**

**11 Case**"), pursuant to sections 327(a) and 328 of title 11 of the United States Code (the

"**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern

District of New York (the "**Local Bankruptcy Rules**"), for an entry of an order to employ and

retain CFGI ("**CFGI**") as financial advisors to the Parent Debtor _nunc pro tunc_ to March 22, 2022;

and upon consideration of the declaration of Joseph Baum in support of the Application; and the Court

having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the

Application and the relief requested therein in accordance with 28 U.S.C § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Application having been provided to the Notice Parties; and it appearing that no other or further notice

---

[1] The Parent Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

[2] Capitalized terms used but not defined herein shall have the meanings as ascribed thereto in the Application.

WEIL:\98560010\5\12817.0005

need be provided; and it appearing that CFGI neither holds nor represents any interest adverse to the

Parent Debtor's estate; and it appearing that CFGI is a "disinterested person," as that term is defined

in section 101(14) of the Bankruptcy Code; and it appearing that the relief requested in the

Application is in the best interests of the Parent Debtor, its estate, its creditors and other parties in

interest; and after due deliberation and sufficient cause appearing therefor;

### IT IS HEREBY ORDERED THAT

1.      The Application is granted as set forth herein.

2.      The Parent Debtor is authorized, pursuant to sections 327(a) and 328 of the Bankruptcy

Code, Bankruptcy Rules 2014(a) and 2016 and Local Bankruptcy Rules 2014-1 and 2016-1, to retain and

employ CFGI as its financial advisor, in accordance with the terms and conditions set forth in the

Engagement Letter annexed hereto as **Exhibit 1** and Application in the Chapter 11 Case.

3.      CFGI shall file fee applications for interim and final allowances of compensation

and reimbursement of expenses pursuant to the procedures set forth in section 330 and 331 of the

Bankruptcy Code.

4.      CFGI is authorized to provide various services that may include, but are not

necessarily limited to the following services to the Parent Debtor:

   a.   Assist the Parent Debtor in obtaining debtor in possession financing;

   b.   Prepare and validate rolling 13-week cash flow projections, including analyzing
        historical cash disbursements and receipts and results of operations to
        determine the reasonableness of projected cash flows and short- term cash
        needs;

   c.   Prepare weekly monitoring reporting of the Parent Debtor's compliance with
        the approved budget;

   d.   Assist the Parent Debtor in the preparation of short and long-term projections
        (balance sheet, profit and loss, and cashflows);

   e.   Assist the Parent Debtor in the preparation of a chapter 11 plan and disclosure
        statement and any associated schedules or exhibits;

WEIL:\98560010\5\12817.0005

    f.   Preparation of financial statements and other reports as may be required by the Court or under the Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees, revised December 17, 2019;

    g.   Prepare for and provide court testimony, if required; and

    h.   Render such other general services consulting or other such assistance as the Parent Debtor or its counsel may deem necessary.

5.      CFGI shall be compensated and reimbursed upon notice and an appropriate hearing pursuant to sections 327, 330 and 331 of the Bankruptcy Code, as the case may be, and the applicable Bankruptcy Rules, the Local Bankruptcy Rules, and fee and expense guidelines and orders of this Court.

6.      Notwithstanding anything to the contrary in the Application of the Engagement Letter, the Engagement Letter is modified as follows:

    a.   All requests for payment of indemnity, contribution or reimbursement pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity, contribution or reimbursement conforms to the terms of the Engagement Letter (as modified and restated by this Order) and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity, contribution or reimbursement is sought; *provided, however*, in no event shall CFGI be indemnified to the extent the Court determines by final order that any claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty, gross negligence or willful misconduct on the part of CFGI;

    b.   In the event that CFGI seeks reimbursement from the Parent Debtor for attorneys' fees in connection with a request for payment of indemnity, contribution or reimbursement pursuant to the Engagement Letter (as modified and restated by this Order), the invoices and supporting time records from such attorneys shall be included in CFGI's application (interim or final as the case may be) and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code;

    c.   CFGI shall not be entitled to reimbursement by the Parent Debtor for any fees, disbursements and other charges of CFGI's counsel other than those incurred in connection with a request of CFGI for payment of indemnity, retention of the CFGI and preparation of fee applications;

d.  In no event shall CFGI be entitled to indemnification, contribution, exoneration, reimbursement of attorneys' fees or expenses, limitation on liability or allocation or apportionment of damages, indemnified or exonerated if the Parent Debtor or representatives of the estate assert a claim, to the extent the Court determines by final order that such claim for indemnity arose out of CFGI's own bad-faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct on the part of CFGI; and

e.  There shall be no limitation of liability of CFGI, or allocation or apportionment of damages, with respect to a claim or expense to the extent the Court determines by final order that the indemnification, contribution or reimbursement on account of such claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty, gross negligence or willful misconduct on the part of CFGI.

