**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
                                  :

**In re**                              :

                                  :            **Chapter 11**

**ALL YEAR HOLDINGS LIMITED,**    :

                                  :            **Case No. 21-12051 (MG)**

        **Debtor.**                   :

                                    :

**Fed. Tax Id. No. 98-1220822**      :
--------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328, FED. R. BANKR. P. 2014(a) AND 2016 AND L.B.R. 2014-1 AND 2016-1 FOR AUTHORITY TO RETAIN AND EMPLOY MERIDIAN CAPITAL GROUP LLC AND TIGERBRIDGE CAPITAL LLC d/b/a MERIDAN SECURITIES AS EXCLUSIVE REAL ESTATE FINANCE BROKER FOR THE PARENT DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE

Upon the Application, dated January 14, 2022 (ECF No. 30) (the "**Application**"),[1]

of All Year Holdings Limited (the "**Parent Debtor**"), as debtor and debtor in possession in the

above-captioned chapter 11 case (the "**Chapter 11 Case**"), pursuant to sections 327(a) and 328 of

title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-

1 of the Local Bankruptcy Rules of the Southern District of New York (the "**Local Bankruptcy**

**Rules**"), for entry of an order authorizing the Parent Debtor to retain and employ Meridian Capital

Group, LLC and its broker-dealer affiliate Tigerbridge Capital LLC d/b/a/ Meridian Securities

(collectively, "**Meridian**"), as its exclusive real estate finance broker, in accordance with the terms

and conditions set forth in those certain engagement letters annexed hereto as **Exhibit 1** and

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

**Exhibit 2** (collectively, the "**Engagement Letters**"), *nunc pro tunc* to the Petition Date and extended through the pendency of this Chapter 11 Case; and upon the Declaration of Tamir Kazaz annexed to the Application as **Exhibit B** and the supplemental declaration of Tamir Kazaz, dated April 14, 2022 (ECF No. 78) (collectively, the "**Kazaz Declarations**"); and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application and the deadline for filing objections to the relief requested in the Application (the "**Objection Deadline**") having been provided; and no objections to the relief requested in the Application having been filed prior to the expiration of the Objection Deadline; and upon the Kazaz Declarations and all of the proceedings had before the Court; and the Court being satisfied, based on the representations made in the Application and the Kazaz Declarations, that Meridian is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, neither represents nor holds an interest adverse to the Parent Debtor and its estate; and the Court having found and determined that the terms and conditions of Meridian's employment, including but not limited to the Compensation Structure set forth in the Engagement Letters and summarized in the Application, are reasonable as required by section 328(a) of the Bankruptcy Code; and the Court having found and determined that the relief sought in the Application is in the best interests of the Parent Debtor, its estate, creditors, and all parties in

interest, and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Application is granted as set forth herein.

2.      The Parent Debtor is authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Bankruptcy Rules 2014-1 and 2016-1, to retain and employ Meridian as exclusive real estate finance broker in accordance with the terms and conditions set forth in the Engagement Letters annexed hereto as **Exhibit 1** and **Exhibit 2**, respectively, and as modified herein, *nunc pro tunc* to the Petition Date and extended through the pendency of this Chapter 11 Case.

3.      The Compensation Structure set forth in the Engagement Letters is approved pursuant to section 328(a) of the Bankruptcy Code; provided, however, notwithstanding anything to the contrary in the Recapitalization Engagement Letter, the amount of any Recapitalization Brokerage Fee payable to Meridian pursuant to the Recapitalization Engagement Letter shall be equal to (i) $550,000.00 in the event the counterparty is a Carveout Counterparty (as defined in the Recapitalization Engagement Letter), or (ii) $1,100,000.00 in all other instances. Meridian shall be compensated by the Parent Debtor in the Chapter 11 Case in accordance with the terms of the Engagement Letters, as modified by this Order, subject to the applicable procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Fee Guidelines; provided that the U.S. Trustee shall retain all rights to object or otherwise respond to Meridian's interim and final applications for allowance of its compensation and reimbursement of its expenses on all grounds, including, but not limited to, reasonableness pursuant to section 330 of the Bankruptcy Code.

4.      Notwithstanding anything to the contrary in the Application or the

Engagement Letters, the Engagement Letters are modified as follows:

a.  Paragraphs 14(g) and the last sentence in paragraph 19 of the
Recapitalization Engagement Letter and Financing Engagement Letter,
respectively, shall be inapplicable in this case;

b.  All requests for payment of indemnity, contribution or reimbursement
pursuant to the Engagement Letters shall be made by means of an
application (interim or final as the case may be) and shall be subject to
review by the Court to ensure that payment of such indemnity,
contribution or reimbursement conforms to the terms of the Engagement
Letters (as modified and restated by this Order) and is reasonable based
upon the circumstances of the litigation or settlement in respect of which
indemnity, contribution or reimbursement is sought; *provided, however*,
in no event shall Meridian be indemnified to the extent the Court
determines by final order that any claim or expense has resulted from
the bad-faith, self-dealing, breach of fiduciary duty, gross negligence or
willful misconduct on the part of Meridian;

c.  In the event that Meridian seeks reimbursement from the Parent Debtor
for attorneys' fees in connection with a request for payment of
indemnity, contribution or reimbursement pursuant to the Engagement
Letters (as modified and restated by this Order), the invoices and
supporting time records from such attorneys shall be included in
Meridian's application (interim or final as the case may be) and such
invoices and time records shall be subject to the Fee Guidelines and the
approval of the Court under the standards of sections 330 and 331 of the
Bankruptcy Code without regard to whether such attorney has been
retained under section 327 of the Bankruptcy Code and without regard
to whether such attorneys' services satisfy section 330(a)(3)(C) of the
Bankruptcy Code;

d.  Meridian shall not be entitled to reimbursement by the Parent Debtor
for any fees, disbursements and other charges of Meridian's counsel
other than those incurred in connection with a request of Meridian for
payment of indemnity, retention of the Meridian and preparation of fee
applications;

e.  In no event shall Meridian be entitled to indemnification, contribution,
exoneration, reimbursement of attorneys' fees or expenses, limitation
on liability or allocation or apportionment of damages, indemnified or
exonerated if the Parent Debtor or representatives of the estate assert a
claim, to the extent the Court determines by final order that such claim

for indemnity arose out of Meridian's own bad-faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct on the part of Meridian; and

f.  There shall be no limitation of liability of Meridian, or allocation or apportionment of damages, with respect to a claim or expense to the extent the Court determines by final order that the indemnification, contribution or reimbursement on account of such claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty, gross negligence or willful misconduct on the part of Meridian.

5.      Meridian shall file interim and final fee applications for allowance of its compensation and reimbursement of its expenses with respect to services rendered in the Chapter 11 Case with this Court in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Fee Guidelines; provided, however, that Meridian shall be excused from submitting individual time keeping records as set forth in the Fee Guidelines.

6.      To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letters, and this Order, the terms of this Order shall govern.

7.      The Parent Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

8.      Notice of the Application as provided therein shall be deemed good and sufficient notice of such application and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

9.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in the Chapter 11 Case, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the Chapter 11 Case to a case under chapter 7.

