WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Jacqueline Marcus
Matthew P. Goren

*Attorneys for the Parent Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
:
In re                                                                : Chapter 11
:
**ALL YEAR HOLDINGS LIMITED,**                        : Case No. 21-12051 (MG)
:
Debtor.[1]                                                       :
:
Fed. Tax Id. No. 98-1220822                              : Re: Docket Nos. 92, 106
------------------------------------------------------------X

**PARENT DEBTOR'S REPLY TO LIMITED OBJECTION OF ZELIG WEISS TO MOTION OF PARENT DEBTOR FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, 364, AND 507 (I) AUTHORIZING PARENT DEBTOR TO USE ESCROWED FUNDS, (II) PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM STATUS, AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE MARTIN GLENN,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

All Year Holdings Limited, as debtor and debtor in possession (the "**Parent Debtor**" or the "**Borrower**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), files this reply in support of the *Motion of Parent Debtor for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363, 364, and 507 (I) Authorizing Parent Debtor to Use Escrowed Funds, (II) Providing Superpriority Administrative Expense Status, and (III) Granting Related Relief*

---

[1] The Parent Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

[ECF No. 92] (the "**Motion**")[2] and in response to the limited objection to the Motion [ECF No. 106] (the "**Limited Objection**") filed by Zelig Weiss ("**Weiss**"), and respectfully represents as follows:

### Preliminary Statement

1. After extensive discussions and negotiations, the Parent Debtor and the Plan Investor have entered into an agreement that will permit the Parent Debtor to utilize the $4,500,000.00 in Escrowed Funds that have been provided as a deposit by the Plan Investor as part of its comprehensive bid to restructure the Parent Debtor under the Investment Agreement. Access to the DIP Loan is necessary to enable the Parent Debtor to fund its operations and to continue the administration of the Chapter 11 Case while it progresses towards implementation of the Investment Agreement and consummation of the Plan.

2. The DIP Loan is being provided by the Plan Investor to the estate on very favorable terms and represents the best terms available to finance the remainder of the Chapter 11 Case. As set forth in the Motion, the Notes Trustee, on behalf of the Noteholders (the Parent Debtor's largest creditor constituency), supports approval of the Motion. The Limited Objection filed by Weiss was the only response filed with respect to the Motion.[3]

3. Weiss recites much in the Limited Objection about his asserted history with the Parent Debtor, the Parent Debtor's sole shareholder, and the William Vale Hotel, none of which

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

[3] Weiss also filed a letter with the Court on May 23, 2022, just prior to the filing of this Reply [ECF No. 111], in which Weiss further contends that the hearing on the Motion should be adjourned because the Parent Debtor, he asserts, improperly failed to seek court approval to amend the Investment Agreement to effectuate a transaction of the Parent Debtor's indirect interest in the William Vale Hotel. However, Weiss is incorrect. As the Investment Agreement will be implemented pursuant to the Agreed Plan (as defined below), the Investment Agreement, including any amendments, remains subject to approval of the Court. The only provisions of the Investment Agreement that have been approved by the Court at this time are those limited provisions with respect to the bid protections [ECF No. 85]. The Parent Debtor will seek approval of the Investment Agreement, including any amendments, in due course and on appropriate notice, as part of confirmation of the Agreed Plan.

2

is relevant to relief requested in the Motion. What is notable and relevant, however, is what Weiss **does not** say.

4.      First, Weiss is not a creditor of the Parent Debtor or party in interest in the Chapter 11 Case and at no point in the Limited Objection does he purport to be such. Rather, Weiss is a partner in one of the Parent Debtor's non-debtor subsidiaries, who has been engaged in lengthy and protracted litigation for approximately one year before the New York State Supreme Court, Commercial Division, in connection with certain defaults by the entity Weiss controls as lessee under the William Vale Hotel's ground lease, including, among other things, the failure to make required lease payments since February 1, 2021 (the "**State Court Litigation**"). The Parent Debtor does not intend to go through and correct each and every one of the litany of misstatements set forth in the Limited Objection regarding the facts and circumstances at issue in the State Court Litigation, but, needless to say, the Parent Debtor disputes much, if not all, of what is set forth in the Limited Objection and the Parent Debtor reserves all of its rights with respect to any current or future claims involving Weiss. The Parent Debtor notes, however, that Weiss has failed to produce documents as required by the discovery schedule in the State Court Litigation.

