WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Matthew P. Goren

*Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                                                               :
In re                                                          :        **Chapter 11**
                                                               :
**ALL YEAR HOLDINGS LIMITED,**                                 :        **Case No. 21-12051 (MG)**
                                                               :
                    **Debtor.**[1]                             :
                                                               :
**Fed. Tax Id. No. 98-1220822**                                :
---------------------------------------------------------------X

**MOTION OF DEBTOR FOR ENTRY OF AN ORDER (I) APPROVING PROPOSED
DISCLOSURE STATEMENT AND THE FORM, MANNER, AND SUFFICIENCY OF
NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) APPROVING THE
PROPOSED SOLICITATION AND VOTING PROCEDURES, (III) APPROVING
FORMS OF BALLOTS, SOLICITATION PACKAGES, AND RELATED NOTICES,
(IV) SCHEDULING A CONFIRMATION HEARING AND ESTABLISHING NOTICE
AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE DEBTOR'S
<u>CHAPTER 11 PLAN, AND (V) GRANTING RELATED RELIEF</u>**

TO THE HONORABLE MARTIN GLENN,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

        All Year Holdings Limited, as debtor and debtor in possession (the "**Debtor**") in

the above-captioned chapter 11 case (the "**Chapter 11 Case**"), respectfully represents as follows

in support of this motion (the "**Motion**"):

---

[1]    The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

## **Relief Requested**

1.      Following a robust sales and marketing effort, the Debtor entered into that certain Investment Agreement, dated March 11, 2022 (as amended on April 21, 2022 and May 27, 2022, and as may be further amended, modified, or supplemented from time to time, and together with all schedules and exhibits thereto, the "**Investment Agreement**"), with Paragraph Partners LLC (the "**Plan Investor**"), to implement a comprehensive restructuring of the Debtor and present a path forward for the Debtor's successful emergence from chapter 11.  The Investment Agreement is to be implemented pursuant to the *Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 123] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**") and the supporting disclosure statement, dated May 31, 2022 [ECF No. 124] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Disclosure Statement**"), each of which were filed contemporaneously herewith.[2]

2.      The Debtor has prepared and is seeking approval herein of a comprehensive Disclosure Statement pursuant to which it intends, subject to approval by this Court and, as discussed below, the District Court in Israel, to commence solicitation of votes on the Plan from the holders of Impaired Claims entitled to vote on the Plan.  Importantly, as part of the Investment Agreement, the Plan Investor has agreed to assume all unsecured claims against the Debtor other than the claims of holders of the Debtor's various series of Israeli-issued notes (the "**Notes**" and the holders thereof, the "**Noteholders**") and certain other discrete categories of claims set forth in the Investment Agreement.  Only one class of claims is Impaired and entitled to vote on the Plan.

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

WEIL:\98564711\17\12817.0007

3.      As described in further detail below, solicitation of the Plan and the mailing of the Disclosure Statement and related materials require the approval not only of this Court but of the District Court of Tel Aviv (the "**Israeli Court**") as part of the Debtor's pending companion recognition proceeding in Israel.  The Debtor commenced the Israeli Recognition Proceeding (as defined below) to, among other things, obtain approval from the Israeli Court to convene a meeting of the holders of the Debtor's various series of Notes to approve the Investment Agreement and to commence solicitation of the Noteholders' votes on the Plan.  Based on the advice of its Israeli counsel, the Debtor determined that this relief is necessary to comply with applicable Israeli securities law.  That relief, however, can only be requested from the Israeli Court after this Court first approves the Disclosure Statement and solicitation materials for the Debtor.  Therefore, the Debtor is proposing a timeline and process for solicitation and confirmation of the Plan that, to the best of the Debtor's ability, accounts for the sequencing of the necessary approvals in the United States and Israel.

4.      Accordingly, by this Motion, pursuant to sections 105, 1125, 1126, 1128, and 1129 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 3017-1, 3018-1 and 3020-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), the Debtor requests entry of an order:

(a)      approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

(b)      approving the form, manner, and sufficiency of the notice (the "**Disclosure Statement Hearing Notice**") of the hearing to consider approval of the Disclosure Statement and the Solicitation and Voting Procedures (as defined below);

(c)      approving the Debtor's proposed procedures for the solicitation and tabulation of votes to accept or reject the Plan;

3

(d)     approving (i) the forms of Ballots and Solicitation Packages (each as defined below) and the procedures for the distribution thereof and (ii) the form of Notice of Non-Voting Status (as defined below) to be sent to holders of claims against, and interests in, the Debtor that are conclusively presumed to accept the Plan, deemed to reject the Plan, or are otherwise not entitled to vote on the Plan;

(e)     scheduling the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") and establishing notice and objection procedures for the confirmation of the Plan; and

(f)     granting related relief.

5.     A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

6.     The following table provides certain proposed dates and deadlines related to specific relief requested in the Motion (subject to the Bankruptcy Court's calendar):

| Event | Date |
| --- | --- |
| **Disclosure Statement Objection Deadline** | July 5, 2022 at 5:00 p.m. (Eastern Time) |
| **Reply Deadline for Disclosure Statement Objections** | July 15, 2022 at 5:00 p.m. (Eastern Time) |
| **Disclosure Statement Hearing** | July 19, 2022 at 2:00 p.m. (Eastern Time) |
| **Estimated Date for Obtaining Israeli Court Approval to Convene Noteholder Meeting** | August 18, 2022 |
| **Solicitation Commencement Date** | August 18, 2022 |
| **Plan Supplement Filing Deadline** | September 12, 2022 |
| **Plan Voting Deadline** | September 19, 2022 at 5:00 p.m. (Eastern Time) |
| **Plan Confirmation Objection Deadline** | September 19, 2022 at 5:00 p.m. (Eastern Time) |
| **Reply Deadline for Plan Objections** | September 29, 2022 at 5:00 p.m. (Eastern Time) |
| **Plan Confirmation Hearing** | October 6, 2022 at 10:00 a.m. (Eastern Time) |

7.    Additionally, for the convenience of the Court and parties in interest, summarized below are the attachments and exhibits cited throughout this Motion:

| Pleading or Document | Exhibit |
|---|---|
| **Proposed Order** | Exhibit A |
| • **Disclosure Statement** | Schedule 1 to Proposed Order |
| **Disclosure Statement Hearing Notice** | Exhibit B |
| **Forms of Ballots** | Exhibit C |
| **Form of Notice of Non-Voting Status** | Exhibit D |
| **Confirmation Hearing Notice** | Exhibit E |

## Jurisdiction

8.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

9.    On December 14, 2021 (the "**Petition Date**"), the Debtor commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in this Chapter 11 Case.

10.    On December 16, 2021, the Debtor determined that it was necessary to file an application under the laws of the British Virgin Islands with the Eastern Caribbean Supreme Court in the High Court of Justice, Commercial Division (the "**BVI Court**") seeking the appointment of Paul Pretlove and Charlotte Caulfield of Kalo (BVI) Limited as joint provisional

WEIL:\98564711\17\12817.0007

liquidators (the "**JPLs**") under the applicable provisions of the BVI Insolvency Act 2003. On December 20, 2021, the BVI Court entered an order appointing the JPLs (the "**BVI Proceeding**").

11.     On April 14, 2022, with the consent of the JPLs and the approval and direction of the BVI Court, the Debtor commenced a proceeding in the Israeli Court for recognition of the Chapter 11 Case as a foreign main proceeding under the applicable provisions of Chapter I, Part C of the Insolvency and Rehabilitation Law of Israel 5778-2018 (the "**Israeli Recognition Proceeding**"). The Israeli Court entered an order recognizing the Chapter 11 Case on May 4, 2022.

12.     Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of the Chapter 11 Case is set forth in the *Declaration of Assaf Ravid Pursuant to Local Bankruptcy Rule 1007-2 in Support of All Year Holdings Limited's Chapter 11 Petition* [ECF No. 4] (the "**Ravid Declaration**") and is incorporated herein by reference.

## Basis for Relief Requested

## I.     The Disclosure Statement Should Be Approved

13.     Under section 1125(b) of the Bankruptcy Code, the Disclosure Statement must disclose "adequate information" prior to the solicitation of votes on a reorganization plan. Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as follows:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . .

11 U.S.C. § 1125(a)(1).

14.     Thus, a disclosure statement must, as a whole, provide information that is reasonably practicable to permit an informed judgment by impaired creditors or equity interest holders entitled to vote on a plan of reorganization. *See In re BGI, Inc.*, 772 F.3d 102, 105 (2d Cir. 2014), *reh'g denied* (Aug. 8, 2014), *cert. denied sub nom. Beeman v. BGI Creditor's Liquidating Trust*, 136 S. Ct. 155 (2015); *Cadle Co. II, Inc. v. PC Liquidation Corp.* (*In re PC Liquidation Corp.*), 383 B.R. 856, 866 (E.D.N.Y. 2008) (holding that a disclosure statement was adequate where it "enable[d] a reasonable creditor to make an informed judgment about the [p]lan"); *In re Avianca Holdings S.A.*, 632 B.R. 124, 130 (Bankr. S.D.N.Y. 2021) (noting that "a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan" and "all material information relating to the risks posed to creditors and equity interest holders under the [plan]"); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties.").  The bottom-line requirement of a disclosure statement is that it "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).[3]

15.     In examining the adequacy of the information contained in a disclosure statement, the Court has broad discretion.  *See Abel v. Shugrue* (*In re Ionosphere Clubs*), 179 B.R. 24, 29 (S.D.N.Y. 1995) (the ability to determine what is considered adequate information is subjective and largely within the discretion of the bankruptcy court); *In re Worldcom, Inc.*, No.

---

[3] *Cf. Kirk v. Texaco, Inc.*, 82 B.R. 678, 681-82 (S.D.N.Y. 1988) ("whether a disclosure statement required under [section 1125(b)] contains adequate information is not governed by otherwise applicable nonbankruptcy law, rule, or regulation") (citing 11 U.S.C. § 1125(d)).

M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003) (same).  This grant of discretion

was intended to facilitate effective reorganization of a debtor in the broad range of businesses in

which chapter 11 debtors engage and the broad range of circumstances that accompany chapter 11

cases.  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408–09 (1977) ("In reorganization cases, there

is frequently great uncertainty.  Therefore the need for flexibility is greatest.").  Accordingly, the

determination of whether a disclosure statement contains adequate information is to be made on a

case-by-case basis, focusing on the unique facts and circumstances of each case.  *See In re*

*Ionosphere Clubs*, 179 B.R. at 29 (explaining that the approval of a disclosure statement involves

a fact-specific inquiry into the particular plan, which is "subjective and made on a case by case

basis.").

16.    In that regard, courts generally examine a number of factors when

determining whether the disclosure statement contains adequate information, including but not

limited to:

    a.   the circumstances that gave rise to the filing of the bankruptcy petition;

    b.   an explanation of the available assets and their value;

    c.   the anticipated future of the debtor;

    d.   the source of the information provided in the disclosure statement;

    e.   a disclaimer, which typically indicates that no statements or information concerning
         the debtor or its assets or securities are authorized, other than those set forth in the
         disclosure statement;

    f.   the condition and performance of the debtor while in chapter 11;

    g.   information regarding claims against the estate;

    h.   a liquidation analysis setting forth the estimated return that creditors would receive
         under chapter 7;

WEIL:\98564711\17\12817.0007

      i.    the accounting and valuation methods used to produce the financial information in the disclosure statement;

      j.    information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

      k.    a summary of the plan of reorganization or liquidation;

      l.    an estimate of all administrative expenses, including, without limitation, attorneys' fees and accountants' fees;

      m.    the collectability of any accounts receivable;

      n.    any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

      o.    information relevant to the risks being taken by the creditors and interest holders;

      p.    the actual or projected value that can be obtained from avoidable transfers;

      q.    the existence, likelihood and possible success of nonbankruptcy litigation;

      r.    the tax consequences of the plan; and

      s.    the relationship of the debtor with its affiliates.

*See id.; see also In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (listing factors). The factors are not meant to be comprehensive; nor must a debtor provide information on all factors. Rather, the bankruptcy court must decide what is appropriate in each case. *In re Ashley River Consulting, LLC,* Nos. 14-13406, 2015 WL 6848113, at *27 (Bankr. S.D.N.Y. Nov. 6, 2015) (noting that disclosure statements must be a source of factual information, but that debtors do not need to provide information on each factor); *Avianca Holdings S.A.*, 632 B.R. at 130 ("[d]isclosure of all factors is not necessary in every case") (internal citations omitted).

      17.    The Disclosure Statement contains adequate information necessary to enable all parties in interest to make an informed judgment with respect to the Plan as required by section 1125 of the Bankruptcy Code, including, but not limited to, a discussion of:

a.  An overview of the Debtor's business including the business and operations of its direct and indirect non-debtor subsidiaries (Art. I);

b.  A description of the Debtor's employees, officers, and directors (Art. I);

c.  Information regarding claims against, and interests in, the Debtor and how they will be addressed under the Plan (Art. I);

d.  Key events leading to the commencement of the Chapter 11 Case (Art. II);

e.  A description of the significant events that occurred during the Chapter 11 Case, the JPL Proceeding, and the Israeli Recognition Proceeding (Art. III);

f.  A summary of the Investment Agreement, including the sources for funding the Plan and any guarantees or collateral to be provided thereunder (Art. III);

g.  Information regarding the Debtor's retained professionals in the Chapter 11 Case, the JPL Proceeding, and the Israeli Recognition Proceeding (Art. IV);

h.  Information regarding pending nonbankruptcy litigation involving the Debtor (Art. V);

i.  A summary of the Plan (Art. VI);

j.  An explanation of the Debtor's available assets and their estimated value for creditors (Art. VIII);

k.  Tax consequences of the Plan (Art. IX);

l.  Certain risk factors to be considered in evaluating the Plan (Art. X);

m.  Voting procedures and requirements related to the Plan (Art. XI);

n.  Requirements for confirmation of the Plan (Art. XII); and

o.  Alternatives to confirmation and consummation of the Plan including an analysis of projected recoveries if the Debtor's chapter 11 case was converted to a case under chapter 7 of the Bankruptcy Code (Art. XIII).

18.     The Disclosure Statement also includes the following exhibits:

a.  A copy of the Plan (Ex. A);

b.  A copy of the Investment Agreement (Ex. B);

c.  An organizational chart for the Debtor (Ex. C)

10

     d.   A summary of the net income generated by the Debtor's non-debtor subsidiaries in prior years, the Debtor's equity interests in its non-debtor subsidiaries, and related analyses and information (Ex. D);

     e.   Appraisals of the properties indirectly owned by the Debtor (Ex. E-1 and E-2);

     f.   Financial projections for the Reorganized Debtor following the Effective Date (Ex. F); and

     g.   A liquidation analysis for the Debtor (Ex. G).

19.    In addition, pursuant to Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement [must] describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction." Fed. R. Bankr. P. 3016(c).

20.    A detailed description of the proposed Plan injunction is provided in Article VI of the Disclosure Statement. Likewise, the Plan provides for certain releases from the Debtor as well as certain mutual releases among the Debtor, the Plan Administrator, the Notes Trustee, and certain other Released Parties,[4] which are described in detail, including the entities providing such releases and the entities and the claims and causes of action being released. *See* Disclosure Statement §§ VI.I.6. Further, the terms of the exculpation provided for in the Plan are described

---

[4] For purposes of the Plan, "***Released Parties***" means collectively, and in each case, solely in their capacities as such: (a) the Debtor and the Reorganized Debtor; (b) Wind-Down Co; (c) the Notes Trustee and its representatives and advisors; (d) the Noteholders and their representatives and advisors; (e) the Sponsor and its agents, officers, directors, principals, affiliates, representatives and advisors; (f) any current or former Chief Restructuring Officer or Associate Restructuring Officer of the Debtor; (g) any independent directors appointed to the board of the Debtor on or after January 1, 2021; (h) the JPLs; (i) the Authorized Managers; and (j) any advisors retained by the Debtor in connection with the Chapter 11 Case on or after December 29, 2020 (but not including Dov Tratner or Tratner and Associates PLLC); provided, however, that Released Parties shall not include Yoel Goldman or Tzipporah Goldman in any capacity. Plan, § 1.78.

