**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ALL YEAR HOLDINGS LIMITED, | : | Case No. 21-12051 (MG) |
| | : | |
| Debtor.[1] | : | |
| | : | |
| Fed. Tax Id. No. 98-1220822 | : | |

------------------------------------------------------------x

| | | |
|---|---|---|
| ZELIG WEISS, | : | |
| Plaintiff, | : | Adv. Proc. No. 22-_____(MG) |
| | : | |
| v. | : | |
| | : | |
| ALL YEAR HOLDINGS LIMITED, WYTHE | : | |
| BERRY MEMBER LLC,[2] and YG WV LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------x

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF PURSUANT TO**
**RULE 7001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

---

[1]     The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

[2]     Wythe Berry Member LLC is named as a nominal defendant in light of the nature of the claims asserted herein.

Plaintiff, Zelig Weiss ("Weiss"), by and through his undersigned counsel, as and for his Complaint against defendants All Year Holdings Limited ("All Year" or the "Parent Debtor"), its wholly-owned subsidiary YG WV LLC ("YGWV"), and Wythe Berry Member LLC ("Member LLC," and together with All Year and YGWV, the "Defendants," and, each a "Defendant") hereby alleges and states as follows:

## NATURE OF THE ACTION

1.      All Year has filed a Chapter 11 Plan of Reorganization (the "Plan") pursuant to which it proposes, among other things, to transfer YGWV's purported 50% ownership interest (and, apparently, putative rights as Managing Member) in Member LLC to a third-party, Paragraph Partners LLC ("Paragraph"), by selling and transferring All Year's purported 100% membership interest in YGWV to Paragraph (the "YGWV Interest Transfer Scheme").  The YGWV Interest Transfer Scheme is unlawful, because it violates Weiss's rights under the Member LLC Limited Liability Company Agreement ("Member LLC Agreement") and Delaware Law,[3] and, therefore All Year is now incapable of transferring its economic interest in YGWV to Paragraph.  In addition, because YGWV has been dissolved under the New York Limited Liability Company Law[4] following All Year's chapter 11 filing, All Year must be prohibited from continuing to manage, indirectly, Member LLC.

2.      The events leading to the YGWV Interest Transfer Scheme lay bare its unlawfulness.  For years, Weiss had been a partner with Yoel Goldman, All Year's former principal ("Goldman"), in the co-ownership of the William Vale, a luxury hotel property and community space in Brooklyn (the "WV Complex"), which Weiss conceived and developed.  The

---

[3]    Member LLC is a Delaware limited liability company.

[4]    YGWV is a New York limited liability company.

2

parties originally operated and held title to the WV Complex through a company named Wythe

Berry LLC ("WB LLC") in which Weiss and Goldman each own a 50% membership and for which

Weiss was (and is) managing member.  In 2016, Goldman approached Weiss with a proposed

financing transaction involving the transfer of title to the WV Complex to yet-to-be-formed entity

Wythe Berry Fee Owner, LLC ("Fee Owner"), which today is a wholly-owned subsidiary of

Member LLC.  The transaction contemplated that Goldman and Weiss would, in turn, co-own

Member LLC, with Goldman named as its titular managing member, and that Fee Owner would,

on paper, lease the WV Complex back to WB LLC, the Weiss-managed entity that developed and

has operated the WV Complex since its inception.

            3.      Goldman initially proposed in this transaction to hold his 50% interest in

Member LLC directly through All Year.  He later pivoted, however, and insisted on using a new

shell company, YGWV, to hold All Year's interest.  Weiss holds his 50% share of Member LLC

directly.

            4.      Regardless of the final ownership structure, the parties' intentions were

always the same:  Goldman (through All Year) and Weiss would partner with each other (and no

one else) to continue to co-own (through Fee Owner LLC) and operate (through WB LLC) the

WV Complex.  To that end, the Member LLC Agreement contained an express anti-assignment

provision preventing either party from transferring "any interest in [Member LLC]" without the

other's consent.  This provision is consistent with the sound public policy of Delaware that

members in a Delaware LLC—especially a closely-held LLC—are entitled to know and rely upon

the identity of their chosen co-members and not be forced into business with strangers.

            5.      The YGWV Interest Transfer Scheme flies in the face of the anti-

assignment clause and these related principles, as it will permit Paragraph (an entity unrelated to

All Year and a stranger to Weiss) to co-own Member LLC over Weiss's objection.  The YGWV Interest Transfer Scheme is especially problematic because it purports to give Paragraph not only an economic interest in Member LLC but also purported rights as Managing Member to control and make key decisions on behalf of Member LLC.

6.      The circumstances surrounding the YGWV Interest Transfer Scheme make clear that All Year is attempting to use this transaction structure to bypass the transfer restrictions in the Member LLC Agreement.  Before entering into its agreement with Paragraph, All Year originally planned to sell its "indirect" 50% interest in Member LLC to Weiss, but offered to do so only by having ***YGVW sell its interest in Member LLC to Weiss***, ***and explicitly refused— twice—to do so by having All Year sell its interest in YGVW to Weiss***, even though Weiss wanted the latter structure.  All Year told Weiss that the latter structure was unworkable because it would require this Court's approval.  Months later, however, after All Year decided to enter into its agreement with Paragraph instead of Weiss, it suddenly reversed course and proposed to carry out the ownership transfer at the All Year level—*i.e.,* exactly what it told Weiss was unworkable.  The only logical explanation for this about face is All Year's desire to circumvent the Member LLC Agreement's transfer restrictions that would prevent YGWV from selling its interest in Member LLC to Paragraph directly (absent Weiss's consent).

7.      All Year cannot sidestep the Member LLC Agreement in this manner.  Rather, the law compels that the YGWV Interest Transfer Scheme be judged on its substance— *i.e.*, a clear attempt to avoid the transfer restrictions—and not on its form.  This is so for at least two reasons.

8.      <u>First</u>, because All Year negotiated the terms and provisions of the Member LLC Agreement for, and prior to the formation of, YGWV, as a matter of law All Year manifested

Pg 5 of 33

its intent to be bound by the Member LLC Agreement, including the restrictions and limitations on the transfer of any interests in Member LLC.  The YGWV Interest Transfer Scheme, therefore, is prohibited by the Member LLC Agreement, and, by attempting to carry it out, All Year is in breach of the transfer restrictions.

