## Exhibit A

State of Delaware
Secretary of State
Division of Corporations
Delivered 05:43 PM 02/01/2017
FILED 05:43 PM 02/01/2017
SR 20170595185 - File Number 6302827

# CERTIFICATE OF FORMATION

## OF

## WYTHE BERRY MEMBER LLC

**FIRST:**   The name of the limited liability company is WYTHE BERRY MEMBER LLC

**SECOND:**   The address of its registered office in the State of Delaware is 1013 Centre Road, Suite 403-B in the City of Wilmington, Delaware 19805, in the County of New Castle. The name of its registered agent at such address is Vcorp Services, LLC.

**THIRD:**   Members may be admitted in accordance with the terms of the Operating Agreement of the limited liability company.

**IN WITNESS WHEREOF**, the undersigned has executed this Certificate of Formation, on February 01, 2017.

_/s/Taylor Lolya_
Taylor Lolya, Authorized Person

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## WYTHE BERRY MEMBER LLC

This Limited Liability Company Agreement (this "Agreement") of WYTHE BERRY MEMBER LLC (the "Company") is entered into as of February 28, 2017, by and between YG WV LLC, a New York limited liability company, and ZELIG WEISS, an individual, each a "Member", and collectively as, the "Members".

## W I T N E S S E T H:

WHEREAS, the Company was formed as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act, as amended from time to time (the "Act") by filing the Company's Certificate of Formation with the Secretary of State of the State of Delaware on February 1, 2017;

WHEREAS, the Members desire to enter into this Agreement to set forth the terms and conditions of the Company.

NOW THEREFORE, in consideration of the investments and of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Members agree as follows:

## ARTICLE 1

## FORMATION AND TERM

1.1    Name.  The name of the limited liability company is **WYTHE BERRY MEMBER LLC.**

1.2    Qualification and Registration.  The authority of **Taylor Lolya**, as organizer, to execute, deliver and file the certificate of formation of the Company with the Secretary of State of Delaware is hereby confirmed and such filing is hereby ratified and approved.

1.3    Principal Business Office.  The principal business office of the Company shall be located at 199 Lee Street, Suite 693, Brooklyn, New York 11211 or at such other location as may hereafter be determined by the Managing Member.

1.4    Registered Office and Agent.  The Company shall at all times maintain a registered agent and office in the State of Delaware.  The registered office of the Company in the State of

Delaware is c/o VCorp Services, LLC, 1013 Centre Road Suite 403-B, Wilmington, Delaware 19805. The Company's registered agent for service of process in the State of Delaware is c/o VCorp Services, LLC, 1013 Centre Road Suite 403-B, Wilmington, Delaware 19805. The Managing Member may change the Company's registered office or registered agent in Delaware from time to time as permitted under the Act.

      1.5    Term. The term of the Company commenced on the date of its formation and shall have a perpetual existence, unless the Company is dissolved before such date in accordance with the provisions of Article IX of this Agreement.

## ARTICLE 2

## PURPOSE AND POWERS OF THE COMPANY

      2.1    Purpose. Subject to Article 11, the Company is formed for the primary purpose of, and the nature of the business to be conducted and promoted by the Company is engaging in any lawful activity for which limited liability companies may be formed under the Act, including without limitation, the ownership of 100% of the membership interests in WYTHE BERRY FEE OWNER LLC, a Delaware limited liability company ("Propco"), which entity will be the fee owner of that certain property known as 55 Wythe Avenue, Brooklyn, New York (collectively, the "Property"), and which entity will enter into, as landlord, that certain triple net lease of the Property to Wythe Berry LLC, a New York limited liability company (the "Lease").

      2.2    Powers. In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have the power and is hereby authorized to take any and all actions necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purposes set forth in Section 2.1.

## ARTICLE 3

## MEMBERS; CAPITAL CONTRIBUTIONS

      3.1    Members; Members' Interests. (a) The names and the mailing addresses of the Members are as set forth under their respective signatures below.

      (b)    Except as expressly provided by this Agreement, including, without limitation, Article 11, or as required by the Act, no Member shall (i) have the power to act for or on behalf of, or to bind, the Company, (ii) take part in the day-to-day management or the operation or control of the business and affairs of the Company or (iii) be an agent of the Company or have any right, power or authority to transact any business in the name of the Company.

