## Exhibit B

# STATE OF NEW YORK

# DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on February 01, 2017.

Brendan W. Fitzgerald
Executive Deputy Secretary of State

Rev. 06/07

# ARTICLES OF ORGANIZATION
## OF
## YG WV LLC

Under Section 203 of the Limited Liability Company Law

**FIRST:**     The name of the limited liability company is:

**YG WV LLC**

**SECOND:**     The county, within this state, in which the office of the limited liability company is to be located is KINGS.

**THIRD:**     The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is:

YG WV LLC
199 Lee Ave #693
Brooklyn, NY 11211

I certify that I have read the above statements, I am authorized to sign these Articles of Organization, that the above statements are true and correct to the best of my knowledge and belief and that my signature typed below constitutes my signature.

Yoel Goldman, Organizer  (signature)
_____
Yoel Goldman , ORGANIZER
199 Lee Ave #693
Brooklyn, NY 11211

**Filed by:**
Yoel Goldman
199 Lee Ave #693
Brooklyn, NY 11211

## FILED WITH THE NYS DEPARTMENT OF STATE ON: 02/01/2017
## FILE NUMBER: 170201010036; DOS ID: 5077789

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## YG WV LLC

This Limited Liability Company Agreement (this "Agreement") of YG WV LLC (the "Company") is entered into as of February 28, 2017, by All Year Holdings Limited, a British Virgin Islands Company, as the sole member of the Company (the "Member").

## W I T N E S S E T H:

WHEREAS, the Company was formed as a limited liability company pursuant to and in accordance with the New York Limited Liability Company Law, as amended from time to time (the "Act") by filing the Company's Articles of Organization with the Secretary of State of the State of New York on January 31, 2017;

WHEREAS, the Member desires to enter into this Agreement to set forth the terms and conditions of the Company.

NOW THEREFORE, in consideration of the investments and of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Member agrees as follows:

## ARTICLE 1

## FORMATION AND TERM

1.1     Name.  The name of the limited liability company is **YG WV LLC**.

1.2     Qualification and Registration.  The authority of **Yoel Goldman**, as organizer, to execute, deliver and file the Articles of Organization of the Company with the Secretary of State of New York is hereby confirmed and such filing is hereby ratified and approved.

1.3     Principal Business Office.  The principal business office of the Company shall be located at 199 Lee Street, Suite 693, Brooklyn, New York 11211 or at such other location as may hereafter be determined by the Member.

1.4     Registered Office and Agent.  The address of the registered office of the Company in the State of New York is 199 Lee Street, Suite 693, Brooklyn, New York 11211.

1.5    <u>Term</u>.  The term of the Company commenced on the date of its formation and shall have a perpetual existence, unless the Company is dissolved before such date in accordance with the provisions of <u>Article IX</u> of this Agreement.

## ARTICLE 2

## PURPOSE AND POWERS OF THE COMPANY

2.1    <u>Purpose</u>.  The Company is formed for the primary purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful activity for which limited liability companies may be formed under the Act, including without limitation, the ownership of 50% of the membership interests in WYTHE BERRY MEMBER LLC, a Delaware limited liability company ("<u>Propco Member</u>"), which entity will own 100% of the membership interests in WYTHE BERRY FEE OWNER LLC, a Delaware limited liability company ("<u>Propco</u>"), which Propco will be the fee owner of that certain property known as 94 North 13th Street, Brooklyn, New York and 121 North 12th Street, Brooklyn, New York (collectively, the "<u>Property</u>"), and which Propco will enter into, as landlord, that certain triple net lease of the Property to Wythe Berry LLC, a New York limited liability company (the "<u>Lease</u>"), and to otherwise engage in any lawful activities necessary and incidental to and/or contemplated by the foregoing.

2.2    <u>Powers</u>.  In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have the power and is hereby authorized to take any and all actions necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purposes set forth in <u>Section 2.1</u>.

## ARTICLE 3

## MEMBERSHIP

3.1    <u>Member</u>.  The Member shall have the sole power and authority to (i) act for or on behalf of, or to bind, the Company, (ii) control the day-to-day management or the operation or control of the business and affairs of the Company, (iii) be an agent of the Company, (iv) transact any business in the name of the Company, and (v) act as manager of the Company.

3.2    <u>Authorized Signatory</u>. The Member hereby appoints Yoel Goldman as the Authorized Signatory of the Company with the power to bind the Company, open bank accounts on behalf of the Company and manage the operations of the Company and Propco Member, all under the direction of and subject to the authority of the Member.

3.3    <u>Capital Contributions</u>. The Member has made contributions of capital to the Company as of the date hereof.  The Member shall not be obligated to make any further capital contributions to the Company but may, in its sole discretion, make additional capital contributions to the Company from time to time.

ARTICLE 4

ALLOCATION OF PROFITS AND LOSSES; DISTRIBUTIONS

4.1     Allocation of Profits and Losses.  The Company's profits and losses shall be allocated in a manner determined by the Member.

