Kristopher M. Hansen
Nicholas A. Bassett
Jason M. Pierce
Will Clark Farmer
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:     (212) 318-6000
Facsimile:      (212) 319-4090
krishansen@paulhastings.com
nicholasbassett@paulhastings.com
jasonpierce@paulhastings.com
willfarmer@paulhastings.com

*Counsel to Zelig Weiss*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
In re:                                                                    :     Chapter 11
:
ALL YEAR HOLDINGS LIMITED,                       :     Case No. 21-12051 (MG)
:
                Debtors.[1]                                      :
:
Fed. Tax Id. No. 98-1220822                               :
------------------------------------------------------------x

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF ZELIG WEISS TO THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING PROPOSED DISCLOSURE STATEMENT AND THE FORM, MANNER, AND SUFFICEINCY OF NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) APPROVING THE PROPOSED SOLICITATION AND VOTING PROCEDURES, (III) APPROVING FORMS OF BALLOTS, SOLICITATION PACKAGES, AND RELATED NOTICES, (IV) SCHEDULING A CONFIRMATION HEARING AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE DEBTOR'S <u>CHAPTER 11 PLAN, AND (V) GRANTING RELATED RELIEF</u>**

---

[1]  The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

To the Honorable Chief United States Bankruptcy Judge Martin Glenn:

Zelig Weiss ("Weiss") hereby files this limited objection and reservation of rights (the "Objection") with respect to the Debtor's motion to approve the Disclosure Statement [Docket No. 125] (the "Motion").[1] In support of this Objection, Weiss respectfully states as follows:

## PRELIMINARY STATEMENT

1. As described in the proposed Disclosure Statement, the lynchpin of the Debtor's plan is the Investment Agreement dated March 11, 2022 (the "Investment Agreement") between the Debtor and Paragraph Partners LLC (the "Plan Sponsor"), pursuant to which the Debtor seeks to, among other things, transfer its approximately 50% interest in the William Vale hotel (the "William Vale")—admittedly one of the most valuable properties in the Debtor's portfolio—to the Plan Sponsor for $200,000 (the "William Vale Sale").[2] The Disclosure Statement further states that the Debtor engaged in a "robust sales and marketing effort"[3] prior to the execution of the Investment Agreement and that the Investment Agreement "provides the highest and best recovery for all creditors."[4] These and other statements fail to provide adequate information to creditors because they omit key information relating to, among other things, Weiss's challenge to the William Vale Sale and a competing offer he made for the property.

2. Weiss originally developed and conceived of the William Vale and now owns the other half of the hotel alongside the Debtor through his 50% membership interest in Wythe Berry Member LLC ("Member LLC"), which is the sole owner of another entity, Wythe Berry Fee

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

[2] *See Disclosure Statement for Chapter 11 Plan of Reorganization of All Year Holdings Limited,* [Docket No. 124] (the "Disclosure Statement"), at 34 (describing Purchase Price Adjustment and Share Consideration of $200,000).

[3] *Id.,* at 12.

[4] *Id.,* at 2.

2

Owner, LLC ("Fee Owner"), which holds title to the property. In an adversary proceeding filed just prior to this Objection,[5] Weiss asserts that the William Vale Sale is unlawful because it seeks to sell the Debtor's interest in Member LLC (which the Debtor holds through a shell company subsidiary) to the Plan Sponsor without Weiss's consent as required under the Member LLC operating agreement, and also because YGWV has dissolved as matter of New York law. Weiss seeks a declaratory judgment on these issues and an injunction prohibiting the Debtor from consummating the William Vale Sale. A discussion of these issues should be added to the Disclosure Statement so that voting creditors are aware of Weiss's position, which, if accepted by the Court, will affect the ability of the Debtor to consummate the Plan in its current form.

3.  Weiss also objects to the adequacy of the Disclosure Statement insofar as it omits reference to the competing offer of $2.2 million that Weiss made for the Debtor's 50% interest in the William Vale. This offer exceeds the amount proposed to be paid by the Plan Sponsor by more than eleven times, and yet it was not accepted by either the Debtor or the Series C bondholders, who were negotiating the William Vale Sale on the Debtor's behalf. The Disclosure Statement should be modified to reflect both Weiss's earlier $2.2 million offer and his ongoing willingness to acquire the Debtors' interest in the William Vale for that same amount.

