CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 655-6000
Michael Friedman
Stephen R. Tetro, II
Aaron M. Krieger

*Counsel to the Notes Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                        :

In re                                           :        Chapter 11
                                                        :

**ALL YEAR HOLDINGS LIMITED,**    :        Case No. 21-12051 (MG)
                                                        :
                  Debtor.[1]               :
                                                        :        Re: Docket No. 141

Fed. Tax Id. No. 98-1220822         :
------------------------------------------------------------X

### LIMITED REPLY OF MISHMERET TRUST COMPANY LTD. TO LIMITED OBJECTION AND RESERVATION OF RIGHTS OF ZELIG WEISS

        Mishmeret Trust Company Ltd. (the "**Notes Trustee**"), on behalf of the holders of various series of notes (the "**Noteholders**") issued by All Year Holdings Limited (the "**Debtor**"), hereby submits this Limited Reply (the "**Reply**") to the *Limited Objection and Reservation of Rights of Zelig Weiss to the Debtor's Motion for Entry of an Order (I) Approving Proposed Disclosure Statement and the Form, Manner, and Sufficiency of Notice of the Disclosure Statement Hearing, (II) Approving the Proposed Solicitation and Voting Procedures, (III) Approving Forms of Ballots, Solicitation Packages, and Related Notices, (IV) Scheduling a Confirmation Hearing*

---

[1]    The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

*and Establishing Notice and Objection Procedures for Confirmation of the Debtors Chapter 11 Plan, and (V) Granting Related Relief [ECF No. 141]* (the "**Limited Objection**").[2]

### PRELIMINARY STATEMENT

1. The Limited Objection filed by Weiss cannot be read in isolation as a sincere effort to ensure that this Court and relevant parties in interest receive adequate information about the Debtor's proposed Plan.

2. Rather, the Limited Objection must be read in context with: (i) Weiss' contemporaneously-filed Adversary Complaint, which advances highly questionable and legally indefensible positions; (ii) Weiss' bizarre and both time-and-expense-wasting motion practice in this case thus far;[3] and (iii) the factual record of Weiss' interactions with the Debtor and the Notes Trustee outside of this Court, detailed below, and, in this context, should instead be rightly seen as just the latest salvo in Weiss' ongoing attempt to enrich himself and avoid the consequences of his own actions at the clear expense of the Debtor, the Noteholders, and all other relevant parties.

3. Put plainly, Zelig Weiss seeks control of the William Vale as a way out of his legal troubles—namely the fact that he owes millions of dollars in unpaid rent, improperly and illegally diverted revenues from the William Vale to himself, flouted court orders and now faces

---

[2] Immediately prior to filing the Limited Objection, Zelig Weiss ("**Weiss**") commenced an adversary proceeding (the "**Adversary Proceeding**") by filing a complaint (the "**Adversary Complaint**") for declaratory and injunctive relief, pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure, seeking to enjoin the Debtor from transferring its interest in YG WV to the Plan Sponsor in accordance with the Investment Agreement and Plan. The Adversary Proceeding is titled *Zelig Weiss v. All Year Holdings Limited, Wythe Berry Member LLC, and YG WV LLC*, Adv. Pro. 22-01115 (Bankr. S.D.N.Y. July 5, 2022).

[3] As discussed in more detail in *Debtor's Reply in Support of Disclosure Statement and Solicitation Procedures Motion and in Response to Limited Objection and Reservation of Rights of Zelig Weiss* [ECF No. 149] (the "**Debtor's Reply**"), Weiss filed both a motion to lift the automatic stay [ECF No. 94] (the "**Lift Stay Motion**") and an objection to the Debtor's debtor-in-possession financing motion [ECF No. 106] (the "**DIP Objection**"), which were both withdrawn without explanation, but not until after forcing the Debtor, the Notes Trustee, very likely the United States Trustee and, not least of all, this Court, to expend significant time and/or expense in considering such filings and potential responses thereto that Weiss clearly felt were frivolous enough to abandon—without any form of resolution—before being made to explain himself in Court.

contempt proceedings. *See Wythe Berry Fee Owner LLC v. Zelig Weiss et al.*, Index No. 514152/2021 (N.Y. Sup. Ct.).

