

1(202) 551-1902
nicholasbassett@paulhastings.com

**Via Email and ECF**

July 18, 2022

The Hon. Martin Glenn
U.S. Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004-1408

**Re:     In re All Year Holdings Limited, Case No. 21-12051 (MG)**

Dear Judge Glenn:

We are counsel to Zelig Weiss ("Mr. Weiss") in the above-referenced chapter 11 case of All Year Holdings Limited (the "Debtor"). Mr. Weiss holds a 50% membership interest in the Debtor's indirect subsidiary, Wythe Berry Member LLC ("Member LLC"), which in turn owns and controls 100% of Wythe Berry Fee Owner LLC ("Fee Owner"), which owns the William Vale Hotel. The other 50% interest in Member LLC is purportedly presently held by the Debtor's wholly-owned subsidiary, YG WV LLC ("YGWV").

On July 5, Mr. Weiss filed a limited objection and reservation of rights [Docket No. 141] (the "Limited Objection") to the Debtor's *Motion for Entry of an Order (I) Approving Proposed Disclosure Statement and the Form, Manner, and Sufficiency of Notice of the Disclosure Statement Hearing, (II) Approving the Proposed Solicitation and Voting Procedures, (III) Approving Forms of Ballots, Solicitation Packages, and Related Notices, (IV) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures for Confirmation of the Debtor's Chapter 11 Plan, and (V) Granting Related Relief* [Docket No. 125] (the "Solicitation Procedures Motion"), addressing a few specific topics on which the proposed disclosure statement (the "Disclosure Statement") failed to provide adequate information, including (i) the adversary proceeding (Adv. Pro. No. 22-01115, the "Adversary Proceeding") that Mr. Weiss commenced seeking to challenge certain proposed transactions between the Debtor and the Sponsor;[1] (ii) the competing bid that Mr. Weiss made for the Debtor's equity interest in the William Vale Hotel (the "YGWV Equity"); and (iii) the relationship between the Debtor and the Sponsor, including as it relates to the questionable confession of judgment entered in favor of TAZ Partners LLC ("Taz") shortly before the petition date.

On July 15, the Debtor and Mishmeret Trust Company Limited (the "Notes Trustee") submitted reply briefs[2] purportedly in response to the Limited Objection. However, instead of limiting their Replies to responding to the disclosure issues raised by Mr. Weiss, the Debtor and the Notes Trustee improperly used their filings primarily to pre-litigate the Adversary Proceeding and/or to present a misleading narrative to the Court regarding Mr. Weiss, with the apparent intent of tarnishing his image and reputation—here and in Israel—in advance of further litigation. To the extent the Debtor does address Mr. Weiss's issues with the Disclosure Statement, many of its proposed additions and revisions are self-serving, factually inaccurate, and/or introduce confusion as to the nature of the transactions proposed to be implemented by the Plan.

---

[1]     Capitalized terms used but not defined herein shall have the meanings given to them in the Amended Disclosure Statement [Docket No. 151, Ex. 1 - Redline].

[2]     *See Debtor's Reply in Support of Disclosure Statement and Solicitation Procedures Motion and in Response to Limited Objection and Reservation of Rights of Zelig Weiss* [Docket No. 149] (the "Debtor Reply"); *Limited Reply of Mishmeret Trust Company Ltd. to Limited Objection and Reservation of Rights of Zelig Weiss* [Docket No. 150] (the "Trustee Reply," and collectively with the Debtor Reply, the "Replies").



The Hon. Martin Glenn
July 18, 2022
Page 2

Mr. Weiss will not respond to all the statements in the Replies that simply are not relevant to the Disclosure Statement hearing, such as their lengthy arguments on the merits of the Adversary Proceeding and their allegations surrounding the pending state court litigation involving Mr. Weiss and Fee Owner; indeed, all such statements should be disregarded by the Court at this stage.  It suffices to say that Mr. Weiss is confident in his position in both litigations and looks forward to addressing each at the appropriate time[3] and in the appropriate forum.[4]  Mr. Weiss also looks forward to exploring and pressing his plan objections, which he believes will result in the Debtor being required to implement a full and fair sale process that actually maximizes value for the YGWV Equity and related assets.[5]

