| | |
|---|---|
| ARCHER & GREINER, P.C.<br>1211 Avenue of the Americas<br>New York, New York 10036<br>Tel: (212) 682-4940<br>Allen G. Kadish<br>Harrison H.D. Breakstone<br>Email: akadish@archerlaw.com<br>         hbreakstone@archerlaw.com | **Hearing Date:** August 30, 2022 at 11:00 a.m.<br>**Objection Deadline:** August 23, 2022 at 4:00 p.m. |

*Attorneys for the Parent Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                              :
In re                                                         :   Chapter 11
                                                              :
**ALL YEAR HOLDINGS LIMITED,**                                :   Case No. 21-12051 (MG)
                                                              :
Debtor.[1]                                                    :
                                                              :
-------------------------------------------------------------X

## NOTICE OF HEARING ON
## PARENT DEBTOR'S MOTION PURSUANT TO
## 11 U.S.C. § 105 AND FED. R. BANKR. P. 9019
## FOR APPROVAL OF SETTLEMENT AGREEMENT WITH
## EGM PLAN ADMINISTRATOR AND MREF REIT LENDER 9 LLC

TO THE HONORABLE MARTIN GLENN,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**")[2] of All Year Holdings Limited, as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Parent Debtor**"), for entry of an order, pursuant to section 105(a) of title 11 of the United States Code and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, approving that certain Settlement Agreement with (i) Tracy L. Klestadt in his capacity as the court-appointed Plan Administrator for Post-Effective Date Evergreen Gardens Mezz LLC, and (ii) MREF REIT Lender

---

[1] The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

[2] Capitalized terms used but not herein defined have the meanings ascribed to them in the Motion.

9 LLC, will be held before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 523, One Bowling Green, New York, New York, 10004 (the "**Bankruptcy Court**") on **August 30, 2022 at 11:00 a.m.** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399, dated May 17, 2010, so as to be filed and received no later than **August 23, 2022 at 4:00 p.m.** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Parent Debtor may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

**PLEASE TAKE FURTHER NOTICE that due to the COVID-19 pandemic, the Hearing will be conducted using Zoom for Government. Parties should not appear in person and those wishing to appear or participate at the Hearing (whether "live" or "listen only") must make an electronic appearance prior to 4:00 p.m. on August 29, 2022 by using the following link: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Instructions for**

**making an eCourtAppearance and additional information on the Court's Zoom procedures can be found at [http://www.nysb.uscourts.gov/content/judge-martin-glenn](http://www.nysb.uscourts.gov/content/judge-martin-glenn).** Parties who intend to appear at the hearing are also requested to inform the undersigned in advance.

Dated: New York, New York  
       August 4, 2022

ARCHER & GREINER, P.C.

By:   s/ Allen G. Kadish
    Allen G. Kadish
    Harrison H.D. Breakstone
1211 Avenue of the Americas, Suite 2750
New York, New York 10036
Tel: (212) 682-4940
Email: akadish@archerlaw.com
       hbreakstone@archerlaw.com

*Attorneys for the Parent Debtor*

225315569v3

ARCHER & GREINER, P.C.
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Allen G. Kadish
Harrison H.D. Breakstone
Email: akadish@archerlaw.com
       hbreakstone@archerlaw.com

*Attorneys for the Parent Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
:
**In re**  :  **Chapter 11**
:
**ALL YEAR HOLDINGS LIMITED,**  :  **Case No. 21-12051 (MG)**
:
**Debtor.**[1]  :
:
---------------------------------------------------------------X

**PARENT DEBTOR'S MOTION PURSUANT TO
11 U.S.C. § 105 AND FED. R. BANKR. P. 9019
FOR APPROVAL OF SETTLEMENT AGREEMENT WITH
<u>EGM PLAN ADMINISTRATOR AND MREF REIT LENDER 9 LLC</u>**

TO THE HONORABLE MARTIN GLENN,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

      All Year Holdings Limited, as a debtor and debtor in possession in the above-captioned chapter 11 case (the "**Parent Debtor**"), respectfully represents as follows in support of this motion (the "**Motion**"):

<u>**Relief Requested**</u>

      1.      By this Motion, pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Parent Debtor requests approval of that certain *Settlement*

