

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

Matthew P. Goren
+1 (212) 310-8440
matthew.goren@weil.com

August 31, 2022

**Via Email and ECF**

Honorable Martin Glenn
Chief United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

*Re: In re All Year Holdings Limited, Chapter 11 Case No. 21-12051 (MG)*
*Zelig Weiss v. All Year Holdings Limited, Adv. Proc. No. 22-1115 (MG)*

Dear Chief Judge Glenn:

We represent All Year Holdings Limited, as debtor and debtor in possession (the "**Debtor**") in the above-referenced chapter 11 case (the "**Chapter 11 Case**"). We submit this letter brief in response to the Court's August 25, 2022 *Order Requiring Filing of Letter Briefs* [ECF No. 191] (the "**August 25 Order**") and to update the Court in advance of the upcoming September 1, 2022 case management conference. Specifically, pursuant to the Court's August 25 Order, the Debtor is providing an update to the Court on the impact, if any, of the Notice of Termination of the MLPSA (defined below) on (i) the issues and schedule concerning confirmation of the Debtor's proposed chapter 11 plan (the "**Proposed Plan**"), and (ii) the motions scheduled to be heard on September 13, 2022 in the above-referenced adversary proceeding (the "**Adversary Proceeding**"). In addition, the Debtor is providing additional updates regarding the status of the Israeli Recognition Proceeding (defined below) and other matters relevant to the timeline for confirmation of the Proposed Plan.[1]

As set forth in detail below, the parties failed to close on the MLPSA and now, for purposes of the Proposed Plan, the agreement will be treated as terminated. Accordingly, under the Proposed Plan, the Debtor's interests in YG WV LLC ("**YG WV**") will vest in the Debtor's remaining estate, Wind Down Co, thus, resolving any claim or objection to confirmation premised

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to them in (i) the Investment Agreement, dated March 11, 2022, among the Sponsor, the Notes Trustee and the Debtor (as amended by Amendment No. 1 dated April 21, 2022 [ECF No. 108, Ex. B], Amendment No. 2 dated May 27, 2022, and as may be further amended, modified, or supplemented from time to time, the "**Investment Agreement**") [ECF No.66, Ex. A], and (ii) the Proposed Plan [ECF No. 123], as applicable.

on a transfer of the Debtor's interests in YG WV to the Reorganized Debtor or the Sponsor. However, to the extent Mr. Weiss continues to pursue a claim or objection that the Debtor's interests in YG WV may not vest in Wind-Down Co including any economic interests, that objection would remain and would be addressed at confirmation to the extent it is not otherwise resolved by the Court as part of the motions to be heard at the September 13th hearing in the Adversary Proceeding.

In addition, these developments do not require any amendment to the Proposed Plan or change in the timeline for confirmation. The Proposed Plan addresses these very circumstances: if the William Vale Purchase does not occur or the MLPSA is terminated, the Debtor's indirect interests in YG WV simply remain as Excluded Assets under the Proposed Plan and the Investment Agreement. Further, the Notice of Termination of the MLPSA will not affect the September 13th hearing, other than to narrow the issues raised in the complaint concerning the alleged transfer to the Sponsor, which are now moot.

### 1. The Proposed Plan and the Confirmation Timeline

As previously described to the Court, Paragraph Partners LLC (the "**Sponsor**") and Mishmeret Trust Company Ltd. (the "**Notes Trustee**"), on behalf of the Series C Noteholders, were parties to that certain Mortgage Loan Purchase and Sale Agreement (the "**MLPSA**"), dated April 12, 2022, pursuant to which the Sponsor agreed to purchase the Series C Noteholders' rights, title, and interest in the William Vale mortgage and loan for approximately $158,612,112 (the "**William Vale Purchase**").[2] The Debtor is not a party to the MLPSA.

In addition, pursuant to the Investment Agreement, the Sponsor agreed, upon consummation of the William Vale Purchase, to (i) increase the principal amount of the New Notes that would be issued by the Reorganized Debtor under the Proposed Plan for the benefit of impaired unsecured claimholders by an additional $2 million and (ii) purchase the Debtor's direct equity interest in YG WV, the Debtor's wholly-owned, non-debtor subsidiary, that owns the 50% interest in the entity that owns the William Vale Hotel, for $200,000. This arrangement was added to the Investment Agreement through an amendment dated April 21, 2022. As set forth below, the Debtor was not obligated to include its interests in YG WV as assets to vest in the Reorganized Debtor under the Investment Agreement and the Proposed Plan unless and until the Sponsor effectuated a closing of the William Vale Purchase.

