

1 (202) 551-1902
nicholasbasset@paulhastings.com

September 1, 2022

**VIA EMAIL AND ECF**

Hon. Martin Glenn
Chief U.S. Bankruptcy Judge
U.S. Bankruptcy Court, Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

**Re: *In re All Year Holdings Limited*, Case No. 21-12051 (MG)**
***Zelig Weiss v. All Year Holdings Limited et al.*, Adv. Proc. No. 22-1115 (MG)**

Dear Judge Glenn:

We are counsel to Zelig Weiss ("Weiss") in connection with the above-referenced chapter 11 case of All Year Holdings Limited (the "Debtor" or "All Year") and adversary proceeding styled *Zelig Weiss v. All Year Holdings Limited et al.* (the "Adversary Proceeding"). Weiss holds a 50% membership interest in the Debtor's indirect subsidiary, Wythe Berry Member LLC ("Member LLC"), which in turn owns and controls 100% of Wythe Berry Fee Owner LLC ("Fee Owner"), the entity that owns and leases the William Vale Hotel and Complex (the "WV Complex"). Prior to the filing of Debtor's petition, the other 50% interest in Member LLC was held by the Debtor's wholly-owned subsidiary, YG WV LLC ("YGWV").

We respectfully submit this letter brief in response to the Court's *Order* [ECF No. 191], [A.P. ECF No. 27] (dated Aug. 25, 2022),[1] instructing the Debtor or any party in interest to submit a letter brief discussing what, if any, effect the developments discussed in the August 23, 2022 letter from the Debtor's counsel [ECF No. 188] (the "MLPSA Termination Letter")—specifically, the developments related to the termination of the Mortgage Loan Purchase and Sale Agreement (the "MLPSA") between the Notes Trustee and the Sponsor[2]—have on (i) the issues and schedule concerning confirmation of the Proposed Plan, and (ii) the motions scheduled to be heard on September 13, 2022 in the Adversary Proceeding.

As discussed below, and as explained more fully in Weiss's forthcoming reply in support of his motion for partial summary judgment and his opposition to the defendants'[3] motion to dismiss, the termination of the MLPSA affects certain of the allegations of the Adversary Proceeding, but it does not affect the need for the relief Weiss is seeking or his anticipated objections to the Proposed Plan. Weiss therefore anticipates that the Adversary Proceeding and all attendant litigation, including the hearing on September 13, 2022, and litigation related to plan confirmation, will go forward as scheduled.

---

1 This letter refers to docket entries in the Adversary Proceeding as "A.P. ECF No. __" and docket entries in All Year's chapter 11 case, *In re All Year Holdings Limited*, No. 21-12051 (MG), as "ECF No. __".

2 Capitalized terms used but not herein defined have the meanings ascribed to them in (i) the Investment Agreement, dated March 11, 2022, among the Sponsor, the Notes Trustee and the Debtor (as amended by Amendment No. 1 dated April 21, 2022, Amendment No. 2 dated May 27, 2022, and as may be further amended, modified, or supplemented from time to time, the "Investment Agreement"), and (ii) the Chapter 11 Plan of Reorganization from All Year Holdings Limited, dated May 31, 2022 [ECF No. 123] (the "Proposed Plan"), as applicable.

3 Debtor and YGWV are defendants in the Adversary Proceeding; Member LLC is a nominal defendant.



As also discussed below, however, Weiss remains open to a consensual resolution of his concerns that would obviate the need for further litigation. In fact, on August 24, 2022, Weiss made an offer to the Notes Trustee (the "Weiss August Offer")—which offer provided substantially the same consideration as the Plan Sponsor had offered not only under the MLPSA to the Notes Trustee for the purchase of the Series C Noteholders' rights, title, and interest in the WV Complex mortgage ("Mortgage") and promissory note ("Note"), but also to the Debtor under the Investment Agreement and Proposed Plan for the purchase of its direct equity interest in YGWV (the "YGWV Interest")—that would end the parties' dispute. Unfortunately, for reasons that remain unknown to him, Weiss has not received any response to his offer.

