**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Gary T. Holtzer**
+1 (212) 310-8463
gary.holtzer@weil.com

November 4, 2022

Via Email and ECF

Honorable Martin Glenn
Chief United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

Re: In re All Year Holdings Limited, Case No. 21-12051 (MG)

Dear Chief Judge Glenn:

We represent All Year Holdings Limited, as debtor and debtor in possession (the "**Debtor**") in the above-referenced chapter 11 case (the "**Chapter 11 Case**"). We submit this letter to update the Court on the status of the mediated settlement among the Debtor, Paragraph Partners LLC (the "**Sponsor**"), and Mishmeret Trust Company Limited (the "**Notes Trustee**"), on behalf of the Debtor's various series of Notes, the terms of which were set forth on the record at the status conference before the Court on September 29, 2022 (the "**September 29 Status Conference**").[1]

The Settlement Documents (defined below) were finalized several weeks ago. The Sponsor is unwilling to execute these agreements and, after more than a month since the conclusion of the mediation, is raising additional "concerns" (explained below). Importantly, after agreeing to a reasonable extension of milestones and deadlines in the mediation settlement, the Sponsor is refusing to extend the outside Closing Date beyond January 31, 2023. The Sponsor is steadfast in its position even though the Debtor understands (and has informed the Sponsor) the earliest available Confirmation Hearing date is January 10, 2023. Notably, if the Plan does not become effective by the Closing Date, then the Sponsor presumably would assert that it is entitled to, among other things, the Deposit, which, by agreement of the parties, has been utilized as a DIP loan to fund the Chapter 11 Case, and potentially the Break-Up Fee. The Sponsor also is now insisting that the Debtor cannot utilize other cash required to administer the Chapter 11 Case.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in (i) that certain Investment Agreement, dated March 11, 2022 (as amended on April 21, 2022 and May 27, 2022, and together with all schedules and exhibits thereto, "**Investment Agreement**"), and (ii) the Debtor's proposed chapter 11 plan of reorganization [ECF No. 214] (the "**Proposed Plan**"), as applicable.

November 4, 2022                                                                                                                    **Weil, Gotshal & Manges LLP**
Page 2

Given the conditions to be satisfied after a January confirmation (including Israeli recognition of the Proposed Plan and Confirmation Order), the Sponsor's positions, if maintained, are tantamount to a repudiation of the mediated settlement and its obligations under the Investment Agreement.  The Debtor believes the Court's guidance is required to determine, among other things, whether an earlier Confirmation Hearing date is available under these trying and unfortunate circumstances, and if not, to obtain the Court's guidance to discuss these issues and next steps.  The Debtor therefore requests a status conference be scheduled at the Court's earliest convenience.

At the September 29 Status Conference, the parties reported the successful outcome of the mediation before the Hon. Lisa J. Beckerman that resulted in a settlement (the "**Settlement**") among the Debtor, the Sponsor, and the Notes Trustee, on behalf of the Noteholders (collectively, the "**Settlement Parties**") of "***all current disputes among the Settlement Parties relating to the Proposed Plan, the Investment Agreement, the MLPSA, and the Settlement Parties' respective disputes, claims and obligations thereunder.***"  The principal terms of the Settlement were agreed to by the Settlement Parties, confirmed via email on September 22, 2022, and read into the record at the September 29 Status Conference.  Among other material terms, the Sponsor agreed to reasonable extensions of milestones and deadlines (e.g., to extend the deadlines under the Investment Agreement for the Confirmation Hearing, entry of the Confirmation Order, and the outside Closing Date).

At that time, the Debtor informed the Court the parties would implement the Settlement pursuant to (i) a third amendment to the Investment Agreement, (ii) a settlement and release agreement resolving all disputes between the Sponsor and the Notes Trustee, on behalf of the Series C Noteholders, relating to the MLPSA, subject to occurrence of the Effective Date, (iii) a second amended version of the Proposed Plan, and (iv) a second supplement to the Court-approved Disclosure Statement describing the terms of the Settlement and other case updates (collectively, the "**Settlement Documents**"). The Court informed the parties that a Confirmation Hearing could be held on December 5-6, 2022.  With all relevant parties in attendance, the Debtor informed the Court that those dates were acceptable because the Settlement Documents should be completed within a week or so to allow sufficient time for the Debtor to commence its solicitation process, including taking the necessary steps in Israel to solicit the votes of the Noteholders on the Proposed Plan.  The Sponsor did not object to that timeline.  As a result, the Debtor informed the Court the Confirmation Hearing and all confirmation and solicitation related deadlines would be adjourned approximately thirty (30) days to allow the parties sufficient time to finalize the Settlement Documents.  However, the parties understood and Debtor's counsel made clear that the Settlement Documents needed to be finalized and filed with the Court by approximately October 3, 2022 to avoid further delays and to keep to this revised timeline.

