

Brookfield Place, 200 Vesey Street
20th Floor
New York, NY 10281-2101
Telephone:  212-415-8600
Fax:  212-303-2754
www.lockelord.com

Stephanie Wickouski
Direct Telephone:  212-912-2822
Direct Fax:  212-812-8366
swickouski@lockelord.com

November 7, 2022

Via Email and ECF

Honorable Martin Glenn
Chief United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

Re:    *In re All Year Holdings Limited, Chapter 11 Case No. 21-12051 (MG)*

Dear Chief Judge Glenn:

Our firm represents Paragraph Partners LLC, the plan sponsor in this case (the "Sponsor").  We are writing in advance of the status conference to be held at 4:00 p.m. today. The Debtor's letter dated November 4, 2022, which requested a status hearing, seeks to schedule the confirmation hearing to a date in December.  Since we learned of the status conference at only 12:32 p.m. today, we have not been able to reach our client with respect to a December hearing date.  We ask for a short time (at least 48 hours) to consult with our client before a December date is set, as the parties had been anticipating a January date. However, we want to flag one practical issue which likely makes a December confirmation date impracticable.

The Sponsor has been working with the secured lenders of the Debtor's subsidiaries to insure a smooth assignment of the mortgage loans on the subsidiary properties. Freddie Mac, one of the lenders, and perhaps other lenders require that all documentation be in place prior to confirmation. The Sponsor is very concerned that if the documentation is not in place that these lenders may object to confirmation.

In any event, we feel compelled to correct the record with respect to certain misstatements in the Debtor's letter to the Court. First, the Debtor statement the Sponsor is unwilling to execute the Settlement Documents -- implying that both the Debtor and Mishmeret Trust Company (the "Notes Trustee") are willing to do so --   is not  accurate.

There are two primary Settlement Documents, Amendment No. 3 to the Investment Agreement ("Amendment No. 3") and a settlement agreement between the Sponsor and the Notes Trustee (the "MLPSA Settlement Agreement").  The Sponsor has made comments to the draft of Amendment No. 3, but its comments have not been incorporated yet.

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles
Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

130291868v.1

Honorable Martin Glenn
Chief United States Bankruptcy Judge
November 7, 2022
Page 2

The Sponsor approved the draft MLPSA Settlement Agreement, but Mishmeret has declined to sign it at this time.  The Notes Trustee's initial draft of the agreement provided that the Sponsor would sign immediately but the Notes Trustee would not be required to sign until after the Series C Noteholders had held a vote and approved the agreement. At the Sponsor's request, this was amended to provided that the Sponsor and the Notes Trustee will execute the MLPSA Settlement Agreement "simultaneously." The Notes Trustee still will not sign the agreement until after the Series C Noteholders have had a vote and approved the agreement.  That has not occurred. Thus, the Sponsor is under no obligation to execute it.

As for other allegations made in the Debtor's letter, including a controversy over the disposition of certain asset proceeds, we respectfully submit these are not properly before the Court. Although it is appropriate for the Debtor to raise scheduling issues with the Court by letter, it is not appropriate for the Debtor to attempt to litigate issues among the Sponsor, the Debtor and the Notes Trustee, by a letter writing campaign, or to use such a tactic to coerce the Sponsor to make further concessions that go well beyond what was mediated. As the Debtor suggests, the purpose of the mediation conducted by Judge Beckerman was to resolve all issues. Nevertheless, the Debtor choose not to raise certain issues during the mediation.  The Debtor was apparently aware that it would be receiving proceeds of the MY 2011 settlement agreement and intended to use and dissipate such proceeds in operating its business, but this was never raised or even disclosed during the mediation. It should be noted that during the mediation, the Debtor and the Sponsor were negotiating an adjustment to the Purchase Price provided in the Investment Agreement, and thus it would have been logical for MY 2011 to be raised at that time.  The MY 2011 settlement agreement is not an Excluded Asset under the Investment Agreement, and the Sponsor expected that the Debtor's assets, including the MY 2011 settlement agreement, would be part of the Reorganized Debtor's assets when it emerged from bankruptcy.  The "credit" now offered by the Debtor is insufficient to compensate for the dissipation of the asset, for the reasons stated in Mr. Jacob's letter attached as Exhibit A to the Debtor's letter to the Court dated November 4, 2022.

Additionally, at the mediation the Sponsor agreed to a short delay of approximately twenty-one (21) days in the timeline for closing the Investment Agreement.  The outside closing deadline had been December 31, 2022.  Although an additional twenty-one (21) would move the closing deadline to January 31, 2023, after the mediation Sponsor agreed to January 31, 2022. Subsequently, without offering anything in return and, indeed, rejecting the Sponsor's demand that the MY 2011 settlement proceeds not be used, the Debtor recently insisted that the outside closing deadline be extended to at least February 28, 2023. The reason for the additional extension, that more time would be needed to obtain the necessary approvals in Israel, was not shared with the Sponsor until about one week ago.

We appreciate the Court's consideration and to the opportunity to address this matter at the status conference.

Respectfully,

*Stephanie Wickouski*
Stephanie Wickouski

130291868v.1