**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Gary T. Holtzer**
+1 (212) 310-8463
gary.holtzer@weil.com

November 9, 2022

Via Email and ECF

Honorable Martin Glenn
Chief United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

Re:  In re All Year Holdings Limited, Case No. 21-12051 (MG)

Dear Chief Judge Glenn:

We represent All Year Holdings Limited, as debtor and debtor in possession (the "**Debtor**") in the above-referenced chapter 11 case (the "**Chapter 11 Case**").  We submit this letter pursuant to the Court's order on the record at the status conference held on November 7, 2022 (the "**November 7 Status Conference**").

As directed by the Court, promptly following the conclusion of the November 7 Status Conference, Debtor's counsel telephoned counsel to Paragraph Partners LLC (the "**Sponsor**") regarding the outstanding issues between the parties, including the Sponsor's unwillingness to acknowledge its contractual obligations to: (i) execute the Settlement Documents[1]; (ii) extend the Confirmation Hearing dates to January 10 – 11, 2023; (iii) extend all other deadlines and milestones, including the Outside Date for Closing under the Investment Agreement and the maturity date for the DIP Loan to February 28, 2023; and (iv) permit the Debtor to utilize its own cash to fund its operations and the Chapter 11 Case, including the Grand Living Settlement Proceeds.

On that call, Debtor's counsel clearly set forth the parameters of what the Debtor believes is required to confirm the Sponsor's intention to move forward and close on its binding commitments under the Investment Agreement and the mediated settlement.  Debtor's counsel followed-up that call with an email to the Sponsor's counsel that same evening.  Unfortunately, other than requesting additional time (which would serve no purpose other than further delay), the Sponsor provided no indication it is willing to perform or provide adequate assurances it will do so if the Court holds a Confirmation Hearing on

---

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Debtor's prior status letter to the Court filed on November 4, 2022 [ECF No. 255] (the "**Prior Status Letter**") or the Investment Agreement, as applicable.

**Weil, Gotshal & Manges LLP**

November 9, 2022
Page 2

January 10–11, 2023 and issues a Confirmation Order shortly thereafter. To the contrary, the Sponsor has by email dated November 9, 2022 refused to perform its contractual obligations.

As a result, the Sponsor is in breach of the Investment Agreement, notice of which has been provided contemporaneously with this letter. The Sponsor has ten business days to cure its defaults such that the Plan, if approved, can be confirmed and become effective by February 28, 2023. The Debtor will inform the Court and the parties in interest whether or not the Sponsor has cured within the ten business day period specified under the Investment Agreement. If the Sponsor fails to cure within the ten business day period, the Debtor will additionally update the Court regarding the remedies, including specific performance, that it may exercise, or regarding a revised plan to move forward without the Sponsor's involvement.[2]

I.    **Sponsor's Breach of the Investment Agreement**

As set forth in the Prior Status Letter, despite the fact that the principal terms of the Settlement were agreed upon over a month ago, and the Settlement Documents have been substantially finalized for several weeks, the Sponsor has not executed the Settlement Documents. As a result of the Sponsor's continued delay in finalizing the Settlement Documents and its statements and actions indicating an unwillingness to move forward with the Proposed Plan and Investment Agreement on their agreed upon terms, the Sponsor is in breach of the Investment Agreement.

Section 6.06 of the Investment Agreement requires the Sponsor to "refrain from taking any actions that would reasonably be expected to impair, delay or impede the Closing" and to "use reasonable best efforts to cause all Closing Conditions and covenants of the other Party to be met as promptly as practicable." Inv. Agmt.§ 6.06. Section 8.02(c) of the Investment Agreement further provides that the Sponsor "shall support and take all actions necessary or reasonably requested by the Company to support, and shall not oppose in any way, the Plan and the Ancillary Approval Orders, the solicitation of votes with respect thereto,…. confirmation and consummation of the Plan (and, for the avoidance of doubt, to not take any actions inconsistent with such obligations), including to promptly take such actions as are *reasonably requested by the* Company to assist in obtaining entry of the Confirmation Order and the Ancillary Approval Orders…." Inv. Agmt. § 8.02(c) (emphasis added). The Sponsor's obligations under these provisions required the Sponsor to move quickly and efficiently to execute the

---

[2] For the avoidance of doubt, pursuant to Section 8.01(d) of the Investment Agreement, no Break-Up Fee or Expense Reimbursement will be due and owing to the Sponsor if the Investment Agreement "is terminated as a result of a breach by the [Sponsor] of its obligation to consummate the Closing when required pursuant to the terms of this Agreement or as a result of a material breach of any other of its covenants or agreements herein." In addition, in the event the Investment Agreement is terminated by the Debtor pursuant to Section 11.01(c) thereof, the Debtor "shall be entitled to retain the DIP Loan Proceeds and shall have no further obligations to the Plan Investor hereunder with respect to such proceeds." DIP Term Sheet [ECF No. 120, Ex. 1].

