**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| ALL YEAR HOLDINGS LIMITED, | : | Case No. 21-12051 (MG) |
| Debtor. | : | |

**NOTICE BY PARAGRAPH PARTNERS LLC OF REVOCATION**
**OR IN THE ALTERNATIVE TERMINATION OF THE**
**INVESTMENT AGREEMENT**

**PLEASE TAKE NOTICE** that on November 15, 2022, Paragraph Partners LLC issued the attached notice of its revocation or, in the alternative, termination of the Investment Agreement dated March 11, 2022, as amended.

**PLEASE ALSO TAKE NOTICE** that nothing herein shall be deemed to waive any of Paragraph Partners LLC's rights and remedies at law and equity, and all such rights and remedies are expressly reserved.

November 15, 2022                                    Respectfully Submitted,

                                                                    **LOCKE LORD LLP**

                                                                    */s/ Shalom Jacob*
                                                                    Shalom Jacob
                                                                    Stephanie Wickouski
                                                                    Alan H. Katz
                                                                    Brookfield Place
                                                                    200 Vesey Street, 20th Floor
                                                                    New York, New York 10281
                                                                    Tel: (212) 415-8600
                                                                    Fax: (212) 812-8370

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2022 a copy of the foregoing was filed electronically and served by operation of the court's electronic filing system. Parties in interest may access this document through the court's CM/ECF System or contact counsel for a copy.

*/s/ Shalom Jacob*
Shalom Jacob



Brookfield Place, 200 Vesey Street
20th Floor
New York, NY 10281-2101
Telephone:  212-415-8600
Fax:  212-303-2754
www.lockelord.com

Shalom Jacob
Direct Telephone:  212-415-8618
sjacob@lockelord.com

November 15, 2022

By email and overnight delivery

All Year Holdings Limited[1]
12 Spencer Street, 3rd Floor
Brooklyn, NY 11211
Attn: Mr. Asaf Ravid and Mr. Ephraim Diamond
Email: ravidasaf@gmail.com; ephraim@arbelcapital.com

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York NY 10153
Attention: Gary Holtzer and Gavin Westerman
E-mails: gary.holtzer@weil.com; gavin.westerman@weil.com

Gentlemen:

Reference is hereby made to that certain Investment Agreement, dated March 11, 2022 (as amended on April 21, 2022, May 27, 2022, and September 23, 2022 (via email), and together with all schedules and exhibits thereto, the "Investment Agreement"), between All Year Holdings Limited (the "Debtor"), Paragraph Partners LLC (the "Sponsor"), and, with respect to certain limited provisions, Mishmeret Trust Company Ltd., solely in its capacity as trustee for the Debtor's Series B, C, D and E Notes (the "Notes Trustee"). This provides written notice of the Sponsor's intent to revoke immediately or, in the alternative, terminate the Investment Agreement, effective ten (10) days from the date of this letter.

I.     The Investment Agreement is not effective except as to the Break-Up Fee provided therein.

By its terms, the Investment Agreement is not effective without court approval. *See, e.g.*, Section 8.02(a), which states: "The Company and Plan Investor acknowledge and agree that this Agreement and the Transactions are subject to entry of the Confirmation Order and the Ancillary Approval Orders that embodies the terms of this Agreement."

---

[1] This letter is addressed to All Year Holdings Limited solely due to the notice requirements of Section 12.03 of the Investment Agreement.

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles
Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

130386696v.7

All Year Holdings Limited
November 15, 2022
Page 2

Section 8.01(b) provides, in pertinent part: "Within 14 days following the Agreement Date, the Company shall file a motion with the Bankruptcy Court reasonably satisfactory to the Plan Investor seeking approval by the Bankruptcy Court of the Company's entry into this Agreement …."

The Company has not filed a motion seeking approval by the Bankruptcy Court of the Company into the Investment Agreement, nor have a confirmation order and ancillary approval orders been entered embodying the terms of the Investment Agreement. Because the Investment Agreement has not been authorized or approved by the Bankruptcy Court, either upon motion as contemplated by Section 8.01(b) or in a confirmation order or ancillary approval order as stated in Section 8.02(a), the Investment Agreement did not become effective and the Company has no rights to enforce it.[2]

Moreover, the Company, by its letters dated November 9, 2022, to the Bankruptcy Court and to the Sponsor, respectively, unambiguously repudiated the Investment Agreement. The Company's letter to the Sponsor purports to assert the Company's alleged right to terminate the Investment Agreement. However, the Company's failure to obtain court approval of the Investment Agreement negates any rights it purports to assert in its letter.

2. <u>Alternatively, the Sponsor is entitled to validly terminate the Investment Agreement</u>.

Even if the Company did have rights under the Investment Agreement, which it does not, its numerous breaches entitle the Sponsor to validly terminate it.

To the extent the Investment Agreement may be deemed binding (notwithstanding the lack of authorization and approval), the Sponsor invokes its right to terminate the Investment Agreement under Section 11.01(c), which provides that the Sponsor may terminate the Investment Agreement before the Closing "if the other party shall have breached any representation or warranty or failed to comply with any covenant or agreement that would cause any Closing Condition set forth in Section 10.01(a) or Section 10.02(a) not to be satisfied, and (i) such breach is not waived or (ii) if such breach is curable and is not cured by the breaching party prior to the earlier of (A) ten (10) Business Days after receipt of notice of the other party's intent to terminate and (B) the Outside Date; provided, however, that the terminating party is not then in material breach of this Agreement."

