**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Matthew P. Goren**
+1 (212) 310-8440
matthew.goren@weil.com

December 1, 2022

Via Email and ECF

Honorable Martin Glenn
Chief United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

Re: In re All Year Holdings Limited, Case No. 21-12051 (MG)

Dear Chief Judge Glenn:

We represent All Year Holdings Limited, as debtor and debtor in possession (the "Debtor") in the above-referenced chapter 11 case (the "Chapter 11 Case"). The Debtor, on behalf of itself, Paragraph Partners LLC (the "Sponsor"), and Mishmeret Trust Company Ltd., in its capacity as trustee to the Debtor's Series B Notes, Series C Notes, Series D Notes, and Series E Notes (the "Notes Trustee", and together with the Debtor and the Sponsor, the "Settlement Parties"), submits this letter to advise the Court of recent positive developments regarding the Investment Agreement dated March 11, 2022 (as amended, modified, and supplemented from time to time, the "Investment Agreement") and the Debtor's proposed chapter 11 plan of reorganization (the "Plan").[1]

Following numerous discussions, the Settlement Parties have reached a revised agreement (the "Revised Settlement") to settle and resolve all disputes between and among the Settlement Parties relating to the Plan, the Investment Agreement, the Mortgage Loan Purchase and Sale Agreement dated April 12, 2022 (the "MLPSA"), and the Settlement Parties' respective disputes, claims and obligations thereunder. The Revised Settlement supersedes in its entirety the prior mediated settlement agreed to by and among the Settlement Parties on September 23, 2022, and read into the record at a status conference before the Court on September 29, 2022 (the "Original Settlement"). The terms of the Revised Settlement are as follows:

---

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Investment Agreement or the Plan, as applicable.

To settle and resolve all current disputes between and among the Debtor, the Sponsor, and the Notes Trustee, on behalf of the Noteholders, relating to the Plan, the Investment Agreement, the MLPSA, and the Parties' respective disputes, claims and obligations thereunder, the Settlement Parties agree:

1. The YGWV interests will be Excluded Assets under the Plan and the Investment Agreement and the Debtor has no obligation to include the YGWV interests as part of the Reorganized Debtor or to transfer such interests to the Sponsor.

2. Pursuant to and subject to the terms of that Settlement Agreement with regard to the MLPSA (the "**MLPSA Settlement Agreement**") to be entered into simultaneously with the amendment to the Investment Agreement, on the Closing Date, (i) the Sponsor shall receive $2.5 million in cash from the MLPSA deposit in full and final settlement and release of all claims arising under or relating to the MLPSA, (ii) the $2.5 million payable to the Sponsor from the MLPSA deposit (the "MLPSA Settlement Amount") shall be directed to the Debtor and credited against the Revised Sponsor Contribution (as defined below) on the Closing Date, (iii) the remaining $5.0 million from the MLPSA deposit shall be released to the Notes Trustee, for the benefit of the Series C Noteholders, on the Closing Date, in full and final settlement and release of all claims arising under or relating to the MLPSA, (iv) until the foregoing payments are made, all parties' rights and claims under the MLPSA will be reserved and the litigation in Israel with respect to the MLPSA will be held in abeyance, and (v) upon receipt of each of the foregoing payments, the litigation in Israel with respect to the MLPSA shall be dismissed promptly thereafter.

3. The Settlement Parties commit to moving forward and closing under the Plan and the Investment Agreement, which Investment Agreement is binding and enforceable on the Settlement Parties in accordance with its revised terms, and with no further adjustments or changes to the terms (other than as set forth in settlement paragraph numbers four (4) through eight (8) below) or the provisions relating to assumed claims and liabilities, including all subsidiary liabilities, under the Plan and the Investment Agreement.

4. The Plan shall be revised to reduce the Sponsor Contribution to $43.5 million (the "Revised Sponsor Contribution"),[2] which shall be paid in full in cash on the Closing Date (*less* the initial $4.5 million Escrowed Funds, the Additional Escrowed Funds (as defined below), the MLPSA Settlement Amount, and an amount equal to any Grand Living Settlement Proceeds (as defined below) utilized by the Debtor prior to the Closing Date, if any). No New Notes shall be issued as part of the Revised Sponsor Contribution and there shall be no Purchase Price Adjustment under the Plan or the Investment Agreement. The Additional Escrowed Funds are in addition to the Escrowed Funds and the Guaranty, which remain in full force and effect under the Investment Agreement.

