**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
                              :

| | |
|---|---|
| **In re** | **Chapter 11** |
| | |
| **ALL YEAR HOLDINGS LIMITED,** | **Case No. 21-12051 (MG)** |
| | |
| **Debtor.[1]** | |
| | |
| **Fed. Tax Id. No. 98-1220822** | |

-----------------------------------------------------------------X

### THIRD SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF REORGANIZATION OF ALL YEAR HOLDINGS LIMITED

**WEIL, GOTSHAL & MANGES LLP**
Gary T. Holtzer
Matthew P. Goren

767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Debtor*

Dated: December 9, 2022
        New York, New York

---

[1]    The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

THE INFORMATION CONTAINED IN THIS THIRD SUPPLEMENT (THE "THIRD SUPPLEMENT") TO THE SECOND AMENDED DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF REORGANIZATION OF ALL YEAR HOLDINGS LIMITED, DATED JULY 20, 2022 [ECF NO. 160, EX. A] (AS PREVIOUSLY SUPPLEMENTED ON SEPTEMBER 15, 2022 [ECF NO. 215] AND NOVEMBER 4, 2022 [ECF NO. 257], AND AS MAY BE FURTHER AMENDED, SUPPLEMENTED, OR MODIFIED FROM TIME TO TIME, AND TOGETHER WITH ALL EXHIBITS AND SCHEDULES THERETO, THE "DISCLOSURE STATEMENT") IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE CHAPTER 11 PLAN OF REORGANIZATION OF ALL YEAR HOLDINGS LIMITED, DATED MAY 31, 2022 [ECF NO. 123] (AS AMENDED ON SEPTEMBER 15, 2022 [ECF NO. 214], NOVEMBER 4, 2022 [ECF NO. 256] AND DECEMBER 9, 2022 [ECF NO. 289], AND AS MAY BE FURTHER AMENDED, SUPPLEMENTED, OR MODIFIED FROM TIME TO TIME, AND TOGETHER WITH ALL EXHIBITS AND SCHEDULES THERETO, THE "PLAN").[2]  NO SOLICITATION OF VOTES TO ACCEPT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE (THE "BANKRUPTCY CODE").

THE HEARING ON CONFIRMATION OF THE PLAN IS SCHEDULED FOR JANUARY 31, 2023 AND FEBRAURY 1, 2023 AT 9:00 A.M. (PREVAILING EASTERN TIME) (THE "CONFIRMATION HEARING").

PURSUANT TO THE SOLICITATION PROCEDURES ORDER (DEFINED BELOW), THE DEADLINE FOR CREDITORS IN CLASS 4 (REMAINING UNSECURED CLAIMS) TO SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M., EASTERN TIME, ON JANUARY 6, 2023 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTOR.  THE RECORD DATE FOR DETERMINING WHICH HOLDERS OF CLAIMS MAY VOTE ON THE PLAN IS DECEMBER 30, 2022 (THE "VOTING RECORD DATE").

PLEASE READ THIS THIRD SUPPLEMENT AND THE DISCLOSURE STATEMENT, INCLUDING THE PLAN, IN ITS ENTIRETY.  THE DISCLOSURE STATEMENT AND THIS THIRD SUPPLEMENT SUMMARIZE THE TERMS OF THE PLAN, BUT SUCH SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE ACTUAL PROVISIONS OF THE PLAN. ACCORDINGLY, IF THERE ARE ANY INCONSISTENCIES BETWEEN THE PLAN AND THIS THIRD SUPPLEMENT OR THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL.

HOLDERS OF CLAIMS SHOULD NOT CONSTRUE THE CONTENTS OF THIS THIRD SUPPLEMENT OR THE DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISORS BEFORE CASTING A VOTE WITH RESPECT TO THE PLAN.

THE DEBTOR IS UNDER NO OBLIGATION TO (AND EXPRESSLY DISCLAIMS ANY OBLIGATION TO) UPDATE OR ALTER ANY INFORMATION SET FORTH HEREIN OR IN THE DISCLOSURE STATEMENT WHETHER AS A RESULT OF NEW INFORMATION,

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

**FUTURE EVENTS, OR OTHERWISE, UNLESS INSTRUCTED TO DO SO BY THE BANKRUPTCY COURT.**

**THE DEBTOR BELIEVES THE SOLICITATION OF VOTES ON THE PLAN MADE BY THIS THIRD SUPPLEMENT AND THE DISCLOSURE STATEMENT IS EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS (THE "<u>SECURITIES ACT</u>") AND RELATED STATE STATUTES BY REASON OF THE EXEMPTION PROVIDED BY SECTION 1145(a)(1) OF THE BANKRUPTCY CODE.**

**THE STATEMENTS CONTAINED IN THIS THIRD SUPPLEMENT AND THE DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED, AND THE DELIVERY OF THIS THIRD SUPPLEMENT WILL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF. THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THIS THIRD SUPPLEMENT OR THE DISCLOSURE STATEMENT.**

WEIL:\98914083\12\12817.0007

# I.
# BACKGROUND

1.       On December 14, 2021 (the "**Petition Date**"), All Year Holdings Limited, as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

2.       On May 31, 2022, the Debtor filed (i) the *Chapter 11 Plan of Reorganization of All Year Holdings Limited* [ECF No. 123] (together with all exhibits and schedules thereto, the "**Original Plan**"), (ii) the *Disclosure Statement for Chapter 11 Plan of Reorganization of All Year Holdings Limited* [ECF No. 124] (as amended on July 15, 2022 [ECF No. 151] and July 20, 2022 [ECF No. 160, Ex. A] and supplemented on September 15, 2022 [ECF No. 215] and November 4, 2022 [ECF No. 257], and as may be further modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Disclosure Statement**"), and (iii) a motion seeking approval of the Disclosure Statement and certain solicitation, voting, and tabulation procedures for the Plan [ECF No. 125] (the "**Solicitation Procedures Motion**").   By order dated July 22, 2022 [ECF No. 160] (the "**Solicitation Procedures Order**"), the Bankruptcy Court approved the Disclosure Statement and the other relief requested in the Solicitation Procedures Motion.

3.       On September 15, 2022, the Debtor filed the *First Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited* [ECF No. 214] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**First Amended Plan**") together with a first supplement to the Disclosure Statement [ECF No. 215] (the "**First Disclosure Statement Supplement**").

4.       On November 4, 2022, the Debtor filed the *Second Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited* [ECF No. 256] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Second Amended Plan**") together with a second supplement to the Disclosure Statement [ECF No. 257] (the "**Second Disclosure Statement Supplement**" and together with the First Disclosure Statement Supplement, the "**Prior Disclosure Statement Supplements**").

5.       On December 9, 2022, the Debtor filed the *Third Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited* [ECF No. 289] (as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Third Amended Plan**").  That same day, the Debtor filed a redline comparison showing the changes made in the Third Amended Plan as compared to the Second Amended Plan.

