ARCHER & GREINER, P.C.      Hearing Date and Time: January 26, 2023 at 11:00 a.m.
1211 Avenue of the Americas      Objection Date and Time: January 19, 2023 at 4:00 p.m.
New York, New York 10036
Tel: (212) 682-4940
Allen G. Kadish
Email: akadish@archerlaw.com

*Attorneys for All Year Holdings Limited,*
*Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                  :
**In re**                  :
                  :        **Chapter 11**
**ALL YEAR HOLDINGS LIMITED,**  :        **Case No. 21-12051 (MG)**
                  :
          **Debtor.**       :
                  :
-------------------------------------------------------------X

### NOTICE OF MOTION FOR ORDER AUTHORIZING
### SALE OF DEBTOR'S INTEREST IN
### RALPH & RALPH PROPERTIES LLC,
### COMPROMISE OF CONTROVERSY, AND GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the **"Motion"**)[1]

of All Year Holdings Limited, as debtor and debtor in possession (the **"Parent Debtor"**) in the

above-captioned chapter 11 case, pursuant to sections 105(a) and 363(b) of title 11 of the United

States Bankruptcy Code, Rules 2002, 4001, 9014 and 9019 of the Federal Rules of Bankruptcy

Procedure (the **"Bankruptcy Rules"**), for an order authorizing the Parent Debtor to enter into a

certain Membership Interest Purchase Agreement, under which the Parent Debtor will sell its

interest in certain property, and compromise controversies with the co-owner, and granting related

relief, all as set forth in the Motion, will be held before the Honorable Martin Glenn, Chief United

---

[1] Capitalized terms not otherwise defined are as in the Motion.

States Bankruptcy Judge for the Southern District of New York, on Thursday, January 26, 2023 at 11:00 a.m. (the **"Hearing"**), or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the **"Objections"**) to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Bankruptcy Rules, shall be filed with the Bankruptcy Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with two single-sided hard copies delivered to the Judge's Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399, the Bankruptcy Rules, and the Local Bankruptcy Rules, so as to be filed and served upon (i) the undersigned counsel for the Parent Debtor; (ii) the Office of the United States Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Andrea B. Schwartz, Esq. and Shara Cornell, Esq.); (iii) counsel to Mishmeret Trust Company Ltd., as Notes Trustee, Chapman and Cutler LLP, 1270 Avenue of the Americas, New York, New York 10020 (Attn: Michael Friedman, Esq., Stephen R. Tetro II, Esq., and Aaron Krieger, Esq.); and (iv) counsel to David Simkowitz, Breuer Herskowitz LLP, 268 Willoughby Avenue, Brooklyn, New York 11205 (Attn: M. David Breuer, Esq.); by no later than Thursday, January 19, 2023 at 4:00 p.m. (the **"Objection Deadline"**).

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and received with respect to the Motion, the Parent Debtor may, on or after the Objection Deadline, submit to the Bankruptcy Court a proposed order substantially in the form of the proposed order

annexed to the Motion as **Exhibit B**, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

**PLEASE TAKE FURTHER NOTICE that, due to the COVID-19 pandemic, the Hearing will be conducted using Zoom for Government. Parties should not appear in person and those wishing to appear or participate at the Hearing (whether "live" or "listen only") must make an electronic appearance through the Court's website prior to 4:00 p.m. on the day before the Hearing. Instructions for making an eCourtAppearance and additional information on the Court's Zoom procedures can be found at Http://www.nysb.uscourts.gov/content/judge-martin-glenn. Parties intending to appear at the hearing are requested to notify the undersigned on or before the Objection Deadline.**

Dated: New York, New York  
      December 30, 2022

ARCHER & GREINER, P.C.

By:    s/ Allen G. Kadish
     Allen G. Kadish
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Email: akadish@archerlaw.com

*Attorneys for All Year Holdings Limited, Debtor*

ARCHER & GREINER, P.C.
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Allen G. Kadish
Email: akadish@archerlaw.com

*Attorneys for All Year Holdings Limited,*
*Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
                                              :
**In re**                                     :
                                              :          **Chapter 11**
**ALL YEAR HOLDINGS LIMITED,**                :          **Case No. 21-12051 (MG)**
                                              :
                    **Debtor.**               :
                                              :
----------------------------------------------------------------X

**MOTION FOR ORDER AUTHORIZING SALE OF**
**DEBTOR'S INTEREST IN**
**RALPH & RALPH PROPERTIES LLC,**
**COMPROMISE OF CONTROVERSY, AND GRANTING RELATED RELIEF**

TO THE HONORABLE MARTIN GLENN,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

        All Year Holdings Limited, as debtor and debtor in possession (the "**Parent Debtor**") in

the above-captioned chapter 11 case (the "**Chapter 11 Case**") respectfully represents as follows

in support of this motion for an order authorizing sale and compromise of controversy, and for

other, related relief:

**I.**

**Summary of Relief Requested**

        1.      Since the commencement of this Chapter 11 Case on December 14, 2021 (the

**"Petition Date"**), the Parent Debtor has administered its Chapter 11 Case and maintained its

operations and the operations of its direct and indirect subsidiaries including Ralph & Ralph

Properties LLC (**"Ralph & Ralph"**), in which the Parent Debtor holds a 50% interest with the remaining 50% interest belonging to David Simkowitz (**"Simkowitz"**).  Ralph & Ralph is a New York Limited Liability Company with the business and purpose of acquiring, holding, developing, maintaining, and operating a direct interest in the property located at 194 Ralph Avenue, Brooklyn, New York (the **"Real Property"**).  The Real Property is a four-story rental building in Stuyvesant Heights, Brooklyn, with one commercial unit and 15 residential units.  Ralph & Ralph is the sole owner of all right, title, and interest in and to the Real Property.  The Limited Liability Company Operating Agreement (the **"Operating Agreement"**) is filed herewith.

2.      Since early 2021, the Parent Debtor and Simkowitz have engaged in various disputes and negotiations regarding the ongoing management of the Real Property.  These disputes revolved around the presence of a Lis Pendens on the Real Property, ongoing issues with the lender, the ability to refinance the mortgage and other management issues. Despite good faith efforts to resolve these disputes the parties could not do so.

3.      On August 19, 2022, Federal National Mortgage Association, as holder of the mortgage on the Real Property (the **"Mortgage Lender"**) commenced an action in the Supreme Court of New York, Kings County (the **"Foreclosure Action"**), to obtain a judgment of foreclosure and sale of the Real Property.  As of the commencement of the Foreclosure Action, the unpaid principal balance of the Real Property's mortgage loan (the **"Mortgage Loan"**) was asserted (reserving all rights of the Parent Debtor in the Foreclosure Action) to have amounted to $1,239,620.01.  On October 20, 2022, a receiver was appointed to take control of the Real Property. A true and correct copy of the Foreclosure Action Summons and Complaint, and appointment of a receiver, are filed herewith.

4.      The Foreclosure Action exacerbated the dispute between the two partners in the Real Property.  Following the initiation of the Foreclosure Action, the parties were able to reach a settlement. Specifically, the Parent Debtor is seeking to enter into a membership interest purchase agreement (the **"Membership Interest Purchase Agreement"**) to sell its interests in the Real Property to Simkowitz.  A true and correct copy of the Membership Interest Purchase Agreement is filed herewith.

5.      As set forth in further detail below, the Membership Interest Purchase Agreement provides for a resolution between the Parent Debtor and Simkowitz, avoids costly and uncertain Parent Debtor's involvement and funding to resolve the Foreclosure Action, and will result in the payment of $675,000.00 to the Parent Debtor.  The Parent Debtor, via a management entity, has been managing the Real Property.  The Membership Interest Purchase Agreement provides a significant benefit to the Parent Debtor; funding a refinancing or alternatively, shouldering the risk of loss of the Real Property through foreclosure, would see its capital and investment evaporate and leave it open to claims by Simkowitz. Instead, the Membership Interest Purchase Agreement provides for Simkowitz's payment to the Parent Debtor in lieu of loss of the Debtor's investment.

6.      The Declaration of Ephraim Diamond, Associate Restructuring Officer of the Parent Debtor, in support hereof, is attached as **Exhibit A** hereto.  Relevant exhibits are attached thereto.  A proposed form of order granting the relief requested herein (the "**Proposed Order**") is attached hereto as **Exhibit B**.

## II.

## Jurisdiction, Venue and Predicates

7.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).

This motion presents a core matter pursuant to 28 U.S.C. § 157(b) (1) and (2)(A), (M), (N) and (O).

8.      Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

9.      The legal predicates upon which relief is sought herein include 11 U.S.C. §§ 105(a) and 363(b) and Federal Rule of Bankruptcy Procedure 9019(a).

### III.

### Background

10.     On the Petition Date, the Parent Debtor commenced with this Court a voluntary case uunder chapter 11 of the Bankruptcy Code.  The Parent Debtor is authorized to continue to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Case.

11.     Information regarding the Parent Debtor's business, capital structure, and the circumstances leading to the commencement of the Chapter 11 Case is set forth in the *Declaration of Assaf Ravid Pursuant to Local Bankruptcy Rule 1007-2 in Support of All Year Holdings Limited Chapter 11 Petition* [ECF No. 4] and is incorporated herein by reference.

12.     The Parent Debtor is advancing its Chapter 11 Case and has a disclosure statement and plan pending before this Court.

### IV.

### RELIEF REQUESTED

13.     The Parent Debtor requests authority to enter into, and effectuate, the sale of its interest in the Real Property, and effectuate a compromise between the Parent Debtor and Simkowitz, in accordance with the terms set forth in the Membership Interest Sale Agreement.

4

14.    This Motion seeks approval of the Parent Debtor's sale to and compromise with Simkowitz in the form of the Membership Interest Sale Agreement.  The Court and parties are referred thereto for its full terms.  It is useful, however, to summarize the terms of the agreement, as follows:

- The Parties: The Parent Debtor as the Seller and Simkowitz as the Purchaser.

- Sale and Purchase: The Purchase Price for the Parent Debtor's 50% interest in Ralph & Ralph shall be Six Hundred Seventy-Five Thousand and 00/100 Dollars ($675,000.000).

- The Real Property: Simkowitz shall be entitled to negotiate with the Mortgage Lender concerning the Foreclosure Action and paying off the debt thereunder.

**V.**

**The Relief Requested Should Be Granted**

**A.  The Parent Debtor's Consent to Enter Into
the Membership Interest Agreement is an Exercise
of the Parent Debtor's Sound Business Judgment**

15.    The Court should authorize the Parent Debtor to approve the Parent Debtor's compromise with Simkowitz in the form of the Membership Interest Sale Agreement.

16.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  In this District, "[t]he standard used for judicial approval of the use of estate property outside of ordinary course of business is [] the business judgment of the debtor." *In re Stearns Holdings, LLC,* 607 B.R. 781, 792 (Bankr. S.D.N.Y. 2019) (citing *In re Genco Shipping & Trading Ltd.,* 509 B.R. 455, 464 (Bankr. S.D.N.Y. 2014)).

17.     When applying the "business judgment" standard, courts show great deference to the debtor's decision-making. *See In re LATAM Airlines Grp. S.A.,* No. 20-11254 (JLG), 2022 WL 790414, at *31 (Bankr. S.D.N.Y. Mar. 15, 2022), *appeal dismissed*, No. 22-CV-2556 (JMF), 2022 WL 1471125 (S.D.N.Y. May 10, 2022), *and aff'd sub nom. In re Latam Airlines Grp., S.A.,* 643 B.R. 756 (S.D.N.Y. 2022). "Generally, absent a showing of bad faith, or an abuse of business discretion, the debtor's business judgment will not be altered." *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009) (quoting *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994)).