7.  The Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation of this Order.

8.  To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, the terms of this Order shall govern.

9.  The Parent Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

10.  The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.  The relief granted herein shall be binding upon any chapter 11 trustee appointed in the Chapter 11 Case, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the Chapter 11 Case to a case under chapter 7.

Dated:  April __, 2022
     New York, New York

                                _____
                                THE HONORABLE MARTIN GLENN
                                CHIEF UNITED STATES BANKRUPTCY JUDGE

WEIL:\98560010\5\12817.0005

**Exhibit 1**
**Engagement Letter**

**CFGI**

March 27, 2022

Mr. Ravid Asaf, CRO
All Year Holdings Ltd.

Via Email

Dear Mr. Asaf:

This letter agreement (this "Agreement") memorializes and confirms our understanding of the terms of engagement of CFGI, LLC ("CFGI", "we" or "our") to provide services to All Year Management Inc. (the "Company"). This Agreement is effective as of the first date of our services.

<u>Our Responsibilities and Limitations</u>

CFGI and its personnel will assist the Company with financial advisory services as requested by Company management. To accomplish these tasks, CFGI will act as a consultant working under the direction of Company management. CFGI will assist the Company in performing the following services:

     a. Assist the Debtor in obtaining Debtor in Possession financing;

     b. Prepare and validate rolling 13-week cash flow projections, including analyzing historical cash disbursements and receipts and results of operations to determine the reasonableness of projected cash flows and short- term cash needs;

     c. Prepare weekly monitoring reporting of the Debtor's compliance with the court approved budget;

     d. Assist the Debtor in the preparation of short and long-term projections (balance sheet, profit and loss, and cashflows);

     e. Assist the Debtor in the preparation of the Plan and Disclosure Statement and associated exhibits;

     f. Prepare financial statements and other reports as may be required by the Court or under the United States Trustee Guidelines;

     g. Prepare for and provide court testimony, if required;

     h. Render such other general services consulting or other such assistance as the Debtor or its counsel may deem necessary.

We have not been engaged to, and will not, perform a review or audit of the Company's financial and/or tax information. We do not assume any responsibility for the integrity of the Company's financial and/or tax information. The Company will not use the name of CFGI to present financial or other information to investors, banks, vendors, customers, or any other parties without our prior written consent. We may advise the Company but will not be responsible for determining any appropriate accounting treatment or which accounting policy the Company should adopt. Any observations we provide are intended to assist the Company as it determines,

**CFGI**

documents, and implements its own conclusions. We will not perform any procedures to detect errors, fraud, or other illegal acts.

The Company acknowledges and agrees that although certain of our professionals are attorneys, we do not engage in the practice of law. Therefore, any tax or other advice is not legal advice, and no attorney-client relationship exists between the Company and CFGI. No written tax advice provided by CFGI will be a Covered Opinion as defined in §10.35 of Circular 230. Any written tax advice provided by CFGI will contain a legend summarizing that all communication provided must not be used for the purpose of avoiding penalties under the Internal Revenue Code.

Management's Responsibilities

All financial, tax, and other business information of the Company is the responsibility of the Company. The Company's management team will assist CFGI and provide, on a timely basis, the information needed by us to perform services under this Agreement. The Company is responsible for all final management decisions and the retention of documentation required to support accounts, disclosures, and tax returns. The Company's management team will direct CFGI and oversee the services, evaluate the adequacy of the services, and accept responsibility for the results of the services. CFGI will not express an opinion about the design or operating effectiveness of the key internal controls of the Company.

The Company is solely responsible for: (i) determining the scope and sufficiency of the services provided by CFGI, (ii) any decisions to implement actions, including any actions to apply generally accepted accounting principles and comply with regulatory requirements, (iii) the preparation of and any judgements in its financial statements, and (iv) the decision and results of any business transformation plan.

Timing and Fees

CFGI will charge fees based on the time incurred by individuals at the following hourly rates. If the Company requests additional services outside the scope of the original engagement, CFGI and the Company may mutually agree to and execute a separate statement of work that determines the fees for such additional services.

- SME:                                          $625/hour
- Partner:                                      $625/hour
- Director/Managing Director:          $475/hour
- Senior Manager:                          $375/hour
- Manager:                                     $300/hour
- Consultant:                                  $250/hour

If the project requires out of town travel, invoices will also include reimbursement for out-of-pocket expenses related to such travel. Invoices are due upon Court approval. CFGI's hourly rates are subject to adjustment, which typically occurs in January of each year. Payments should be mailed to CFGI's lockbox or via ACH:

**Lockbox Payments:**
Make Checks Payable To: CFGI Holdings, LLC
Mail To:
CFGI Holdings, LLC
PO Box 791561
Baltimore, MD 21279-1561

**WIRE/ACH Payments:**

Bank: SunTrust, now Truist
Account Name: CFGI Holdings, LLC
Account Number: 1000271875089
Routing Number: 061000104
SWIFT Number: SNTRUS3A

If any fees are inadvertently or erroneously paid by the Company to any other party (such as due to a phishing scam or employee error), the Company is still obligated to pay CFGI such fees. Either party may terminate this Agreement at any time, for any reason, with thirty (30) days prior written notice. CFGI may cease further work and terminate this Agreement at any time in the event of non-payment by the Company. The termination of this Agreement does not relieve the Company of its obligation to pay all fees incurred prior to the date of termination.