11.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

**IT IS SO ORDERED.**

Dated:  April 15, 2022
            New York, New York

_____**/s/ Martin Glenn**_____
MARTIN GLENN
Chief United States Bankruptcy Judge

**Exhibit 1**
**Recapitalization Engagement Letter**



April 13, 2021

All Year Holdings Limited
Attn: Asaf Ravid, Chief Restructuring Officer

**Re: Exclusive Agreement (the "Agreement") regarding the recapitalization of All Year Holdings Limited**

Mr. Ravid:

The purpose of this letter is to describe the terms and conditions under which Meridian Capital Group, LLC (the "Broker") is authorized to, on behalf of All Year Holdings Limited and affiliates thereof (collectively, the "Client"), procure an equity recapitalization, including, without limitation, preferred equity, a joint venture opportunity, exchange, assignment or other transfer and/or other similar forms of equity investment or transaction (a "Recapitalization") in connection with the recapitalization of the Client at the holding company level. For the avoidance of doubt, a Recapitalization shall include any equity transaction, regardless of the use of proceeds of such equity financing.  Broker shall use its commercially reasonable efforts to obtain and negotiate Recapitalization proposals from financial institutions, equity investors and joint venture investment prospects (each, a "Counterparty") which shall include, without limitation, term sheets, letters of intent, applications, indications of interest or other arrangements (each, which shall include emails, an "Engagement Proposal").  During the Exclusive Period, Client shall forward to Broker any Engagement Proposal, inquiries or other communications in connection therewith or in connection with the Bonds received by it from any source other than Broker upon receipt. Broker does not guarantee that a Recapitalization can or will be obtained.  Client agrees that Broker will not be liable to it for any losses or damages whatsoever in the event a Recapitalization is not obtained. "Bonds" shall mean the bonds as described on Schedule II.

    1. <u>**Grant**</u>. The Client hereby grants to Broker the exclusive right to procure the Recapitalization for a period commencing on the date hereof and continue for a period of 120 days (the "Exclusive Period") on the terms and conditions set forth in this Agreement.  The Client represents that it has the full power and authority to enter into this Agreement.  In the event that, during the Exclusive Period, Client determines that it will seek to sell any real property assets wholly owned by Client (individually or collectively, the "Property"), Client agrees to advise Broker in advance of any marketing or sale efforts in connection with such real property, in order to allow Broker to coordinate such sale, inter alia, in a manner consistent with the Exclusive Brokerage Agreement between the Client and Broker being entered into contemporaneously herewith.

    2. <u>**Performance of Services**</u>. Broker hereby accepts the appointment and agrees to enlist its efforts to secure a satisfactory counterparty(ies) to provide the Recapitalization, and, if Broker deems it necessary, Broker may seek the cooperation of other licensed real estate Brokers representing potential counterparties. In the event Broker cooperates with another licensed real estate broker,

1

before working with such broker, Broker will inform such broker that it must look to its client for any and all compensation which may become due to it for the proposed transaction.  It is acknowledged that Broker shall not be required to share its commission payable hereunder with any cooperating broker.  In no event shall Broker be liable for the failure to obtain such other broker's agreement to look solely to its client for payment of any compensation in connection with the proposed transaction.

### 3. **Compensation**.

If, prior to the end of the Exclusive Period, Client receives an Engagement Proposal, through Broker's efforts or otherwise, then upon the closing of such Recapitalization, Broker shall be paid a fee (as further described on Schedule I attached hereto, the "Brokerage Fee").  The Brokerage Fee will be deemed earned upon Client's acceptance of an Engagement Proposal and the closing of the Recapitalization.  For the avoidance of doubt, any obligation to pay any Brokerage Fee shall be conditioned on the closing of a Recapitalization that is the subject of an Engagement Proposal.

At the end of the Exclusive Period, if no Brokerage Fee has been paid to Broker, Client shall pay to Broker, as consideration for its costs, expenses and services related to preparing the diligence materials in connection with the services to be performed hereunder, an amount equal to $200,000.00 (the "Service Fee").  In the event a Brokerage Fee is subsequently earned and paid to Broker, any Service Fee previously paid shall be credited to the amount of the Brokerage Fee.

To the extent practicable, the Brokerage Fee will be paid to Broker directly from the proceeds of such Recapitalization.  In the event any of the proceeds from such Recapitalization shall be deferred, then the Brokerage Fee with respect to such deferred amount shall be payable only upon receipt by Client of such proceeds.  In the event Client secures a Recapitalization during the Exclusive Period or the Protection Period in violation of this Agreement, Client shall pay to Broker the Brokerage Fee as set forth in this Agreement. For the purposes hereof, the terms (1) "Protection Period" shall mean the first twelve (12) months following the expiration of the Exclusive Period, and (2) "Prospective Counterparty" shall mean any party with whom Broker actively negotiated with during the Exclusive Period.  Broker shall submit to Client no later than 14 days after expiration or termination of this Agreement a list of Prospective Counterparties. For purposes of this provision, "actively negotiating" shall mean engaging in substantive communications regarding the Recapitalization, including, but not limited to, the circulation of offering memoranda or other similar information.

### 4. **Related Agreements.** Broker and Client have entered into that Exclusive Brokerage Agreement dated on or about the date hereof (the "Brokerage Agreement") and Broker and Client have entered into that Exclusive Agreement Regarding 54 Noll Street, Brooklyn, NY 11206 and 123 Melrose Street, Brooklyn, NY 11726 dated February 24, 2021 (the "Real Property Brokerage Agreement").  Any Brokerage Fee earned by Broker pursuant to the terms of this Agreement shall be deemed earned without any right by Client to offset or reduce the amount of Brokerage Fee due because of Broker earning any compensation or fees pursuant to the Brokerage Agreement or the Real Property Brokerage Agreement.

**5. <u>Information</u>**.

Client shall make available to Broker the documents and other information which in the reasonable judgment of Broker are necessary or appropriate for the fulfillment of its assignment hereunder and the proper marketing of the Recapitalization. All documents and information supplied to Broker by the Client shall, to the best of the Client's knowledge, be complete and accurate and the Client shall correct any information which it learns is incomplete or inaccurate. Client may designate certain information as confidential, and Broker will so treat such information. Client understands that the information provided to Broker that Client deems as non-confidential, may be used in the preparation of marketing materials that will be distributed to prospective purchasers. The Client will be asked to approve all marketing materials in advance of their use. Such marketing materials shall disclaim the accuracy or completeness of the information contained therein and that any prospective lender or investor is responsible to conduct its own due diligence. The Client acknowledges and agrees that, as between Broker and Client, Client is responsible for the accuracy and completeness of all information regarding the Property that is provided by or at the direction of Client.  Broker acknowledges and agrees that none of Client's, or any of its affiliates', respective directors, officers, employees, or advisors is making any representation or warranty in a personal capacity with respect to any information, including with respect to the accuracy and completeness of such information.  Additionally, Client agrees to provide to Broker a copy of the final form of the executed asset purchase agreement, equity investment agreement, or other agreement and the closing or settlement statement(s) prepared in connection with the closing and settlement of such transaction(s), which Broker agrees to treat as confidential.

Nothing in this agreement shall be deemed or construed so as to require Broker to perform the services of architects, engineers, contractors, accountants, legal counsel or other professionals requiring special licenses (other than a real estate broker) or make Broker responsible for the failure of the various professionals retained by Client to properly perform their services.  Client hereby agrees (i) to disclose to Broker and all prospective purchasers all third party written information in Client's possession regarding the presence of toxic, contaminated or hazardous substances or conditions at the Property; (ii) to make available to Broker and all prospective purchasers all inspection reports in Client's possession pertaining to the presence of such substances or conditions; and (iii) that Broker is hereby authorized to disclose to any prospective purchaser any information in Client's possession regarding the presence of such substances or conditions.

**6. <u>Analysis</u>**. To the extent that Broker prepares any analysis, valuation, appraisal or other report ("Analysis") regarding the economic value of the Client or the Property, such Analysis shall be promptly provided to Client.  Client acknowledges and agrees that any such Analysis will be an estimate only and will not constitute a representation, warranty, covenant or guaranty, either expressed or implied, regarding future events or performance. Client agrees that any such Analysis will be used for its internal purposes only, and will not be disseminated to any third party without the written consent of Broker.  Client agrees that in the event Client approves the analysis for distribution to investors or potential purchasers as part of the marketing of the Property, Broker can share such Analysis as part of the Property's due diligence information.