5.      Weiss's only connection to the Chapter 11 Case is that he is an unsuccessful bidder with respect to a potential transaction involving the William Vale Hotel and, as such, Weiss does not have standing to object to the relief requested in the Motion. The Court should disregard the Limited Objection in its entirety.

6.      Second, nowhere in the Limited Objection does Weiss raise even one issue with respect to the economic terms of the DIP Loan—nor can he—as the DIP Loan is being offered on objectively favorable terms to the Parent Debtor. As set forth in the Motion and the Baum Declaration, the DIP Loan is being offered without any commitment or closing fees and at a below

3

market rate of interest. In addition, the Plan Investor has agreed to provide the DIP Loan on an unsecured, superpriority administrative expense basis without requiring the granting of any postpetition liens or security interests, which are common features in most debtor-in-possession financings. The DIP Loan offered by the Plan Investor also does not require the payment of any interest until the closing of the Investment Agreement and avoids the cost of negotiating a lengthy credit agreement and other loan documents. Baum Decl. ¶ 13. Weiss proposes, without any evidence or basis in fact or logic, that there may be an alternative DIP Loan available on better terms for the Parent Debtor. Notably again, however, nowhere in the Limited Objection does Weiss purport to offer or suggest any alternative or superior financing to the Parent Debtor.

7.      Because he cannot possibly take issue with the terms of the DIP Loan, Weiss attempts to create an issue around the fact that the Parent Debtor has yet to file a chapter 11 plan and that this is somehow a nefarious act that should prevent the Court from approving the Parent Debtor's needed financing. However, this is nothing more than a red herring.

8.      As set forth in the May 20, 2022 update letter [ECF No. 108] (the "**May 20 Status Letter**"), the Parent Debtor, the Plan Investor, and the Notes Trustee have agreed on the terms of a chapter 11 plan (the "**Agreed Plan**"), which was annexed to the Investment Agreement on May 10, 2022. In accordance with the Investment Agreement, the Parent Debtor will file its supporting disclosure statement (the "**Disclosure Statement**"), to which the Agreed Plan will be attached as an exhibit, by no later than May 31, 2022. Accordingly, the Agreed Plan will be filed shortly and the DIP Loan is not a "free option" to lend as Weiss asserts.

9.      More importantly, however, and notwithstanding Weiss's assertions to the contrary, the terms of the Agreed Plan are irrelevant to the relief requested in the Motion. Although repayment of the DIP Loan may be triggered upon confirmation and consummation of the Agreed

4

Plan, that is common and routine for nearly every debtor-in-possession financing and does not make it "inextricably intertwined" with the Agreed Plan, as Weiss contends. Regardless, the key terms of the Agreed Plan are well-known and have been disclosed to all parties for some time—specifically, all unsecured claims will ride through the Chapter 11 Case unimpaired to be addressed in the ordinary course, other than the Noteholder Claims and the other limited categories set forth in the Investment Agreement.

10. The material and objectively favorable terms of the DIP Loan are set forth in the Motion and approval of the DIP Loan will not result in any roll-up, postpetition liens, or other improvements in payment or priority of any prepetition claims. This includes any claims arising out of or relating to the Taz Partners LLC confession of judgment (the "**Taz Claim**"). The Parent Debtor is simply utilizing funds that would otherwise be held in escrow to maintain its operations and administer the Chapter 11 Case and those amounts will be credited against the purchase price at closing.

11. Weiss also takes issue with the fact that the Parent Debtor did not conduct a traditional, broad market survey for its proposed financing; however, this, too, is misguided. The fact that the Parent Debtor has been able to secure a commitment for postpetition financing on an unsecured, superpriority administrative expense basis is remarkable. As noted in the Baum Declaration, most lenders and other financial institutions would not provide financing to the Parent Debtor on an unsecured basis. In fact, any other lenders would likely require greater security in the form of postpetition liens, security interests, equity pledges, and account control agreements. Moreover, Weiss conveniently ignores the fact that the Parent Debtor did, in fact, receive another proposal for postpetition financing and, as set forth below, it was on materially less favorable terms than the DIP Loan offered by the Plan Investor. Baum Decl. ¶ 14.

12. Weiss also asserts in his Limited Objection that the Parent Debtor's delay in submitting the Agreed Plan created the need for financing and the Court should adjourn the hearing for four weeks to allow parties ample time to review the DIP Loan terms. This, too, is meritless. The Parent Debtor requires additional financing due to the extended timeline of the Chapter 11 Case which arises from both the robust and comprehensive marketing process and the requirement for approval of the Agreed Plan in both Israel and the BVI. Accordingly, this is not a "manufactured crisis" as Weiss asserts.