WEIL:\98564711\17\12817.0007

in Article VI of the Disclosure Statement.    Each of the foregoing sections is set forth in

conspicuous, bold print.

21.    Accordingly, the Disclosure Statement satisfies the requirements of section

1125 of the Bankruptcy Code and Bankruptcy Rule 3016(c) and should be approved.

**II.    Approval of the Disclosure Statement Hearing Notice and the
Procedures for Filing Objections to the Disclosure Statement**

22.    Bankruptcy Rule 3017(a) provides as follows:

[A]fter a disclosure statement is filed in accordance with Rule
3016(b), the court shall hold a hearing on at least 28 days' notice to
the debtor, creditors, equity security holders and other parties in
interest as provided in Rule 2002 to consider the disclosure
statement and any objections or modifications thereto.  The plan and
the disclosure statement shall be mailed with the notice of the
hearing only to the debtor, any trustee or committee appointed under
the Code, the Securities and Exchange Commission and any party
in interest who requests in writing a copy of the statement or plan.

23.    <u>The Disclosure Statement Hearing Notice</u>.  Bankruptcy Rules 2002(b) and

(d) require notice to all creditors, indenture trustees, and shareholders of the time set for filing

objections to, and the hearing to consider the approval of, a disclosure statement.  In accordance

with Bankruptcy Rule 3017(a) and Local Bankruptcy Rule 3017-1, the Debtor will serve the

Disclosure Statement Hearing Notice, substantially in the form annexed hereto as **Exhibit B**, on

all known creditors, equity security holders, and other parties in interest as provided in Bankruptcy

Rule 2002.  In addition, the Debtor will serve copies of the Plan, the Disclosure Statement, and the

Disclosure Statement Hearing Notice on (i) the Office of the United States Trustee (the "**U.S.

Trustee**"); (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; and

(iv) the United States Attorney's Office for the Southern District of New York.  The Disclosure

Statement Hearing Notice will provide creditors, interest holders, and other parties in interest with

WEIL:\98564711\17\12817.0007

at least twenty-eight (28) days' notice of the time, date, and place for filing objections to the Disclosure Statement.

24.     In addition, the Debtor will provide, at its expense, copies of the proposed Disclosure Statement and the Plan to any party in interest upon request made to Donlin Recano & Company, Inc., the Debtor's voting and solicitation agent (the "**Voting Agent**"),[5] by (i) email at AYHInfo@DonlinRecano.com, (ii) telephone at (877) 896-3192 (domestic toll-free) and (212) 771-1128 (international), or (iii) standard, overnight or hand delivery to: Donlin Recano & Company, Inc., 6201 15th Avenue, Brooklyn, NY 11219.  Moreover, copies of the Disclosure Statement and the Plan are available through the Bankruptcy Court's website (www.nysb.uscourts.gov) and at the Office of the Clerk of the Bankruptcy Court for review during normal business hours.

25.     The Disclosure Statement Objection Deadline.  The Disclosure Statement Hearing Notice provides that objections to the proposed Disclosure Statement, if any, must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection; (d) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (e) be filed with the Bankruptcy Court (i) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent

---

[5] The Court entered an order authorizing the Debtor's retention of Donlin Recano & Company, Inc. as the Debtor's voting and solicitation agent on May 25, 2022 [ECF No. 118].

applicable; and (f) be served in accordance with General Order M-399 **no later than July 5, 2022**

**at 5:00 p.m. (Eastern Time)**, on the following parties:

i.  the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq. and Matthew P. Goren, Esq.);

ii.  counsel to Mishmeret Trust Company Ltd., as trustee to Noteholders (the "**Notes Trustee**"), Chapman and Cutler LLP, 1270 Sixth Avenue, New York, New York 10020 (Attn: Michael Friedman, Esq., Stephen R. Tetro II, Esq., and Aaron Krieger, Esq.);

iii.  counsel to the Plan Investor, (a) Gissin & Co., Habarzel 38B, Tel Aviv 6971054, Israel (Attn: Yael Hershkovitz, Esq.), (b) Locke Lord LLP, 200 Vesey Street, 20th Floor, New York, NY 10281 (Attn: Shalom Jacob, Esq.), and (c) Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn: Avi D. Feinberg, Esq.); and

iv.  the Office of the U.S. Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Andrea B. Schwartz, Esq. and Shara Cornell, Esq.).

26.  Objections to the Disclosure Statement that are not timely filed and served

in the manner set forth above shall not be considered and shall be deemed overruled.

27.  The Debtor submits that the Disclosure Statement Hearing Notice and the

foregoing procedures provide adequate notice of the Disclosure Statement Hearing for all

purposes, including the procedures and timing for filing objections to the proposed Disclosure

Statement, and, accordingly, request that the Court approve such procedures as adequate under the

circumstances.

III.  **The Debtor's Proposed Solicitation Process**
      **and Solicitation and Voting Procedures**

*The Debtor's Solicitation Process*

28.  As set forth above, the Debtor commenced the Israeli Recognition

Proceeding on April 14, 2022.  The Debtor commenced the Israeli Recognition Proceeding, with

the consent of the JPLs and the approval and direction of the BVI Court, in furtherance of the

Debtor's efforts to achieve a global resolution of claims against, and interests in, the Debtor, including with respect to the Debtor's various series of Israeli-issued Notes. In addition, as the Debtor is a reporting company in Israel, the Debtor determined, based on the advice of its Israeli counsel, that it was necessary to commence the Israeli Recognition Proceeding to obtain court approval to convene a Noteholder meeting to vote on the Plan and the Investment Agreement (the "**Noteholder Meeting**") to comply with applicable Israeli securities laws.

29.     Following approval of the Disclosure Statement by this Court, the Debtor intends to file a motion with the Israeli Court seeking authorization to convene the Noteholder Meeting. A Hebrew translation of the Disclosure Statement and other solicitation materials, as approved by this Court, will be attached to the summons of the Noteholder Meeting.

30.     The Debtor's various U.S. and Israeli restructuring professionals have expended considerable efforts coordinating to ensure that the Disclosure Statement and other solicitation materials filed with this Court as part of the Chapter 11 Case contain adequate and sufficient information for purposes of approval by this Court and the Israeli Court. However, to the extent any additional disclosures are required in connection with the Israeli Recognition Proceeding, the Debtor will file a supplement with this Court containing any such additional disclosures (the "**Supplemental Disclosure Materials**") on not less than seven (7) days' notice to creditors and other parties in interest. If no party objects to the inclusion of the Supplemental Disclosure Materials within such seven (7) day period, the Debtor proposes that such Supplemental Disclosure Materials be deemed approved pursuant to section 1125 of the Bankruptcy Code.

31.     Once the Debtor has obtained approval from the Israeli Court to convene the Noteholder Meeting (the "**Israeli Court Approval Date**"), the Debtor, through the Voting Agent, will commence its solicitation of votes to accept or reject the Plan from the holders of

claims in Class 4 (Remaining Unsecured Claims), the only Voting Class (as defined below), and provide the necessary notices and materials to the Non-Voting Classes (as defined below).

32.     The Debtor intends to file the request with the Israeli Court to convene the Noteholder Meeting immediately following entry of the Proposed Order by this Court.  The Debtor anticipates that the process for obtaining Israeli Court approval to convene the Noteholder Meeting will take approximately thirty (30) days and, therefore, anticipates commencing the solicitation of votes on the Plan and mailing the Disclosure Statement and other notices to creditors and other parties in interest on or about August 18, 2022.  It is possible, however, that the process for obtaining Israeli Court approval to convene the Noteholder Meeting may take longer than anticipated.  To the extent that process takes longer than thirty (30) days, the Debtor will adjourn the applicable Plan solicitation and confirmation dates and deadlines to provide adequate and sufficient notice to all parties in interest in accordance with the applicable provisions of the Bankruptcy Rules and Local Bankruptcy Rules, subject to the Court's availability.  The Debtor will file and serve notices, as necessary, of any adjournments or changes to the Voting Deadline, the Confirmation Objection Deadline, and/or the date of the Confirmation Hearing (each as defined below) to provide interested parties with adequate notice of the relevant dates and deadlines.

### *The Solicitation and Voting Procedures*

33.     In connection with the Disclosure Statement and the Plan, the Debtor proposes to implement the following solicitation, voting, and tabulation procedures (the "**Solicitation and Voting Procedures**").

### A.     **Parties Entitled to Vote**

34.     Pursuant to the Plan, the Debtor has classified the following six (6) separate classes of claims and interests:

16

| Class | Designation | Impaired or Unimpaired | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| 3 | General Unsecured Claims | Unimpaired | No (Presumed to accept) |
| 4 | Remaining Unsecured Claims | Impaired | Yes |
| 5 | Subordinated Securities Claims | Impaired | No (Deemed to reject) |
| 6 | Equity Interests | Impaired | No (Deemed to reject) |

35.    <u>The Voting Class</u>.  As part of the Investment Agreement, the Plan Investor has agreed to assume all unsecured claims against the Debtor other than the Noteholders' claims and certain other discrete categories of claims set forth therein.[6]  Of the six (6) classes of claims and interests under the Plan, the only class that is Impaired and entitled to receive distributions under the Plan and, therefore, the only class that is entitled to vote to accept or reject the Plan, is Class 4 (Remaining Unsecured Claims) (the "**Voting Class**").

36.    Based on the Debtor's amended and restated schedules of assets and liabilities and statements of financial affairs filed with the Court [ECF Nos. 36 and 37] (the "**Schedules**") and the provisions of the Plan, the Debtor proposes that creditors in the Voting Class may vote on the Plan unless:

(i)    as of the Voting Record Date (as defined below), the outstanding amount of such claimant's claim is not greater than zero ($0.00);

(ii)    as of the Voting Record Date, such claimant's claim has been disallowed, expunged, disqualified, or suspended; or

(iii)    as of the Voting Record Date, such claimant's claim is subject to an objection or request for estimation, in accordance with the procedures set forth below.

---

[6] In accordance with the Investment Agreement, the Reorganized Debtor will assume all claims against the Debtor, other than: (i) the claims of the Noteholders; (ii) claims either subject to subordination pursuant to section 510(b) of the Bankruptcy Code or that arise out of a purchase, sale, or issuance or offer of a security of the Debtor, including any claims asserted in any class action lawsuits in Israel; (iii) claims brought by any plan administrator in connection with prior chapter 11 cases of the Debtor's former direct or indirect subsidiaries; and (iv) claims of the Company's current or former directors and officers for indemnification.

WEIL:\98564711\17\12817.0007

37.    Any creditor that is not scheduled in the Debtor's Schedules and that did not file a proof of claim prior to the Voting Record Date shall not be entitled to vote on the Plan.

38.    <u>The Non-Voting Classes</u>.  Section 1126(f) of the Bankruptcy Code provides that, for the purposes of soliciting votes in connection with confirmation of a chapter 11 plan, "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required."  11 U.S.C. § 1126(f).  The Plan does not impair claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), and Class 3 (General Unsecured Claims) (collectively, the "**Unimpaired Classes**") because the Plan Investor has assumed all claims in the Unimpaired Classes.  Pursuant to section 1126(f) of the Bankruptcy Code, the holders of claims in the Unimpaired Classes are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote.

39.    Section 1126(g) of the Bankruptcy Code provides that, for the purposes of soliciting votes in connection with confirmation of a chapter 11 plan, "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests."  11 U.S.C. § 1126(g).  The holders of claims or interests in Class 5 (Subordinated Securities Claims) and Class 6 (Equity Interests) are not entitled to receive or retain any property under the Plan (collectively, the "**Non-Voting Impaired Classes**" and, together with the Unimpaired Classes, the "**Non-Voting Classes**").  Therefore, pursuant to section 1126(g) of the Bankruptcy Code, the Non-Voting Impaired Classes are deemed to reject the Plan and, accordingly, are not entitled to vote.

18

### B.    Establishing a Voting Record Date

40.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a chapter 11 plan, "creditors and interest holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.  Bankruptcy Rule 3018(b) provides that "[a]n equity security holder or creditor whose claim is based on a security of record . . . shall not be deemed to have accepted or rejected the plan . . . unless the equity security holder or creditor was the holder of record of the security on the date specified in the solicitation of such acceptance or rejection for the purposes of such solicitation."  Fed. R. Bankr. P. 3018(b).

41.    In accordance with these Bankruptcy Rules, the Debtor proposes setting September 12, 2022 as the record date ("**Voting Record Date**") for determining which holders of claims and equity interests are entitled to vote to accept or reject the Plan.  The Solicitation Packages (as defined below) will clearly identify such date as the Voting Record Date.

### C.    Approval of the Solicitation Packages and Procedures for Distribution Thereof

42.    Bankruptcy Rule 3017(d) sets forth the materials that must be provided to parties for the purpose of soliciting their votes and providing adequate notice of a hearing on confirmation of a chapter 11 plan:

> Upon approval of a disclosure statement, — except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders — the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,

(1)    the plan or a court-approved summary of the plan;

(2)    the disclosure statement approved by the court;

(3)    notice of the time within which acceptances and rejections of the plan may be filed; and

(4)    any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

43.    Following the Israeli Court Approval Date, the Debtor proposes to mail, or cause to be mailed, in accordance with Bankruptcy Rule 3017(d), the following materials to the holders of claims entitled to vote in the Voting Class (the "**Solicitation Package**"):

(i)    a USB[7] containing the Disclosure Statement Order (without any exhibits), the Disclosure Statement, and the Plan;

(ii)    the Confirmation Hearing Notice; and

(iii)    the appropriate form of ballot (the "**Ballot**") with voting instructions and a return envelope with prepaid postage.

44.    With respect to the claims held by the Noteholders, the Debtor proposes to transmit one Solicitation Package to the Notes Trustee on account of the Noteholders' claims in Class 4 (Remaining Unsecured Claims), which shall include a master Ballot to aggregate the votes for all such claims.  The master Ballot to be transmitted to the Notes Trustee will specify that the Notes Trustee is to submit the completed and executed Ballot to the Debtor by electronic mail in

---

[7] Any creditor that receives a Solicitation Package may request a copy of the Disclosure Statement (and all attachments thereto) and/or Plan in paper format by contacting the Voting Agent by email at AYHInfo@DonlinRecano.com or by telephone at (877) 896-3192 (toll-free).  Upon receipt of such request, the Debtor shall provide such creditor with a paper copy of the Plan and the Disclosure Statement at no cost to the creditor.

portable document format (PDF). Further, in connection with voting on the Plan, each Noteholder

will be provided with the opportunity to elect to assign any and all claims and causes of action that

such Noteholder may hold in its capacity as a Noteholder to the Plan Administrator (as defined in

the Plan) to pursue for the benefit of such Noteholders. The master Ballot will provide a space for

the Notes Trustee to record whether a Noteholder has affirmatively elected to assign such claims

and causes of action to the Plan Administrator.

45.      The Debtor also proposes to mail a copy of the notice of the Confirmation

Hearing (the "**Confirmation Hearing Notice**") (to the extent not already provided in the

distributions set forth above) to all creditors, interest holders, and other parties in interest, as

required pursuant to Bankruptcy Rule 2002.

46.      The Debtor proposes to mail, or cause to be mailed, all of the foregoing

distributions no later than two (2) Business Days following the Israeli Court Approval Date.

47.      The Debtor seeks the Court's authorization to make non-substantive

changes to the Disclosure Statement, the Plan, and any related documents without further order of

the Court, including ministerial changes to correct typographical and grammatical errors, and to

make conforming changes among the Disclosure Statement, the Plan, and any other materials in

the Solicitation Packages prior to mailing.

**D.      Approval of the Forms of Ballots and Distribution Thereof**

48.      Bankruptcy Rule 3017(d) requires the Debtor to mail a form of ballot, which

substantially conforms to Official Form No. 314, only to "creditors and interest holders entitled to

vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtor intends to distribute the applicable

Ballot, substantially in the form annexed hereto as **<u>Exhibit C</u>,** to each holder of a claim entitled to

vote in the Voting Class. The forms of Ballots are based on Official Form No. 14, but have been

modified to address the particular circumstances of this Chapter 11 Case and to include certain

WEIL:\98564711\17\12817.0007

additional information that is relevant and appropriate for creditors entitled to vote to accept or

reject the Plan. *See* Fed. R. Bankr. P. 3017(d).