9.      <u>Second</u>, even assuming *arguendo* All Year had not negotiated and bound itself thereby to the Member LLC Agreement (which, in fact, it did do), All Year nonetheless is bound by the Member LLC Agreement because YGWV is the alter ego of All Year.  As noted above, YGWV is a shell company that All Year created for no purpose other than to hold its interest in Member LLC.  YGWV has no independent corporate existence or decision-makers and no assets or operations of its own.   All Year has at all times exercised complete dominion and control over YGWV, and it seeks to use that dominion and control to unjustly harm Weiss by circumventing the transfer restrictions in the Member LLC Agreement.  Under these circumstances, the law holds All Year liable for YGWV's obligations, including under the Member LLC Agreement.

10.     Finally, even if All Year were not bound by the Member LLC Agreement in this manner, the YGWV Interest Transfer Scheme is impermissible to the extent it purports to transfer a full membership interest in either YGWV or Member LLC to Paragraph.  This is so because, as a matter of New York law, All Year's bankruptcy filing triggered a sequence of events that divested All Year of its membership interest (but not economic interest) in YGWV, which, in turn, led to the dissolution of YGWV and the loss of YGWV's membership interest (but not economic interest) in Member LLC.  As a result, neither All Year nor YGWV has any remaining managerial control over Member LLC, and any attempts by either entity to transfer such control are unlawful.  For the same reason, All Year's indirect ongoing management of Member LLC must

be prohibited immediately, and this Court should declare[5] that Weiss, the only remaining member of Member LLC, is the manager of Member LLC.  At bottom, the only interest All Year is potentially capable of transferring to Paragraph is the economic (but not membership) interest in Member LLC it received from YGWV upon its dissolution—but even that transfer would violate the transfer restrictions in the Member LLC Agreement.

11.    Accordingly, to protect his rights under the Member LLC Agreement and Delaware law, Weiss seeks declarations that (a) All Year's purported transfer of its ownership in YGWV to Paragraph pursuant to the YGWV Interest Transfer Scheme violates the transfer restrictions of the Member LLC Agreement and Delaware law, both because All Year negotiated the agreement and because YGWV is All Year's alter ego; (b) in the alternative, the YGWV Interest Transfer Scheme violates the implied covenant of good faith and fair dealing; (c) even if All Year is not bound by the Member LLC Agreement in the manner discussed above, the proposed transfer of its interest in YGWV to Paragraph under the Plan is impossible because YGWV has been dissolved as a matter of law; and, (d) given that YGWV has been dissolved as a matter of New York law, neither it nor All Year has any managerial interests in Member LLC and both entities must be prohibited from acting as managing member of Member LLC.

12.    Weiss further seeks an injunction compelling Defendants to comply with the Member LLC Agreement and prohibiting them from: (x) selling or otherwise transferring all or any part of a membership interest in YGWV or Member LLC to Paragraph (or any other third party) without the consent of Weiss, and (y) acting as managing member of Member LLC.  Absent this relief, the Defendants will be permitted to unlawfully shift control of the WV Complex to a

---

[5]    Weiss reserves all rights regarding the jurisdiction of the Delaware Court of Chancery to resolve the question of whether Weiss is the managing member of Member LLC, including the right to seek abstention or certification on this issue.

new partner, Paragraph, with whom Weiss never consented to do business.  The Defendants will

also be allowed to continue seeking to control the management of Member LLC—despite neither

All Year nor YGWV having the managerial interests to do so—to Weiss's detriment.

## PARTIES

13.     Weiss is an individual residing in Brooklyn, New York.

14.     All Year is a company incorporated under the laws of the British Virgin

Islands, with its principal offices in Brooklyn, New York.

15.     Member LLC is a Delaware limited liability company with its principal

offices in Brooklyn, New York.

16.     YGWV is a New York limited liability company with its principal offices,

if any, in Brooklyn, New York.

## JURISDICTION AND VENUE

17.     The United States Bankruptcy Court for the Southern District of New York

(the "Bankruptcy Court" or the "Court") has jurisdiction over this adversary proceeding pursuant

to 28 U.S.C. §§ 157 and 1334 and the United States District Court for the Southern District of New

York's Amended Standing Order of Reference, M-431 dated January 31, 2012, which refers such

proceedings to the Bankruptcy Court.

18.     This adversary proceeding is commenced pursuant to Rules 7001(7) and

7001(9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

19.     Plaintiff consents to entry of final orders and judgments by this Court in this

adversary proceeding pursuant to Bankruptcy Rule 7008.  Plaintiff also consents to entry of final

orders or judgment by this Court if it is determined that this Court, absent consent of the parties,

cannot enter final orders or judgments consistent with Article III of the United States Constitution.

20.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding is related to the Parent Debtor's bankruptcy case pending in this Court.

## FACTUAL ALLEGATIONS

### A.    The WV Complex

21.    Member LLC, through its wholly-owned subsidiary, Fee Owner, is the indirect owner of the WV Complex, a multi-use redevelopment project that includes a luxury hotel in Brooklyn, New York.

22.    Plaintiff Weiss conceived and developed the WV Complex, transforming what had been a multi-parcel grossly-contaminated Brooklyn Union Gas manufactured gas holder site into a world-class destination, as well as a community space.

16.    Weiss invited Goldman to join him in the venture. The WV Complex was completed around the end of 2016.

17.    To further develop the WV Complex, Weiss and Goldman formed WB LLC, an entity in which Weiss and Goldman each own a 50% membership interest, and for which Weiss is the Managing Member.  WB LLC was the entity that took and held title to the contaminated site, and then remediated and redeveloped it into the WV Complex.

### B.    The Refinancing Transaction

18.    In or about September 2016, the time came to close out the WV Complex's construction loan through a refinancing transaction.  Rather than pursue conventional financing, Goldman—whose only role in WB LLC was to provide and/or arrange for its funding—proposed to Weiss to raise the funds needed by issuing bonds on the Israeli market.