      3.2    Capital Contributions; Ownership. (a) Capital contributions (the "Capital Contributions") to the Company shall be in the form of cash contributions. The Members have made

or deemed to have made the initial Capital Contributions to the Company in the amounts set out opposite their names on Exhibit A.

(b)    It is agreed by the Members that the percentage ownership interests (the "Interests") of the Members as of the date hereof is set out on Exhibit A. A Member's Interest in the Company shall for all purposes be personal property. A Member shall have no interest in specific Company property.

3.3    Additional Contributions. In the event that additional funds are reasonably necessary to be contributed to Company and disbursed to Propco for the operation of Propco's business and obligations as landlord under the Lease, then, upon the unanimous written consent of the Members, each of the Members shall make such additional Capital Contributions to the Company pro rata, each in accordance with their Interests as set forth on Exhibit A.

3.4    Partition. Each Member waives any and all rights that it may have to maintain an action for partition of the Company's property.

3.5    Admission of Additional Members. Additional members of the Company may be admitted to the Company only upon the unanimous written consent of the Members.

ARTICLE 4

ALLOCATION OF PROFITS AND LOSSES; DISTRIBUTIONS

4.1    Allocation of Profits and Losses. The Company's profits and losses shall be allocated among the Members in proportion to the Members' Interests.

4.2    Distributions. Subject to the payment of all Company expenses and the holding of reasonable reserves, as reasonably determined by the Managing Member, distributions shall be made to the Members no later than thirty (30) days following receipt of any capital received by the Company, including, without limitation, rental payments received pursuant to the Lease after deduction of expenses and debt service. Such distributions shall be made *pari passu* to each of the Members, in the same proportion as their respective Interests.

ARTICLE 5

MANAGEMENT

5.1    Management. The Members hereby appoint YG WV LLC as managing member of the Company (the "Managing Member"). The Managing Member shall have the authority and responsibility, to manage the business of the Company and shall make all decisions affecting the business of the Company, including, without limitation, all decisions required under the Lease, except if consent or approval of a Member is required elsewhere herein. The Managing Member's duties, authorities, responsibilities hereunder shall not be decreased without the unanimous consent of all the Members. Subject to Section 5.2 below, the Managing Member may bind and otherwise act as an agent

{40766454;5}-3

of the Company in relation to third parties and outside affairs. The Managing Member may delegate its rights hereunder to an agent with the written consent of the Members.  Without limiting the generality of the foregoing and subject to <u>Section 5.2</u> below, the Managing Member is authorized to discharge and shall discharge the following obligations on behalf of the Company:

     5.1.1    Do all things necessary or appropriate to conduct the business of the Company; to exploit the benefit embedded in the real estate of the company;

     5.1.2    Protect and preserve the title to and the interest of the Company in all of its property and assets, real, personal and mixed, including the Property and the Lease;

     5.1.3    Keep all books of account and other records of the Company;

     5.1.4    Make distributions to the Members pursuant to <u>Section 4.2;</u>

     5.1.5    Promptly cause the Company to comply with all present and future laws, ordinances, orders, rules, regulations and requirements of all federal, state and municipal governments, courts, departments, agencies, commissions, boards and agencies which may be applicable to the Property or the Company or the use, operation or management thereof; and

     5.1.6    Perform all other obligations provided elsewhere in this Agreement to be performed by the Managing Member, including without limitation all rights and obligation as landlord under the Lease and all decisions relating to financing of  the company.

    5.2    <u>Major Decisions</u>.  Notwithstanding any other provision of this Agreement to the contrary, without the prior written unanimous consent of all of the Members, the Managing Member shall have no authority to bind the Company with respect to any of the following:

     5.2.1    Other than the Property, buy or acquire any other real estate;

     5.2.2    sell, or otherwise dispose of all or substantially all, of the assets of the Company, or authorize or agree to any of the foregoing;

     5.2.3    Make a capital call for Additional Capital Contributions pursuant to <u>Section 3.3;</u>

     5.2.4    Make a loan to any person or entity;

     5.2.5    Institute proceedings on behalf of the Company to be adjudicated bankrupt or insolvent, or consent to the institution or bankruptcy or insolvency proceedings against it, or file a petition seeking or consenting to reorganization or relief under any applicable federal or state law relating to bankruptcy, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestration (or other similar official) of the Company or a substantial part of property of the Company, or make any assignment for the benefit of creditors, or admit in writing its inability to pay its debts generally as they become due, or take company action in furtherance of any such action;