4.2     Distributions.  Distributions of cash or property shall be made at such times and in such amounts as determined by the Member.

ARTICLE 5

ADMINISTRATIVE MATTERS

5.1     Sole Member. The Member is the sole member of the Company.  Accordingly, the Company shall be disregarded for U.S. federal income tax purposes and the assets and liabilities and items of income and gain and loss and deduction shall be treated as the assets and liabilities and items of income and gain and loss and deduction of the Member.  Unless otherwise determined by the Member, the fiscal year of the Company shall be the calendar year.

ARTICLE 6

LIABILITY, EXCULPATION AND INDEMNIFICATION

6.1     Liability.  (a) Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the organizer and the Member of the Company (each a "Covered Person" and collectively "Covered Persons") shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being an authorized person or a Member of the Company.

(b)     Except as otherwise expressly required by law, a Member, in its capacity as a Member of the Company, shall have no liability in excess of (i) the amount of its capital contributions to the Company, (ii) its share of any assets and undistributed profits of the Company, (iii) its obligation to make other payments expressly provided for in this Agreement and (iv) the amount of any distributions wrongfully distributed to it.

6.2     Exculpation. (a) No Covered Person shall be liable to the Company, any Member or any other person or entity who has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith in connection with the formation of the Company or acting on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.

{40766452;3}-3

(b)     A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any person or entity as to matters the Covered Person reasonably believes are within such other person or entity's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits, losses or any other facts pertinent to the existence and amount of assets from which distributions to a Member might properly be paid.

6.3     Indemnification. To the full extent permitted by applicable law, each Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 7.3 shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account thereof.

6.4     Expenses. To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person in defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in Section 7.3 hereof.

ARTICLE 7

DISSOLUTION, LIQUIDATION AND TERMINATION

7.1     Events Causing Dissolution. The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following:

(i)     the determination of the Member to dissolve the Company; or

(ii)    the entry of a decree of judicial dissolution under the Act.

7.2     Liquidation. Upon dissolution of the Company, the Member shall carry out the winding up of the Company and shall immediately commence to wind up the Company's affairs; provided, however, that a reasonable time shall be allowed for the orderly liquidation of the assets of the Company and the satisfaction of liabilities to creditors so as to enable the Member to minimize the normal losses attendant upon a liquidation. The proceeds of liquidation shall be distributed in the following order and priority:

{40766452;3}-4

(i)     first, to the creditors of the Company, including any Member if it shall be a creditor to the extent permitted by applicable law, in satisfaction of the liabilities of the Company, whether by payment or by establishment of adequate reserves, except for liabilities for distributions to the Member and any former members;

(ii)     second, to the Member and any former members in satisfaction of liabilities of the Company for distributions; and

(iii)     the balance, if any, to the Member, after giving effect to all contributions, distributions and allocations for all periods.

7.3     Termination. The Company shall terminate when all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company, shall have been distributed to the Member in the manner provided for in this Article IX and the certificate of formation shall have been canceled in the manner required by the Act.

7.4     Claims of the Members. The Member and former members shall look solely to the Company's assets for the return of their capital contributions, and if the assets of the Company remaining after payment of or due provision for all debts, liabilities and obligations of the Company are insufficient to return such capital contributions, the Member and former members shall have no recourse against the Company or any other Member.

7.5     Actions of Subsidiaries. The Company shall not cause or consent to the dissolution, winding up or liquidation of the Company, Propco, Propco Member or any of their respective affiliates without the prior written consent of the Member. The Company has not, and will not, with respect to itself, Propco, Propco Member or to any other entity in which it has a direct or indirect legal or beneficial ownership interest (A) file a bankruptcy, insolvency or reorganization petition or otherwise institute insolvency proceedings or otherwise seek any relief under any laws relating to the relief from debts or the protection of debtors generally, (B) seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian or any similar official for such entity or for all or any portion of such entity's properties, (C) make any assignment for the benefit of such entity's creditors or (D) take any action that might cause such entity to become insolvent; has remained and intends to remain solvent and has maintained and intends to maintain adequate capital in light of its contemplated business operations.

## ARTICLE 8

## MISCELLANEOUS

8.1     Separability of Provisions. Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

8.2     Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement.

8.3     Entire Agreement. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior understandings or agreements between the parties.