4.  Finally, the Disclosure Statement is inadequate to the extent it fails to sufficiently describe the circumstances surrounding the $37 million confession of judgment executed in favor of an affiliate of the Plan Sponsor on the eve of the chapter 11 filing. The Debtor proposes to allow the claim resulting from the confession of judgment in full as a general unsecured claim. Significant questions appear to exist, however, regarding the legitimacy of this judgment, including whether the Debtor is even liable on the debt that purportedly underlies the judgment,

---

[5] See Adv. Proc. No. 22-01115 (Bankr. S.D.N.Y.) (the "Adversary Proceeding").

and the relationship between Yoel Goldman (the Debtor's former principal) and the Plan Sponsor. The Debtor must provide additional information sufficient to answer these questions.

5. Weiss files this limited objection to the Motion to request that the Disclosure Statement be modified to contain these and related additional disclosures. Weiss does not otherwise object to the Disclosure Statement or the proposed solicitation procedures, including the timeline for Plan confirmation. Weiss does, however, reserve all rights in connection with potential objections to the Plan and his rights in the Adversary Proceeding, which he intends to seek to resolve prior to (or, at a minimum, concurrently with) the hearing on Plan confirmation.

## BACKGROUND

### I. Development and Co-ownership of William Vale Hotel

6. As the Debtor notes in the proposed disclosure statement, the William Vale—a luxury hotel property located in Brooklyn, NY—is one of the most valuable properties in the Debtor's portfolio. Weiss originally conceived of and developed the William Vale, transforming what had been a multi-parcel, grossly-contaminated gas holder site into a world-class destination. Weiss later invited Yoel Goldman ("Goldman") to join him in the venture, and the two partnered as co-owners of the property, with each owning his interest in his individual capacity.

7. Title to the William Vale was originally held through Wythe Berry LLC ("WB LLC"), an entity in which Weiss and Goldman each own a 50% membership interest and for which Weiss was (and is) managing member. In 2016, Goldman approached Weiss with a proposed financing transaction involving the transfer of title to the Hotel Property from WB LLC to Fee Owner, a wholly-owned subsidiary of Member LLC.[6] The transaction further contemplated that

---

[6] *See* Disclosure Statement, at 251 (organizational chart reflecting Debtor's purported interest in William Vale hotel).

4

All Year and Weiss would, in turn, co-own Member LLC, with All Year serving as its managing member, and that Fee Owner would lease the hotel back to WB LLC.

8. Goldman initially proposed to hold his 50% interest in Member LLC directly through All Year. Goldman later changed his mind and decided to use a new shell company, YG WV LLC ("YGWV"), to hold All Year's interest in the hotel. Accordingly, shortly before closing of the refinancing, All Year formed YGWV as its wholly-owned subsidiary and caused title to an approximately 50% membership interest in Member LLC to be held by YGWV.

9. The Member LLC Limited Liability Company Agreement ("Member LLC Agreement")—all essential terms of which were drafted prior to YGWV's existence—contains a provision prohibiting either party from transferring its interest in Member LLC to a third party without the other's consent. Delaware law contains similar restrictions on the ability of a member of a Delaware limited liability company from transferring its membership interest to a third party.

## II. Bankruptcy Filing and Efforts by Weiss to Purchase Debtor's 50% interest in the William Vale

10. On December 14, 2021, All Year initiated the above-captioned chapter 11 case. One of the triggering events for the filing, according to the Disclosure Statement, was the entry of a $37 million confession of judgment against the Debtor in favor of Taz Partners, LLC ("Taz"), "an affiliate of the Plan Sponsor."[7] The Debtor says it commenced this case shortly after the filing of the judgment out of fear that Taz could levy the judgment against the Debtor's assets.

11. Both prior to and after the commencement of the case, discussions occurred between All Year (indirectly, through bankruptcy counsel for Mishmeret Trust Company Ltd. ("Mishmeret")) and Weiss based on Weiss's proposal to purchase All Year's membership interest

---

[7] Disclosure Statement, at 23.