        4.      Knowing that his arguments in the Adversary Proceeding fail as a matter of black-letter law, Weiss instead hopes that this Limited Objection will gain him leverage over an otherwise smooth disclosure and Plan process through delay and obfuscation. The Notes Trustee is confident that this Court will see through his scheme and respectfully requests the Court approve the Debtor's Disclosure Statement[4] and the Solicitation Procedures Motion[5] as amended in the manner described in the Debtor's Reply.

## ADEQUACY OF THE DEBTOR'S DISCLOSURES

        5.      The Notes Trustee does not agree that the Disclosure Statement filed by the Debtor contained inadequate information when filed. Nevertheless, the Notes Trustee supports supplementing the Disclosure Statement as the Debtor deems necessary and appropriate to ensure all parties in interest are provided with appropriate and fully adequate information regarding the Plan and Investment Agreement. To that end, the Notes Trustee has reviewed and approves of the additional disclosures proposed by the Debtor in the Debtor's Reply and shares in the Debtor's pleasure that the only objection filed to the Disclosure Statement was the Limited Objection, a fact that highlights further the baselessness of the balance of Weiss' assertions.

---

[4] *Disclosure Statement for Chapter 11 Plan of Reorganization of All Year Holdings Limited* [ECF No. 124] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Disclosure Statement**")

[5] *Motion of Debtor for Entry of an Order (I) Approving Proposed Disclosure Statement and the Form, Manner, and Sufficiency of Notice of the Disclosure Statement Hearing, (II) Approving the Proposed Solicitation and Voting Procedures, (III) Approving Forms of Ballots, Solicitation Packages, and Related Notices, (IV) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures for Confirmation of the Debtor's Chapter 11 Plan, and (V) Granting Related Relief* [ECF No. 125] (the "**Solicitation Procedures Motion**")

3

## FACTUAL HISTORY

6. The William Vale is a prominent and well-regarded luxury hotel in Williamsburg, Brooklyn. Far from the process Weiss describes in the Limited Objection, both the Debtor and the Notes Trustee worked tirelessly and in good faith over a period of more than a year to achieve a value-maximizing transaction for the William Vale.

7. During that time, the Notes Trustee engaged with multiple potential purchasers, secured four proposals and two final binding offers to purchase the existing loan and mortgage on the William Vale (the "**Loan and Mortgage**"), which, by this point, had been assigned by the Debtor to the Series C Noteholders.

8. Weiss knows about these efforts **because he participated in those negotiations** and, in fact, his was one of the two final binding offers. His, however, was not the winning bid.

9. But Weiss is not only a disgruntled bidder—though he is that too. To fully appreciate the Limited Objection's distortions and to understand Weiss' total and self-interested entanglement with the William Vale, a review of the commercial efforts surrounding the Loan and Mortgage, as well as Weiss's ongoing campaign to divert the William Vale's revenue to his own pockets, is necessary, and follows.

**The William Vale Litigation**

10. To the best of the Notes Trustee's understanding, for many years and through various nested corporate entities, Weiss has administered the business operations of the William Vale. One such entity, Wythe Berry LLC ("**Wythe Lessee**") is the lessee of the William Vale property under a ground lease (the "**Lease**") with Wythe Berry Fee Owner LLC ("**Wythe Berry Fee Owner**"), the direct owner of the property.

4

11. In **February 2021**, Weiss, through Wythe Lessee, failed to make a semi-annual rent payment of $7,500,000.00, defaulting on his obligations under the Lease.

12. Then, in **August 2021**, when a further $7,500,000.00 payment came due, Weiss again refused to pay rent, claiming that the COVID-19 pandemic had so disrupted business operations that he was *completely excused* from rent obligations. This, despite the fact that the William Vale was, by that time, experiencing rising occupancy rates and revenues were again flowing from its business operations.