For purposes of tomorrow's hearing, Mr. Weiss believes the Court would benefit from receiving a preview in advance the issues that remain outstanding with respect to issues Weiss raised in his objection to the Disclosure Statement.  These issues are identified below.[6]

**<u>Debtor's Revised Description of Plan's Transactions is Inconsistent With Underlying Agreements and Irrelevant to its Purported Defense to Weiss's Adversary Proceeding</u>**

In the Adversary Proceeding, Mr. Weiss contends that the Plan impermissibly transfers the YGWV Equity to the Sponsor.  The Debtor responds to this claim in its reply by stating that "***no [plan] provision exists***" in which the Debtor "will assign anything, including its direct interest in YG WV or its indirect interest in Wythe Berry Member."  Debtor Reply ¶ 6 (emphasis in original).  However, the original version of the Disclosure Statement, as well as the plain terms of the Plan Investment Agreement, which is incorporated into the Plan and will be approved as part of Plan confirmation, say just the opposite.

The Disclosure Statement originally stated that the Debtor will be "***transfer[ing] [its] direct interest in YGWV"*** *to the Sponsor*.  Disclosure Stmt., § IV.A.9 [Docket No. 124 at 40] (emphasis added).  This statement is consistent with the Plan Investment Agreement, which explicitly and unambiguously provides that "the Plan shall provide for the automatic transfer of [the YGWV Equity] to the [Sponsor]."  *See*

---

[3]     The Debtor asserts that its answer to the Adversary Proceeding is due on August 15, 2022.  However, Mr. Weiss served the initial summons, dated July 6, 2022, on the Debtor on July 6, thus establishing an answer deadline of August 5, 2022, under Federal Rule of Bankruptcy Procedure 7012.  Given the parties' telephonic conference this afternoon, Mr. Weiss is hopeful the parties can come to agreement on a schedule for the Adversary Proceeding that is most efficient for the Court and the parties.

[4]     To the extent the Debtor or the Notes Trustee suggests in their filings that Mr. Weiss has personally been held in contempt in the state court litigation, that assertion is untrue.

[5]     Mr. Weiss reserves all rights regarding his future Plan objection, including to the extent any issues discussed herein would be asserted in his Plan objection.

[6]     Mr. Weiss appreciates the Debtor's additional disclosures summarizing the Adversary Proceeding, acknowledging that Mr. Weiss remains interested in purchasing the YGWV Equity, and clarifying the extent of the proposed Break-Up Fee.  Following a telephonic conference between counsel to Mr. Weiss and counsel to the Debtor this afternoon, Mr. Weiss believes that the parties may be able to resolve some of his issues with the Amended Disclosure Statement in advance of tomorrow's hearing by indicating that Mr. Weiss disagrees with the Debtor's position on or characterization of certain items and issues.  It is essential, however, that creditors voting on the Plan understand not only that Mr. Weiss disagrees with certain of the Debtor's disclosures but also the bases for his positions.



The Hon. Martin Glenn
July 18, 2022
Page 3

Disclosure Stmt. Ex. B [Docket No. 124 at 236]; *see also* Plan § I.A.12.16 (providing that the Plan Investment Agreement will be "merged and integrated into the Plan"). In its newly amended Disclosure Statement, however, the Debtor now suddenly **removes** all language referencing a transfer of the YGWV Equity and contends, for the first time, that no such transfer is occurring.[7]

The Debtor's new position is instead that the YGWV Equity is not being sold but, rather, that the YGWV Equity will vest in the Reorganized Debtor or be transferred to Wind-Down Co, to be transferred to the Reorganized Debtor if the WV Share Consideration ($200,000) is paid by Sponsor. Even assuming this is an accurate description of how the transactions will work, it changes nothing, because the Debtor is still accomplishing a transfer of YGWV Equity (regardless of the form that transfer may take) under the Plan, and Mr. Weiss's position, as set forth in the Adversary Proceeding, is that such transfer violates the operating agreement for Member LLC and Delaware and New York law.[8]

### Debtor's Statement That Confirmation Will Have No Effect on Adversary Proceeding Requires Clarification

The Debtor asserts that the Adversary Proceeding "has no impact on the Debtor's timing or ability to confirm and consummate the Plan" and that Mr. Weiss's claims "can be addressed post-confirmation." Debtor Reply ¶¶ 4, 8. The Debtor apparently bases this position on its "belief" that the Debtor's sale of the YGWV Equity is not a condition precedent to confirmation of the Plan or the occurrence of the Effective Date and that failure to close on the MLPSA does not give the Sponsor the right to terminate the Plan Investment Agreement. *Id.* ¶ 8. The Debtor explicitly states that the Sponsor "reserves all of its rights" as to these issues. Am. Disclosure Stmt., § IV.A.9 [Docket No. 152 at 47].