---

[1]    The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

*Agreement* (the "**Settlement Agreement**"), a copy of which is attached hereto as **Exhibit A**, with (i) Tracy L. Klestadt in his capacity as the court-appointed Plan Administrator (the "**EGM Plan Administrator**") for Post-Effective Date Evergreen Gardens Mezz LLC ("**Post-Effective EGM**"), and (ii) MREF REIT Lender 9 LLC (the "**Mezzanine Lender**"). As set forth in further detail below, the Settlement Agreement provides for the resolution of claims by and between the Parent Debtor and the EGM Plan Administrator, avoids costly and uncertain litigation, and will result in the payment of $362,500.00 to the Parent Debtor. The Settlement Agreement also resolves any claims by and between the Parent Debtor and the Mezzanine Lender which, as described below, is the key beneficiary of the estate of EGM (as defined below).

2. In support of the Motion, the Parent Debtor submits the declaration of Ephraim Diamond, the Parent Debtor's Associate Restructuring Officer, which is attached hereto as **Exhibit B**. A proposed form of order granting the relief requested herein (the "**Proposed Order**") is attached hereto as **Exhibit C**.

## Jurisdiction

3. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## Background

**A.    General Background**

4. On December 14, 2021, the Parent Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**"). The Parent

Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in this Chapter 11 Case.

5.  Additional information regarding the Parent Debtor's business, capital structure, and the circumstances leading to the commencement of this Chapter 11 Case is set forth in the *Declaration of Asaf Ravid Pursuant to Local Bankruptcy Rule 1007-2 in Support of All Year Holdings Limited's Chapter 11 Petition and Related Relief*, dated December 14, 2021, which is incorporated herein by reference.

**B.    The Denizen**

6.  The Denizen is a development comprised of two adjacent residential apartment properties, each of which was, prior to the EGM Plan Effective Date (as defined below), separately owned by certain indirect subsidiaries of the Debtor – the Denizen X, located at 123 Melrose Street (the "**Denizen X**"), which was 100% owned by Evergreen Gardens I, LLC ("**EG I**"), and the Denizen Y, located at 54 Noll Street (the "**Denizen Y**" and together with the Denizen X, the "**Denizen**"), which was 100% owned by Evergreen Gardens II, LLC ("**EG II**").

7.  The Parent Debtor is the sole member of All Year Holdings LLC. All Year Holdings LLC was, prior to the EGM Plan Effective Date, the sole member of Evergreen Gardens Mezz LLC ("**EGM**"). EGM, in turn, was the sole member of EG I.

8.  On February 12, 2019, pursuant to that certain Mezzanine Loan and Security Agreement, dated as of February 12, 2019, between MREF REIT Lender 9 LLC (as defined above, the "**Mezzanine Lender**") and EGM, the Mezzanine Lender loaned $65,000,000 to EGM for the benefit of EG I in exchange for, *inter alia*, a pledge of EGM's equity in EG I.

9.  In January 2020, EG I and EG II, collectively as the seller, and Melrose Noll

3

Brooklyn LLC ("**Melrose Noll**") as purchaser, entered into a Contract of Sale – Office, Commercial and Multi-Family Residential Premises, dated as of January 15, 2020, as amended on January 17, 2020 (the "**2020 PSA**"), for the sale of the Denizen X and Denizen Y in exchange for a purchase price in the amount of $485,000,000. Pursuant to the terms of the 2020 PSA, Melrose Noll was required to make a down payment in the amount of $5,000,000. As a result of an alleged breach by the seller, EG I, EG II, and Melrose Noll entered into a settlement agreement, dated August 31, 2021 ("**2020 PSA Settlement Agreement**") that required EG I and EG II to pay an aggregate amount not to exceed $6,000,000 to Melrose Noll to resolve the allegations that EG I and EG II breached the 2020 PSA.