As detailed in the Debtor's August 23, 2022 status letter to the Court [ECF No. 188] (the "**August 23 Letter**"), the MLPSA failed to close on July 25, 2022 and the Notes Trustee delivered a notice of termination, on behalf of the Noteholders, to the Sponsor (the "**Notice of Termination**"). *See* Notice of Termination [ECF No. 188, Ex. C] ("This letter constitutes a notice of termination, pursuant to section 10(c) of the MPSA"); Sponsor Letter [ECF No. 188, Ex. D]. Accordingly, for purposes of the Proposed Plan, the MLPSA will be treated as terminated.

---

[2] On May 12, 2022, the Sponsor and the Notes Trustee agreed to amend the MLPSA to increase the purchase price from $157,312,112 to $158,612,112 in exchange for the Series C Noteholders assigning certain additional claims to the Sponsor under the MLPSA. The Series C Noteholders approved this amendment on May 24, 2022.

Section 1.40 of the Proposed Plan expressly provides that the default treatment under the Proposed Plan is that the Debtor's interests in YG WV are "Excluded Assets" to vest in Wind Down Co on the Effective Date. Therefore, as a result of the foregoing, the Debtor's membership interests in YG WV are "Excluded Assets" under the Proposed Plan and will vest in Wind Down Co following the effective date of the Proposed Plan. Proposed Plan, § 1.40 ("'*Excluded Assets*' means (a) any and all of the Debtor's direct or indirect rights (including the right to receive any income or proceeds) in and to (i) any collateral securing the Series C Notes and Series E Notes, (ii) the Debtor's membership interests in YG WV LLC ….").

That default treatment would have only changed under the Proposed Plan if, in fact, the Sponsor had effectuated the William Vale Purchase. Specifically, Section 1.40 of the Proposed Plan provides:

> Notwithstanding the foregoing, ***to the extent that the Sponsor effects the William Vale Purchase (whether prior to, on, or after the Effective Date, but only until the expiration or termination by its terms of the MPSA)***, the Debtor's direct or indirect rights (including the right to receive any income or proceeds) in and to the Debtor's membership interests in YG WV LLC shall not be Excluded Assets and (A) such rights shall vest in the Reorganized Debtor upon the Effective Date to the extent that the WV Sale Date is on or prior to the Effective Date and (B) such rights shall automatically transfer from Wind-Down Co to the Reorganized Debtor upon the payment of the WV Shares Consideration if the WV Sale Date is after the Effective Date. ***Notwithstanding the foregoing, the Debtor's membership interests in YG WV LLC shall remain Excluded Assets hereunder and neither the Debtor nor Wind-Down Co shall have any obligation with respect to a transfer of such interests if the MPSA expires or is terminated according to its terms***.

*See* Proposed Plan § 1.40 (emphasis added); Inv. Agmt., Annex A.

As a result of the failure of the William Vale Purchase to close on July 25, 2022 as required under the MLPSA (whether or not terminated), the Debtor's obligation to transfer its interests in YG WV was never triggered and these interests remain Excluded Assets under the Proposed Plan. *See id.*; Notice of Termination [ECF No. 188, Ex. C]; Sponsor Letter [ECF No. 188, Ex. D].

Further, under the plain language of the Proposed Plan, the obligation to include the YGWV interests with the Reorganized Debtor only continues until "the MLPSA expires or is terminated according to its terms." *See* Proposed Plan § 1.40; Inv. Agmt., Annex A. Based on the letters exchanged between the Sponsor and the Notes Trustee, it appears that in addition to not closing, the MLPSA is terminated and the only dispute remaining between the parties thereto is the entitlement to the deposit funds. *See* Notice of Termination [ECF No. 188, Ex. C]; Sponsor Letter [ECF No. 188, Ex. D]. Importantly, that is not an issue that concerns the Debtor or for this Court to decide.

As "Excluded Assets," the Debtor's interests in YG WV will vest in Wind Down Co, and will not vest in the Reorganized Debtor or the Sponsor under the Proposed Plan. *See* Proposed Plan, §§ 1.115, 5.3, 10.1. In addition, neither the Debtor nor Wind Down Co have any obligation to transfer the Debtor's interests in YG WV. *See* Proposed Plan, § 1.40, Inv. Agmt., Annex A. Further, the consideration to be paid by the Sponsor under the Proposed Plan will remain at $60

million and will not increase by an additional $2.2 million, as was contemplated under the Proposed Plan and the Investment Agreement in the event the MLPSA closed. *See* Proposed Plan, § 1.40; Inv. Agmt., Annex A.