**1. Background: the MLPSA; Proposed Plan and Investment Agreement; and Transfer of Debtor's Indirect Interest in Member LLC to Wind-Down Co.**

***The MLPSA***. The Sponsor and the Notes Trustee,[4] on behalf of the Series C Noteholders, entered into the MLPSA on April 12, 2022, pursuant to which the Sponsor agreed to, among other things, purchase the Series C Noteholders' rights, title, and interest in the Mortgage and Note for approximately $158,612,112 (the "William Vale Purchase").[5] The Debtor is not a party to the MLPSA.

On July 27, 2022, the Notes Trustee, on behalf of the Series C Noteholders, delivered to the Sponsor a notice of default for failing to consummate the closing of the William Vale Purchase in accordance with the MLPSA. On August 19, 2022, following a vote of the Series C Noteholders, the Notes Trustee, on behalf of the Series C Noteholders, delivered to the Sponsor a notice of termination of the MLPSA as a result of the Sponsor's failure to consummate the closing of the William Vale Purchase and default under the MLPSA.

The Debtor has represented that, as a result of the termination of the MLPSA, the Debtor is no longer obligated to include the YGWV Interest as an asset to vest in the Reorganized Debtor under the Proposed Plan or to otherwise include such interest as part of the transactions entered into with the Sponsor under the Investment Agreement or the Proposed Plan. *See* MLPSA Termination Letter, at 2.

***The Proposed Plan and Investment Agreement***. Pursuant to the Investment Agreement, which is incorporated into the Proposed Plan,[6] the Sponsor agreed, upon consummation of the William Vale Purchase, to (i) increase the principal amount of the New Notes that would be issued by the Reorganized Debtor under the Proposed Plan for the benefit of impaired unsecured claimholders by an additional $2 million and (ii) purchase the YGWV Interest for $200,000.[7]

Due to the termination of the MLPSA, the Sponsor is no longer acquiring the YGWV Interest and, therefore, is not providing the foregoing consideration under the Investment Agreement. Instead, the Proposed Plan and Investment Agreement provide for the following in light of the MLPSA's termination:

---

4 For the avoidance of doubt, the Notes Trustee means Mishmeret Trust Company Ltd., as trustee under, collectively, the Series B, C, D, and E Deeds of Trust (as defined in the Proposed Plan).

5 In accordance with the MLPSA, the Sponsor provided a $7.5 million deposit.

6 (Proposed Plan, § 5.1(f)).

7 To implement the vesting of the YGWV Interest in the Reorganized Debtor under the Proposed Plan, the Debtor, the Notes Trustee, and the Sponsor entered into an amendment to the Investment Agreement dated April 21, 2022.



- The YGWV Interest will be treated as an "Excluded Asset" under Section 1.40 of the Proposed Plan. The Proposed Plan expressly provides that the "Excluded Assets" (Proposed Plan, § 1.40), "***shall be transferred to***, and vest in, ***Wind-Down Co on the Effective Date*** in accordance with the Plan" (*id.*, § 1.115 (emphasis added)), and, thus, as "Excluded Assets," the YGWV Interest will not vest in the Reorganized Debtor under the Proposed Plan. (Proposed Plan, §§ 1.115, 5.3, 10.1).

- Under the Proposed Plan, Wind-Down Co. will be "a new limited liability company . . . to be formed on or prior to the Effective Date for the purpose of conducting the Wind Down in accordance with the Plan and the Plan Administration Agreement" (Proposed Plan, § 1.115). The Plan Administration Agreement is defined as the "agreement providing for the appointment of the Plan Administrator, which shall be in form and substance acceptable to ***the Notes Trustee in its sole and absolute discretion***" (Proposed Plan, § 1.70) (emphasis added). The Plan Administrator is to be ***selected by the Notes Trustee***. (Proposed Plan, § 1.71).