Notwithstanding that the Settlement Parties agreed to the principal terms of the Settlement over a month ago and incorporated these terms into the various documents, the Sponsor has not executed the documents.  For the first time on a call on November 1, 2022, the Sponsor indicated it had three "material" outstanding issues with respect to the Investment Agreement including that the Sponsor is

November 4, 2022                        **Weil, Gotshal & Manges LLP**
Page 3

now unwilling to grant a reasonable extension of the outside Closing Date as agreed to by the parties under the terms of the Settlement. As set forth below, none of these issues warrant further delay.

i. <u>Reasonable Extension of the Outside Closing Date</u>. As part of the Settlement, the Settlement Parties agreed to "reasonably extend the applicable deadlines and milestones under the Investment Agreement (approx. 21 days) to allow for the documenting of the Settlement and amending of and voting on the Proposed Plan and the Investment Agreement." To accomplish this, as discussed at the September 29 Status Conference, the parties agreed to adjourn the Confirmation Hearing from November 2, 2022 to December 5-6, 2022 and to extend all other dates and deadlines relating to the Proposed Plan and the Investment by approximately thirty (30) days. As a result, the parties initially anticipated extending the outside date for Closing under the Investment Agreement from December 31, 2022 to January 31, 2023. The time-period between confirmation and Closing is necessary for the Debtor to have sufficient time to obtain recognition of the Proposed Plan and the Confirmation in the Israeli Recognition Proceeding, a required condition for the Proposed Plan to become effective. As previously communicated to the Sponsor, the Debtor understands from its Israeli counsel that it will likely take at least thirty (30) days following entry of the Confirmation Order by the Bankruptcy Court to obtain such relief from the Israeli Court.[2]

As discussed at the September 29 Status Conference, the extended confirmation timeline required the Settlement Documents be finalized and filed by approximately October 3, 2022 to allow sufficient time to solicit the votes of the Debtor's Noteholders in Israel, which requires at least 14 days under Israeli law. As a result of the delay in finalizing the Settlement Documents, there was no longer sufficient time to solicit the Noteholder votes and keep to the scheduled December 5-6 Confirmation Hearing. As early as October 24, 2022, the Debtor informed counsel for each of the Sponsor and the Notes Trustee that a December 2022 Confirmation Hearing was no longer possible in light of the applicable solicitation and notice requirements, and that the earliest the Bankruptcy Court was now available to hold the Confirmation Hearing was January 10, 2023. As a result, the outside date for Closing under the Investment Agreement would need to be extended to February 28, 2023 as opposed to January 31, 2023 as originally contemplated by the Settlement Parties, to allow sufficient time post-confirmation to obtain recognition of the Proposed Plan and the Confirmation Order in the Israeli Recognition Proceeding.

---

[2] The Investment Agreement originally provided approximately fifty-nine (59) days between the scheduled November 2, 2022 Confirmation Hearing and the December 31, 2022 outside Closing Date. With a January 11, 2023 Confirmation Hearing and a proposed outside Closing Date under the Investment Agreement of February 28, 2023, the Debtor's proposed revised dates in connection with the Settlement actually shortens that time period to approximately forty-eight (48) days.