**Weil, Gotshal & Manges LLP**

November 9, 2022
Page 3

Settlement Documents to ensure that the previously scheduled dates for Confirmation, December 5–6, 2022, would remain feasible. When, due to the Sponsor's own delays, those dates became no longer feasible, Sections 6.06 and 8.02(c) of the Investment Agreement required the Sponsor to agree to reasonable extensions of the applicable deadlines. As discussed below, the Sponsor did agree to reasonable extensions of the applicable deadlines in a written email from its counsel affirming and agreeing to the terms of the mediation Settlement, yet it has since failed to perform its obligations. Accordingly, the Sponsor is in breach of its obligations under the Investment Agreement.

In terms of scheduling a hearing for Confirmation, Section 8.03 of the Investment Agreement provides that "The Bankruptcy Milestones may be extended upon mutual agreement between the Company and Plan Investor or *as necessary to accommodate the availability of the Bankruptcy Court* and shall be subject to any extension provided for in Section 8.01(c)." Inv. Agmt. § 8.03 (emphasis added). The Debtor has the unilateral right under this provision to request the January 10–11, 2023 Confirmation Hearing dates even over the Sponsor's objection, and the Court has the power to set these dates under its inherent authority to manage its docket. In addition, Sponsor's counsel confirmed by electronic mail its agreement to reasonable extensions and thus, under the first clause of Section 8.03 of the Investment Agreement, mutual agreement has been obtained. In either case, the Sponsor's failure to support the Confirmation Hearing dates of January 10 – 11, 2023 constitutes a breach of the Investment Agreement.

## II.     Sponsor's Breach of the Settlement

Additionally, as part of the Settlement mediated by Judge Beckerman, the Sponsor agreed to "reasonably extend the applicable deadlines and milestones under the Investment Agreement (approx. 21 days) to allow for the documenting of this settlement, amending of the Plan and Investment Agreement, and voting on the Plan and Investment Agreement." This necessarily included extensions for the deadlines for the Confirmation Hearing and the Outside Date for Closing under the Investment Agreement as well as the maturity date for the DIP Loan which was set to mature on December 31, 2022 (the same date as the Outside Date for Closing) and incorporated by reference all of the deadlines and milestones under the Investment Agreement. That agreement was assented to by the Sponsor's counsel via email on September 23, 2022. Section 12.11 of the Investment Agreement provides that the Investment Agreement "may be amended, restated, supplemented, or otherwise modified, only by written agreement duly executed by each Party." Inv. Agmt. § 12.11. Section 12.01(f)(ii) of the Investment Agreement provides that "references to 'written' or 'in writing' include in electronic form (including by e-mail transmission …)." The Settlement is thus a binding agreement and can be fairly construed as an amendment to the Investment Agreement's milestones and deadlines. *See* Inv. Agmt. §§ 12.01(f)(ii) and 12.11.

The Debtor's proposed extension of the Outside Date for Closing under the Investment Agreement (and Maturity Date under the DIP Loan) to February 28, 2023 is clearly reasonable. As set forth in the Prior Status Letter, as a result of the delay in finalizing the Settlement Documents, there was no longer

3

**Weil, Gotshal & Manges LLP**

November 9, 2022
Page 4

sufficient time to solicit the Noteholder votes and keep to the scheduled December 5-6, 2022 Confirmation Hearing. As early as October 24, 2022, the Debtor informed counsel for each of the Sponsor and the Notes Trustee that a December 2022 Confirmation Hearing was no longer possible in light of the applicable solicitation and notice requirements, and that the earliest the Bankruptcy Court was now available to hold the Confirmation Hearing was January 10, 2023. As a result, the Outside Date under the Investment Agreement needs to be extended to February 28, 2023 as opposed to January 31, 2023 as originally contemplated by the Settlement Parties, to allow sufficient time post-confirmation to obtain recognition of the Proposed Plan and the Confirmation Order in the Israeli Recognition Proceeding. The extension of the Outside Date to allow for approximately forty-eight days between the Confirmation Hearing and the Closing Date is also consistent with the prior schedule agreed to by the parties.[3] Accordingly, the Sponsor's continued and unjustifiable refusal to consent to a reasonable extension of the relevant milestones and deadlines is a material breach of the Settlement.

As discussed above, the Debtor has provided notice to the Sponsor of the Sponsor's breach of the Investment Agreement contemporaneously with this letter. The Debtor will inform the Court and the parties in interest whether or not the Sponsor has cured within the ten business day period specified under the Investment Agreement. In the event the Sponsor fails to cure within the ten business day period, the Debtor will additionally update the Court regarding the remedies, including specific performance, that it may exercise, or regarding a revised plan to move forward without the Sponsor's involvement. In the interim, the Debtor requests that the Court hold open the January 10–11 dates for Confirmation.

We are available should the Court have any questions.

Respectfully submitted,

*/s/ Gary T. Holtzer*
Gary T. Holtzer

---

[3] The Investment Agreement previously provided approximately fifty-nine (59) days between the scheduled November 2, 2022 Confirmation Hearing and the December 31, 2022 Outside Date for Closing. With a January 11, 2023 Confirmation Hearing and a proposed Outside Date under the Investment Agreement of February 28, 2023, the Debtor's proposed revised dates in connection with the Settlement would have actually shortened that time period.