The Company has breached representations and warranties or failed to comply with covenants or agreements that would cause a Closing Condition or Conditions not to be satisfied.

Section 6.01 of the Investment Agreement provides, in pertinent part:

> Plan Investor acknowledges that the Debtor will operate its Business in the context of the Bankruptcy Case and the Ancillary Proceedings. Subject to the foregoing, the Company shall use commercially reasonable efforts to, and shall use commercially reasonable efforts to cause (solely to the extent under its control, including in light of not being the manager of certain Transferred Entities), the other Transferred Entities to, maintain the Assets in their current condition (in all material

---

[2] On the Company's motion, the Bankruptcy Court entered an order approving the Break-Up Fee provided in the Investment Agreement. Only to the extent of the Break-Up Fee has the Investment Agreement become effective.

130386696v.7

All Year Holdings Limited
November 15, 2022
Page 3

> respects) and, preserve in all material respects the present business operations, organization and goodwill of the Business, and the present relationships with Persons having significant business relationships with the Business, and the parties to this Agreement shall cooperate with one another and shall take commercially reasonable steps to stabilize the Company's assets, work with mortgage lenders to lower debt service payments, resolve all open litigation, and pay all outstanding debts to facilitate securing a more stable cash flow, all consistent with recent past practice. Except (i) as required by applicable Law or by Order of the Bankruptcy Court or the courts in the Ancillary Proceedings, or as otherwise expressly contemplated by the Transaction Agreements or (ii) for matters identified on Schedule 6.01, during the Pre-Closing Period, unless Plan Investor otherwise consents in writing (which consent shall not be unreasonably withheld, conditioned or delayed), the Company will, and will use commercially reasonable efforts to cause (solely to the extent under its control, including in light of not being the manager of certain Transferred Entities), the other Transferred Entities to, conduct the Business in the ordinary course of business ….

In Section 4.11(a), the Company represents and warrants that "[t]o the Knowledge of the Company, no event has occurred in the last twelve (12) months or condition exists that with notice or lapse of time, or both, would constitute a material default by a Transferred Entity under any of the Real Property Leases, other than defaults that have been cured or waived in writing."

Section 8.02(d) provides, in pertinent party, that "the Company shall be responsible for making all necessary filings with the Bankruptcy Court and the courts in the Ancillary Proceedings, shall provide all necessary notices in connection therewith."

The Company is in breach of the above representations, warranties and covenants, and others, in the following non-exhaustive regards:

a.      The Company has failed to file a motion seeking approval of the Investment Agreement.

b.      The Company has failed to provide all necessary notices in connection with the filings it has made in the Bankruptcy Court.  Specifically, according to allegations made in a proceeding pending in Israel, the Company failed to notify certain directors of the Company, who allege that they have indemnification and/or other claims against the Company, of the Bankruptcy Case and the proceedings being taken therein.  This default jeopardizes the effectiveness of any confirmation order that may be entered by the Bankruptcy Court.

c.      Certain of the Transferred Entities have failed to segregate tenant deposits and have converted tenant deposits to the Transferred Entities, in violation of nonwaivable provisions of the General Obligation Law of the State of New York that are incorporated into real property leases. The Transferred Entities and the Company have known of this matter for many months, yet it has not been rectified.  This default exposes the Transferred Entities to the loss of the security provided by the deposits and, additionally, to the possibility of having to pay punitive damages in addition to returning deposits.  Further, we understand that the failure to segregate tenant deposits is the subject of an enforcement action by the Attorney General of the State of New York

All Year Holdings Limited
November 15, 2022
Page 4

that has not been concluded. The Transferred Entities that have failed to segregate tenant deposits are in material default under their Real Property Leases.

d.  The Transferred Entities are in default of certain of their mortgage loans, risking foreclosure or other action by the lenders, notwithstanding having been provided ample opportunity to cure such defaults. In particular, by multiple Notices of Non-Compliance and Reservation of Rights dated June 23, 2022, the Federal Home Loan Mortgage Corporation, as Master Servicer ("Freddie Mac"), which services in excess of forty (40) of the Transferred Entities' mortgage loans, notified the Company that the Transferred Entities whose loans are serviced by Freddie Mac are in default of their Loan Agreements because the Transferred Entities had changed property managers without first obtaining the consent of the respective lenders. Although Freddie Mac and its sub-servicers have been willing to work with the Company to cure these defaults, we understand that the defaults remain, primarily due to the failure of the Company and the Transferred Entities to provide Freddie Mac and the sub-servicers with property management agreements that meet Freddie Mac's requirements.

e.  The Company is apparently using and dissipating the proceeds of the MY 2011 Grand Settlement, notwithstanding that such proceeds are an asset that is to remain with the Reorganized Debtor.

f.  The Company has breached the Investment Agreement in the particulars set forth in the complaint the Sponsor filed against the Notes in Israel. Such breaches were to be resolved by the tentative agreement reached at the mediation conducted by Judge Beckerman. However, the Company has refused to honor the terms reached at the mediation, and the breaches have not been rectified.

The above mentioned breaches are not exhaustive. The Sponsor reserves all rights to assert additional breaches, and all remedies at law and equity.

III.    Revocation, Termination and Demand.

The Sponsor hereby revokes the Investment Agreement and, alternatively, terminates the Investment Agreement as authorized by Section 11.01(c). The Sponsor demands that the Company return the Escrowed Funds to the Sponsor and join with the Sponsor in providing written instructions directing the Escrow Agent to return the executed signature page of the Guaranty to the Sponsor.

Very truly yours,

Shalom Jacob

130386696v.7