5. The Sponsor shall pay $4.5 million in cash to the Debtor as an additional deposit amount (the "Additional Escrowed Funds") within two business days of Bankruptcy Court approval of the 9019 Motion (defined below). The Additional Escrowed Funds shall be treated for all purposes as Escrowed Funds under the Investment Agreement.

---

[2] The Original Settlement provided for a reduction of $4.0 million in the purchase price (from $60 million to $56 million), comprised of a $2.0 million reduction in cash and a $2.0 million reduction in the principal amount of the New Notes.

6. The Settlement Parties agree that, prior to the Closing Date, the Debtor shall be entitled to utilize the $5,251,200 in proceeds from the MY 2011 Grand LLC (the "Grand Living Settlement Proceeds") to fund its operations, the operations of its non-Debtor subsidiaries, and to administer the Chapter 11 Case and the Ancillary Proceedings. The Debtor agrees to a dollar-for-dollar reduction to the Revised Sponsor Contribution paid by the Sponsor on the Closing Date, in accordance with the Investment Agreement and the Plan, for any such Grand Living Settlement Proceeds utilized by the Debtor or its non-Debtor subsidiaries prior to the Closing Date. The Debtor shall separately account for any Grand Living Settlement Proceeds utilized prior to the Closing Date and shall make such accounting available to the Sponsor, on reasonable advanced request, prior to the Closing Date.

7. The Settlement Parties agree that the Notes Trustee and the Noteholders shall not have any Class 3 General Unsecured Claims under the Plan.

8. The Settlement Parties agree to reasonably extend the applicable deadlines and milestones under the Investment Agreement and the DIP Documents to allow for the documenting of this Revised Settlement, amending of the Plan and Investment Agreement, and voting on the Plan and Investment Agreement. For the avoidance of doubt, the Sponsor agrees to extend the Outside Date for Closing under the Investment Agreement and the Maturity Date for the DIP Loan to March 31, 2023. The Investment Agreement shall be revised to provide, at the option of either party, the Closing may be deferred to no later than the Outside Date.

9. The Debtor shall consult with the Sponsor regarding notices and other filings in the Chapter 11 Case consistent with its existing commitments under the Investment Agreement.

10. The foregoing settlement paragraph number two (2) is subject to a favorable vote by the Series C Bondholders.

11. The Settlement Parties shall seek approval from the Bankruptcy Court of the terms of this Revised Settlement (but for the avoidance doubt, not the provisions of settlement paragraph number two (2) above, which shall be subject to the MLPSA Settlement Agreement) pursuant to Bankruptcy Rule 9019 (the "9019 Motion") reasonably promptly following written confirmation of the terms of the Revised Settlement from each of the Settlement Parties (which confirmation may be in the form of a confirmatory email).

12. Except as otherwise provided in the Revised Settlement, the Revised Settlement shall not constitute a waiver of any Settlement Party's rights under the Investment Agreement. The Settlement Parties' respective rights, including with respect to any asserted breaches, remain reserved pending Bankruptcy Court approval of the Revised Settlement pursuant to the 9019 Motion.

13. This Revised Settlement supersedes the Original Settlement agreed to by and among the Settlement Parties on September 23, 2022, in its entirety.

The Settlement Parties are preparing the 9019 Motion to approve the Revised Settlement (but for the avoidance doubt, not the provisions of settlement paragraph number two (2) above, which shall be subject to the MLPSA Settlement Agreement), which they anticipate filing with the Court in the coming days. Additionally, the Settlement Parties are preparing an amended version of the Plan and a third

supplement to the Disclosure Statement that describes the Revised Settlement and the corresponding changes to the Plan, which the Settlement Parties are diligently working to finalize and file with the Court in short order in anticipation of moving forward with a new Confirmation Hearing date of January 31, 2023 – February 1, 2023.  The revised confirmation schedule will be set forth in the third Disclosure Statement supplement and appropriate notice of the adjourned confirmation and solicitation deadlines will be filed and served on parties in interest.

The Settlement Parties are available should the Court have any questions.


Respectfully submitted,


/s/ Matthew P. Goren
Matthew P. Goren