6.       In accordance with Paragraph 4 of the Solicitation Procedures Order, the Debtor has filed this third supplement to the Disclosure Statement (collectively, the "**Third Disclosure Statement Supplement**") to provide notice to creditors and other parties in interest of, among other things, (i) the Revised Settlement  (defined below) between and among the Debtor, the Sponsor, and the Notes Trustee, on behalf of the Noteholders, (ii) the modifications set forth in the Third Amended Plan, including the modifications to incorporate the terms of the Revised Settlement, (iii) the revised solicitation and confirmation schedule for the Third Amended Plan, and (iv) certain other case updates.

## II.
## THE REVISED SETTLEMENT

7.       As described in the Prior Disclosure Statement Supplements, following a discussion with the Bankruptcy Court at a case management conference on September 1, 2022, the Debtor, the Sponsor, the Notes Trustee, Mr. Weiss, and the Sole Shareholder agreed to submit to

mediation regarding the outstanding disputes between and among the mediation parties that impacted the Debtor's proposed chapter 11 plan (the "**Mediation**"). The mediation parties participated in the Mediation before Judge Lisa G. Beckerman from September 19-23, 2022, as a result of which, the Debtor, the Sponsor, and the Notes Trustee, on behalf of the Noteholders (collectively, the "**Settlement Parties**"), reached a settlement and resolution of their current disputes (the "**Original Settlement**") relating to the Plan, the Plan Investment Agreement, the MLPSA, and the Settlement Parties' respective disputes, claims and obligations thereunder. The terms of the Original Settlement were confirmed via email on September 23, 2022 and read into the record at a status conference before the Bankruptcy Court on September 29, 2022.

8.     While negotiating the documents to implement the Original Settlement, several new disputes among the Settlement Parties arose regarding the parties' respective commitments and agreements under the Original Settlement and Investment Agreement. As a result of these disputes, the Settlement Parties were unable to finalize the documents and agreements necessary to implement the Original Settlement. Specifically, disputes arose between the Settlement Parties regarding, among other things, the following: (a) the enforceability of the Investment Agreement, (b) the Settlement Parties' agreement to reasonably extend the date for the Confirmation Hearing, the outside date for the Closing under the Investment Agreement, and the corresponding Maturity Date for the DIP Loan, (c) the Debtor's ability to use its cash during the Chapter 11 Case, including with respect to certain cash proceeds received in connection with the Grand Living Settlement, and (d) the Series C Noteholders' support for the Plan. The Debtor and the Sponsor each asserted, among other things, the other party had breached the Investment Agreement and various letters and notices were filed by the Debtor [ECF Nos. 264, 276] and the Sponsor [ECF No. 269] in connection with such asserted breach claims.

WEIL:\98914083\12\12817.0007

9.      Following numerous discussions, the Settlement Parties reached a revised settlement and resolution of all of their disputes (the "**Revised Settlement**") relating to the Plan, the Investment Agreement, the MLPSA, and the Settlement Parties' respective disputes, claims and obligations thereunder.  The terms of the Revised Settlement, which supersede the terms of the Original Settlement in their entirety, are as follows:

i.      The YGWV interests will be Excluded Assets[3] under the Plan and the Investment Agreement and the Debtor has no obligation to include the YGWV interests as part of the Reorganized Debtor or to transfer such interests to the Sponsor.

ii.      Pursuant to and subject to the terms of that Settlement Agreement with regard to the MLPSA (the "**MLPSA Settlement Agreement**") to be entered into simultaneously with the amendment to the Investment Agreement, on the Closing Date, (i) the Sponsor shall receive $2.5 million in cash from the MLPSA deposit in full and final settlement and release of all claims arising under or relating to the MLPSA, (ii) the $2.5 million payable to the Sponsor from the MLPSA deposit (the "**MLPSA Settlement Amount**") shall be directed to the Debtor and credited against the Revised Sponsor Contribution (defined below) on the Closing Date, (iii) the remaining $5.0 million from the MLPSA deposit shall be released to the Notes Trustee, for the benefit of the Series C Noteholders, on the Closing Date, in full and final settlement and release of all claims arising under or relating to the MLPSA, (iv) until the foregoing payments are made, all parties' rights and claims under the MLPSA will be reserved and the litigation in Israel with respect to the MLPSA will be held in abeyance and (v) upon receipt of each of the foregoing payments, the litigation in Israel with respect to the MLPSA shall be dismissed promptly thereafter.

iii.      The Settlement Parties commit to moving forward and closing under the Plan and the Investment Agreement, which Investment Agreement is binding and enforceable on the Settlement Parties in accordance with its revised terms and with no further adjustments or changes to the terms (other than as set forth in settlement paragraph numbers iv through xiii below) or the provisions relating to assumed claims and liabilities, including all subsidiary liabilities, under the Plan and the Investment Agreement.

---

[3] Any proceeds from the liquidation of the Excluded Assets by Wind-Down Co that would benefit the holders of Allowed Remaining Unsecured Claims are subject to various risk factors and other issues that may impact the amount and timing of any recovery thereof, including, without limitation, the outcome of the involuntary chapter 11 proceeding commenced on October 6, 2022 against Wythe Berry Fee Owner, the entity which owns the William Vale property, by the Notes Trustee and certain other Series C Noteholders (as discussed further below) and any efforts to foreclose or take other action with respect to the William Vale property.

WEIL:\98914083\12\12817.0007

iv.   The Plan shall be revised to reduce the Sponsor Contribution to $43.5 million (the "**Revised Sponsor Contribution**"), which shall be paid in full in cash on the Closing Date (*less* the initial $4.5 million Escrowed Funds, the Additional Escrowed Funds (defined below), the MLPSA Settlement Amount, and an amount equal to any Grand Living Settlement Proceeds (defined below) utilized by the Debtor or any of its non-Debtor subsidiaries prior to the Closing Date, if any). No New Notes shall be issued as part of the Revised Sponsor Contribution and there shall be no Purchase Price Adjustment under the Plan or the Investment Agreement. The Additional Escrowed Funds are in addition to the Escrowed Funds and the Guaranty, which remain in full force and effect under the Investment Agreement.

v.    The Sponsor shall pay $4.5 million in cash to the Escrow Agent as an additional deposit amount (the "**Additional Escrowed Funds**") within two business days of Bankruptcy Court approval of the 9019 Motion (defined below). The Additional Escrowed Funds shall be treated for all purposes as Escrowed Funds under the Investment Agreement.

vi.   The Settlement Parties agree that, prior to the Closing Date, the Debtor shall be entitled to utilize the $5,251,200 in proceeds from the MY 2011 Grand LLC (the "**Grand Living Settlement Proceeds**") to fund its operations, the operations of its non-Debtor subsidiaries, and to administer the Chapter 11 Case and the Ancillary Proceedings. The Debtor agrees to a dollar-for-dollar reduction to the Revised Sponsor Contribution paid by the Sponsor on the Closing Date, in accordance with the Investment Agreement and the Plan, for any such Grand Living Settlement Proceeds utilized by the Debtor or its non-Debtor subsidiaries prior to the Closing Date. The Debtor shall separately account for any Grand Living Settlement Proceeds utilized prior to the Closing Date and shall make such accounting available to the Sponsor, on reasonable advanced request, prior to the Closing Date.

vii.  The Settlement Parties agree that the Notes Trustee and the Noteholders shall not have any Class 3 General Unsecured Claims under the Plan.

viii. The Settlement Parties agree to reasonably extend the applicable deadlines and milestones under the Investment Agreement and the DIP Documents to allow for the documenting of this Revised Settlement, amending of the Plan and Investment Agreement, and voting on the Plan and Investment Agreement. For the avoidance of doubt, the Sponsor agrees to extend the Outside Date for Closing under the Investment Agreement and the Maturity Date for the DIP Loan to March 31, 2023. The Investment Agreement shall be revised to provide, at the option of either party, the Closing may be deferred to no later than the Outside Date.

ix.   The Debtor shall consult with the Sponsor regarding notices and other filings in the Chapter 11 Case consistent with its existing commitments under the Investment Agreement.