18.     The Parent Debtor's decision to sell to and compromise with Simkowitz in the form of the Membership Interest Sale Agreement is an exercise of the Parent Debtor's sound business judgment. Given the pending Foreclosure Action and Parent Debtor's preference not to use its estate funds towards preserving the Real Property, Simkowitz's purchase of the Parent Debtor's interest in Ralph & Ralph will absolve the Parent Debtor of liability related to the Real Property. Accordingly, the Parent Debtor will not risk its investment in the Real Property evaporating, and it instead will realize $675,000.00 for its estate. The Parent Debtor undertook arms' length negotiations with Simkowitz and was able to achieve sufficiently favorable terms.

**B.  Compromise**

19.     Bankruptcy Rule 9019(a) provides that on motion and after notice and a hearing, "the court may approve a compromise or settlement." In granting a motion pursuant to Bankruptcy Rule 9019(a), a Court must find that the proposed settlement is fair and equitable and is in the best interests of the debtor's estate. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *see also In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928 at *38 (Bankr. S.D.N.Y. Oct. 31, 2003).

6

20.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

21.     Although a court must "evaluate ... all ... factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *TMT Trailer Ferry*, 390 U.S. at 424, a court need not conduct a "mini-trial" of the merits of the claims being settled, *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010), or conduct a full independent investigation. *See id.*  "The Court need not decide the numerous issues of law and fact raised by the settlement, but must only canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  *In re 305 E. 61st St. Grp. LLC*, No. 19-11911 (SHL), 2022 WL 16749111 at *2 (Bankr. S.D.N.Y. Nov. 7, 2022).

22.     The Court may give weight to the informed judgment of a debtor that a compromise is fair and equitable.  *See In re MF Global Inc.*, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) ("Although courts have discretion to approve settlements, the business judgment of the debtor in recommending the settlement should be factored into the court's analysis").

23.     The decision to approve a particular settlement lies within the sound discretion of the Court.  *See In re 305 E. 61st St. Grp. LLC*, 2022 WL 16749111 at *2; *see also Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1994).  The Court may exercise its discretion "in light of the general public policy favoring settlements."  *In re 305 E. 61st St. Grp. LLC*, 2022 WL 16749111 at *2 (quoting *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998)).

24.     In the Second Circuit, *Iridium* directs the court to balance several factors:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;

(2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;

(3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";

(4) whether other parties in interest support the settlement;

(5) The "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;

(6) "the nature and breadth of releases to be obtained by officers and directors"; and

(7) "the extent to which the settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating, LLC*), 478 F.3d 452, 462 (2d Cir. 2007) (*cited in In re Residential Capital, LLC*, 497 B.R. 720, 750 (Bankr. S.D.N.Y. 2013)).

25.     Here, there is no benefit to litigation among the partners, and a transaction will avoid a litigation.  The interests of creditors are to conserve resources and move to confirmation and effectuation of a plan.  A dispute between partners of this modest size is best off resolved by a business solution.  The Operating Agreement includes no dispute resolution mechanism, thus the parties were left to resolve this issue amidst extreme circumstances.

26.     The bondholders, who are the major creditor constituency, support this resolution.  Similarly, the proposed plan investor supports this resolution.  Counsel before this Court recommend a business solution, and not litigation in this Court, around this issue.  The settlement was achieved via arm's-length negotiation, and not by any prohibited means.  This Court, familiar with the Chapter 11 Case and the path toward confirmation, should welcome this practical

transaction-driven resolution to business disputes.  The modest sum at issue here and the necessity

to resolve this issue as a matter of timing and economics in the context of confirmation and

effectiveness of a plan, drive the parties to a settlement and buyout.

27.     The compromise represented by the Membership Interest Purchase Agreement

represents a fair and reasonable settlement of the issues between the partners, and should be

approved.

### C.  **Plan Exemption**

28.     Pursuant to the plan of reorganization and the terms of the Investment Agreement

incorporated therein, it is necessary for the Parent Debtor to negotiate, compromise and settle

disputes involving its subsidiaries consonant with the plan transaction.  The sale of a 50% interest

in real estate or an entity that holds real estate is likely to trigger an obligation to pay local transfer

or similar tax (reserving all rights of the Parent Debtor and relevant entities).  The transactions

contemplated herein are consonant with the plan and, therefore, should be subject to the

exemptions provided for in section 1146 of the Bankruptcy Code as transfers under a plan.  Given

that the Parent Debtor contemplates that this sale will occur incident to effectiveness of the plan,

the Parent Debtor requests section 1146(a) qualification and exemption as a transfer "under a plan

confirmed."

### D.  **No Stay**

29.     To implement the foregoing successfully, the Parent Debtor requests that the Court

determine that to the extent applicable, any stay of the effectiveness of the order approving this

Motion should be waived.  The relief requested herein is critical to the Parent Debtor's efforts to

preserve and maximize the value of its estate and the value of its Subsidiaries.

### E.  Reservation of Rights

30.       Nothing contained herein is intended, or shall be construed, as (i) an admission as to the validity of any claim against the Parent Debtor; (ii) a waiver of the Parent Debtor's or any other appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim; (iii) a waiver of any claims or causes of action; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Parent Debtor and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Parent Debtor's rights to dispute such claim subsequently.

## VI.

### Conclusion

31.        No previous request for the relief sought herein has been made by the Parent Debtor to this or any other Court.

32.       Given the legal authorities and explanation set forth above, the Parent Debtor respectfully requests a waiver of any requirement to file a separate memorandum of law.

WHEREFORE the Parent Debtor respectfully requests approval, out of ordinary course, of the Parent Debtor's sale and compromise in the form of the Membership Interest Sale Agreement, and the issuance and entry of an order substantially in the form of the Proposed Order submitted herewith as **Exhibit B**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      December 30, 2022

ARCHER & GREINER, P.C.


By:____s/ Allen G. Kadish_____

    Allen G. Kadish
    1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Email: akadish@archerlaw.com

*Attorneys for All Year Holdings Limited, Debtor*

## Exhibit A

**Declaration**

ARCHER & GREINER, P.C.
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Allen G. Kadish
Email: akadish@archerlaw.com

*Attorneys for All Year Holdings Limited,*
*Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                                          :
**In re**                                                 :
                                                          :          **Chapter 11**
**ALL YEAR HOLDINGS LIMITED,**                            :          **Case No. 21-12051 (MG)**
                                                          :
                     **Debtor**                           :
                                                          :
------------------------------------------------------------X

<u>**DECLARATION**</u>

Ephraim Diamond hereby declares and affirms, under penalty of perjury, as follows:

1.      I am the Associate Restructuring Officer of All Year Holdings Limited (the **"Parent Debtor"**).

2.      I am familiar with the facts and circumstances of the matters set forth and the requests made in the prefixed Motion.[1]  This declaration is made in support thereof.  The facts, circumstances and requests made in the Motion are adopted herein.

3.      Since the commencement of this Chapter 11 Case on December 14, 2021 (the **"Petition Date"**), the Parent Debtor has administered its Chapter 11 Case and maintained its operations and the operations of its direct and indirect subsidiaries including Ralph & Ralph Properties LLC (**"Ralph & Ralph"**), in which the Parent Debtor holds a 50% interest with the

---

[1] Capitalized terms not otherwise defined are as in the Motion.

remaining 50% interest belonging to David Simkowitz (**"Simkowitz"**). Ralph & Ralph is a New York Limited Liability Company with the business and purpose of acquiring, holding, developing, maintaining, and operating a direct interest in the property located at 194 Ralph Avenue, Brooklyn, New York (the **"Real Property"**). The Real Property is a four-story rental building in Stuyvesant Heights, Brooklyn, with one commercial unit and 15 residential units. Ralph & Ralph is the sole owner of all right, title, and interest in and to the Real Property. The Limited Liability Company Operating Agreement (the **"Operating Agreement"**) for the entity is attached as Exhibit 1.

4.     Since early 2021, the Parent Debtor and Simkowitz have engaged in various disputes and negotiations regarding the ongoing management of the Real Property. These disputes revolved around the presence of a lis pendens on the Real Property, ongoing issues with the lender, the ability to refinance the mortgage and other management issues. The lis pendens, for instance, arose out of a pre-petition contract of sale, dispute over (among other things) a deposit, and litigation in the New York state court. The presence of the lis pendens negatively impacts the ability to sell or refinance the Real Property. Despite good faith efforts to resolve these disputes the Parent Debtor and Simkowitz could not do so.

5.     On August 19, 2022, Federal National Mortgage Association, as holder of the mortgage (the **"Mortgage Lender"**) commenced an action in the Supreme Court of New York, Kings County (the **"Foreclosure Action"**), to obtain a judgment of foreclosure and sale of the Real Property. As of the commencement of the Foreclosure Action, the unpaid principal balance of the Real Property's mortgage loan (the **"Mortgage Loan"**) was asserted (reserving all rights of the Parent Debtor in the Foreclosure Action) to have amounted to $1,239,620.01. On October 20, 2022, a receiver was appointed to take control of the Real Property. A true and correct copy of

2

the Foreclosure Action Summons and Complaint, and appointment of a receiver, are attached collectively as Exhibit 2.

6.      The failure to pay the Mortgage Loan and the commencement of the Foreclosure Action have exacerbated the dispute between the two parties in the Real Property.  The Real Property needs to be sold, refinanced, or one partner has to buy out the other and resolve the Foreclosure Action by a prompt refinance.  Simkowitz raised concerns over the Foreclosure Action and appointment of a receiver, and the Parent Debtor's potential ability to refinance the Mortgage Loan on the Real Property.  Following the initiation and pendency of the Foreclosure Action, the parties were able to reach a settlement.  The Parent Debtor has determined that a sale and settlement in accordance with the terms of the Membership Interest Purchase Agreement is appropriate.

7.      Further marketing is unnecessary.  First, the amount at issue is fairly modest; in the context of confirmation of a plan in the Chapter 11 Case, the Debtor should not be required to retain a broker and seek to sell its interest in the Real Property.  The Operating Agreement includes no dispute resolution mechanism.  Simkowitz, as the other 50% holder, is the logical purchaser of the Parent Debtor's interest. The price negotiated is fair and reasonable because based on the most recent appraisal value and recent developments in the New York real estate market, the Parent Debtor is receiving what it believes to be its portion of the net asset value of the Property at this time.

8.      The Parent Debtor is seeking to enter into the membership interest purchase agreement (the **"Membership Interest Purchase Agreement"**) as a compromise with Simkowitz. A true and correct copy of a Membership Interest Purchase Agreement is attached as Exhibit 3. The compromise represented in the Membership Interest Purchase Agreement represents a fair and reasonable settlement of the issues between the partners.  The Real Property was managed

3

historically by the Parent Debtor via a management entity.  The Parent Debtor has determined in this particular instance that it would be more beneficial for it to be paid to sell its interest rather than purchase of its partner's interest and assume a refinancing to resolve the foreclosure.

9.      The Parent Debtor evaluated the value of the Real Property based upon a recent appraisal, took into account the secured debt and the accruing interest thereon, the burden of continuing to operate the Real Property and the difficulty to refinance during the Chapter 11 Case, and arrived at an estimate of the equity in the Real Property.  After adjusting the latest independent appraised value of the Real Property of $3,000,000 as of September 30, 2022, to account for the recent rise in interest rates and related rise in capitalization rates, and after deducting anticipated sales costs and the outstanding loan balance, the purchase price reflected in the settlement represents a fair estimation of the Parent Debtor's current equity in the Property.  The settlement reflects the extraction of substantial equity in the Real Property – without the costs, burdens and delay that otherwise would be necessary to realize that equity.  The Membership Interest Purchase Agreement avoids the Parent Debtor's costly and uncertain involvement and funding of the Foreclosure Action, and will result in the payment of $675,000.00 to the Parent Debtor at this crucial time as the Chapter 11 Case comes to confirmation of a plan.

10.     The plan sponsor also supports a resolution of this matter coterminous with confirmation and effectiveness of a plan (although it is not a condition to the effectiveness of a plan).  The continued presence of the dispute over the Real Property was seen as a negative in the context of confirmation.  The cash to be realized will ease the burden of the Parent Debtor to confirm its Chapter 11 Case and help fund the cash required on effectiveness.