The Company will defend, indemnify, and hold harmless CFGI and its present and former members, managers, partners, principals, directors, employees, subcontractors, agents, parent organizations and subsidiaries (collectively referred to as "Representatives") from any liabilities, damages, fees, expenses and costs (including reasonable defense costs) associated with any third-party claim arising from or relating to: (i) the Company's material misrepresentations; or (ii) false or materially incomplete information provided by any of the Company's personnel or agents to CFGI in the performance of its services to the Company, except to the extent such claims arise from or relate to the willful misconduct or fraudulent behavior of CFGI. In the case of indemnification against third-party claims, CFGI will give prompt notice of any such claim to the Company. The Company may control the defense of the claim with counsel of its choosing that is reasonably satisfactory to CFGI. CFGI will reasonably cooperate with the defense. So long as the Company assumes the defense, the Company will not be responsible for the fees and expenses of any separate counsel retained by CFGI. The Company is not required to indemnify CFGI or its Representatives for settlements effected without the Company's prior written consent. The Company may not settle a claim without the consent of CFGI, such consent not to be unreasonably withheld.

CFGI will not be liable to the Company or any other party, whether a claim be in tort, contract or otherwise, for any damages—including any direct, indirect, consequential, incidental, lost profit, punitive or similar special damages—relating to CFGI's services provided under this Agreement, except to the extent such damages are determined to have resulted from the willful misconduct or fraudulent behavior of CFGI.

<u>Confidentiality</u>

Each party will treat as confidential all information supplied by the other party that is not in the public domain, including, but not limited to, information regarding products, business, customers, processes, techniques or operations and any documents that have been marked or designated as confidential (collectively, "Confidential Information"). Unless the disclosing party grants prior written consent to permit the use or disclosure, the receiving party must: (i) limit use or disclosure of the Confidential Information only as required to perform its obligations under this Agreement; and (ii) limit the use or disclosure of the Confidential Information to those personnel who have a need to know for the performance of the Agreement. The receiving party may also disclose Confidential Information to third parties only to the extent such disclosure is required to: (x) comply with applicable law, regulation, or the rules of any stock exchange or listing entity; (y) defend or prosecute litigation; or (z) respond to a request by a governmental authority or an order of a court of competent jurisdiction; provided that, to the extent legally permitted, the receiving party provides prior written notice of such disclosure, takes all reasonable and lawful actions to avoid or minimize the degree of such disclosure, and cooperates reasonably with the disclosing party at the disclosing party's expense in any efforts to seek a protective order. The obligations of non-disclosure and non-use under this Agreement will continue for three (3) years after disclosure. The obligations of non-disclosure and non-use under this Agreement will not apply to any portion of the Confidential Information that the receiving party can demonstrate, by competent proof: (i) is generally known or available to the public at the time of disclosure or becomes generally known or available through no wrongful act on the part of the receiving party; (ii) is in receiving

— 3 —

**CFGI**

party's possession at the time of disclosure other than as a result of receiving party's breach of any legal obligation; (iii) becomes known to receiving party on a non-confidential basis through disclosure by sources that the receiving party does not know, after reasonable inquiry, are prohibited from disclosing such Confidential Information; or (iv) is independently developed by the receiving party without reference to or reliance upon the disclosing party's Confidential Information. Notwithstanding anything in this Agreement to the contrary, the receiving party will have the right to retain one copy of the Confidential Information, or parts thereof, if required to do so by applicable law, rule or regulation, or if such Confidential Information is retained solely as a result of the receiving party's internal compliance procedures including file and electronic data back-up procedures.

<u>Taxes</u>

The fees stated in this Agreement do not include applicable taxes. Both CFGI and the Company are responsible for payment of all applicable taxes, impositions, fees, or other charges that may arise in any jurisdiction as a result of this Agreement, including without limitation all sales, use, value added, consumption, gross receipts (other than in lieu of net income tax), excise, stamp or transfer taxes, however designated.

If the Company is required to withhold or deduct any portion of a payment due to CFGI on account of any taxes payable by the Company, CFGI is entitled to receive such amounts to ensure that the payment, after deduction for such tax, is the same as it would have been if the payment was not subject to deduction for such tax.

<u>Other</u>

This Agreement will be governed by the laws of the Commonwealth of Massachusetts, without regard to choice of law principles. Any legal suit, action or proceeding arising out of or related to this Agreement or the services provided hereunder will be instituted exclusively in the courts of the Commonwealth of Massachusetts. CFGI and the Company each irrevocably submit to the exclusive jurisdiction and venue of such courts in any such suit, action or proceeding. CFGI and the Company each irrevocably and unconditionally waive any right it may have to a trial by jury in respect of any legal suit, action or proceeding arising out of or relating to this Agreement or the services provided. If any action is instituted by CFGI to enforce the terms of this Agreement, including for payment of fees, CFGI will be entitled to reasonable attorneys' fees, costs, and expenses, in addition to any other relief to which CFGI is entitled. The Company agrees that it will not, directly or indirectly, agree to assign or transfer any claim against CFGI arising out of this Agreement.