**7. <u>Reporting</u>**. Broker shall keep Client current as to the progress of its marketing efforts, in no event less frequently than weekly. During the Exclusive Period, Client will provide notice to Broker all meaningful inquiries and offerings received by Client with respect to the Recapitalization,

regardless of the source of such inquiries or offerings, and all negotiations shall be conducted solely by Broker or under Broker's direction and Client will provide notice to Broker of any meaningful negotiations. Broker shall maintain and from time to time, no less frequently than weekly, provide to Client a list identifying each prospective Counterparty with whom Broker has communicated in furtherance of a possible Recapitalization.

**8. Client's Authority**.

Client, in its sole discretion, reserves its right to accept or reject any offer for a Recapitalization.

Client and the Broker acknowledge and agree that the fees and expenses payable to the Broker hereunder are reasonable. Client and the Broker acknowledge and agree that the time worked, results achieved and ultimate benefit to Client of the work performed in connection with this engagement may be variable, all of which has been fully considered and factored into establishing the fees hereunder.

In the event approval of this Agreement or the fees payable hereunder becomes necessary by the United States Bankruptcy Court, the Israeli courts or any other judicial or regulatory authority, Client shall use commercially reasonable efforts to obtain such approval and Broker shall cooperate in all respects with Client's requests so as to seek and obtain such approval.

**9. Purchaser Representation**. Client acknowledges that Broker is a national financial intermediary and may represent, through listing agreements, debt placement engagements, correspondent production and servicing contracts or otherwise, (a) Prospective Purchasers and/or tenants of the Property, (b) current tenants of the Property, (c) owners, mortgagees or tenants of property that have the same or similar qualities and characteristics as the Property and which may compete with the Property and/or (d) parties having a security interest in the Property. In some cases, potential purchasers may request the Broker's assistance in placing debt on the Property to consummate the purchase of the Property. In such cases where a potential purchaser requests Broker's assistance in placing debt on the Property to consummate the purchase, Broker will, in all cases, fully disclose all potential relationships (including any and all potential fee arrangements) to Client; provided, however, that to the extent a Potential Purchaser approaches Broker's "Debt Placement" professionals to arrange debt with respect to the purchase of the Property and (i) all fees and costs payable in connection with such debt are payable by the Potential Purchaser, and (ii) Broker's professionals in the Broker's "Investment Sales" and "Equity Placement" lines of business are not involved in such debt placement, then Client's consent shall not be required. Client further acknowledges that Broker may reach out to potential lenders in order to obtain general debt terms during the course of this assignment. In addition, Client acknowledges that Broker may also represent potential purchasers and investor prospects regarding the sale of the Property and Client hereby consents to such dual representation.

**10. Limitations on Scope of Services**. Client also understands that Broker will not advise it as to the legal or tax effects of any transaction, and that Client should, if it has not done so already, promptly engage legal and tax professionals to advise it as to all such matters during the course of this engagement and any transaction that may result. Broker shall have no obligation to investigate conditions on or the condition of the Property, nor the financial stability or capability of any prospective purchaser. Client should engage technical staff and other analytical personnel to advise and assist it in each of these areas.

11. **Assignment**. In no event shall either party have the right to assign this Agreement without the consent of the other party, except that, notwithstanding the foregoing, Broker shall have the right to assign this Agreement to an entity into which or with which Broker is merged or consolidated or to which all or substantially all of the assets of or interests in Broker are being transferred whereupon this agency shall be binding upon the parties hereto such permitted successors and assigns.

12. **Advertisement**. Client hereby consents to Broker publicizing its role in any transaction Client enters into, including using its name and logo in any "tombstone" or other advertisement announcing the successful consummation of any of the transactions contemplated hereunder, provided, however, that all such disclosures shall be subject to Client's publication limitation according to the Israeli Security Authority. No publication will be done either of this Agreement or of a potential transaction without Client's written approval in advance.

13. **Bankruptcy Provisions**.   Client covenants and agrees that in the event it seeks protection or otherwise becomes a debtor(s) under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code"), it shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction of the Chapter 11 case(s) ("Bankruptcy Court") for approval pursuant to sections 327, 328, 363 or such other provisions in the Bankruptcy Code as may be applicable, of (i) this Agreement, the Real Property Brokerage Agreement, and the Brokerage Agreement (collectively, the "Agreements") and (ii) Broker's retention by the Client under the terms of the Agreements and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to the standard of review provided in section 330 of the Bankruptcy Code. Client shall provide Broker with a draft of such application and any proposed order authorizing Broker's retention sufficiently in advance of the filing of such application and proposed order to enable Broker and its counsel to review and comment thereon and such retention application shall be acceptable to Broker in all respects. The Client agrees that, subject to court approval, all fees, compensation, and any payments made pursuant to the indemnification, reimbursement, and contribution and expense reimbursement provisions of the Agreements, shall be entitled to priority (pari passu with similarly situated professionals and creditors) as expenses of administration under sections 503 and 507 of the Bankruptcy Code and any fee payable under the Agreements shall be entitled to the benefit of a "carve-out" from the proceeds of any transaction and in addition, all such fees shall be entitled to the benefits of any carve-outs for professional fees and expenses in effect in the Chapter 11 cases(s) pursuant to any financing order entered in the Chapter 11 cases(s). The Client agrees to promptly seek such carve-outs from any financing or cash collateral orders of any of its secured lenders.

The Brokerage Fee will be paid to Broker directly from the proceeds of any Recapitalization. Client and Broker agree that upon entry by Client into a definitive agreement for the Recapitalization, as part of any such agreement, Client shall (if requested by Broker) provide an irrevocable instruction for the counterparty to such definitive agreement to directly pay Broker the Brokerage Fee earned upon the closing of such Recapitalization, which irrevocable instruction shall be in a form to be specified by Broker.

14. **Miscellaneous**.

(a) Nothing contained in this Agreement or in the relationship of Client and Broker shall be deemed or construed as a partnership, joint venture or any other similar relationship, and Broker shall at all times be deemed an independent contractor and not an employee of Client.

(b) The parties intend that the terms of this Agreement shall be the final expression of their agreement with respect to the Property hereof and may not be contradicted by evidence of any prior or contemporaneous agreement. This Agreement supersedes any prior representations or agreements regarding the Property, whether written or oral by either or both parties. No amendments to or modifications of this Agreement shall be valid or binding unless made in writing and signed by both Client and Broker.

(c) This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Copies of this Agreement exchanged by facsimile or other electronic image shall be valid and binding on the party that has executed the same.

(d) This Agreement shall be deemed to have been made under and be construed in accordance with the laws of the State of New York. The parties consent to the exclusive jurisdiction of the Supreme Court of the State of New York, County of New York, for the resolution of any disputes that arise under this Agreement.

(e) In the event that any action, suit or other proceeding in law or in equity is brought in connection with any term or provision in this agreement, and such action results in the award of a judgment for money damages or in the granting of any injunction or restraining order, all expenses (including reasonable attorneys' fees) of the prevailing party in such action, suit or other proceeding shall be paid promptly by the non-prevailing party.

(f) To the fullest extent permitted by applicable law, Client shall indemnify and hold Broker and its employees, agents, successors, and assigns (each a "Covered Person") from and against any and all losses, claims, demands, liabilities, expenses, judgements, fines, settlements and other amounts arising from any and all claims, demands, actions, suits, proceedings, civil, criminal, administrative or investigative in which the Covered Person may be involved, or threatened to be involved; as a party or otherwise, relating to or arising out of this Agreement, except that no Covered Person shall be entitled to such indemnification with respect to any loss, damage or claim incurred by such Covered Person by reason of any Covered Person's gross negligence, willful misconduct or willful breach of this Agreement.

(g) Broker shall not be liable for incidental, punitive, exemplary, indirect or consequential damages, or lost profits arising under or relating to this Agreement. Broker's liability for any damages or other monetary amounts relating to this Agreement shall not exceed the total fees received by Broker under this Agreement.