13. The Motion was filed on more than adequate time to allow parties, including Weiss, time to review the DIP Loan and the relief requested in the Motion. Indeed, the Parent Debtor is not even seeking interim or emergency relief with respect to the DIP Loan, which is common for many debtor-in-possession financing requests. In accordance with the DIP Budget, the Parent Debtor anticipates needing to draw upon the DIP Loan on or about June 3, 2022. Accordingly, the Parent Debtor has an immediate and legitimate need for the funds to be provided under the DIP Loan to maintain its operations and to preserve the preserve the value of the estate for all creditors. For these reasons, and as more fully set forth herein, the Court should approve the Motion and overrule the Limited Objection.

## Argument

**I.    Weiss is Not a Creditor or Party in Interest in the Chapter 11 Case with Standing to Object to the DIP Loan or the Relief Requested in the Motion**

14. To the best of the Parent Debtor's knowledge and belief, Weiss is not a creditor of the Parent Debtor or party in interest in the Chapter 11 Case; at no point in the Limited Objection does he purport to be so or otherwise assert proper standing to object to the DIP Loan or the relief requested in the Motion. Rather, Weiss is an unsuccessful bidder who has been

engaged in lengthy and protracted litigation with certain of the Parent Debtor's non-debtor subsidiaries in the State Court Litigation.

15. Section 1109 of the Bankruptcy Code provides that a "party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. 1109(b). Courts have held that a party in interest is one that has "a sufficient interest in the outcome of the case that would require representation, or a **_pecuniary interest that will be directly affected by the case_**." *In re Innkeepers USA Tr.*, 448 B.R. 131, 141 (Bankr. S.D.N.Y. 2011) (emphasis added); *see also In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("[A] 'real party in interest' is the one who … has the legal right which is sought to be enforced or is the party entitled to bring suit …") (internal quotations omitted); *In re Greene Ave. Restoration II Corp.*, 597 B.R. 202, 217 n. 14 (Bankr. E.D.N.Y. 2019) ("An entity that does not hold a financial stake in the case is generally excluded from the definition of 'party in interest.'") (citing *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849–50 (Bankr. S.D.N.Y. 1989)); *In re 8 West 58th Street Hospitality, LLC*, Case No. 14-11524, 2017 WL 3575856, at *6 n. 8 (Bankr. S.D.N.Y. Aug. 4, 2017) (noting that "[e]ven if the [applicable] Agreement were subject to Section 364 of the Bankruptcy Code, [certain party] would lack standing to object because it is not a creditor in this bankruptcy case").

16. Weiss does not even attempt to argue that he has any interest in the Chapter 11 Case, as a creditor or otherwise. Indeed, Weiss's only connection to the Chapter 11 Case is that he has participated as a potential bidder with respect to a transaction for the William Vale Hotel. Courts have routinely found that unsuccessful bidders are generally not considered parties in interest with standing and a right to be heard. *In re Gucci*, 126 F.3d 380, 389 (2d Cir.

7

1997) ("[U]nsuccessful bidders usually lack standing to challenge a bankruptcy court's approval of a sale."); *In re Colony Hill Assocs.*, 111 F.3d 269, 273 (2d Cir. 1997) ("[A]n unsuccessful bidder—whose only pecuniary loss is the speculative profit it might have made had it succeeded in purchasing property at an auction—usually lacks standing to challenge a bankruptcy court's approval of a sale transaction."); *see also In re Moran*, 566 F.3d 676, 681 (6th Cir. 2009) ("Generally, 'frustrated bidders do not have standing to object to the sale property.'"); *In re Keim*, 212 B.R. 493, 496–97 (Bankr. D. Md. 1997) (noting that pursuant to section 1109(b) a "frustrated bidder … would not have standing to object to [a] motion to sell"); *In re NEPSCO, Inc.*, 36 B.R. 25, 26–27 (Bankr. D. Me. 1983) (finding that "prospective purchasers" are not within the "zone of interests" to be protected under 11 U.S.C. § 363(b)); *In re Jewel Terrace Corp.*, 10 B.R. 1008, 1011–12 (E.D.N.Y. 1981) (finding that unsuccessful bidder lacked standing). As an unsuccessful bidder, case law is clear that Weiss lacks standing to object to a section 363 sale of assets. Here, Weiss's interest is even more attenuated because Weiss has no identifiable connection whatsoever to the DIP Loan and the relief requested in the Motion.