49.    As set forth above, the Debtor proposes to transmit a single master Ballot

to the Notes Trustee to aggregate the votes of the Noteholders' on account of their claims in Class

4 (Remaining Unsecured Claims).   With respect to any other holders of claims in Class 4

(Remaining Unsecured Claims), the Debtor proposes to transmit a general Ballot to such holders

that can be used to vote on the Plan.   The master Ballot transmitted to the Notes Trustee and the

general Ballot transmitted to the other holders of claims in Class 4 (Remaining Unsecured Claims)

will specify that completed and executed ballots may be submitted to the Debtor by electronic mail

in portable document format (PDF).   The Debtor submits that the proposed forms of Ballots and

the distribution thereof comply with the applicable provisions of the Bankruptcy Rules and

Bankruptcy Code and should be approved by the Court.

**E.    Approval of the Form of Notice of Non-Voting Status and Non-Transmission of the Plan and the Disclosure Statement to Certain Holders of Claims and Interests**

50.    The Debtor proposes to send to the holders of claims and interests in the

Non-Voting Classes (and to any other holder of a claim or interest that is not otherwise entitled to

vote on the Plan) a notice of non-voting status (the "**Notice of Non-Voting Status**"), substantially

in the form attached as **<u>Exhibit D</u>** hereto.   The Debtor proposes to direct the Voting Agent to mail

the Notice of Non-Voting Status to such holders of claims and interests within two (2) days after

the Israeli Court Approval Date.   In addition to providing notice to the holders of such claims and

interests of their non-voting status under the Plan, the Notice of Non-Voting Status contains a

summary of the Plan, including the release, exculpation, and injunction provisions set forth in

Article XII of the Plan, as well as notice of the Voting Deadline, the date of the Confirmation

Hearing, and the Confirmation Objection Deadline.

51.     The Debtor requests a waiver of the Bankruptcy Rule requirement that it mail copies of the Plan and the Disclosure Statement to holders of claims and equity interests in the Non-Voting Classes that are presumed to accept or deemed to reject the Plan.  *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to, *inter alia*, classes of creditors and equity security holders).  The holders of claims and interests in the Non-Voting Classes will be provided with the Confirmation Hearing Notice, which sets forth a summary of the Plan and the treatment of such holder's claims or interests, and provides the manner in which a copy of the Plan and the Disclosure Statement may be obtained, if desired.  It would be an unnecessary administrative burden on the Debtor to transmit the Disclosure Statement and the Plan to the holders of claims and interests that have been deemed to accept or reject the Plan.

52.     The Debtor submits that the noticing procedures proposed by the Debtor and described herein with respect to the holders of claims and interests in the Non-Voting Classes comply with the Bankruptcy Code and will be adequate and appropriate to provide such holders with notice of their non-voting status.  Accordingly, the Debtor respectfully requests that the Court approve the noticing procedures with respect to these Classes.

**F.    Establishing the Voting Deadline for Receipt of Ballots**

53.     Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the Court shall fix a time within which the holders of claims or equity interests may accept or reject a plan.  Fed. R. Bankr. P. 3017(c).  To be counted as a vote to accept or reject the Plan, each general Ballot must be properly executed, completed, and delivered to the Voting Agent by (i) first-class mail, in the return envelope provided; (ii) electronic mail in portable document format (PDF); (iii) overnight courier; or (iv) personal delivery so that it is received by the Voting Agent no later than **September 19, 2022 at 5:00 p.m. (Eastern Time)** (the "**Voting**

Deadline").[8]  The Notes Trustee's master Ballot must be delivered to the Voting Agent by electronic mail in portable document format (PDF) in advance of the Voting Deadline.  The proposed Voting Deadline will be approximately thirty-two (32) days after delivery of the Solicitation Packages and provides ample time within which the holders of Claims in the Voting Class can determine whether to accept or reject the Plan.  As set forth above, the Voting Deadline may be extended in the sole discretion of the Debtor.

### G.    Approval of the Procedures for Vote Tabulation

54.    The Debtor respectfully requests that the Court approve the voting and tabulation procedures described herein in accordance with section 1126(c) of the Bankruptcy Code. Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

55.    The Voting Agent will not count or consider for any purpose in determining whether the Plan has been accepted or rejected the following Ballots: (a)  except in the Debtor's sole discretion, any Ballot received after the Voting Deadline, (b) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant, (c) any Ballot cast by a person or entity that does not hold a claim in the Voting Class, (d) any unsigned or non-original Ballot, (e) any form of ballot other than the official form of Ballot sent by the Voting Agent, or (f) except in the Debtor's sole discretion, any Ballot transmitted to the Voting Agent by telecopy,

---

[8] With respect to any Ballot transmitted by electronic mail, the receipt date and time referenced in the Voting Agent's electronic mailbox will be used as the timestamp for receipt.

WEIL:\98564711\17\12817.0007

facsimile, or other electronic means.  As specified on the Ballot, any Ballot that is otherwise properly completed, executed, and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, will not be counted in determining the acceptance or rejection of the Plan.

56.    Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).  The Debtor, therefore, proposes that, solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a claim, and without prejudice to the rights of the Debtor to dispute the allowance of any claim, each claim within the Voting Class be temporarily Allowed in an amount equal to the amount of such claim set forth in the Debtor's Schedules; *provided*, *however*, that:

(i)    if a claim is allowed pursuant to the Plan or by order of the Court (entered prior to the Voting Deadline), such claim shall be allowed for voting purposes in the allowed amount set forth in the Plan or such order;

(iv)    if a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim is temporarily allowed for voting purposes in the amount so estimated or allowed in such order;

(v)    if a claim is listed in the Schedules as partially unliquidated, such claim shall be allowed in the partially liquidated amount for voting purposes only;

(vi)    if a claim is listed in the Schedules as wholly contingent, unliquidated, or disputed, such claim is accorded one vote and valued at one dollar ($1.00) for voting purposes only, and not for purposes of allowance or distribution; and

(vii)    if a creditor holds or has purchased duplicate claims within the same class, such creditor shall be provided with only one Solicitation Package and one Ballot for voting a single claim in such class.

57.     If a creditor seeks to challenge the disallowance or amount of its claim for voting purposes, the creditor shall file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim for voting purposes in a different amount.  Upon the filing of any such motion, the creditor's Ballot shall not be counted unless temporarily allowed by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan. All motions pursuant to Bankruptcy Rule 3018(a) must be filed on or before the date which is seven (7) days prior to the Voting Deadline.

58.     The Debtor proposes that the holders of claims in the Voting Class be required to vote all of their claims either to accept or reject the Plan.  Notwithstanding Bankruptcy Rule 3018(a), the Debtor further proposes that whenever two or more Ballots are cast voting the same claim prior to the Voting Deadline, the last timely Ballot received prior to the Voting Deadline should be deemed to reflect the voter's intent and to thus supersede any prior Ballot(s), without prejudice to the Debtor's right to object to the validity of the second Ballot on any basis permitted by law.

59.     The Debtor submits that the foregoing procedures provide for a fair and equitable voting process and should be approved by the Court.

## IV.    Confirmation

### A.    Confirmation Hearing

60.     Bankruptcy Rule 3017(c) provides:

On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

Fed. R. Bankr. P. 3017(c).

61.     As set forth above, the Debtor proposes that the Confirmation Hearing be held on **October 6, 2022 at 10 a.m. (Eastern Time)**, which hearing may be adjourned at the

26

request of the Debtor, subject to the Court's availability. The Confirmation Hearing may be continued from time to time by the Court or the Debtor without further notice, except for adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court. Prior to the Confirmation Hearing, the Debtor will file a brief and/or declaration in support of the Plan demonstrating that the Plan satisfies each requirement for confirmation and responding to any objections to confirmation. The proposed date for the Confirmation Hearing complies with the Bankruptcy Rules and enables the Debtor to pursue consummation of the Plan and the transactions contemplated thereunder in a timely manner.

B.    **Notice of Confirmation Hearing**

62.    Bankruptcy Rules 2002(b) and (d) require not less than 28 days' notice of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtor proposes to provide to all known holders of claims and interests, as of the Voting Record Date, simultaneously with the distribution of the Solicitation Packages to those entities entitled thereto, the Confirmation Hearing Notice, substantially in the form annexed hereto as **Exhibit E**, which provides: (i) the Voting Deadline; (ii) the Confirmation Objection Deadline; and (iii) the time, date, and place for the Confirmation Hearing.

63.    Bankruptcy Rule 2002(l) permits the Bankruptcy Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). In addition to mailing the Confirmation Hearing Notice, the Debtor proposes to publish a notice substantially similar to the Confirmation Hearing Notice, with reasonable adjustments and modifications to account for publication limitation, as soon as reasonably practicable following the Israeli Court Approval Date in *The New York Times* (national edition) in English and in *Haaretz*, an Israeli newspaper, in Hebrew. Additionally, the

27

Confirmation Hearing Notice will be available through the Bankruptcy Court's website (www.nysb.uscourts.gov) and at the Office of the Clerk of the Bankruptcy Court for review during normal business hours.  The Debtor believes that publication of the Confirmation Hearing Notice will provide sufficient notice of the time, date, and place of the Confirmation Hearing to persons who do not otherwise receive notice of the Confirmation Hearing by mail.

64.    The Debtor submits that the foregoing procedures will provide adequate notice of the Confirmation Hearing and all related matters and, accordingly, request that the Court deem such notice adequate and proper.

**A.    Establishing Procedures for Objections to the Plan**

65.    The Debtor further proposes that the Court direct that any objections with respect to the Plan must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection; (d) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (e) be filed with the Bankruptcy Court (i) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable; and (f) be served in accordance with General Order M-399 **no later than September 19, 2022, at 5:00 p.m. (Eastern Time) (**the "**Confirmation Objection Deadline**"), on the following parties:

   i.    the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq and Matthew P. Goren, Esq.);

WEIL:\98564711\17\12817.0007

ii.   counsel to the Notes Trustee, Chapman and Cutler LLP, 1270 Sixth Avenue, New York, New York 10020 (Attn: Michael Friedman, Esq., Stephen R. Tetro II, Esq., and Aaron Krieger, Esq.);

iii.   counsel to the Plan Investor, (a) Gissin & Co., Habarzel 38B, Tel Aviv 6971054, Israel (Attn: Yael Hershkovitz, Esq.), (b) Locke Lord LLP, 200 Vesey Street, 20th Floor, New York, NY 10281 (Attn: Shalom Jacob, Esq.), and (c) Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn: Avi D. Feinberg, Esq.); and

iv.   the Office of the U.S. Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Andrea B. Schwartz, Esq. and Shara Cornell, Esq.).

66.   Objections to confirmation of the Plan that are not timely filed and served in the manner set forth above shall not be considered and shall be deemed overruled.

67.   The Debtor further requests that the Court set **September 29, 2022 at 5:00 p.m. (Eastern Time)** or, if the Confirmation Hearing is adjourned by the Court, the date which is two (2) Business Days prior to the Confirmation Hearing, as the deadline to file and serve replies or any omnibus replies to any objections to confirmation of the Plan. The Confirmation Objection Deadline will allow the Debtor and other parties in interest sufficient time to respond to objections to the Plan.

68.   In addition, the Debtor proposes to file the Plan Supplement no later than seven (7) days prior to the Voting Deadline. The proposed schedule for the Confirmation Hearing, including the fixing of the Confirmation Objection Deadline, is in the best interests of the Debtor, its estate, its creditors, and all parties in interest. Accordingly, the Debtor requests that the Court approve this schedule pursuant to Bankruptcy Rule 3020 and Local Bankruptcy Rule 3020-1.

## Notice

69.   Notice of this Motion will be provided to (i) William K. Harrington, the U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq. and Shara Cornell, Esq.); (ii) the Debtor's top twenty

WEIL:\98564711\17\12817.0007

(20) unsecured creditors; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the Southern District of New York; (v) counsel to Mishmeret Trust Company Ltd., as Notes Trustee, Chapman and Cutler LLP, 1270 Sixth Avenue, New York, New York 10020 (Attn: Michael Friedman, Esq., Stephen R. Tetro II, Esq., and Aaron Krieger, Esq.); (vi) counsel to the Plan Investor, Gissin & Co., Habarzel 38B, Tel Aviv 6971054, Israel (Attn: Yael Hershkovitz, Esq.), Locke Lord LLP, 200 Vesey Street, 20th Floor, New York, NY 10281 (Attn: Shalom Jacob, Esq.), Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn: Avi D. Feinberg, Esq.), and (vii) all other persons and entities that have requested service in this Chapter 11 Case pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). The Debtor respectfully submits that no further notice is required.

70.    No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

WHEREFORE the Debtor respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: May 31, 2022
        New York, New York

*/s/ Matthew P. Goren*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Matthew P. Goren

*Attorneys for the Debtor*

WEIL:\98564711\17\12817.0007

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                                :

In re                            :       **Chapter 11**

                                                :

**ALL YEAR HOLDINGS LIMITED,**       :       **Case No. 21-12051 (MG)**

                                                :

                    **Debtor.**[1]       :

                                                :

**Fed. Tax Id. No. 98-1220822**          :
-------------------------------------------------------------X

## ORDER (I) APPROVING PROPOSED DISCLOSURE STATEMENT AND THE FORM, MANNER, AND SUFFICIENCY OF NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) APPROVING THE PROPOSED SOLICITATION AND VOTING PROCEDURES, (III) APPROVING FORMS OF BALLOTS, SOLICITATION PACKAGES, AND RELATED NOTICES, (IV) SCHEDULING A CONFIRMATION HEARING AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE DEBTOR'S CHAPTER 11 PLAN, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**"),[2] dated May 31, 2022 [ECF No. __], of All Year

Holdings Limited, as debtor and debtor in possession (the "**Debtor**") in the above-captioned

chapter 11 case (the "**Chapter 11 Case**"), pursuant to sections 105, 1125, 1126, 1128, and 1129

of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3016, 3017, 3018,

3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and

Rules 3017-1, 3018-1, and 3020-1 of the Local Bankruptcy Rules for the Southern District of New

York (the "**Local Bankruptcy Rules**"), for entry of an order:

        (a)      approving the *Disclosure Statement for Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 124] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Disclosure Statement**") as

---

[1]    The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

containing adequate information pursuant to section 1125 of the Bankruptcy Code;

(b)    approving the form, manner, and sufficiency of the notice (the "**Disclosure Statement Hearing Notice**") of the hearing to consider approval of the Disclosure Statement and the Solicitation and Voting Procedures;

(c)    approving the Debtor's proposed procedures for the solicitation and tabulation of votes to accept or reject the *Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 123] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**");

(d)    approving (i) the forms of Ballots and Solicitation Packages and the procedures for the distribution thereof and (ii) the form of Notice of Non-Voting Status to be sent to holders of claims against, and interests in, the Debtor that are conclusively presumed to accept the Plan, deemed to reject the Plan, or are otherwise not entitled to vote on the Plan;

(e)    scheduling the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") and establishing notice and objection procedures for the confirmation of the Plan; and

(f)    granting related relief;

all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the relief requested in the Motion having been provided as set forth in the Motion, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion (the "**Disclosure Statement Hearing**"); and upon the record of the Disclosure Statement Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the

2

Debtor, its estates, its creditors, and all parties in interest; and upon all of the proceedings had

before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS FOUND AND DETERMINED THAT**[3]

### I.    The Disclosure Statement

       A.    The Disclosure Statement, a copy of which is annexed hereto as **Schedule**

**1**, contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

### II.    Disclosure Statement Hearing Notice and the Procedures for Filing Objections to the Disclosure Statement

       B.    The Disclosure Statement Hearing Notice filed by the Debtor and served

upon parties in interest in the Chapter 11 Case on May 31, 2022, together with the Motion itself

and the record of the Chapter 11 Case, constitutes adequate and sufficient notice of the Disclosure

Statement Hearing, the manner in which a copy of the Disclosure Statement (and exhibits thereto,

including the Plan) could be obtained, and the time fixed for filing objections thereto, in

satisfaction of the requirements of the applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, and the Local Bankruptcy Rules.

### III.    The Solicitation Process and the Solicitation and Voting Procedures

       C.    The procedures set forth herein, in the Motion, and in the Ballots for the

solicitation and tabulation of votes to accept or reject the Plan provide for a fair and equitable

process and are consistent with section 1126 of the Bankruptcy Code.