19.     Goldman informed Weiss that he already had used this method for certain properties he owned (directly or indirectly), including through All Year; that he was planning to use it again for dozens of additional properties; and that he wanted to do the same for the WV Complex.

20.     Specifically, Goldman proposed to use All Year to issue a bond series (the "Series C Bonds") tied exclusively to the WV Complex, and All Year then would cause the proceeds of the bond issuance to be used to pay off/refinance an existing mortgage on the WV Complex and debts of WB LLC.

21.     In order to facilitate the Series C Bonds funding, Goldman proposed a deal structure akin to a "sale-leaseback" transaction with a newly formed entity, Fee Owner, pursuant to which Fee Owner would, on paper, acquire title to the WV Complex from WB LLC and enter into a ground lease (the "Lease") with WB LLC, pursuant to which WB LLC would, on paper, lease the WV Complex from Fee Owner.  Fee Owner would be owned by another newly formed entity, Member LLC, and Member LLC would be owned just as WB LLC had been: Weiss and Goldman each would own 50% of the membership interests.

22.     Weiss accepted Goldman's proposal subject to certain conditions, the most important of which was that, as between Goldman and Weiss, they would continue to do business together and nothing would change regarding the management and/or operation of the WV Complex.

23.     Weiss took his 50% membership interest in Member LLC in his individual capacity.

24.     All Year initially intended to take a 50% interest in Member LLC and to hold that interest directly in its own name.  On January 17, 2017, Mordy Steinfeld ("Steinfeld"), a

representative for Weiss, explained the state of play regarding the proposed refinancing transaction

to Goldman, Weiss, Yizhar Shimoni (All Year's Chief Financial Officer) ("Shimoni"), and Dov

Tratner, counsel to All Year and the primary drafter of the organizational and transaction

documents:

> "Here's the current structure:
>
> Wythe Berry LLC (50/50 Goldman/Weiss) owns the land.  The William
> Vale Hotel LLC (50/50 Goldman/Weiss) leases the hotel from Wythe Berry
> LLC.  Retail and Office leases are also direct between the respective tenants
> and Wythe Berry LLC.
>
> Here's the structure we need:
>
> Propco (50/50 AYH/Weiss) owns the land.  Opco (50/50 Goldman/Weiss)
> leases *everything* from Propco.
>
> [. . .]
>
> What we need from [Dov]:
>
> A new operating agreement for the Propco (I am told you have done this
> before) with AYH as managing member but unanimous consent required
> for sale of property or termination of Opco lease.
>
> A lease agreement between Opco and Propco.  [Shimoni] should tell you
> the terms of the lease.
>
> That's all as far as I know.

25.    Neither Goldman nor Shimoni disputed Steinfeld's understanding of the

proposed transactions.  For at least the next week, representatives of All Year developed and

negotiated with Weiss a draft LLC agreement for a Propco co-owned by Weiss and All Year, and

all parties assumed that All Year and Weiss would each own 50% interests in the "Propco" that

would lease the WV Complex to the "Opco" co-owned in equal parts by Weiss and Goldman (*i.e.*

WB LLC).

26.     On or about January 25, however, Goldman and All Year changed course, asserting—for reasons unclear to Weiss—that a shell entity (*i.e.*, YGWV) needed to act as manager of the special-purpose vehicle (*i.e.*, Member LLC) holding the Propco's (*i.e.*, Fee Owner) interests, instead of All Year holding that interest directly.  Thereafter, YGWV (initially referred to in documents as "Goldman LLC") was simply slotted into the already-drafted LLC agreement in place of All Year.

27.     Accordingly, shortly before closing of the refinancing, All Year formed YGWV as its wholly-owned subsidiary and caused title to an approximately 50% membership interest in Member LLC to be held by YGWV.  All Year formed YGWV for the sole purpose of holding, on behalf of All Year, the very same membership interest in Member LLC that All Year was initially to receive directly.

28.     Goldman and Shimoni proceeded with the refinancing proposal, and Mishmeret Trust Company Ltd. ("Mishmeret"), as Trustee for the Series C Bondholders, eventually loaned the equivalent of $166,320,000 worth of New Israeli Shekels to All Year.

29.     All Year, in turn, loaned those funds (in dollars) to Fee Owner to be used for the payment of the debts of WB LLC, including the existing mortgage loan.  Fee Owner issued to All Year a $166,320,000 promissory note and a mortgage against the WV Complex (respectively, the "Note" and "Mortgage").  All Year collaterally assigned the Note and Mortgage to Mishmeret to secure the Series C Bonds.

30.     Prior to the Series C Bonds transaction and the transfer of title to the WV Complex to Fee Owner, Weiss was the Managing Member of WB LLC, the owner-operator of the WV Complex.  When Weiss agreed to Goldman's request to refinance the WV Complex's mortgage through the Series C Bonds and permit All Year's wholly-owned subsidiary, YGWV, to

become the titular Managing Member of Member LLC (which effectively made All Year the manager of Fee Owner), he did so in reliance on, *inter alia*, the fact that the Member LLC Agreement would prohibit a transfer of YGWV's membership interests in Member LLC without Weiss's consent (as well as the addition of new members without Weiss's consent). This provision was important to Weiss because he wanted to partner specifically with Goldman/All Year on the hotel project, as he had done for years through WB LLC, and not anyone else.

## C.    The Member LLC Agreement

31.    As discussed above, all essential terms of the Member LLC Agreement were negotiated and agreed upon between All Year and Weiss prior to the formation of YGWV. All Year conducted these negotiations through its authorized representatives, including Shimoni.

32.    All Year's extensive participation in the negotiations leading up to execution of the Member LLC Agreement manifests All Year's intent to be bound by the Member LLC Agreement, including its provision prohibiting the transfer of membership interests without consent of the other Member (*i.e.*, Weiss).

33.    The Member LLC Agreement is dated as of February 28, 2017.

34.    YGWV was established on or about February 1, 2017, upon its filing of articles of organization with the New York Secretary of State. YGWV's limited liability company agreement, however, was not entered into until February 28, 2017.