5.2.6   Amend the Certificate of Formation or this Agreement;

5.2.7   Do any act in contravention of this Agreement or engage in any business activity not permitted in this Agreement;

5.2.8   Dissolve, liquidate, consolidate or merge the Company or authorize or agree to any of the foregoing;

5.2.9   Terminate the Lease, provided that the Lessee is not in material financial default under the terms of the Lease; and

5.2.10  Cause any direct or indirect subsidiary of the Company to take any of the foregoing actions.

5.3    Other Business Interests.  The Members and any person or entity affiliated with any of the Members may engage in or possess an interest in other business ventures of every kind and description, independently or with others.  None of the Company or the other Members shall have any rights in or to such ventures or the income or profits therefrom by virtue of this Agreement.

ARTICLE 6

BOOKS AND RECORDS; TAX MATTERS

6.1    Books, Records and Financial Statements.  At all times during the continuance of the Company, the Company shall maintain, at its principal place of business, separate books of account for the Company that shall show a true and accurate record of all costs and expenses incurred, all charges made, all credits made and received and all income derived in connection with the operation of the Company's business.  Such books of account, together with a certified copy of this Agreement and of the certificate of formation, shall at all times be maintained at the principal place of business of the Company and shall be open to inspection and examination at reasonable times by each Member and its duly authorized representative for any purpose reasonably related to such Member's interest in the Company.

6.2    Taxation as Partnership.  The Company shall be treated as a partnership for U.S. federal income tax purposes.

ARTICLE 7

LIABILITY, EXCULPATION AND INDEMNIFICATION

7.1    Liability.  (a) Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company.  The organizer and the Members of the Company (each a "Covered Person" and collectively "Covered Persons") shall not be obligated personally for any such

{40766454;5}-5

debt, obligation or liability of the Company solely by reason of being an authorized person or a Member of the Company.

(b)    Except as otherwise expressly required by law, a Member, in its capacity as a Member of the Company, shall have no liability in excess of (i) the amount of its capital contributions to the Company, (ii) its share of any assets and undistributed profits of the Company, (iii) its obligation to make other payments expressly provided for in this Agreement and (iv) the amount of any distributions wrongfully distributed to it.

7.2    Exculpation. (a) No Covered Person shall be liable to the Company, any Member or any other person or entity who has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith in connection with the formation of the Company or acting on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.

(b)    A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any person or entity as to matters the Covered Person reasonably believes are within such other person or entity's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits, losses or any other facts pertinent to the existence and amount of assets from which distributions to Members might properly be paid.

7.3    Indemnification. To the full extent permitted by applicable law, each Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 7.3 shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account thereof.

7.4    Expenses. To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person in defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in Section 7.3 hereof.

7.5    Bankruptcy Event. Notwithstanding anything to the contrary herein, without the prior written consent of the Managing Member (which consent right may not be assigned or delegated),

the Company will not, with respect to itself, Propco or any other entity in which it has a direct or indirect legal or beneficial ownership interest (A) file a bankruptcy, insolvency or reorganization petition or otherwise institute insolvency proceedings or otherwise seek any relief under any laws relating to the relief from debts or the protection of debtors generally, (B) seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian or any similar official for such entity or for all or any portion of such entity's properties, (C) make any assignment for the benefit of such entity's creditors or (D) take any action that might cause such entity to become insolvent; has remained and intends to remain solvent and has maintained and intends to maintain adequate capital in light of its contemplated business operations.

## ARTICLE 8

### ASSIGNMENT OF INTERESTS BY MEMBERS

8.1    <u>Assignments; Death</u>.    (a) Subject to any transfer restrictions set forth in the Loan Documents, a Member may not assign in whole or in part any interest in the Company without the written consent of the other Members.  If a Member transfers all of its interest in the Company pursuant to this <u>Section 8.1</u>, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a Member of the Company.  In such event, the Company shall not dissolve if the business of the Company is continued without dissolution in accordance with <u>Article 11</u>.  If a Member assigns an interest in the Company in violation of this <u>Section 8.1</u> and <u>Article XI</u>, such assignment shall be null and void and such Member shall be liable to the Company for breach of this Agreement.

(b)    Notwithstanding the restrictions set forth in <u>Sections 8.1(a)</u> above, the Members shall have the right to transfer all or a portion of its Interest to a family member, a trust or other entity controlled by such Member, which is formed for estate planning purposes or other legitimate business purposes.

(c)    Upon the death of a Member, such Member's heirs or successors may acquire or succeed to such Member's Interest.