8.4     Governing Law. This Agreement shall be governed by, and construed under, the laws of the State of New York (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

8.5     Amendments. This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

8.6     Acknowledgments of the Company. The Company hereby acknowledges and agrees as follows:

8.6.1    The Company recognizes, acknowledges and agrees that the Lender is a wholly separate and distinct Person, separate and distinct from Propco and from the Company, Wythe Berry Member LLC, a New York limited liability company and Wythe Berry LLC, a New York limited liability company (together with Lender, the "Wythe Entities" and each a "Wythe Entity") and their respective shareholders, members, directors, officers, and employees and that no claims of any kind or nature against the Company or any Wythe Entity shall give rise to any claims or defenses against the Lender in its capacity as lender or otherwise or to any claims or defenses in any manner relating to or relevant to the Loan or the Loan Documents or in any manner be admissible in any proceeding relating to the Loan or the Loan Documents or the enforcement thereof. The Company agrees never to institute or cause to be instituted or continue prosecution of, directly or indirectly, derivatively or otherwise, any suit or cause of action or proceeding against the Lender in its capacity as lender or otherwise in contravention of the foregoing.

8.6.2    The Company recognizes, acknowledges and agrees that the relationship created between the Lender and Propco by the Lender making the Loan and Lender's execution, delivery and performance of the Loan Documents is solely and exclusively that of debtor/borrower and creditor/lender. Nothing in the Loan Documents shall be construed to create or give rise to (i) any joint venture, partnership, tenancy in common, or joint tenancy relationship, or any other relationship other than debtor/borrower and creditor/lender, between Lender and Propco or any subsidiary thereof, or (ii) any rights, duties or obligations of the Lender to any of Propco or any subsidiary thereof of any kind or nature except as expressly set forth in the Loan Documents. The Company agrees never to institute or cause to be instituted or continue prosecution of, directly or indirectly, derivatively or otherwise, any suit or cause of action or proceeding against the Lender in its capacity as lender or otherwise in contravention of the foregoing.

8.6.3    The Company waives and releases any and all defenses, affirmative defenses, set-offs, claims, counterclaims or causes of action of any kind or nature which any of the Company or any subsidiary thereof might assert on behalf of itself or any other subsidiary against the Lender

in its capacity as lender, relating to the Loan or to the Loan Documents, or the enforcement by the Lender of its rights and remedies thereunder, to the extent arising out of or relating to the fact and circumstance that any Wythe Entity is providing services to Propco or any other subsidiary thereof; and the Company agrees never to institute or cause to be instituted or continue prosecution of, directly or indirectly, derivatively or otherwise any suit or cause of action or proceeding of any kind or nature whatsoever against the Lender in its capacity as lender in contravention of the foregoing.

8.6.4    The Company recognizes, agrees and acknowledges that, if and to the extent Propco or any subsidiary thereof shall hereafter assert any claims against any or all Wythe Entities under or pursuant documents unrelated to the Loan, no such claims shall give rise to any claim or recourse against the Lender in its capacity as lender, or any other Wythe Entity and the Company hereby waives and releases any such claims against the Lender in its capacity as lender and against any other affiliate of any Wythe Entity; and the Company agrees never to institute or cause to be instituted or continue prosecution of, directly or indirectly, derivatively or otherwise any suit or cause of action or proceeding of any kind or nature whatsoever against the Lender in its capacity as lender in contravention of the foregoing.

8.6.5    The Company, on behalf of itself and any of its subsidiaries hereby agrees not to directly or indirectly assert against any of the Lender or any other Wythe Entity any claim, argument or defense, whether grounded on equitable subordination principles under Section 510 of the United States Bankruptcy Code or under any other section contained in Chapter 5 of the United States Bankruptcy Code, or otherwise, that the relationship of the Lender and Propco as evidenced by the Loan Documents is not solely and exclusively that of debtor/borrower and creditor/lender or that the liens and security interests granted to the Lender as security for the Loan is not fully perfected and enforceable first priority liens and security interests.

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, the undersigned, being the sole Member of the Company, intending to be legally bound hereby, have duly executed this Agreement as of the date first set forth above.

ALL YEAR HOLDINGS LIMITED

By: _____

Name: Joel Grunfeld
Title: Authorized Signatory



February 8, 2017

**Re: YG WV LLC**

Dear Client,

Thank you for choosing **USACORP®** to complete your LLC publishing requirements.

This is to confirm that the LLC publishing process has been initiated. The legal notice of formation will be published pursuant to §206, §1203, §802, or §1306 of the NY State LLC law, once a week for six consecutive weeks in a daily and weekly newspaper designated by the respective county clerk. After said publication, the newspapers will issue affidavits of publication which we will then be filed by our office with the NY Department of State along with requisite documents. Upon approval, an original filing receipt will be issued by the state as confirmation of publication, which brings the publishing process to a close. At that point, both affidavits of publication and the original filing receipt will be mailed to you by our office.

We acknowledge and appreciate the trust you have placed in our company and look forward to serve you with continued courtesy in the future.

We are always available for any questions or comments, call us Toll Free at 866.67.USACORP or email us at legalpublishing@usacorpinc.com.

Sincerely,

**The USACORP® Publishing Team**

325 Division Avenue, Suite 201
Brooklyn, NY 11211

**Tel:** 718.362.4789
**Toll Free:** 844.USACORP

**Email:** service@usacorpinc.com
**Fax:** 718.408.2550

**www.USACORPINC.com**