5

in YGWV. These negotiations culminated in Weiss presenting a draft agreement on or about January 14, 2022.

12.     Shortly thereafter, All Year advised counsel for Weiss during a telephone conversation that it would not sell its interest in YGWV to Weiss, but would instead sell him YGWV's interest in Member LLC. The stated reason for structuring the transaction in this revised manner was that it would not require approval of this Court. The parties thereafter negotiated a final purchase agreement based on this new structure.

13.     Subsequently, however, in early March 2022, All Year reversed course and advised Weiss that the Court's approval for this transaction *was* still required. Weiss at this point asked to return to the original offer to purchase All Year's interest in YGWV rather than YGWV's interest in Member LLC (as the only (stated) reason for rejecting this original transaction structure was that it would require this Court's approval), but All Year said this was not a possibility. The parties, accordingly, reached a revised agreement pursuant to which YGWV would sell Weiss its interest in Member LLC subject to Court approval.

### III.     Unlawful Scheme to Transfer Debtor's 50% In William Vale to Plan Sponsor

14.     Prior to the time All Year filed the Plan, All Year decided to abandon the transaction with Weiss, and, instead, in or about April 2022, agreed to sell All Year's interest in YGWV to Paragraph, without Weiss's consent, for essentially the same consideration offered by Weiss. Upon information and belief, All Year structured the transaction in this manner—i.e., as an indirect sale of All Year's 100% interest in YGWV (which All Year had told Weiss was not a possibility)— in an effort to circumvent the express restrictions on the transfer of membership interests set forth in the Member LLC Agreement and under Delaware Law. All Year now seeks approval of this transaction as part of the Investment Agreement under the Plan.

6

15. Based on these and other facts and circumstances—including that YGWV has at all times acted as All Year's alter ego and that it has been dissolved as a matter of New York limited liability company law—Weiss filed the Adversary Proceeding asserting that the proposed transfer of YGWV's membership interest to the Plan sponsor is unlawful and void as a matter of law. Weiss therefore seeks an injunction in the Adversary Proceeding preventing the Debtor from consummating the proposed transaction and also preventing it from continuing to exercise managerial control (directly or indirectly) of Member LLC.

## LIMITED OBJECTION

16. Section 1125(a)(1) of the Bankruptcy Code requires a disclosure statement to contain "adequate information" that "would enable . . . a hypothetical investor [typical of the holders of claims or interests in the case] . . . to make an informed judgment about the plan."[8] Because creditors and the Court alike must rely on information in a disclosure statement, the "importance of full disclosure . . . cannot [be] overemphasize[d]." *Kunica v. St. Jean Financial, Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988)); *see also In re Galerie Des Monnaies of Geneva, Ltd.*, 55 B.R. 253, 259 (Bankr. S.D.N.Y. 1985) ("The preparing and filing of a disclosure statement is a most important step in the reorganization of a Chapter 11 debtor. It is relied on by both the creditors of the debtor before they vote on the plan of reorganization, and by the bankruptcy court before approving it.") (citation omitted).

17. In its current form, the Disclosure Statement fails to include adequate information because it omits critical disclosures concerning the fundamental issue of the disposition of one of the Debtor's most valuable interests, the William Vale, and other important information.

---

[8] *In re Avianca Holdings S.A.,* 632 B.R. 124, 129 (Bankr. S.D.N.Y. 2021) (quoting 11 U.S.C. § 1125(a)(1)).

7

A.   **Disclosure Statement Provides Inadequate Disclosures Regarding Weiss's Challenge to Proposed Transfer of William Vale Interest**

18.   As discussed above, the Plan, by the Investment Agreement, proposes to transfer the Debtor's indirect interest in the William Vale—which the Debtor values at no less than $25 million in its schedules—to the Plan Sponsor for a nominal sum, $200,000. The Debtor must amend the Disclosure Statement to provide Weiss's position regarding the disputed transfer, as set forth in the Adversary Proceeding. Specifically, the Debtor must inform creditors and stakeholders that Weiss disputes the legality of the proposed transfer, including because it violates the transfer restrictions set forth in the Member LLC Agreement and because YGWV has been dissolved as a matter of law and, therefore, is incapable of effectuating the proposed transfer. Absent further disclosure by the Debtor regarding the Adversary Proceeding, creditors will be unable to make an informed decision on voting for or against the proposed Plan.