13. As a result of Weiss's refusal to pay rent, Wythe Berry Fee Owner, the direct owner of the property and the other party with Wythe Lessee to the Lease, was forced to sue Weiss in New York State Supreme Court. *See* Compl., Docket No. 2, *Wythe Berry Fee Owner LLC v. Zelig Weiss et al.*, Index No. 514152/2021 (N.Y. Sup. Ct.).

14. We pause here to remind the Court that Wythe Berry Fee Owner is 100% owned by Wythe Berry Member LLC ("**Wythe Berry Member**"), which in turn is owned 50% by YG WV LLC ("**YG WV**") and 50% by Weiss (with YG WV as Managing Member) and that YG WV itself is 100% owned by the Debtor. It is the "sale" of the Debtor's 100% ownership stake in YG WV that is the subject of Weiss' baseless Adversary Complaint. Given Weiss' position on both sides of the Lease, as both lessee and as indirect owner of 50% of the lessor, the only thing preventing Weiss from self-dealing and dismissing the Wythe Berry Fee Owner's suit against Wythe Lessee— thereby improperly converting funds that rightly belong to the Debtor's estate into a windfall for Weiss himself—is the fact that the Debtor, and not Weiss, controls Wythe Berry Member.

15. For more than one year, Weiss has continued his bitter and protracted legal battle in New York State Court, which eventually led to a court order directing Wythe Lessee to

pay $7,500,000 in use and occupancy payments as compensation for operating and benefitting from a luxury hotel operating rent-free. The court further ordered a number of third-parties, all entities controlled by Weiss, to respond to subpoenas and deliver basic accounting and business records to Wythe Berry Fee Owner. To this day, Weiss has refused to comply with that order, having not produced a single page of document discovery in nearly a year of litigation, all the while pocketing the revenues from the William Vale for himself. Contempt proceedings for Weiss's misconduct were initiated in New York State Court on June 6, 2022. *See* Order to Show Cause, Docket No. 259, *Wythe Berry Fee Owner LLC v. Zelig Weiss et al.*, Index No. 514152/2021 (N.Y. Sup. Ct.).

**The Sale of the Loan, Mortgage and Shares**

16. In **August 2021**, shortly after Wythe Berry Fee Owner was forced to commence its suit against Wythe Lessee, the Notes Trustee, having been assigned the Loan and Mortgage from the Debtor in **March 2021**, began exploring a sale of the Loan and Mortgage. By **September 2021**, the Notes Trustee had received two promising bids.

17. In **October 2021**, Weiss, while simultaneously refusing to pay millions of dollars in back rent and being sued in state court, submitted his own proposal for a purchase of the Loan and Mortgage. On **October 31, 2021**, Weiss revised his bid for the purchase of the Loan and Mortgage to include the purchase of the Debtor's ownership stake in Wythe Berry Member, the purchase of which would render Weiss the sole owner of Wythe Berry Member and, by extension, the William Vale.

18. Negotiations with Weiss pressed on for several months, and, by **January 15, 2022**, Weiss and the Notes Trustee had substantially advanced a draft Mortgage Purchase and Sale Agreement.

19. On **February 7, 2022**, the Notes Trustee received a proposal to purchase the Loan and Mortgage from the Plan Sponsor.

20. Over the next several months the Notes Trustee and Weiss, on the one hand, and the Notes Trustee and the Plan Sponsor, on the other, engaged in parallel and competing negotiations. The parties exchanged revised proposals, and, after several meetings and diligent consideration, both Weiss and the Plan Sponsor submitted final bids. On **May 8, 2022**, the Series C Noteholders voted to reject Weiss's proposal and approved the Plan Sponsor's proposal.

### ARGUMENT

21. Against this backdrop Weiss casts himself as an innocent co-owner being forced into business with a stranger (the Plan Sponsor). That is simply false. Rather, Weiss seeks control of the William Vale as a way to avoid repaying millions of dollars in rent and being held accountable for diverting William Vale revenues to himself, and to avoid consequences for having flouted court orders through imminent contempt proceedings.