Notably, however, the original version of the Disclosure Statement stated **affirmatively** that the closing of the YGWV Equity sale was not a condition precedent to confirmation, nor would its failure to close give rise to the Sponsor's right to terminate the Plan Investment Agreement. *Id.* ¶ 27. The original version of the Disclosure Statement also contained **no reservation of rights** by the Sponsor. *Id.* It is unclear what motivated this change in language, but clarity is required before Mr. Weiss can understand the impact that the Plan will have on his Adversary Proceeding. So long as the Sponsor retains the right to argue that confirmation would moot the Adversary Proceeding (which appears to be the case), the Debtor's statement that the Adversary Proceeding need not be prosecuted in advance of confirmation is inaccurate.

### Debtor's Statement That Sponsor Offered Greater Bid for Debtor's Interest in Hotel is Incorrect

In its reply, the Debtor states that "Weiss's offer with respect to the William Vale hotel was not greater than the Sponsor's in any respect. Both the Sponsor and Weiss offered to pay the Debtor's estate $2.2 million cash in connection with the William Vale transaction." Debtor Reply, ¶ 8 [Docket No. 149 at 6]. The Debtor further asserts that an "added benefit" of the Sponsor's offer was that it had also agreed to

---

[7]    *See, e.g.*, Amended Disclosure Statement, § IV.A.5 (summarizing *Amendment No. 1 to Investment Agreement* and deleting "transfer of the" YGWV Equity); *id.*, § IV.A.5 [Docket No. 152 at 41].

[8]    Mr. Weiss reserves all rights with respect to the Adversary Proceeding, including the right to amend the complaint, if necessary, to address the Debtor's new description of the Plan transactions, or otherwise.



The Hon. Martin Glenn
July 18, 2022
Page 4

purchase the Loan[9] and Mortgage from the Series C Noteholders, thus reducing the note claims against the estate. *Id.* These statements are inaccurate in multiple respects.

First, Paragraph, unlike Mr. Weiss, did not offer "$2.2 million cash" for the YGWV Equity. Rather, the Sponsor's offer was (and is) only $200,000. The Debtor discusses later in its reply the additional $2 million increase in New Notes to be issued by the Reorganized Debtor as part of the Sponsor's proposal. These new notes, however, are not cash, and are subject to reduction based on a specified formula in the Plan Investment Agreement. More important, the notes are ***not*** consideration for the YGWV Equity. Under the plain terms of the Plan Investment Agreement, the additional $2 million in New Notes are instead consideration the Sponsor has agreed to pay in exchange for its acquisition of the Loan and Mortgage, and the Sponsor purposely did not make that acquisition conditioned upon its acquisition of the YGWV Equity. Indeed, the Sponsor's commitment to issue the additional $2 million in notes was part of the Plan Investment Agreement from the beginning, at a time when it called for the Sponsor's purchase of only the Loan and Mortgage. The $200,000 payment was added later, via the Amendment No. 1 to Investment Agreement, as consideration for the YGWV Equity. *See* Disclosure Stmt. Ex. B [Docket No. 124 at 235-39].

Second, and relatedly, the Debtor's transfer of the YGWV Equity, regardless of form, is not, as the Debtor suggests, a condition precedent to the proposed William Value Purchase (*i.e.* the purchase of the Loan and Mortgage). aspect of the parties' proposals Indeed, this was a specifically-negotiated. While earlier proposals by Mr. Weiss had indicated that the Loan and Mortgage purchase would be contingent upon acquisition of the YGWV Equity, that contingency was ultimately removed and not included in his final proposal. More important, there is no such condition precedent in the agreement between the Notes Trustee and the Sponsor. The Sponsor is thus required to close on its acquisition of the Loan and Mortgage, with a stated outside closing date of July 24, 2022, regardless whether it also receives the YGWV Equity. Accordingly, the Debtor's statements that the Sponsor's $200,000 bid for the YGWV Equity is more beneficial than Mr. Weiss' $2.2 million bid because it also results in a reduction of the Series C Notes Claims (via the Loan and Mortgage Purchase) is not correct.