C.      **The Evergreen Debtors' Chapter 11 Cases**

10.     On February 22, 2021 (the "**Initial Debtor Petition Date**"), EGM commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code [Case No. 21-10335 (MG)]. On September 14, 2021 (the "**Subsidiary Debtors Petition Date**"), EG I and EG II (the "**Subsidiary Debtors**" and, together with EGM, the "**Evergreen Debtors**"), commenced their own voluntary cases under chapter 11 of the Bankruptcy Code. The Parent Debtor's Chapter 11 Case is being separately administered from the Evergreen Debtors' chapter 11 cases. The Evergreen Debtors' chapter 11 cases are being jointly administered for procedural purposes only under the lead case, *In re Evergreen Gardens Mezz LLC, et al.*, Case No., 21-10335 (MG).

11.     On or about November 10, 2021, the Parent Debtor timely filed proof of claim number 93 against EG I in an amount of not less than $2,197,097 for monies loaned to EG I to sustain the value of its assets and operations and, therefore, the value of EGM's interest in EG I, prior to the Subsidiary Debtors Petition Date ("**Claim No. 93**").

4

12. On January 24, 2022, the Parent Debtor timely filed proof of claim number 143 against EGM, asserting an administrative expense claim against EGM in an unliquidated amount for recovery of fees and expenses incurred by the Parent Debtor, including certain professional fees incurred by the Parent Debtor following confirmation of the Evergreen Plan ("**Claim No. 143**").

13. On January 24, 2022, the Parent Debtor timely filed proof of claim number 144 against EG I, asserting an administrative expense claim against EG I in an unliquidated amount for recovery of fees and expenses incurred by the Parent Debtor, including certain professional fees incurred by the Parent Debtor following confirmation of the Evergreen Plan ("**Claim No. 144**" and together with Claim No. 93 and Claim No. 143, the "**Claims**").

14. On November 5, 2021, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving Debtors' (A) Disclosure Statement, (B) Procedures for the Solicitation and Tabulation of Votes, and (C) Forms of Ballots and Related Notices, and (II) Confirming Amended Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC* [EGM ECF No. 222] (the "**Evergreen Confirmation Order**"), which order, among other things, confirmed the *Amended Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC*, dated October 28, 2021 [EGM ECF No. 187] (the "**Evergreen Plan**").

15. The Effective Date of the Evergreen Plan occurred on December 2, 2021 ("**EGM Plan Effective Date**"). *See Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Evergreen Gardens I LLC, Evergreen Gardens II LLC, and Evergreen Gardens Mezz LLC, and (II) Occurrence of Plan Effective Date* [EGM ECF No. 275].

16. Pursuant to the Evergreen Plan, a plan administrator was appointed to serve

5

as plan administrator for EGM (as defined above, the "**EGM Plan Administrator**") to administer and implement the Evergreen Plan and wind-down Post-Effective Date EGM in accordance with, and pursuant to such powers and authorities with respect to Post-Effective Date EGM, as set forth in Section 7.5 of the Evergreen Plan. The Evergreen Plan and Plan Supplement [ECF No. 141] provided for the appointment of Tracy L. Klestadt as the EGM Plan Administrator as of the Evergreen Plan Effective Date.

17. The Evergreen Plan provides that the EGM Plan Administrator has authority to compromise, settle, otherwise resolve, or withdraw any objections to claims without further approval of the Bankruptcy Court.

**D.    The Claim Objections and the EGM Plan Administrator Claim**

18. On February 28, 2022, the EGM Plan Administrator filed an objection to Claim No. 143 [EGM ECF No. 344] (the "**Claim No. 143 Objection**"), wherein he sought to expunge Claim No. 143 in its entirety on the basis that the Parent Debtor did not hold a valid and enforceable Administrative Expense Claim for reimbursement of post-Effective Date fees.

19. On March 18, 2022, the EGM Plan Administrator filed an objection to Claim No. 144 [EGM ECF No. 388] (the "**Claim No. 144 Objection,**" and together with the Claim 143 Objection, the "**Objections**"), wherein he sought to expunge Claim No. 144 in its entirety on the basis that the Parent Debtor did not hold a valid and enforceable Administrative Expense Claim for reimbursement of post-Effective Date fees.