Since neither the failure to close nor the termination of the MLPSA requires an amendment or modification to the Proposed Plan, the Debtor does not expect any impact to the timeline for confirmation. Additionally, the issues to be decided at confirmation have been reduced. Mr. Weiss's other claims and potential confirmation objections all appear ancillary to his primary opposition to the Debtor's interests in YG WV vesting in the Reorganized Debtor or the Sponsor. Since the Debtor's interests in YG WV will not be included with the Reorganized Debtor, nor transferred to the Sponsor, no party-in-interest would be harmed or prejudiced if any remaining disputes regarding the Debtor's interests in YG WV were dealt with post-confirmation, with the Debtor's interests vesting in Wind Down Co and all of the parties' respective rights and arguments expressly reserved. If there is any disagreement on this point, it should be resolved by the Court at the upcoming September 1 status conference.

On August 31, the Debtor informed the Sponsor that the Debtor's interests in YG WV are Excluded Assets, and requested that, if the Sponsor contends otherwise, it should inform the Court and parties-in-interest on or before the September 1 conference.

### 2. The Adversary Proceeding

The hearing scheduled for September 13, 2022 concerns two pending motions – Plaintiff's motion for summary judgment of Count III and the Debtor's motion to dismiss the complaint in its entirety.[3] The Debtor believes the Notice of Termination of the MLPSA will not impact the motion for summary judgment and will narrow the Debtor's motion to dismiss because no transfer of the Debtor's interests in YG WV to the Reorganized Debtor or the Sponsor will occur under the Proposed Plan. Specifically, Plaintiff's motion for summary judgment on Count III and the Defendants' analogous motion to dismiss Count III and the related Count V are undisturbed, while Defendants' motion to dismiss Counts I, II, and IV has been at a minimum narrowed as there will no longer be an even arguable "transfer" to the Sponsor. It is unclear whether Plaintiff will pursue allegations in the complaint regarding the alleged "transfer" to Wind Down Co, but if it does proceed, the Debtor's motion to dismiss as to Counts I, II and IV is fully briefed.

### 3. Other Matters

The Debtor also wishes to update the Court regarding recent developments in the Israeli Recognition Proceeding (as defined below). As the Court may recall, on April 14, 2022, the Debtor commenced a proceeding in the District Court of Tel Aviv – Yafo (the "**Israeli Court**") for recognition of the Chapter 11 Case as a foreign main proceeding under the applicable provisions of Chapter I, Part C of the Insolvency and Rehabilitation Law 5778-2018 (the "**Israeli Recognition Proceeding**").

---

[3] The parties have stipulated to the withdrawal of Plaintiff's alternative motion for a preliminary injunction. *See* Adv. Proc. ECF No. 29.

   Following this Court's entry of the Solicitation Procedures Order[4] on July 22, 2022, the Debtor, by and through its Israeli Counsel, filed a motion in the Israeli Court for approval to convene a meeting of the Noteholders to vote on the transactions contemplated by the Proposed Plan and the Investment Agreement (the "**Noteholder Meeting Motion**").  On August 21, 2022, and August 28, 2022, respectively, the Israeli Securities Authority and the Israeli Commissioner for Insolvency Procedures filed their positions in response to the Noteholder Meeting Motion, including their respective positions as to whether U.S. or Israeli law should apply with respect to the subordination of certain claims under the Plan.[5]  The Israeli Court has ordered the Debtor to respond by no later than September 15, 2022.

   The Debtor intends to commence solicitation of the Plan in accordance with the Solicitation Procedures Order while it continues to work to obtain approval of the Noteholder Meeting Motion from the Israeli Court.

   We will continue to apprise the Court with any updates regarding the above.  We are available should the Court have any questions or wish to discuss this matter, or any other matter, prior to or at the next scheduled hearing.

Respectfully submitted,


/s/ *Matthew P. Goren*
Matthew P. Goren

---

[4] *Order (I) Approving Proposed Disclosure Statement and The Form, Manner, and Sufficiency of Notice of the Disclosure Statement Hearing, (II) Approving The Proposed Solicitation And Voting Procedures, (III) Approving Forms Of Ballots, Solicitation Packages, and Related Notices, (IV) Scheduling A Confirmation Hearing And Establishing Notice And Objection Procedures For Confirmation Of The Debtor's Chapter 11 Plan, And (V) Granting Related Relief* [ECF No. 160].

[5] Recognition in the Israeli Recognition Proceeding of the treatment of the Subordinated Securities Claims under the Plan and the Confirmation Order is not a condition precedent to the occurrence of the Effective Date of the Proposed Plan.  *See* Plan, § 9.2(c).

5