Critically, nothing in the Proposed Plan restricts the manner in which Wind-Down Co., at the direction of the Plan Administrator, will manage the YGWV Interest or to whom it may sell such interests.

**2. Proposed Plan and Investment Agreement Still Unlawfully Transfer YGWV Interest in Member LLC**

The termination of the MLPSA does not resolve the Adversary Proceeding or Weiss's objections to the Proposed Plan. If, however, as proposed in the Weiss August Offer, the Debtor further amends the Proposed Plan in a manner acceptable to Weiss that substitutes Weiss for the Sponsor regarding the purchase of the YGWV Interest, Weiss remains willing to withdraw his objections to confirmation of the Debtor's Proposed Plan. But for that still hoped for result, or another outcome acceptable to Weiss, Weiss has no choice other than to object to confirmation of the Debtor's Proposed Plan, and the September 13, 2022 hearing in the Adversary Proceeding (the "Threshold Motions Hearing") should go forward on Weiss's motion for partial summary judgment and the defendants' motion to dismiss.[8]

**A. Overview of Relevant Allegations and Claims in Amended Complaint**

The termination of the MLPSA moots none of Weiss's claims for relief in the Amended Complaint, [A.P. ECF No. 10]. In paragraphs eighty-two and eighty-three of the Amended Complaint, Weiss alleges:

> [R]egardless of any transfer by the Debtor of its interests in YGWV to the Sponsor, the Plan contemplates the Debtor's possible transfer of the YGWV interests to Wind-Down Co., a new entity to be managed by a plan administrator at the direction of [the Notes Trustee] pursuant to an agreement approved by [the Notes Trustee], if the Sponsor's agreement to acquire the note and mortgage does not close prior to the effective date of the Plan. This is significant because the Debtor has announced that the Sponsor in fact failed to close on its purchase of the note and mortgage by the July 24, 2022 outside date under such agreement, and [the Notes Trustee] has declared the Sponsor in breach of that agreement. Any

[8] On August 29, 2022 the parties to the Adversary Proceeding submitted a *Stipulation Withdrawing Plaintiff's Motion for Preliminary Injunctive Relief,* [A.P. ECF No. 29].

> transfer of the YGWV interests to (or by) Wind-Down Co. without Weiss's consent would also be unlawful. [ ] Weiss has objected to the Plan's proposed transactions.

Moreover, claims for relief in the Amended Complaint expressly assert that any transfer of the YGWV Interest under the Proposed Plan, including to Wind-Down Co., is impermissible without Weiss's consent under the Member LLC Agreement and applicable law. The First Claim for Relief seeks a declaratory judgment that the Debtor's purported transfer of its ownership in YGWV to ***either*** the Sponsor or Wind-Down Co. is null and void because it violates the transfer restrictions of the Member LLC operating agreement, either because the Debtor negotiated the agreement[9] or because YGWV is the Debtor's alter ego.[10] *See* Am. Compl., First Claim for Relief [A.P. ECF No. 10 at 21-24]. Weiss specifically alleges that, by "the YGWV Interest Transfer Scheme, All Year has agreed to sell and transfer to Paragraph ***and/or Wind-Down Co., directly or indirectly,*** its 100% membership interest in YGWV under the Plan,"[11] and "***any direct or indirect transfer*** of . . . All Year's interest in YGWV or YGWV's interest in Member LLC without the express consent of Weiss shall be null and void."[12] Because Weiss contends that the proposed transfer to Wind-Down Co. under the Proposed Plan is unlawful, the termination of the MLPSA (and present failure of the sale to the Sponsor) does not affect his First Claim for Relief.