November 4, 2022  
Page 4

**Weil, Gotshal & Manges LLP**

Notwithstanding the parties' agreement to reasonably extend the applicable deadlines and milestones under the Investment Agreement, the Sponsor is now unwilling to provide this extension of the outside date for Closing as required under the Settlement. The extended delay in executing the Settlement Documents has not been warranted and is no fault of the Debtor. In all events, there is no valid reason to delay any further. With the Settlement Documents finally executed, the Debtor will be prepared for confirmation at the earliest available date, *i.e.*, January 10. The roughly thirty-day period from the anticipated entry of the Confirmation Order to secure relief in the Israeli Recognition Proceeding has not changed. At the same time, the Sponsor is protected from an extended recognition process by its ability to terminate the Investment Agreement if the Closing does not occur by the outside Closing Date. Accordingly, an outside Closing Date of February 28, 2023 is reasonable in light of the post-settlement delays and the Court's availability in late December or early January.[3]

If, however, the Court has availability for a Confirmation Hearing the last week of December 2022, the Debtor believes there is sufficient time to solicit the Proposed Plan if the Settlement Documents are finalized and filed within the next seven (7) days, which would allow the parties to keep to the January 31, 2023 outside Closing Date.

ii. <u>Use of the Debtor's Cash to Administer Remainder of the Chapter 11 Case</u>. The Sponsor now contends that because the Investment Agreement contemplates the Debtor's rights and claims under a settlement agreement with MY 2011 Grand LLC (the "**Grand Living Settlement**") will be an asset of the Reorganized Debtor post-Closing, the Debtor should not use any of the $5,251,200 in proceeds pre-Closing (the "**Settlement Proceeds**") it received on account of the Grand Living Settlement. Rather, the Sponsor contends the Debtor should place such funds into escrow pending the Closing. However, there is no requirement under the Investment Agreement restricting the Debtor's ability to utilize the Settlement Proceeds prior to the Closing, nor is there any requirement or covenant that the Debtor place the Settlement Proceeds into escrow pending the Closing. The Debtor is entitled to access its cash to fund its operations and administer the Chapter 11 Case.

---

[3] Pursuant to Section 8.01(d) of the Investment Agreement, the Plan Sponsor is not entitled to a Break-Up Fee or Expense Reimbursement if the Investment Agreement "is terminated as a result of a breach by the Plan Investor of its obligation to consummate the Closing when required pursuant to the terms of this Agreement or as a result of a material breach of any other of its covenants or agreements herein." In addition, if the Investment Agreement is terminated by the Debtor due to the Sponsor's breach under Section 11.01(c), which concerns the failure to comply with any covenant or agreement that would cause a Closing Condition not to be satisfied, the Debtor is entitled to retain the Deposit which, by agreement of the parties, have been utilized as DIP Loan Proceeds, and the Debtor "shall have no further obligations to the Plan Investor hereunder with respect to such proceeds." DIP Term Sheet [ECF No. 120, Ex. 1].

November 4, 2022  
Page 5

**Weil, Gotshal & Manges LLP**

        Although not required, to resolve this issue, the Debtor will separately account for any Settlement Proceeds it utilizes prior to the Effective Date and agree to a dollar-for-dollar reduction to the $38 million cash component of the Sponsor Contribution to be paid by the Sponsor on the Effective Date in accordance with the Investment Agreement and the Proposed Plan on the Effective Date for any such Settlement Proceeds utilized by the Debtor prior to the Effective Date.  The Debtor believes its proposed resolution of the treatment of the Settlement Proceeds addresses the Sponsor's concern.

   iii.    <u>Series C Noteholders Support</u>.  The Sponsor also is raising concerns regarding the amount of the Series C Noteholders' Claims for voting purposes and the risk the Series C Noteholders may vote to reject the Proposed Plan.[4]  The Debtor is not aware of any reason the Series C Noteholders would vote to reject the Plan, especially after their representatives agreed to the terms of the Settlement.  While not required, in an effort to provide the Sponsor comfort regarding the Series C Noteholders' commitment and support for the Proposed Plan, the Debtor understands the Notes Trustee will agree to call an immediate vote of the Series C Noteholders to approve the terms of the Settlement that relate to the treatment of the MLPSA deposit and the resolution of the MLPSA litigation.  This proposal provides the Sponsor with additional clarity regarding the Series C Noteholders' intentions regarding the Proposed Plan and the Investment Agreement.

The Debtor is hopeful the Settlement Parties can quickly execute the Settlement Documents and move forward with solicitation and confirmation of the Proposed Plan.  None of the issues the Sponsor now raises with respect to the Investment Agreement and the Proposed Plan warrant delay.  Therefore, it is not appropriate for the Sponsor to rely on these issues as a basis for not executing the Settlement Documents.  The Debtor cannot afford further delays to the Chapter 11 Case timeline.  Every day the Debtor remains in chapter 11 it incurs significant expense and disruption to its operations.  The Debtor maintains a portfolio of over 100 residential and commercial properties which have their own property-level partners and lenders.  Additional delay and uncertainty with respect to the Proposed Plan confirmation timeline will only further complicate and damage the Debtor's relationships with its partners and lenders and jeopardize the Debtor's ability to maintain its operations and manage its portfolio in the ordinary course to the detriment of all parties in interest, including the Sponsor.