WEIL:\98914083\12\12817.0007

    x.    The foregoing settlement paragraph number ii is subject to a favorable vote by the Series C Bondholders.

    xi.    The Settlement Parties shall seek approval from the Bankruptcy Court of the terms of this Revised Settlement (but for the avoidance doubt, not the provisions of settlement paragraph number ii above, which shall be subject to the MLPSA Settlement Agreement) pursuant to Bankruptcy Rule 9019 (the "**9019 Motion**") reasonably promptly following written confirmation of the terms of the Revised Settlement from each of the Settlement Parties (which confirmation may be in the form of a confirmatory email).

    xii.    Except as otherwise provided in the Revised Settlement, the Revised Settlement shall not constitute a waiver of any Settlement Party's rights under the Investment Agreement. The Settlement Parties' respective rights, including with respect to any asserted breaches, remain reserved pending Bankruptcy Court approval of the Revised Settlement pursuant to the 9019 Motion.

    xiii.    This Revised Settlement supersedes the Original Settlement in its entirety.

    10.    The Revised Settlement resolves costly and uncertain litigation relating to, among other things, the Plan, the Investment Agreement, and the MLPSA, including with respect to the recent breach claims asserted by the Debtor and the Sponsor and the litigation between the Sponsor and the Notes Trustee in Israel regarding a dispute relating to the parties' failure to close on the MLPSA and the related Notice of Termination sent by the Notes Trustee. The Debtor believes the transactions contemplated under the Plan and the Investment Agreement, as modified by the Revised Settlement, represent the maximum recoveries available for holders of Allowed Remaining Unsecured Claims.[4] The Revised Settlement will allow the Debtor to continue towards confirmation of the Proposed Plan and avoid wasting further time and resources searching for replacement sponsors or negotiating alternative chapter 11 plans that would likely result in diminished recoveries for impaired creditors. Moreover, the Debtor can avoid expending estate

---

[4] Notwithstanding the reduction in the Plan Consideration under the Investment Agreement as a result of the Revised Settlement from $60 million in cash and New Notes to $43.5 million in cash, the Debtor believes that under the Third Amended Plan all holders of impaired Allowed Claims and Interests will still receive property with a value not less than the value such holder would receive in a liquidation under chapter 7 of the Bankruptcy Code.

WEIL:\98914083\12\12817.0007

resources litigating with the Sponsor over, among other things, the Escrowed Funds, the Guaranty, and the Break-Up Fee.  Accordingly, the Debtor and the Notes Trustee believe the Revised Settlement is in the best interests of the Estate and its creditors, including the Noteholders.

11.    The Revised Settlement will be implemented pursuant to the following documents and agreement (collectively, the "**Settlement Documents**"): (i) a third amendment to the Investment Agreement, a substantially final version of which is annexed hereto as **Exhibit A**, (ii) the MLPSA Settlement Agreement by and among the Sponsor, the Notes Trustee, on behalf of the Series C Noteholders, and the Escrow Agent (as defined in the MLPSA), (iii) an amendment to the DIP Documents extending the Maturity Date for the DIP Loan, a substantially final version of which is annexed as hereto as **Exhibit B**,  and (iv) the Third Amended Plan. Contemporaneously to the filing of this Third Disclosure Statement Supplement, the Debtor filed the 9019 Motion seeking Bankruptcy Court approval of certain portions of the Revised Settlement. For the avoidance doubt, the provisions of the Revised Settlement relating to the settlement and release of claims under the MLPSA are subject to the MLPSA Settlement Agreement and will not be approved by the Bankruptcy Court as part of the 9019 Motion.  A hearing on the 9019 Motion is scheduled for December 19, 2022 at 10:00 a.m. (Prevailing Eastern Time).

12.    Each of the Settlement Documents is interrelated and will be conditioned upon the occurrence of the Plan Effective Date and the closing of the Investment Agreement.

### III.
### REVISED SOLICITATION AND CONFIRMATION DATES

13.    The following solicitation and confirmation deadlines for the Second Amended Plan have been extended as set forth below[5]:

---

[5] All times indicated in the chart below are Prevailing Eastern Time.

| Event | Original Deadline | Revised Deadline |
|---|---|---|
| Plan Voting Deadline | October 7, 2022 at 5:00 p.m. | January 6, 2023 at 5:00 p.m. |
| Plan Confirmation Objection Deadline | October 7, 2022 at 5:00 p.m. | January 6, 2023 at 5:00 p.m. |
| Deadline to File Replies and Rebuttal Evidence in Response to Confirmation Objections | October 19, 2022 at 5:00 p.m. | January 17, 2023 at 5:00 p.m. |
| Conclusion of all Briefing and Evidence, including Trial Exhibits | October 26, 2022 at 5:00 p.m. | January 24, 2023 at 5:00 p.m. |
| Confirmation Hearing | November 2, 2022 at 10:00 a.m. | January 31 and February 1, 2023 at 9:00 a.m. |

14.    In addition, the deadline under the Investment Agreement to obtain Noteholder approval of the transactions contemplated under the Second Amended Plan and the Investment Agreement has been extended to January 26, 2023.  *See* Ex. A, § 8.01(c).  The deadlines under the Investment Agreement for the commencement of the Confirmation Hearing and entry of the Confirmation Order have also been extended to February 21, 2023 and March 7, 2023, respectively, and the outside date for Closing under the Investment Agreement has been extended to March 31, 2023, as well.  *See* Ex. A, §§ 8.03, 11.01(d).

15.    A separate notice of the amended solicitation and confirmation dates will be served on creditors and parties in interest.