11.     Pursuant to the plan of reorganization and the terms of the Investment Agreement incorporated therein, it is necessary for the Parent Debtor to negotiate, compromise and settle

4

disputes involving its subsidiaries consonant with the plan transaction. The sale of a 50% interest in real estate or an entity that holds real estate is likely to trigger an obligation to pay local transfer or similar tax (reserving all rights of the Parent Debtor and relevant entities). The transactions contemplated herein are consonant with the plan and, therefore, should be subject to the exemptions provided for in section 1146 of the Bankruptcy Code as transfers under a plan. Given that the Parent Debtor contemplates that this sale will occur incident to effectiveness of the plan, the Membership Interest Sale Agreement contemplates a request to qualify for a plan exemption, and thus the Parent Debtor requests section 1146(a) qualification and exemption as a transfer "under a plan confirmed."

12.    The Parent Debtor accordingly respectfully requests to enter into and effectuate the sale and compromise between the Parent Debtor and Simkowitz in accordance with the terms set forth in the Membership Interest Sale Agreement.

Pursuant to 28 U.S.C. §1746, I affirm, under penalty of perjury under the laws of the United States of America, that the foregoing is true and accurate.

Dated:  New York, New York
            December 30, 2022

Ephraim Diamond

**<u>Exhibits to Declaration</u>**

1        Operating Agreement

2        Foreclosure Action – Summons and Complaint (without exhibits), and
         Appointment of Receiver

3        Membership Interest Purchase Agreement

**Exhibit 1**

**Operating Agreement**

**Amended and Restated**

## LIMITED LIABILITY COMPANY OPERATING AGREEMENT

## OF

### Ralph & Ralph properties LLC

This Amended and Restated Limited Liability Company Operating Agreement ("Agreement") of **R a l p h  &  R a l p h  p r o p e r t i e s** LLC (the "Company") is effective as of **November 26,2014** and entered into by All Year Holdings Limited and David Simkowitz (collectively the "Members").

**WHEREAS**, the Articles of Organization for the Company were filed with the New York Department of State in accordance with the New York Limited Liability Company Act (the "Act"); and

**WHEREAS**, the Members desire to operate the Company as a limited liability company under the Act for the purposes set forth herein.

**NOW, THEREFORE**, in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the Company and Members hereby agree as follows:

1.     **Name**. The name of the Company is "**Ralph & Ralph properties LLC** ", unless changed by the Members.

2.     **Purpose**. The Company's business and purpose shall consist of acquiring, owning, holding, developing, maintaining, and operating a direct interest in the property located at **194 Ralph Ave, Brooklyn, New York** (the "Property"), together with such other activities as may be necessary or advisable in connection with the ownership of the Property.

3.     **Principal Office**. The principal office of the Company shall be located at **199 Lee Avenue, #693, Brooklyn, New York 11211**, or such other location as the Members may select.

4.     **Member(s): Assignments.** The Members shall be the only members of the Company unless the Members, in their sole discretion, determine that one or more other persons will be admitted as a member, or that the Members desire to assign all or part of their membership interest in the Company. The names, percentage member interests and addresses of the Members are listed below:

| Name | Address | Interest |
|------|---------|----------|
| All Year Holdings Limited | 199 Lee Ave #693 Brooklyn NY | 50% |
| David Simkowitz, | ██████████████ | 50% |

5. **Management**. The members agree that the business and affairs of the Company shall be managed by **Yoel Goldman** (the "Manager"). The Manager is authorized to execute any and all documents on behalf of the Company necessary or appropriate in connection with the acquisition, financing, operation, management or development of the business and any property of the Company.

6. **Indemnification**. The Company shall indemnify and hold harmless the Members and each other person requested to perform services on behalf of the Company as provided in this section. The Company shall indemnify and hold harmless, to the fullest extent permitted by law, each of such persons from and against any and all losses, claims, damages, liabilities, expenses (including reasonable legal fees and expenses), judgments, fines, settlements and other amounts arising from all claims, demands, actions, suits or proceedings in which such persons may be involved, or threatened to be involved, as a party or otherwise arising as a result of such person's status as a member, manager, officer, employee or agent of the Company, or any affiliate of such a person performing services on behalf of the Company. The Company shall pay or reimburse, to the fullest extent allowed by law, in advance of the final disposition of the proceeding, the costs referred to above as they are incurred by the indemnified person in connection with any action to which this indemnity applies. The indemnity rights and obligations of the parties under this section shall survive the termination of this Agreement and the dissolution of the Company to the extent that an indemnified person becomes involved in an action at such time.

7. **Capital Contributions; Loans**. The Members shall make only such capital contributions as the Members, in their sole discretion, determine appropriate for the Company's purpose. No capital contributions shall be returned to the Members except upon the Members' written consent. No interest or other return shall accrue or be payable with respect to any capital contributions. The Members and any other person may make advances or loans to the Company on such terms and conditions as the Members and such other person agree upon in writing.

8. **Allocation of Profits and Losses; Distributions of Cash Flow**. All of the Company's profits, losses and distributions shall be allocated and made solely to the Members. Distributions shall be made to the Members at the times and in the amounts determined by the Members. For this purpose "cash flow" means the excess of cash receipts over cash disbursements, determined for each fiscal year of the Company or for such other period it is to be computed; provided that cash receipts shall not include capital contributions, loan proceeds or condemnation or insurance proceeds unless the Members otherwise agree. No distribution shall be made to the extent it would be improper under the Act.

9.    **Fiscal Year; Tax Reporting**.    The fiscal year of the Company for financial statement and federal income tax purposes shall end on December 31 of each year. The Members shall cause to be prepared and timely filed all tax returns required to be filed for the Company (if any).

10.    **Term; Dissolution**. The term of the Company shall continue until the (i) written consent of the Members to dissolve it, or (ii) the dissolution of the Members unless a successor member is appointed in the manner provided under the Act. If any member has a deficit capital account upon dissolution, said member shall have no obligation to make any additional capital contribution, and the negative balance of the capital account shall not be considered a debt owed by the member to the Company.

11.    **Entire Agreement; Amendments**.    This Agreement constitutes the entire operating agreement of the Company and may be amended and supplemented only by a written instrument signed by the Members.

12.    **Governing Law**.    This Agreement and its interpretation shall be governed exclusively by the laws of New York.

13.    **No Third Party Beneficiary**.    None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Company or other third party.

14.    **Counterparts**.    This Agreement may be executed in counterparts, each of which shall be considered an original.


[Signature page follows]

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date and year first set forth above.

**MEMBERS:**

**All Year Holdings Limited**

_____
**Yoel Goldman, Director**

**All Year Holdings Limited**

_____
**Joel Grunfled, Director**

_____
**David Simkowitz**

**COMPANY:**

**Ralph & Ralph Properties LLC,**
a New York limited liability company

By: _____
Name: **Yoel Goldman**
Title: Manager

**Exhibit 2**

**Foreclosure Action –
Summons and Complaint (without exhibits),
and Appointment of Receiver**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                Plaintiff,

      - against -

RALPH & RALPH PROPERTIES LLC, YOEL
GOLDMAN, DW BROOKLYN 75 LLC, the
NEW YORK CITY DEPARTMENT OF
HOUSING PRESERVATION AND
DEVELOPMENT, the NEW YORK CITY
DEPARTMENT OF HEALTH AND MENTAL
HYGIENE, the FIRE DEPARTMENT OF THE
CITY OF NEW YORK, the NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD and
JOHN DOES #1 THROUGH JOHN DOE #14,
inclusive, the names of the last 14 defendants
being fictitious, the true names of said
defendants being unknown to plaintiff, it being
intended to designate any occupants or tenants
of the mortgaged premises who are in default in
the payment of rent for which a proceeding is
now pending by the mortgagor and/or other
persons or parties having or claiming an interest
in or lien upon the mortgaged premises
subordinate to that of the mortgagee, if the
aforesaid individual defendants are living, and if
any or all of said individual defendants be dead,
their heirs at law, next of kin, distributes,
executors, administrators, trustees, committees,
devisees, legatees and the assignees, lienors,
creditors, successors in interest of them, and
generally all persons having or claiming under,
by, through or against the said defendants
named as a class, any right, title or interest in or
lien upon the premises described in the amended
complaint herein,

                Defendants.

Index No. _____

**SUMMONS**

**Property Address:**

194 Ralph Avenue
Brooklyn, New York 11233

**TO THE ABOVE-NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action, and to serve a copy of your Answer on Plaintiff's undersigned counsel within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is completed if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, Judgment will be taken against you for the relief demanded in the Complaint.

Dated: August 19, 2022
      New York, New York

                                AKIN GUMP STRAUSS HAUER & FELD LLP

                                */s/ Dean L. Chapman Jr.*
                                Dean L. Chapman Jr.
                                Megi Belegu
                                One Bryant Park
                                New York, New York 10036
                                Telephone: (212) 872-8095
                                Facsimile: (212) 872-1002

FILED: KINGS COUNTY CLERK 10/27/2022 01:43 PM
INDEX NO. 524163/2022
NYSCEF DOC. NO. 47
21-12051-mg   Doc 309   Filed 01/03/23   Entered 01/03/23 12:07:04   Main Document
RECEIVED NYSCEF: 10/27/2022
Pg 30 of 72

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS**

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                Plaintiff,

       - against -

RALPH & RALPH PROPERTIES LLC, YOEL
GOLDMAN, DW BROOKLYN 75 LLC, the NEW
YORK CITY ENVIRONMENTAL CONTROL
BOARD, and JOHN DOES #1 THROUGH JOHN
DOE #14, inclusive, the names of the last 14
defendants being fictitious, the true names of said
defendants being unknown to plaintiff, it being
intended to designate any occupants or tenants of the
mortgaged premises who are in default in the
payment of rent for which a proceeding is now
pending by the mortgagor and/or other persons or
parties having or claiming an interest in or lien upon
the mortgaged premises subordinate to that of the
mortgagee, if the aforesaid individual defendants are
living, and if any or all of said individual defendants
be dead, their heirs at law, next of kin, distributes,
executors, administrators, trustees, committees,
devisees, legatees and the assignees, lienors,
creditors, successors in interest of them, and
generally all persons having or claiming under, by,
through or against the said defendants named as a
class, any right, title or interest in or lien upon the
premises described in the amended complaint herein,

                Defendants.

Index. No. 524163/2022

**NOTICE OF ENTRY**

1

FILED: KINGS COUNTY CLERK 10/27/2022 01:43 PM
INDEX NO. 524163/2022
NYSCEF DOC. NO. 47
RECEIVED NYSCEF: 10/27/2022

21-12051-mg    Doc 309    Filed 01/03/23    Entered 01/03/23 12:07:04    Main Document
Pg 31 of 72

PLEASE TAKE NOTICE that the annexed document is a true copy of the Order

Appointing a Receiver in Mortgage Foreclosure Action executed by the Hon. Lawrence Knipel,

J.S.C. on October 20, 2022 and filed in the Kings County Clerk's Office on October 21, 2022.