In the event CFGI is requested or authorized by the Company or required by government regulation, subpoena, or other legal process to produce our working papers or our personnel as witnesses with respect to our services provided for the Company, the Company will reimburse CFGI for our professional time, and expenses, and the expenses of our legal counsel incurred in responding to such a request.

Our employees and other personnel are our most valuable resources. During the term of this Agreement and for one (1) year thereafter, if the Company or any affiliate of the Company hires or otherwise directly engages any CFGI employee or other personnel either by permanent or temporary hire or engagement for any reason, the Company will pay CFGI a placement fee equal to the fees that would have been generated by such CFGI employee or other personnel during any six-month period (the "Placement Fee"). The Placement Fee will equal the product of: (i) the standard hourly rate for such employee or other personnel, multiplied by; (ii) 8 (representing the average number of hours charged per day by a CFGI employee or other personnel), multiplied by; (iii) 120 (representing the average number of days worked by a CFGI employee or other personnel in a six-month period). The Company agrees to pay the invoice for such Placement Fee within fifteen (15) days of receipt. The Company acknowledges and agrees that any Placement Fee is not a penalty and is intended to compensate CFGI for business interruption and for fees to attract, hire, and train replacement personnel.

**CFGI**

The Company grants CFGI a non-exclusive, non-transferable and non-assignable license to use the Company's name and/or logo for general marketing purposes, including on CFGI's website and in CFGI's employee biographies. The license granted hereunder is limited to referencing the Company's name and/or logo and does not include the right to disclose any specific information regarding the services CFGI provides for the Company pursuant to this Agreement or any other Confidential Information of the Company. The Company may terminate the license granted hereunder at any time upon written notice to CFGI.

This Agreement reflects the entire agreement between CFGI and the Company. It replaces and supersedes any previous proposals, correspondence, and understandings, whether written or oral, between CFGI and the Company. The agreements of the Company and CFGI contained in this Agreement will survive the completion or termination of the services provided by CFGI.

If you have any questions, please call Joseph Baum of CFGI at (732) 674-4132. If the services outlined herein meet your requirements and if the above terms are acceptable, please have one copy of this letter signed in the space provided below and return it via email to Joseph Baum or Accounting@cfgi.com.


Best Regards,

CFGI, LLC

By:    ____ _Joseph C. Baum_ _____

Name:  _Joseph Baum_____
Title:  __Partner_____
Date:  ___March 27, 2022_____



The services and terms as set forth in this Agreement are agreed to:


All Year Holdings, Ltd.

By:    _____

        Name:  _Ravid Asaf_____
        Title:  _CRO_____
        Date:  _4.6.2022_____

**Exhibit B**
**Baum Declaration**

WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer, Esq.
Jacqueline Marcus, Esq.
Matthew P. Goren, Esq.

*Attorneys for the Parent Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

| | | |
|---|---|---|
| **In Re** | : | **Chapter 11** |
| | : | |
| **ALL YEAR HOLDINGS LIMITED,** | : | **Case No.: 21-12051 (MG)** |
| | : | |
| **Debtor.**[1] | : | |
| | : | |
| **Fed. Tax Id. No. 98-1220822** | : | |

-------------------------------------------------------X

**DECLARATION OF JOSEPH BAUM IN SUPPORT OF APPLICATION**
**PURSUANT TO 11 U.S.C. §§ 327(a) AND 328, FED. R. BANK. P. 2014(a)**
**AND 2016, AND L.B.R. 2014-1 AND 2016-1 FOR AUTHORITY TO**
**RETAIN AND EMPLOY CFGI AS FINANCIAL ADVISOR FOR**
**THE PARENT DEBTOR *NUNC PRO TUNC* TO MARCH 22, 2022**

I, Joseph Baum, declare the following under penalty of perjury:

1.       I am a Certified Public Accountant and a partner of CFGI ("**CFGI**") where I serve

as the head of CFGI's restructuring group. CFGI is headquartered at 340 Madison Avenue, 3rd

Floor, New York, New York 10173.

2.       This Declaration is submitted in support of the application (the "**Application**")[2] of

the above-captioned debtor and debtor in possession (the "**Parent Debtor**"), pursuant to sections

327(a) and 328 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and

---

[1] The Parent Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

2016 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for authority to retain CFGI as financial advisor *nunc pro tunc* to March 22, 2022, and to provide the disclosures required under section 327 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

3.      I have personal knowledge of the matters set forth herein and, if called as a witness, I could and would testify thereto.