(h) Broker (i) represents and warrants that it is duly licensed under the laws of the State of New York as a real estate broker and agrees that it shall maintain in good standing and renew such license(s) throughout the term of this Agreement.

(i) Notwithstanding anything contained in this Agreement to the contrary, in the event that, in Broker's sole discretion, the provision of certain services described herein in connection with any Recapitalization shall require a United States Securities and Exchange Commission-registered broker-dealer or similar securities intermediary registration of any other jurisdiction where such registration is required, Broker shall have the right to assign this Agreement (or any portion hereof, including, without limitation, the right to receive certain Fee(s)) to TigerBridge Capital LLC d/b/a Meridian Securities (the "BD Advisor"), and BD Advisor shall become a party to this Agreement by the execution and delivery of a joinder (and acceptance thereof by Broker and Client) at such time.  In such an event, the term "Broker", as used in this Agreement, shall refer, collectively, to Broker and the BD Advisor, as the context may require.

(j) The headings and captions of various sections of this Agreement are for convenience of reference only and are not to be construed as defined or limiting, in any way, the scope or intent of the provisions hereof.

Provided the terms and conditions of this agreement meet with your approval, please evidence your agreement by executing this letter on behalf of the Client, and return it to me.

Sincerely,

Meridian Capital Group LLC

By: _____

Name:  Peter Leung
Title:  Managing Director, Legal Dept.

**AGREED AND ACCEPTED:**

All Year Holdings Limited

By: _____
Name: _____
Title: _____

7

(h) Broker (i) represents and warrants that it is duly licensed under the laws of the State of New York as a real estate broker and agrees that it shall maintain in good standing and renew such license(s) throughout the term of this Agreement.

(i) Notwithstanding anything contained in this Agreement to the contrary, in the event that, in Broker's sole discretion, the provision of certain services described herein in connection with any Recapitalization shall require a United States Securities and Exchange Commission-registered broker-dealer or similar securities intermediary registration of any other jurisdiction where such registration is required, Broker shall have the right to assign this Agreement (or any portion hereof, including, without limitation, the right to receive certain Fee(s)) to TigerBridge Capital LLC d/b/a Meridian Securities (the "BD Advisor"), and BD Advisor shall become a party to this Agreement by the execution and delivery of a joinder (and acceptance thereof by Broker and Client) at such time. In such an event, the term "Broker", as used in this Agreement, shall refer, collectively, to Broker and the BD Advisor, as the context may require.

(j) The headings and captions of various sections of this Agreement are for convenience of reference only and are not to be construed as defined or limiting, in any way, the scope or intent of the provisions hereof.

Provided the terms and conditions of this agreement meet with your approval, please evidence your agreement by executing this letter on behalf of the Client, and return it to me.

Sincerely,

Meridian Capital Group LLC

By: _____
Name:
Title:

**AGREED AND ACCEPTED:**

All Year Holdings Limited

By: _____
Name: _____ Asaf Ravid _____
Title: _____ CRO _____

7

## Schedule I

### Brokerage Fee Schedule

A.       If Client receives an Engagement Proposal during the Exclusive Period, through Broker's efforts or otherwise, upon the closing of a Recapitalization, Broker shall be paid a Fee (the "***Brokerage Fee***") in an amount equal to:

    (i)       three percent (3.00%) of the maximum amount of the equity commitments or obligations (provided, that in the event any proceeds are deferred, such amounts shall be payable upon receipt by Client of such proceeds) (the "Equity Obligation") of applicable Counterparty for all amounts up to and including $25,000,000.00;

    (ii)       two and one-half percent (2.50%) of the maximum amount of the Equity Obligation of applicable Counterparty for the portion that exceeds $25,000,000.00 and up to and including $50,000,000.00;

    (iii)       two percent (2.0%) of the maximum amount of the Equity Obligation of applicable Counterparty for the portion that exceeds $50,000,000.00 and up to and including $75,000,000.00;

    (iv)       one and one-half percent (1.50%) of the maximum amount of the Equity Obligation of applicable Counterparty for the portion that exceeds $75,000,000.00 and up to and including $100,000,000.00;

    (v)       one percent (1.00%) of the maximum amount of the Equity Obligation of applicable Counterparty for the portion that exceeds $100,000,000.00 and up to and including $150,000,000.00; and

    (vi)       one-half of one percent (0.50%) of the maximum amount of the Equity Obligation of applicable Counterparty for the portion that exceeds $150,000,000.00.

B.       To the extent any Prospective Counterparty (which for the avoidance of doubt, shall include any Carveout Counterparty) provides an Engagement Proposal during the Exclusive Period and/or Protection Period resulting in a Recapitalization that, thereafter, closes no later than three (3) months after the expiration of the Protection Period, Broker shall be paid the Brokerage Fee as set forth in Section A of this Schedule I.

C.       Notwithstanding the foregoing, in the event that a Recapitalization transaction is completed pursuant to Section A or B of this Schedule I with any Carveout Counterparty (as defined below), the Brokerage Fee payable with respect to the Equity Obligation of such Carveout Counterparty shall be reduced to 50% of the Brokerage Fee as set forth in Section A of this Schedule I.

D.       Client acknowledges that, notwithstanding the fact that Broker is not being engaged to procure any transaction involving the Bonds, a Prospective Counterparty may enter into a transaction involving the Bonds.  In the event that, during the Exclusive Period and/or Protection Period, any Prospective Counterparty enters into a transaction to purchase, pay off, assume,

assign the Bonds (or any other similar transaction) (a "Bonds Transaction"), which directly results in a reduction in principal, conversion to equity or similar event with respect to such Bonds, whether in one or more related transactions, and which is approved by Client, Client shall pay to Broker a fee equal to four-tenths of one percent (0.40%) of the gross purchase price of such Bonds Transaction; *provided*, however, that in the event that such Bonds Transaction is entered into by a Carveout Counterparty, such fee shall be reduced to one-quarter of one percent (0.25%) of the gross purchase price of such Bonds Transaction.

"Carveout Counterparty" shall mean each of:
1. Churchill/ Fleishman/ Philipson Family/ Paragraph
2. Meadow Partners/ Madison
3. Tabak
4. York / Jeremy Blank
5. Apollo
6. Silverstein
7. DW Partners
8. Blue Arch Capital
9. Downtown Capital

## **Schedule II**

Bonds

Collectively:

| | | |
|---|---|---|
| ALL YEAR B2 | ALYR.B2 | IL0011397812 |
| ALL YEAR B4 | ALYR.B4 | IL0011412744 |
| ALL YEAR B5 | ALYR.B5 | IL0011433047 |

For the avoidance of doubt, the definition of Bonds excludes the bonds designated ALL YEAR B3 ALYR.B3 IL0011401366

220999816v1

## AMENDMENT TO EXCLUSIVE AGREEMENT

THIS AMENDMENT TO EXCLUSIVE AGREEMENT (this "Amendment"), dated as of August 10, 2021, is by and among All Year Holdings Limited ("Client") and Meridian Capital Group LLC ("Broker").

## RECITALS

A.    Client and Broker entered into that certain Exclusive Agreement dated April, 13, 2021, ("Recapitalization Agreement") regarding the recapitalization of Client.

B.    Client and Broker have determined that it is in the best interest of parties to the Agreement that certain terms and conditions of the Agreement are amended and modified as set forth herein.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants contained herein the parties hereby agree as follows:

1.    **Defined Terms**. All capitalized terms used in this Amendment shall have the respective meanings given to them in the Agreements unless otherwise defined herein.

2.    **Exclusive Period**. The Exclusive Period of the Recapitalization Agreement is hereby extended for a period of 45 days to (September 25, 2021).

3.    **Successors and Assigns**. This Amendment shall be binding upon and inure to the benefit of Client and Broker and their respective successors and assigns.