17. Accordingly, Weiss does not have standing to object to the relief requested in the Motion and the Court should disregard the Limited Objection in its entirety.

## II. The Terms of the DIP Loan are Fair and Reasonable and Entry into the DIP Loan Represents a Sound Exercise of the Parent Debtor's Business Judgement

18. In the Limited Objection, Weiss does not raise a single issue regarding the economic terms of the DIP Loan for the obvious reason that the financing is plainly being provided on very favorable terms to the estate. Significantly, the Parent Debtor is not paying any commitment or closing fees or providing any postpetition liens. As set forth in the Baum Declaration, the rates of interest on the DIP Loan are below market for postpetition financing transactions. Baum Decl. ¶ 13. Additionally, any accrued interest will be paid upon the Maturity

8

Date, not at regular monthly intervals as is typical. Moreover, the Parent Debtor is able to obtain the DIP Loan without having to undertake the costly and lengthy process of negotiating a full-blown credit agreement. Viewed in their totality, the DIP Documents reflect below market and significantly favorable terms for postpetition financing. *See* Baum Decl. ¶¶ 13–15.

19. Weiss speculates, without any evidence or other basis, that there *may* be some alternative postpetition financing available in the market on better terms. However, it is difficult to imagine that the Parent Debtor would be able to obtain better terms for postpetition financing in the market. *See* Baum Decl. ¶ 14. Indeed, the Parent Debtor struggled to locate a financial institution willing to open even a simple debtor-in-possession bank account for it. In fact, the Parent Debtor was only able to do so recently, after nearly five months in chapter 11, with the assistance of the U.S. Trustee. Nowhere in the Limited Objection does Weiss propose or identify any alternative or superior postpetition financing available to the Parent Debtor.

20. Weiss also tries to make an issue of the fact that the Parent Debtor did not conduct a traditional, broad market survey for the DIP Loan to obtain unsecured credit on an administrative basis. However, this argument, too, is baseless. Weiss ignores the fact that the Parent Debtor did receive another offer for proposed DIP financing and it was on materially less favorable terms than the DIP Loan (the "**Alternative Proposal**"). Baum Decl. ¶ 14. Although that proposed financing was not fully negotiated, among other things, the Alternative Proposal (i) required the payment of significant upfront, commitment, and exit fees as well as potential extension fees, (ii) carried a higher rate of regular and default rate interest, (iii) required all obligations to be secured by first priority priming security interests and superpriority claims, (iv) imposed significant and material covenants and other restrictions on the Parent Debtor's

ability to operate in the ordinary course, and (v) required a full blown credit agreement and other customary loan documentation.

21. The fact that the Parent Debtor has been able to obtain a commitment for postpetition financing on a superpriority administrative expense basis is remarkable. As noted in the Baum Declaration, most lenders would not agree to provide financing to the Parent Debtor on an unsecured basis and they would likely require greater—not less—security in the form of postpetition liens, security interests, equity pledges, and contract account agreements. *See* Baum Decl. ¶ 14.

22. "A court must make its decision as to how extensive the debtor's efforts to obtain credit must be on a case-by-case basis." *Suntrust Bank v. Den-Mark Constr., Inc. (In re Den-Mark Constr., Inc.)*, 406 B.R. 683, 691 (E.D.N.C. 2009); *see also In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (Section 364 "imposes no duty to seek credit from every possible lender before determining that such credit is unavailable."). Given the extremely favorable terms represented by the Plan Investor's DIP proposal, and the Parent Debtor's difficult history with other lending institutions, there was little reasonable prospect that the Parent Debtor would have been able to secure superior, alternative financing from third-party sources. Indeed, Courts have recognized that where few lenders are likely to be willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988).

23. The DIP Loan made available pursuant to the DIP Documents represents the best financing available to the Parent Debtor under the circumstances. Accordingly, the Parent

Debtor's entry into the DIP Documents represents a reasonable exercise of its sound business judgment and should be approved.

**III.        Approval of the DIP Loan and the Relief Requested in the Motion is Not Dependent on the Agreed Plan**

24.     Because he cannot credibly take issue with the terms of the DIP Loan, Weiss seeks to create an issue of the fact that the Parent Debtor has yet to file the Agreed Plan and that this should prevent the Court from approving the Parent Debtor's needed financing.  However, the issues Weiss raises regarding the Agreed Plan are pure obfuscation.