       ***Ballots***

       D.    The forms of Ballot, substantially in the forms attached to the Motion as

**Exhibit C**, are consistent with Official Form No. 314, address the particular needs of this case,

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

and are appropriate for the Voting Class. No further information or instructions are necessary with

respect to the Ballots.

### *Parties Entitled to Vote*

      E.      Pursuant to the Plan, the Debtor has classified the following six (6) separate

classes of claims and interests.

| Class | Designation | Impaired or Unimpaired | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| 3 | General Unsecured Claims | Unimpaired | No (Presumed to accept) |
| 4 | Remaining Unsecured Claims | Impaired | Yes |
| 5 | Subordinated Securities Claims | Impaired | No (Deemed to reject) |
| 6 | Equity Interests | Impaired | No (Deemed to reject) |

      F.      The only class that is entitled to vote to accept or reject the Plan is Class 4

(Remaining Unsecured Claims) (the "**Voting Class**").

### *Parties Not Entitled to Vote*

      G.      Pursuant to section 1126(f) of the Bankruptcy Code, the holders of claims

in Class 1 (Priority Non-Tax Claims, Class 2 (Other Secured Claims), and Class 3 (General

Unsecured Claims) (collectively, the "**Unimpaired Classes**") are conclusively presumed to accept

the Plan and, accordingly, are not entitled to vote on the Plan. Pursuant to section 1126(g) of the

Bankruptcy Code, the holders of claims or interests in Class 5 (Subordinated Securities Claims)

and Class 6 (Equity Interests) (collectively, the "**Non-Voting Impaired Classes**" and, together

with the Unimpaired Classes, the "**Non-Voting Classes**") are deemed to reject the Plan and,

accordingly, are not entitled to vote on the Plan.

### *The Form of Notice of Non-Voting Status*

      H.      The notice, substantially in the form attached as **Exhibit D** to the Motion

(the "**Notice of Non-Voting Status**"), complies with the applicable provisions of the Bankruptcy

Code, the Bankruptcy Rules, and the Local Bankruptcy Rules and, together with the Confirmation

Hearing Notice, provides adequate notice to holders of claims and interests in the Non-Voting

Classes of their non-voting status.  No further or additional notice is necessary.

*Solicitation*

I.    The Solicitation and Voting Procedures (as more fully set forth in the

Motion) provide for a fair and equitable voting process and are consistent with section 1126 of the

Bankruptcy Code.

J.    The period, set forth below, during which the Debtor may solicit

acceptances of the Plan, is a reasonable period of time for the holders of claims in the Voting Class

to vote on the Plan and to make an informed decision to either accept or reject the Plan.

K.    The procedures for transmitting the documents and information required by

Bankruptcy Rule 3017(d) to the record holders of the Debtor's claims and interests are adequate

and appropriate.

L.    The procedures set forth below regarding notice to all parties in interest of

the time, date, and place of the Confirmation Hearing and the filing of objections thereto, and the

distribution and contents of the Solicitation Packages, including the Confirmation Hearing Notice,

comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested

parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**

1.    The Motion is granted to the extent set forth herein.

**I.    <u>The Disclosure Statement</u>**

2.    The Disclosure Statement contains adequate information in accordance with

section 1125 of the Bankruptcy Code and is approved.

5

## II.    The Disclosure Statement Hearing Notice and the Procedures for Filing Objections to the Disclosure Statement

3.    The form and manner of notice of the time set for filing objections to, and the hearing to consider approval of, the Disclosure Statement as described in the Motion was proper, adequate, and sufficient notice thereof.

## III.    Supplemental Disclosure Materials

4.    To the extent any additional disclosures are required in connection with the Israeli Recognition Proceeding, the Debtor shall file a supplement with the Court containing any such additional disclosures (the "**Supplemental Disclosure Materials**") on not less than seven (7) days' notice to creditors and other parties in interest.  If no party objects to the inclusion of the Supplemental Disclosure Materials within such seven (7) day period, such Supplemental Disclosure Materials shall be deemed approved pursuant to section 1125 of the Bankruptcy Code.

## IV.    The Solicitation and Voting Procedures

5.    The Solicitation and Voting Procedures and the process for soliciting and tabulating votes to accept or reject the Plan as described in the Motion are approved.

### *Parties Entitled to Vote*

6.    Based upon the Debtor's Schedules and the provisions of the Plan, creditors in the Voting Class may vote on the Plan unless:

(i)    as of the Voting Record Date (as defined below), the outstanding amount of such claimant's claim is not greater than zero ($0.00);

(ii)    as of the Voting Record Date, such claimant's claim has been disallowed, expunged, disqualified, or suspended; or

(iii)    as of the Voting Record Date, such claimant's claim is subject to an objection or request for estimation, subject to the procedures set forth below.

WEIL:\98564711\17\12817.0007

7.      Any creditor that is not scheduled in the Debtor's Schedules and that did not file a proof of claim prior to the Voting Record Date shall not be entitled to vote on the Plan.

### *Temporary Allowance / Disallowance of Claims*

8.      Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a claim, and without prejudice to the rights of the Debtor to dispute the allowance of any claim, each claim within the Voting Class shall be temporarily Allowed in an amount equal to the amount of such claim set forth in the Schedules; *provided*, *however*, that:

(i)      if a claim is allowed pursuant to the Plan or by order of the Court (entered prior to the Voting Deadline), such claim shall be allowed for voting purposes in the allowed amount set forth in the Plan or such order;

(ii)      if a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim is temporarily allowed for voting purposes in the amount so estimated or allowed in such order;

(iii)      if a claim is listed in the Schedules as partially unliquidated, such claim shall be allowed in the partially liquidated amount for voting purposes only;

(iv)      if a claim is listed in the Schedules as wholly contingent, unliquidated, or disputed, such claim is accorded one vote and valued at one dollar ($1.00) for voting purposes only, and not for purposes of allowance or distribution; and

(v)      if a creditor holds or has purchased duplicate claims within the same class, such creditor shall be provided with only one Solicitation Package and one Ballot for voting a single claim in such class.

9.      If a creditor seeks to challenge the disallowance or amount of its claim for voting purposes, the creditor shall file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim for voting purposes in a different amount.  Upon the filing of any such motion, the creditor's Ballot shall not be counted unless temporarily allowed

7

by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan. All motions pursuant to Bankruptcy Rule 3018(a) must be filed on or before the date which is seven (7) days prior to the Voting Deadline.

### *Record Date*

10.      The record date for purposes of determining which holders of claims and equity interests are entitled to vote to accept or reject the Plan shall be September 12, 2022 (the "**Voting Record Date**").

### *Solicitation Packages*

11.      The materials to be distributed in connection with voting on the Plan and the notice of the Confirmation Hearing described in Paragraph 12 below (the "**Solicitation Packages**") are approved.

12.      Following the Israeli Court Approval Date, the Debtor shall mail, or cause to be mailed, in accordance with Bankruptcy Rule 3017(d), the following materials to the holders of claims entitled to vote in the Voting Class:

(vi)      a USB[4] containing the Disclosure Statement Order (without any exhibits), the Disclosure Statement, and the Plan;

(vii)     the Confirmation Hearing Notice; and

(viii)    the appropriate form of Ballot with voting instructions and a return envelope with prepaid postage.

13.      The Debtor shall also mail a copy of the Confirmation Hearing Notice (to the extent not already provided in the distributions set forth above) to all creditors, interest holders, and other parties in interest.

---

[4] Any creditor that receives a Solicitation Package may request a copy of the Disclosure Statement (and all attachments thereto) and/or Plan in paper format by contacting the Voting Agent by email at AYHInfo@DonlinRecano.com or by telephone at (877) 896-3192 (toll-free).  Upon receipt of such request, the Debtor shall provide such creditor with a paper copy of the Plan and the Disclosure Statement at no cost to the creditor.

14.    In accordance with Bankruptcy Rule 3017(d), the Debtor shall mail, or cause to be mailed, all of the foregoing distributions no later than two (2) Business Days following the Israeli Court Approval Date.

15.    The Debtor shall not be required to distribute copies of the Plan or Disclosure Statement to any holder of claims or interests in the Non-Voting Classes unless otherwise requested.

*The Ballots*

16.    The forms of Ballots are approved and shall be distributed, as applicable, to the holders of claims in the Voting Class.  With respect to the claims in the Voting Class held by the Noteholders, the Debtor shall transmit one Solicitation Package to the Notes Trustee on account of the Noteholders' claims in Class 4 (Remaining Unsecured Claims), which shall include a master Ballot to aggregate the votes for all such claims.

17.    Each general Ballot must be properly executed, completed, and delivered to the Voting Agent by (i) first-class mail, in the return envelope provided; (ii) electronic mail in portable document format (PDF); (iii) overnight courier; or (iv) personal delivery so that it is received by the Voting Agent no later than **September 19, 2022 at 5:00 p.m. (Eastern Time)** (the "**Voting Deadline**").[5]  The Notes Trustee's master Ballot must be delivered to the Voting Agent by electronic mail in portable document format (PDF) in advance of the Voting Deadline.

---

[5] With respect to any Ballot transmitted by electronic mail, the receipt date and time referenced in the Voting Agent's electronic mailbox shall be used as the timestamp for receipt.

WEIL:\98564711\17\12817.0007

*Notices of Non-Voting Status*

18.    The form of Notice of Non-Voting Status is approved and shall be distributed to the holders of the claims or interests in the Non-Voting Classes (or to any other holder of a claim or interest that is not otherwise entitled to vote on the Plan**).**

*Tabulation Procedures*

19.    The Voting Agent shall not count or consider for any purpose in determining whether the Plan has been accepted or rejected the following Ballots:  (a)  except in the Debtor's sole discretion, any Ballot received after the Voting Deadline, (b) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant, (c) any Ballot cast by a person or entity that does not hold a claim in the Voting Class, (d) any unsigned or non-original Ballot, (e) any form of ballot other than the official form of Ballot sent by the Voting Agent, or (f) except in the Debtor's sole discretion, any Ballot transmitted to the Voting Agent by telecopy, facsimile, or other electronic means (excluding transmission by electronic mail).  As specified on the Ballot, any Ballot that is otherwise properly completed, executed, and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, shall not be counted in determining the acceptance or rejection of the Plan.

## V.    **The Confirmation Hearing**

20.    The Confirmation Hearing shall be held on **October 6, 2022 at 10 a.m. (Eastern Time)**, which hearing may be adjourned at the request of the Debtor.  The Confirmation Hearing may be continued from time to time by the Court or the Debtor without further notice, except for adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court.  Prior to the Confirmation Hearing, the Debtor shall

file a brief and/or declaration in support of the Plan demonstrating that the Plan satisfies each
requirement for confirmation and responding to any objections to confirmation.

21.    Any objections with respect to the Plan must (a) be in writing; (b) state the
name and address of the objecting party and the amount and nature of the claim or interest of such
party; (c) state with particularity the basis and nature of any objection; (d) conform to the
Bankruptcy Rules and the Local Bankruptcy Rules; (e) be filed with the Bankruptcy Court (i) by
registered users of the Bankruptcy Court's case filing system, electronically in accordance with
General Order M-399 (which can be found at http://nysb.uscourts.gov) and (ii) by all other parties
in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy
delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy
Court and General Order M-399, to the extent applicable; and (f) be served in accordance with
General Order M-399 **no later than September 19, 2022 at 5:00 p.m. (Eastern Time)**, on the
following parties:

v.    the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth
Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq. and
Matthew P. Goren, Esq.);

vi.    counsel to the Notes Trustee, Chapman and Cutler LLP, 1270 Sixth Avenue,
New York, New York 10020 (Attn: Michael Friedman, Esq., Stephen R.
Tetro II, Esq., and Aaron Krieger, Esq.);

vii.    counsel to the Plan Investor, (a) Gissin & Co., Habarzel 38B, Tel Aviv
6971054, Israel (Attn: Yael Hershkovitz, Esq.), (b) Locke Lord LLP, 200
Vesey Street, 20th Floor, New York, NY 10281 (Attn: Shalom Jacob, Esq.),
and (c) Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza,
New York, NY 10004 (Attn: Avi D. Feinberg, Esq.); and

viii.    the Office of the United States Trustee for Region 2, 201 Varick Street,
Suite 1006, New York, New York 10014 (Attn: Andrea B. Schwartz, Esq.
and Shara Cornell, Esq.).

22.    Objections to confirmation of the Plan that are not timely filed and served
in the manner set forth above shall not be considered and shall be deemed overruled.

11

23.     Replies or any omnibus replies to any objections to confirmation of the Plan shall be filed and served by **September 29, 2022 at 5:00 p.m. (Eastern Time)** or, if the Confirmation Hearing is adjourned by the Court, the date which is two (2) Business Days prior to the Confirmation Hearing.

24.     The Debtor shall file the Plan Supplement no later than seven (7) days prior to the Voting Deadline.

25.     The Confirmation Hearing Notice, substantially in the form annexed to the Motion as **<u>Exhibit E</u>**, is approved.

26.     The Debtor shall publish a notice substantially similar to the Confirmation Hearing Notice, with reasonable adjustments and modifications to account for publication limitation, as soon as reasonably practicable following the Israeli Court Approval Date, in *The New York Times* (national edition) in English and in *Haaretz*, an Israeli newspaper, in Hebrew.

27.     The Debtor is authorized to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court.

28.     The Debtor is authorized to make nonsubstantive and nonmaterial changes to the Disclosure Statement, the Plan, the Solicitation Packages, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among such documents.

29.     The Debtor, in its sole discretion and subject to the Court's availability, may adjourn the applicable Plan solicitation and confirmation dates and deadlines.  The Debtor shall file and serve notices, as necessary, of any adjournments or changes to the Voting Deadline, the

Confirmation Objection Deadline, and/or the date of the Confirmation Hearing to provide interested parties with adequate notice of the relevant dates and deadlines.

30.     The notice to be provided pursuant to the procedures set forth herein is good and sufficient notice to all parties in interest, and no other or further notice need be provided.

31.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2022
        New York, New York

_____
HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

13

## Schedule 1

**Disclosure Statement**

**[DISCLOSURE STATEMENT AS APPROVED TO BE ATTACHED]**

**<u>Exhibit B</u>**

**Disclosure Statement Hearing Notice**

WEIL:\98564711\17\12817.0007

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Matthew P. Goren

*Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                           :

**In re**                              :       **Chapter 11**

                                :

**ALL YEAR HOLDINGS LIMITED,**      :      **Case No. 21-12051 (MG)**

                                :

               **Debtor.**[1]         :

                                :

**Fed. Tax Id. No. 98-1220822**        :
------------------------------------------------------------X

**NOTICE OF HEARING TO CONSIDER APPROVAL OF DISCLOSURE
STATEMENT FOR CHAPTER 11 PLAN OF REORGANIZATION
OF ALL YEAR HOLDINGS LIMITED AND RELATED RELIEF**

**PLEASE TAKE NOTICE** that:

      1.      On May 31, 2022, All Year Holdings Limited, as debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), filed its *Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 123] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**") and its related disclosure statement with respect to the Plan, dated May 31, 2022 [ECF No. 124] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Disclosure Statement**") pursuant to section 1125 of title 11 of the United States Code (the "**Bankruptcy Code**").

      2.      Contemporaneously thereto, the Debtor filed a motion (the "**Solicitation Procedures Motion**")[2], pursuant to sections 105, 1125, 1126, 1128, and 1129 of the Bankruptcy Code, Rules 2002, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 3017-1, 3018-1 and 3020-1 of the Local

---

[1]      The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

[2]      Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Solicitation Procedures Motion.

Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), seeking entry of an order:

> (g)      approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

> (h)      approving the form, manner, and sufficiency of the notice of the hearing to consider approval of the Disclosure Statement and the Solicitation and Voting Procedures;

> (i)      approving the Debtor's proposed procedures for the solicitation and tabulation of votes to accept or reject the Plan;

> (j)      approving (i) the forms of Ballots and Solicitation Packages and the procedures for the distribution thereof and (ii) the form of Notice of Non-Voting Status to be sent to holders of claims against, and interests in, the Debtor that are conclusively presumed to accept the Plan, deemed to reject the Plan, or are otherwise not entitled to vote on the Plan;

> (k)      scheduling the hearing to consider confirmation of the Plan and establishing notice and objection procedures for the confirmation of the Plan; and

> (l)      granting related relief.