35.    As permitted by Delaware law, the Member LLC Agreement prohibits, subject to certain exceptions, one member from assigning his membership interest without the consent of the other member(s). Specifically, the Member LLC Agreement provides that "a

Member may not assign in whole or in part any interest in the Company without the written consent

of the other Members."  Member LLC Agreement, § 8.1(a).[6]

36.     The Member LLC Agreement also states: "If a Member assigns an interest

in the Company in violation of this Section …, such assignment shall be null and void and such

Member shall be liable to the Company for breach of this Agreement."  *Id.*

## D.     LLC Membership Interest Transfers under Delaware Statutory Regime

37.     Delaware law recognizes the unique nature of LLCs, and consequently

authorizes restrictions and imposes consequences on the assignment of membership interests.

38.     Specifically, Section 18-702(a) of the Delaware LLC Act provides, in

pertinent part, "A limited liability company interest is assignable in whole or in part ***except as***

***provided in a limited liability company agreement***."  *See* 6 Del. Code § 18-702(a) (emphasis

added). Delaware law, therefore, permits a contractual prohibition on the assignment of

membership interests without the consent of the other member(s). The "anti-assignment" provision

in the Member LLC Agreement is consistent with and authorized by Delaware law.

39.     Even when an assignment of an interest in a Delaware LLC is not

contractually prohibited, all that may be assigned is the assignor's economic interest, not its

(former) status as a member. Section 18-702(b) of the Delaware LLC Act provides, in relevant

part:

> (b)     Unless otherwise provided in a limited liability company agreement:
>
> (1)     An assignment of a limited liability company interest does not entitle the assignee to become or to exercise any rights or powers of a member;
>
> (2)     An assignment of a limited liability company interest entitles the assignee to share in such profits

---

[6]     The Member LLC Agreement is attached as **Exhibit A**.

and losses, to receive such distribution or distributions, and to receive such allocation of income, gain, loss, deduction, or credit or similar item to which the assignor was entitled, to the extent assigned; and

(3)    A member ceases to be a member and to have the power to exercise any rights or powers of a member upon assignment of all of the member's limited liability company interest. Unless otherwise provided in a limited liability company agreement, the pledge of, or granting of a security interest, lien or other encumbrance in or against, any or all of the limited liability company interest of a member shall not cause the member to cease to be a member or to have the power to exercise any rights or powers of a member.

*See* 6 Del. Code § 18-702(b).

40.    Furthermore, "[u]nless otherwise provided in the limited liability company agreement," an assignee may become a member only "upon the vote or consent of all of the members of the limited liability company." *See* 6 Del. Code § 18-704(2).

41.    As articulated by Delaware Courts, the public policy underlying Delaware law restricting the transfer of membership interests is that, in a closely held enterprise, a person is entitled to select their own business associates and not have third-party strangers imposed upon them.

42.    As stated by the Delaware Chancery Court: "It is far more tolerable to have to suffer a new passive co-investor one did not choose than to endure a new co-manager without consent."[7]    For this reason, as explained by the Delaware courts: "It makes sense that the

---

[7]    *Milford Power Co., LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 760 (Del. Ch. 2004).

[Delaware] LLC Act would require formal member action to accept a new business partner, rather than contemplating *de facto* membership or the constructive admission of new assignees."[8]

**E.**     **YGWV is the Alter Ego of All Year**

43.     All Year owns 100% of YGWV, is its sole and managing member, and controls and dominates YGWV.

44.     All Year formed YGWV solely to hold All Year's 50% membership interest in Member LLC.  Other than holding this membership interest, YGWV has never conducted any business and has no operations.  Its only purported revenue comes from its interest in Member LLC and indirect interest in Fee Owner.

45.     Upon information and belief, YGWV has never had a bank account.  Thus, YGWV does not receive revenue from operations (it has none), distribute monies to pay expenses, or transfer funds within its corporate family.

46.     Upon information and belief, YGWV has never paid expenses it incurred (i.e., for preparation of tax returns, payment of franchise taxes, etc.).  Upon information and belief, not only has YGWV never paid an expense it has incurred, but also it has never had funds to pay for such expenses. Rather, upon information and belief, at all relevant times, All Year paid, or arranged for All Year or an affiliate of All Year to pay, expenses incurred by YGWV.

47.     At all relevant times, YGWV was undercapitalized.

48.     At all relevant times, YGWV has not had its own office or employees. YGWV's business address, as admitted in the Parent Debtor's schedules, and address for service of process is 199 Lee Ave., #693, Brooklyn, New York 11211—the location of All Year's principal offices.  *See* n.1 *supra*.

---

[8]     *In re Carlisle Etcetera LLC,* 114 A.3d 592, 601 (Del. Ch. 2015).

49.     Upon information and belief, YGWV keeps no minutes of meetings discussing or recording its corporate affairs.

50.     Upon information and belief, at all relevant times, YGWV did not observe basic corporate formalities.  For example, YGWV has never filed its mandatory biennial statement under New York's Limited Liability Company Law.[9]  *See* New York Limited Liability Company Law, § 301(e).

51.     YGWV was neither intended to be nor actually operated as an independent profit center. To the contrary, All Year and YGWV were operated as a single economic unit. Upon information and belief, YGWV has no assets other than its interest in Fee Owner.

52.     Upon information and belief, at all relevant times, All Year has made all decisions by YGWV regarding its interest in Member LLC, Fee Owner, and the WV Complex. All Year made these decisions for its own benefit, without regard to YGWV's purported corporate separateness.

**F.   The YGWV Interest Transfer Scheme**

i. <u>All Year's Negotiations with Weiss</u>

53.     On or about November 2, 2021, prior to All Year's bankruptcy filing, Weiss made a binding offer to purchase All Year's membership interest in YGWV.

54.     All Year filed for bankruptcy on December 14, 2021.

55.     Subsequent thereto, discussions ensued between All Year (indirectly, through Mishmeret's bankruptcy counsel, who advised Weiss and his counsel that he was the appropriate person with whom to negotiate a transaction on behalf of All Year) and Weiss based

---

[9]    YGWV's first statement was to be submitted by February 28, 2019, but YGWV has never submitted any statements.

on Weiss's proposal to purchase All Year's membership interest in YGWV. Those negotiations culminated in Weiss presenting a draft agreement on or about January 14, 2022.