## ARTICLE 9

### DISSOLUTION, LIQUIDATION AND TERMINATION

9.1    <u>No Dissolution</u>.  The Company shall not be dissolved by the admission of additional Members in accordance with the terms of this Agreement.

9.2    <u>Events Causing Dissolution</u>.  Subject to <u>Article 11</u>, the Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the termination of the legal existence of the last remaining member of the Company or the occurrence of any other event which terminates the continued membership of the last remaining member of the Company in the

Company unless the Company is continued without dissolution in a manner permitted by this Agreement or the Act or (ii) the entry of a decree of judicial dissolution of the Company under Section 18-802 of the Act.

9.3    Liquidation. Upon dissolution of the Company, the Members shall carry out the winding up of the Company and shall immediately commence to wind up the Company's affairs; provided, however, that a reasonable time shall be allowed for the orderly liquidation of the assets of the Company and the satisfaction of liabilities to creditors so as to enable the Members to minimize the normal losses attendant upon a liquidation. The Members shall continue to share in profits and losses of the Company during liquidation in the same proportions, as specified in Section 4.2 hereof, as before liquidation. The proceeds of liquidation shall be distributed in the following order and priority:

(i)    first, to the creditors of the Company, including any Members if it shall be a creditor to the extent permitted by applicable law, in satisfaction of the liabilities of the Company, whether by payment or by establishment of adequate reserves, except for liabilities for distributions to the Members and any former members;

(ii)    second, to the Members and any former members in satisfaction of liabilities of the Company for distributions; and

(iii)    the balance, if any, to the Members, after giving effect to all contributions, distributions and allocations for all periods.

9.4    Termination. The Company shall terminate when all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company, shall have been distributed to the Members in the manner provided for in this Article IX and the certificate of formation shall have been canceled in the manner required by the Act.

9.5    Claims of the Members. The Members and former Members shall look solely to the Company's assets for the return of their capital contributions, and if the assets of the Company remaining after payment of or due provision for all debts, liabilities and obligations of the Company are insufficient to return such capital contributions, the Members and former Members shall have no recourse against the Company or any other Member.

ARTICLE 10

MISCELLANEOUS

10.1    Separability of Provisions. Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

10.2    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement.

10.3    Entire Agreement. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior understandings or agreements between the parties.

10.4    Governing Law. This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

10.5    Amendments. This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by all of the Members.

## ARTICLE 11

## SINGLE PURPOSE PROVISIONS

11.1    Security Agreement. Propco has entered into that certain Agreement of Modification of Mortgage, Security Agreement, Assignment of Rents And Fixture Filing by and between Propco and All Year Holdings Limited, a British Virgins Island Company (the "Lender"), dated as of the date hereof (the "Security Agreement") which Security Instrument has been collaterally assigned to Mishmeret Trust Company Ltd., as trustee (the "Trustee"). Capitalized terms set forth in this Agreement and not otherwise defined herein shall have the meanings given to such terms in the Security Agreement.

11.2    Lender As Third Party Beneficiary. The Lender and the Trustee shall each expressly be a third party beneficiary of the provisions of this Article 11.

11.3    Single Purpose Provisions.

(a) The Company is familiar with the criteria of the Rating Agency required to qualify as a special-purpose bankruptcy-remote entity and the Company and Propco at all times since their formation have been duly formed and existing and shall preserve and has kept and shall keep in full force and effect their existence as a Single Purpose Entity.

(b)    The Company and Propco have at all times since their organization have complied, and will continue to comply, with the provisions of its certificate of formation and the Act.

(c)    The Company and Propco have each done or caused to be done and will do all things necessary to observe organizational formalities and preserve their existence and the Company and Propco will not amend, modify or otherwise change its certificate of formation and operating agreement (except for ministerial modifications) of the Company and Propco without the prior written consent of Lender, which consent shall not be unreasonably withheld, conditioned or delayed.

{40766454;5}-9

(d)     The Company and Propco have at all times accurately maintained, and will continue to accurately maintain, their respective financial statements, accounting records and other partnership, company or corporate documents separate from those of any other Person and the Company and/or Propco, have filed and will file its own tax returns or, if the Company and/or Propco is part of a consolidated group for purposes of filing tax returns, the Company and Propco have been shown and will be shown as separate members of such group. the Company and Propco have not at any time since their formation commingled, and will not commingle, their respective assets with those of any other Person and each has maintained and will maintain their assets in such a manner such that it will not be costly or difficult to segregate, ascertain or identify their individual assets from those of any other Person. The Company and Propco have not permitted and will not permit any Affiliate (other than any Manager which is an Affiliate) independent access to their bank accounts. the Company and Propco have at all times since their formation accurately maintained and utilized, and will continue to accurately maintain and utilize, their own separate bank accounts, payroll and separate books of account, stationery, invoices and checks.