B.   **Disclosure Statement Provides Inadequate Disclosures Regarding Weiss's Proposal for Purchase of YGWV Interest**

19.   Similarly, the Debtor discloses nothing to creditors regarding its purportedly robust marketing process for the William Vale. As discussed above, Weiss previously submitted a bid to acquire the Debtor's 50% interest in the William Vale for $2.2 million, and he remains willing to acquire the Debtor's interest for that amount. The Debtor should be required to amend the Disclosure Statement to inform stakeholders of Weiss's bid and to explain the Debtor's reasoning for electing to accept the significantly lower purchaser price of only $200,000 offered by the Plan Sponsor. Notably, while the Plan Sponsor has also entered into an agreement with Mishmeret to acquire the outstanding bonds secured by a mortgage on the hotel, that agreement (which has an outside closing date of July 24, 2022, according to the Disclosure Statement) is not contingent on the Plan Sponsor also acquiring the Debtor's interest in the William Vale (which, as discussed

above and in the Adversary Proceeding, would violate the Member LLC Agreement and applicable law in any event). Accordingly, the Debtor remains free to sell its interest in the hotel to Weiss.

20.    Relatedly, the Disclosure Statement is inaccurate insofar as it suggests a break-up fee would be payable to the Plan Sponsor in the event the William Vale Sale to the Plan Sponsor is not consummated. As the Debtor notes in the Disclosure Statement, the Investment Agreement required the Debtor to file a motion seeking approval of the Break-Up Fee and Expense Reimbursement protections, which motion was approved [Docket No. 85] (the "Break-Up Fee Order") on April 19, 2022. The Debtor fails to explain, however, that the version of the Investment Agreement approved by the Court expressly *excluded* the Debtor's interest in the William Vale from the assets to be acquired by the Plan Investor. It was not until two days after the entry of the Break-Up Fee Order, on April 21, 2022, that the Debtor entered into Amendment No. 1 to Investment Agreement and committed the Debtor to sell the William Vale to the Plan Sponsor for $200,000 in the event the Plan Sponsor closes on its separate transaction to acquire the outstanding bonds. *See* Disclosure Statement, at 235 (Amendment No. 1, dated April 21, 2022). Accordingly, no break-up fee has been approved by the Court as it relates to the William Vale Sale. This information, too, must be made available to creditors voting on the Plan.

### C.    Disclosure Statement Should Provide Additional Information Relating to the Taz Confession of Judgment and Goldman's Relationship with Plan Sponsor

21.    As noted above, the Disclosure Statement provides that one event immediately precipitating the chapter 11 filing was the entry of a $37 million confession of judgment, dated December 9, 2021, which the Debtor claims it first found out about on December 13, 2021. The Debtor concedes that Taz is affiliated with the Plan Sponsor. Given this relationship, as well as the timing of the judgment, the Disclosure Statement must provide significantly more information to the Debtor's stakeholders regarding this potentially concerning event and related issues.

9

22. As an initial matter, the Disclosure Statement as presently drafted provides no discussion whatsoever regarding the legitimacy of the judgment or the basis upon which it was entered. Substantial questions exist in this regard. The judgment states that it was signed by Goldman on December 14, 2020, on behalf of both himself *and the Debtor*, as defendants/judgment creditors. The affidavit that Goldman submitted in December 2020 in support of the judgment, however, says it is based on "a loan that was extended by [Taz] *to Yoel Goldman*." The affidavit does not say anything about *All Year* purportedly being liable on the loan, nor does it attach a copy of the underlying promissory note. Also suspect is the fact the judgment was not notarized until October 29, 2021, which is (i) more than ten months after Goldman executed his affidavit in support in December 2020, (ii) more than nine months after the underlying promissory note purportedly defaulted in January 2021, and (iii) less than two months before the Debtor filed this case out of purported fear of enforcement of the judgment.