22. Weiss filed the Limited Objection (and the Adversary Complaint) to obstruct the change of ownership of the William Vale in a desperate attempt to either improperly and illegally install himself as controlling member of Wythe Berry Member, or simply to gain leverage where otherwise he has, and should have, none. His arguments for doing so are completely unsupported by law.

23. **First**, and most egregiously, Weiss misreads New York Limited Liability Company Law § 701(b), contending that the Debtor's bankruptcy terminated its 100% membership interest in YG WV and that, therefore, YG WV has been statutorily dissolved. Here is what § 701(b) *actually* says:

> [t]he . . . bankruptcy or dissolution of any member . . . **shall not cause the limited liability company to be dissolved** or its affairs to be wound up,

7

>  and upon the occurrence of any such event, **the limited liability company shall be continued without dissolution**

N.Y. LIMIT. LIAB. CO. § 701(b) (emphasis added). Weiss puts New York law on its head to read the opposite of what it says. Moreover, even if Weiss's strained interpretation were correct (which it is plainly not), proper application of the Bankruptcy Code would prohibit the result he seeks. *See In re Prebul*, 11-CV-214, 2012 WL 5997927, at *11 (E.D. Tenn. Nov. 30, 2012) ("[Section] 541 renders inapplicable termination or modification of an interest solely due to a debtor's bankruptcy").

24. **Second**, Weiss challenges the Plan as violating an assignment restriction in the Wythe Berry Member operating agreement, to which Weiss and YG WV are parties, but to which the Debtor is not. Under the Plan, the Debtor does not assign anything and, to the extent that the Plan can be said to result in a transfer of any property, such property would expressly be the Debtor's ownership interest in YG WV and not any interest in Wythe Berry Member. The Debtor cannot violate an anti-assignment provision in a contract to which it is not a party. *See Borealis Power Holdings Inc. v. Hunt Strategic Util. Inv., L.L.C.*, 233 A.3d 1, 10 (Del. 2020) (declining to bind an "upstairs equity holder" to transfer restrictions in an indirect subsidiary—the relevant entities here are incorporated in Delaware).

25. **Third**, and equally unavailing, is Weiss's argument that the Debtor's filing of a chapter 11 bankruptcy petition constituted an impermissible assignment "to the estate." This theory, known as the "separate entity doctrine," was discarded decades ago when the Supreme Court held that a debtor-in-possession is a continuation of the pre-petition debtor and not an assignee of the pre-petition debtor's assets. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition"); *see also In re Ontario Locomotive & Industrial Ry. Supplies*

8

*Inc.*, 126 B.R. 146, 147 (Bankr. W.D.N.Y. 1991) (explaining that *Bildisco* "laid to rest the 'separate entity' doctrine for all time."). Thus, no "assignment" took place upon the commencement of the present chapter 11 case that could somehow violate the provisions of either the Wythe Berry Member or the YG WV operating agreements.

## CONCLUSION

26. Weiss's attempt to disrupt approval of the Debtor's Disclosure Statement, and ultimately consummation of the Plan, is the result of sour grapes—and an attempt to avoid the termination of the Lease and the need to pay damages both already fixed and likely yet to accrue in connection with the New York State Court proceeding.

27. Weiss has had many opportunities to negotiate a purchase of the Loan, the Mortgage and the Debtor's indirect ownership of the William Vale, but, ultimately, his proposals were unsuccessful—just as his attempts to escape his obligations to pay rent were unsuccessful, succeeding only in delay of the inevitable. If these efforts have failed, it is no one's fault but his own and, for the reasons articulated above and in the Debtor's Reply, the Notes Trustee respectfully requests the Court approve the Debtor's Disclosure Statement and the Solicitation Procedures Motion as amended in the manner described in the Debtor's Reply.

Dated: July 15, 2022
      New York, New York

                                             /s/ *Michael Friedman*
                                             CHAPMAN AND CUTLER LLP
                                             1270 Avenue of the Americas
                                             New York, New York 10020
                                             Telephone: (212) 655-6000
                                             Michael Friedman
                                             Stephen R. Tetro, II
                                             Aaron M. Krieger

                                             *Counsel to the Notes Trustee*