Ultimately, it cannot be disputed that Mr. Weiss offered $2 million more than the Sponsor for the YGWV Equity (as well as millions of dollars more also for the Loan and Mortgage). And not only was Mr. Weiss's bid significantly better than the Sponsor's, but he was the driver of the negotiations for a Series C Notes restructuring from the beginning. He participated in extensive discussions with the Debtor and even agreed, as part of those discussions, to pay certain of the Debtor's legal fees.

**Debtor's Disclosures Regarding Taz Claim and Relationship Between Taz, Paragraph, the Debtor and the Sole Shareholder Remain Troubling**

The Debtor attempts to dismiss the issues Mr. Weiss has raised regarding the Taz Claim by emphasizing that such claim will "ride through" unimpaired, and, therefore, it is irrelevant to the recoveries of other creditors under the Plan. The Debtor misunderstands the nature of Mr. Weiss's concerns regarding the Taz Claim. While the Debtor's proposed treatment of the Taz Claim under the Plan may not be objectionable in isolation, serious questions exist surrounding the admitted role that the Taz Confession of

---

[9]    For the avoidance of doubt, the Promissory Note between Fee Owner as Borrower, and the Debtor, as Lender, is defined in the Amended Disclosure Statement as the "Loan."



The Hon. Martin Glenn
July 18, 2022
Page 5


Judgment played in the Debtor's decision to file for bankruptcy, and the effect it may have had on the process that led to the development of the Plan.

In his Objection, Mr. Weiss raised several fundamental, and obvious, problems with the confession of judgment underlying the Taz Claim, including that it is based on a promissory note that was apparently an individual obligation of the Sole Shareholder, and not an obligation of the Debtor, and that it was not notarized until more than ten months after the execution of the supporting affidavit, and less than two months prior to the filing of these cases.  The Debtor does not respond to these issues other than by saying it "has requested and is reviewing documents in connection with the Taz Claim and is engaged in a continued dialogue regarding the claim with representatives of Taz."  Debtor Reply, ¶ 8 [Docket No. 149 at 6].  One would think that, by this point in the case, the Debtor would already have a full understanding of the circumstances surrounding a claim that admittedly played such a significant role in the Debtor's decision to file for bankruptcy.

Making matters worse, Mr. Weiss believes, and intends to demonstrate at the appropriate time, that following the submission of the Bid Protections Motion,[10] the Debtor used the Taz Claim to chill bidding for the Debtor's assets, telling Mr. Weiss and other bidders that they should need to be prepared to assume the claim, and related costs of administering the claim, as part of any further offers.  Of course, the Debtor is now being acquired by the Sponsor, who is an affiliate of Taz, which naturally may affect the manner in which the Sponsor addresses the Taz Claim, if at all, after the effective date.  Mr. Weiss intends to explore these issues further in discovery.

Finally, the Debtor notes that "[t]he Sponsor has confirmed to the Debtor in writing that, other than the Taz Confession of Judgement between Taz, an affiliate of the Sponsor, and the Sole Shareholder, there is no relationship between the Sole Shareholder and the Sponsor."  Debtor Reply, ¶ 8 [Docket No. 149 at 6].  The statement begs more questions than answers because the Taz Confession of Judgment—including the origin of and circumstances surrounding the promissory note underlying such judgment—is a hugely important issue in this case that requires thorough exploration.  The mere statement that the only relationship between Taz and the Sole Shareholder is the confession of judgment is insufficient to describe the nature of that relationship and the role it has played in this case to date.

*   *   *

We look forward to addressing these issues further at tomorrow's hearing.

Respectfully Submitted,

Nicholas A. Bassett
PAUL HASTINGS LLP

cc:  Counsel of record for the Debtor and the Notes Trustee
      (By ECF and electronic mail)

---

[10] [Docket No. 66].