20. The EGM Plan Administrator has asserted a claim against the Parent Debtor in the Chapter 11 Case in an amount in excess of $3,500,000 arising from the 2020 PSA and the alleged diversion of funds from EG I prior to the commencement of the Parent Debtor's Chapter 11 Case (the "**EGM Plan Administrator Claim**"). A deadline to file proofs of claim in the Parent

Debtor's Chapter 11 Case has not been set and the EGM Plan Administrator Claim has not otherwise filed a proof of claim in the Chapter 11 Case on account of the EGM Plan Administrator Claim.

21. The EGM Plan Administrator has indicated that absent a settlement among the Parties, the EGM Plan Administrator would also seek to file an objection to Claim No. 93 (the "**Potential Claim 93 Objection**"), wherein he would seek to disallow and expunge Claim No. 93 in its entirety pursuant to section 502(b) and (d) of the Bankruptcy Code, or recharacterize such amounts as capital contributions pursuant to sections 105 and 502(b)(1) of the Bankruptcy Code. The Parent Debtor has disputed the validity and enforceability of the EGM Plan Administrator Claim and has disputed the merit of the Objections and the Potential Claim 93 Objection.

**E.    The Settlement Agreement**

22. After extended negotiations, the Parent Debtor and EGM Plan Administrator evaluated their respective claims, defenses and assertions and determined to seek a mutual resolution rather than incurring the cost, risk, and delay of litigation.

23. The key terms of the Settlement Agreement are summarized as follows:

- The Parties: The Parent Debtor, the EGM Plan Administrator, and the Mezzanine Lender.

- Allowed Claim: Claim No. 93 shall be allowed as a general unsecured claim against EG I under the Evergreen Plan in the amount of $362,500.00 (the "**Allowed Claim**"). The Parent Debtor will have no other claims against EGM or EG I other than the Allowed Claim. To the extent the Parent Debtor has filed any claim against EGM or EG I, other than the Allowed Claim, any such claims, including Claim No. 143 and Claim No. 144, will be deemed to be withdrawn on the effective date of the Settlement Agreement (the "**Settlement Agreement Effective Date**"). The EGM Plan Administrator agrees to pay the Allowed Claim to the Parent Debtor in full within five (5) business days of the Settlement Agreement Effective Date.

- Withdrawal of Objections: On the Settlement Agreement Effective Date, the EGM Plan Administrator will withdraw the Objections and will not file

        the Potential Claim 93 Objection, the EGM Plan Administrator Claim, nor any other objections to the Allowed Claim or claims against the Parent Debtor.

- Releases: The Settlement Agreement provides for the releases of the Claims held by the Parent Debtor against (i) EGM and the corresponding release of potential claims held by EGM Plan Administrator against the Parent Debtor, and (ii) the Mezzanine Lender and the corresponding release of potential claims held by the Mezanine Lender against the Parent Debtor. For the avoidance of doubt, nothing in these releases shall, or shall be construed to, be releases of, or for the benefit of, Yoel Goldman or Tzipporah Goldman, or any affiliate of either of the Goldmans, other than the Parent Debtor and its direct and indirect subsidiaries.

24. As set forth above, the EGM Plan Administrator is authorized under the Evergreen Plan to compromise and settle the Claims on behalf of the EGM estate, without further order of the Court. Accordingly, approval of the Settlement Agreement by this Court in the Parent Debtor's Chapter 11 Case is the only court approval necessary.

## The Relief Requested is Warranted And in the Best Interests of Economic Stakeholders

25. Bankruptcy Rule 9019(a) provides that on motion and after notice and a hearing, "the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). In granting a motion pursuant to Bankruptcy Rule 9019(a), a Court must find that the proposed settlement is fair and equitable and is in the best interests of the debtor's estate. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re 47-49 Charles St., Inc.*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

26. In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein. Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

8

27. Although a court must "evaluate ... all ... factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *TMT Trailer Ferry*, 390 U.S. at 424, a court need not conduct a "mini-trial" of the merits of the claims being settled, *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993), or conduct a full independent investigation. *See In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact . . . . The court need only canvas the settlement to determine whether it is within the accepted range of reasonableness." *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (internal citations omitted).