Similarly, the Second Claim for Relief seeks a declaratory judgment that the YGWV Interest Transfer Scheme (as defined in the Amended Complaint)[13] or the "[sale of] All Year's interest in YGWV to a third party without Weiss's consent"[14] violates the implied covenant of good faith and fair dealing, and "the direct or indirect transfer of . . . All Year's interest in YGWV or YGWV's interest in Member LLC [including to Wind-Down Co.] without the express consent of Weiss shall be null and void."[15] Because the Second Claim for Relief also challenges the transfer of the YGWV Interest to Wind-Down Co., it, too, remains a live claim.

In his Third Claim for Relief, which is the subject of Weiss's motion for partial summary judgment (the "MSJ"), Weiss asserts that relevant provisions of New York law and the Bankruptcy Code compel the conclusion that YGWV dissolved as a matter of law upon the filing of All Year's chapter 11 petition. As explained in his memorandum of law in support of the MSJ, [A.P. ECF No. 12], this is so because, under the New York Limited Liability Company Law ("NY LLCL"), the commencement of All Year's chapter 11 case (i) resulted in the automatic termination of All Year's membership interest in YGWV under NY LLCL

---

9 Am. Compl., ¶¶ 89-91 (alleging that All Year "negotiated all essential terms of the Member LLC Agreement" (prior to YGWV's formation), "manifest[ed its] intent to be bound by the Member LLC Agreement," and "is bound by the Member LLC Agreement").

10 *Id*., ¶¶ 92-94 (alleging that All Year "dominates and controls YGWV, and the Defendants are a single economic unit" because, among other reasons, YGWV "either shares offices with All Year or has no physical presence[;] . . . has no employees or directors . . . [and] keeps no corporate records[;] engages in no business activity other than holding its interest in Fee Owner[;] [and] has never had a bank account nor paid an expense[;]" and, All Year "is attempting to misuse YGWV's corporate form to effect an injustice or wrong upon Weiss by using the corporate form to . . . force Weiss into business with Paragraph, a third party unrelated to All Year and unknown to Weiss, over his objection.").

11 *Id*., ¶ 96 (emphasis added).

12 *Id.,* ¶ 101 (emphasis added).

13 *Id.,* ¶ 1.

14 *Id.,* ¶ 106.

15 *Id.*



§ 701(b) and/or (ii) effected the transfer of the YGWV Interest to All Year's bankruptcy estate, which triggered the termination of All Year's membership (but not economic) interest under NY LLCL § 603.[16] In either case, YGWV was left with no members and, therefore, by operation of law was dissolved under NY LLCL § 701(a)(4).[17] Thus, All Year is incapable of transferring anything more than an indirect economic interest in Member LLC under the Proposed Plan, and neither YGWV nor All Year, "directly or indirectly" may act as the managing member of Member LLC. Am. Compl., ¶ 125. This claim also remains live notwithstanding the termination of the MLPSA because it directly affects the nature of the interest that All Year may transfer to Wind-Down Co.[18]

### B. Effect of Termination of MLPSA on Claims in Amended Complaint

The termination of the MLPSA means that the Debtor is no longer obligated to sell the YGWV Interest to the Sponsor. Therefore, those allegations of the Adversary Proceeding related specifically to the Proposed Plan's sale ***to the Sponsor*** are (at present) moot. As discussed above, however, the Amended Complaint still challenges the Proposed Plan's potential transfer of the YGWV Interest to Wind-Down Co. for various reasons. Thus, all claims in the Amended Complaint remain live claims.

That the Proposed Plan contemplates a transfer of the YGWV Interest to Wind-Down Co., which is a separate entity, is not subject to dispute. The Plan explicitly states that Wind-Down Co. will be "a new limited liability company . . . to be formed on or prior to the Effective Date for the purpose of conducting the Wind Down in accordance with the Plan and the Plan Administration Agreement" (Plan, § 1.115). Moreover, the Plan expressly provides that the "Excluded Assets", which include the YGWV Interest (*see id.* § 1.40), "***shall be transferred to***, and vest in, ***Wind-Down Co on the Effective Date*** in accordance with the Plan" (*id.* § 1.115 (emphasis added)).