Although a meeting was held between the principals of the Debtor and the Sponsor on November 3, 2022, no resolution of the Sponsor's issues was reached.  On November 4, 2022, the Sponsor sent a letter to the Debtor which further discussed the Sponsor's position on these issues and cited several concerns that the Sponsor now has with respect to the economics of the transaction contemplated under the Investment Agreement, including concerns related to the current market for financing and a

---

[4] The Sponsor previously approved the amount of the Series C Noteholders' Claims for all purposes, including voting purposes, when the Sponsor approved the Proposed Plan and the Debtor's solicitation procedures on or about May 31, 2022.

November 4, 2022  **Weil, Gotshal & Manges LLP**
Page 6

purported decrease in the overall value of the Debtor.[5] A copy of the letter is attached hereto as **Exhibit A**.

Accordingly, the Debtor requests a status conference with the Court at its earliest convenience to discuss the outstanding issues and next steps with respect to the Investment Agreement and the Proposed Plan. To move the confirmation process forward, contemporaneously with the filing of this letter, the Debtor has filed its proposed second Disclosure Statement supplement together with proposed final forms of the second amended Proposed Plan and the third amendment to the Investment Agreement.

We are available should the Court have any questions.

Respectfully submitted,

*/s/ Gary T. Holtzer*
Gary T. Holtzer

---

[5] Shortly before the filing of this letter, the Sponsor also provided the Debtor with comments to the third amendment to the Investment Agreement, however, these comments only reaffirmed the Sponsor's position with respect to the three material issues discussed above and did not resolve any of these issues.

## Exhibit A

## Letter from Sponsor

WEIL:\98885466\8\12817.0007



Brookfield Place, 200 Vesey Street
20th Floor
New York, NY 10281-2101
Telephone:  212-415-8600
Fax:  212-303-2754
www.lockelord.com

Shalom Jacob
Direct Telephone:  212-415-8618
sjacob@lockelord.com

November 4, 2022

By Email

Gary T. Holtzer, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153-0119

Re:  In re All Year Holdings Limited, Case No. 21-12051

Dear Gary:

We are responding on behalf of Paragraph Partners LLC (the "Sponsor") to the letter that we received from you at approximately 7:07 p.m. on November 2, 2022. We firmly disagree with many of the statements and characterizations in your letter.  We will not, in this letter, respond to each and every misstatement and mischaracterization. Nevertheless, there are certain fundamental misstatements which we feel compelled to correct now.

Your effort to blame the Sponsor for the status of this case is outrageous.  The parties were proceeding on the original confirmation schedule when Mishmeret Trust Company ("Mishmeret"), as representative of the holders of the Series C notes issued by All Year Holdings Limited (the "Debtor"), wrongfully terminated its agreement to sell the William Vale mortgage loan to the Sponsor.  Upon learning of the notice of termination that Mishmeret sent the Sponsor, the Debtor immediately took that position that the mortgage loan purchase and sale agreement had terminated according to its terms, notwithstanding that the Sponsor rejected that position and provided you with credible evidence that Mishmeret should not have terminated the agreement.

Although the Debtor, the Sponsor and Mishmeret reached an agreement in principle in the mediation conducted by Judge Beckerman, the parties  have not thus far agreed the terms of the necessary documents to implement the tentative agreement, largely due to the insistence by the Debtor and Mishmeret on new terms that were not discussed during the mediation and changes to the terms to which the parties had tentatively agreed.

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles
Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

130269289v.1

Gary T. Holtzer, Esq.
November 4, 2022
Page 2

Grand Living Settlement.