## IV.
## STATUS UPDATE ON ADVERSARY PROCEEDING

16.    As set forth in the Second Disclosure Statement Supplement, on October 4, 2022, the Bankruptcy Court issued a memorandum opinion and order [Adv. Proc. ECF No. 52] in the Adversary Proceeding commenced by Weiss (i) granting Defendants' motion to dismiss all claims in Plaintiff's Amended Complaint and (ii) denying Plaintiff's motion for partial summary

WEIL:\98914083\12\12817.0007

judgment on claim III of the Amended Complaint.  On October 7, 2022, Defendant filed a notice of appeal of the Bankruptcy Court's decision to the United States District Court for the Southern District of New York [Adv. Proc. ECF No. 54].  On October 18, 2022, the appeal was assigned to the Hon. Collen McMahon, District Judge for the United States District Court for the Southern District of New York.  Oral argument was held before the Hon. Colleen McMahon on December 1, 2022, at the United States District Court for the Southern District of New York, following which time the Court took the matter under advisement.

## V.
## INVOLUNTARY PROCEEDING AGAINST WYTHE BERRY FEE OWNER LLC

17.    As set forth in the Second Disclosure Statement Supplement, on October 6, 2022, an involuntary petition for relief under chapter 11 of the Bankruptcy Code was filed against Wythe Berry Fee Owner.  The involuntary chapter 11 petition was filed in the U.S. Bankruptcy Court for the Southern District of New York by four petitioning creditors: Mishmeret Trust Company Limited, Yelin Lapidot Provident Funds Management Ltd., The Phoenix Insurance Company Limited and Klirmark Opportunity Fund III L.P.  The involuntary case has been assigned to the Hon. Martin Glenn, Chief United States Bankruptcy Judge, Southern District of New York, and is titled *In re Wythe Berry Fee Owner LLC*, Case No. 22-11340 (MG).  On October 27, 2022, Wythe Berry Fee Owner filed an answer to the involuntary petition [ECF No. 9 on Dkt. No. 22-11340] and Mr. Weiss filed a motion to dismiss the involuntary petition and, to the extent necessary, to intervene as an interested entity [ECF No. 12 on Dkt. No. 22-11340].  An evidentiary hearing in connection with Mr. Weiss's motion to dismiss is currently scheduled for January 17 and 18, 2023 at 9:00 a.m. (Prevailing Eastern Time).

WEIL:\98914083\12\12817.0007

## VI.
## CONCLUSION AND RECOMMENDATION

The Debtor believes confirmation of the Plan is in the best interests of all stakeholders and urges the holders of Claims in Class 4 to vote to accept the Plan.

Dated:  December 9, 2022

Respectfully submitted,

**ALL YEAR HOLDINGS LIMITED**

By:  */s/  Assaf Ravid*
Name:   Assaf Ravid
Title:    Authorized Manager

10

## Exhibit A

**Third Investment Agreement Amendment**

*EXECUTION VERSION*

### Amendment No. 3 to Investment Agreement

This Amendment No. 3 to the Investment Agreement (this "***Amendment***") is entered into as of the 9th day of December, 2022, by and among All Year Holdings Limited, a private company limited by shares incorporated in the British Virgin Islands (the "***Company***" or the "***Debtor***"), Paragraph Partners LLC, a US special purpose entity (the "***Plan Investor***") and Mishmeret Trust Company Ltd. ("***Mishmeret***" or the "***Trustee***", and together with the Company and the Plan Investor, the "***Parties***"), solely in its capacity as Trustee for the Series B, Series C, Series D and Series E Notes (together, the "***Notes***" and the holders of such Notes, the "***Noteholders***") issued by the Company pursuant those deeds of trust for each of the Notes by and between the Company and Mishmeret.

WHEREAS, the Company, the Plan Investor and Mishmeret (solely in its capacity as Trustee and in respect of Sections 7.02(b), 8.01(b), 8.01(c) and 8.02(c) thereof) have entered into that certain Investment Agreement, dated as of March 11, 2022 (as amended by that certain Amendment No. 1 dated April 21, 2022 and that certain Amendment No. 2 dated May 27, 2022, the "***Agreement***"). Capitalized terms used herein without definition shall have the meanings assigned such terms in the Agreement;

WHEREAS, representatives of the Plan Investor, Mishmeret, and the Company participated in mediation before U.S. Bankruptcy Court Judge Lisa G. Beckerman on September 19-23, 2022, as a result of which the Parties reached a settlement of certain issues that impact the Plan, including the terms set forth herein (the "***Initial Settlement***");

WHEREAS, the terms of the Initial Settlement were set forth on the record at a status conference before the Bankruptcy Court held on September 29, 2022;

WHEREAS, following additional discussions among the Parties, the terms of the Initial Settlement have been revised, and are as follows, which, for the avoidance of doubt, supersede the Initial Settlement, in its entirety (hereinafter, the "***Settlement***"):

    i.    the Company's interests in YG WV LLC will be Excluded Assets under the Plan and the Agreement and that the Company has no obligation to include the interests of YG WV LLC as part of the Reorganized Debtor or to transfer such interests to the Plan Investor;

    ii.    pursuant to and subject to the terms of that Settlement Agreement with regard to the MLPSA (the "***MPSA Settlement Agreement***") to be entered into simultaneously with this amendment to the Investment Agreement, on the Closing Date, (i) the Plan Investor shall receive $2.5 million in cash from the MLPSA deposit in full and final settlement and release of all claims arising under or relating to the MLPSA, (ii) the $2.5 million payable to the Plan Investor from the MLPSA deposit (the "***MPSA Settlement Amount***") shall be directed to the Debtor and credited against the Revised Sponsor Contribution (as defined below) on the Closing Date, (iii) the remaining $5.0 million from the MLPSA deposit shall be released to the Notes Trustee, for the benefit of the Series C Noteholders, on the Closing Date, in full and final settlement and release of all claims arising under or relating to the MLPSA, (iv) until the foregoing payments are made, all parties' rights and claims under the MLPSA will be reserved and the litigation in Israel with respect to the MLPSA will be

held in abeyance, and (v) upon receipt of each of the foregoing payments, the litigation in Israel with respect to the MLPSA shall be dismissed promptly thereafter;

iii.    the Parties commit to moving forward and closing under the Plan and the Agreement, as amended herein, which Agreement as amended herein is binding and enforceable on the Parties in accordance with its revised terms, and with no further adjustments or changes to the terms (other than as set forth in clauses (iv) through (viii) below) or the provisions relating to assumed claims and liabilities, including all subsidiary liabilities, under the Plan and the Agreement;

iv.    the Plan and the Agreement shall be revised to reduce the Sponsor Contribution (as defined in the Plan) to $43.5 million (the "***Revised Sponsor Contribution***") to be paid in full in cash on the Closing Date (less the initial $4.5 million Escrowed Funds, the Additional Escrowed Funds (as defined below), the MPSA Settlement Amount, and an amount equal to any Grand Living Settlement Proceeds (as defined below) utilized by the Debtor or its non-Debtor subsidiaries prior to the Closing Date).  No New Notes shall be provided as part of the Revised Sponsor Contribution or the Plan Consideration and there shall be no Purchase Price Adjustment under the revised Plan or the Agreement.  The Additional Escrowed Funds are in addition to the Escrowed Funds and the Guaranty which remain in full force and effect under the Agreement;