Dated: New York, New York
          October 27, 2022


                                 **AKIN GUMP STRAUSS HAUER & FELD LLP**


                                 */s/ Dean L. Chapman, Jr.*
                                 Dean L. Chapman, Jr., Esq.
                                 Megi Belegu
                                 One Bryant Park
                                 New York, New York 10036
                                 Telephone: (212) 872-1000
                                 Facsimile:  (212) 872-1002

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | Index No. _____ |
| Plaintiff, | |
| - against - | **COMPLAINT** |
| RALPH & RALPH PROPERTIES LLC, YOEL GOLDMAN, DW BROOKLYN 75 LLC, the NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, the NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, the FIRE DEPARTMENT OF THE CITY OF NEW YORK, the NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and JOHN DOES #1 THROUGH JOHN DOE #14, inclusive, the names of the last 14 defendants being fictitious, the true names of said defendants being unknown to plaintiff, it being intended to designate any occupants or tenants of the mortgaged premises who are in default in the payment of rent for which a proceeding is now pending by the mortgagor and/or other persons or parties having or claiming an interest in or lien upon the mortgaged premises subordinate to that of the mortgagee, if the aforesaid individual defendants are living, and if any or all of said individual defendants be dead, their heirs at law, next of kin, distributes, executors, administrators, trustees, committees, devisees, legatees and the assignees, lienors, creditors, successors in interest of them, and generally all persons having or claiming under, by, through or against the said defendants named as a class, any right, title or interest in or lien upon the premises described in the amended complaint herein, | **Property Address:**<br><br>194 Ralph Avenue<br>Brooklyn, New York 11233 |
| Defendants. | |

Plaintiff Federal National Mortgage Association ("Plaintiff"), by and through its undersigned counsel, Akin Gump Strauss Hauer & Feld LLP, for its complaint against Defendants Ralph & Ralph Properties LLC, Yoel Goldman, DW Brooklyn 75 LLC, the New York City Department of Health and Mental Hygiene, the Fire Department of the City of New York, the New York City Department of Housing Preservation and Development, the New York City Environmental Control Board, and John Doe #1 through John Doe #14 (the "Complaint") alleges as follows:

## NATURE OF THE ACTION

1.      This is a mortgage foreclosure action on a property located at 194 Ralph Avenue, Brooklyn, New York 11233 (the "Property"). Plaintiff's mortgage on the Property secures a loan in the principal amount of $1,500,000.00 which has been in default since November 1, 2021. With this action, Plaintiff seeks foreclosure of the Property as its lawful remedy under the governing loan documents as well as a money judgment against Ralph & Ralph Properties LLC and Yoel Goldman.

## PARTIES

2.      Plaintiff is a corporation organized and existing under the laws of the United States with its principal place of business in Washington, D.C, with offices located at Midtown Center, 1100 15th Street NW, Washington, DC 20005.

3.      Upon information and belief, Defendant Ralph & Ralph Properties LLC is a New York limited liability company located at 199 Lee Ave, # 693, Brooklyn, NY 11211.

4.      Upon information and belief, Defendant Yoel Goldman is an individual currently residing in Kings County, New York.

1

5.      Upon information and belief, Defendant DW Brooklyn 75 LLC is a Delaware limited liability company having an office at c/o DWREI Real Estate, 780 Third Avenue, 25th Floor, New York, New York 10017.

6.      Upon information and belief, Defendant New York City Department of Health and Mental Hygiene is a New York agency with an office located at 42-09 28th St, Queens, NY 11101.

7.      Upon information and belief, Defendant Fire Department of the City of New York is a New York agency with a headquarters at 9 Metrotech Center, New York, NY 11201.

8.      Upon information and belief, Defendant New York City Department of Housing Preservation and Development is a New York agency with an office located at 100 Gold St, New York, NY 10038.

9.      Upon information and belief, Defendant New York City Environmental Control Board, also known as the Office of Administrative Trials and Hearings, is a New York City agency with an office located at 9 Bond Street, 7th Floor, Brooklyn, New York 11201.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over Defendant Ralph & Ralph Properties LLC because, *inter alia*, it agreed to submit to personal jurisdiction in New York State according to the terms of the Note, Loan Agreement, and Mortgage Agreement (defined *infra*).

11.     This Court has jurisdiction over Defendant Yoel Goldman because, *inter alia*, he agreed to submit to personal jurisdiction in New York State according to the terms of the Guaranty (defined *infra*).

12.     This Court has jurisdiction over Defendant DW Brooklyn 75 LLC because its principal place of business is in New York State.

13.    This Court has jurisdiction over Defendant New York City Department of Health and Mental Hygiene because it is a New York City agency with a principal place of business in New York State.

14.    This Court has jurisdiction over Defendant Fire Department of the City of New York because it is a New York City agency with a principal place of business in New York State.

15.    This Court has jurisdiction over Defendant New York City Department of Housing Preservation and Development because it is a New York City agency with a principal place of business in New York State.

16.    This Court has jurisdiction over Defendant New York City Environmental Control Board, also known as the Office of Administrative Trials and Hearings, because it is a New York City agency with a principal place of business in New York State.

17.    Venue for foreclosure of the mortgage on the Property and any liens thereon is proper under CPLR 507 because the property is located in Kings County.

## FACTUAL ALLEGATIONS

### The Mortgage and the Loan Documents

18.    On or about October 4, 2011, Ralph & Ralph Properties LLC (the "Borrower-Defendant") executed a Multifamily Note (the "Note") for the benefit of Arbor Commercial Funding, LLC ("Arbor"), the original lender under the Note.  Under the terms of the Note, the Borrower-Defendant agreed to pay to the holder of the Note (the "Lender") the sum of $1,500,000.00 plus interest.  A true and correct copy of the Note is annexed as **Exhibit A** and incorporated herein.

19.    On or about October 4, 2011, Ralph & Ralph Properties LLC and Arbor entered into a Multifamily Loan and Security Agreement (the "Loan Agreement").  A true and correct copy of the Loan Agreement is annexed as **Exhibit B** and incorporated herein.  Under Schedule 2

of the Loan Agreement, the Borrower-Defendant was required to make monthly payments on the loan to the Lender on the first day of each month from December 1, 2011 through November 1, 2021 (the "Monthly Payments"). The principal sum and all accrued but unpaid interest was due and payable on the maturity date of November 1, 2021 (the "Maturity Date").[1]

20.     In order to secure its indebtedness under the Note, on or about October 4, 2011, the Borrower-Defendant simultaneously executed a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "Mortgage Agreement"). A true and correct copy of the Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on October 4, 2011, File No. 2011000367303, is annexed as **Exhibit C** and incorporated herein. Under the Mortgage Agreement, the Borrower-Defendant mortgaged to Arbor the Property, including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "Mortgage").

21.     On October 4, 2011, Yoel Goldman executed a Guaranty of Non-Recourse Obligations to and for the benefit of Arbor (the "Guaranty"). A true and correct copy of the Guaranty is annexed as **Exhibit D** and incorporated herein.

22.     Collectively, the Note, the Loan Agreement, the Mortgage Agreement, the Guaranty, and all attachments thereto and assignments thereof are referred to as the "Loan Documents."

23.     Under Section 3 of the Mortgage Agreement, the Borrower-Defendant executed an Assignment of Rents (the "Assignment of Rents") to Lender. Under the Assignment of Rents, the Borrower-Defendant absolutely and unconditionally assigned and transferred to Lender all

---

[1] Because the Borrower-Defendant defaulted by failing to make the payment due on the Maturity Date, *see infra* ¶ 36, the loan has been accelerated, and the total outstanding principal and accrued and unpaid interest is immediately due and payable under the Note. *See infra* ¶ 34.

4

"Rents," as that term is defined in the Mortgage Agreement.  In return, the Lender granted the

Borrower-Defendant a revocable license to collect and receive all Rents, to hold all Rents in trust

for the benefit of Lender, to apply all Rents to pay the installments of interest and principal due

and payable under the Note and the other amounts due and payable under the Loan Documents,

and to pay the costs and expenses of managing and maintaining the Property.  The Borrower-

Defendant was further authorized to retain any remaining Rents.

      24.     Upon the occurrence of an Event of Default (*see* Section 14.01 of the Loan

Agreement) under the Loan Documents, the Borrower-Defendant's license to collect rents

automatically terminates, and Lender is entitled to receive all Rents as they become due and

payable.  To that end, under Section 3(c) of the Mortgage Agreement, the Borrower-Defendant

agreed to pay any such Rents over to Lender.

**The Property**

      25.     The Property is located at 194 Ralph Avenue, Brooklyn, New York, 11233 and is

more particularly described as follows:

> ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING
> AND BEING IN THE BOROUGH OF BROOKLYN, COUNTY OF KINGS, CITY
> AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:
>
> BEGINNING AT A POINT ON THE WESTERLY SIDE OF RALPH AVENUE,
> DISTANT 80 FEET SOUTHERLY FROM THE SOUTHWESTERLY CORNER OF
> RALPH AVENUE AND MCDONOUGH STREET;
>
> RUNNING THENCE WESTERLY PARALLEL WITH MCDONOUGH STREET, 90
> FEET; THENCE SOUTHERLY PARALLEL WITH RALPH AVENUE, 40 FEET;
>
> THENCE EASTERLY PARALLEL WITH MCDONOUGH STREET, 90 FEET TO
> THE WESTERLY SIDE OF RALPH AVENUE;
>
> THENCE NORTHERLY ALONG THE WESTERLY SIDE OF RALPH AVENUE, 40
> FEET TO THE POINT OR PLACE OF BEGINNING

**Personal Liability of Borrower-Defendant and Goldman**

26.     Under Section 3.02(a) of the Loan Agreement, the Borrower-Defendant agreed to be held personally liable to Lender "for the repayment of a portion of the Indebtedness equal to any loss or damage suffered by Lender as a result of" certain enumerated items listed therein. *See* Exhibit B.

27.     Among the items for which the Borrower-Defendant agreed to accept personal liability was its failure to pay Lender, upon demand after an Event of Default, all Rents (*see* Section 3.02(a)(1) of the Loan Agreement) to which Lender is entitled under Section 3(a) of the Mortgage Agreement and the amount of all security deposits collected by the Borrower-Defendant from tenants then in residence.  Exhibit B.

28.     Under Section 3.03 of the Loan Agreement, the Borrower-Defendant agreed to be "personally and fully liable to Lender" for its "indemnity obligations under Section 13.01(e), the Environmental Indemnity Agreement, and any other indemnity provided by Borrower under any other Loan Document."  Exhibit B.

29.     Under the Guaranty, Goldman "guarantees to the Lender the full and prompt payment and performance when due . . . of all amounts, obligations, and liabilities owed to Lender under Article 3 . . . of the Loan Agreement . . . and all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under th[e] Guaranty."  Exhibit D.

**Assignment of the Loan Documents to Plaintiff**

30.     On October 4, 2011, Arbor assigned the Mortgage Agreement and Note to Plaintiff (the "Mortgage and Note Assignment") in a written instrument duly recorded in the Office of the City Register of the City of New York on October 4, 2011 under Control Number 2011000367304.

A true and correct copy of the Mortgage and Note Assignment is annexed as **Exhibit E** and incorporated herein.

31.     On October 4, 2011, Arbor assigned certain "Collateral Agreements and Other Loan Documents" to Plaintiff (the "Collateral Agreements Assignment"), which assigned agreements including the Loan Agreement, the Guaranty, and "[a]ny other documents executed in connection with the Mortgage." A true and correct copy of the Collateral Agreements Assignment is annexed as **Exhibit F** and incorporated herein.

32.     Plaintiff is in possession of the original Note, indorsed in blank, which is attached hereto as Exhibit A. By virtue of Plaintiff's possession of the original Note, as well as the Mortgage and Note Assignment, Plaintiff became and is still the mortgagee on, and owner and holder of, the Note and the Mortgage Agreement.

**Defaults, Fees, and Remedies, Including Foreclosure, Under the Loan Documents**

33.     Under Section 14.01(a)(1) of the Loan Agreement, any failure by the Borrower-Defendant to pay or deposit when due any amount required by the Note, the Mortgage Agreement, or any other Loan Document is deemed an automatic "Event of Default." Exhibit B. This includes failure to pay the principal sum and all accrued but unpaid interest due and payable on the Maturity Date.