<u>**CFGI's Qualifications**</u>

4.      CFGI is a financial advisory firm with extensive experience in restructuring and providing financial and operational guidance to companies in distressed situations.

5.      In particular, CFGI has experience in providing financial advisory services to troubled companies in real estate, the Parent Debtor's industry.  CFGI's professionals have advised debtors, creditors and equity holders in many similar chapter 11 cases.  The current partners, managing directors, senior managers and other professional staff of CFGI have extensive experience working with financially troubled companies in complex financial restructurings in and out-of-court and in comparable chapter 11 cases. CFGI's professionals have been involved as financial advisors to debtors, creditors, and other constituents in many chapter 11 and chapter 7 cases.

6.      In addition to CFGI's experience in the reorganization, restructuring and sales of troubled companies, both in and out of court, CFGI is already in the process of developing an understanding of the Parent Debtor's financial history, business operations and the industry in which the Parent Debtor operates.  Its professionals are working closely with the Parent Debtor's management and other professionals and are becoming well-acquainted with the Parent Debtor's

2

business operations, creditors and related matters. Accordingly, CFGI has already developed

significant relevant experience regarding the Parent Debtor that will assist CFGI in providing

effective and efficient services in this Chapter 11 Case.

### Services to be Provided

7.　　In connection with this Chapter 11 Case, the Parent Debtor has requested

authorization to retain CFGI as its financial advisor.

8.　　CFGI will provide various services that may include, but are not necessarily limited

to, the following: (the "**Services**"):

    a.　Assist the Parent Debtor in obtaining debtor in possession financing;

    b.　Prepare and validate rolling 13-week cash flow projections, including analyzing historical cash disbursements and receipts and results of operations to determine the reasonableness of projected cash flows and short-term cash needs;

    c.　Prepare weekly monitoring reporting of the Parent Debtor's compliance with the approved budget;

    d.　Assist the Parent Debtor in the preparation of short and long-term projections (balance sheet, profit and loss, and cashflows);

    e.　Assist the Parent Debtor in the preparation of a chapter 11 plan and disclosure statement and any associated schedules or exhibits;

    f.　Prepare financial statements and other reports as may be required by the Court or under the Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees, revised December 17, 2019;

    g.　Prepare for and provide court testimony, if required; and

    h.　Render such other general services consulting or other such assistance as the Parent Debtor or its counsel may deem necessary.

9.　　Subject to this Court's approval of the relief requested in the Application, CFGI

will provide the Services to the Parent Debtor. CFGI will coordinate with the Parent Debtor's other

retained professionals to avoid unnecessary duplication of services.

## Compensation

10.     CFGI's normal billing rates for the financial advisory and accounting services of the nature to be rendered to the Parent Debtor are as follows:

| Professional | Hourly Rate |
|---|---|
| Partner | $625.00 |
| Director/Managing Director | $475.00 |
| Senior Manager | $375.00 |
| Manager | $300.00 |
| Consultant | $250.00 |

CFGI's hourly rates vary with experience and seniority of the individuals assigned. The hourly rates of CFGI are subject to periodic adjustments to reflect economic and other conditions. In the normal course of business, CFGI revises its hourly rates in January of each year. CFGI respectfully submits that such rates are reasonable considering the quality and specialized nature of the services being provided and are consistent with the market.

11.     CFGI understands that any compensation paid to CFGI must be approved by this Court upon application consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or further Order of this Court. In addition, CFGI will also seek reimbursement for actual and necessary out-of-pocket expenses incurred in connection with its engagement with the Parent Debtor in this Chapter 11 Case, which may include, but are not limited to, postage, overnight mail, courier delivery, transportation, computer assisted legal research, photocopying, outgoing facsimile transmissions, airfare, meals and lodging. Consistent with local practice, nonworking travel time will be charged at half of actual time incurred. Expenses for actual costs incurred will be charged in accordance with the applicable Rules and Guidelines of this Court.

WEIL:\98560001\3\12817.0005

12.    CFGI has not received any retainer or other compensation prior hereto from or on behalf of the Parent Debtor. In addition, CFGI did not receive any pre-petition payments from the Parent Debtor.

13.    CFGI intends to maintain detailed, contemporaneous time records in tenths of an hour and to apply to the Court for the allowance of compensation for professional services and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any additional procedures that may be established by the Court in this Chapter 11 Case.  CFGI has agreed to accept as compensation such sums as may be allowed by the Court and understands that interim fee and final fee awards are subject to approval by this Court.

14.    CFGI hereafter shall apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including, but not limited to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Guidelines for Professional Compensation established by the Office of the United States Trustee, and further orders of this Court, for all services performed and expenses incurred after its retention date.

15.    CFGI intends to make reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the Fee Guidelines in connection with the Application and any interim and final fee applications to be filed in this Chapter 11 Case.  The disclosures made herein are based exclusively on the facts and circumstances of this Chapter 11 Case, and CFGI reserves the right to object to such requirements, or any other requirements contained in the UST Guidelines in future cases should it determine that it is appropriate to do so.