4.    The terms and conditions of this Amendment shall amend, supersede, replace, govern and control over any conflicting or inconsistent terms and conditions in the Agreement, but except as modified in this Amendment, all other terms and conditions of the Agreement shall remain unmodified and in full force and effect.

5.    **Governing Law**. THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS ENTERED INTO AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE.

6.    **Counterparts**. This Amendment may be executed in multiple counterparts and delivered by facsimile or pdf, each of which shall be an original but all of which together shall constitute but one and the same Amendment.

[Signatures begin on next page]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first above written.

CLIENT:

ALL YEAR HOLDINGS LIMITED

By: _____
     Name: Assaf Ravid
     Title: CRO

BROKER:

MERIDIAN CAPITAL GROUP LLC

By: _____
     Name:  Peter Leung
     Title:   Managing Director, Legal Dept.

## SECOND AMENDMENT TO EXCLUSIVE AGREEMENT

THIS SECOND AMENDMENT TO EXCLUSIVE AGREEMENT (this "<u>Amendment</u>"), dated as of September __, 2021, is by and among All Year Holdings Limited ("Client") and Meridian Capital Group LLC ("Broker").

## RECITALS

A.    Client and Broker entered into that certain Exclusive Agreement dated April, 13, 2021, as amended by that certain Amendment to Exclusive Agreement dated August 10, 2021, (as amended, "Recapitalization Agreement") regarding the recapitalization of Client.

B.    Client and Broker have determined that it is in the best interest of parties to the Agreement that certain terms and conditions of the Agreement are amended and modified as set forth herein.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants contained herein the parties hereby agree as follows:

1.    <u>**Defined Terms**</u>. All capitalized terms used in this Amendment shall have the respective meanings given to them in the Agreements unless otherwise defined herein.

2.    <u>**Exclusive Period**</u>. The Exclusive Period of the Recapitalization Agreement is hereby extended for a period of 45 days to (November 9, 2021).

3.    <u>**Successors and Assigns**</u>. This Amendment shall be binding upon and inure to the benefit of Client and Broker and their respective successors and assigns.

4.    The terms and conditions of this Amendment shall amend, supersede, replace, govern and control over any conflicting or inconsistent terms and conditions in the Agreement, but except as modified in this Amendment, all other terms and conditions of the Agreement shall remain unmodified and in full force and effect.

5.    <u>**Governing Law**</u>. THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS ENTERED INTO AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE.

6.    <u>**Counterparts**</u>. This Amendment may be executed in multiple counterparts and delivered by facsimile or pdf, each of which shall be an original but all of which together shall constitute but one and the same Amendment.

[Signatures begin on next page]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first above written.

CLIENT:

ALL YEAR HOLDINGS LIMITED

By: _____
      Name: Asaf Ravid
Title:CRO

BROKER:

MERIDIAN CAPITAL GROUP LLC

By: _____
      Name: Peter Leung
      Title:  Managing Director, Legal Dept.

**THIRD AMENDMENT TO EXCLUSIVE AGREEMENT**

THIS THIRD AMENDMENT TO EXCLUSIVE AGREEMENT (this "Amendment"), dated as of November 9, 2021, is by and among All Year Holdings Limited ("Client") and Meridian Capital Group LLC ("Broker").

**RECITALS**

A.    Client and Broker entered into that certain Exclusive Agreement dated April 13, 2021, as amended by that certain Amendment to Exclusive Agreement dated August 10, 2021, and that certain Second Amendment to Exclusive Agreement dated September 24, 2021 (as amended, "Recapitalization Agreement") regarding the recapitalization of Client.

B.    Client and Broker have determined that it is in the best interest of parties to the Agreement that certain terms and conditions of the Agreement are amended and modified as set forth herein.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants contained herein the parties hereby agree as follows:

1.    **Defined Terms**. All capitalized terms used in this Amendment shall have the respective meanings given to them in the Agreements unless otherwise defined herein.

2.    **Exclusive Period**. The Exclusive Period of the Recapitalization Agreement is hereby extended for a period of 45 days to (December 24, 2021).

3.    **Successors and Assigns**. This Amendment shall be binding upon and inure to the benefit of Client and Broker and their respective successors and assigns.

4.    The terms and conditions of this Amendment shall amend, supersede, replace, govern and control over any conflicting or inconsistent terms and conditions in the Agreement, but except as modified in this Amendment, all other terms and conditions of the Agreement shall remain unmodified and in full force and effect.

5.    **Governing Law**. THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS ENTERED INTO AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE.

6.    **Counterparts**. This Amendment may be executed in multiple counterparts and delivered by facsimile or pdf, each of which shall be an original but all of which together shall constitute but one and the same Amendment.

[Signatures begin on next page]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first above written.

<u>CLIENT</u>:

ALL YEAR HOLDINGS LIMITED

By: _____

Name: Asaf Ravid Ephraim Diamond

Title: CRO

ARO

<u>BROKER</u>:

MERIDIAN CAPITAL GROUP LLC

By: _____

Name: Peter Leung

Title: Managing Director, Legal Dept.

**Exhibit 2**
**Financing Engagement Letter**



### Exclusive Brokerage Agreement

This brokerage agreement (the "**Agreement**") is being entered into as of April 13, 2021 by and between All Year Holdings Limited, having an address at 12 Spencer Street, 3rd Floor, Brooklyn, New York 11205 (on behalf of itself, and its Affiliates, as defined herein, collectively, "**Client**"), and Meridian Capital Group, LLC having an address at 1 Battery Park Plaza, 26th Floor, New York, NY 10004 ("**Meridian**"). As used herein, "**Affiliates**" shall mean those entities that are controlled by or are under common control with Client, including, without limitation, the funds, subsidiaries and/or entities managed by Client or its Affiliates. In consideration of the mutual covenants and undertakings to be performed under this Agreement, the parties hereto agree as follows:

1.  Client hereby grants Meridian the sole and exclusive right during the Exclusivity Term (defined herein) to (i) procure mortgage and/or mezzanine financing for the real property described on Exhibit A attached hereto (individually or collectively as the context may require, the "**Premises**"), which may include, without limitation, any form of debt, funds provided by or through a secured or unsecured loan, preferred equity and any form of construction or bridge financing (a "**Financing**") and/or (ii) negotiate modifications, amendments, extensions, or other similar transactions relating to any of the existing financings of the Premises (a "**Modification**"). For the avoidance of doubt, a Financing or Modification shall not include the Bonds. "**Bonds**" shall mean the bonds as described on Exhibit B. Meridian shall use its commercially reasonable efforts to negotiate Financing and/or Modification proposals for the Premises with financial institutions or other financing sources that may include, but shall not be limited to, term sheets, letters of intent, applications, indications of interest or other financing arrangements from such financial institutions for Financings or Modifications (each, which, for the avoidance of doubt, includes emails, a "**Loan Engagement**"). During the Exclusivity Term, Client shall forward to Meridian any Loan Engagement or proposal therefor, inquiry, or other communication relating to a Financing received by it from any source other than Meridian upon receipt. Meridian does not guarantee that a Financing can or will be obtained. Client agrees that Meridian will not be liable to it for any losses or damages whatsoever in the event a Financing is not obtained. The Client represents that it has the full power and authority to enter into this Agreement and execute a Financing or Modification.

2.  The term of this Agreement shall commence on the date hereof and continue for a period of 120 days (the "**Exclusivity Term**"). For the avoidance of doubt, the Agreement will only apply to entities and/or properties in which Client holds a 100% interest. Client will use commercially reasonable efforts to bring the partially owned properties into this Agreement.