25.     First, as set forth in the May 20 Status Letter, the Agreed Plan has been agreed to by all parties and was annexed to the Investment Agreement on May 10, 2022.  Pursuant to the terms of the Investment Agreement, the parties now have fourteen days to file a Disclosure Statement, which will describe the Agreed Plan in detail and include the Agreed Plan in its entirety as an exhibit.  Bankruptcy Rule 3016(b) generally requires that a disclosure statement "shall be filed with the plan[.]" Fed. R. Bankr. P. 3016(b).  Accordingly, the Agreed Plan will be filed with the Disclosure Statement on or before May 31, 2022, and the DIP Loan is not a "free option" to lend as Weiss asserts in the Limited Objection.

26.     Second, and more importantly, the terms of the Agreed Plan are irrelevant to the relief requested in the Motion.  Although the DIP Loan will mature on the effective date of the Agreed Plan, that is common and routine for nearly every debtor-in-possession financing and does not make it "inextricably intertwined," as Weiss asserts.  Indeed, if that were the case, a chapter 11 plan would likely need to be filed on the first day of every chapter 11 case as debtor-in-possession financing is routinely sought on an interim basis as part of a debtor's first day relief.

27.     Regardless, the key terms of the Agreed Plan are known and have been disclosed to all parties for some time—specifically, all unsecured claims will ride through the

Chapter 11 Cases unimpaired and will be dealt with in the ordinary course, except for the Noteholder Claims and the other categories set forth in the Investment Agreement. The Taz Claim will not be fixed or allowed under the Agreed Plan.

28. The material and objectively favorable terms of the DIP Loan are all set forth in the Motion and approval of the DIP Loan will not result in any roll-up or improvement with respect to any prepetition claim or debt, including the Taz Claim. The Parent Debtor is simply seeking authority to utilize the Escrow Funds to maintain its operations and administer the Chapter 11 Case and those amounts used will be credited against the purchase price at closing as set forth in the Motion.

### IV. The Parent Debtor is in Need of Additional Funds to Maintain its Operations and Requires Immediate Access to the DIP Loan

29. Incredibly, Weiss asserts that the Parent Debtor's delay in filing the Agreed Plan created the need for postpetition financing. Weiss asserts that the Court should adjourn the hearing on the Motion for four weeks and require the Parent Debtor to file the Agreed Plan to allow parties time to further review the terms of the DIP Loan. This ignores the facts set forth in the Baum Declaration, the liquidity forecasts set forth in the DIP Budget, the timeline of this Chapter 11 Case, and the ample notice provided by the Parent Debtor in connection with the Motion.

30. In accordance with the DIP Budget, the Parent Debtor anticipates needing to draw upon the DIP Loan on or about June 3, 2022, to avoid any interruption or disruption to its operations. Accordingly, the Parent Debtor has an imminent need for additional liquidity. *See* Baum Decl. ¶ 10; *see also* DIP Budget. In addition, as set forth in the Motion, the need for additional financing is a result of the extended nature of this Chapter 11 Case, which requires approvals in both Israel and the BVI, thereby further extending the timeline for this Chapter 11

Case. Therefore, this is not a "manufactured crisis," as Weiss asserts. Moreover, the delay requested by Weiss will exacerbate the Parent Debtor's liquidity crisis by further delaying conclusion of the Chapter 11 Case. Rather, the Parent Debtor has a legitimate need for additional financing to protect and preserve the value of the estate and avoid irreparable harm to the Parent Debtor and its operations.

31. The Parent Debtor did not seek interim or emergency relief with respect to the DIP Loan, as is typical. The Motion was filed with ample notice to allow legitimate parties in interest time to review the terms of the DIP Loan and none of them has objected or requested additional time. Accordingly, there is no basis to adjourn the hearing or delay approval of the Motion.

32. The Parent Debtor requires the additional liquidity to be provided under the DIP Loan to maintain its operations and preserve the value of the estate for all creditors. *See* Baum Decl. ¶¶ 9–10. Accordingly, the Court should approve the Motion and overrule the Limited Objection.

[*Remainder of page intentionally left blank.*]

WHEREFORE the Parent Debtor respectfully requests that the Court approve the Motion, overrule the Limited Objection, and grant such other and further relief as the Court may deem just and appropriate.

Dated: May 23, 2022
      New York, New York

/s/ *Matthew P. Goren*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Jacqueline Marcus
Matthew P. Goren

*Attorneys for the Parent Debtor*