3.      A hearing to consider approval of the Disclosure Statement and the other relief requested in the Solicitation Procedures Motion will be held before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 601, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**") on **July 19, 2022 at 2 p.m. (Prevailing Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

4.      Any party in interest wishing to obtain a copy of the Disclosure Statement, the Plan, or the Solicitation Procedures Motion should contact the Debtor's Voting Agent by email at AYHInfo@DonlinRecano.com or by telephone at (877) 896-3192 (toll-free). Upon receipt of such request, the Debtor shall provide such creditor with a paper copy of the Plan, the Disclosure Statement, or the Solicitation Procedures Motion at no cost to the creditor. In addition, the Disclosure Statement, the Plan, and the Solicitation Procedures Motion are on file with the Bankruptcy Court and may be examined by accessing the Bankruptcy Court's website: www.nysb.uscourts.gov. Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website. A PACER password can be obtained at: www.pacer.psc.uscourts.gov.

5.      Responses or objections to approval of the Disclosure Statement or the other relief sought in connection with the Solicitation Procedures Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Bankruptcy Rules, shall be filed with the Bankruptcy Court by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*,

WEIL:\98564711\17\12817.0007

electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399, dated May 17, 2010, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Solicitation Procedures Motion so as to be filed and served upon (i) the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq. and Matthew P. Goren, Esq.); (ii) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq. and Shara Cornell, Esq.); (iii) counsel to Mishmeret Trust Company Ltd., as Trustee for the Noteholders, Chapman & Cutler LLP, 1270 Sixth Avenue, New York, New York 10020 (Attn: Michael Friedman, Esq., Stephen R. Tetro II, Esq., and Aaron Krieger, Esq.); and (iv) counsel to the Plan Investor, (a) Gissin & Co., Habarzel 38B, Tel Aviv 6971054, Israel (Attn: Yael Hershkovitz, Esq.), (b) Locke Lord LLP, 200 Vesey Street, 20th Floor, New York, NY 10281 (Attn: Shalom Jacob, Esq.), and (c) Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn: Avi D. Feinberg, Esq.), by no later than **July 5, 2022 at 5:00 p.m. (Prevailing Eastern Time)** (the "**Objection Deadline**").

6.      **The Plan contains an injunction which, upon entry of the Confirmation Order, prevents all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan, provided, however, the foregoing shall not enjoin or prevent any party from taking any action to enforce any rights or obligations granted pursuant to the Plan**

7.      **IF AN OBJECTION TO THE DISCLOSURE STATEMENT OR THE OTHER RELIEF SOUGHT IN THE SOLICITATION PROCEDURES MOTION IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE DISCLOSURE STATEMENT OR THE SOLICITATION PROCEDURES MOTION AND MAY NOT BE HEARD AT THE HEARING.**

8.      Upon approval of the Disclosure Statement by the Bankruptcy Court and the Israeli Court Approval Date (as defined in the Solicitation Procedures Motion), any party in interest that is entitled to vote on the Plan will receive a copy of the Disclosure Statement, the Plan and various documents related thereto, unless otherwise ordered by the Bankruptcy Court.

9.      The Hearing may be adjourned from time to time without further notice to parties in interest other than by an announcement in Bankruptcy Court of such adjournment on the date scheduled for the Hearing or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtor with the Bankruptcy Court.

10.     **PLEASE TAKE FURTHER NOTICE that, due to the COVID-19 pandemic, the Hearing will be conducted using Zoom for Government. Parties should not appear in person and those wishing to appear or participate at the Hearing (whether "live" or "listen only") must make an electronic appearance through the Court's website prior to 4:00 p.m. (Prevailing Eastern Time) on the business day prior to the Hearing. Instructions for making**

**an eCourtAppearance and additional information on the Court's Zoom procedures can be found at http://www.nysb.uscourts.gov/content/judge-martin-glenn.**

Dated: _____, 2022
          New York, New York

                                            _____

                                             WEIL, GOTSHAL & MANGES LLP
                                            767 Fifth Avenue
                                            New York, New York 10153
                                            Telephone: (212) 310-8000
                                            Facsimile: (212) 310-8007
                                            Gary T. Holtzer
                                            Matthew P. Goren

                                            *Attorneys for the Debtor*

WEIL:\98564711\17\12817.0007

## Exhibit C

**Forms of Ballots**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                    :

In re                      :         **Chapter 11**
                    :

**ALL YEAR HOLDINGS LIMITED,**    :         **Case No. 21-12051 (MG)**
                    :

           Debtor.[1]      :
                    :

**Fed. Tax Id. No. 98-1220822**     :
---------------------------------------------------------------X

### MASTER BALLOT FOR ACCEPTING OR REJECTING CHAPTER 11 PLAN OF REORGANIZATION OF ALL YEAR HOLDINGS LIMITED

### MASTER BALLOT FOR:

*Noteholder Claims in Class 4 (Remaining Unsecured Claims)*

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M., EASTERN TIME, ON SEPTEMBER 19, 2022 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTOR.**

This master ballot (the "**Master Ballot**") is provided to Mishmeret Trust Company Ltd., as trustee (the "**Trustee**") for the holders of the various series of notes (the "**Notes**" and the holders thereof, the "**Noteholders**" or the "**Beneficial Holders**") issued by All Year Holdings Limited (the "**Debtor**"). This Master Ballot is being provided to record the votes of the Noteholders to accept or reject the *Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 123] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**") with respect to their Class 4 Remaining Unsecured Claims against the Debtor. The Plan is attached as **Exhibit A** to the *Disclosure Statement for Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 124] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Disclosure Statement**"), which accompanies this Ballot. All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to such terms in the Plan. Please review the Disclosure Statement and the Plan in their entirety before you submit this Master Ballot.

On December 14, 2021 (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). The Plan can be confirmed by the Bankruptcy Court and thereby made binding on the Noteholders if

---

[1]    The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

e

it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in the one Impaired Class entitled to vote under the Plan, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on the Beneficial Holders whether or not such holders vote or if such holders vote to reject the Plan.

Specifically, this Master Ballot is being submitted to the Notes Trustee as the party authorized to record and submit the Class 4 Remaining Unsecured Claims against the Debtor arising under or relating to the various deeds of trust (collectively, the "**Deeds of Trust**") and other documents governing the issuance, terms, conditions, and obligations of the Notes. In connection with voting on the Plan, each Noteholder will be provided with the opportunity to elect to assign any and all claims and causes of action that such Noteholder may hold in its capacity as a Noteholder to the Plan Administrator to pursue for the benefit of such Noteholders.

Please use this Master Ballot to record the votes to accept or reject the Plan. If you have any questions on how to properly complete this Ballot, please call Donlin Recano & Co (the "**Voting Agent**") at (877) 896-3192 (domestic toll-free) or (212) 771-1128 (international) or email AYHInfo@DonlinRecano.com with a reference to "All Year" in the subject line. **THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**This Master Ballot should be used to tabulate and record votes to accept or reject the Plan by the Noteholders in respect of their Class 4 Claims (Remaining Unsecured Claims). In order for these votes to be counted, this Master Ballot must be properly completed, signed, and returned to the Voting Agent so that it is actually received by the Voting Deadline of 5:00 p.m. (Eastern Time) on September 19, 2022, unless such time is extended by the Debtor.**

**This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of the Noteholders' Class 4 Remaining Unsecured Claims against the Debtor.**

Class 4 (Remaining Unsecured Claims) consists of the Noteholder Claims[2], the Subsidiary Plan Administrator Claims[3], and the Non-Securities Indemnity Claims[4].

The Plan proposes the following treatment of Allowed Class 4 Remaining Unsecured Claims: Except to the extent that a holder of an Allowed Remaining Unsecured Claim against the

---

[2]    "**Noteholder Claims**" means, individually or collectively, the Series B Notes Claims, the Series C Notes Claims, the Series D Notes Claims, and the Series E Notes Claims.

[3]    "**Subsidiary Plan Administrator Claim**" means any Claim brought by any plan administrator with respect to any of the debtors in the procedurally consolidated chapter 11 cases of *Evergreen Gardens Mezz, LLC, et.al.*, Case No. 21-10035 (MG) (Bankr. SD.N.Y.).

[4]    "**Non-Securities Indemnity Claims**" means any Claims against the Debtor by any current or former officer or director of the Debtor for indemnification or contribution that are not Subordinated Securities Claims.

Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement and release of such Allowed Remaining Unsecured Claim, each such holder shall receive (i) on the Effective Date, from the Disbursing Agent (on behalf of the Debtor), its Pro Rata Share of the Class 4 ED Distribution, (ii) in the event the William Vale Purchase occurs subsequent to the Effective Date, from the Disbursing Agent (on behalf of the Debtor), its Pro Rata Share of any additional New Notes issued, and (iii) on such other date(s) as determined from time to time by the Plan Administrator, from Wind-Down Co, the amounts recovered, if any, from the Excluded Assets (including, but without limitation, from the prosecution of Avoidance Actions and other Causes of Action) and any remaining Wind Down Cash Funding.  Notwithstanding anything to the contrary herein, the Non-Securities Indemnity Claims shall be estimated at zero dollars ($0) for all purposes under the Plan (including for purposes of distribution).  The right to the foregoing distributions shall be nontransferable except by will, intestate succession, or operation of law.

### INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

**VOTING DEADLINE/VOTING AGENT:**

**To have the votes reflected on this Master Ballot counted, this Master Ballot must be completed, signed, and returned to the Voting Agent so that it is actually received by the Voting Deadline of 5:00 p.m. (Prevailing Eastern Time) on September 19, 2022, unless such time is extended by the Debtor.**  The Master Ballot must be delivered to the Voting Agent in the following manner:

> **By e-mail to:**
>
> DRCVote@DonlinRecano.com with a reference to "All Year Master Ballot" in the subject line

**Master Ballots will not be accepted by telecopy, facsimile, or other electronic means of transmission (other than by e-mail to DRCVote@DonlinRecano.com with a reference to "All Year Master Ballot" in the subject line) or by mail or other means of physical delivery.  The Master Ballot transmitted to the Voting Agent must be in portable document format (PDF).  The receipt date and time referenced in the Voting Agent's electronic mailbox will be used as the timestamp for receipt.**

**The Master Ballot should not be sent to the Debtor, the Bankruptcy Court, or the Debtor's financial or legal advisors.**

**HOW TO VOTE:**

1.    With respect to the vote of each Noteholder, you must properly complete the Master Ballot, as follows:

a.    Check the box, if applicable, in Item 1 on the Master Ballot;

b.    Provide the information requested in Item 2 of the Master Ballot, as transmitted to you by the Beneficial Holders.  **IMPORTANT:  EACH BENEFICIAL HOLDER MUST VOTE ALL OF ITS CLASS 4 REMAINING UNSECURED**

**CLAIMS <u>EITHER</u> TO ACCEPT <u>OR</u> REJECT THE PLAN AND MAY NOT SPLIT SUCH VOTE. IF ANY BENEFICIAL HOLDER HAS ATTEMPTED TO SPLIT SUCH VOTE, PLEASE CONTACT THE VOTING AGENT IMMEDIATELY.**

c.     Review the certification in Item 3 of the Master Ballot;

d.     Sign and date the Master Ballot, and provide any remaining information requested;

e.     If additional space is required to respond to any item on the Master Ballot, please use additional sheets of paper clearly marked to indicate the applicable Item of the Master Ballot to which you are responding;

f.     Contact the Voting Agent if you need any additional information; and

g.     Deliver the completed, executed Master Ballot so as to be <u>received</u> by the Voting Agent before the Voting Deadline.

2.     The Master Ballot is *not* a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan.

3.     The Master Ballot shall not constitute or be deemed a proof of Claim or an assertion of a Claim.

4.     In the event that (i) the Debtor revokes or withdraws the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

**IF YOU (I) HAVE ANY QUESTIONS REGARDING THE BALLOT, (II) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR PLAN, OR (III) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE VOTING AGENT AT (877) 896-3192 (DOMESTIC TOLL-FREE) OR (212) 771-1128 (INTERNATIONAL) OR BY E-MAILING <u>AYHINFO@DONLINRECANO.COM</u> WITH A REFERENCE TO "ALL YEAR" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

<u>**NOTICE REGARDING CERTAIN RELEASES IN THE PLAN**</u>

**PURSUANT TO THE PLAN, IF A BENEFICIAL HOLDER VOTES TO ACCEPT THE PLAN, SUCH HOLDER IS AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN SECTION 10.6(b) OF THE PLAN.**

<u>**Section 10.5 of the Plan contains the following provision:**</u>

10.5.    *Injunction.*

(a)    **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan, provided, however, the foregoing shall not enjoin or prevent any party from taking any action to enforce any rights or obligations granted pursuant to the Plan.**

(b)    **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as expressly agreed to by (x) the Reorganized Debtor and a holder of any Unimpaired Claim or (y) Wind-Down Co and a holder of any Impaired Claim or Impaired Interest, all Entities who have held, hold, or may hold Claims against or Interests in the Debtor (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against, or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action against the Debtor that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtor, the Reorganized Debtor or Wind-Down Co, or the property of any of the Debtor, the Reorganized Debtor or Wind-Down Co; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Reorganized Debtor or Wind-Down Co, or the property of any of the Debtor, the Reorganized Debtor or Wind-Down Co; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Reorganized Debtor or Wind-Down Co, or the property of any of the Debtor, the Reorganized Debtor or Wind-Down Co; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtor, the Reorganized Debtor or Wind-Down Co, or against property or interests in property of any of the Debtor, the Reorganized Debtor or Wind-Down Co, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

(c)    **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section 10.5.**

(d)    **The injunctions in this Section 10.5 shall extend to any successors of the Debtor (including the Reorganized Debtor and Wind-Down Co), and their respective property and interests in property.**

**Section 10.6(b) of the Plan contains the following provision:**

(b)    **Mutual Releases.**

**As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date; (ii) for the right to defend against any objections to Claims that may be asserted under the Plan; or (iii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions made by the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed released and discharged by each of the other Released Parties, in each case, from any and all claims, Interests, or Causes of Action whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising from, in whole or in part, the Debtor, the restructuring, the Chapter 11 Case, the pre- and postpetition marketing and sale process, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, or consummation of the Plan (including the Plan Supplement), the Plan Investment Agreement, the Definitive Documents, the Deeds of Trust, the Notes, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, in all of the foregoing cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that nothing in this Section 10.6(b) shall be construed to release the Released Parties from any gross negligence, willful misconduct, or fraud, in each case as determined by a Final Order.  The Persons and Entities in (i) through (iii) of this Section 10.6(b) shall be permanently enjoined from prosecuting any of the foregoing claims or Causes of Action released under this Section 10.6(b) against each of the Released Parties.**

**Section 10.7 of the Plan contains the following provision:**

10.7. *Exculpation.*

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any conduct occurring on or after the Petition Date in connection with or arising out of the filing and administration of the Chapter 11 Case, the marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security or Asset of the Debtor; the Disclosure Statement, the Plan Investment Agreement, including the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation, and consummation thereof, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party that constitute gross negligence, fraud, or willful misconduct, in each case as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

IN ADDITION TO THE RELEASES SET FORTH IN THE PLAN, THE INVESTMENT AGREEMENT PROVIDES FOR CERTAIN MUTUAL RELEASES BETWEEN AND AMONG THE PARTIES THERETO AND THEIR RESPECTIVE REPRESENTATIVES AND ADVISORS. YOU ARE ENCOURAGED TO REVIEW THE RELEASE PROVISIONS UNDER THE INVESTMENT AGREEMENT IN THEIR ENTIRETY.

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1**.  **Certification of Authority to Vote**.  The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the box if applicable):

☐        has full power and authority to record the votes to accept or reject the Plan on behalf of the Noteholders listed in Item 2 below.