56.    On or about January 17, 2022, All Year (again through Mishmeret's bankruptcy counsel) advised counsel for Weiss during a telephone conversation that it would not sell *All Year's interest in YGWV*, but would instead sell only *YGWV's interest in Member LLC*.

57.    At that time, All Year (first through Mishmeret's bankruptcy counsel, and the following day through its own bankruptcy counsel) advised that the proposed sale of YGWV's interest in Member LLC did not require the approval of this Court because, unlike All Year's interest in YGWV, the asset being sold under All Year's proposal was indirectly owned by All Year and, therefore, not an asset of All Year's bankruptcy estate.

58.    All Year and Weiss thereafter fully negotiated a Membership Interest Purchase Agreement ("MIPA") based on the deal structure insisted upon by All Year, pursuant to which, among other inter-related transactions, YGWV would sell, and Weiss (through a newly-formed entity) would purchase, 99.8% of YGWV's interest in Member LLC (equivalent to 49.9% of the Member LLC membership interests).

59.    On or about March 9, 2022, however, All Year suddenly advised that, despite its earlier statements, it no longer believed it could sell YGWV's interest in Member LLC without this Court's approval.   Therefore, All Year drafted, and delivered to Weiss on or about March 10, 2022, a revised MIPA that not only required approval of the transaction by this Court, but also made other significant changes.  One thing that did not change was the asset being sold: YGWV's interest in Member LLC (as opposed to All Year's interest in YGWV).

60.    Given the newly-proclaimed need for this Court's approval, Weiss, on or about March 14, 2022, asked to return to the original offer to purchase All Year's interest in

YGWV rather than YGWV's interest in Member LLC, as the only (stated) reason for rejecting this original transaction structure two months earlier was that it would require this Court's approval.

61.    Shortly thereafter, All Year (through its bankruptcy counsel) represented to counsel for Weiss during a telephone call that the sale of All Year's interest in YGWV was not a possibility. All Year (through its bankruptcy counsel) did not explain why this was so, other than to suggest that such a transaction structure would be too complicated.

62.    Subsequently, All Year and Weiss agreed on all terms of the revised MIPA and, with All Year's knowledge and approval, Mishmeret published the revised MIPA as an exhibit to a filing it made on the Tel Aviv Stock Exchange on or about March 27, 2022.   The revised MIPA provided that YGWV would sell Weiss its 49.9% interest in Member LLC.

ii.    <u>All Year's Pivot to Paragraph</u>

63.    Prior to the time All Year filed the Plan, All Year decided to abandon the transaction with Weiss, and, instead, in or about April 2022, agreed to sell All Year's interest in YGWV to Paragraph for essentially the same consideration offered by Weiss.

64.    Upon information and belief, All Year structured the transaction in this manner—*i.e.*, as an indirect sale of All Year's 100% interest in YGWV to Paragraph rather than a transfer of YGWV's direct interest in Member LLC to Paragraph—in an effort to circumvent the express restrictions on the transfer of membership interests set forth in the Member LLC Agreement and under Delaware Law.

65.    The YGWV Interest Transfer Scheme is intended to, effectively, make Paragraph the managing member of Member LLC and give it control of Fee Owner and the WV Complex.

18

66. The YGWV Interest Transfer Scheme violates the Member LLC Agreement, which prohibits the assignment of YGWV's interest in Member LLC without Weiss' consent, and Delaware law.

67. Further, throughout the postpetition period All Year has indirectly, and/or directly through its dominion and control of YGWV, and unlawfully acted as managing member of Member LLC.  As discussed below, YGWV was dissolved as a matter of law upon the filing of this chapter 11 case, and, accordingly, All Year holds only an economic interest in YGWV (and, indirectly, in Member LLC), but not a managing interest under New York limited liability company law.  All Year, however, has acted as managing member of Member LLC during the postpetition period by, among other conduct, making decisions affecting the business of the Member LLC; failing to protect and preserve the title to and interest of Member LLC in all of its property and assets; purporting to perform all obligations provided in the Member LLC Agreement; and, prosecuting causes of action on behalf of Member LLC without authority.

68. By operation of New York and Delaware law, Weiss is the only remaining member of Member LLC.  All Year's continuing exercise of managerial functions and duties therefore is impermissible and must not continue.

### G.  **The Plan**

69. On May 31, 2022, the All Year filed the Plan [Docket No. 123].

70. Pursuant to the Plan, All Year seeks, *inter alia*, approval of an Investment Agreement dated March 11, 2022, by and among All Year, Paragraph, and, solely with respect to certain specified sections therein, Mishmeret, as trustee (the "Investment Agreement").

71.    Amendment 1 to the Investment Agreement provides that, if Paragraph closes on a separate transaction to acquire the outstanding notes related to the WV Complex from Mishmeret, All Year will sell to Paragraph its membership interests in YGWV for $200,000.

72.    Weiss has objected to this proposed transaction.

73.    Weiss has offered to acquire All Year's membership interest in YGWV for $2.2 million—eleven times the amount Paragraph is required to pay.  Weiss made this offer to Mishmeret who, as discussed above, was negotiating on behalf of the Parent Debtor, and the offer was published on the Tel Aviv Stock Exchange.  The Parent Debtor did not respond to, let alone accept, this offer.

74.    The Parent Debtor is presently seeking a hearing on confirmation of the Plan, including approval of the Investment Agreement, on October 6, 2022.

## FIRST CLAIM FOR RELIEF

**(DECLARATORY JUDGMENT THAT ALL YEAR'S PURPORTED TRANSFER OF ITS OWNERSHIP IN YGWV TO PARAGRAPH, PURSUANT TO THE YGWV TRANSFER INTEREST SCHEME, VIOLATES THE TRANSFER RESTRICTIONS OF THE MEMBER LLC AGREEMENT AND DELAWARE LAW, BOTH BECAUSE ALL YEAR NEGOTIATED THE AGREEMENT AND BECAUSE YGWV IS ALL YEAR'S ALTER EGO, AND SUCH PURORTED TRANSFER IS NULL AND VOID)
(AGAINST ALL DEFENDANTS)**

75.    Weiss repeats and realleges the allegations contained in paragraphs 1 through 74.

76.    The Member LLC Agreement is dated as of February 28, 2017.  The Member LLC Agreement purports to be between Weiss and YGWV.