(e)     The Company and Propco have at all times paid, and will continue to pay, their own liabilities from their own separate assets and each has allocated and charged and shall each allocate and charge fairly and reasonably any overhead which the Company and Propco shares with any other Person, including, without limitation, for office space and services performed by any employee of another Person.

(f)     The Company and Propco have at all times identified themselves, and will continue to identify themselves, in all dealings with the public, under their own names and as separate and distinct entities and have corrected and shall correct any known misunderstanding regarding their status as separate and distinct entities. the Company and Propco have not at any time identified themselves, and will not identify themselves, as being a division of any other Person.

(g)     The Company and Propco have been at all times, and will continue to be, adequately capitalized in light of the nature of their respective businesses.

(h)     The Company and Propco (A) have not owned, do not own and will not own any assets or property other than, with respect to Propco the Property or, with respect to the Company, the Company's 100% equity interest in the Company, and any incidental personal property necessary for the ownership, management or operation of the Property and, with respect to the Company its interest in Propco, (B) have not engaged and will not engage in any business other than, with respect to Propco, the ownership, management and operation of the Property or, with respect to the Company, the ownership of a 100% equity interest in Propco, (C) have not incurred and will not incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than (X) the Loan, and (Y) unsecured trade and operational debt (including, without limitation, leasing commissions) which is incurred and paid (or contested in good faith) in the ordinary course of the operation of the Property, does not exceed in the aggregate one half of one percent (0.5%) of the Loan Amount and which is, unless being contested in accordance with the terms of the Security Agreement, paid prior to the sixtieth (60th) day after the date incurred or such later date as the applicable creditor agrees to, (D) have not and will not pledge their assets for the benefit of any other

Person other than Lender, and (E) have not made and will not make any loans or advances to any Person (including any Affiliate).

(i)     Neither the Company nor Propco will change its name or principal place of business without giving Lender at least thirty (30) days prior written notice.

(j)     Neither the Company nor Propco have, and neither of such Persons will have any subsidiaries (except that Propco is a subsidiary of the Company).

(k)     The Company has preserved and maintained and will preserve and maintain its existence as a Delaware limited liability company and all material rights, privileges, tradenames and franchises.

(l)     Neither the Company nor Propco has merged or consolidated with, and neither will merge or consolidate with, and neither has sold all or substantially all of its respective assets to any Person, and neither will sell all or substantially all of its respective assets to any Person, and neither has liquidated, wound up or dissolved itself (or suffered any liquidation, winding up or dissolution) and neither will liquidate, wind up or dissolve itself (or suffer any liquidation, winding up or dissolution), or in the case of the Company, dissolve, liquidate or wind down Propco. Neither the Company nor Propco has acquired nor will acquire any business or assets from, or capital stock or other ownership interest of, or be a party to any acquisition of, any Person.

(m)     The Company and Propco have not at any time since their formation assumed, guaranteed or held themselves out to be responsible for, and will not assume, guarantee or hold themselves out to be responsible for the liabilities or the decisions or actions respecting the daily business affairs of their partners, shareholders or members or any predecessor company, corporation or partnership, each as applicable, any Affiliates, or any other Persons. the Company and Propco have not at any time since their formation acquired, and will not acquire, obligations or securities of its partners or shareholders, members or any predecessor company, corporation or partnership, each as applicable, or any Affiliates (other than, with respect to Propco, its interest in the Company). the Company and Propco have not at any time since their formation made, and will not make, loans to its partners, members or shareholders or any predecessor company, corporation or partnership, each as applicable, or any Affiliates of any of such Persons. the Company and Propco have no known contingent liabilities nor do they have any material financial liabilities under any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which such Person is a party or by which it is otherwise bound other than under the Loan Documents.

(n)     The Company and Propco have not at any time since their formation entered into and were not a party to, and, will not enter into or be a party to, any transaction with its Affiliates, members, partners or shareholders, as applicable, or any Affiliates thereof except in the ordinary course of business of such Person on terms which are no less favorable to such Person than would be obtained in a comparable arm's length transaction with an unrelated third party.