23. The Disclosure Statement also contains no information surrounding the origin of the alleged loan from Taz, including why Goldman needed $35 million at that time, what he did with the money, and what effect the circumstances surrounding the loan may have had both on the timing of the entry of the confession of judgment and on the nature of Goldman's and All Year's ongoing relationship with Taz and its principals. The Disclosure Statement should be supplemented with additional information sufficient to answer these important questions.

24. In addition, the Disclosure Statement contains very little, if any, discussion of the December 10, 2020 standstill agreement the Debtor disclosed on the Tel Aviv Stock Exchange, and the restrictions it imposed on Goldman's authority to act on behalf of, or bind, the Debtor after that date, including his ability to confess to the Taz judgment. Nor does the Disclosure Statement provide critical information concerning how "the Debtor's Board oversaw its restructuring with

the protection of an agreement with [Goldman] under which he could not change the Board or take actions that would adversely impact the [purported public reorganization] process."[9] The Debtor should provide more detail regarding the agreement it reached with Goldman and explain the payments he purportedly authorized of obligations he personally guaranteed after he previously took control of the board.[10]

25.    Despite the Debtor's statements in the Disclosure Statement[11] and elsewhere that Goldman no longer has any affiliation with the Debtor or its creditors (including Taz), Weiss understands that Goldman may have an ongoing relationship with the Plan Sponsor. For example, in January 3 and 5, 2021, the Plan Sponsor or an investor group affiliated with the Plan Sponsor submitted restructuring proposals (both filed publicly filed on the Tel Aviv Stock Exchange) that included a provision providing for an ILS 20 million contribution by Goldman as consideration for a full exemption and release with respect to certain claims. The January 5, 2021 proposal included revisions and additions which stated that the investor group (e.g. the Plan Sponsor) is unrelated to Goldman; however, it also noted that one group-member is an attorney who has represented creditors and partners of Goldman.

26.    Based on all of these issues, the Disclosure Statement must be modified to, at a minimum answer basic questions such as (i) whether the Debtor is liable on the promissory note purportedly underlying the confession of judgment, (ii) what led to Goldman's entry into the note with Taz, (iii) whether the claim that such note has not been repaid is accurate, (iv) whether any defenses to repayment exist, and (v) whether, assuming the Debtor is an obligor on the note, the

---

[9]    Disclosure Statement, 26-27.

[10]   *Id.*

[11]   Disclosure Statement, at 19 ("To the best of the Debtor's knowledge and belief, except as set forth herein, the Sole Shareholder does not have any affiliation with any of the Debtor's creditors.").

Debtor received value for, and was solvent when, incurring the obligation.  The Debtor must also provide additional detail as to the nature of the "affiliation" of Taz and the Plan Sponsor, the timing of the judgment's entry, and whether Goldman has any ongoing relationship with the principals of the Plan Sponsor and has exerted any influence over the Debtor's sale process. [12]

## CONCLUSION

27.     For the reasons discussed above, the Disclosure Statement fails to provide creditors relevant information to which they are entitled in determining whether to vote for or against the Plan.  Weiss intends to suggest revisions to the Disclosure Statement to address these issues, to the extent possible, on an informal basis prior to the hearing on the Disclosure Statement.  Unless such revisions are made, Weiss submits that the Disclosure Statement should not be approved.

## RESERVATION OF RIGHTS

28.     The issues raised herein are solely those Weiss has identified at this time regarding the adequacy of information in the Disclosure Statement.  Zelig Weiss reserves all objections to the proposed Plan and all other rights in the Adversary Proceeding and in this case more generally, including the right to object to any pending or future motion, contested master, letter, statement, and/or other filing with the Court.

[*Remainder of page intentionally left blank*]

---

[12]  Weiss reserves all of his rights to raise these and other issues, including the other issues discussed herein, and to take discovery with respect thereto, in connection with an objection to the confirmation of the Plan

Dated: July 5, 2022
    New York, New York

*/s/ Nicholas A. Bassett*

Kristopher M. Hansen
Nicholas A. Bassett
Jason M. Pierce
Will Clark Farmer
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:    (212) 318-6000
Facsimile:    (212) 319-4090
krishansen@paulhastings.com
nicholasbassett@paulhastings.com
jasonpierce@paulhastings.com
willfarmer@paulhastings.com

*Counsel to Zelig Weiss*