28. The Court may give weight to the informed judgment of a debtor that a compromise is fair and equitable. *See Purofied*, 150 B.R. at 522; *In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that [the Court] substitute [its] judgment for the Trustee's, but only that [the Court] test [its] choice for reasonableness . . . . If the Trustee chooses one of two reasonable choices, [the Court] must approve that choice, even if, all things being equal, [the Court] would have selected the other").

29. Relying on the guiding language of *TMT Trailer Ferry*, Courts consider the following factors in evaluating the reasonableness of settlements:

    (a) the probability of success in litigation, with due consideration for the uncertainty in fact and law;

    (b) the difficulties of collecting any litigated judgment;

    (c) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay;

    (d) the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement;

    (e) the competence and experience of counsel who support the settlement;

    (f)  the relative benefits to be received by members of any affected class;

    (g)  the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion; and

    (h)  the debtor's informed judgment that the settlement is fair and reasonable.

*See TMT Trailer Ferry*, 390 U.S. at 424; *Ashford Hotels,* 226 B.R. at 804; *In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994). The decision to approve a particular settlement lies within the sound discretion of the Court. *See Nellis*, 165 B.R. at 123. It is the responsibility of the Court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983). The Court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

    30.    A review of the *TMT Trailer Ferry* factors demonstrates that the Settlement Agreement is in the best interests of the Parent Debtor and its estate and should be approved.

    *i.  The probability of success in litigation, with due consideration for the uncertainty in fact and law.*

    31.    Absent the Settlement Agreement, the Parent Debtor and the EGM Plan Administrator would likely engage in litigation over the existence of claims and the amounts of such obligations.

    32.    The main allegation by the EGM Plan Administrator is for recharacterization of the Claims to be treated as equity. The "…power to recharacterize is essential to the implementation of the [Bankruptcy] Code's mandate that creditors have a higher priority in bankruptcy than those with an equity interest." *In re Live Primary, LLC*, 626 B.R. 171, 197-98 (Bankr. S.D.N.Y. 2021), *citing In re Cold Harbor Assocs., L.P.*, 204 B.R. 904, 915 (Bankr. E.D.

Va. 1997) ("This Court is not required to accept the label of 'debt' or 'equity' placed by the debtor upon a particular transaction, but must inquire into the actual nature of a transaction to determine how best to characterize it").

33. In order to have the Court determine this issue the parties would be required to engage in extended litigation, including attendant fact discovery by means of depositions and document requests of parties related to the Parent Debtor and of outside parties including Yoel Goldman. Such litigation would be lengthy, costly, complicated, and the outcome uncertain in considerations of fact and law. Approval of the Settlement Agreement would quickly resolve all issues between the parties at no such risk of outcome.

    *ii. The difficulties of collecting any litigated judgment.*

34. The Parent Debtor is a debtor in possession. The EGM Plan Administrator is a fiduciary of post-bankruptcy estates. This adds additional considerations to the potential for a timely and assured resolution of the alleged claims between them.

35. The EGM Plan Administrator needs no further authority in the EGM post-bankruptcy case to approve the Settlement Agreement, but as a chapter 11 debtor, the Parent Debtor does, and approval of the Settlement Agreement is sought herein on behalf of the Parent Debtor.

    *iii. The complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay.*

36. As set forth above, the Parent Debtor disputes the validity and enforceability of the EGM Plan Administrator Claim and has disputed the merit of the Objections and the Potential Claim 93 Objection. Pursuing these disputes would be complex and require extended litigation in both bankruptcy cases which would require additional expense, inconvenience and delay. Each estate functions as a fiduciary for its creditors and stakeholders; they are akin to a

limited corpus; every dollar expended in litigation becomes unavailable to the beneficiaries.

>   *iv.  The proportion of creditors who do not object to, or who affirmatively support, the proposed settlement.*

37. The Settlement Agreement will result in a net payment of $362,500 to benefit the Parent Debtor's estate and will avoid the estate incurring additional (and, potentially, material) legal fees in litigating and pursuing the Claims. Accordingly, The Parent Debtor does not believe any creditor should object to the Settlement Agreement.

38. The Settlement Agreement includes the Mezzanine Lender as a releasee and releasor, so from the point of view of the EGM estate, the key remnant party consents.