Under the Proposed Plan, the YGWV Interest will be transferred from the Debtor to a Plan Administrator (selected by the Notes Trustee) on the Effective Date. This proposed transfer, regardless of form, whether direct or indirect, would require the consent of Weiss, which consent has not been sought nor given. Accordingly, as discussed more fully in Weiss's forthcoming reply brief, the Proposed Plan's purported transfer of the YGWV Interest to Wind-Down Co. would violate the anti-assignment provision of the Member LLC operating agreement and, like the proposed (failed) transfer to the Sponsor, would force Weiss to do business with—and arguably cede control of Member LLC to—an LLC member that is a virtual stranger. Such a result is not permissible.[19]

Accordingly, the Threshold Motions Hearing should go forward on September 13, 2022, and the parties should otherwise move forward with the present litigation schedule, both in the Adversary Proceeding and in relation to plan confirmation.[20]

---

[16] *See* Am. Compl., ¶ 118.

[17] *Id.*, ¶ 119.

[18] In addition, the Fourth and Fifth Claims for Relief in the Amended Complaint seek permanent injunctions as a result of the claims asserted in the First through Third Claims for Relief. The Fourth and Fifth Claims for Relief thus also remain live.

[19] Moreover, the Proposed Plan calls for the liquidation of Wind-Down Co.'s assets as "expeditiously as reasonably possible." (Proposed Plan, § 5.3(c)). Weiss would be further harmed by any subsequent sale of the YGWV Interest by Wind-Down Co. to another party (such as the Sponsor).

[20] For the avoidance of doubt, Weiss reserves all rights to raise additional objections to confirmation, including without limitation those identified in his *Limited Objection to Debtor's Motion for Approval of*



**3. Ongoing Discussions With Debtor and Notes Trustee**

The Debtor has represented that both "the Sponsor and Weiss [previously] offered to pay the Debtor's estate $2.2 million cash in connection with the William Vale transaction." *Debtor's Reply in Support of Disclosure Statement and Solicitation Procedures Motion and in Response to Limited Objection and Reservation of Rights of Zelig Weiss,* ¶ 8 [Docket No. 149 at 6]. The Debtor has further explained, in support of its rationale for selecting the Sponsor's offer instead of Weiss's, that "the ***added benefit*** of the Sponsor's offer to purchase the interests in the William Vale hotel was that, because the Noteholders' agreed to sell their interests in the Loan and Mortgage to the Sponsor, a transaction with the Sponsor will result in a significant reduction of the Series C Notes Claims against the estate, thereby materially increasing recoveries to . . . impaired creditors . . . ." *Id*.

Following the termination of the MLPSA, Weiss has been in discussions with representatives of the Notes Trustee and the Debtor regarding a potential replacement transaction to acquire both the Note and Mortgage and the YGWV Interest. Specifically, on August 24, 2022, Weiss submitted an offer to purchase the Mortgage and Note for $158,312,112 and to also acquire the YGWV Interest for $200,000 in cash. Despite this proposal providing substantially the same consideration to the Notes Trustee and the Debtor as the Sponsor had agreed to pay them, respectively, under the MLPSA and the Proposed Plan, no response to the Weiss August Offer has been received. Weiss remains willing to purchase the Note and Mortgage from the Notes Trustee and the YGWV Interest from the Debtor, but he needs to find willing partners across the table.

To reiterate, Weiss hopes a consensual resolution can be reached that ends the current litigation, eliminates objections to confirmation, and maximizes value for the Debtor's creditors. Any such resolution, however, must protect Weiss's rights under the Member LLC Agreement and applicable law.

Respectfully Submitted,

*/s/ Nicholas A. Bassett*

Nicholas Basset
of PAUL HASTINGS LLP

*Disclosure Statement,* [ECF No. 141], with respect to which he is currently pursuing discovery from the Debtor and other parties.