When the Sponsor executed the Investment Agreement, it expected that the Reorganized Debtor it was agreeing to acquire would have the right to collect the amounts due pursuant to the MY 2011 Grand Living Settlement referenced in your letter. To that end, the Investment Agreement expressly states that the Debtor's rights concerning this settlement would not be an Excluded Asset. But for the delays caused by the Debtor and Mishmeret, the Closing would likely have occurred before the Debtor received these funds on or about October 15, 2022. Clearly, the Debtor knew at the time of the mediation that it would soon be receiving the Settlement Proceeds (defined in your letter) and that it intended to use these proceeds in operating the Debtor and its subsidiaries. During the mediation, the Debtor and the Sponsor had extensive discussions concerning potential adjustments to the Purchase Price, yet the Debtor failed to disclose its intention to deplete the Settlement Proceeds and impose a credit on the Sponsor.

On or about October 11, 2022, we became aware that the Debtor might receive the Settlement Proceeds as soon as October 14, 2022. Accordingly, we addressed the disposition of the Settlement Proceeds in an October 13, 2022, letter to you, in which we sought confirmation that the Debtor would segregate and not use the Settlement Proceeds. The Debtor delayed responding to our letter for two weeks as you pressed the Sponsor to move forward with the settlement documents. Furthermore, despite the discussion in the mediation regarding purchase price adjustments, the Debtor did not mention this intended adjustment. The Debtor's offer of a reduction of the cash component of the Sponsor Contribution to the extent that the Settlement Proceeds are utilized is unacceptable and obviously does not compensate for the reduction in liquidity in the estate.

Had the Debtor disclosed to the Sponsor during the mediation that the Debtor would be using the Settlement Proceeds, the matter could have been discussed and potentially resolved during the mediation. It unfortunately was not and the issue remains open.

Israeli Recognition Process.

At the mediation, the parties agreed to extend the outside date for the Closing until January 31, 2022. Subsequently, on or around October 24, 2022, the Debtor asked the Sponsor for the first time to extend the date to February 28, 2022, and perhaps until later than that, in order to secure recognition of the Proposed Plan and the Confirmation Order in the Israeli Recognition Proceeding. The Debtor did not disclose that one reason for this delay appears to be that certain parties in Israel have raised objections that are causing those proceedings to take longer than had been anticipated.

The Sponsor is not the cause of any perceived need to extend the outside date for the Closing beyond the date to which the parties agreed at the mediation. If the Debtor and/or Mishmeret had any uncertainty about the time that would be needed to close the

Gary T. Holtzer, Esq.
November 4, 2022
Page 3

Investment Agreement transaction, they should have raised those concerns at the mediation.  Extending the outside date would add uncertainty to the Sponsor's prospects for obtaining financing, as described above.  If the Debtor and/or Mishmeret want the Sponsor to agree to an extension, they must consider the additional risk and costs that would impose upon the Sponsor and expect to compensate the Sponsor accordingly.

Series C Noteholders.

The Sponsor has serious concerns about the Series C Noteholders' disproportionate power to control voting over the Plan, especially in light of the lack of good faith they have shown during this case.  Although your letter states that the Debtor is not aware of any reason that the Series C Noteholders would vote to reject the Plan, as noted above we have heard that parties in Israel have objections to the Plan.  For that reason, we raised the point that, in our view, the amount to be voted by the Series C Noteholders under the Plan and Disclosure Statement is significantly and improperly overstated and gives the Series C Noteholders the ability to veto the Plan.  Additionally, we would expect that the noteholders other than the Series C Noteholders could be concerned the distributions to be made pursuant to the Plan may be unfairly directed to the Series C Noteholders, who have a source of recovery other than the Plan.

As you are also aware, throughout the process of negotiating and attempting to close the equity and mortgage loan transactions, Mishmeret and the Debtor have attempted to dictate the terms that the Sponsor must accept, and after agreements have been reached they have attempted to change those terms.  During this time, the market for the financing that the Sponsor anticipated obtaining both to fund its obligations under the Investment Agreement and to refinance the property level mortgage debt has become increasingly uncertain, with interest rates soaring.  The value of the Debtor has decreased, the risk that the Sponsor will take has increased and the agreements pursuant to which the Sponsor would have acquired controlling interests in the William Vale hotel have been cast aside.  The recently requested extension of the outside date for Closing under the Investment Agreement to at least February 28, 2023, only serves to further increase the uncertainty in which the Sponsor finds itself.

The Sponsor has remained and remains interested in acquiring the Debtor.  We understand that our respective clients met yesterday in order to try to resolve the remaining issues. Of course, our comments remain subject to these ongoing discussions.

Very truly yours,

Shalom Jacob

130269289v.1