v.    The Plan Investor shall pay $4.5 million in cash to the Debtor as an additional deposit amount (the "***Additional Escrowed Funds***") within two (2) Business Days following the entry of the 9019 Settlement Approval Order (as defined below).  The Additional Escrowed Funds shall be treated for all purposes as Escrowed Funds under the Agreement;

vi.    The Parties agree the Debtor shall be entitled, prior to the Closing Date, to utilize the $5,251,200 in proceeds from the MY 2011 Grand LLC (the "***Grand Living Settlement Proceeds***") to fund its operations, the operations of the non-Debtor subsidiaries, and to administer the Chapter 11 Case and the Ancillary Proceedings.  The Debtor agrees to a dollar-for-dollar reduction to the Revised Sponsor Contribution to be paid by the Plan Investor on the Closing Date in accordance with the Agreement and the Plan for any such Grand Living Settlement Proceeds utilized by the Debtor or its non-Debtor subsidiaries prior to the Closing Date.  The Debtor shall separately account for any Grand Living Settlement Proceeds utilized prior to the Closing Date and shall make such accounting available to the Plan Investor, on reasonable advanced request, prior to the Closing Date;

vii.    the Parties agree that Mishmeret and the Noteholders shall not have any Class 3 General Unsecured Claims under the Plan;

viii.    the Parties agree to reasonably extend the applicable deadlines and milestones under the Agreement and the DIP Documents to allow for the documenting of the Settlement, amending of the Plan and the Agreement, and voting on the Plan and the Agreement.  For the avoidance of doubt, the Plan Investor agrees to extend the outside Closing Date under the Agreement and the Maturity Date for the DIP Loan to March 31, 2023.  The Agreement shall be revised to provide that, at the option of either the Debtor or the Plan Investor, the Closing may be deferred to no later than the outside Closing Date;

2

ix.   The Debtor shall consult with the Plan Investor regarding notices and other filings in the Chapter 11 Case consistent with its existing commitments under the Agreement;

x.    the foregoing clause (ii) is subject to a favorable vote by the Series C Noteholders;

xi.   The Parties shall seek approval from the Bankruptcy Court of the terms of the Settlement (but for the avoidance of doubt, not the provisions of paragraph (ii) above, which shall be subject to the MPSA Settlement Agreement) pursuant to Bankruptcy Rule 9019 (the "***9019 Motion***") reasonably promptly following written confirmation on the terms of the Settlement from each of the Parties (which confirmation may be in the form of a confirmatory email); and

xii.  except as provided in the Settlement, the Settlement shall not constitute a waiver of any Party's rights under the Agreement. The Parties' respective rights, including with respect to any asserted breaches, remain reserved pending Bankruptcy Court approval of the Settlement pursuant to the 9019 Motion;

xiii. the Settlement supersedes the Initial Settlement agreed to by and among the Parties on September 23, 2022, in its entirety.

WHEREAS, the Parties now desire to amend the Agreement as set forth below in accordance with the terms of the Settlement;

WHEREAS, that certain Settlement Agreement with regard to the MLPSA (the "***MPSA Settlement Agreement***") will be executed following an affirmative vote by the Series C Bondholders and this Amendment shall remain effective only insofar as such MPSA Settlement Agreement remains in effect among the parties thereto; and

WHEREAS, pursuant to <u>Section 12.11</u> of the Agreement, the Agreement may only be amended, restated, supplemented or otherwise modified by written agreement duly executed by each Party.

NOW, THEREFORE, the Parties, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Parties, do hereby agree as follows:

1.   **<u>Amendments</u>**. The Agreement is hereby amended as described in this Section 1 (such amendments to be effective only for so long as the MPSA Settlement Agreement remains in effect among the parties thereto).

   a.   **<u>9019 Motion</u>**. A new definition of "9019 Motion" shall be added as follows:

        "***9019 Motion***" means a motion to approve the Settlement filed by the Debtor in the Bankruptcy Court pursuant to Bankruptcy Rule 9019 by no later than December 13, 2022.

   b.   **<u>9019 Settlement Approval Order</u>**. A new definition of "9019 Settlement Approval Order" shall be added as follows:

3

"*9019 Settlement Approval Order*" means an order approving the 9019 Motion entered by the Bankruptcy Court.

c.  **Additional Escrowed Funds**.  A new definition of "Additional Escrowed Funds" shall be added as follows:

"*Additional Escrowed Funds*" means an amount of $4,500,000 to be paid by the Plan Investor to the Escrow Agent within two (2) Business Days following the entry of the 9019 Settlement Approval Order.  For the avoidance of doubt, the Additional Escrowed Funds shall be treated for all purposes as Escrowed Funds under this Agreement.

d.  **Excluded Assets**.  The definition of "Excluded Assets" shall be amended and restated in its entirety as follows:

"*Excluded Assets*" means (a) any and all of the Company's direct or indirect rights (including the right to receive any income or proceeds) in and to (i) any collateral securing the Secured Notes, (ii) the Company's interests in YG WV LLC, and (iii) the assets described in the settlement agreements among the Company, DCP All Year Pref Equity LLC and DCP Kings Point LLC, (b) any and all claims, whether known or unknown, contingent, liquidated or disputed, that the Company or the Noteholders may have against any third-parties, including any current or prior officer, director or shareholder of the Company (subject to the releases provided in Section 7.02 above), (c) such other assets listed on Schedule B hereto and (d) those assets vested in Wind Down Co pursuant to the Plan.  For the avoidance of doubt, the rights and claims in (i) the settlement agreement with regard to MY 2011 Grand LLC et al as approved by the Bankruptcy Court on October 25, 2021 (Case No. 19-23957 (RDD)) and the Grand Living Settlement Proceeds, subject to Sections 3.02(a) and 6.01 hereof, and (ii) the Lofts on Devoe LLC shall not be Excluded Assets.  Furthermore, for the avoidance of doubt, the Company's interests in YG WV LLC shall be Excluded Assets under the Plan and, to the extent such interests have not otherwise been transferred, sold, assigned, or otherwise disposed of by the Company prior to the Closing Date in accordance with applicable law, all of the Company's interests in YG WV LLC shall vest in Wind Down Co on the Closing Date. Neither the Company nor Wind Down Co shall have any obligation to vest such interests in, or transfer or assign such interests to, the Reorganized Debtor or the Plan Investor.

e.  **Subsidiary Value**.  The definitions of "Adjustment Period", "Subsidiary Value" and "Subsidiary Value Reduction" shall be deleted from the Agreement in their entirety.

f.  WHEREAS clause G of the Agreement shall be amended and restated in its entirety as follows:

4

WHEREAS, in exchange for receipt of the Reorganized Equity Interests, (a) the Plan Investor will pay to the Debtor's estate, for distribution in accordance with the Plan, a cash payment in the amount of $43,500,000 (the "***Cash Payment***"), and (b) the Reorganized Debtor will assume the Assumed Claims (as defined below) in accordance with the Plan (the Cash Payment, and the assumption of the Assumed Claims, collectively, the "***Plan Consideration***").

g. **William Vale Provisions**.