34.     Under Section 6 of the Mortgage Agreement, following an Event of Default, the Lender may declare the entire amount of the indebtedness immediately due and payable, may institute judicial foreclosure proceedings, is entitled to the *ex parte* appointment of a receiver, and may invoke any other remedies permitted by the Loan Documents and New York law. Exhibit C. Lender is also entitled to

> all expenditures and expenses authorized by applicable law and all other expenditures and expenses which may be paid or incurred by or on behalf of Lender

7

21-12051-mg    Doc 309    Filed 01/03/23    Entered 01/03/23 12:07:04    Main Document
Pg 40 of 72

for reasonable legal fees, appraisal fees, outlays for documentary and expert evidence, stenographic charges and publication costs; . . . and all additional advances made pursuant to Section 8303 of the Civil Practice Law and Rules of the State of New York and costs . . . of procuring all abstracts of title, title searches and examinations, title insurance policies, and similar data and assurance with respect to title as Lender may deem reasonably necessary either to prosecute any suit or to evidence the true conditions of the title to or the value of the Mortgaged Property to bidders at any sale which may be held in connection with the exercise of Lender's rights and remedies under the Loan Documents.  All expenditures and expenses of the nature mentioned in this Section 6, and such other expenses and fees as may be incurred in the protection of the Mortgaged Property and rents and income therefrom and the maintenance of the lien of this Security Instrument, including the fees of any attorney employed by Lender in any litigation or proceedings affecting this Security Instrument, the Note, the other Loan Documents, or the Mortgaged Property, including bankruptcy proceedings, [or] any Foreclosure Event . . . shall be additional Indebtedness and shall be immediately due and payable by Borrower, with interest thereon at the Default Rate until paid.

Exhibit C.

35.    Under Section 2.02(d)(1)(B) of the Loan Agreement, if any principal, interest, or other indebtedness due under the Loan Documents is not paid in full on the Maturity Date, then interest on such unpaid amount(s) shall accrue from the Maturity Date at the "Default Rate." *See* Exhibit B.  The Default Rate is defined in the Loan Agreement to be the lesser of "the sum of the Interest Rate plus four (4) percentage points" or "the maximum interest rate which may be collected from Borrower under applicable law." *See id.*, Schedule 1.

36.    Additionally, under Section 2.02(c) of the Loan Agreement, if any amount payable under the Loan Agreement is not received by Lender within ten days of the due date, the Borrower-Defendant is required to pay Lender a late charge.  Exhibit B.  The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate.

37.    Furthermore, pursuant to the Mortgage Agreement, the Borrower-Defendant agreed to pay all Indebtedness, including all Enforcement Costs, which include, among other things:

All expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by

8

FILED: KINGS COUNTY CLERK 08/19/2022 01:13 PM INDEX NO. 524163/2022

NYSCEF DOC. NO. 2    21-12051-mg    Doc 309    Filed 01/03/23    Entered 01/03/23 12:07:04    Main Document    RECEIVED NYSCEF: 08/19/2022

Pg 41 of 72

Lender as a result of any Event of Default under the Loan Agreement or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Agreement or any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event) or judicial or non-judicial foreclosure proceeding, to the extent permitted by law.

Exhibit C.

38.    Finally, under Section 3(g) of the Mortgage Agreement, if the Rents are not sufficient to meet the Lender's costs of taking control and managing the Property, Lender is entitled to have any additional funds it expends to operate the Property added to the indebtedness due under the Loan Documents.  *See* Exhibit C.

**Failure to Make Payment Due on Maturity Date**

39.    On November 1, 2021, the Maturity Date, the Borrower-Defendant failed to pay the principal sum and all accrued but unpaid interest, as required under the Loan Documents.  Such failure to pay the amounts due on the Maturity Date constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

**Agreements to Forebear Through July 15, 2022**

40.    Notwithstanding and without waiving this undisputed Event of Default, on January 19, 2022, Plaintiff and the Borrower-Defendant entered into a Forbearance Agreement (the "Forbearance Agreement") whereby Plaintiff agreed to forbear from the exercise of its legal and equitable remedies under the Loan Documents through April 30, 2022.  A true and correct copy of the Forbearance Agreement is annexed as **Exhibit G** and incorporated herein.

41.    The Borrower-Defendant acknowledged in the Forbearance Agreement that it is indebted to Plaintiff for all amounts presently unpaid and outstanding under the Loan Documents,

in principal, interest, and other amounts, without defense, setoff, deduction or counterclaim of any

kind whatsoever, all of which are forever waived and released.  Exhibit G.

42.     Under Paragraph 8 of the Forbearance Agreement, the Borrower-Defendant

executed a broad release of all possible claims it could potentially bring against Plaintiff.  *See id.*

43.     The original Forbearance Agreement expired April 30, 2022, but Plaintiff provided

the Borrower-Defendant with two extensions of the Forbearance Agreement:

  a.  The First Extension of Forbearance Agreement, which extended the expiration date

      through June 30, 2022 (a true and correct copy of which is annexed as **Exhibit H**

      and incorporated herein); and

  b.  The Second Extension of Forbearance Agreement, which further extended the

      expiration date through July 15, 2022 (a true and correct copy of which is annexed

      as **Exhibit I** and incorporated herein).

44.     The final such extension of the Forbearance Agreement expired July 15, 2022, and

Plaintiff did not agree to any further forbearance.

**Demand for Payment of Matured Loan and Termination of License to Collect Rents**

45.     As of the filing of this Complaint, the Borrower-Defendant still has not paid the

principal sum and all accrued but unpaid interest, as required under the Loan Documents, that has

been due and owing since November 1, 2021.

46.     On July 29, 2022, Plaintiff sent a letter to the Borrower-Defendant notifying it that

it was in default of its obligations under the Loan Documents by virtue of its failure to pay the

amounts due on the Maturity Date (the "Demand Letter").  A true and correct copy of the Demand

Letter is annexed as **Exhibit J** and incorporated herein.

10

21-12051-mg     Doc 309     Filed 01/03/23     Entered 01/03/23 12:07:04     Main Document
Pg 43 of 72

47.     In the Demand Letter, Plaintiff demanded that the Borrower-Defendant pay immediately all of the outstanding principal and accrued and unpaid interest under the Note, in its entirety, together with all applicable charges and all costs, expenses, and attorneys' fees incurred by Plaintiff.  *See* Exhibit J.  Plaintiff notified the Borrower-Defendant that, by reason of the defaults, Plaintiff may immediately institute foreclosure proceedings under the Mortgage and may otherwise exercise any and all other rights and remedies enumerated in the Loan Documents or otherwise available at law or in equity.  *See id*.  These rights and remedies included, without limitation, the appointment of a receiver over the Property.  *See id.*

48.     Additionally, in the Demand Letter, Plaintiff gave notice that the Borrower-Defendant's license to collect Rents at the Property was terminated, and that Plaintiff is now entitled to all Rents as they become due and payable.  *See id.*  The Demand Letter went on to demand that any Rents collected by the Borrower-Defendant after the occurrence of the Event of Default on November 1, 2021 be received and held by the Borrower-Defendant in trust for the benefit of Plaintiff, and only applied to "bona fide current operating expenses to third parties in connection with the operation of the property with excess paid to Fannie Mae, to be applied in accordance with the Loan Documents."  *Id*.

49.     As of the filing of this Complaint, the Borrower-Defendant has not turned over any Rents or security deposits to Plaintiff.

**Liens on the Property**

50.     Under Section 11.02(a) of the Loan Agreement, the Borrower-Defendant "shall not permit the grant, creation, or existence of any Lien, whether voluntary, involuntary, or by operation of law, on all or any portion of the Property (including any voluntary, elective, or non-compulsory

11

21-12051-mg    Doc 309    Filed 01/03/23    Entered 01/03/23 12:07:04    Main Document
Pg 44 of 72

tax lien or assessment pursuant to a voluntary, elective, or non-compulsory special tax district or similar regime)." Exhibit B.

51.     According to a recently-issued title report for the Property, the following parties may have liens against the Property, each of which is junior to the Mortgage: DW Brooklyn 75 LLC, the New York City Department of Health and Mental Hygiene, the Fire Department of the City of New York, the New York City Department of Housing Preservation and Development, and the New York City Environmental Control Board.  Out of an abundance of caution, Plaintiff has named each such party as a defendant herein.

52.     Defendant DW Brooklyn 75 LLC filed a lawsuit in the Supreme Court of Kings County, New York against the Borrower-Defendant, under index number 501321/2021, together with a *lis pendens* against the Property.  Though the claims against the Borrower-Defendants were subsequently dismissed and the *lis pendens* lifted, DW Brooklyn 75 LLC filed an appeal, which is pending as of the filing of this Complaint.

53.     The New York City Department of Health and Mental Hygiene issued one violation against the Property on November 23, 2009 based on a window guard.  The corresponding docket number is 4564909W0.

54.     The New York City Department of Rent and Housing Maintenance of the New York City Department of Housing Preservation and Development issued five violations against the Property in January 2022 in connection with unit 2B of the Property.

55.     The Maintenance Emergency Repairs Unit of the New York City Department of Housing Preservation and Development issued fourteen charges against the Property in connection with work orders and three inspection fees, resulting in a total charge of $7,562.43.

12

21-12051-mg    Doc 309    Filed 01/03/23    Entered 01/03/23 12:07:04    Main Document
Pg 45 of 72

56.    The Fire Department of the City of New York issued two violations against the Property on December 7, 2018 based on a failure to produce a permit or record and a failure to conduct a required inspection or test.

57.    The New York City Environmental Control Board (also known as the Office of Administrative Trials and Hearings) issued one violation against the Borrower-Defendant based on the improper disposal of bedding on March 24, 2021. It is listed under Violation Number 47044157X, and was docketed in June 2021, with a fine of $300.

**Receivership**

58.    Upon the occurrence of an Event of Default, the Borrower-Defendant acknowledged repeatedly in the Loan Documents that Plaintiff is entitled to the *ex parte* appointment of a receiver to oversee the Property.

59.    Section 7.02(a)(2) of the Loan Agreement states that the Borrower-Defendant shall "surrender possession of the Mortgaged Property, including all Leases and all security deposits and prepaid Rents, immediately upon appointment of a receiver or Lender's entry upon and taking of possession and control of the Mortgaged Property." Exhibit B.

60.    Under Section 3(e) of the Mortgage Agreement, "if an Event of Default has occurred. . . Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in Section 3 . . . [and] Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte*, if permitted by applicable law." Exhibit C.

61.    Under Section 3(e) of the Mortgage Agreement, the Borrower-Defendant further agreed to "shortened time consideration of a motion to appoint a receiver." *Id.*

13

62. Finally, under Section 3(e) of the Mortgage Agreement, the Borrower-Defendant further agreed that, "[i]mmediately upon appointment of a receiver . . . possession of the Mortgaged Property and all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property, and all security deposits and prepaid Rents, shall be surrendered to Lender or the receiver, as applicable." *Id*.

### Demand for Judgment on the Property

63. The following amounts are due and owing under the Loan Documents, no part of which has been paid by the Borrower-Defendant, although duly demanded: (a) the outstanding principal sum of $1,239,620.01; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since November 1, 2021; (c) late charges; and (d) rental payments and security deposits owed under the Note and Assignment of Rents to be determined.  These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the Property.

64. Plaintiff has fulfilled all of its obligations under the Loan Documents.

65. Arbor has fulfilled all of its obligations under the Loan Documents.

66. No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the Loan Documents, or any part thereof.

14

67.     DW Brooklyn LLC has been made a defendant by virtue of the lawsuit it filed against the Borrower-Defendant and accompanying *lis pendens* it filed against the Property (which is presently on appeal).

68.     The New York City Department of Health and Mental Hygiene has been made a defendant by virtue of its apparent lien against the Property as of November 23, 2009.

69.     The Fire Department of the City of New York has been made a defendant by virtue of its apparent lien against the Property as of December 7, 2018.

70.     The New York City Department of Housing Preservation and Development has been made a defendant by virtue of its apparent liens against the Property administered by the Maintenance Emergency Repairs Unit dated between December 28, 2005 and March 11, 2022, and by the Department of Rent and Housing Maintenance as of January 2022.