5

## CFGI's Disinterestedness

16.     In connection with its proposed retention by the Parent Debtor in this Chapter 11 Case, CFGI undertook a lengthy conflicts analysis process to determine whether it had any conflicts or other relationships that might cause it to hold or represent an interest adverse to the Parent Debtor or might cause it to not be disinterested.  Specifically, CFGI obtained from the Parent Debtor and/or its representatives a list of the Parent Debtor's known creditors, landlords, parties to executory contracts, members, directors, officers, financial institutions, the Honorable Martin Glenn, the U.S. Trustee Region 11, and the names of individuals and entities that may be parties-in-interest in this Chapter 11 Case (the "**Potential Parties-in-Interest**") that were made known to CFGI by the Parent Debtor.  CFGI's review, completed under my supervision, consisted of a query of the Potential Parties-in-Interest within an internal computer database ("**Database**") containing names of individuals and entities that are present or former clients of CFGI.  Only individuals and entities that are party to active matters are considered in determining conflicts.

## Carlyle

17.     On February 8, 2018, CFGI received an investment from an investment vehicle formed by Carlyle Global Financial Services Partners III, L.P. ("**CGFSP III**"), an investment fund advised by Carlyle Investment Management L.L.C., each, affiliates of The Carlyle Group (together with its subsidiaries, "**Carlyle**").  As a result of the transaction, CFGI and CGFSP III are affiliates under applicable law.

18.     Carlyle is a global alternative asset manager with more than 1,800 employees in 19 countries over six continents that manages over $260 billion in over 437 active investment vehicles spanning Global Private Equity, Global Credit, and Investment Solutions. Carlyle's Global Private Equity funds, Global Credit funds, and Investment Solutions funds  (collectively,  the  "**Funds**")

are managed independently from each other, and Carlyle maintains an internal information barrier between its Global Credit funds and the rest of the Carlyle funds. CGFSP III, Global Financial Services Partners II, L.P and Global Financial Services Partners, L.P, (collectively, "**CGFSP**") are Global Private Equity funds that each are owned by a diverse group of limited partners, which exert no control over investment decisions, and a general partner affiliated with Carlyle. All CGFSP investment professionals involved with CFGI are dedicated solely to CGFSP and are not involved in the Global Credit or Investment Solutions businesses, although, from time to time, one or more CGFSP investment professionals may sit on the investment committee of another Global Private Equity fund. CGFSP makes independent investment decisions from the other Global Private Equity funds, the Global Credit funds, the real estate funds, and the Investment Solutions funds.

19.       CFGI has searched the names of the Parent Debtor and the names of the potential parties in interest provided by the Parent Debtor against: (i) the names of Carlyle's Global Private Equity funds, (ii) the names of Global Credit funds, and (iii) the names of the Investment Solutions funds. CFGI also has searched the name of the Parent Debtor against the public investments of the Global Private Equity funds as set forth in the list most recently provided to CFGI by Carlyle's internal compliance department ("**Carlyle Compliance**").  We also searched the potential parties in interest list for all Global Private Equity, Global Credit and Investor Solutions funds. The results of that search are discussed further below.  In addition, certain of the Global Credit Funds are managed by third party administrators. We sent email communications to all third-party administrators requesting they report all relationships with the parties noted in paragraph 19 above. No potential relationships were noted other than those in paragraph 31 below. We will update our disclosures accordingly if we identify any other relationships with any of the Parties in interest.

WEIL:\98560001\3\12817.0005

Given the informational barriers, the conflicts search does not include any portfolio companies of any of the Funds (other than those of CGFSP and the Global Private Equity funds as described above). Based solely on the foregoing search, CFGI has determined, to the best of its knowledge, that there are no connections that require disclosure other than as set forth herein. CFGI operates independently and has no relationships with other portfolio companies, other than its relationship with Carlyle. Because of applicable securities laws and the fact that CFGI and Carlyle operate independently, CFGI was unable to further investigate any potential or actual connections between any portfolio companies and the parties in interest. To the extent CFGI learns of any connections involving such entities and/or such investments with the Parties in interest, CFGI will promptly file a supplemental disclosure.

20.    As discussed above, we have undertaken an inquiry of the parties in interest list for all Global Private Equity, Global Credit and Investor Solutions funds. This inquiry does not include any parties who may have been paid by an escrow agent in connection with a fund investment or any parties engaged for business purposes and paid through an employee corporate card. Other than as specifically noted herein, CFGI has not undertaken to determine the existence, nature and/or full scope of any business relationships or other connections that any Carlyle entity may have with the Parent Debtor and their affiliates or the potential parties in interest in this Chapter 11 Case.

21.    Based on, among other things, the business separation between CFGI and Carlyle, CFGI believes that it does not hold or represent an interest adverse to the Parent Debtor with respect to its engagement. If additional potential parties in interest are made known to CFGI, it will review its connection with such parties and supplement this Affidavit if additional information requiring disclosure is discovered.