3.  If, prior to the end of the Exclusivity Term, Client receives a Loan Engagement, through Meridian's efforts or otherwise, then upon the closing of such Financing, Meridian shall be paid a fee equal to eighty basis points (0.8%) of the maximum amount of proceeds available pursuant to such Financing, including, without limitation, reserves, holdbacks and future funding obligations (the "**Financing Fee**"), or in the case of a Modification, Meridian shall be paid a fee equal to thirty basis points (0.3%) of the maximum commitment amount of the loan modified, including, without limitation, reserves, holdbacks and future funding obligations (the "**Modification Fee**" together with a Financing Fee, a "**Brokerage Fee**"). In the event any of the proceeds or loan modification amount from such Financing or Modification shall be deferred, then the Brokerage Fee with respect to such deferred amount shall be payable only upon receipt by Client of such proceeds or loan modification.

4.  Meridian and Client are contemporaneously entering into an Exclusive Agreement Regarding the Recapitalization of All Year Holdings Limited dated on or about the date hereof (the "**Recapitalization Agreement**"), and Meridian and Client have entered into that Exclusive Agreement Regarding 54 Noll

Exclusive Brokerage Agreement
April 13, 2021
Page **2** of **8**

Street, Brooklyn, NY 11206 and 123 Melrose Street, Brooklyn, NY 11726 dated February 24, 2021 (the "***Real Property Brokerage Agreement***"). Any Brokerage Fee earned by Meridian pursuant to the terms of this Agreement shall be deemed earned without any right by Client to offset or reduce the amount of Brokerage Fee due because of Meridian earning any compensation or fees pursuant to the Recapitalization Agreement or the Real Property Brokerage Agreement.

5. Client agrees to pay Meridian the Financing Fee upon the closing of the Financing, if within one (1) year after the expiration of the Exclusivity Term then in effect or the termination of this Agreement (the "***Tail Period***"), Client enters into a Loan Engagement with a financial institution (or an affiliate thereof) with whom Meridian was actively negotiating during the Exclusivity Term (including any financial institution from whom a Loan Engagement was obtained during the Exclusivity Term) and set forth on a list to be submitted by Meridian to Client no later than 14 days after expiration or termination of this Agreement (a "***Protected Investor***"), and thereafter obtains and closes a corresponding Financing. For purposes of this provision, "actively negotiating" shall mean engaging in substantive communications regarding the Financing or Modification, including, but not limited to, the circulation of offering memoranda or other similar information.

6. In each case set forth herein, the Brokerage Fee is deemed earned and shall be due and payable upon the closing of any Financing or Modification. Client shall have no obligation to accept any Loan Engagement. The Brokerage Fee will be paid to Meridian directly from the proceeds of the applicable Financing or Modification (if applicable). Meridian and Client agree that upon entry by Client into a definitive agreement for the Financing or Modification, Client shall provide an irrevocable instruction for the counterparty to such definitive agreement to directly pay Meridian the Brokerage Fee earned upon the closing of such Financing or Modification, which irrevocable instruction shall be in a form to be specified by Meridian.

7. To the extent that Client asks Meridian to perform services on other engagements not specified herein, the terms and conditions of this Agreement shall apply to such services unless the parties hereto execute a separate written agreement governing such separate engagement.

8. Client acknowledges and agrees that, to the extent Meridian prepares any analysis, valuation, appraisal or other report ("***Analysis***") regarding the economic value of the Premises or Client's interest therein, such Analysis shall be promptly provided to Client. Client acknowledges and agrees that any such Analysis will be an estimate only and will not constitute a representation, warranty, covenant or guaranty, either expressed or implied, regarding future events or performance. Client covenants that the Analysis will be used for its internal purposes only and will not be disseminated to any third party without the prior written consent of Meridian. Client also understands that Meridian will not advise it as to the legal or tax effects of any transaction, and that Client should, if it has not done so already, promptly engage legal and tax professionals to advise it as to all such matters. In addition, neither party shall assign this agreement or any right or obligation hereunder without the prior written consent of the other party.

9. Client and Meridian acknowledge and agree that the fees and expenses payable to Meridian hereunder are reasonable. Client and Meridian acknowledge and agree that the time worked, results achieved and ultimate benefit to Client of the work performed in connection with this engagement may be variable, all of which has been fully considered and factored into establishing the fees hereunder.

10. In the event approval of this Agreement or the fees payable hereunder becomes necessary by the United States Bankruptcy Court, the Israeli courts or any other judicial or regulatory authority, Client shall use commercially reasonable efforts to obtain such approval and Meridian shall cooperate in all respects with Client's requests so as to seek and obtain such approval.

Exclusive Brokerage Agreement
April 13, 2021
Page 3 of 8

11. Any notice, demand or request required or permitted to be given or made under this Agreement will be in writing and will be deemed given or made when delivered in person, when sent by United States registered or certified mail, or postage prepaid, or when telecopied to the applicable party at the above listed address, and if to Meridian, to the attention of Peter T. Leung, Director of Legal, and if to Client, to the attention of the Chief Restructuring Officer. The parties to this Agreement may change their addresses for notice by notifying the other parties in the manner provided in this Section 11.

12. This Agreement incorporates the entire understanding of the parties with respect to this engagement of Meridian by Client and supersedes all previous agreements regarding such engagement, should they exist, and shall be governed by, and construed and enforced in accordance with, the laws of the State of New York (without regard to conflicts of law principles). If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

13. Client covenants and agrees that (i) if Client secures a Loan Engagement during the Exclusivity Term or, from a Protected Investor during the Tail Period described herein in violation of this Agreement and subsequently closes the corresponding Financing, Client shall pay to Meridian the Financing Fee as set forth above and (ii) Client will not directly, or in conjunction with any other person, take any actions intended to circumvent Meridian's rights hereunder or to the Brokerage Fee in connection with a Financing or Modification.

14. Each party consents to the exclusive jurisdiction of the courts of the State of New York and the United States District Court for the Southern District of New York as well as the jurisdiction of any court from which an appeal may be taken from such courts, for the purpose of any litigation, proceeding, or other action arising out of such party's obligations under or with respect to this agreement, and expressly waives any and all objections such person may have to venue in such courts.

15. If any action or proceeding is instituted by a party arising out of or to enforce this Agreement, the prevailing party in such action or proceeding (as determined by the arbitrator, court, agency or other authority before which such action or proceeding is adjudicated), shall be entitled to such reasonable attorney fees, costs and expenses as may be fixed by the decision maker, including the costs of collection.

16. Each party acknowledges that the person executing this Agreement on behalf of such party has full power and authority to do so and this Agreement is a valid and binding obligation of such party. This Agreement shall be binding upon Client and its successors and assigns and any subsequent owner of the Premises.

17. Client hereby authorizes Meridian to take any and all actions reasonably necessary in order to carry out its obligations hereunder in accordance with the terms and provisions hereof. Client further agrees to cooperate with Meridian and undertakes to commit its commercially reasonable efforts to supply Meridian with all documents and information necessary to act on behalf of Client. Client acknowledges and agrees that, as between Meridian and Client, Client is responsible for the accuracy and completeness of all information regarding the Premises that is provided by or at the direction of Client. Client represents and warrants that the information and documents that it provides, to the best of Client's knowledge, is true, correct and complete and no material information has been withheld. Without limiting the generality of the foregoing, Client agrees to supply Meridian with updated and current documents and financial information as Meridian deems necessary. Meridian acknowledges and agrees that none of Client's, or any of its affiliates', respective directors, officers, employees, or advisors is making any representation or warranty in a personal capacity with respect to any information, including with respect to the accuracy and completeness of such information. Client will be asked to approve all marketing

Exclusive Brokerage Agreement
April 13, 2021
Page 4 of 8

materials in advance of their use.  Such marketing materials shall disclaim the accuracy or completeness of the information contained therein and that any prospective lender or investor is responsible to conduct its own due diligence.

18. Meridian shall keep Client current as to the progress of its marketing efforts, in no event less frequently than weekly.  Meridian shall maintain and from time to time, no less frequently than weekly, provide to Client a list identifying each prospective financing institution that Meridian has communicated in furtherance of a possible Financing or Modification.