**Item 2**.  **Vote on the Plan**.

The undersigned transmits the following votes of the Noteholders in respect of their Class 4 Claims (Remaining Unsecured Claims) and certifies that the following Noteholders have authorized and directed the Notes Trustee to record the votes on their claims in the manner set forth below.  The amounts set forth below with respect to the Class 4 Claims (Remaining Unsecured Claims) held by the Beneficial Holders are solely for purposes of voting to accept or reject the Plan.[5]

---

[5]    Indicate in the appropriate column the principal amount of the Remaining Unsecured Claims voted by each Beneficial Holder.  Please note that each Beneficial Holder must vote all of such Beneficial Holder's Claims to accept or to reject the Plan and may not split such vote.

| Noteholder Claims in Class 4 (Remaining Unsecured Claims) | | | | | |
|---|---|---|---|---|---|
| **Name of Beneficial Holder (Individual or Entity, as applicable)** | **Series of Notes Held by Beneficiary Holder** | **Principal Amount of Remaining Unsecured Claims Held by Beneficial Holder** | **Class 4**<br><br>**Remaining Unsecured Claims**<br><br>**Vote on Plan** | | **Optional Election to Assign Claims and Causes of Action to Plan Administrator** |
| | | | **Accept** | **Reject** | |
| 1. | | | ☐ | ☐ | ☐ |
| 2. | | | ☐ | ☐ | ☐ |
| 3. | | | ☐ | ☐ | ☐ |
| 4. | | | ☐ | ☐ | ☐ |
| 5. | | | ☐ | ☐ | ☐ |
| 6. | | | ☐ | ☐ | ☐ |

| Noteholder Claims in Class 4 (Remaining Unsecured Claims) | | | | | |
|---|---|---|---|---|---|
| 7. | | | ☐ | ☐ | ☐ |
| 8. | | | ☐ | ☐ | ☐ |
| 9. | | | ☐ | ☐ | ☐ |
| 10. | | | ☐ | ☐ | ☐ |

**Item 3**.  **Certification.**

By signing this Master Ballot, the undersigned certifies that:

(a)      the undersigned (i) has received a copy of the Disclosure Statement and Master Ballot, and (ii) is authorized to vote to accept or reject the Plan on behalf of the Beneficial Holders.

(b)      the undersigned has properly disclosed: (i) the number of Beneficial Holders voting Class 4 Claims (Remaining Unsecured Claims) against the Debtor through the undersigned; (ii) the respective amounts of Class 4 Claims owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the name for each such Beneficial Holder.

Name of Signatory on behalf of Mishmeret Trust Company Ltd.:     _____

Signature:     _____

Street Address:     _____

City, State, Zip Code:     _____

Telephone Number:     _____

E-mail Address:     _____

Date Completed:     _____

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT
*PROMPTLY* BY THE FOLLOWING METHOD:**

**Via electronic mail service to:**

DRCVote@DonlinRecano.com
with a reference to "All Year Master Ballot" in the subject line.

**If the Voting Agent does not actually receive this Master Ballot on or before the Voting Deadline of <u>5:00 p.m.
(Eastern Time) on September 19, 2022</u>, and if the Voting Deadline is not extended, this Master Ballot will be
rejected by the Debtor as invalid, and therefore, not be counted in connection with Confirmation of the Plan.
The receipt date and time referenced in the Voting Agent's electronic mailbox will be used as the timestamp
for receipt.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                                                 :

| | |
|---|---|
| In re | :    **Chapter 11** |
| | : |
| **ALL YEAR HOLDINGS LIMITED,** | :    **Case No. 21-12051 (MG)** |
| | : |
| Debtor.[1] | : |
| | : |
| **Fed. Tax Id. No. 98-1220822** | : |

---------------------------------------------------------------X

**BALLOT FOR ACCEPTING OR REJECTING CHAPTER 11 PLAN**
**OF REORGANIZATION OF ALL YEAR HOLDINGS LIMITED**

**GENERAL BALLOT FOR:**

*Class 4 – Remaining Unsecured Claims*

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M., EASTERN TIME, ON SEPTEMBER 19, 2022 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTOR.**

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the *Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 123] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**") with respect to your Class 4 Remaining Unsecured Claims. The Plan is attached as **Exhibit A** to the *Disclosure Statement for Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 124] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Disclosure Statement**"), which accompanies this Ballot. All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to such terms in the Plan. The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. You should review the Disclosure Statement and the Plan in their entirety before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

On December 14, 2021 (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). The Plan can thereafter be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than

---

[1]    The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

one-half in number of the Claims voted in the one Impaired Class entitled to vote under the Plan, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.

Please use this Ballot to cast your vote to accept or reject the Plan. If you have any questions on how to properly complete this Ballot, please call Donlin Recano & Co (the "**Voting Agent**") at (877) 896-3192 (domestic toll-free) or (212) 771-1128 (international) or email AYHInfo@DonlinRecano.com with a reference to "All Year" in the subject line. **THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**This Ballot is to be used for voting by holders of Class 4 Claims (Remaining Unsecured Claims) against the Debtor. <u>In order for your vote to be counted, this Ballot must be properly completed, signed, and returned to the Voting Agent so that it is actually received by the Voting Deadline of 5:00 p.m. (Eastern Time) on September 19, 2022, unless such time is extended by the Debtor.</u>**

**This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 4 Claims (Remaining Unsecured Claims) against the Debtor.**

Class 4 (Remaining Unsecured Claims) consists of the Noteholder Claims[2], the Subsidiary Plan Administrator Claims[3], and the Non-Securities Indemnity Claims[4].

The Plan proposes the following treatment of Allowed Class 4 Remaining Unsecured Claims: Except to the extent that a holder of an Allowed Remaining Unsecured Claim against the Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement and release of such Allowed Remaining Unsecured Claim, each such holder shall receive (i) on the Effective Date, from the Disbursing Agent (on behalf of the Debtor), its Pro Rata Share of the Class 4 ED Distribution, (ii) in the event the William Vale Purchase occurs subsequent to the Effective Date, from the Disbursing Agent (on behalf of the Debtor), its Pro Rata Share of any additional New Notes issued, and (iii) on such other date(s) as determined from time to time by the Plan Administrator, from Wind-Down Co, the amounts recovered, if any, from the Excluded Assets (including, but without limitation, from the prosecution of Avoidance Actions and other Causes of Action) and any remaining Wind Down Cash Funding. Notwithstanding anything to

---

[2]    "**Noteholder Claims**" means, individually or collectively, the Series B Notes Claims, the Series C Notes Claims, the Series D Notes Claims, and the Series E Notes Claims.

[3]    "**Subsidiary Plan Administrator Claim**" means any Claim brought by any plan administrator with respect to any of the debtors in the procedurally consolidated chapter 11 cases of *Evergreen Gardens Mezz, LLC, et.al.*, Case No. 21-10035 (MG) (Bankr. SD.N.Y.).

[4]    "**Non-Securities Indemnity Claims**" means any Claims against the Debtor by any current or former officer or director of the Debtor for indemnification or contribution that are not Subordinated Securities Claims.

the contrary herein, the Non-Securities Indemnity Claims shall be estimated at zero dollars ($0) for all purposes under the Plan (including for purposes of distribution). The right to the foregoing distributions shall be nontransferable except by will, intestate succession, or operation of law.

The Debtor will solicit the holders of Claims in Class 4 (Remaining Unsecured Claims) based on the information in the Debtor's amended and restated schedules of assets and liabilities and statements of financial affairs filed with the Court [ECF Nos. 36 and 37] (the "**Schedules**"). Based on the Schedules and the provisions of the Plan, you are entitled to vote on the Plan unless:

> (iv)    as of September 12, 2022, the record date for determining which holders of claims and equity interests are entitled to vote to accept or reject the Plan (the "**Voting Record Date**"), the outstanding amount of your claim is not greater than zero ($0.00);
>
> (v)    as of the Voting Record Date, your claim has been disallowed, expunged, disqualified, or suspended; or
>
> (vi)    your claim is subject to an objection or request for estimation as of the Voting Record Date, subject to the procedures set forth below.

If you are not scheduled in the Debtor's Schedules and you did not file a proof of claim prior to the Voting Record Date, you are not entitled to vote on the Plan.

Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, your claim, and without prejudice to the rights of the Debtor to dispute the allowance of your claim, your claim will be temporarily Allowed in an amount equal to the amount of such claim set forth in the Schedules; *provided*, *however*, that:

> (ix)    if your claim is allowed pursuant to the Plan or by order of the Court (entered prior to the Voting Deadline), your claim will be allowed for voting purposes in the allowed amount set forth in the Plan or such order;
>
> (x)    if your claim has been estimated or otherwise allowed for voting purposes by order of the Court, your claim is temporarily allowed for voting purposes in the amount so estimated or allowed in such order;
>
> (xi)    if your claim is listed in the Schedules as partially unliquidated, your claim will be allowed in the partially liquidated amount for voting purposes only;
>
> (xii)    if your claim is listed in the Schedules as wholly contingent, unliquidated, or disputed, your claim is accorded one vote and valued at one dollar ($1.00) for voting purposes only, and not for purposes of allowance or distribution; and

(xiii)    if you hold or have purchased, based on the Schedules, duplicate claims within the same class, you will be provided with only one Ballot for voting a single claim in such class.

If you wish to challenge the disallowance or amount of your claim for voting purposes, you must file with the Bankruptcy Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing your claim for voting purposes in a different amount. Upon the filing of any such motion, your Ballot will not be counted unless temporarily allowed by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan. All motions pursuant to Bankruptcy Rule 3018(a) must be filed on or before the date which is seven (7) days prior to the Voting Deadline.

**INSTRUCTIONS FOR COMPLETING THE BALLOT**

This Ballot is submitted to you to solicit your vote to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement, including all exhibits thereto. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

      **To have your vote counted, you must complete, sign, and return this Ballot so that it its received by the Voting Agent no later than the Voting Deadline, unless such time is extended by the Debtor. Ballots must be delivered to the Voting Agent at the appropriate address listed below by (i) first-class mail, in the return envelope provided; (ii) electronic mail; (iii) overnight courier; or (iv) personal delivery. If you choose to submit your Ballot via the electronic mail, you should NOT submit your hard copy Ballot as well. Please choose only one method of return for your Ballot.**

---

**If by U.S. Postal Service mail:**

Donlin Recano & Company, Inc.
Re: All Year Holdings Limited
PO Box 199043
Blythebourne Station
Brooklyn, NY 11219


**If by electronic mail:**

To DRCVote@DonlinRecano.com with a reference to "All Year" in the subject line


**If by overnight delivery or personal delivery by hand:**

Donlin Recano & Company, Inc.
Re: All Year Holdings Limited
6201 15th Avenue
Blythebourne Station
Brooklyn, NY 11219

---

**Ballots will not be accepted by telecopy, facsimile or other electronic means of transmission (except in the Debtor's sole discretion). Ballots transmitted to the Voting Agent must be in portable document format (PDF). With respect to any Ballot transmitted by electronic mail, the receipt date and time referenced in the Voting Agent's electronic mailbox will be used as the timestamp for receipt.**

**The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) except in the Debtor's sole discretion, any Ballot received after the Voting Deadline, (b) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant, (c) any Ballot cast by a person or entity that does not hold a claim in Class 4, (d) any unsigned or non-original Ballot, (e) any form of ballot other than the official form of Ballot sent by the Voting Agent, or (f) except in the Debtor's sole discretion, any Ballot transmitted to the Voting Agent by telecopy, facsimile, or other electronic means. An otherwise properly completed, executed, and timely returned Ballot that does not indicate acceptance or rejection of the Plan, or that indicates both acceptance and rejection of the Plan, will not be counted in determining the acceptance or rejection of the Plan.**

To properly complete the Ballot, you must follow the procedures described below:

a.   Make sure that the information contained in Item 1 is correct;

b.   If you have a Claim against the Debtor in Class 4 (Remaining Unsecured Claims), cast one vote to accept or reject the Plan by checking the appropriate box in Item 2;

c.   **Make sure to read the information regarding the Releases in Item 4.**

d.   If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 5. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act);

e.   You must vote all your Claims within Class 4 (Remaining Unsecured Claims) either to accept or reject the Plan;

f.   If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Voting Agent will be counted, unless the holder of the Claim receives Bankruptcy Court approval otherwise;

g.   If you believe that you have received the wrong Ballot, please contact the Voting Agent immediately;

h.   Provide your name, mailing address, and any remaining information requested;

i.   Sign and date your Ballot; and

     j.     Return your Ballot with an original signature (or a digital scan thereof if your Ballot is submitted by electronic mail) to the Voting Agent.

     No Ballot shall constitute or be deemed a proof of Claim or an assertion of Claim.

     In the event that (i) the Debtor revokes or withdraws the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

**IF YOU (I) HAVE ANY QUESTIONS REGARDING THIS BALLOT, (II) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (III) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR PLAN, OR (IV) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE VOTING AGENT AT (877) 896-3192 (DOMESTIC TOLL-FREE) OR (212) 771-1128 (INTERNATIONAL), OR BY E-MAILING <u>AYHINFO@DONLINRECANO.COM</u> WITH A REFERENCE TO "ALL YEAR" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.  THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1**.  **Amount of Class 4 Claim (Remaining Unsecured Claims)**.  For purposes of voting to accept or reject the Plan, the undersigned certifies that as of September 12, 2022 the undersigned holds a Class 4 Claim against the Debtor in the amount set forth below.

**Claim Amount**:        $[_____]

**Item 2**.  **Vote on the Plan**.  The undersigned holder of a Class 4 Claim (Remaining Unsecured Claims) in the amount set forth in Item 1 above hereby votes to:

**Check one box only**:              ☐        Accept the Plan

                                     ☐        Reject the Plan

**PLEASE TAKE NOTE THAT IF YOU SUBMIT THIS BALLOT TO THE VOTING AGENT AND EITHER: (I) FAIL TO INDICATE WHETHER YOU ARE ACCEPTING OR REJECTING THE PLAN OR (II) CHECK BOTH BOXES INDICATING THAT YOU ARE BOTH ACCEPTING AND REJECTING THE PLAN, YOUR BALLOT WILL NOT BE COUNTED IN DETERMINING THE ACCEPTANCE OR REJECTION OF THE PLAN.**

**Item 4**. **Releases**.

**PURSUANT TO THE PLAN, IF YOU RETURN A BALLOT AND VOTE TO ACCEPT THE PLAN, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN SECTION 10.6(b) OF THE PLAN.**

**IMPORTANT INFORMATION REGARDING THE RELEASES IN THE PLAN:**

<u>**Section 10.5 of the Plan contains the following provision:**</u>

10.5. *Injunction.*

(a)   **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan, provided, however, the foregoing shall not enjoin or prevent any party from taking any action to enforce any rights or obligations granted pursuant to the Plan.**

(b)   **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as expressly agreed to by (x) the Reorganized Debtor and a holder of any Unimpaired Claim or (y) Wind-Down Co and a holder of any Impaired Claim or Impaired Interest, all Entities who have held, hold, or may hold Claims against or Interests in the Debtor (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against, or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action against the Debtor that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtor, the Reorganized Debtor or Wind-Down Co, or the property of any of the Debtor, the Reorganized Debtor or Wind-Down Co; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Reorganized Debtor or Wind-Down Co, or the property of any of the Debtor, the Reorganized Debtor or Wind-Down Co; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Reorganized Debtor or Wind-Down Co, or the property of any of the Debtor, the Reorganized Debtor or Wind-Down Co; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtor, the Reorganized Debtor or Wind-Down Co, or against property or interests in property of any of the Debtor, the Reorganized Debtor or Wind-Down Co, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

(c)     **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section 10.5.**

(d)     **The injunctions in this Section 10.5 shall extend to any successors of the Debtor (including the Reorganized Debtor and Wind-Down Co), and their respective property and interests in property.**

**Section 10.6(b) of the Plan contains the following provision:**

(b)     **<u>Mutual Releases</u>.**

**As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date; (ii) for the right to defend against any objections to Claims that may be asserted under the Plan; or (iii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions made by the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed released and discharged by each of the other Released Parties, in each case, from any and all claims, Interests, or Causes of Action whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising from, in whole or in part, the Debtor, the restructuring, the Chapter 11 Case, the pre- and postpetition marketing and sale process, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, or consummation of the Plan (including the Plan Supplement), the Plan Investment Agreement, the Definitive Documents, the Deeds of Trust, the Notes, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, in all of the foregoing cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; <u>provided</u>, that nothing in this Section 10.6(b) shall be construed to release the Released Parties from any gross negligence, willful misconduct, or fraud, in each case as determined by a Final Order. The Persons and Entities in (i) through (iii) of this Section 10.6(b) shall be permanently enjoined from prosecuting any of the foregoing claims or Causes of Action released under this Section 10.6(b) against each of the Released Parties.**

**Section 10.7 of the Plan contains the following provision:**

10.7.   ***Exculpation.***

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any conduct occurring on or after the Petition Date in connection with or arising out of the filing and administration of the Chapter 11 Case, the marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security or Asset of the Debtor; the Disclosure Statement, the Plan Investment Agreement, including the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation, and consummation thereof, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party that constitute gross negligence, fraud, or willful misconduct, in each case as determined by a Final Order.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

IN ADDITION TO THE RELEASES SET FORTH IN THE PLAN, THE INVESTMENT AGREEMENT PROVIDES FOR CERTAIN MUTUAL RELEASES BETWEEN AND AMONG THE PARTIES THERETO AND THEIR RESPECTIVE REPRESENTATIVES AND ADVISORS.   YOU ARE ENCOURAGED TO REVIEW THE RELEASE PROVISIONS UNDER THE INVESTMENT AGREEMENT IN THEIR ENTIRETY.