77.     All Year established YGWV on or about February 1, 2017, upon the filing of articles of organization with the New York Secretary of State.  YGWV's limited liability company agreement, however, was not entered into until February 28, 2017.

78.     All essential terms of the Member LLC Agreement were negotiated and agreed upon between All Year and Weiss prior to the formation of YGWV.  All Year conducted these negotiations through its authorized representatives.

79.     All Year's extensive participation in the negotiations leading up to execution of the Member LLC Agreement manifests All Year's intent to be bound by the Member LLC Agreement, including its provision prohibiting the transfer of membership interests without consent of the other Member (*i.e.*, Weiss).

80.     All Year negotiated all essential terms of the Member LLC Agreement with Weiss prior to YGWV's formation, thus manifesting All Year's intent to be bound by the Member LLC Agreement.  YGWV has no existence independent of All Year.  Thus, All Year is bound by the Member LLC Agreement.

81.     All Year dominates and controls YGWV, and the Defendants are a single economic unit.  YGWV is an entity that either shares offices with All Year or has no physical presence.  YGWV has no employees or directors, and any agents of YGWV are not independent from All Year.  Upon information and belief, YGWV keeps no corporate records and only exists as an instrumentality of All Year.

82.     YGWV's sole purpose is to hold All Year's interests in Member LLC and Fee Owner and it engages in no business activity other than holding its interest in Fee Owner. Upon information and belief, YGWV has never had a bank account nor paid an expense and all

21

revenue generated by the WV Complex is paid directly to All Year, not YGWV.  Upon information and belief, YGWV has no assets other than its interest in Fee Owner.

83.     Through the YGWV Interest Transfer Scheme, All Year is attempting to misuse YGWV's corporate form to effect an injustice or wrong upon Weiss by using the corporate form to circumvent the transfer restrictions in the Member LLC Agreement and force Weiss into business with Paragraph, a third party unrelated to All Year and unknown to Weiss, over his objection.  All Year has never treated YGWV as an entity separate from itself until the filing of this chapter 11 case and its decision to enter into the YGWV Interest Transfer Scheme.  All Year is liable under the Member LLC Agreement because YGWV is All Year's alter ego.

84.     Section 8.1 of the Member LLC Agreement states that "a Member may not assign in whole or in part any interest in the Company without the written consent of the other Members."

85.     By the YGWV Interest Transfer Scheme, All Year has agreed to sell and transfer to Paragraph its 100% membership interest in YGWV under the Plan.

86.     The YGWV Interest Transfer Scheme contemplated by the Plan would give Paragraph full ownership and control of YGWV and its entire interest in Member LLC, and thereby effect a prohibited transfer of YGWV's interest in Member LLC without the required consent of Weiss.

87.     Weiss did not consent to the YGWV Interest Transfer Scheme.

88.     As Weiss did not consent to the YGWV Interest Transfer Scheme, it is prohibited by Section 8.1 of the Member LLC Agreement.

89.     The Member LLC Agreement provides, inter *alia*, that any transfer of membership interest in violation of Section 8.1 thereof "shall be null and void."

90.     Accordingly, Weiss seeks a declaration that: (i) All Year is bound by the Member LLC Agreement; (ii) the transfer contemplated by the YGWV Interest Transfer Scheme is prohibited by the Member LLC Agreement; and (iii) pursuant to the Member LLC Agreement, any transfer of all or any part of either All Year's interest in YGWV or YGWV's interest in Member LLC without the express consent of Weiss shall be null and void.

## SECOND CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT REGARDING YGWV INTEREST TRANSFER SCHEME'S VIOLATION OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)
### (AGAINST ALL DEFENDANTS)

91.     Weiss repeats and realleges the allegations contained in paragraphs 1 through 90.

92.     The implied covenant of good faith and fair dealing provides a means of implying terms in an agreement to, among other things, analyze unanticipated developments or fill gaps in the contract's provisions, with the goal of ensuring that the parties deal honestly and fairly with each other in the course of carrying out their agreement.

93.     Even if All Year is not bound by the agreement in the manner discussed above (which it is), the Member LLC Agreement should be understood to contain an implied term that prevents YGWV and All Year from effectively transferring control in Member LLC to a third party without Weiss's consent via the transfer of All Year's interest in YGWV, the result of which is to force Weiss into business with a stranger contrary to the parties' intentions and Delaware law.

94.     By agreeing to the YGWV Interest Transfer scheme, Defendants have failed to deal honestly and fairly and will violate this implied covenant if they consummate the YGWV Interest Transfer Scheme, which should be considered null and void as a matter of law.

95.    Accordingly, Weiss is entitled to a declaration that (i) the Member LLC Agreement contains an implied covenant of good faith and fair dealing, which Defendants will violate by consummating the YGWV Interest Transfer Scheme (or by selling All Year's interest in YGWV to a third party without Weiss's consent) and (ii) the transfer of all or any part of either All Year's interest in YGWV or YGWV's interest in Member LLC without the express consent of Weiss shall be null and void.

## THIRD CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT REGARDING DISSOLUTION OF YGWV, ITS INABILITY TO EFFECTUATE YGWV INTEREST TRANSFER SCHEME, AND UNLAWFUL MANAGEMENT OF MEMBER LLC) (AGAINST ALL DEFENDANTS)

96.    Weiss repeats and realleges the allegations contained in paragraphs 1 through 95.

97.    Upon the filing by All Year of its chapter 11 petition (the "Petition"), by operation of law All Year was stripped of its status as a member of YGWV for either of two independent reasons.

98.    First, New York law recognizes that the bankruptcy of a member of a New York limited liability company is an event that terminates the membership interest of that member. New York Limited Liability Company Law ("LLCL") § 701(b).

99.    Nothing in the YGWV LLC Agreement alters the statutory "default" provision set forth in LLCL § 701(b) that a member's bankruptcy filing is a termination event.[10]

100.    Accordingly, the filing by All Year of the Petition terminated All Year's membership in YGWV.

---

[10]    The YGWV LLC Agreement is attached as **Exhibit B**.