(o)     The sole member of the Company shall be a corporation or limited liability company whose sole asset is its interest in the Company and Propco will at all times comply,

{40766454;5}-11

and will cause the Company to comply, with each of the representations, warranties, and covenants contained in this <u>Section 11.3</u> as if such representation, warranty or covenant was made directly by Propco.

(p)    The Company has not, and will not, with respect to itself or to any other entity in which it has a direct or indirect legal or beneficial ownership interest (A) file a bankruptcy, insolvency or reorganization petition or otherwise institute insolvency proceedings or otherwise seek any relief under any laws relating to the relief from debts or the protection of debtors generally, (B) seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian or any similar official for such entity or for all or any portion of such entity's properties, (C) make any assignment for the benefit of such entity's creditors or (D) take any action that might cause such entity to become insolvent; has remained and intends to remain solvent and has maintained and intends to maintain adequate capital in light of its contemplated business operations.

(q)    The Company and Propco have not failed and will not fail to correct any known misunderstanding regarding the separate identity of such entity.

(r)    The Company and Propco have maintained and will maintain its books, records, resolutions and agreements as official records.

(s)    The Company and Propco have not and will not assume or guarantee or become obligated for the debts of any other Person or hold out its credit as being available to satisfy the obligations of any other Person except for the Loan.

(t)    The Company and Propco have paid and shall pay the salaries of their own employees and has maintained and shall maintain a sufficient number of employees in light of their contemplated business operations.

11.4    <u>Acknowledgments of the Company</u>. The Company hereby acknowledges and agrees as follows:

11.4.1 The Company recognizes, acknowledges and agrees that the Lender is a wholly separate and distinct Person, separate and distinct from Propco and from the Company, YG WV LLC, a New York limited liability company and Wythe Berry LLC, a New York limited liability company (together with Lender, the "<u>Wythe Entities</u>" and each a "<u>Wythe Entity</u>") and their respective shareholders, members, directors, officers, and employees and that no claims of any kind or nature against the Company or any Wythe Entity shall give rise to any claims or defenses against the Lender in its capacity as lender or otherwise or to any claims or defenses in any manner relating to or relevant to the Loan or the Loan Documents or in any manner be admissible in any proceeding relating to the Loan or the Loan Documents or the enforcement thereof. The Company agrees never to institute or cause to be instituted or continue prosecution of, directly or indirectly, derivatively or otherwise, any suit or cause of action or proceeding against the Lender in its capacity as lender or otherwise in contravention of the foregoing.

11.4.2 The Company recognizes, acknowledges and agrees that the relationship created between the Lender and Propco by the Lender making the Loan and Lender's execution, delivery and performance of the Loan Documents is solely and exclusively that of debtor/borrower and creditor/lender. Nothing in the Loan Documents shall be construed to create or give rise to (i) any joint venture, partnership, tenancy in common, or joint tenancy relationship, or any other relationship other than debtor/borrower and creditor/lender, between Lender and Propco or any subsidiary thereof, or (ii) any rights, duties or obligations of the Lender to any of Propco or any subsidiary thereof of any kind or nature except as expressly set forth in the Loan Documents. The Company agrees never to institute or cause to be instituted or continue prosecution of, directly or indirectly, derivatively or otherwise, any suit or cause of action or proceeding against the Lender in its capacity as lender or otherwise in contravention of the foregoing.

11.4.3 The Company waives and releases any and all defenses, affirmative defenses, set-offs, claims, counterclaims or causes of action of any kind or nature which any of the Company or any subsidiary thereof might assert on behalf of itself or any other subsidiary against the Lender in its capacity as lender, relating to the Loan or to the Loan Documents, or the enforcement by the Lender of its rights and remedies thereunder, to the extent arising out of or relating to the fact and circumstance that any Wythe Entity is providing services to Propco or any other subsidiary thereof; and the Company agrees never to institute or cause to be instituted or continue prosecution of, directly or indirectly, derivatively or otherwise any suit or cause of action or proceeding of any kind or nature whatsoever against the Lender in its capacity as lender in contravention of the foregoing.