>   *v.  The competence and experience of counsel who support the settlement.*

39. All parties to the Settlement Agreement were represented by competent counsel who negotiated and advocated during negotiations and settlement.

>   *vi.  The relative benefits to be received by members of any affected class.*

40. The Settlement Agreement helps to preserve and realize value, while minimizing risk and maximizing the potential for a recovery for the benefit of the Parent Debtor's stakeholders.

41. The settlement will also aid the Parent Debtor in resolving disputes, realizing cash and achieving confirmation in its case.

>   *vii.  The extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion.*

42. Throughout the negotiation of the Settlement Agreement, each party was advised by competent counsel and other professionals familiar with the issues. Based on the record of vigorous negotiations, there is no question that the Settlement Agreement has been agreed upon in good faith after arm's length bargaining.

     *viii. The debtor's informed judgment that the settlement is fair and reasonable.*

    43. The Parent Debtor believes the Settlement Agreement is fair and reasonable as an orderly and expeditious resolution of the Claims. The Settlement Agreement helps to preserve and realize value and maximize recoveries for the Parent Debtor's stakeholders and should be approved as requested herein.

    44. Further, the releases contemplated are appropriate and should resolve all disputes between the Parent Debtor and each of (i) the EGM Plan Administrator, and (ii) the Mezzanine Lender. The releases do not extend to Yoel Goldman or Tzipporah Goldman, or any of their affiliates, other than the Parent Debtor and its direct and indirect subsidiaries.

    45. Therefore, the Parent Debtor seeks approval of the Settlement Agreement.

### Notice

    46. Notice of this Motion will be provided to (i) William K. Harrington, the U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Andrea B. Schwartz, Esq. and Shara Cornell, Esq.), (ii) the Parent Debtor's top twenty (20) unsecured creditors, (iii) the Internal Revenue Service, (iv) the United States Attorney's Office for the Southern District of New York, (v) counsel to Mishmeret Trust Company Ltd., as Trustee for the holders of Parent Debtor's Israeli-issued Notes, Chapman & Cutler LLP, 1270 Sixth Avenue, New York, New York 10020 (Attn: Michael Friedman, Esq., Stephen R. Tetro II, Esq., and Aaron Krieger, Esq.), (vi) counsel to the Plan Investor, (a) Gissin & Co., Habarzel 38B, Tel Aviv 6971054, Israel (Attn: Yael Hershkovitz, Esq.), (b) Locke Lord LLP, 200 Vesey Street, 20th Floor, New York, NY 10281 (Attn: Shalom Jacob, Esq.), and (c) Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn: Avi D. Feinberg, Esq.), (vii) all parties that have requested notice in the Parent Debtor's Chapter 11 Case, pursuant to Bankruptcy

Rule 2002, (viii) counsel to EGM Plan Administrator, Klestadt Winters Jureller Southard & Stevens, LLP, 400 West 41st Street, 17th Floor, New York, NY 10036 (Attn: Brendan Scott, Esq.) and (ix) counsel to the Mezzanine Lender, Goodwin Proctor LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018 (Attn: Kizzy Jarashow, Esq.). The Parent Debtor respectfully submits that such notice complies with the requirements of Bankruptcy Rule 6004(a) and that no further notice is required.

## No Previous Request

47.    No previous request for the relief sought herein has been made by the Parent Debtor to this or any other Court.

## Conclusion

48.    For the reasons stated herein, the Settlement Agreement is fair and equitable and is in the best interests of the Parent Debtor's estate and its creditors, within the range of reasonableness, and should be approved.

WHEREFORE the Parent Debtor respectfully requests entry of the Proposed Order approving the settlement described herein, and such other and further relief as the Court may deem just and appropriate.

Dated: New York, New York
       August 4, 2022

ARCHER & GREINER, P.C.

By:    s/ Allen G. Kadish
       Allen G. Kadish
       Harrison H.D. Breakstone
1211 Avenue of the Americas, Suite 2750
New York, New York 10036
Tel:   (212) 682-4940
Email: akadish@archerlaw.com
       hbreakstone@archerlaw.com

*Attorneys for the Parent Debtor*

## Index to Exhibits

**A**    **Settlement Agreement**

**B**    **Declaration**

**C**    **Proposed Order**