    i. The definitions of "MPSA", "Shares Consideration", "William Vale Hotel", "William Vale Purchase", and "WV Sale Date" shall be deleted from the Agreement in their entirety.

    ii. Section 2.02 of the Agreement shall be amended and restated in its entirety as follows:

[reserved]

    iii. Exhibit B is deleted in its entirety.

h. **Settlement Provisions**

    i. Section 2.03 of the Agreement shall be amended and restated in its entirety as follows:

Closing. The closing of the Transactions (the "Closing") shall take place by telephone conference and electronic exchange of documents (or, if the Parties agree to hold a physical Closing, at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153), at 9:00 a.m. (New York City time) on the second (2nd) Business Day following the date upon which all Closing Conditions are satisfied or waived in writing (to the extent permitted by applicable Law) in accordance with ARTICLE X (other than those Closing Conditions that by their nature can only be satisfied at the Closing, but subject to the satisfaction or waiver of those Closing Conditions at such time), or on such other date or at such other time or place as the Parties may agree in writing, provided, however that, notwithstanding the foregoing, at the option of either the Company or the Plan Investor, the Closing may be deferred to no later than the Outside Date (as defined below). The date on which the Closing occurs is referred to in this Agreement as the "Closing Date." For all purposes under this Agreement and each other Transaction Agreement, (a) except as otherwise provided in this Agreement or such other Transaction Agreements, all matters at the Closing will be considered to take place simultaneously and (b) the Closing shall be deemed effective as of the Effective Time.

5

ii. The first paragraph of <u>Section 3.02</u> of the Agreement shall be amended and restated in its entirety as follows:

<u>Escrowed Funds</u>.  Within five (5) Business Days of the later to occur of (i) the Court Break-Up Fee Approval Date and (ii) the date on which a Plan is annexed hereto as Exhibit A that is reasonably satisfactory to the Plan Investor and otherwise complies with the terms hereof, pursuant to the terms of the Escrow Agreement, Plan Investor shall (A) transfer the amount of $4,500,000 to Madison Title Agency, LLC, in its capacity as escrow agent (the "***Escrow Agent***"), by wire transfer of immediately available funds (the "***Escrowed Funds***"), and (B) deliver to the Escrow Agent a duly executed signature page to that certain limited corporate guaranty annexed hereto as Exhibit D (the "***Guaranty***," and the date on which the Escrowed Funds are transferred and the Guaranty is delivered being referred to herein as the "***Escrow Date***").  Within two (2) Business Days following the entry of the 9019 Settlement Approval Order, the Plan Investor shall deposit the Additional Escrowed Funds with the Escrow Agent.  Pursuant to the terms of the Escrow Agreement, the Escrowed Funds and the Additional Escrowed Funds (together with all accrued investment income thereon) shall be distributed as follows:

iii. <u>Section 3.02(a)</u> of the Agreement shall be amended and restated in its entirety as follows:

"if the Closing shall occur, (i) the Escrowed Funds, (ii) the Additional Escrowed Funds, (iii) $2,500,000 of the amounts held in escrow with IBI Trust Management  (the "***MPSA Escrow Agent***") in connection with that certain Mortgage Loan Purchase and Sale Agreement between Paragraph and Mishmeret Trust Company Ltd., as Trustee for the Holders of the Debentures (Series C) (the "***MPSA Settlement Amount***") and all accrued investment income related thereto, and (iv) an amount equal to any portion of the Grand Living Settlement Proceeds utilized by the Debtor or its non-Debtor subsidiaries prior to the Closing Date (the "***Grand Living Amount***") shall be applied at the Closing towards the Cash Payment portion of the Purchase Price payable to the Company by Plan Investor and the Guaranty shall, by its terms, cease to be effective."

iv. <u>Section 3.02(b)</u> of the Agreement shall be amended and restated in its entirety as follows:

"if this Agreement is terminated by the Company pursuant to <u>Section 11.01(c)</u> (including due to the failure of the Plan Investor to close the Transaction), (1) the Escrowed Funds, together with all accrued investment income thereon (if any), shall be delivered to the Company, (2) the Additional Escrowed Funds, together with all accrued investment income thereon (if any), shall be retained by the Company and (3) the signature

page to the Guaranty shall be delivered and released to the Company and the Guaranty shall then become immediately effective, in each case in accordance with and subject to the terms of Section 11.03(b); or"

v.  Section 3.02(c) of the Agreement shall be amended and restated in its entirety as follows:

"if this Agreement is terminated for any reason other than as set forth in Section 3.02(b) above, the Escrowed Funds and the Additional Escrowed Funds, together with all accrued investment income thereon (if any), shall be promptly returned to Plan Investor, together with the Plan Investor's signature page to the Guaranty."

vi.  Section 3.03(b)(i) of the Agreement shall be amended and restated in its entirety as follows:

"to the Debtor, the Cash Payment (*less* the Escrowed Funds, the Additional Escrowed Funds, the MPSA Settlement Amount and the Grand Living Amount) by wire transfer of immediately available funds to an account or accounts as directed by the Company at least two (2) Business Days prior to the Closing Date."

vii.  Section 3.03(b)(ii) of the Agreement shall be amended and restated in its entirety as follows:

[reserved]

viii.  Section 6.01 of the Agreement shall be amended and a new paragraph shall be added at the end of the existing Section 6.01 and immediately preceding Section 6.02 as follows:

The Parties agree the Debtor shall be entitled, prior to the Closing Date, to utilize the Grand Living Settlement Proceeds to fund its operations (and the operations of the non-Debtor subsidiaries) and to administer the Chapter 11 Case and the Ancillary Proceedings.  The Debtor will separately account for any Grand Living Settlement Proceeds it and its non-Debtor subsidiaries utilize prior to the Closing Date and shall make such accountings available to the Plan Investor, on reasonable advanced request, prior to the Closing Date;

ix.  Section 6.07 of the Agreement shall be amended and restated in its entirety as follows:

Schedule Updates.  During the Pre-Closing Period, the Company shall advise Plan Investor in writing if, in the Company's Knowledge, any of the representations or warranties contained in ARTICLE IV hereof become

incorrect in any manner that could reasonably be expected to cause any closing condition not to be satisfied. If any such matter requires any change to the Disclosure Schedules, the Company may promptly deliver to Plan Investor a supplement to such Disclosure Schedules specifying such change (each a "***Schedule Update***"). Upon the delivery of a Schedule Update, (i) the specified representations and warranties made by the Company will be modified as described in the Schedule Update and (ii) Plan Investor will not have the right to terminate this Agreement or prevent the consummation of the transactions contemplated by this Agreement on account of any modification contained in a Schedule Update.

x.   Section 8.01(b) of the Agreement shall be amended and restated in its entirety as follows:

Within 14 days following the Agreement Date, the Company shall file a motion with the Bankruptcy Court reasonably satisfactory to the Plan Investor seeking approval by the Bankruptcy Court of the Break-Up Fee and Expense Reimbursement provisions (the date on which such approval is received by the Bankruptcy Court being referred to herein as the "***Court Break-Up Fee Approval Date***"). Within two (2) Business Days following execution of Amendment No. 3 to this Agreement, the Company shall file the 9019 Motion with the Bankruptcy Court reasonably satisfactory to the Plan Investor and Mishmeret seeking approval of the Company's entry into the Settlement and its undertakings thereunder. Mishmeret shall support such motions and shall take all actions reasonably necessary to support, and shall not oppose in any way, the approval of such motions, the Break-Up Fee and the Expense Reimbursement, and shall not oppose the payment thereof, unless Mishmeret shall have reasonable grounds to assert that the Break-Up Fee or the Expense Reimbursement is not payable hereunder. The Plan Investor shall support the 9019 Motion and shall take all actions reasonably necessary to support, and shall not oppose in any way, the approval of such motion.

xi.  Section 10.01(h) shall be a new provision to the Agreement providing as follows:

The Plan Investor shall have delivered written notice (or delivered a joint notice together with Mishmeret (solely in its capacity as Trustee for the Series C Notes)) to the MPSA Escrow Agent of the anticipated occurrence of the Condition Precedent (as defined in the MPSA Settlement Agreement) and written instructions to the MPSA Escrow Agent to release the Deposit (as defined in the MPSA Settlement Agreement) in accordance with the terms of the MPSA Settlement Agreement, which shall include (i) the release of the MPSA Settlement Amount to the Company and (ii) the release of the Deposit, less the MPSA Settlement Amount, to Mishmeret (solely in its capacity as Trustee for the Series C Notes), and such notice or instruction

has not been objected to by any Party.  This condition precedent may only be waived by Mishmeret (solely in its capacity as Trustee for the Series C Notes).

   xii.   <u>Section 10.01(i)</u> shall be a new provision to the Agreement providing as follows:

The Plan Investor shall have deposited the Additional Escrowed Funds.

   xiii.   <u>Section 10.02(i)</u> shall be a new provision to the Agreement providing as follows:

Mishmeret (solely in its capacity as Trustee for the Series C Notes) shall have delivered written notice (or delivered a joint notice together with the Plan Investor) to the MPSA Escrow Agent of the anticipated occurrence of the Condition Precedent (under and as defined in the MPSA Settlement Agreement) and written instructions to the MPSA Escrow Agent to release the Deposit (as defined in the MPSA Settlement Agreement) in accordance with the terms of the MPSA Settlement Agreement, which shall include (i) the release of the MPSA Settlement Amount to the Company and (ii) the release of the Deposit, less the MPSA Settlement Amount, to Mishmeret (solely in its capacity as Trustee for the Series C Notes), and such notice or instruction has not been objected to by any Party.  This condition precedent may only be waived by the Plan Investor.

  i.   **Timeline Extensions**.

     i.   <u>Section 8.01(c)</u> of the Agreement shall be amended and restated in its entirety as follows:

By no later than January 12, 2023, Mishmeret shall convene a meeting of the Noteholders to vote whether to approve the Transactions contemplated hereby (an affirmative vote to approve such Transactions, including directing the Trustee to act pursuant to <u>Sections 7.02(b)</u>, <u>Section 8.01(b)</u>, this <u>Section 8.01(c)</u> and <u>Section 8.02(c)</u>, by the applicable requisite majority of Noteholders, in number and claim amount, necessary for the class containing the Noteholder claims to accept the approved Plan pursuant to Section 1126 of the Bankruptcy Code being referred to herein as the "***Noteholder Plan Approval***").  If at such meeting (as may be adjourned from time to time to a date that is no later than January 26, 2023), Noteholder Plan Approval is not obtained on a final basis, then this Agreement shall automatically terminate and be of no continuing force and effect and the Plan Investor and the Company shall, within two (2) Business Days after the date of such termination, deliver Joint Written Instructions to the Escrow Agent directing the Escrow Agent to deliver to the Plan Investor

the Escrowed Funds (including the Additional Escrowed Funds) plus any accrued investment income or interest thereon.

ii. Section 8.03 of the Agreement shall be amended and restated in its entirety as follows:

Bankruptcy Milestones.  The Company shall use commercially reasonable efforts to:

(a)    have a hearing scheduled to consider confirmation of the Plan and the approval of the Confirmation Order by no later than February 21, 2023; and

(b)    obtain entry of the Confirmation Order by no later than March 7, 2023 (collectively, the "***Bankruptcy Milestones***").

The Bankruptcy Milestones may be extended upon mutual agreement between the Company and Plan Investor.

iii. Section 10.03 of the Agreement shall be amended and restated in its entirety as follows:

Neither the Company nor Plan Investor may rely on the failure of any condition set forth in this ARTICLE X to be satisfied if such failure was caused by such Party's failure to act in good faith or to use reasonable best efforts to cause the Closing Conditions of each such other Party to be satisfied, including as required by Section 6.04. For the avoidance of doubt, and without derogating any rights of the Parties with respect to any conditions precedent herein, the Plan Investor may not rely on any fact or circumstances arising under or relating to the treatment of the YG WV LLC interests, either under the Plan or in connection with confirmation of the Plan as basis for failing to consummate or delay the Closing or to terminate the Agreement.

iv. Section 11.01(d) of the Agreement shall be amended and restated in its entirety as follows:

by either the Company or Plan Investor, if the Closing shall not have occurred by March 31, 2023 (the "***Outside Date***"); provided that if the Closing shall not have occurred on or before the Outside Date due to a material breach of any representations, warranties, covenants or agreements contained in this Agreement by Plan Investor or the Company, then the breaching Party may not terminate this Agreement pursuant to this Section 11.01(d); or

**j.   Additional Notice Parties**.

10

i.  The the Plan Investor notice parties listed in of Section 12.03 of the Agreement shall be amended and restated in its entirety as follows:

| | |
|---|---|
| If to Plan Investor, to: | Paragraph Partners LLC<br>Attention: Avi Philipson<br>E-mail: aphilipson@graphgroup.com |
| with a copy (which will not constitute notice) to: | Locke Lord LLP<br>Attention: Shalom Jacob<br>E-mail: SJacob@lockelord.com |
| | Gissin & Co.<br>Attention: Yael Hershkovitz<br>E-mail: yael@gissinlaw.co.il |
| | Fried, Frank, Harris, Shriver & Jacobson LLP,<br>Attention: Avi Feinberg<br>E-mail: Avi.Feinberg@friedfrank.com |
| | Herzog Fox & Neeman<br>Attention: Saar A. Pauker<br>E-mail: paukers@herzoglaw.co.il<br>Attention: David Zailer<br>E-mail: zailerd@herzoglaw.co.il |

2.  **Miscellaneous**.  As expressly amended hereby, the Agreement shall continue in full force and effect in accordance with the provisions thereof.  As used in the Agreement, "hereinafter," "hereto," "hereof," and words of similar import shall, unless the context otherwise requires, mean the Agreement after being amended by this Amendment. This Amendment shall become effective upon its execution by the Parties hereto.  This Amendment may be executed in two or more counterparts (including counterparts transmitted in .pdf or similar format), each of which when so executed shall be deemed to be an original, and all such counterparts shall together constitute one and the same instrument.  This Amendment shall be construed in accordance with the laws of the State of New York without giving effect to the principles of conflicts of laws thereof.