71.     The New York City Environmental Control Board has been made a defendant by virtue of its outstanding judgment against the Property docketed in June 2021.

72.     The Defendants John Doe # 1 through John Doe # 14 have been made defendants because they are or may be tenants or may be in possession of the Property, or may be corporations or other entities or person who claim, or may claim, a lien against the Property.

73.     Any claim that any of the defendants in this action have on the Property is subject and subordinate to the lien of Plaintiff evidenced by and described in the Loan Documents.

74.     Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the Mortgage on the Property and (ii) awarding Plaintiff a money judgment against the Borrower-Defendant and Yoel Goldman for the portion of the total indebtedness due under the Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated

15

in Section 3.02(a) of the Loan Agreement, including Rents and security deposits as described

therein. *See* Exhibit B.

75.    Plaintiff requests that in the event that this action will proceed to judgment of

foreclosure and sale, the Property should be sold subject to the following:

      (a) any state of facts that an inspection of the premises would disclose;

      (b) any state of facts that an accurate survey of the premises would show;

      (c) covenants, restrictions, easements, and public utility agreements of record, if any;

      (d) building and zoning ordinances of the municipality in which the Property is located and possible violations of same;

      (e) any rights of tenants or persons in possession of the Property;

      (f) any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale; and

      (g) prior lien(s) of record, if any.

76.    Plaintiff shall not be deemed to have waived, altered, released, or changed any

demand made in this Complaint, as a result of any payment made by the Borrower-Defendant after

the commencement of this action, or any of the defaults mentioned herein, and such demands shall

continue and remain effective.

### **PRAYER FOR JUDGMENT**

Wherefore, Plaintiff demands judgment as follows:

(a)    That the Borrower-Defendant, subsequent to the filing of the notice of pendency of

this action in the Kings County Clerk's Office, and every person whose conveyance or

encumbrance is subsequent or subsequently recorded, be forever barred and foreclosed of all right,

claim, lien, and equity redemption in the Property;

(b)    That a receiver possessing such powers as those granted to him/her under the

Mortgage Agreement and applicable law be appointed for the Property;

16

FILED: KINGS COUNTY CLERK 08/19/2022 01:13 PM
INDEX NO. 524163/2022
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 08/19/2022
21-12051-mg   Doc 309   Filed 01/03/23   Entered 01/03/23 12:07:04   Main Document
Pg 49 of 72

(c)     That the Property may be decreed to be sold in one or more parcels according to law;

(d)     That the monies arising from the sale of Property may be brought into Court;

(e)     That the amount due Plaintiff under the Loan Documents be adjudged, and that from the monies arising from the foregoing sale, Plaintiff be paid the amount due it under the Loan Documents with interest to the time of such payment, the expenses of sale, and the costs and expenses of this action, including reasonable attorneys' fees and expenses, together with any monies which may be paid by Plaintiff for taxes, water and sewer charges and assessments, insurance premiums, and all other charges and liens thereon to be paid, with interest at the Default Rate upon such amounts from the dates of the respective payments and advances thereof, so far as the amounts of monies properly allocable thereto will pay the same;

(f)     That the Borrower-Defendant and Yoel Goldman may be adjudged to pay all amounts due under Section 3.02(a) of the Loan Agreement for which they agreed to be held personally liable; and

(i)     That Plaintiff be awarded such other and further relief as shall be just and equitable.

17

Dated:  New York, New York
        August 19, 2022

                          AKIN GUMP STRAUSS HAUER & FELD LLP


                 By:    _/s/ Dean L. Chapman Jr._____
                        Dean L. Chapman Jr.
                        Megi Belegu
                        One Bryant Park
                        New York, New York 10036
                        Telephone: (212) 872-8095
                        Facsimile: (212) 872-1002

                        *Attorneys for Plaintiff Federal National Mortgage
                        Association*

18

At IAS Part ___ of the Supreme Court
of the State of New York, held in and
for the County of Kings, at the Kings
County Supreme Courthouse located
at̶ ̶ ̶ ̶ ̶ ̶ ̶ ̶ ̶ ̶ ̶,
on ⎯10/20⎯, 2022.

P R E S E N T :

Hon. _Knipel_,
Justice Presiding

---

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                        Plaintiff,

          - against –

RALPH & RALPH PROPERTIES LLC, YOEL
GOLDMAN, DW BROOKLYN 75 LLC, the
NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD, and JOHN DOES #1
THROUGH JOHN DOE #14, inclusive, the
names of the last 14 defendants being fictitious,
the true names of said defendants being
unknown to plaintiff, it being intended to
designate any occupants or tenants of the
mortgaged premises who are in default in the
payment of rent for which a proceeding is now
pending by the mortgagor and/or other persons
or parties having or claiming an interest in or
lien upon the mortgaged premises subordinate
to that of the mortgagee, if the aforesaid
individual defendants are living, and if any or
all of said individual defendants be dead, their
heirs at law, next of kin, distributes, executors,
administrators, trustees, committees, devisees,
legatees and the assignees, lienors, creditors,
successors in interest of them, and generally all
persons having or claiming under, by, through
or against the said defendants named as a class,
any right, title or interest in or lien upon the
premises described in the amended complaint
herein,

                    Defendants.

Index No. 524163/2022

**ORDER APPOINTING
RECEIVER**

**Property Address:**

194 Ralph Avenue
Brooklyn, New York 11233

FILED: KINGS COUNTY CLERK 10/27/2022 01:43 PM
NYSCEF DOC. NO. 45
INDEX NO. 524163/2022
RECEIVED NYSCEF: 10/27/2022

21-12051-mg    Doc 309    Filed 01/03/23    Entered 01/03/23 12:07:04    Main Document
Pg 52 of 72

UPON the Summons and Complaint filed in the Office of the Clerk of Kings County on

August 19, 2022, and the Notice of Pendency filed in the Office of the Clerk of Kings County on

August 23, 2022, and upon reading and filing of the annexed affidavit of Christopher Beauregard,

sworn to September 7, 2022, the affirmation of Megi Belegu, Esq., dated September 7, 2022, and

upon the *ex parte* application of Akin Gump Strauss Hauer & Feld LLP, counsel for plaintiff

Federal National Mortgage Association (the "Plaintiff") as provided by Real Property Actions and

Proceedings Law ("RPAPL") § 1325(1); it is hereby

ORDERED, that ___Barton Schwartz___, with an address at

___2753 Coney Island Ave BKlyn NY___ is appointed with the usual powers and

___718 753 - 1727___

directives as receiver (the "Receiver") during the pendency of this action for the benefit of the

Plaintiff, of all the rents and profits of the mortgaged premises located at 194 Ralph Avenue,

Brooklyn, New York, 11233 (the "Property"); and it is further

ORDERED, that the Receiver is authorized and directed to demand, collect, and receive

from the tenants of the Property or from any persons liable therefor all the rents now due and

unpaid or hereafter and during the pendency of this action to become due, and that those tenants

are directed to pay over to the Receiver all the rents now due and unpaid or hereafter and during

the pendency of this action to become due, and that all persons in possession other than lawful

tenants are directed to surrender possession to the Receiver, subject to the Emergency Rent Laws,

if any; and it is further

ORDERED, the Receiver be empowered to carry out all the usual powers and duties of

receivers in foreclosure actions, and as authorized under the express terms of Section 3 of the

Multifamily Note, Assignment of Rents and Security Agreement, dated October 4, 2011 and

recorded in the Office of the City Register of the City of New York on October 4, 2011 under

2

Control Number 2011000367304 (the "Mortgage Agreement"), among Plaintiff's predecessor in interest, Arbor Commercial Funding, LLC and Ralph & Ralph Properties LLC (the "Borrower-Defendant"), which are to enter upon and take and maintain full control of the Property in order to perform all acts that Plaintiff in its discretion determines to be necessary or desirable for the operation and maintenance of the Property, including:

(a)     the execution, cancellation, or modification of leases,

(b)     the collection of all rents,

(c)     the making of repairs to the Property and the execution or termination of contracts providing for the management, operation, or maintenance of the Property,

(d)     enforcing the assignment of rents pursuant to Section 3(a) of the Mortgage Agreement,

(e)     protecting the Property or the security of the Mortgage Agreement, and

(f)     all other roles, rights, and responsibilities specified in Section 3 of the Mortgage Agreement; and it is further

ORDERED, that for avoidance of doubt, the Receiver is authorized to lease the Property or any part thereof for terms not exceeding two (2) years or such longer terms as may be required by law; keep the Property in a proper state of repair in compliance with law and insured against loss or damage by fire, and to make the expenditures necessary for said purposes and for the purpose of paying the necessary running expenses of the Property subject, however, to the qualification that the Receiver shall not expend in the excess of $10,000 for any repair without further application to this Court; to pay any taxes, water rates, or assessments now due upon the Property or hereafter and during the pendency of this action to become due, all in compliance with section 5228(a) of the CPLR; to pay the principal and interest and other charges in connection with

3

FILED: KINGS COUNTY CLERK 10/27/2022 01:43 PM
NYSCEF DOC. NO. 45
21-12051-mg    Doc 309    Filed 01/03/23    Entered 01/03/23 12:07:04    Main Document
INDEX NO. 524163/2022
RECEIVED NYSCEF: 10/27/2022
Pg 54 of 72

any prior encumbrances of the Property; and to institute and carry on such legal proceeding as may be necessary for the protection or recovery of the Property, for the collection of the rents and profits thereof, or for the removal of any tenant or other person from the Property, subject, however, to the qualification that the Receiver shall not retain counsel without further application to this Court; and it is further

ORDERED, that any payments of taxes, assessments, water rents, sewer rents, and/or insurance premiums made by Plaintiff for the benefit of the Property, or any advances to the Receiver for such purposes, shall be added to the total indebtedness due to Plaintiff by the Borrower-Defendant under the loan documents evidencing the mortgage securing the Property;

ORDERED, that during the pendency of this action the Borrower-Defendant and its agents are enjoined and restrained from leasing, renting, or collecting the rents or profits of the Property, and from interfering with the Receiver or in any way with the Property or its possession, and that all lawful tenants of the Property and any persons liable for such rents are enjoined and restrained from paying the same to the Borrower-Defendant or to anyone except the Receiver; and it is further

ORDERED, that the Receiver is authorized to receive, and within 5 days after the Receiver is qualified the Borrower-Defendant shall turn over to the Receiver, all leases, rent rolls, security deposits of tenants of the Property, and any and all documents, records, service contracts, surveys, plans, specifications, and agreements relating to the management of the Property held by the Borrower-Defendant, together with any and all monies held or received by the Borrower-Defendant in connection with the Property during the period commencing with the date of this Order to and including the date upon which the Receiver files with the clerk of this Court his or her bond as set forth below, except for those monies disbursed by the Borrower-Defendant during said period for the operation of the Property; and thereupon the Receiver shall hold such security

4

subject to such disposition therefor that shall be provided in an order of this Court to be made and entered in this action; and it is further

ORDERED, that before entering upon his/her duties, the Receiver shall execute to the People of the State of New York, and file with Clerk of this Court his/her oath and, a bond with sufficient sureties in the sum of $ 120,000 with a surety company as surety for the faithful discharge of his/her duties as the Receiver; and it is further

ORDERED, the Receiver shall promptly deposit all monies received by him/her in a checking account in any NYC Bank (the "Depository"), such account to be in his/her name, as Receiver, and to show the name of this case; the Depository shall furnish monthly statements regarding such account to the Receiver and to Plaintiff's counsel, and it is ordered that the Receiver shall continue as Receiver until further order of this Court; and it is further

ORDERED, that the Receiver shall not make any secondary appointments without the prior written approval of the Court, and that the Receiver shall apply to the Court in a separate application for a managing agent, landlord tenant-counsel, or other managing services pursuant to 36.1 of the Uniform Court Rules; and it is further

ORDERED, that the Receiver shall register with any municipal departments as provided by applicable law; and it is further

ORDERED, that the Receiver shall expend rents and income and profits as described in RPAPL § 1325(d), except that a priority shall be given to the correction of immediately hazardous conditions and violations of housing maintenance laws within the time set by orders of any municipal department, or, if not practicable, seek a postponement of time for compliance; and it is further

ORDERED, that the Receiver shall file a monthly accounting with Plaintiff's counsel, Akin Gump Strauss Hauer & Feld LLP, beginning within seven days of the first day of the first month following entry of this Order and monthly thereafter during the term of the Receivership; and it is further

ORDERED, that by accepting the appointment the Receiver certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including but not limited to, section 36.2(c) ("Disqualifications from appointment") and section 36.2(d) ("Limitations on appointment based upon compensation"), and, if the Receiver is disqualified from receiving an appointment pursuant to the provisions of Part 36, the Receiver shall notify the appointing Judge forthwith: and it is further

ORDERED, that no fee shall be taken until the submission and approval of the UCS-875 for Statement of Approval of Compensation; and it is further

ORDERED, that payment of the Receiver shall be in accordance with CPLR 8004; subject to judicial settlement of the Receiver's final accounts.