8

22.     The results of CFGI's and Carlyle's inquiry into the Potential Parties-in-Interest (or any of their known or apparent affiliates) are listed on paragraph 31 of this Declaration. The parties listed include current and former clients. To the best of my knowledge and belief, any representation by CFGI of an entity listed in paragraph 31 (or its known or apparent affiliates) was or is only on matters that are unrelated to the Parent Debtor and this Chapter 11 Case.  To the extent that CFGI discovers or enters into any new relationship with potential parties-in-interest, it will supplement this Declaration.  To the best of my knowledge and belief, CFGI has not represented any potential parties- in-interest in connection with matters relating to the Parent Debtor, its estates, assets or business and will not represent other entities which are creditors of, or have other relationships to, the Parent Debtor in matters relating to this Chapter 11 Case.

### CVC Private Equity Funds

23.     On November 2, 2021, CFGI received an investment from certain investment funds ("**CVC Fund VIII**") managed and/or advised by CVC Capital Partners' private equity business ("**CVC**"). As a result of the transaction, CFGI and CVC Fund VIII are affiliates under applicable law. CVC is a leading private equity firm with a network of 24 offices throughout Europe, Asia and the US, with approximately $122 billion of assets under management. Private equity funds (including CVC Fund VIII, together the "**CVC Private Equity Funds**") managed and/or advised by CVC are invested in over 95 companies worldwide, which have combined annual sales of approximately $120 billion and employ more than 500,000 people.

24.     CVC Credit Partners and Glendower Capital form part of the wider CVC network, however, are separate businesses to CVC's private equity business. In particular, CVC Private Equity Funds are managed independently from funds (the "**CVC Credit Funds**") managed by CVC Credit Partners and funds (the "**Glendower Funds**") managed by Glendower Capital. The

9

investment decisions for investments made by CVC Fund VIII are made by its own general partner, separate to the general partners of the other CVC Private Equity Funds, the CVC Credit Funds and the Glendower Funds. In particular, CVC Credit Partners and Glendower Capital have no involvement in investment decisions relating to CVC Fund VIII's investment in CFGI. CVC also maintains internal information barriers between the CVC Private Equity Funds and its private equity business, on the one hand, and such other funds and their respective businesses, on the other hand. The CVC investment professionals involved with CFGI are not involved in the investment decision making of the CVC Credit Partners or Glendower Capital businesses, however, they may provide assistance to investment professionals working for CVC Credit Partners and Glendower Capital from time to time and/or sit on certain boards or committees related to such businesses (and vice versa). In light of the separate nature of the CVC, CVC Credit Partners and Glendower Capital businesses, no inquiries have been made of or relating to CVC Credit Partners and Glendower Capital, their respective funds or their respective portfolio investments except as described in the following paragraph.

25.     CFGI has searched the name of the Parent Debtor and the names of the potential parties in interest provided by the Parent Debtor for references to names of the CVC Private Equity Funds and against the names of portfolio investments of the CVC Private Equity Funds as set forth on CVC's website. Such searches did not return any positive identifications. Portfolio investments of the CVC Private Equity Funds, including CFGI, are operated independently of one another therefore CFGI is unable to further investigate any potential or actual connections between any other portfolio companies and the parties in interest. To the extent CFGI learns of any connections involving such entities and/or such investments with the Parties in interest, CFGI will promptly file a supplemental disclosure. CFGI also search the vendor history of CVC FUND VIII, the

10

investor in CFGI.

26.     CFGI, and its affiliates are advisors and crisis managers providing services and advice in many areas, including restructuring and distressed debt.  As part of its diverse practice, CFGI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants, investment bankers and financial consultants, some of whom may represent claimants and parties-in-interest in this Chapter 11 Case.  Also, CFGI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings.  In addition, CFGI has in the past, may currently and will likely in the future be working with or against other professionals involved in this case in matters unrelated to the Parent Debtor or this Chapter 11 Case.  Likewise, certain such professionals who are retained in this Chapter 11 Case might have referred work to CFGI.  Based on my current knowledge of the professionals involved, and to the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these relationships constitute interests adverse to the Parent Debtor in matters upon which CFGI is to be employed, and none are in connection with this case.

27.     From time to time, CFGI may have provided services, and CFGI currently and likely in the future will continue to provide services to certain creditors of the Parent Debtor and various other parties adverse to the Parent Debtor in matters wholly unrelated to this Chapter 11 Case.  As described herein, however, CFGI has undertaken a detailed search to determine, and to disclose, whether it either is providing or has provided services to any significant creditor, equity security holder, insider or other potential party-in-interest in such unrelated matters.

28.     In addition, CFGI has previously appeared, currently appears, and expects to appear

11

in the future in cases unrelated to this Chapter 11 Case before each of the judges of the United States Bankruptcy Court for the Southern District of New York and in which the attorneys, professionals and staff of the Office of the United States Trustee may be involved.