19. To the fullest extent permitted by applicable law, Client shall indemnify and hold harmless Meridian and its employees, agents, successors, and assigns (each a "**Covered Person**") from and against any and all losses, claims, demands, liabilities, expenses, judgements, fines, settlements and other amounts arising from any and all claims, demands, actions, suits, proceedings, civil, criminal, administrative or investigative in which the Covered Person may be involved, or threatened to be involved; as a party or otherwise (including, without limitation, subpoenas and/or information requests), relating to or arising out of this Agreement, except that no Covered Person shall be entitled to such indemnification with respect to any loss, damage or claim incurred by such Covered Person by reason of any Covered Person's gross negligence, willful misconduct or willful breach of this Agreement.  Meridian shall not be liable for incidental, punitive, exemplary, indirect or consequential damages, or lost profits arising under or relating to this Agreement. Meridian's liability for any damages or other monetary amounts relating to this Agreement shall not exceed the total amount of all fees actually received by Meridian under this Agreement.

20. Client covenants and agrees that in the event it seeks protection or otherwise becomes a debtor(s) under Chapter 11 of the United States Bankruptcy Code ("**Bankruptcy Code**"), it shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction of the Chapter 11 case(s) ("**Bankruptcy Court**") for approval pursuant to sections 327, 328, 363 or such other provisions in the Bankruptcy Code as may be applicable, of (i) this Agreement, the Real Property Brokerage Agreement, and the Recapitalization Agreement (collectively, the "**Agreements**") and (ii) Meridian's retention by the Client under the terms of the Agreements and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to the standard of review provided in section 330 of the Bankruptcy Code. Client shall provide Meridian with a draft of such application and any proposed order authorizing Meridian's retention sufficiently in advance of the filing of such application and proposed order to enable Meridian and its counsel to review and comment thereon and such retention application shall be acceptable to Meridian in all respects. The Client agrees that, subject to court approval, all fees, compensation, and any payments made pursuant to the indemnification, reimbursement, and contribution and expense reimbursement provisions of the Agreements, shall be entitled to priority (pari passu with similarly situated professionals and creditors) as expenses of administration under sections 503 and 507 of the Bankruptcy Code and any fee payable under the Agreements shall be entitled to the benefit of a "carve-out" from the proceeds of any transaction and in addition, all such fees shall be entitled to the benefits of any carve-outs for professional fees and expenses in effect in the Chapter 11 case(s) pursuant to any financing order entered in the Chapter 11 cases(s). The Client agrees to promptly seek such carve-outs from any financing or cash collateral orders of any of its secured lenders.

21. Notwithstanding anything contained in this Agreement to the contrary, in the event that, in Meridian's sole discretion, the provision of certain services described herein in connection with any Financing or Modification shall require a duly registered broker-dealer or similar securities intermediary registration of any other jurisdiction where such registration is required, Meridian shall have the right to assign this Agreement (or any portion hereof, including, without limitation, the right to receive certain Fee(s)) to to TigerBridge Capital LLC d/b/a Meridian Securities (the "**BD Advisor**"), and such BD Advisor shall become a party to this Agreement by the execution and delivery of a joinder (and acceptance thereof by

Exclusive Brokerage Agreement
April 13, 2021
Page **5** of **8**

Meridian and Client) at such time.  In such an event, the term "Meridian," as used in this Agreement, shall refer, collectively, to Meridian and the BD Advisor, as the context may require.

22. This Agreement may be executed in counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.  Facsimile and portable document format (PDF) signatures are acceptable to effectuate the terms of this Agreement.

[End of Brokerage Agreement]

Exclusive Brokerage Agreement
April 13, 2021
Page **6** of **8**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

MERIDIAN CAPITAL GROUP, LLC

By:_____
Name:   Peter Leung
Title:    Managing Director, Legal Dept.

ACCEPTED AND AGREED:

All Year Holdings Limited

By:_____
Name:   Asaf Ravid          4.12.2021
Title:    CRO

Exclusive Brokerage Agreement
April 13, 2021
Page 7 of 8

## Exhibit A

### Properties

All real properties wholly-owned (directly or indirectly) or controlled by Client. Notwithstanding any other provision herein, Properties shall exclude all direct and indirect assets of All Year Equity Partners LLC.

AYH Properties

| | Assets |
|---|---|
| 1 | 17 Devoe Street |
| 2 | 165 Central Avenue |
| 3 | 198 Scholes Street |
| 4 | 11 Gunther Place |
| 5 | 194 Ralph Avenue |
| 6 | 1055 Dean Street |
| 7 | 401 Suydam Street |
| 8 | 716 Jefferson Avenue |
| 9 | 215 Himrod Street |
| 10 | 132 Havemeyer Street |
| 11 | 160 Havemeyer Street |
| 12 | 79 South 6 Street |
| 13 | 22 Dodworth Street |
| 14 | 1044 Flushing Avenue |
| 15 | 3609 15th Avenue |
| 16 | 3611 15th Avenue |
| 17 | 419 Classon Avenue |
| 18 | 778 Lincoln Place |
| 19 | 360 Decatur Street |
| 20 | 136 Kingsland Avenue |
| 21 | 574 Broadway |
| 22 | 271 Metropolitan Avenue |
| 23 | 591 Franklin Avenue |
| 24 | 648 Myrtle Avenue |
| 25 | 57-59 Grand Street |
| 26 | 28 Wilson Avenue |
| 27 | 473 Park Place |
| 28 | 254 Palmetto Street |
| 29 | 311 Melrose Street |
| 30 | 291 Metropolitan Avenue |
| 31 | 65 Kent Avenue |
| 32 | 125 & 133 Leonard Street |
| 33 | 305 Grand Street |
| 34 | 527 Knickerbocker Avenue |
| 35 | 533 Knickerbocker Avenue |
| 36 | 735 Bedford Avenue |
| 37 | 871 Grand Street |
| 38 | 82 Jefferson Street |
| 39 | 69 Stockholm Street |
| 40 | 273 Skillman Street |
| 41 | 506 Dekalb Avenue |
| 42 | 89 North 4th Street |
| 43 | 300 Nassau Avenue |
| 44 | 161 Troutman Street |

| | |
|---|---|
| 45 | 191 Troutman Street |
| 46 | 300 Troutman Street |
| 47 | 189 Menahan Street |
| 48 | 679 - 681 Classon Avenue |
| 49 | 378 Lewis Avenue |
| 50 | 497 Prospect Place |
| 51 | 166 Harman Street |
| 52 | 167 Harman Street |
| 53 | 135 Rogers Avenue |
| 54 | 163 Troutman Street |
| 55 | 226 Troutman Street |
| 56 | 238 Troutman Street |
| 57 | 242 Troutman Street |
| 58 | 247 Troutman Street |
| 59 | 239 Troutman Street |
| 60 | 222 Stanhope Street |
| 61 | 1418 Putnam Avenue |
| 62 | 1420 Putnam Avenue |
| 63 | 90 Wilson Avenue |
| 64 | 48 Wilson Avenue |
| 65 | 170 Knickerbocker Avenue |
| 66 | 101 Quincy Street |
| 67 | 1159 Dean Street |
| 68 | 654 Park Place |
| 69 | 461 Park Place |
| 70 | 469 Park Place |
| 71 | 600 Park Place |
| 72 | 694 Franklin Avenue |
| 73 | 1221 Atlantic - 52 Herkimer Place |
| 74 | 1058 Bergen Street |
| 75 | 916 Madison Street |
| 76 | 150 Grove Street |
| 77 | 192 Jefferson Street |
| 78 | 233 Jefferson Street |
| 79 | 231 Jefferson Street |
| 80 | 161 Meserole Street |
| 81 | 212 & 214 Grand Street |
| 82 | 145 Driggs Avenue |
| 83 | 30 Driggs Avenue |
| 84 | 1012 Willoughby Avenue |
| 85 | 1136 Willoughby Avenue |
| 86 | 54 Lewis Avenue |
| 87 | 1323 Bedford Avenue |
| 88 | 1358 Dekalb Avenue |
| 89 | 1426 Bedford Avenue-690 prospect |
| 90 | 892 Myrtle Avenue |
| 91 | 143 North 8 Street |