**Item 5**. **Acknowledgements and Certification**. By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement, including the Plan and all other exhibits thereto. The undersigned certifies that (i) it is the holder of the Class 4 Claim (Remaining Unsecured Claims) identified in Item 1 above; and (ii) it has full power and authority to vote to accept or reject the Plan. The undersigned further acknowledges that the Debtor's solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claimant:                      _____

Signature:                                                         _____

Name of Signatory (if different than claimant):   _____

If by Authorized Agent, Title of Agent:             _____

Street Address:                                               _____

City, State, Zip Code:                                      _____

Telephone Number:                                          _____

E-mail Address:                                               _____

Date Completed:                                             _____

**<u>Exhibit D</u>**

**Form of Notice of Non-Voting Status**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                            :
In re                                       :    Chapter 11
                                            :
ALL YEAR HOLDINGS LIMITED,                  :    Case No. 21-12051 (MG)
                                            :
                    Debtor.[1]              :
                                            :
Fed. Tax Id. No. 98-1220822                 :
---------------------------------------------------------------X

### NOTICE OF NON-VOTING STATUS WITH RESPECT TO THE
### CHAPTER 11 PLAN OF REORGANIZATION OF ALL YEAR HOLDINGS LIMITED

> **YOU ARE RECEIVING THIS NOTICE OF NON-VOTING STATUS BECAUSE (I) YOU MAY BE A HOLDER OF A CLAIM(S) IN ONE OR MORE OF THE CLASSES SET FORTH BELOW THAT IS NOT ENTITLED TO VOTE ON THE DEBTOR'S CHAPTER 11 PLAN OR (II) YOU MAY BE A HOLDER OF A CLAIM(S) THAT IS OTHERWISE NOT ENTITLED TO VOTE PURSUANT TO THE SOLICITATION AND VOTING PROCEDURES APPROVED BY THE BANKRUPTCY COURT.**

On December 14, 2021 (the "**Petition Date**"), All Year Holdings Limited, as debtor and debtor in possession (the "**Debtor**"), commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). On May 31, 2022, the Debtor filed the *Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 123] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**")[2] and the *Disclosure Statement for Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 124] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Disclosure Statement**") pursuant to sections 1125 of the Bankruptcy Code. The Disclosure Statement and certain related solicitation, tabulation, and voting procedures were approved by order of the Bankruptcy Court dated _____, 2022 [ECF No.___].

Following a robust sales and marketing effort, the Debtor entered into that certain Investment Agreement, dated March 11, 2022 (as amended on April 21, 2022 and May 27, 2022, and as may be further amended, modified, or supplemented from time to time, and together with all schedules and exhibits thereto, "**Investment Agreement**"), with Paragraph Partners LLC (the "**Plan Investor**") to implement a comprehensive restructuring of the Debtor. The Investment Agreement provides that, in exchange for one hundred percent of the equity of the reorganized

---

[1]    The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

Debtor (the "**Reorganized Debtor**"), the Plan Investor will contribute $60,000,000 to the Debtor, which is comprised of $40,000,000 in cash and promissory notes in the aggregate amount of $20,000,000.[3]  As part of the Investment Agreement, the Plan Investor has agreed to assume all unsecured claims against the Debtor other than the Claims of holders of the Debtor's various series of notes (the "**Notes**" and the holders thereof, "**Noteholders**") and certain other discrete categories of Claims set forth therein.  Only holders of Class 4 Remaining Unsecured Claims are Impaired and entitled to vote on the Plan.  The following table summarizes (i) the treatment of Claims and Interests under the Plan, (ii) the Classes that are impaired by the Plan, (iii) the Classes that are entitled to vote on the Plan, and (iv) the estimated recoveries for holders of Allowed Claims and Interests.  The table is qualified in its entirety by reference to the full text of the Plan.

| Class | Designation | Treatment and Approx. Percentage Recovery | Impairment | Entitled to Vote |
|-------|-------------|-------------------------------------------|------------|------------------|
| 1 | Priority Non-Tax Claims | 100%<br><br>Except to the extent that a holder of a Priority Non-Tax Claim against the Debtor agrees to less favorable treatment, the legal, equitable, and contractual rights of the holders of Priority Non-Tax Claims are unaltered by the Plan.  On and after the Effective Date, the Reorganized Debtor shall continue to satisfy, dispute, pursue, or otherwise reconcile Priority Non-Tax Claims in the ordinary course.  The Reorganized Debtor shall retain the rights to any defenses and setoffs against any Priority Non-Tax Claim available to the Debtor. | Unimpaired | No (Presumed to accept) |
| 2 | Other Secured Claims | 100%<br><br>Except to the extent that a holder of an Other Secured Claim against the Debtor agrees to less favorable treatment, the legal, equitable, and contractual rights of the holders of Other Secured Claims are unaltered by the Plan.  On and after the Effective Date, the Reorganized Debtor shall continue to satisfy, dispute, pursue, or otherwise reconcile Other Secured Claims in the ordinary course.  The Reorganized Debtor shall retain the rights to any defenses and setoffs against any Other Secured Claim available to the Debtor. | Unimpaired | No (Presumed to accept) |
| 3 | General Unsecured Claims | 100%<br><br>Except to the extent that a holder of a General Unsecured Claim against the Debtor agrees to less favorable treatment, the legal, equitable, and contractual rights of the holders of Allowed General Unsecured Claims are unaltered by the Plan.  On and after the Effective Date, the Reorganized Debtor shall continue to satisfy, dispute, pursue, or otherwise reconcile General Unsecured Claims in the | Unimpaired | No (Presumed to accept) |

---

[3]    As further set forth in the Plan, the amount of (i) the promissory notes will increase to $22,000,000 and (ii) the cash contribution may increase by an additional $200,000, if the Sponsor, or an affiliate of the Sponsor, consummates a transaction involving the William Vale hotel.

| Class | Designation | Treatment and Approx. Percentage Recovery | Impairment | Entitled to Vote |
|---|---|---|---|---|
| | | ordinary course of business. | | |
| 4 | Remaining Unsecured Claims | Approx. 11-17%<br><br>Except to the extent that a holder of an Allowed Remaining Unsecured Claim against the Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement and release of such Allowed Remaining Unsecured Claim, each such holder shall receive (i) on the Effective Date, from the Disbursing Agent (on behalf of the Debtor), its Pro Rata Share of the Class 4 ED Distribution, (ii) in the event the William Vale Purchase occurs subsequent to the Effective Date, from the Disbursing Agent (on behalf of the Debtor), its Pro Rata Share of any additional New Notes issued, and (iii) on such other date(s) as determined from time to time by the Plan Administrator, from Wind-Down Co, the amounts recovered, if any, from the Excluded Assets (including, but without limitation, from the prosecution of Avoidance Actions and other Causes of Action) and any remaining Wind Down Cash Funding. Notwithstanding anything to the contrary herein, the Non-Securities Indemnity Claims shall be estimated at zero dollars ($0) for all purposes under the Plan (including for purposes of distribution). The right to the foregoing distributions shall be nontransferable except by will, intestate succession, or operation of law. | Impaired | Yes |
| 5 | Subordinated Securities Claims | 0%<br><br>The holders of Subordinated Securities Claims against the Debtor shall not receive or retain any property under the Plan on account of such Claims. | Impaired | No (Deemed to reject) |
| 6 | Equity Interests | 0%<br><br>On or after the Effective Date, and subject to consummation of the BVI Plan of Arrangement and any other necessary approvals in the BVI Proceeding, all Equity Interests in the Debtor shall be cancelled. The existing holder of the Equity Interests in the Debtor shall neither receive nor retain any property of the Debtor or interest in property of the Debtor on account of such Equity Interest. | Impaired | No (Deemed to reject) |

**You are receiving this notice ("Notice of Non-Voting Status") because, according to the Debtor's amended and restated schedules of assets and liabilities and statements of financial affairs filed with the Bankruptcy Court [ECF Nos. 36 and 37] and the provisions of the Plan, (i) you may be a holder of a Claim(s) in one or more of the classes set forth below that is not entitled to vote on the Plan pursuant to sections 1126(f) and 1126(g) of the Bankruptcy Code or (ii) you may be a holder of a Claim(s) that is otherwise not entitled to vote pursuant to the solicitation and voting procedures approved by the Bankruptcy Court.**

**(i)  Non-Voting Classes**

**Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), and Class 3 (General Unsecured Claims) (collectively, the "Unimpaired Classes"):** The Plan does not impair claims in the Unimpaired Classes.  Pursuant to section 1126(f) of the Bankruptcy Code, the holders of claims in the Unimpaired Classes are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote.

**Class 5 (Subordinated Securities Claims) and Class 6 (Equity Interests) (collectively, the "Non-Voting Impaired Classes" and, together with the Unimpaired Classes, the "Non-Voting Classes"):** The holders of claims in the Non-Voting Impaired Classes are not entitled to receive or retain any property under the Plan.  Therefore, pursuant to section 1126(g) of the Bankruptcy Code, the Non-Voting Impaired Classes are deemed to reject the Plan and, accordingly, are not entitled to vote.

**(ii)  Other Claim(s) Not Entitled to Vote**

The holders of Class 4 Remaining Unsecured Claim are entitled to vote on the Plan unless, based on the Schedules and the provisions of the Plan:

(vii)  as of September 12, 2022, the record date for determining which holders of claims and equity interests are entitled to vote to accept or reject the Plan (the "**Voting Record Date**"), the outstanding amount of your claim is not greater than zero ($0.00);

(viii)  as of the Voting Record Date, your claim has been disallowed, expunged, disqualified, or suspended; or

(ix)  your claim is subject to an objection or request for estimation as of the Voting Record Date, subject to the procedures set forth below.

If you wish to challenge the disallowance or amount of your claim for voting purposes, you must file with the Bankruptcy Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing your claim for voting purposes in a different amount.  Upon the filing of any such motion, your Ballot will not be counted unless temporarily allowed by an order of the Bankruptcy Court entered prior to or concurrent with entry of an order confirming the Plan.  All motions pursuant to Bankruptcy Rule 3018(a) must be filed on or before the date which is seven (7) days prior to the Voting Deadline.

The Plan and Disclosure Statement may be obtained by request made to Donlin Recano & Company, Inc., the Debtor's voting and solicitation agent (the "**Voting Agent**")  by (i) email at AYHInfo@DonlinRecano.com, (ii) telephone at (877) 896-3192 (domestic toll-free) and (212) 771-1128 (international), or (iii) standard, overnight or hand delivery to: Donlin Recano & Company, Inc., 6201 15th Avenue, Brooklyn, NY 11219.  Moreover, copies of the Disclosure Statement and the Plan are available through the Bankruptcy Court's website

(www.nysb.uscourts.gov) and at the Office of the Clerk of the Bankruptcy Court for review during normal business hours.

**The hearing to consider confirmation of the Plan will be held before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, in courtroom 523 of the United States Bankruptcy Court, One Bowling Green, New York, NY 10004, on October 6, 2022 at 10 a.m. (Prevailing Eastern Time) (the "Confirmation Hearing"), which hearing may be adjourned at the request of the Debtor, subject to the Bankruptcy Court's availability.** The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtor without further notice, except for adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Bankruptcy Court.

Any objections to confirmation of the Plan must:  (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection; (d) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (e) be filed with the Bankruptcy Court (i) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable; and (f) be served in accordance with General Order M-399 **no later than September 19, 2022, at 5:00 p.m. (Eastern Time) (**the "**Confirmation Objection Deadline**"), on the following parties: (i) the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq., and Matthew P. Goren, Esq.); (ii) counsel to the Notes Trustee, Chapman and Cutler LLP, 1270 Sixth Avenue, New York, New York 10020 (Attn: Michael Friedman, Esq., Stephen R. Tetro II, Esq., and Aaron Krieger, Esq.); (iii) counsel to the Plan Investor, (a) Gissin & Co., Habarzel 38B, Tel Aviv 6971054, Israel (Attn: Yael Hershkovitz, Esq.), (b) Locke Lord LLP, 200 Vesey Street, 20th Floor, New York, NY 10281 (Attn: Shalom Jacob, Esq.), and (c) Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn: Avi D. Feinberg, Esq.); and (iv) the Office of the U.S. Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Andrea B. Schwartz, Esq. and Shara Cornell, Esq.).

**IF YOU (I) HAVE ANY QUESTIONS REGARDING THIS NOTICE OF NON-VOTING STATUS, PLEASE CONTACT THE VOTING AGENT AT (877) 896-3192 (DOMESTIC TOLL-FREE) OR (212) 771-1128 (INTERNATIONAL), OR BY E-MAILING AYHINFO@DONLINRECANO.COM WITH A REFERENCE TO "ALL YEAR" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.  THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**Please take notice that if the Plan is confirmed by the Bankruptcy Court, the provisions of the confirmed Plan, including the injunctions, exculpations and releases contained therein, will be binding on you, regardless of whether you are Impaired or not under the confirmed Plan.**

**IMPORTANT INFORMATION REGARDING THE RELEASES IN THE PLAN:**

**Section 10.5 of the Plan contains the following provision:**

10.5.    *Injunction.*

(a)    **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan, provided, however, the foregoing shall not enjoin or prevent any party from taking any action to enforce any rights or obligations granted pursuant to the Plan.**

(b)    **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as expressly agreed to by (x) the Reorganized Debtor and a holder of any Unimpaired Claim or (y) Wind-Down Co and a holder of any Impaired Claim or Impaired Interest, all Entities who have held, hold, or may hold Claims against or Interests in the Debtor (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against, or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action against the Debtor that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtor, the Reorganized Debtor or Wind-Down Co, or the property of any of the Debtor, the Reorganized Debtor or Wind-Down Co; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Reorganized Debtor or Wind-Down Co, or the property of any of the Debtor, the Reorganized Debtor or Wind-Down Co; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Reorganized Debtor or Wind-Down Co, or the property of any of the Debtor, the Reorganized Debtor or Wind-Down Co; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtor, the Reorganized Debtor or Wind-Down Co, or against property or interests in property of any of the Debtor, the Reorganized Debtor or Wind-Down Co, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

(c)    **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section 10.5.**

(d)    The injunctions in this Section 10.5 shall extend to any successors of the Debtor (including the Reorganized Debtor and Wind-Down Co), and their respective property and interests in property.

**Section 10.6(b) of the Plan contains the following provision:**

(b)    **Mutual Releases**.

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date; (ii) for the right to defend against any objections to Claims that may be asserted under the Plan; or (iii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions made by the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed released and discharged by each of the other Released Parties, in each case, from any and all claims, Interests, or Causes of Action whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising from, in whole or in part, the Debtor, the restructuring, the Chapter 11 Case, the pre- and postpetition marketing and sale process, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, or consummation of the Plan (including the Plan Supplement), the Plan Investment Agreement, the Definitive Documents, the Deeds of Trust, the Notes, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, in all of the foregoing cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; _provided_, that nothing in this Section 10.6(b) shall be construed to release the Released Parties from any gross negligence,  willful misconduct, or fraud, in each case as determined by a Final Order.  The Persons and Entities in (i) through (iii) of this Section 10.6(b) shall be permanently enjoined from prosecuting any of the foregoing claims or Causes of Action released under this Section 10.6(b) against each of the Released Parties.