24

101.    Second, and alternatively, pursuant to the LLCL, the assignment of a membership interest in a New York limited liability company strips the assignor of its status as a member, divests the assignor of all non-economic rights, and entitles the assignee to receive distributions and allocations of profits and losses, but nothing more – especially not status as a member of the LLC.

102.    Specifically, section 603(a) of the LLCL provides:

Except as provided in the operating agreement,

(1) a membership interest is assignable in whole or in part;

(2) an assignment of a membership interest does not dissolve a limited liability company or entitle the assignee to participate in the management and affairs of the limited liability company or to become or to exercise any rights or powers of a member;

(3) the only effect of an assignment of a membership interest is to entitle the assignee to receive, to the extent assigned, the distributions and allocations of profits and losses to which the assignor would be entitled; and

(4) a member ceases to be a member and to have the power to exercise any rights or powers of a member upon assignment of all of his or her membership interest.   Unless otherwise provided in the operating agreement, the pledge of, or the granting of a security interest, lien or other encumbrance in or against, any or all of the membership interest of a member shall not cause the member to cease to be a member or to cease to have the power to exercise any rights or powers of a member.

LLCL § 603(a).

103.    Nothing in the YGWV LLC Agreement alters the statutory "default" provisions set forth in LLCL § 603(a).

104.    Upon the filing by All Year of the Petition, a bankruptcy estate was created (the "Estate").

105.    Upon the filing by All Year of the Petition, all of All Year's non-exempt assets, including the remnants of its pre-petition 100% membership interest in YGWV, were assigned to the Estate.

106.    Accordingly, when All Year filed its Petition, (a) All Year ceased to be a member of YGWV, (b) the Estate became an assignee of All Year's economic interest in YGWV but nothing more, and (c) the Estate did not become a member of YGWV.

107.    Because All Year was the sole Member of YGWV pre-petition, upon the filing by All Year of its Petition, by operation of either section 701(b) or section 603(a) of the LLCL, YGWV no longer had a member.

108.    Pursuant to the LLCL, when a New York LLC no longer has a member, it is dissolved, unless the "legal representative" of the last remaining member agrees in writing to continue the LLC and admit itself or its assignee as a member, and does so within the period set forth in the LLCL or the LLC's operating agreement.

109.    Specifically, section 701(a)(4) of the LLCL provides:

(a)  A limited liability company is dissolved and its affairs shall be wound up upon the first to occur of the following:
* * *
(4) at any time there are no members, provided that, unless otherwise provided in the operating agreement, the limited liability company is not dissolved and is not required to be wound up if, within one hundred eighty days or such other period as is provided for in the operating agreement after the occurrence of the event that terminated the continued membership of the last remaining member, the legal representative of the last remaining member agrees in writing to continue the limited liability company and to the admission of the legal representative of such member or its assignee to the limited liability company as a member, effective as of the occurrence of the event that terminated the continued membership of the last remaining member[.]

LLCL § 701(a)(4).

110.    The YGWV LLC Agreement[11] does not alter the 180-day period set forth in LLCL § 701(a)(4) within which "the legal representative of the last remaining member [must] agree[] in writing to continue the limited liability company and to the admission of the legal representative of such member or its assignee to the limited liability company as a member, effective as of the occurrence of the event that terminated the continued membership of the last remaining member."  LLCL § 701(a)(4).

111.    The LLCL further requires that, following such agreement to continue notwithstanding an event of dissolution, the LLC must amend its articles of organization and file a certification of such amendment with the NYS Department of State.  LLCL § 211.

112.    No legal representative of All Year has filed any statement in this case indicating that it issued the requisite written agreement within 180 days of December 14, 2021 (the "Petition Date") (i) to continue YGWV, (ii) to admit All Year, as debtor-in-possession, as member of YGWV, and/or (iii) to make the foregoing agreements effective as of the Petition Date. Moreover, YGWV has not filed a certificate of amendment of its articles of organization with the NYS Department of State.

113.    Accordingly, upon information and belief, All Year has failed to satisfy the requirement set forth in LLCL § 701(a)(4) within 180 days of the Petition Date, and, therefore, YGWV was dissolved as of the Petition Date.

114.    Accordingly, Weiss is entitled to a declaration that: (i) YGWV was dissolved as of the Petition Date; (ii) All Year presently holds no membership interest in YGWV or Member LLC that can be transferred to Paragraph or any other third party; (iii) to the extent All Year now holds YGVW's former economic (but not membership) interest in Member LLC, the

---

[11]    *See* Ex. B

transfer restrictions of the Member LLC Agreement prohibit All Year from transferring that interest to Paragraph or another third party without Weiss's consent; and, (iv) YGWV and/or All Year, directly or indirectly, are prohibited from acting as the managing member of Member LLC.

## FOURTH CLAIM FOR RELIEF

### (PERMANENT INJUNCTION PROHIBITING YGWV INTEREST TRANSFER SCHEME)
### (AGAINST ALL DEFENDANTS)

115.    Weiss repeats and realleges the allegations contained in paragraphs 1 through 114.

116.    Courts in this district have held that a plaintiff seeking a permanent injunction must succeed on the merits of its claim and demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

117.    As an initial matter, for the reasons discussed above, Weiss will prevail on his claim that the YGWV Interest Transfer Scheme violates the Member LLC Agreement and other applicable Delaware and New York law.  Moreover, the Member LLC Agreement provides that any transfer that violates its anti-assignment restrictions shall be null and void.

118.    Notwithstanding the terms of the Member LLC Agreement and applicable law, All Year purports to transfer its interest in YGWV to Paragraph under the Plan in accordance with the YGWV Interest Transfer Scheme.

119.    The YGWV Interest Transfer Scheme is also unlawful because YGWV has dissolved as a matter of New York law and, therefore, All Year is incapable of transferring a membership interest in YGWV to the Plan Sponsor.

120.    Unless the Court enjoins this proposed transaction, Weiss will be irreparably harmed because the transaction, as proposed, will permit Paragraph, through YGWV, to become the effective Managing Member of Member LLC over Weiss's objection.  As Managing Member, Paragraph will, in accordance with the Member LLC Agreement, have the power and authority to manage the day-to-day operations of Member LLC and make decisions on its behalf, including specifically decisions to control the actions of its wholly-owned subsidiary, Fee Owner, which owns the WV Complex.  Weiss cannot be adequately compensated by an award of damages for the control rights in Member LLC that will be transferred to Paragraph, a stranger, if the YGWV Interest Transfer Scheme is accomplished.