11.4.4 The Company recognizes, agrees and acknowledges that, if and to the extent Propco or any subsidiary thereof shall hereafter assert any claims against any or all Wythe Entities under or pursuant documents unrelated to the Loan, no such claims shall give rise to any claim or recourse against the Lender in its capacity as lender, or any other Wythe Entity and the Company hereby waives and releases any such claims against the Lender in its capacity as lender and against any other affiliate of any Wythe Entity; and the Company agrees never to institute or cause to be instituted or continue prosecution of, directly or indirectly, derivatively or otherwise any suit or cause of action or proceeding of any kind or nature whatsoever against the Lender in its capacity as lender in contravention of the foregoing.

11.4.5 The Company, on behalf of itself and any of its subsidiaries hereby agrees not to directly or indirectly assert against any of the Lender or any other Wythe Entity any claim, argument or defense, whether grounded on equitable subordination principles under Section 510 of the United States Bankruptcy Code or under any other section contained in Chapter 5 of the United States Bankruptcy Code, or otherwise, that the relationship of the Lender and Propco as evidenced by the Loan Documents is not solely and exclusively that of debtor/borrower and creditor/lender or that the liens and security interests granted to the Lender as security for the Loan is not fully perfected and enforceable first priority liens and security interests.

11.5     Trustee. All references to the Lender under this Article 11 shall be applicable to the Trustee in the event that the Trustee takes possession of the Security Instrument and the Note pursuant to the collateral assignment.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have duly executed this Agreement as of the date first set forth above.

YG WV LLC

By: _____
Name: Yoel Goldman
Title: Authorized Signatory

Mailing Address:
199 Lee Street, Suite 693
Brooklyn, New York 11211


_____
ZELIG WEISS

Mailing Address:
50 Skillman Street, #1
Brooklyn, New York 11205

## EXHIBIT A

### Capital Contributions and Percentage Interests

| MEMBERS | INITIAL CAPITAL CONTRIBUTION | PERCENTAGE INTEREST |
|---|---|---|
| YG WV LLC | $100 | 50% |
| ZELIG WEISS | $100 | 50% |
| **Totals** | $200 | 100% |

{40766454;5}



February 9, 2017

**Re: Wythe Berry Member LLC**

Dear Client,

Thank you for choosing **USACORP®** to complete your LLC publishing requirements.

This is to confirm that the LLC publishing process has been initiated. The legal notice of formation will be published pursuant to §206, §1203, §802, or §1306 of the NY State LLC law, once a week for six consecutive weeks in a daily and weekly newspaper designated by the respective county clerk. After said publication, the newspapers will issue affidavits of publication which we will then be filed by our office with the NY Department of State along with requisite documents. Upon approval, an original filing receipt will be issued by the state as confirmation of publication, which brings the publishing process to a close. At that point, both affidavits of publication and the original filing receipt will be mailed to you by our office.

We acknowledge and appreciate the trust you have placed in our company and look forward to serve you with continued courtesy in the future.

We are always available for any questions or comments, call us Toll Free at 866.67.USACORP or email us at legalpublishing@usacorpinc.com.

Sincerely,

**The USACORP® Publishing Team**

325 Division Avenue, Suite 201
Brooklyn, NY 11211

**Tel:** 718.362.4789
**Toll Free:** 844.USACORP

**Email:** service@usacorpinc.com
**Fax:** 718.408.2550

**www.USACORPINC.com**

## UNANIMOUS WRITTEN CONSENT
## OF THE MEMBERS OF
## WYTHE BERRY MEMBER LLC

### February 28, 2017

The undersigned, being all of the members of **WYTHE BERRY MEMBER LLC**, a Delaware limited liability company (the "Member"), constituting the sole member of Wythe Berry Fee Owner LLC, a Delaware limited liability company ("Company"), hereby consents to the taking of the following action and adoption of the following resolutions of the Member:

WHEREAS, the Company intends to acquire the real property commonly known as "The William Vale Hotel", and located at 55 Wythe Avenue, Brooklyn, New York ("Property") from Wythe Berry LLC ("Opco"), an affiliate of the Company (the "Acquisition");

WHEREAS, in connection with the Acquisition the Company desires to enter into certain documents evidencing the conveyance of the Property and certain personal property, equipment and interests from Opco to the Company (the "Acquisition Documents");

WHEREAS, the Company intends to enter into that certain Lease Agreement between the Company and Opco (the "Lease") pursuant to which Opco will lease the Property and the personal property, equipment and interests from the Company, all as described in the Lease;