[*Signature Page to Follow*]

11

This Amendment No. 3 to Investment Agreement is entered into as of the date and year first above written.

**COMPANY:**

**ALL YEAR HOLDINGS LIMITED**

By: _____
      Name: Assaf Ravid
      Title: Authorized Manager

By: _____
      Name: Ephraim Diamond
      Title: Authorized Manager

**PLAN INVESTOR:**

Paragraph Partners LLC

By: _____
      Name: Avi Philipson
      Title: CEO

[SIGNATURE PAGE TO INVESTMENT AGREEMENT AMENDMENT NO. 3]

This Amendment No. 3 to Investment Agreement is entered into as of the date and year first above written.

**COMPANY:**

**ALL YEAR HOLDINGS LIMITED**

By: _____
         Name:  Assaf Ravid
         Title:   CRO

By: _____
         Name:  Ephraim Diamond
         Title:   ARO

**PLAN INVESTOR:**

Paragraph Partners LLC

By: _____
         Name:  Avi Philipson
         Title:   CEO

**MISHMERET:**

**Mishmeret Trust Company Ltd.**, as Trustee

By: _____
     Name:  Rami Katzav
     Title:   Vice President

By: _____
     Name:  Rami Sebty
     Title:   Vice President

## **Exhibit B**

**DIP Term Sheet Amendment**

WEIL:\98914083\12\12817.0007

## AMENDMENT TO DIP TERM SHEET

This AMENDMENT TO THE SUMMARY OF TERMS AND CONDITIONS OF $4,500,000.00 DIP LOAN, dated as of December 9, 2022 (this "Amendment"),[1] is entered into by and between (i) All Year Holdings Limited, a private company limited by shares incorporated in the British Virgin Islands ("All Year" or the "Borrower"), as debtor and debtor in possession in Chapter 11 Case No. 21-12051 (MG) (the "Bankruptcy Case") filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and (ii) Paragraph Partners, LLC, as DIP Lender (the "Plan Investor" and, together with the Borrower, the "Parties").

W I T N E S S E T H:

WHEREAS, the Borrower and Plan Investor are party to those certain DIP Documents, pursuant to which the Plan Investor made available to the Borrower, and the Borrower was authorized to draw funds under, a multiple draw debtor-in-possession term loan (the "DIP Loan") in an aggregate principal amount of up to $4,500,000.00 (the "DIP Loan Proceeds") to be made available to the Borrower and funded with "Escrowed Funds" (as defined in the Investment Agreement);

WHEREAS, the DIP Loan was documented by the Parties pursuant to the following documents (collectively, the "DIP Documents"): (i) a term sheet executed by the Parties as of May 5, 2022, a copy of which was annexed as Exhibit 1 to the DIP Order (the "DIP Term Sheet"), (ii) a duly authorized amendment to the Investment Agreement and revised form of Escrow Agreement (as defined in the Investment Agreement), and (iii) the DIP Order;

WHEREAS, the DIP Loan and the DIP Documents were approved by the Bankruptcy Court pursuant to the DIP Order, entered on May 27, 2022;

WHEREAS, in connection with the revised settlement between and among the Debtor, the Plan Investor, and Mishmeret Trust Company Ltd., solely in its capacity as Trustee for the Debtor's various series of Notes, the Parties have agreed to amend the DIP Term Sheet and the other DIP Documents, as set forth herein.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Amendments to DIP Term Sheet. The DIP Term Sheet is hereby amended to delete the stricken text specified in Section 2 below (indicated textually in the same manner as the

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the *Order Pursuant to 11 U.S.C. §§ 105, 363, 364, and 507 (I) Authorizing Parent Debtor to Use Escrowed Funds, (II) Providing Superpriority Administrative Expense Claim Status, and (III) Granting Related Relief*, dated May 27, 2022 [Docket No. 120, Case No. 21-12051] (the "DIP Order").

following example: ~~stricken text~~) and to add the underlined text (indicated textually in the same manner as the following example: <u>underlined text</u>).

2.  <u>Extension of Maturity Date</u>.  The Maturity Date set forth in the section titled "Maturity" on page 2 of the DIP Term Sheet is hereby amended and superseded in its entirety as follows:

> The DIP Loan shall mature (the "<u>Maturity Date</u>") upon the earliest to occur of: (i) <u>March 31, 2023</u>~~December 31, 2022~~, (ii) the effective date of a confirmed chapter 11 plan for the Borrower implementing the terms of the Investment Agreement (as may be amended, modified, or supplemented in accordance with the terms of the Investment Agreement, an "<u>Approved Plan</u>"), (iii) 90 days following termination of the Investment Agreement, (iv) the closing of a sale of all or substantially all of the Borrower's assets to the Plan Investor other than pursuant to the Approved Plan, (v) a closing of sale of all or substantially all of Borrower's assets to a purchaser other than the Plan Investor, and (vi) the effective date of a confirmed chapter 11 plan of reorganization for the Borrower other than the Approved Plan (the aforementioned (v) and (vi), collectively, an "<u>Alternative Transaction</u>").

3.  <u>No Novation</u>.  This Amendment evidences solely the amendment of certain specified terms of the DIP Documents and is not a novation or discharge of any other obligations under the DIP Documents that are not hereby expressly amended.  There are no other understandings, express or implied, among the Borrower and the Plan Investor regarding the subject matter hereof or thereof.  For the avoidance of doubt, except as expressly amended pursuant to this Amendment, the terms and obligations set forth in the DIP Documents remain in full force and effect.

4.  <u>Governing Law</u>.  This Amendment is governed by the laws of New York in accordance with the DIP Term Sheet.

5.  <u>Headings</u>.  The headings of the several sections and subsections of this Amendment are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Amendment.

6.  <u>Counterparts; Facsimile Execution</u>.  This Amendment may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract.  Delivery of an executed counterpart of a signature page of this Amendment by facsimile, pdf, or other electronic transmission shall be as effective as delivery of a manually executed counterpart of this Amendment.

*[Signature Pages to Follow]*

This Term Sheet Amendment is entered into as of the date and year first above written

**BORROWER:**

**ALL YEAR HOLDINGS LIMITED**

By: _____
    Name: Assaf Ravid
    Title: Authorized Manager

By: _____
    Name: Ephraim Diamond
    Title: Authorized Manager

This Amendment is entered into as of the date and year first above written.

**BORROWER:**

**ALL YEAR HOLDINGS LIMITED**

By: _____
      Name:  Assaf Ravid
      Title:  CRO

**PLAN INVESTOR:**

Paragraph Partners, LLC

By: _____
      Name:  Avi Philipson
      Title:  CEO

[SIGNATURE PAGE TO AMENDMENT TO DIP TERM SHEET]