ENTER:

_____
J. S. C.

**HON. LAWRENCE KNIPEL**
**ADMINISTRATIVE JUDGE**

6

**Exhibit 3**

**Membership Interest Purchase Agreement**

# MEMBERSHIP INTEREST PURCHASE AGREEMENT

---

## ALL YEAR HOLDINGS LIMITED

**- to -**

## DAVID SIMKOWITZ

---

Affecting the Owner of the Premises:

| | | |
|---|---|---|
| Street Address | : | 194 Ralph Avenue |
| City of | : | New York |
| Borough of | : | Brooklyn |
| County of | : | Kings |
| State of | : | New York |
| Block | : | 1678 |
| Lot | : | 54 |

This LLC MEMBERSHIP INTEREST PURCHASE AGREEMENT (this "Agreement") is dated as of **December  9 , 2022**, by and between **ALL YEAR HOLDINGS LIMITED**, a British Virgin Islands business company, having an address at 199 Lee Avenue, PMB 693, Brooklyn, New York 11211 (hereinafter the "Seller") and **DAVID SIMKOWITZ**, an individual, having an address at 250 Skillman Street, 6th Floor, Brooklyn, New York 11205 (hereinafter the "Purchaser").

## R E C I T A L S

**A.**    Each of Seller and Purchaser, separately, own directly, beneficially and of record, **fifty per cent (50%)** of the issued and outstanding membership interest (such portion thereof is hereinafter referred to as the "Interest" or "Membership Interest") in **RALPH & RALPH PROPERTIES LLC**, a New York limited liability company (hereinafter the "Company").

**B.**    The Company is the sole owner of all right, title and interest in and to the real property commonly known as and located at 194 Ralph Avenue, Brooklyn, New York, Block 1678, Lot 54 (the "Premises").

**C.**    Purchaser desires to acquire Seller's Membership Interest from the Seller ("Seller's Interest"), and the Seller desires to sell Seller's Interest to the Purchaser, all upon the terms and subject to the conditions set forth in this Agreement.

**D.**    **Seller and** Purchaser each acknowledge that the Premises are currently subject to a mortgage foreclosure proceeding, Federal National Mortgage Assn. v. Ralph & Ralph Properties LLC, Index No. 524163/2022 (N.Y. Sup. Ct.) (the "Foreclosure Action") and that the court has ordered the appointment of a Receiver.

## A G R E E M E N T

NOW, THEREFORE, in consideration of the foregoing Recitals and the mutual covenants contained in this Agreement and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged the parties hereto hereby agree as follows:

**1.**    <u>Sale and Purchase.</u>

(a)    Upon the terms and subject to the conditions of this Agreement, Seller agrees to sell and deliver to Purchaser and Purchaser agrees to purchase from Seller Seller's Interest for a total cash consideration of **Six Hundred Seventy-Five Thousand and 00/100 ($675,000.00) Dollars** (the "Purchase Price") payable as hereinafter provided.

(b)    The Purchase price shall be payable as follows:

i.    Sixty-Seven Thousand Five Hundred, and 00/100 ($67,500.00) Dollars (the "Downpayment") on the signing of this Agreement by federal funds wire transfer of immediately available funds

to an account designated by Koffsky Schwalb LLC (the **"Escrowee"**), to be held, IN ESCROW, pursuant to section 2 hereof; and

ii.        Six Hundred Seven Thousand Five Hundred and 00/100 ($607,500.00) Dollars at the Closing (as hereinafter defined) by federal funds wire transfer of immediately available funds or by Purchaser's certified or official cashier's check payable to the order of the Seller directly, or as directed by it, and drawn on a bank which is a member of the New York Clearing House Association.

(c)        Unless prohibited by law, Seller and Purchaser agree that, without reduction of the Purchase Price, immediately prior to Closing, each will direct the Company to distribute all available funds in excess of existing operating expenses, including any default interest from the mortgage affecting the Premises which may accrue as of the date hereof until Closing plus one month of operating expenses, in the approximate amount of $16,500.  If the aforementioned distribution is prohibited by law, at the Closing, or if not ascertainable by Closing, within ten (10) business days from Closing, the Purchaser agrees to pay to Seller an amount equal to said distribution funds that would have been due to Seller.  For avoidance of doubt, such amount shall be paid separate and apart from the Purchase Price.  Purchaser shall be entitled to negotiate with the mortgagee concerning the Foreclosure Action and paying off the debt thereunder.

**2.**    Downpayment in Escrow.

(a)        Escrowee shall hold the Downpayment in escrow in a non-interest-bearing its IOLA account until the Closing or the sooner termination of this Agreement and shall pay over or apply the Downpayment in accordance with the terms of this section 2. Escrowee shall hold the Downpayment for the benefit of the parties. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason the Closing does not occur and either party gives notice (as defined hereinafter) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt written notice (email being sufficient) to the other party of such demand. If Escrowee does not receive written notice of objection (email being sufficient) from such other party to the proposed payment within 10 business days after Escrowee's delivery of such notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such notice of objection within such 10-day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by notice from the parties to this Agreement or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment with the clerk of a court in Brooklyn, New York  and shall give notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this section 2, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b)        The parties acknowledge that Escrowee is acting solely at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this

Agreement or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this Agreement or involving gross negligence on the part of Escrowee.

(c)    Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d)    The parties agree that Escrowee serving as Escrow Agent shall not serve as a basis to disqualify Escrowee from representing All Year Holdings Limited for any dispute relating to this Agreement or the Property, and Purchaser waives any conflict relating to sale.

(e)    Escrowee acknowledges receipt of the Downpayment and Escrowee's agreement to the provisions of this section 2 by signing in the place indicated in this Agreement.

    **3.**    <u>The Closing.</u>

The closing documents referred to in section 4 hereof shall be delivered, and payment of the balance of the Purchase Price shall be made, at the closing (the "Closing"). The Closing shall occur on the later of (i) forty-five (45) days from the date hereof or (ii) fifteen (15) days after the transaction contemplated hereunder has been approved by the U.S. Bankruptcy Court having jurisdiction over the disposition of Seller's assets. The Closing shall take place at the offices of Koffsky Schwalb LLC, 500 Seventh Avenue, 8th Floor, New York, New York 10018 or such other place agreed to by the parties. Notwithstanding the foregoing, either party may request a "mail-away" style Closing, via escrow administered by title company insuring the transaction hereunder.

    **4.**    <u>Document Deliveries; possession.</u>

(a)    At Closing, Seller shall assign Seller's Interest to Purchaser by executing and delivering an instrument entitled <u>Assignment of Membership Interest</u>, substantially in form and substance as per the annexed **Exhibit A**; and the parties shall each execute and deliver any and all documents, instruments and agreements reasonably required of the other to effectuate the intent of this Agreement, or as required to be executed and delivered under this Agreement, or that are customary and typical for a transaction of the subject nature (e.g. a FIRPTA Affidavit, Closing Statement, Affidavit of Title, Transfer Tax Returns and Reports etc.).

(b)    At Closing, Seller will cause the Company to issue such documents and instrument as may be reasonably necessary to evidence the sale, assignment and transfer unto the Purchaser of all right, title and interest in and to the Seller's Membership Interest

in and to the Company. Seller and Purchaser shall each execute and deliver to the other any and all documents and instruments as may reasonably be requested by the party to effectuate the provisions herein.

(c)     At Closing, and thereafter when reasonably requested until three (3) months after Closing, Seller will deliver to Purchaser any and all books and records, in Seller's possession or control, pertaining to the Company or the Premises, and shall be entitled to retain copies thereof for any lawful purpose.

(d)     At Closing, Purchaser shall take possession of the Premises and shall be entitled to collect all rents and other revenue, issue and profits therefrom.

(e)     The parties hereto agree that they will at any time before, on, or after the Closing sign, execute and deliver, or to the extent within their control, cause others so to do, all such powers of attorneys, deeds, assignments, documents and instruments and do, or cause to be done all such other acts and things as may be necessary or proper to carry out the provisions of this Agreement.

    **5.**    <u>Adjustments.</u>        Intentionally Omitted.

    **6.**    <u>Indemnification.</u>

(a)     Seller agrees to indemnify and hold Purchaser harmless from and against any losses, damages, charges, costs, expenses or liabilities Purchaser may suffer or incur in connection with any claim arising in connection with the Company or the Premises from any act, omission to act, or condition existing or occurring in the period prior to the Closing, provided said loss is not as a result of Purchaser's actions, or as a result of the overdue mortgage currently affecting the Premises, or as a result of any action taken by Seller on behalf of the Company within the authority granted to Seller as a Member, manager, officer, employee, or agent of the Company, and provided that such costs, expenses or liabilities are not assumed or assumable by Purchaser pursuant to the terms of this Agreement, including, without limitation, as provided in Section 13 hereof. Said indemnification and hold harmless agreement shall survive the Closing for a period of one year or until the closing of the transaction as noted in the Investment Agreement dated March 11, 2022 between Seller and Paragraph Partners LLC, the earlier thereof, and shall include reasonable attorney's fees of Purchaser.

(b)     Purchaser agrees to indemnify and hold Seller and its successor in interest and their respective members, officers, directors, employees, agents, representatives and advisors, harmless from and against any losses, damages, charges, costs, expenses or liabilities Seller may have regarding any claim arising in connection with the Closing or the overdue mortgage currently affecting the Premises, or in connection with any act, or omission to act, event or occurrence in the period subsequent to the Closing provided said loss is not as a result of Seller's actions except for the overdue mortgage currently affecting the Premises which Seller is not responsible for. Said indemnification and hold harmless agreement shall survive the Closing for a period of one year or until the closing of the transaction as noted in the Investment Agreement

dated March 11, 2022 between Seller and Paragraph Partners LLC, the earlier thereof and shall include reasonable attorney's fees of Seller.

(c)    No party shall have any liability hereunder for indemnified losses after Closing, with respect to a breach of the representations and warranties contained herein, until the aggregate of all indemnified losses exceeds $5,000 (the "Basket"); provided that once this Basket amount is exceeded, the responsible party or parties shall be responsible for all indemnified losses, from the first dollar as if such Basket never existed.

7.    Broker.

The parties hereto warrant and represent to each other that they have not dealt with any brokers or finders in connection with the transaction contemplated hereunder. Each party hereto hereby agrees to indemnify and hold the other harmless from all costs, liabilities or expenses (including, without limitation, attorneys' fees and disbursements) arising out of or in connection with any claim by any broker or finder for a commission or other compensation with respect to the transaction embodied by this Agreement based on the actions of such party or anyone acting or purporting to act on such party's behalf. The provisions of this section shall survive the Closing or termination of this Agreement.