29.    It is possible that certain CFGI employees, principals, managing directors, board members, equity holders, or affiliates of any of the foregoing, may own interests in mutual funds or other investment vehicles (including various types of private funds) that own debt, equity securities, or other financial instruments, including bank loans and other obligations, of certain parties-in-interest in this matter.  Typically, the holders of such interests have no control over investment decisions related to such investment funds or financial instruments.  CFGI's policy prohibits its employees from personally trading in its client's securities.

31.    To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, and except as set forth herein, neither I nor any member of CFGI, nor any principal or professional employee of CFGI have any connection with the Parent Debtor, its creditors, landlords, parties to executory contracts, members, directors, officers, financial institutions, any other party-in-interest, their current respective attorneys, accountants or professionals, the United States Trustee for Region 2 or any person employed in the office of the United States Trustee for Region 2, or are related or connected to any United States Bankruptcy Judge for the Southern District of New York or any of the District Judges for the Southern District of New York who handle bankruptcy cases, nor do we hold or represent any entity having, an adverse interest in connection with this Chapter 11 Case and is a disinterested person, as that term is defined in section 101(14) of the Bankruptcy Code, except as follows:

| Interested Party | CFGI Party With Relationship | Nature of Relationship | Disclosure |
|---|---|---|---|
| Bank Leumi USA | CFGI | Customer | Applicant currently provides interim accounting services to interested party |

WEIL:\98560001\3\12817.0005

| Sompo International | CFGI | Customer | Applicant provided interim accounting services to interested party from March 2020 through July 2020 |
| Willis Towers Watson Northeast, Inc. | CFGI | Insurer | Interested party provided insurance coverage to the Applicant in 2020 |
| Weil Gotshal & Manges LLP | CFGI, Carlyle | Law Firm | Applicant and Carlyle conducts business with interested party in the ordinary course of business |
| Blank Rome LLP | Carlyle | Law Firm | Carlyle conducts business with interested party in the ordinary course of business |
| American Express Travel Related Services Company, Inc. | Carlyle | Vendor | Carlyle conducts business with interested party in the ordinary course of business |
| U.S. Securities and Exchange Commission | Carlyle | Regulatory Agency | Carlyle conducts business with interested party in its capacity as a public company |
| New York State and New York City | Carlyle | Governmental Agency | Interested parties passively invest in Carlyle sponsored investment funds. |

30.     Neither I, CFGI, nor any professional employee of CFGI is related to the Parent Debtor, its creditors or any other party in-interest herein or their respective attorneys in the matter for which CFGI is proposed to be retained.

31.     CFGI has had, may currently have, and may in the future have commercial or professional relationships directly or indirectly with customers, competitors, and creditors of the Parent Debtor. CFGI has undertaken a detailed search to determine, and to disclose, whether it is performing or has performed services for parties in matters related to this Chapter 11 Case.

32.     Despite the efforts described above to identify and disclose the connections that CFGI has with potential parties-in-interest in this Chapter 11 Case, because the Parent Debtor is a complex enterprise with numerous creditors and other relationships, CFGI is unable to state with certainty that every client relationship or other connection has been disclosed.

33.     It is CFGI's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner.  If any new relevant facts or relationships

13

are discovered or arise, CFGI will promptly file a supplemental disclosure. CFGI reserves the

right to supplement this Affidavit in the event that CFGI discovers any facts bearing on matters

described in this Affidavit regarding CFGI's employment by the Parent Debtor.

34.    To the best of my knowledge, CFGI is a disinterested person within the meaning

of section 101(14) of the Bankruptcy Code in that its members and associates (a) are not creditors,

equity security holders or insiders of the Parent Debtor, (b) are not and were not within two years

before the Petition Date a director, officer or employee of the Parent Debtor, (c) do not have an

interest adverse to the interest of the estate, or any class of creditors or equity security holders by

reason of any direct or indirect relationship to, connection with, or interest in the Parent Debtor,

or for any other reason.

35.    CFGI is not aware of any past or present relationship that would disqualify CFGI

from representing the Parent Debtor.

36.    I understand there is a continuing duty to disclose any adverse interest and change

of disinterestedness.

37.    CFGI has not shared or agreed to share any of its compensation with any other

person, other than a principal, professional or employee of CFGI, as permitted by section 504 of

the Bankruptcy Code. The proposed engagement of CFGI is not prohibited by Bankruptcy Rule

5002.

38.    Based upon all the foregoing, I respectfully submit that CFGI does neither hold nor

represent any interest adverse to the Parent Debtor herein or its estate, in the matters upon which

it is to be engaged.  Accordingly, based upon the reasons set forth herein, CFGI is a "disinterested

person," as defined in section 101(14) and as required by section 327(a) of the Bankruptcy Code.

Pursuant to 28 U.S.C. §§ 1746 I declare under penalty of perjury that the foregoing is true and

correct.

Dated: April 7, 2022
      New York, New York

                                  */s/ Joseph Baum* __
                                  Joseph Baum
                                  Partner
                                  Restructuring

WEIL:\98560001\3\12817.0005