| | |
|---|---|
| 92 | 392 St Marks Avenue |
| 93 | 283 Nostrand Avenue |
| 94 | 71 Wilson Avenue |
| 95 | 1088 Bedford Avenue |
| 96 | 697 Prospect Place |
| 97 | 274 Jefferson Street |
| 98 | 307 Devoe Street |
| 99 | 273 Driggs Avenue |
| 100 | 1397 Greene Avenue |
| 101 | 381 Metropolitan Avenue |
| 102 | 1361 Greene Avenue |
| 103 | 277 Classon Avenue |
| 104 | 199 Weirfield Street |
| 105 | 252 Grand Street |
| 106 | 259 Evergreen Avenue |
| 107 | 335-337 St. Nicholas Avenue |
| 108 | 132A Stanhope Street |
| 109 | 268 Metropolitan Avenue |
| 110 | 236 Meserole Street |
| | **Joint Control** |
| 111 | 430 Albee |
| 112 | North Flats |
| | **Financial Assets** |
| 113 | 227 Grand Street |

Exclusive Brokerage Agreement
April 13, 2021
Page **8** of **8**

Exhibit B

Description of Bonds

| ALL YEAR | B2 | ALYR.B2 | IL0011397812 |
|----------|----|---------|--------------|
| ALL YEAR | B3 | ALYR.B3 | IL0011401366 |
| ALL YEAR | B4 | ALYR.B4 | IL0011412744 |
| ALL YEAR | B5 | ALYR.B5 | IL0011433047 |

## AMENDMENT TO EXCLUSIVE AGREEMENT

THIS AMENDMENT TO EXCLUSIVE AGREEMENT (this "Amendment"), dated as of August 10, 2021, is by and among All Year Holdings Limited ("Client") and Meridian Capital Group LLC ("Broker").

### RECITALS

A.    Client and Broker entered into that certain Exclusive Brokerage Agreement dated April, 13, 2021, ("Financing Agreement") regarding the financing and modification of certain properties owned by Client.

B.    Client and Broker have determined that it is in the best interest of parties to the Agreement that certain terms and conditions of the Agreement are amended and modified as set forth herein.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants contained herein the parties hereby agree as follows:

1.    **Defined Terms**. All capitalized terms used in this Amendment shall have the respective meanings given to them in the Agreements unless otherwise defined herein.

2.    **Exclusive Period**. The Exclusivity Term of the Financing Agreement is hereby extended for a period of 45 days to (September 25, 2021).

3.    **Successors and Assigns**. This Amendment shall be binding upon and inure to the benefit of Client and Broker and their respective successors and assigns.

4.    The terms and conditions of this Amendment shall amend, supersede, replace, govern and control over any conflicting or inconsistent terms and conditions in the Agreement, but except as modified in this Amendment, all other terms and conditions of the Agreement shall remain unmodified and in full force and effect.

5.    **Governing Law**. THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS ENTERED INTO AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE.

6.    **Counterparts**. This Amendment may be executed in multiple counterparts and delivered by facsimile or pdf, each of which shall be an original but all of which together shall constitute but one and the same Amendment.

[Signatures begin on next page]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first above written.

CLIENT:

ALL YEAR HOLDINGS LIMITED

By: _____
     Name: Assaf Ravid
     Title: CRO

BROKER:

MERIDIAN CAPITAL GROUP LLC

By: _____
     Name: Peter Leung
     Title: Managing Director, Legal Dept.

## AMENDMENT TO EXCLUSIVE AGREEMENT

THIS AMENDMENT TO EXCLUSIVE AGREEMENT (this "<u>Amendment</u>"), dated as of September __, 2021, is by and among All Year Holdings Limited ("Client") and Meridian Capital Group LLC ("Broker").

## RECITALS

A.    Client and Broker entered into that certain Exclusive Brokerage Agreement dated April, 13, 2021, as amended by that certain Amendment to Exclusive Agreement dated August 10, 2021 (as amended, "Financing Agreement") regarding the financing and modification of certain properties owned by Client.

B.    Client and Broker have determined that it is in the best interest of parties to the Agreement that certain terms and conditions of the Agreement are amended and modified as set forth herein.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants contained herein the parties hereby agree as follows:

1.    **<u>Defined Terms</u>**. All capitalized terms used in this Amendment shall have the respective meanings given to them in the Agreements unless otherwise defined herein.

2.    **<u>Exclusive Period</u>**. The Exclusivity Term of the Financing Agreement is hereby extended for a period of 45 days to (November 9, 2021).

3.    **<u>Successors and Assigns</u>**. This Amendment shall be binding upon and inure to the benefit of Client and Broker and their respective successors and assigns.

4.    The terms and conditions of this Amendment shall amend, supersede, replace, govern and control over any conflicting or inconsistent terms and conditions in the Agreement, but except as modified in this Amendment, all other terms and conditions of the Agreement shall remain unmodified and in full force and effect.

5.    **<u>Governing Law</u>**. THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS ENTERED INTO AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE.

6.    **<u>Counterparts</u>**. This Amendment may be executed in multiple counterparts and delivered by facsimile or pdf, each of which shall be an original but all of which together shall constitute but one and the same Amendment.

[Signatures begin on next page]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first above written.

<u>CLIENT</u>:

ALL YEAR HOLDINGS LIMITED

By: _____
    Name: Asaf Ravid
Title:CRO

<u>BROKER</u>:

MERIDIAN CAPITAL GROUP LLC

By: _____
    Name:  Peter Leung
    Title:  Managing Director, Legal Dept.

## THIRD AMENDMENT TO EXCLUSIVE AGREEMENT

THIS THIRD AMENDMENT TO EXCLUSIVE AGREEMENT (this "Amendment"), dated as of November 9, 2021, is by and among All Year Holdings Limited ("Client") and Meridian Capital Group LLC ("Broker").

## RECITALS

A.     Client and Broker entered into that certain Exclusive Brokerage Agreement dated April, 13, 2021, as amended by that certain Amendment to Exclusive Agreement dated August 10, 2021  and that certain Amendment to Exclusive Agreement dated September 25, 2021  (as amended, "Financing Agreement") regarding the financing and modification of certain properties owned by Client.

B.     Client and Broker have determined that it is in the best interest of parties to the Agreement that certain terms and conditions of the Agreement are amended and modified as set forth herein.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants contained herein the parties hereby agree as follows:

1.     **Defined Terms**. All capitalized terms used in this Amendment shall have the respective meanings given to them in the Agreements unless otherwise defined herein.

2.     **Exclusive Period**. The Exclusivity Term of the Financing Agreement is hereby extended for a period of 45 days to (December 24, 2021).

3.     **Successors and Assigns**. This Amendment shall be binding upon and inure to the benefit of Client and Broker and their respective successors and assigns.

4.     The terms and conditions of this Amendment shall amend, supersede, replace, govern and control over any conflicting or inconsistent terms and conditions in the Agreement, but except as modified in this Amendment, all other terms and conditions of the Agreement shall remain unmodified and in full force and effect.

5.     **Governing Law**. THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS ENTERED INTO AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE.

6.     **Counterparts**. This Amendment may be executed in multiple counterparts and delivered by facsimile or pdf, each of which shall be an original but all of which together shall constitute but one and the same Amendment.

[Signatures begin on next page]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first above written.

CLIENT:

ALL YEAR HOLDINGS LIMITED

By: _____

Name: Asaf David & Ephraim Dweimong

Title: CEO                    ATRO

BROKER:

MERIDIAN CAPITAL GROUP LLC

By: _____

Name:  Peter Leung

Title:  Managing Director, Legal Dept.