**Section 10.7 of the Plan contains the following provision:**

10.7.    *Exculpation.*

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any conduct occurring on or after the Petition Date in connection with or arising out of the filing and administration of the Chapter 11 Case, the marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security or Asset of the Debtor;

the Disclosure Statement, the Plan Investment Agreement, including the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation, and consummation thereof, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party that constitute gross negligence, fraud, or willful misconduct, in each case as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.

IN ADDITION TO THE RELEASES SET FORTH IN THE PLAN, THE INVESTMENT AGREEMENT PROVIDES FOR CERTAIN MUTUAL RELEASES BETWEEN AND AMONG THE PARTIES THERETO AND THEIR RESPECTIVE REPRESENTATIVES AND ADVISORS.   YOU ARE ENCOURAGED TO REVIEW THE RELEASE PROVISIONS UNDER THE INVESTMENT AGREEMENT IN THEIR ENTIRETY.

**<u>Exhibit E</u>**

**Confirmation Hearing Notice**

WEIL:\98564711\17\12817.0007

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                               :

In re                           :       Chapter 11
                                 :

ALL YEAR HOLDINGS LIMITED,     :       Case No. 21-12051 (MG)
                                 :

              Debtor.[1]      :
                                 :

Fed. Tax Id. No. 98-1220822       :
---------------------------------------------------------------- X

## NOTICE OF HEARING ON CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION OF ALL YEAR HOLDINGS LIMITED AND PROCEDURES FOR OBJECTING TO CONFIRMATION OF THE PLAN

**PLEASE TAKE NOTICE** that:

1.      **Approval of Disclosure Statement**. By order dated ___, 2022 [ECF No. __] (the "**Disclosure Statement Order**"), the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") approved, among other things, the *Disclosure Statement for Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 124] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Disclosure Statement**") filed by All Year Holdings Limited, as debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"). Pursuant to the Disclosure Statement Order, the Bankruptcy Court authorized the Debtor to solicit votes to accept or reject the *Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 123] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**"), annexed as **Exhibit A** to the Disclosure Statement. Any capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

2.      **Confirmation Hearing. The hearing to consider confirmation of the Plan will be held before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, in Courtroom 523 of the United States Bankruptcy Court, One Bowling Green, New York, NY 10004, on October 6, 2022 at 10 a.m. (Prevailing Eastern Time) (the "Confirmation Hearing"), which hearing may be adjourned at the request of the Debtor, subject to the Court's availability.** The Confirmation Hearing may be continued from time to time without further notice other than the announcement by the Debtor at the Confirmation Hearing or any continued hearing or as indicated in any notice filed by the Debtor with the Bankruptcy Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to interested parties.

---

[1]     The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

3.    The Plan and the Disclosure Statement may be obtained by request made to Donlin Recano & Company, Inc., the Debtor's voting and solicitation agent (the "**Voting Agent**") by (i) email at AYHInfo@DonlinRecano.com, (ii) telephone at (877) 896-3192 (domestic toll-free) and (212) 771-1128 (international), or (iii) standard, overnight or hand delivery to: Donlin Recano & Company, Inc., 6201 15th Avenue, Brooklyn, NY 11219.  Copies of the Disclosure Statement and the Plan are also available through the Bankruptcy Court's website (www.nysb.uscourts.gov) and at the Office of the Clerk of the Bankruptcy Court for review during normal business hours.

4.    **Voting Deadline**.  All votes to accept or reject the Plan must be actually received by the Voting Agent by no later **than 5:00 p.m. on September 19, 2022** (the "**Voting Deadline**"), unless extended by the Debtor.  Any failure to follow the voting instructions included with your Ballot may disqualify your Ballot and your vote.

5.    **Record Date for Voting Purposes**.  Only parties who are eligible to vote and hold claims against the Debtor as of September 12, 2022 (the "**Voting Record Date**") are entitled to vote on the Plan.

6.    **Parties in Interest Entitled to Vote**.  The only class that is Impaired and entitled to receive distributions under the Plan and, therefore, the only class that is entitled to vote to accept or reject the Plan, is Class 4 (Remaining Unsecured Claims) (the "**Voting Class**").  Based upon the Debtor's amended and restated schedules of assets and liabilities and statement of financial affairs filed with the Bankruptcy Court [ECF Nos. 36 and 37] (the "**Schedules**") and the provisions of the Plan, creditors in the Voting Class may vote on the Plan unless:

(i)    as of the Voting Record Date, the outstanding amount of such claimant's claim is not greater than zero ($0.00);

(ii)    as of the Voting Record Date, such claimant's claim has been disallowed, expunged, disqualified, or suspended; or

(iii)    such claimant's claim is subject to an objection or request for estimation as of the Voting Record Date, subject to the procedures set forth below.

Any creditor that is not scheduled in the Debtor's Schedules and that did not file a proof of claim prior to the Voting Record Date shall not be entitled to vote on the Plan.

7.    **Parties in Interest Not Entitled to Vote**.  The Plan does not impair claims in Class 1 (Priority Non-Tax Claims, Class 2 (Other Secured Claims), and Class 3 (General Unsecured Claims) (collectively, the "**Unimpaired Classes**").  Pursuant to section 1126(f) of the Bankruptcy Code, the holders of claims in the Unimpaired Classes are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote. Further, the holders of claims and interests in Class 5 (Subordinated Securities Claims) and Class 6 (Equity Interests) (collectively, the "**Non-Voting Impaired Classes**", and together with the Unimpaired Classes, the "**Non-Voting Classes**") are not entitled to receive or retain any property under the Plan.  Therefore, pursuant to section 1126(g) of the Bankruptcy Code, the Non-Voting Impaired Classes are deemed to reject the Plan and, accordingly, are not entitled to vote.

8.      **Temporary Allowance / Disallowance of Claims**.  Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a claim, and without prejudice to the rights of the Debtor to dispute the disallowance or amount of any claim, each claim within the Voting Class shall be temporarily Allowed in an amount equal to the amount of such claim set forth in the Schedules; *provided*, *however*, that:

(iv)    if a claim is allowed pursuant to the Plan or by order of the Court (entered prior to the Voting Deadline), such claim shall be allowed for voting purposes in the allowed amount set forth in the Plan or such order;

(v)     if a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim is temporarily allowed for voting purposes in the amount so estimated or allowed in such order;

(vi)    if a claim is listed in the Schedules as partially unliquidated, such claim shall be allowed in the partially liquidated amount for voting purposes only;

(vii)   if a claim is listed in the Schedules as wholly contingent, unliquidated, or disputed, such claim is accorded one vote and valued at one dollar ($1.00) for voting purposes only, and not for purposes of allowance or distribution; and

(viii)  if a creditor holds or has purchased, based on the Schedules, duplicate claims within the same class, such creditor shall be provided with only one Solicitation Package and one Ballot for voting a single claim in such class.

If a creditor seeks to challenge the disallowance or amount of its claim for voting purposes, the creditor shall file with the Court a motion for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") temporarily allowing such claim for voting purposes in a different amount.  Upon the filing of any such motion, the creditor's Ballot shall not be counted unless temporarily allowed by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan.  All motions pursuant to Bankruptcy Rule 3018(a) must be filed on or before the date which is seven (7) days prior to the Voting Deadline.

9.      **Objections to Confirmation**.  Any objections to confirmation of the Plan must:  (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection; (d) conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York; (e) be filed with the Bankruptcy Court (i) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to

Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable; and (f) be served in accordance with General Order M-399 **no later than September 19, 2022, at 5:00 p.m. (Eastern Time)**, on the following parties: (i) the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq. and Matthew P. Goren, Esq.); (ii) counsel to the Notes Trustee, Chapman and Cutler LLP, 1270 Sixth Avenue, New York, New York 10020 (Attn: Michael Friedman, Esq., Stephen R. Tetro II, Esq., and Aaron Krieger, Esq.); (iii) counsel to the Plan Investor, (a) Gissin & Co., Habarzel 38B, Tel Aviv 6971054, Israel (Attn: Yael Hershkovitz, Esq.), (b) Locke Lord LLP, 200 Vesey Street, 20th Floor, New York, NY 10281 (Attn: Shalom Jacob, Esq.), and (c) Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn: Avi D. Feinberg, Esq.); and (iv) the Office of the U.S. Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Andrea B. Schwartz, Esq. and Shara Cornell, Esq.).

**IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

10. **Classification and Treatment.** A chart summarizing the treatment of each class of Claims and Interests under the Plan is included in **Annex A**, which chart is qualified in its entirety by reference to the Plan.

11. **Releases.  Please take notice that if the Plan is confirmed by the Bankruptcy Court, the provisions of the confirmed Plan, including the injunctions, exculpations and releases contained therein, will be binding on holders of claims and interests, regardless of whether such parties are Impaired or not under the confirmed Plan. The injunction, release and exculpation provisions of the Plan are set forth in Annex B.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

12. **Additional Information**.  Any party in interest wishing to obtain information about the Debtor's solicitation and voting procedures should contact the Voting Agent at (877) 896-3192 (domestic toll-free) or (212) 771-1128 (international) or email AYHInfo@DonlinRecano.com with a reference to "All Year" in the subject line. **THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Dated: _____, 2022
          New York, New York

_____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Matthew P. Goren

*Attorneys for the Debtor*

## Annex A

### Summary of Plan Classification and Treatment of Claims and Interests

| Class | Designation | Treatment and Approx. Percentage Recovery | Impairment | Entitled to Vote |
|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | 100%<br><br>Except to the extent that a holder of a Priority Non-Tax Claim against the Debtor agrees to less favorable treatment, the legal, equitable, and contractual rights of the holders of Priority Non-Tax Claims are unaltered by the Plan. On and after the Effective Date, the Reorganized Debtor shall continue to satisfy, dispute, pursue, or otherwise reconcile Priority Non-Tax Claims in the ordinary course. The Reorganized Debtor shall retain the rights to any defenses and setoffs against any Priority Non-Tax Claim available to the Debtor. | Unimpaired | No (Presumed to accept) |
| 2 | Other Secured Claims | 100%<br><br>Except to the extent that a holder of an Other Secured Claim against the Debtor agrees to less favorable treatment, the legal, equitable, and contractual rights of the holders of Other Secured Claims are unaltered by the Plan. On and after the Effective Date, the Reorganized Debtor shall continue to satisfy, dispute, pursue, or otherwise reconcile Other Secured Claims in the ordinary course. The Reorganized Debtor shall retain the rights to any defenses and setoffs against any Other Secured Claim available to the Debtor. | Unimpaired | No (Presumed to accept) |
| 3 | General Unsecured Claims | 100%<br><br>Except to the extent that a holder of a General Unsecured Claim against the Debtor agrees to less favorable treatment, the legal, equitable, and contractual rights of the holders of Allowed General Unsecured Claims are unaltered by the Plan. On and after the Effective Date, the Reorganized Debtor shall continue to satisfy, dispute, pursue, or otherwise reconcile General Unsecured Claims in the ordinary course of business. | Unimpaired | No (Presumed to accept) |
| 4 | Remaining Unsecured Claims | Approx. 11-17%<br><br>Except to the extent that a holder of an Allowed Remaining Unsecured Claim against the Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement and release of such Allowed Remaining Unsecured Claim, each such holder shall receive (i) on the Effective Date, from the Disbursing Agent (on behalf of the Debtor), its Pro Rata Share of the Class 4 ED Distribution, (ii) in the event the William Vale Purchase occurs subsequent to the Effective Date, from the Disbursing Agent (on behalf of the Debtor), its | Impaired | Yes |

| Class | Designation | Treatment and Approx. Percentage Recovery | Impairment | Entitled to Vote |
|---|---|---|---|---|
| | | Pro Rata Share of any additional New Notes issued, and (iii) on such other date(s) as determined from time to time by the Plan Administrator, from Wind-Down Co, the amounts recovered, if any, from the Excluded Assets (including, but without limitation, from the prosecution of Avoidance Actions and other Causes of Action) and any remaining Wind Down Cash Funding. Notwithstanding anything to the contrary herein, the Non-Securities Indemnity Claims shall be estimated at zero dollars ($0) for all purposes under the Plan (including for purposes of distribution).  The right to the foregoing distributions shall be nontransferable except by will, intestate succession, or operation of law. | | |
| 5 | Subordinated Securities Claims | 0%<br><br>The holders of Subordinated Securities Claims against the Debtor shall not receive or retain any property under the Plan on account of such Claims. | Impaired | No (Deemed to reject) |
| 6 | Equity Interests | 0%<br><br>On or after the Effective Date, and subject to consummation of the BVI Plan of Arrangement and any other necessary approvals in the BVI Proceeding, all Equity Interests in the Debtor shall be cancelled.  The existing holders of the Equity Interests in the Debtor shall neither receive nor retain any property of the Debtor or interest in property of the Debtor on account of such Equity Interest. | Impaired | No (Deemed to reject) |

## Annex B

**IMPORTANT INFORMATION REGARDING THE RELEASES IN THE PLAN:**

**Section 10.5 of the Plan contains the following provision:**

10.5.    *Injunction.*

(a)    **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan, provided, however, the foregoing shall not enjoin or prevent any party from taking any action to enforce any rights or obligations granted pursuant to the Plan.**

(b)    **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as expressly agreed to by (x) the Reorganized Debtor and a holder of any Unimpaired Claim or (y) Wind-Down Co and a holder of any Impaired Claim or Impaired Interest, all Entities who have held, hold, or may hold Claims against or Interests in the Debtor (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against, or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action against the Debtor that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtor, the Reorganized Debtor or Wind-Down Co, or the property of any of the Debtor, the Reorganized Debtor or Wind-Down Co; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Reorganized Debtor or Wind-Down Co, or the property of any of the Debtor, the Reorganized Debtor or Wind-Down Co; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Reorganized Debtor or Wind-Down Co, or the property of any of the Debtor, the Reorganized Debtor or Wind-Down Co; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtor, the Reorganized Debtor or Wind-Down Co, or against property or interests in property of any of the Debtor, the Reorganized Debtor or Wind-Down Co, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

(c)    **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be**

deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section 10.5.

(d)    The injunctions in this Section 10.5 shall extend to any successors of the Debtor (including the Reorganized Debtor and Wind-Down Co), and their respective property and interests in property.

**Section 10.6(b) of the Plan contains the following provision:**

(b)    **Mutual Releases**.

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date; (ii) for the right to defend against any objections to Claims that may be asserted under the Plan; or (iii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions made by the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed released and discharged by each of the other Released Parties, in each case, from any and all claims, Interests, or Causes of Action whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising from, in whole or in part, the Debtor, the restructuring, the Chapter 11 Case, the pre- and postpetition marketing and sale process, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, or consummation of the Plan (including the Plan Supplement), the Plan Investment Agreement, the Definitive Documents, the Deeds of Trust, the Notes, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, in all of the foregoing cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; <u>provided</u>, that nothing in this Section 10.6(b) shall be construed to release the Released Parties from any gross negligence, willful misconduct, or fraud, in each case as determined by a Final Order. The Persons and Entities in (i) through (iii) of this Section 10.6(b) shall be permanently enjoined from prosecuting any of the foregoing claims or Causes of Action released under this Section 10.6(b) against each of the Released Parties.

**Section 10.7 of the Plan contains the following provision:**

10.7.    *Exculpation.*

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and

liability for any conduct occurring on or after the Petition Date in connection with or arising out of the filing and administration of the Chapter 11 Case, the marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security or Asset of the Debtor; the Disclosure Statement, the Plan Investment Agreement, including the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation, and consummation thereof, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party that constitute gross negligence, fraud, or willful misconduct, in each case as determined by a Final Order.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

IN ADDITION TO THE RELEASES SET FORTH IN THE PLAN, THE INVESTMENT AGREEMENT PROVIDES FOR CERTAIN MUTUAL RELEASES BETWEEN AND AMONG THE PARTIES THERETO AND THEIR RESPECTIVE REPRESENTATIVES AND ADVISORS.   YOU ARE ENCOURAGED TO REVIEW THE RELEASE PROVISIONS UNDER THE INVESTMENT AGREEMENT IN THEIR ENTIRETY.