121.    A balancing of the hardships favors the issuance of an injunction, because All Year and YGWV are attempting to use the corporate form to substantively, and unjustly, circumvent their contractual obligations to Weiss, in violation of the Member LLC Agreement and applicable law.  Enforcing the Member LLC Agreement by prohibiting the YGVW Transfer will not harm Defendants at all, but, rather, will hold them to their contractual obligations.

122.    The issuance of an injunction will serve the public interest by promoting the public policies underlying contract law and the Delaware LLC Act (i.e., the ability to choose ones contractual and business partners).

123.    Accordingly, Weiss seeks the issuance of a permanent injunction that enjoins (i) the YGWV Interest Transfer Scheme, (ii) All Year from selling, assigning, or otherwise transferring all or any part of either its interest in YGWV or YGWV's interest in Member LLC

without the express consent of Weiss; and (iii) YGWV from selling, assigning, or otherwise transferring all or any part of its interest in Member LLC without the express consent of Weiss.

## FIFTH CLAIM FOR RELIEF

### (PERMANENT INJUNCTION PROHIBITING ALL YEAR AND YGWV FROM DIRECTLY OR INDIRECTLY ACTING AS MANAGER OF MEMBER LLC) (AGAINST ALL DEFENDANTS)

124.    Weiss repeats and realleges the allegations contained in paragraphs 1 through 123.

125.    Courts in this district have held that a plaintiff seeking a permanent injunction must succeed on the merits of its claim and demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

126.    For the reasons discussed above, Weiss will prevail on his claim that YGWV has dissolved as a matter of law and, therefore, neither All Year nor YGWV can continue acting as manager, directly or indirectly, of Member LLC.  Because YGWV has been dissolved, Weiss is managing member of Member LLC.

127.    Unless the Court enjoins All Year and YGWV from acting as manager of Member LLC and authorizes Weiss to act as managing member of Member LLC, Weiss will be irreparably harmed because All Year and/or YGWV will continue to act as managing member under the Member LLC Agreement, including by purporting to exercise the power and authority to manage the day-to-day operations of Member LLC and make decisions on its behalf, including

specifically decisions to control the actions of its wholly-owned subsidiary, Fee Owner, which owns the WV Complex.

128.    Weiss is and will continue to be harmed by particular actions and omissions of All Year and/or YGWV on behalf of Member LLC, such as their (i) failure to prudently seek a payoff or other resolution of Fee Owner's outstanding indebtedness and (ii) their failure to protect Member LLC's and Fee Owner's rights in this case, including by filing appropriate proofs of claim to preserve rights against the estate, such as rights that fee owner may have as guarantor of All Year's indebtedness.

129.    A balancing of the hardships favors the issuance of an injunction, because All Year and YGWV are improperly exercising control over Member LLC in violation of the Member LLC Agreement and applicable law.  Moreover, neither will be harmed if they are required to refrain from taking actions on behalf of Member LLC.

130.    The issuance of an injunction will serve the public interest by promoting the public policies underlying New York and Delaware limited liability company laws and will ensure that Weiss is able to protect his rights in Member LLC and Fee Owner.

131.    Accordingly, Weiss seeks the issuance of a permanent injunction that enjoins YGWV and/or All Year from directly or indirectly acting as the managing member of Member LLC.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Weiss respectfully requests that judgment be entered as follows:

1.    On the first claim for relief, a declaration that: (i) All Year is bound by the Member LLC Agreement; (ii) the transfer contemplated by the YGWV Interest Transfer Scheme is

prohibited by the Member LLC Agreement; and (iii) pursuant to the Member LLC Agreement, any transfer of all or any part of either All Year's interest in YGWV or YGWV's interest in Member LLC without the express consent of Weiss shall be null and void;

2.      On the second claim for relief, a declaration that (i) the Member LLC Agreement contains an implied covenant of good faith and fair dealing, which Defendants will violate by consummating the YGWV Interest Transfer Scheme (or by selling All Year's interest in YGWV to a third party without Weiss's consent) and (ii) the transfer of all or any part of either All Year's interest in YGWV or YGWV's interest in Member LLC without the express consent of Weiss shall be null and void;

3.      On the third claim for relief, a declaration that: (i) YGWV was dissolved as of the Petition Date; (ii) All Year presently holds no membership interest in YGWV or Member LLC; and (iii) even if the transfer restrictions of the Member LLC Agreement do not apply, the most All Year could transfer to Paragraph as a matter of law is an economic interest in Member LLC, but not a membership interest or any rights and powers of a member;

4.      On the fourth claim for relief, an injunction that enjoins (i) the YGWV Interest Transfer Scheme, (ii) All Year from selling, assigning, or otherwise transferring all or any part of either its interest in YGWV or YGWV's interest in Member LLC without the express consent of Weiss; and (iii) YGWV from selling, assigning, or otherwise transferring all or any part of its interest in Member LLC without the express consent of Weiss;

5.      On the fifth claim for relief, an injunction that enjoins YGWV and/or All Year from directly or indirectly acting as the managing member of Member LLC;

6.      Reasonable attorneys' fees, costs, and expenses incurred in this action; and

7.      Such other and further relief as the Court may deem just, proper, or equitable under

the circumstances.


Dated:    New York, New York
          July 5, 2022

                                        By: */s/ Nicholas A. Bassett*
                                        Kristopher M. Hansen
                                        Nicholas A. Bassett
                                        Jason M. Pierce
                                        Will Clark Farmer
                                        **PAUL HASTINGS LLP**
                                        200 Park Avenue
                                        New York, New York 10166
                                        Telephone:      (212) 318-6000
                                        Facsimile:      (212) 319-4090
                                        krishansen@paulhastings.com
                                        nicholasbassett@paulhastings.com
                                        jasonpierce@paulhastings.com
                                        willfarmer@paulhastings.com

                                        *Counsel to Zelig Weiss*