WHEREAS, the Company desires to incur indebtedness in the form of a mortgage loan made by All Year Holdings Limited, a British Virgin Islands company (the "Lender"), in the original principal amount of $166,320,000.00 (the "Loan"; and together with the Acquisition and the Lease, collectively, the "Transaction"), and the Lender has agreed to make the Loan to the Company, secured by a first mortgage lien on the Property;

WHEREAS, in connection with the Loan, the Company is, or may be, required to execute and deliver to Lender certain documents, including, but not limited to an Agreement of Modification of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing, to be dated on or about the date hereof (the "Security Instrument") by and between the Company and

{40961996}

the Lender, an Amended and Restated Promissory Note, Assignment of Leases and Rents and Security Deposit, Gap Note, and Gap Mortgage, each to be dated on or about the date hereof, as well as any other documents, instruments, guaranties, certificates, affidavits, affirmations, or certifications now or hereinafter required to be delivered by the Company to the Lender or in connection with the Loan (collectively, the "Loan Documents");

WHEREAS, upon making the Loan, the Lender intends to assign its rights, title and interest to the mortgages created under the Security Instrument and certain of the related Loan Documents (the "Collateral Assignment") to Mishmeret Trust Company Ltd. (the "Trustee") and in connection therewith, Each of the Member and the Company is, or may be, required to execute and deliver to the Trustee, and the other parties thereto, a Guaranty of Payment, Subordination Agreement and a payment direction letter, each to be dated on or about the date hereof (collectively the "Collateral Assignment Documents" and together with the Lease, the Loan Documents and the Acquisition Documents, the "Transaction Documents"); and

WHEREAS, the undersigned has determined that it is in the best interests of the Member and the Company to (i) effect the Acquisition, (ii) for the Company to enter into the Loan and the Lease and (iii) execute, enter into and deliver the Transaction Documents.

NOW THEREFORE BE IT:

RESOLVED, that each of the Member and the Company is hereby authorized to (i) effect the Acquisition, (ii) enter into the Loan and the Lease and (ii) enter into, execute and deliver the Transaction Documents; and be it further

RESOLVED, that the terms and the provisions of the Transaction Documents and the transactions contemplated thereby (including, but not limited to, the incurrence of indebtedness and the granting of any liens and security interests under the Transaction Documents), are hereby approved, confirmed, ratified and adopted in all respects; and be it further

RESOLVED, that Yoel Goldman (the "Authorized Signatory"), is hereby authorized, empowered and directed in the name and on behalf of the Member and the Company, acting singly, at any time and from time to time hereinafter and without further action by or

{40961996}                                                    2

authorization or direction from the members of the Member, to (i) negotiate, make, execute, perform, acknowledge, verify, issue and deliver all such other agreements, amendments to agreements, deeds, transfers, tax returns, applications, certificates, instruments, consents, acknowledgments, notices, waivers, filings, financing statements, forms and other documents and to do or cause to be done all such acts and things, and take all such steps and other action or actions, and to make all such payments and remittances on behalf of the Member and the Company in connection with the Acquisition and (ii) make or cause to be made, and execute and deliver, any and all agreements, guaranties, indemnities, contracts, instruments, security agreements, warranties, covenants, certificates, or any other document, in connection with the Lease, the Loan and the Collateral Assignment, and any and all changes or modifications, and to do or cause to be done all other acts or things as said Authorized Signatory may deem necessary and any such acts shall be deemed to be conclusive evidence of the undersigneds' approval thereof; and be it further

**RESOLVED**, that any and all actions heretofore taken by the Authorized Signatory in connection with any of the things, matters or objectives approved in any or all of the foregoing resolutions, and all transactions, agreements, documents or writings related thereto, are hereby authorized, approved, ratified and confirmed in all respects; and any and all actions hereafter taken or to be taken by them in furtherance of the objectives set forth in any of the preceding resolutions, and all transactions, agreements, documents or writing relating thereto, are hereby authorized, approved, ratified and confirmed in all respects.

This consent may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile or ".pdf" format file, such signature shall create a valid and binding obligation of the party executing with the same force and effect as if such signature were an original thereof.

[//SIGNATURE PAGE TO FOLLOW//]

{40961996}                                   3

**IN WITNESS WHEREOF**, the undersigned has duly executed this Unanimous Written Consent of the Members of Wythe Berry Member LLC as of the date first above written.

**MEMBERS:**

YG WV LLC, a New York limited liability company, its managing member

By: _____
Name: Yoel Goldman
Title:    Authorized Signatory

_____
Zelig Weiss