8.    Seller represents and warrants that:

(a)    Omitted;

(b)    Omitted;

(c)    The Interest being sold by it pursuant to this Agreement is fully paid and non-assessable, and is free and clear of any liens and/or encumbrances;

(d)    It has full power and authority to enter into this Agreement, subject only to approval by the Bankruptcy Court.

(e)    It is not aware that the Company incurred any obligations nor made any promises or agreements on behalf of or which affect the Company which are not known to Purchaser and not set forth herein and which are outside the ordinary course of business;

(f)    Upon the sale of the Interest to Purchaser as contemplated hereunder, Seller shall retain no right, title or interest in any portion of the Membership Interest in the Company;

(g)    All of the representations and warranties set forth in this contract shall be true and correct at Closing.

9.    Transfer Taxes.

(a)    Seller and Purchaser will work to propose language to the Bankruptcy Court to incorporate in an order that would exempt the transfer from applicable taxes.  If the Bankruptcy Court does not enter such an order, Seller agrees that at Closing, Seller shall provide certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery of the Seller's Interest, if any, shall be delivered by Seller, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive the Closing.

10.    Defaults and Remedies.

(a)    If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b)    If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including but not limited to, specific performance.

11.    Notices.

All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given if sent, to Seller and Purchaser at the respective addresses above set forth.  Concurrently with the giving of any notice to Seller, a true copy thereof shall be sent via hand delivery or FedEx, next business day delivery service, or via electronic mail (e-mail), to the attorneys for the parties as follows:  if to Purchaser: Breuer Herskowitz LLP, 268 Willoughby Avenue, Brooklyn, New York  11205, Attention: M. David Breuer, Esq.; e-mail: David@BHLLPLaw.com, if to Seller or to Escrowee:  Koffsky Schwalb LLC, 500 Seventh Avenue, 8th Floor, New York, New York  10018, Attention: Efrem Schwalb, Esq.; e-mail: eschwalb@koffskyschwalb.com

12.    U.S. Bankruptcy Court Approval.

It is understood and agreed to by and between the parties hereto that the transaction contemplated hereunder is subject to approval by the U.S. Bankruptcy Court having jurisdiction over the disposition of Seller assets. Seller shall, at Seller's sole cost and expense, take all actions necessary to obtain such approval promptly after delivery of a fully executed duplicate of this Agreement to Purchaser's attorney.

13.    Properties.

Purchaser acknowledges and agrees that Seller is making no representations or warranties with regards to the Premises.  The Purchaser has inspected the Premises and all personal property

therein, and has full knowledge of their condition, understands that when he becomes the sole owner of the Company after Closing, he will be accepting all risks for any latent defects or unknown conditions. The Purchaser further acknowledges and agrees that he has knowledge of the following issues related to the Premises, all of which Purchaser agrees are not Seller's responsibility: (i) zoning issues  and governmental regulations that affect the use and maintenance of the Premises; (ii) consents for the erection of any structures on, under or above any streets on which the Premises abut; (iii) encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway, if any; (iv) any environmental matters; (v) the physical condition of the Premises; (vi) financial matters related to the Premises, including unpaid real estate taxes, unpaid water charges, violations, notices of violation and liens, and the fact that the Premises is subject to a mortgage that is currently over-due.

### 14.    Title Clearance Escrow.

Notwithstanding anything else herein to the contrary, at closing, each of the parties hereto shall deposit with title company insuring the transaction hereunder the sum of $25,000 (for a total of $50,000) (such deposit being the "Title Deposit"), which sum shall be held in escrow by said title company pending a final unappealable decision discharging the Notice of Pendency currently in effect against the premises in connection with an action seeking specific performance under an alleged contract of sale for the sale of the Premises and the related Memorandum of Contract recorded against the Premises. Upon such deposit, Seller shall have no further obligation with regard to clearance of such Notice of Pendency as a title defect hereunder. Upon discharge of the Notice of Pendency, Seller shall be entitled to a refund of its portion of the Title Deposit less any applicable escrow fees within three (3) business days from the Company's receipt of such refund.

### 15.    Miscellaneous.

(a)    This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York applicable to agreements made and wholly performed therein.

(b)    This Agreement embodies the complete and final agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. This Agreement may not be amended, changed, altered, modified or terminated except by a written instrument signed by all the parties hereto.

(c)    This Agreement shall inure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and permitted assigns of the parties hereto but may not be assigned by any party hereto without the prior written consent of all other parties.

(d)    In case any one or more of the provisions contained in this Agreement should be adjudged invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

(e)     It is understood and agreed that all understandings and agreements heretofore had between the parties are hereby merged into this agreement and that the same is entered into after full investigation neither party relying upon any statement or representation made by the other not embodied in this agreement.

(f)     Neither any failure nor any delay on the part of any party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise of any other right, power or privilege.

(g)     The unsuccessful party shall be obligated to pay to the successful party reimbursement for all costs and expenses, including but not limited to attorneys' fees, incurred by the successful party in litigating any action arising out of the terms, or relating to, this Agreement.

(h)     The use herein of either the singular or the plural shall be deemed to include the other whenever the sense of this Agreement so requires.

(i)     This Agreement may be executed and delivered by facsimile or electronic (PDF) signatures, either of which shall be deemed an ink original. Moreover, this Agreement may be executed in counterparts all of which taken together shall constitute an original hereof.

(j)     This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York applicable to agreements made and wholly performed therein

**[signatures on following page]**

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be duly executed as of the day and year first above written.

**SELLER:**

ALL YEAR HOLDINGS LIMITED

By:_____

Name:_____

Title:_____

**PURCHASER:**

_____

David Simkowitz

**ESCROWEE**:

KOFFSKY SCHWALB LLC

By:_____

Name:_____      Efrem Schwalb

Title: Member

**EXHIBIT A**

**ASSIGNMENT OF MEMBERSHIP INTEREST**

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged, the undersigned, **ALL YEAR HOLDINGS LIMITED**, a British Virgin Islands business company, having an address at **199 Lee Avenue, PMB 693, Brooklyn, New York 11211** (the "GRANTOR"), does hereby irrevocably *sell, grant, transfer, assign, convey, release and set over* unto **DAVID SIMKOWITZ**, an individual, having an address at **250 Skillman Street, 6th Floor, Brooklyn, New York 11205** (the "GRANTEE"), all the right, title and interest in and to all the GRANTOR's share of the membership interest in that certain Limited Liability Company known as and by the name of **RALPH & RALPH PROPERTIES LLC**, formed on October 31, 2006 under, and currently validly existing pursuant to, the Laws of the *State of New York* (the "Company").

TO HAVE AND TO HOLD the membership interest herein assigned unto the GRANTEE, the successors and assigns of the GRANTEE, from and after the date hereof for the remainder of the term of the Company.

IN WITNESS WHEREOF, the GRANTOR has executed this Certificate and delivered the same to GRANTEE as of the        day of            in the year        .

GRANTOR:                                          GRANTEE:

**ALL YEAR HOLDINGS LIMITED**, Seller

_____              _____
By:                                               **DAVID SIMKOWITZ**, Purchaser

ARCHER & GREINER, P.C.
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Allen G. Kadish
Email: akadish@archerlaw.com

*Attorneys for All Year Holdings Limited,*
*Parent Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
                                                           :
**In re**                                                  :
                                                           :        **Chapter 11**
**ALL YEAR HOLDINGS LIMITED,**                             :        **Case No. 21-12051 (MG)**
                                                           :
            **Debtor.**                                    :
                                                           :
-----------------------------------------------------------X

**ORDER AUTHORIZING**
**SALE OF DEBTOR'S INTEREST IN**
**RALPH & RALPH PROPERTIES LLC,**
**COMPROMISE OF CONTROVERSY,**
**AND GRANTING RELATED RELIEF**

        Upon the motion (the **"Motion"**)[1] of All Year Holdings Limited, debtor and debtor

in possession (the **"Parent Debtor"**) in the above-captioned chapter 11 case (the "**Chapter 11**

**Case**"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Bankruptcy Code,

(the **"Bankruptcy Code"**) and Rules 2002, 4001 and 9014 and 9019 of the Federal Rules of

Bankruptcy Procedure (the **"Bankruptcy Rules"**), for an entry of an order:

        i.        authorizing the Parent Debtor to enter into the  membership interest
                  purchase agreement (the **"Membership Interest Purchase**
                  **Agreement"**) of the Parent Debtor's interest with respect to Ralph
                  & Ralph Properties LLC (**"Ralph & Ralph"**), with David
                  Simkowitz (**"Simkowitz"**), pursuant to the terms of the

---
[1] Capitalized terms not otherwise defined are as in the Motion.

Membership Interest Purchase Agreement, a copy of which is filed
in support of the Motion;

ii.        and providing related relief,

and the Court having considered the Motion and the declaration attached thereto, and the exhibits

presented; and upon all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[2]**

A.        <u>Jurisdiction and Venue</u>.   Consideration of the Motion and the relief requested

therein are a core matter pursuant to 28 U.S.C. § 157(b)(1) and (2)(A), (M), (N) and (O). Venue is

proper before this Court pursuant to 28 U.S.C. § 1408.  This Court has jurisdiction to consider the

relief requested in accordance with 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order

of Reference M-431, dated January 31, 2012 (Preska, C.J.).

B.        <u>Notice</u>.  Given the nature of the relief sought in the Motion, the Court concludes

that the form, scope, and timing of notice of the Motion were adequate and sufficient under the

circumstances, that the notice of the Motion and hearing thereon complied with all applicable

Bankruptcy Rules and Local Bankruptcy Rules, and that no further notice is necessary.

C.        <u>Business Judgment</u>.  Entry of this Order is in the best interests of the Parent Debtor,

its estate, and its creditors.  The terms of the Membership Interest Purchase Agreement are fair

and reasonable under the circumstances, reflect the Parent Debtor's exercise of prudent business

judgment consistent with its fiduciary duties, are supported by reasonably equivalent value and

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant
to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of
the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following
conclusions of law constitute findings of fact, they are adopted as such.

2

fair consideration and fall within the range of reasonable outcomes, and therefore entry into the Membership Interest Purchase Agreement is appropriate.

      D.    <u>Plan Exemption</u>.  The sale should qualify under section 1146(a) of the Bankruptcy Code as a transfer "under a plan confirmed."

      **THEREFORE**, based upon the foregoing findings and conclusions, the Motion, its supporting papers, and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

      **IT IS HEREBY ORDERED THAT:**

      1.    <u>Motion Granted</u>.  The Motion is granted to the extent set forth herein.  All objections, if any, to the relief granted in this Order, to the extent not withdrawn, waived, settled, or resolved, are hereby denied and overruled.

      2.    <u>Sale and Compromise Approved</u>.  The terms of the Membership Interest Purchase Agreement reflect the business judgment of the Parent Debtor and are approved.  The compromise represented by the terms of the Membership Interest Purchase Agreement falls within the range of reasonableness and is approved.  The Parent Debtor and any necessary affiliates be, and hereby are, authorized to enter into, and effectuate the terms of, the Membership Interest Purchase Agreement.

      3.    <u>Plan Exemption</u>.  To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the sale and transfer contemplated under the Membership Interest Purchase Agreement (including the issuance, transfer or exchange of any security, or the making or delivery of an instrument of transfer), so long as the sale and transfer be materially completed and closed on or before the effective date of a plan in the Chapter 11 Case, shall be considered a transfer "under a plan confirmed" in the Chapter 11 Case and shall not be subject to any law imposing a

stamp tax, real estate transfer tax, mortgage recording tax or similar tax due on sale of real property. State and local government units shall forego collection of any such tax. State and local government units shall accept for due filing and recordation any instrument or document effectuating or evidencing the sale and resulting ownership without payment of any such tax.

4.        <u>Immediate Binding Effect</u>. This Order shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Order.

5.        <u>Implementation</u>. The Parent Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order.

6.        <u>Retention of Jurisdiction</u>. This Court retains jurisdiction and authority to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: New York, New York
        _____ __, 2023

_____
MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

226213734v6

4