WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Matthew P. Goren

*Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                  :

**In re**                            :         **Chapter 11**
                                   :

**ALL YEAR HOLDINGS LIMITED,**      :         **Case No. 21-12051 (MG)**
                                   :

                 **Debtor.**[1]      : 
                                   :

**Fed. Tax Id. No. 98-1220822**       :      **Re: Docket Nos. 289, 319**
------------------------------------------------------------X

**DEBTOR'S REPLY IN SUPPORT OF CONFIRMATION OF**
**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**OF ALL YEAR HOLDINGS LIMITED AND IN RESPONSE TO LIMITED**
**OBJECTION AND RESERVATION OF RIGHTS OF ZELIG WEISS**

TO THE HONORABLE MARTIN GLENN,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

        All Year Holdings Limited, as debtor and debtor in possession (the "**Debtor**") in

the above-captioned chapter 11 case (the "**Chapter 11 Case**"), files this reply (i) in support of

confirmation of the *Chapter 11 Plan of Reorganization of All Year Holdings Limited*

[ECF No. 123] (as amended on September 15, 2022 [ECF No. 214], November 4, 2022 [ECF No.

256], and December 9, 2022 [ECF No. 289], and as may be further modified, amended, or

---

[1]   The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**")[2] and (ii) in response to the limited objection and reservation of rights [ECF No. 319] (the "**Limited Objection**") filed by Mr. Zelig Weiss ("**Weiss**"), and respectfully represents as follows:

### Preliminary Statement

1.     On December 9, 2022, the Debtor amended its proposed Plan to incorporate the terms of the revised settlement (the "**Revised Settlement**") between and among the Debtor, the Sponsor, and the Notes Trustee, settling and resolving all current disputes arising out of or relating to the Plan, the Investment Agreement, and the MLPSA.  To incorporate the terms of the Revised Settlement, the Plan was amended, among other things, to: (i) clarify the treatment of the Debtor's membership interests in YG WV LLC ("**YG WV**") as Excluded Assets under the Plan and the Investment Agreement and to remove the concept of a potential transfer of the Debtor's interests in YG WV or the William Vale Hotel to the Sponsor or the Reorganized Debtor, (ii) revise the Sponsor Contribution to be provided by the Sponsor on the Effective Date from $60 million in cash and New Notes to $43.5 million in cash (less certain deductions in accordance with the Investment Agreement), (iii) eliminate all reference to New Notes being issued under the Plan as the revised Sponsor Contribution will be paid entirely in cash, and (iv) incorporate the $4.5 million in Additional Escrowed Funds provided by the Sponsor as an additional deposit in accordance with the Investment Agreement.

2.     The terms of the Revised Settlement and the modifications to the Plan were described in a third supplement to the Debtor's approved Disclosure Statement, dated December 9, 2023 [ECF No. 290] (the "**Third Disclosure Statement Supplement**").  The amended Plan and

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or the Debtor's Opening Brief (as defined below), as applicable.

WEIL:\98969468\9\12817.0007

the Third Disclosure Statement Supplement were served on holders of claims in the Voting Class

on December 21, 2022 [ECF No. 305]. The Debtor also published Hebrew translations of those

documents to a website maintained for the Noteholders on or about December 29, 2022.

3.     The Debtor is now pleased to report the Plan has been overwhelmingly

approved, having been accepted by over 96% in amount and 92% in number of creditors in the

Voting Class that voted to accept or reject the Plan.[3] A certification on the Plan's voting results

was filed by Donlin, Recano & Company, Inc., the Debtor's retained solicitation and voting agent,

contemporaneously hereto (the "**Voting Certification**").[4]

4.     For the reasons set forth in the Debtor's opening brief, filed on September

16, 2022 [ECF No. 224] (the "**Opening Brief**"),[5] and the supporting declaration of Mr. Assaf

Ravid, the Debtor's Chief Executive Officer and Chief Restructuring Officer, filed that same date

[ECF No. 225] (the "**Ravid Declaration**"), the Plan satisfies all of the Bankruptcy Code's

requirements for confirmation and complies with otherwise applicable law. This remains the case

with respect to the Plan as amended to incorporate the terms of the Revised Settlement and as

evidenced by the supplemental declaration from Mr. Ravid filed contemporaneously hereto (the

---

[3]     Following approval of the Revised Settlement, the Debtor obtained approval from the Israeli Court December 26, 2022 to convene a rescheduled Noteholder Meeting to vote on the Plan and the Investment Agreement (the "**Rescheduled Noteholder Meeting**"). To allow sufficient time to solicit the votes of the Debtor's Noteholders in Israel, which requires at least 14 days under Israeli law, the Rescheduled Noteholder Meeting was set for January 8, 2023. As a result, pursuant to an order of this Court [ECF No. 314], the deadlines to (i) submit votes to accept or reject the Plan (the "**Voting Deadline**") and (ii) file responses or objections to the Plan (the "**Objection Deadline**"), were extended from 5:00 p.m. (Eastern Time) on January 6, 2023 to 5:00 p.m. (Eastern Time) on January 10, 2023. Notice of the extended Voting Deadline and Objection Deadline was provided to Voting Claimholders and other parties in interest on January 4, 2023 [ECF No. 318].

[4]     As set forth on Exhibit A to the Voting Certification, of the 128 Noteholders that voted on the Plan, 118 Noteholders voted to accept the Plan. Those 118 Noteholders represent approximately $271,390,077.12 of the $282,419,657.90 in total amount of Noteholder Claims that voted to accept or reject the Plan. No other holders of Claims in Class 4 Remaining Unsecured Claims, which is the only Voting Class, submitted votes on the Plan.

[5]     The arguments and discussion set forth in Opening Brief are incorporated herein by reference in their entirety.

WEIL:\98969468\9\12817.0007

"**Supplemental Ravid Declaration**").  With the Plan now having been overwhelmingly accepted by creditors in the Voting Class, the Debtor is ready to proceed with confirmation and to consummate and implement its restructuring.

5.      The only response or objection to confirmation received by the Debtor was the Limited Objection from Mr. Weiss and, as set forth below, it should be overruled.  Mr. Weiss seeks authority to re-litigate this Court's prior rulings following confirmation of the Plan and reserve all rights "to challenge the scope and/or nature" of the Debtor's interests in YG WV after the Effective Date.  Those issues, however, have already been decided by this Court when it issued its memorandum opinion and order on October 4, 2022 [Adv. Proc. ECF No. 52] (the "**Dismissal Order**").  This Court found, among other things, that (i) the Debtor continues to hold its full membership interests in YG WV as property of the estate, including all economic and non-economic rights, notwithstanding the commencement of the Chapter 11 Case, and (ii) the limited liability agreement ("**Member LLC Agreement**") of Wythe Berry Member LLC ("**Member LLC**") does not apply to restrict any transfer by the Debtor of its membership interests in YG WV to Wind-Down Co.  The Dismissal Order was affirmed in its entirety by the District Court on December 13, 2022 [ECF No. 294] (the "**District Court Order**").

6.      The continuation of any appeal of the Dismissal Order by Mr. Weiss[6] does not alter the effect of this Court's prior order and final determination regarding the scope and nature of the Debtor's membership interests in YG WV.  Nor does it alter the Court's determination that the Debtor is not restricted under the Member LLC Agreement from transferring its interests in YG WV to Wind-Down Co or any other party.  The decision of this Court (as affirmed by the

---

[6]    On January 12, 2023, Weiss filed notice of his appeal to the U.S. Second Circuit Court of Appeals of the District Court's judgment affirming the Court's Dismissal Order [Case No. 1:22-cv-08867-CM, ECF No. 18].

WEIL:\98969468\9\12817.0007

District Court) is law of the case and Weiss may not collaterally attack that judgment post-Effective Date.

7.      Moreover, as the Debtor is seeking under the Plan to transfer or vest its full membership interests in YG WV to Wind-Down Co, a determination by the Court as to the validity and extent of that transfer is required to find the Plan complies with all applicable provisions of the Bankruptcy Code and has not been proposed by any means forbidden by law as required under section 1129 of the Bankruptcy Code.  11 U.S.C. §§ 1129(a)(1), (a)(3).  As set forth below, the proposed vesting or transfer of the Debtor's membership interests in YG WV to Wind-Down Co under the Plan complies with the applicable provisions of the NY LLCL and is permitted under YG WV's operating agreement.

8.      Accordingly, for the reasons set forth below, the Court should overrule Weiss's Limited Objection and confirm the Plan.

## The Amended Plan Satisfies the Requirements for Confirmation

9.      By order dated December 19, 2022 [ECF No. 301] (the "**9019 Order**"), the Court approved certain portions of the Revised Settlement settling all current disputes between and among the Debtor, the Sponsor, and the Notes Trustee, on behalf of the Noteholders, relating to the Plan, the Investment Agreement, the MLPSA, and the parties' respective disputes, claims and obligations thereunder.  To incorporate the terms of the Revised Settlement, the following modifications, among others, were reflected in the amended Plan and Third Disclosure Statement Supplement provided to Voting Creditors prior to the Voting Deadline:

i.  <u>YG WV Interests as Excluded Assets</u>.  The definition of Excluded Assets was revised to clarify that the Debtor's interests in YG WV are Excluded Assets under the Plan and the Investment Agreement and, to the extent such interests have not otherwise been transferred, sold, assigned, or otherwise disposed of by the Debtor prior to the Effective Date in accordance with applicable law, the Debtor's interests in YG WV will vest in Wind-Down Co on the Effective Date.  Neither the Debtor nor Wind-Down Co will

have any obligation to vest such interests in, or transfer such interests to, the Reorganized Debtor or the Sponsor. *See* Plan § 1.42.

ii.  <u>Additional Escrowed Funds</u>.  In accordance with the Revised Settlement, the Sponsor provided $4.5 million in Additional Escrowed Funds as an additional deposit, which was reflected in the amended Plan provided to Voting Creditors.  *See* Plan §§ 1.1, 5.1.

iii. <u>Revisions to the Sponsor Contribution</u>.  Pursuant to the Revised Settlement, the Sponsor Contribution was reduced from $60 million cash and New Notes to $43.5 million in cash less certain deductions.  Specifically, pursuant to Section 5.1 of the Plan and in accordance with the Investment Agreement, the Sponsor will pay the Debtor $43.5 million in cash on the Effective Date *less* (1) the original $4.5 million in Escrowed Funds which, by agreement of the parties, was utilized by the Debtor as a debtor-in-possession loan, (2) the $4.5 million in Additional Escrowed Funds, (3) any amounts of the $5.2 million in Grand Living Settlement Proceeds utilized by the Debtor or any of its non-debtor subsidiaries prior to the Effective Date, and (4) the $2.5 million from the settlement of the dispute between the Sponsor and the Series C Notes Trustee over the MLPSA deposit, which amount shall be paid by the Escrow Agent to the Debtor on the Effective Date in accordance with the MLPSA Settlement.  In addition, no New Notes will be issued as part of the Revised Sponsor Contribution and there will be no Purchase Price Adjustment under the Plan or the Investment Agreement.  *See* Plan §§ 1.106, 5.1, 5.2, 5.4.

10.    Aside from these modifications to incorporate the terms of the Revised Settlement, the structure of the Plan remains otherwise unchanged and satisfies all of the requirements for confirmation for the reasons set forth in the Opening Brief and the Ravid Declaration.  In particular, other than with respect to Class 4 (Remaining Unsecured Claims), the Plan's treatment of all other classes of Claims and Interests remains unchanged.  In addition, and notwithstanding the revisions to the Sponsor Contribution as a result of the Revised Settlement, the Plan continues to satisfy the requirements of the "best interests" test under section 1129(a)(7) of the Bankruptcy Code and the feasibility requirements under section 1129(a)(11) of the Bankruptcy Code.

11.    ***Section 1129(a)(7) (Best Interests Test).***  As set forth in the Opening Brief, section 1129(a)(7) of the Bankruptcy Code requires a plan be in the best interests of the Debtor's creditors and equity interest holders – commonly referred to as the "best interests" test.  The best

WEIL:\98969468\9\12817.0007

interests test requires each holder of a claim or equity interest in an impaired class either accept the plan or receive or retain under the plan property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007).

12.    As set forth in the Supplemental Ravid Declaration, notwithstanding the reduction in the Sponsor Contribution under the Investment Agreement as a result of the Revised Settlement from $60 million in cash and New Notes to $43.5 million in cash (less certain deductions set forth in the Investment Agreement), the Debtor believes under the Plan all holders of impaired Allowed Claims and Interests will receive property with a value not less than the value such holder would receive in a liquidation under chapter 7 of the Bankruptcy Code.

13.    As set forth in the Liquidation Analysis annexed as Exhibit H to the Disclosure Statement, the amount of proceeds available for distribution to the holders of Allowed Class 4 Remaining Unsecured Claims in a chapter 7 liquidation is estimated to range from $0 on the low end to a maximum amount of approximately $29.1 million in the high end scenario.[7]  The Plan, however, as amended to reflect the Revised Settlement, provides approximately $43.5 million in cash to Class 4 Claimants (less certain deductions).  Specifically, after accounting for (i) the $4.5 million in Escrowed Funds, which have been utilized by the Debtor as a debtor-in-

---

[7]    Under the Liquidation Analysis annexed to the Disclosure Statement, which assumed a liquidation date of September 30, 2022, all or substantially all of the $5.2 million in Grand Living Settlement Proceeds was assumed to be available for distribution to holders of Allowed Claims under a hypothetical chapter 7 liquidation.  As the Court is aware, due to the extended timeline of the Chapter 11 Case, the Debtor anticipates utilizing the Grand Living Settlement Proceeds to fund its operations and the operations of its non-debtor subsidiaries during the remainder of the Chapter 11 Case.  Accordingly, some or all of the Grand Living Settlement Proceeds will no longer be available for distribution to holders of Allowed Claims in a chapter 7 liquidation, which would further reduce the estimated recoveries to holders of Allowed Class 4 Remaining Unsecured Claims under a hypothetical chapter 7 liquidation.

7

possession loan, and (ii) the $5.2 million in Grand Living Settlement Proceeds, some or all of which the Debtor anticipates utilizing during the remainder of the Chapter 11 Case to maintain its operations and the operations of its non-debtor subsidiaries, the Debtor anticipates that at least $34 million in cash will be available from the revised Sponsor Contribution under the Investment Agreement for distribution to the holders of Allowed Class 4 Claims.

14.     As the treatment of all other Classes of Claims and Interests remains unchanged under the amended Plan, all other Classes of Claims or Interests will receive at least as much under the Plan as they would in a hypothetical chapter 7 liquidation scenario.  Accordingly, the Plan, as amended, satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

15.     ***Section 1129(a)(11) (Feasibility).***  Section 1129(a)(11) of the Bankruptcy Code requires the Court determine the Plan is feasible as a condition precedent to confirmation. The key element of feasibility is whether there is a reasonable probability the provisions of a chapter 11 plan can be performed. *See In re One Times Square Assocs. Ltd.*, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993) ("The purpose of the feasibility test has been described as protection against visionary or speculative plans.").  Here, the Plan is premised on the consummation of the Investment Agreement and the Debtor will use the proceeds it receives in connection with the Investment Agreement to make distributions to holders of Allowed Claims and Interests as provided in the Plan.  As previously established in the Ravid Declaration:

a.   The Plan embodies a rational plan to implement the Investment Agreement and provide for the distribution of proceeds to holders of Allowed Claims in Class 4 (Class 4 Remaining Unsecured Claims) on or after the Effective Date in accordance with the Plan. Specifically, the Plan sets forth certain cash payments that the Debtor and/or the Plan Administrator will make on or after the Effective Date.  The Plan also provides for the establishment of the Class 4 Disputed Claims Reserve for the benefit of holders of Disputed Remaining Unsecured Claims against the Debtor. *See* Ravid Declaration, ¶ 45.

b.  With respect to the satisfaction of any Unimpaired Claims on and after the Effective Date, the Sponsor has prepared the Financial Projections annexed to the Disclosure Statement as Exhibit G based on the information provided by the Debtor. The Financial Projections forecast the Reorganized Debtor's cash flows for the three-year period following the Effective Date. *See* Ravid Declaration, ¶ 47.

c.  In addition, the Sponsor anticipates that the equity interests in the Reorganized Debtor will be held through the following entities: Greenrock Realty Services LLC, Vickory Partners LLC, BVT Holdings LLC, and Cam Elm Company LLC. The principals who control these entities have more than seventy (70) years of combined experience in the real estate business. Currently, these individuals, through numerous entities, own and control over 40,000 residential apartments in the New York and New Jersey area and also own tens of millions of square feet of commercial and industrial space in and out of New York City. The Financial Projections and the experience and capabilities of these principals, among other things, demonstrate that the Reorganized Debtor has sufficient capital and means to consummate the Plan and meet its obligations on a go-forward basis and that confirmation of the Plan is not likely to be followed by liquidation or the need for further reorganization of the Reorganized Debtor. *See* Ravid Declaration, ¶ 47.

16.    In addition, and as set forth in the Supplemental Ravid Declaration, as a result of the Revised Settlement, certain portions of which were approved by the Court pursuant to the 9019 Order, the Debtor, the Sponsor, and the Notes Trustee have resolved all of their current disputes related to the Plan, the Investment Agreement, and the MLPSA. The Sponsor has committed to moving forward and closing under the Plan and the Investment Agreement, which is binding and enforceable on the parties in accordance with its terms. The Sponsor's commitment to close on the Plan and Investment Agreement is further evidenced by the payment of $4.5 million in cash to the Escrow Agent as an additional deposit amount on December 21, 2022. Accordingly, the Plan, as amended, satisfies the "feasibility" requirements of section 1129(a)(11) of the Bankruptcy Code.

17.    No party, including Weiss, has disputed that the Plan satisfies the "best interests" test under section 1129(a)(7), the "feasibility" requirements of section 1129(a)(11), or any of the other requirements for confirmation and, as set forth above, the Plan has received

WEIL:\98969468\9\12817.0007

overwhelming support from creditors in the Voting Class.  Accordingly, for the reasons set forth

in the Opening Brief and above, the Plan satisfies the requirements for confirmation and should be

approved.

**<u>Responses to Limited Objection</u>**

**I.      Weiss's Limited Objection With Respect to the Transfer of the Debtor's Interests in YG WV Should Be Overruled**

18.    Although Weiss characterizes his request for relief in benign terms, the

language he proposes for inclusion in the Confirmation Order is anything but.  Weiss seeks to

include language that effectively vacates the Court's Dismissal Order as it transforms issues

definitively decided against Weiss into open and undecided issues that can be re-litigated after

confirmation.  These settled issues include whether the Debtor holds a membership (or only

economic) interest in YG WV (it holds both) and whether the Debtor's transfer of that interest

violates the Member LLC Agreement and applicable Delaware law (it does not).  Nothing in the

Limited Objection could remotely justify upending the certainty achieved ahead of confirmation

when the Weiss Adversary Proceeding was definitively resolved at great cost to the Court and

estate.  The decisions Weiss would re-litigate are law of the case and are entitled to be embodied

in the Confirmation Order.  That Weiss just filed yet another appeal is of no moment.  A final

judgment has been rendered by this Court – it should be given full effect.

19.    In addition, because the Debtor is seeking to transfer its full membership

interests in YG WV to Wind-Down Co on the Effective Date, a determination by the Court as to

the validity and extent of that transfer is necessary to find the Plan (i) complies with all applicable

provisions of the Bankruptcy Code (including, that the Plan provides adequate means for its

implementation as required under section 1123(a)(5) of the Bankruptcy Code), and (ii) has not

been proposed by any means forbidden by law, as required under sections 1129(a)(1) and (a)(3) of

the Bankruptcy Code, respectively.  As set forth below, the Plan complies with applicable law and provides adequate means for its implementation as the proposed transfer of the Debtor's membership interests in YG WV is expressly permitted under YG WV's operating agreement. Accordingly, the Limited Objection should be overruled.

20.    ***The Dismissal Order is Law of the Case and Weiss is Barred from Re-Litigating Those Issues Post-Effective Date.***  Weiss previously argued as part of his Adversary Proceeding that the commencement of the Chapter 11 Case resulted in the termination of the Debtor's membership interests in YG WV or an assignment of the Debtor's interests in YG WV to the bankruptcy estate, which, in either case, stripped the Debtor of all but its economic rights in YG WV.  Weiss further argued that absent his consent, the Debtor was prohibited under the Member LLC Agreement from transferring any interest in YG WV (including any remaining economic interest) to Wind-Down Co or any other party.  *See* Am. Compl. ¶¶ 107-125.

21.    However, both this Court and the District Court disagreed with Weiss.  Specifically, this Court previously found the commencement of the Chapter 11 Case **did not** result in the automatic termination of the Debtor's membership interests in YG WV[8] or a transfer or assignment of the Debtor's interests in YG WV to the chapter 11 estate[9] and, therefore,

---

[8]    *See* Dismissal Order at 25 ("[T]he Court finds that the events in NY LLCL § 701(b) do not work an automatic termination of a member's interest, at least in the context of a single-member LLC."); *see also* District Court Order at 26 ("Appellant's theory is that All Year's bankruptcy caused its membership interest in YG WV to terminate -- and that, because it was the only member of YGWV, YGWV automatically dissolved per Section 701(a)(4).  Appellant's theory is wrong.").

[9]    *See* Dismissal Order at 26 ("The Court finds that neither a transfer under Section 541(c)(1)(A) of the Bankruptcy Code nor an assignment under NY LLCL § 603(a) occurred for the reasons set forth below."); *see also* District Court Order at 28 ("But the Bankruptcy Court correctly held that All Year's chapter 11 filing was not a transfer or assignment because (1) under *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984), a pre-petition debtor and a post-petition debtor in possession are not legally distinct entities; and (2) NYLLCL § 603's reference to assignment should not be applicable to a member filing for bankruptcy, especially when it continues to operate the debtor and is a single-member LLC (and thus no other member is impacted by the bankruptcy estate even if were a new entity).  For the reasons articulated by the learned Chief Bankruptcy Judge, I agree.") (internal citations omitted).

WEIL:\98969468\9\12817.0007

the Debtor **was not** stripped of any of its economic or non-economic rights in YG WV and the Debtor's full membership interests in YG WV became property of the estate on the Petition Date.[10]

22.    In addition, both this Court and the District Court found the Member LLC Agreement **did not** apply to the Debtor and, therefore, the Member LLC Agreement did not restrict any transfer by the Debtor of its interests in YG WV to Wind-Down Co or any other party.[11]

23.    The Debtor's first Disclosure Statement Supplement, filed on September 15, 2022 [ECF No. 215], included language to the effect that any interest the Debtor holds in YG WV on the Effective Date "whether economic or non-economic but solely to the extent permitted or allowed under applicable law" would be an Excluded Asset to vest in Wind-Down Co on the Effective Date.  That disclosure, however, was made prior to the Court's issuance of the Dismissal Order and the Court's final determination regarding those issues, which were all subsequently affirmed by the District Court.  Accordingly, the issues that Weiss seeks to preserve regarding the scope and nature of the Debtor's interests in YG WV have already been decided and is law of the case.

---

[10]    *See* Dismissal Order at 27-28 ("Plaintiff asks the court to draw an even finer distinction and hold that such a "transfer" would actually only transfer All Year's *economic* interests—but not its *managerial* interests—to the bankruptcy estate, while simultaneously terminating All Year's membership, all under operation of NY LLCL § 603(a). The Court holds that even if a "transfer" occurred under Section 541 of the Code, it would not necessarily have the result Plaintiff argues for under NY LLCL § 603(a).") (emphasis in original); *see also* District Court Order at 31-32 ("Section 541(c) of the Bankruptcy Code commands that a debtor's interest in property become property of the estate 'notwithstanding any provision in…applicable nonbankruptcy law' that either (A) 'restricts or conditions transfer of such interests by the debtor' or (B) 'is conditioned…on the commencement of a case under this title…and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.' It is hard to imagine language that more clearly and expressly preempts Appellant's reading of the NYLLCL to restrict the transfer of All Year's membership interest and require 'forfeiture, modification, or termination' of the membership interest solely because of All Year's filing for bankruptcy.") (internal citations omitted).

[11]    *See* Dismissal Order at 12-22; *see also* District Court Order at 27 ("In short, every single objective manifestation in the actual contract indicates in no uncertain terms that All Year did not wish to be a party to the contract and refused to be bound by the terms of the contract.").

24.     The law of the case doctrine provides that"[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).   Courts generally apply the law of the case doctrine where prior decisions in an ongoing case have already resolved an issue either expressly or implicitly.  *See Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001); *In re 447 West 142nd St. Housing Dev. Fund Corp.*, 2020 WL 3067733 at * 12 (Bankr. S.D.N.Y. June 8, 2020) (for purposes of the law of the case doctrine, adversary proceeding was part of same "case" as main chapter 11 case); *Moise v. Ocwen Loan Servicing LLC (In re Moise)*, 575 B.R. 191, 205 (Bankr. E.D.N.Y. 2017) (separate contested events or adversary proceedings tied to a single main bankruptcy case are all part of the same case).  Accordingly, because the issues concerning the scope and nature of the Debtor's interests in YG WV have previously been decided by this Court (and affirmed by the District Court), the law of the case doctrine precludes Weiss from reserving his rights to re-litigate these same issues at a later date.[12]

25.     ***The Transfer or Vesting of the Debtor's Membership Interests in YG WV to Wind-Down Co under the Plan is Permitted under the YG WV Operating Agreement and Applicable Law.***  Although not raised by Weiss in his Limited Objection (and therefore he has waived it), a separate issue is whether YG WV's Operating Agreement permits the Debtor, as sole member of YGWV, to transfer its member interest in YGWV to Wind-Down Co, an issue briefly discussed at oral argument on September 13, 2022.[13]  The answer is in this case simple: Yes.

---

[12]   Weiss is also barred from asserting claims regarding the nature and scope of the Debtor's membership interests in YG WV under the doctrines of issue and claim preclusion.  *See Cayuga Nation v. Tanner*, 6 F.4th 361, 374 (2d Cir. 2021) (addressing issue preclusion); *In re Adelphia Recovery Tr.*, 634 F.3d 678, 694 (2d Cir. 2011) (addressing claim preclusion).  Weiss's appeal of the District Court Order does not alter its preclusive effects.  *See Coleman v. Tollefson*, 575 U.S. 532, 135 (2015) ("a judgment normally takes effect despite a pending appeal. . . and its preclusive effect is generally immediate, notwithstanding any appeal") (internal citations omitted).

[13]   Adv. Proc. (Sept. 13, 2022), Hr'g Tr. 22:8–19:

26.      As set forth in the Opening Brief, to confirm the Plan, section 1129(a)(3) of the Bankruptcy Code requires the Plan comply with applicable law. Section 603(a)(2) of the NYLLCL provides that, "*except as provided in the operating agreement*," the assignment of a membership interest only entitles the assignee to "distribution and allocations of profits and losses" and does not entitle the assignee to "participate in the management and affairs of the limited liability company" or "to exercise any rights or powers of a member" (emphasis added). Section 603(a)(4) further provides that, *unless otherwise stated in the operating agreement*, a member ceases to be a member and to have the power to exercise any rights or powers of a member upon assignment of all of his or her membership interest. (Emphasis added).

27.      As disclosed in the Plan Supplement, the Debtor amended and restated the YG WV LLC agreement on January 3, 2023 (the "**A&R YG WV LLC Agreement**"),[14] to expressly provide the Member (the Debtor) "shall be permitted to assign its entire membership interest in the [YG WV] to any party, as determined in the Member's sole discretion." The A&R YG WV LLC Agreement goes further and provides that "for the avoidance of doubt, Wind-Down Co. shall be deemed to be and shall become an assigned and sole member of [YG WV], with all attendant rights and responsibilities of a member, upon the Effective Date of the Plan." Accordingly, the transfer or vesting of the Debtor's membership interests in YG WV to

---

"Court: You would agree that plan provision that disposed of the interest could run afoul of the state statute?

[Debtor's counsel]: It's interesting, Your Honor. It could except I think that you would look at 11 U.S.C. 1123, notwithstanding applicable law . . . So I would argue in that context that there is another provision that addresses it. If the transferor is necessary to effectuate a plan, we would argue then that that is permissible and would preempt contracts or state law to the contrary.

Court: All right. That's not today's issue in any event."

[14]    A copy of the A&R YG WV LLC Agreement is attached as Exhibit A to the Supplemental Ravid Declaration.

Wind-Down Co is permitted under the A&R YG WV LLC Agreement and complies with Section 603(a) of the NY LLCL, as required under section 1129(a)(3) of the Bankruptcy Code.

28.     Additionally, in accordance with sections 1129(a)(1) and 1123(a)(5) of the Bankruptcy Code, the Plan must provide adequate means for its implementation to be confirmed. Even if the transfer or vesting of the Debtor's membership interests in YG WV was not permitted by Section 603(a) of the NY LLCL, for the reasons cited in the Opening Brief, section 1123(a)(5) of the Bankruptcy Code preempts any such statute or law and in all events permits the full membership interests in YG WV to be assigned or transferred to Wind-Down Co under the Plan.

29.     Section 1123(a)(5)(B) provides that a plan shall provide adequate means for the plan's implementation, which may include the "transfer of all or any part of the property of the estate" to one or more parties "*notwithstanding any otherwise applicable nonbankruptcy law*." (emphasis added).  Courts generally permit preemption under section 1123(a)(5) to allow a debtor to implement the transactions contemplated under its chapter 11 plan.  *See In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576, 606 (Bankr. S.D.N.Y. 2018) ("Section 1123(a) provides a list of the tools one may use to implement a plan."); *In re Fed.-Mogul Glob. Inc.*, 385 B.R. 560, 566–67 (Bankr. D. Del. 2008), *aff'd sub nom*. *In re Fed.-Mogul Glob.*, 402 B.R. 625 (D. Del. 2009), *aff'd sub nom. In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355 (3d Cir. 2012) (noting that "[s]ection 1123(a)(5) 'is an empowering statute" that "enhanc[es] the ability of the trustee or debtor in possession to deal with property of the estate'" and that it expressly preempts state law and contractual rights "that might otherwise interfere with the implementation of a Chapter 11 plan").

30.     In particular, numerous courts have held that section 1123(a)(5) preempts state law and contractual provisions that would otherwise restrict a debtor's ability to assign its rights or property.  *See*, *e.g.*, *Fed.-Mogul Glob. Inc.*, 684 F.3d at 365 (affirming Bankruptcy Court's

WEIL:\98969468\9\12817.0007

ruling that section 1123(a)(5) preempts anti-assignment provisions that would otherwise bar the

transfer of insurance rights to a section 524(g) trust pursuant to a debtor's chapter 11 plan); *In re*

*Refco Inc. Sec. Litig.*, No. 07-MD-1902 (JSR), 2013 WL 12158586, at *15 (S.D.N.Y. Aug. 7,

2013) (finding that a debtor's assignment of tort claims and causes of action in connection with its

reorganization was permissible notwithstanding a New Jersey law prohibiting assignment of tort

claims).

31.    As noted above, Weiss did not raise any argument in his Limited Objection

regarding the Debtor's ability to transfer its interests in YG WV under the A&R YG WV LLC

Agreement.  However, even if he had timely raised these arguments, they should be overruled for

the reasons stated above.

## II.    No Action is Required by the Court or any Party at this Time With Respect to the Purported Subrogation Claim under the Wythe Berry Fee Owner Guaranty

32.    Pursuant to that certain Guaranty of Payment, dated February 28, 2017 (the

"**Guaranty**"), a copy of which is annexed hereto as **Exhibit A**, Wythe Berry Fee Owner LLC

("**Fee Owner**") guaranteed certain obligations of the Debtor under the Series C Deed of Trust.  On

September 21, 2022, the Notes Trustee, on behalf of the Series C Noteholders, delivered to Fee

Owner a letter demanding payment under Series C Deed of Trust and the Guaranty (such letter,

the "**Demand Letter**").  No amounts, however, have been paid by Fee Owner to the Notes Trustee

under the Guaranty and, as set forth below, no action is required at this time (or potentially at all)

with respect to any purported subrogation claims that Fee Owner may have under the Guaranty.[15]

---

[15]    It is unclear why Weiss feels compelled to raise this issue at all as he has no authority to pursue any such claim on behalf of Fee Owner.  As the Court is aware, YG WV, a direct subsidiary of the Debtor (not Weiss), is the Managing Member of Wythe Berry Member, the 100% owner and sole Member of Fee Owner.  Pursuant to Section 5.1 of the Member LLC Agreement, the Managing Member has the sole the authority and responsibility "to manage the business of [Member LLC]" and shall "make all decisions affecting the business of [Member LLC]" (and, in turn, Fee Owner).  Accordingly, Weiss is not authorized to pursue or otherwise act on behalf of Member LLC or Fee Owner with respect to the purported subrogation claim under the Guaranty.  In fact, Weiss

16

33.     First, as Weiss acknowledges in the Limited Objection, this issue is not ripe or presently before the Court.  Fee Owner has not made any payment under the Guaranty at this time, and indeed, it may never make a payment under the Guaranty.  Section 7 of the Guaranty provides in relevant part that "until the Debentures shall have been paid in full, Guarantor hereby postpones and subordinates…the exercise of any and all of the Undersigned Rights[16] [as defined in Section 7] to Trustee's rights against Guarantor under this Guaranty or against Debtor under any of the Bond Documents…."  Thus, no action is required by Fee Owner at this time with respect to any purported subrogation claim.

34.     Second, it is unclear whether Fee Owner even has the rights of subrogation that Weiss asserts in his Limited Objection. Section 3 of the Guaranty provides in relevant part that:

> Guarantor hereby waives and releases any claim (within the meaning of 11 U.S.C. § 101) that Guarantor may have against Debtor arising from a payment made by

---

does not have standing at all as a creditor or party in interest in the Debtor's Chapter 11 Case.  The entirety of Weiss' complaint and all of his purported claims were dismissed pursuant to the Dismissal Order and the Debtor has objected to his residual proof of claim which remains solely as an administrative matter.  *See Debtor's Objection to Proof of Claim No. 2 by Zelig Weiss* [ECF No. 307].  Accordingly, Weiss's only connection to the Chapter 11 Case is as an unsuccessful bidder with respect the William Vale Hotel, which court have generally found to be insufficient to confer standing as a party in interest in a chapter 11 case.  *See, e.g., In re Colony Hill Assocs.*, 111 F.3d 269, 273 (2d Cir. 1997) ("[A]n unsuccessful bidder—whose only pecuniary loss is the speculative profit it might have made had it succeeded in purchasing property at an auction—usually lacks standing to challenge a bankruptcy court's approval of a sale transaction.").

[16]    "Undersigned Rights" is defined in Section 7 of the Guaranty to mean "all rights of subrogation, contribution, indemnification, set-off or reimbursement against [the Debtor] or any other Guarantor that Guarantor may have." Section 7 further provides that Fee Owner does not waive and retains all Undersigned Rights; provided, however,

> (i) this Guaranty shall neither be contingent upon the existence of the Undersigned's Rights nor subject to any claims or defenses whatsoever that may be asserted in connection with the enforcement or attempted enforcement of the Undersigned's Rights including, without limitation, any claim that the Undersigned's Rights were abrogated by any of Trustee['s] acts, and (ii) until the Debentures shall have been paid in full, Guarantor hereby postpones and subordinates (A) the exercise of any and all of the Undersigned's rights to Trustee's rights against Guarantor under this Guaranty or against Debtor under any of the Bond Documents, and (B) any of the Undersigned's Rights to any collateral securing the Debentures.

(Guaranty, § 7).

WEIL:\98969468\9\12817.0007

the Guarantor under this Guaranty and agrees not to assert or take advantage of any subrogation rights of Guarantor or any right of Guarantor to proceed against the Debtor for reimbursement. It is expressly understood that the waivers and agreements of Guarantor constitute additional and cumulative benefits given to Trustee for its security and as an inducement for its extension of credit on behalf of the Debenture holders to Debtor.

(Guaranty §3).

35.     Accordingly, the Debtor does not believe there is any subrogation claim under the Guaranty and, to the extent such a claim exists, it would be subordinated to the Series C Noteholder Claims in accordance with the Guaranty's express terms.  However, as noted above, the Court does not need to take any action at this time with respect to this purported claim as the Debtor is not seeking to take any action with respect to the alleged claim under the Plan or otherwise in connection with confirmation.

**III.     Conclusion**

36.     For the reasons set forth herein and in the Opening Brief, the Debtor respectfully requests the Court overrule the Limited Objection and confirm the Plan in accordance with section 1129 of the Bankruptcy Code.

Dated: January 17, 2023
New York, New York

> */s/ Matthew P. Goren*
> WEIL, GOTSHAL & MANGES LLP
> 767 Fifth Avenue
> New York, New York 10153
> Telephone:  (212) 310-8000
> Facsimile: (212) 310-8007
> Gary T. Holtzer
> Matthew P. Goren
>
> *Attorneys for the Debtor*

18

**<u>Exhibit A</u>**

**Guaranty**

## GUARANTY OF PAYMENT

**THIS GUARANTY OF PAYMENT** (this "**Guaranty**") is made as of the 28th day of February, 2017, by WYTHE BERRY FEE OWNER LLC, a Delaware limited liability company, having an address at 199 Lee Avenue #693, Brooklyn, New York 11211 ("**Guarantor**"), in favor of MISHMERET TRUST COMPANY LTD., an Israeli company, having an address at Amot Bituach House Building B, 48 Menachem Begin Road, Tel-Aviv 6618001 ISRAEL ("**Trustee**").

## R E C I T A L S :

WHEREAS, All Year Holdings Limited, a British Virgin Islands company ("**Debtor**") published a Shelf Offering Report on February 20, 2017, pursuant to which Debtor has made a preliminary offering of Debentures (Series C) in an amount of $166,320,000.00 (the "**Debentures**");

WHEREAS, contemporaneously herewith, Trustee is acting as trustee for the holders of the Debentures under that certain Deed of Trust by and between Debtor and Trustee, as secured party, dated February 19, 2017 (as the same may have been or may be amended or supplemented from time to time, the "**Deed of Trust**");

WHEREAS, the payment and performance of all debts, obligations and liabilities of every kind and character of Debtor now or hereafter existing in favor of Trustee are secured by, among other things, that certain Security Agreement – Collateral Assignment and Pledge of Secured Notes (together with all extensions, renewals, modifications, substitutions and amendments thereof, the "**Security Agreement**") dated as of even date herewith, made by Debtor in favor of Trustee and granting Trustee a security interest in, and assigns, transfers, delivers, pledges, charges, sets over and confirms to Trustee, the Collateral (as defined therein);

WHEREAS, Guarantor acknowledges that it will receive significant benefit from Debtor obtaining the proceeds of the Debentures; and

WHEREAS, Trustee requires as a condition to it entering into the Deed of Trust that Guarantor shall have executed and delivered this Guaranty for the benefit of Trustee.

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt of which is hereby acknowledged, and in order to induce Trustee to act as trustee, Guarantor hereby represents, warrants and covenants to Trustee as follows:

1.      Authorization and Enforceability of Bond Documents. The Deed of Trust, Security Agreement and all of the other documents executed and delivered by Debtor in connection with the issuance of the Debentures (the Deed of Trust, Security Agreement and such other documents being hereinafter referred to, collectively, as the "**Bond Documents**") have been duly authorized and executed by Debtor and are legal, valid and binding instruments, enforceable against Debtor in accordance with their respective terms, subject to the effect of bankruptcy, insolvency, reorganization, moratorium or other legal or equitable principles now or hereafter in effect generally affecting creditors' rights and remedies.

{40865127;6}

2.      <u>Obligations Guaranteed</u>.  Guarantor unconditionally guarantees to Trustee (i) the prompt payment and performance of all debts, obligations and liabilities of every kind and character of Debtor, whether now or hereafter advanced, as the same shall become due and payable under the Bond Documents, whether at stated maturity, by acceleration or otherwise, and any and all sums of money that, at the time, may have become due and payable under the provisions of the Deed of Trust, the Security Agreement or any other Bond Document, and the due and prompt performance of all of the terms, agreements, covenants and conditions of the Deed of Trust, Security Agreement and the other Bond Documents; and (ii) payment in full of any and all expenses that may be paid or incurred by the Trustee in the collection of all or any portion of the Guarantor's obligations hereunder or the exercise or enforcement of any one or more of the other rights, powers, privileges, remedies and interests of the Trustee under the Bond Documents or hereunder including, without limitation, reasonable attorneys' fees, irrespective of the manner or success of any such collection, exercise or enforcement, and whether or not such expenses constitute part of the Debtor's obligations.

3.      <u>Unconditional Guaranty</u>.  This Guaranty is an absolute, unconditional, present and continuing guaranty of payment and performance and not of collection and is in no way conditioned or contingent upon any attempt to enforce Trustee's rights against Debtor or to collect from Debtor or upon any other condition or contingency; accordingly, Trustee shall have the right to proceed against Guarantor immediately upon any Event of Default (as defined in the Security Agreement) under the Bond Documents, without taking any prior action or proceeding to enforce the Bond Documents or any of them or for the liquidation or foreclosure of any security Trustee may at any time hold pursuant thereto.  Guarantor hereby waives and releases any claim (within the meaning of 11 U.S.C. § 101) that Guarantor may have against Debtor arising from a payment made by Guarantor under this Guaranty and agrees not to assert or take advantage of any subrogation rights of Guarantor or any right of Guarantor to proceed against Debtor for reimbursement.  It is expressly understood that the waivers and agreements of Guarantor constitute additional and cumulative benefits given to Trustee for its security and as an inducement for its extension of credit on behalf of the Debenture holders to Debtor.  Trustee may at any time and from time to time take any and/or all actions and enforce all rights and remedies available to it hereunder or under applicable law to collect from Guarantor any amounts then due and payable hereunder by Guarantor and/or to cause Guarantor to fulfill his, her or its obligations hereunder.  Trustee may at any time and from time to time take any and/or all actions and enforce all rights and remedies available to it hereunder or under applicable law to collect from Guarantor any amounts then due and payable hereunder by Guarantor and/or to cause Guarantor to fulfill his, her or its obligations hereunder.

4.      <u>Liability Unimpaired</u>.  Guarantor's liability hereunder shall in no way be limited or impaired by, and Guarantor hereby consents to and agrees to be bound by, any amendment or modification of the provisions of any of the Bond Documents or any other instrument made to or with Trustee by Debtor or Guarantor, or any Person (as hereafter defined) who succeeds Guarantor as owner of all or part of the Property prior to foreclosure of that certain Agreement of Modification of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing by and between Guarantor, as borrower, and Debtor, as lender, dated as of the date hereof (the "**A&R Mortgage**")  or exercise of any power of sale contained therein.  In addition, Guarantor's liability hereunder shall in no way be limited or impaired by (i) any extensions of time for performance required by any of said documents, (ii) any sale, assignment or foreclosure

of the A&R Mortgage or any sale or transfer of all or part of the Property, (iii) any exculpatory provision in any of said instruments limiting Trustee's recourse to the Property or to any other security, or limiting Trustee's rights to a deficiency judgment against Debtor, (iv) the release of Debtor or any other person from performance or observance of any of the agreements, covenants, terms or conditions contained in any of said instruments by operation of law or otherwise, (v) the release or substitution in whole or in part of any security for the Debentures, (vi) Trustee's failure to record the Security Agreement, that certain Collateral Assignment of Agreement of Modification of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing, that certain Collateral Assignment of Assignment of Leases and Rents, or file any UCC financing statements (or Trustee's improper recording or filing of same) or to otherwise perfect, protect, secure or insure any security interest or lien given as security for the Debentures, (vii) the invalidity, irregularity or unenforceability, in whole or in part, of any of the Bond Documents, this Guaranty or any other instrument or agreement executed or delivered to Trustee in connection with the Debentures, except to the extent that there is a final adjudication by a court of competent jurisdiction of a valid defense to Debtor's obligations under the Bond Documents to payment of the Debentures, (viii) the inaccuracy of any of the representations and warranties made by Debtor in the Deed of Trust or the other Bond Documents, or (ix) any other action or circumstance whatsoever that constitutes, or might be construed to constitute, a legal or equitable discharge or defense (except full payment and satisfaction) of Debtor for its obligations under any of the Bond Documents or of Guarantor under this Guaranty; and, in any such case, whether with or without notice to Guarantor and with or without consideration. As used herein, "**Person**" shall mean any individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association, any other entity, any federal, state, county or municipal government or any bureau, department or agency thereof, and any fiduciary acting in such capacity on behalf of any of the foregoing.

       5.     <u>Preservation of Bond Documents</u>.  Guarantor will cause Debtor to maintain and preserve the enforceability of the Bond Documents as the same may be modified and will not permit Debtor to take or to fail to take actions of any kind which might be the basis for a claim that Guarantor has a defense to Guarantor's obligations hereunder.

       6.     <u>Security; Guarantor's Events of Default</u>.  As security for any and all of the obligations of the Guarantor under this Guaranty, now existing or hereafter arising hereunder or otherwise (collectively, the "**Liabilities**"), the Guarantor hereby grants to the Trustee a lien upon and a security interest in any and all moneys or other property (i.e., goods and merchandise, as well as any and all documents relative thereto; funds, securities, choses in action and any and all other forms of property whether real, personal or mixed, and any right, title or interest of the Guarantor therein or thereto), and the proceeds thereof, which have been, or may hereafter be, deposited or delivered to the Trustee or any affiliate of Trustee (or with any third party acting on Trustee's behalf) by or for the account or credit of the Guarantor whether for safekeeping, custody, pledge, deposit, transmission, collection or otherwise. All remittances and property shall be deemed delivered to the Trustee as soon as put in transit to the Trustee by mail or carrier.

       Upon the occurrence of any of the following events (each a "**Guarantor's Event of Default**"): (a) the Guarantor defaults under this Guaranty or Guarantor or Debtor defaults under any Bond Document or any other agreement with Trustee to which the Guarantor is a party or which directly or indirectly absolutely or collaterally secures the Deed of Trust ; (b) any

representation or warranty made by the Guarantor herein or in any other Bond Document to which the Guarantor is a party is false or untrue as of the date such representation or warranty is made; (c) the Guarantor or Debtor commences any case, proceeding, or other action under any law of any jurisdiction relating to bankruptcy, insolvency, reorganization, or relief of debtors or seeks to have an order for relief entered with respect to the Guarantor or seeks to be adjudicated a bankrupt or insolvent, or seeks reorganization, arrangement, adjustment, liquidation, dissolution, composition or other relief with respect to the Guarantor or the Guarantor's debts, or seeks the appointment of a receiver, trustee, custodian, or other similar official for the Guarantor or for all or any substantial part of the Guarantor's property; (d) the Guarantor or Debtor makes a general assignment for the benefit of creditors; (e) there is commenced against the Guarantor or Debtor any case, proceeding or other action of the type referred to in clause (c) above or seeking the issuance of a warrant of attachment, execution, distraint, or similar process against all or any substantial part of the Guarantor's property, which case, proceeding or other action results in an entry of an order for relief or is not dismissed, discharged or bonded within sixty (60) days of the commencement thereof; (f) the Guarantor takes any action indicating the Guarantor's consent to, approval of, or acquiescence in or in furtherance of, any of the acts set forth in clause (c) and (e) above; (g) the death or incapacity of a Guarantor, if an individual; (h) the Guarantor admits in writing the Guarantor's inability to pay the Guarantor's debts as they mature; (i) the Guarantor terminates or dissolves or suspends the Guarantor's usual business activities or conveys, sells, leases, transfers or otherwise disposes of all or a substantial part of the Guarantor's property, business or assets other than in the ordinary course of business or as otherwise permitted in the Loan Documents; or (j) the existence or occurrence at any time of one or more conditions or events that, in the sole opinion of the Trustee, has resulted or is reasonably likely to result in a material adverse change in the business, properties or financial condition of the Guarantor; then, any or all of the obligations of Guarantor shall, at the Trustee's option, become (for the purpose of this Guaranty) immediately due and payable by the Guarantor, without demand or notice. In addition, upon the occurrence of any Guarantor's Event of Default, the Trustee shall have all of the rights and remedies provided to a secured party by the Uniform Commercial Code as in effect in the State of New York at that time. The Guarantor agrees that, in the event that notice is necessary, written notice mailed to the Guarantor at the address given below five (5) days prior to the date of public sale of the property subject to the lien and security interest created herein or prior to the date after which private sale or any other disposition of said property will be made shall constitute reasonable notice, but notice given in any other reasonable manner or at any other reasonable time shall be sufficient.

       7.    <u>Indemnification; Payments; Certain Waivers</u>. Guarantor (i) waives any right or claim of right to cause a marshalling of Debtor's assets or to cause Trustee to proceed against any of the security for the Debentures or for the obligations guaranteed hereby before proceeding against Guarantor, (ii) agrees that any payments required to be made by Guarantor hereunder shall become due on demand in accordance with the terms of Paragraph 2 hereof and without presentment to Debtor, demand for payment or protest, or notice of non-payment or protest, and (iii) except as hereinafter provided, expressly waives and relinquishes all rights and remedies accorded by applicable law to guarantors. Without limiting the generality of the foregoing, Guarantor hereby waives all rights (x) to participate in any claim or remedy Trustee may now or hereafter have against Debtor or in any collateral that Trustee has or hereafter may acquire for the obligations guaranteed hereby and (y) except as provided below, to contribution,

{40865127;6}

indemnification, set-off, exoneration or reimbursement, whether from Debtor, any Guarantor, or any other person now or hereafter primarily or secondarily liable for any of Debtor's obligations to Trustee, and whether arising by contract or operation of law or otherwise by reason of Guarantor's execution, delivery or performance of this Guaranty. Guarantor does not waive and hereby retains all rights of subrogation, contribution, indemnification, set-off or reimbursement against Debtor or any other Guarantor that Guarantor may have (the "**Undersigned's Rights**"); provided, however, that (i) this Guaranty shall neither be contingent upon the existence of the Undersigned's Rights nor subject to any claims or defenses whatsoever that may be asserted in connection with the enforcement or attempted enforcement of the Undersigned's Rights including, without limitation, any claim that the Undersigned's Rights were abrogated by any of Trustee' acts, and (ii) until the Debentures shall have been paid in full, Guarantor hereby postpones and subordinates (A) the exercise of any and all of the Undersigned's Rights to Trustee's rights against Guarantor under this Guaranty or against Debtor under any of the Bond Documents, and (B) any of the Undersigned's Rights to any collateral securing the Debentures.

8.    <u>Reinstatement</u>.    This Guaranty shall continue to be effective, or be reinstated automatically, as the case may be, if at any time payment, in whole or in part, of any of the obligations guaranteed hereby is rescinded or otherwise must be restored or returned by Trustee (whether as a preference, fraudulent conveyance or otherwise) upon or in connection with the insolvency, bankruptcy, dissolution, liquidation or reorganization of Debtor, Guarantor or any other person, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, Debtor, Guarantor or any other person or for a substantial part of Debtor's, Guarantor's or any of such other person's property, as the case may be, or otherwise, all as though such payment had not been made. Guarantor further agrees that in the event any such payment is rescinded or must be restored or returned, all actual out of pocket costs and reasonable expenses (including, without limitation, reasonable legal fees and expenses) incurred by or on behalf of Trustee in defending or enforcing such continuance or reinstatement, as the case may be, shall constitute costs of enforcement, the payment of which is guaranteed by Guarantor pursuant to Paragraph 2 above and covered by Guarantor's indemnity pursuant to Paragraph 7 above.

9.    <u>Litigation; Compliance with Judgments</u>.    Guarantor represents and warrants with respect to itself that there are no actions, suits or proceedings pending or threatened against or affecting it, at law, in equity or before or by any governmental authorities that would have a material effect on Guarantor's ability to perform its obligations hereunder; to the best of Guarantor's knowledge, Guarantor is not in default with respect to any order, writ, injunction, decree or demand of any court or governmental authorities.

10.    <u>Authorization and Enforceability; No Conflicts</u>.    Guarantor has the full power and authority to enter into and perform its obligations under this Guaranty and this Guaranty is a legal, valid and binding instrument, enforceable against Guarantor in accordance with its terms. The execution, delivery and performance of this Guaranty has been authorized by all proper and necessary actions of the Guarantor. Guarantor represents and warrants with respect to itself that the consummation of the transactions contemplated hereby and the performance of this Guaranty and the other Bond Documents to which Guarantor is a party have not resulted and will not result in any breach of, or constitute a default under, any mortgage, deed of trust, lease, bank loan or credit agreement, corporate charter, by-laws, partnership agreement

or other instrument to which Guarantor is a party or by which Guarantor may be bound or affected.

11.    <u>Compliance with Laws</u>.  Guarantor represents and warrants with respect to itself that Guarantor is in compliance with, and the transactions contemplated by the Bond Documents and this Guaranty do not and will not violate any provision of, or require any filing, registration, consent or approval under, any federal, state or local law, rule, regulation, ordinance, order, writ, judgment, injunction, decree, determination or award (hereinafter, "**Laws**") presently in effect having applicability to Guarantor, and agrees that Guarantor will comply promptly with all laws now or hereafter in effect having applicability to Guarantor.

12.    <u>Accuracy of Information; Full Disclosure</u>.  Guarantor represents and warrants with respect to itself that neither this Guaranty nor any documents, financial statements, reports, notices, schedules, certificates, statements or other writings furnished by or on behalf of Guarantor to Trustee in connection with the negotiation of the Bond Documents or the consummation of the transactions contemplated thereby, or required herein or by the other Bond Documents to be furnished by or on behalf of Guarantor, contains any untrue or misleading statement of a material fact; there is no fact that Guarantor has not disclosed to Trustee in writing that materially affects adversely any of the property covered by the A&R Mortgage or the business affairs or financial condition of Guarantor, or the ability of Guarantor to perform this Guaranty and the other Bond Documents to which Guarantor is a party.

13.    <u>Non-Waiver Remedies Cumulative</u>.  No failure or delay on Trustee's part in exercising any right, power or privilege under any of the Bond Documents, this Guaranty or any other document made to or with Trustee in connection with the Debentures shall operate as a waiver of any such privilege, power or right or shall be deemed to constitute Trustee's acquiescence in any default by Debtor or Guarantor under any of said documents.  A waiver by Trustee of any right or remedy under any of the Bond Documents, this Guaranty or any other document made to or with Trustee in connection with the Debentures on any one occasion shall not be construed as a bar to any right or remedy which Trustee otherwise would have on any future occasion.  The rights and remedies provided in said documents are cumulative, may be exercised singly or concurrently and are not exclusive of any rights or remedies provided by law.

14.    <u>Transfers of Interests in Bond Documents</u>.  Guarantor acknowledges that Trustee, at Trustee's sole discretion, may, at no cost, expense or additional liability to Guarantor sell, assign or transfer interests in the Bond Documents and  this Guaranty to one or more participants, purchasers and/or assignees (collectively, "**Participants**") and agrees in connection therewith, all Bond Documents and other documentation, financial statements, appraisals and other data, or copies thereof, relevant to Debtor, Guarantor or the Property may be provided to and retained by any such participant, purchaser or assignee or prospective participant, purchaser or assignee.  Guarantor agrees that Trustee shall have no obligation to give Guarantor written notice of any sale, assignment or transfer of any interest or participation in the Debentures or any part thereof.

15.    <u>Separate Indemnity</u>.  Guarantor acknowledges and agrees that Trustee's rights (and Guarantor's obligations) under this Guaranty shall be in addition to all of Trustee's rights (and all of Guarantor's obligations) under any indemnity agreement executed and

delivered to Trustee by Debtor and/or Guarantor in connection with the Debentures, and payments by Guarantor under this Guaranty shall not reduce any of Guarantor's obligations and liabilities under any such indemnity agreement.

16.     <u>Severability</u>.  Any provision of this Guaranty, or the application thereof to any person or circumstance, that, for any reason, in whole or in part, is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Guaranty (or the remaining portions of such provision) or the application thereof to any other person or circumstance, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision (or portion thereof) or the application thereof to any person or circumstance in any other jurisdiction.

17.     <u>Entire Agreement; Amendments</u>.  This Guaranty contains the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior oral or written agreements or statements relating to such subject matter, and none of the terms and provisions hereof may be waived, amended or terminated except by a written instrument signed by the Person against whom enforcement of the waiver, amendment or termination is sought.

18.     <u>Successors and Assigns</u>.  This Guaranty shall be binding upon and shall inure to the benefit of Trustee and Guarantor and their respective heirs, personal representatives, successors and assigns.  This Guaranty may be assigned by Trustee with respect to all or any portion of the obligations guaranteed hereby, and when so assigned Guarantor shall be liable under this Guaranty to the assignee(s) of the portion(s) of the obligations guaranteed hereby so assigned without in any manner affecting the liability of Guarantor hereunder to Trustee with respect to any portion of the obligations guaranteed hereby retained by Trustee.

19.     **WAIVER OF TRIAL BY JURY.  GUARANTOR, AND BY ITS ACCEPTANCE HEREOF, TRUSTEE, EACH HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE BOND DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR AND TRUSTEE, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  GUARANTOR AND TRUSTEE ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.**

20.     **ADDITIONAL WAIVERS IN THE EVENT OF ENFORCEMENT.  GUARANTOR HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES, IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING BROUGHT BY OR ON BEHALF OF TRUSTEE ON THIS GUARANTY, ANY AND EVERY RIGHT GUARANTOR MAY HAVE TO (I) INJUNCTIVE RELIEF, (II) INTERPOSE ANY COUNTERCLAIM THEREIN (OTHER THAN COMPULSORY COUNTERCLAIMS),**

**AND (III) HAVE THE SAME CONSOLIDATED WITH ANY OTHER OR SEPARATE SUIT, ACTION OR PROCEEDING. NOTHING HEREIN CONTAINED SHALL PREVENT OR PROHIBIT GUARANTOR FROM INSTITUTING OR MAINTAINING A SEPARATE ACTION AGAINST TRUSTEE WITH RESPECT TO ANY ASSERTED CLAIM.**

21.    <u>Governing Law</u>.  This Guaranty and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New York (without giving effect to New York's principles of conflicts of law).  Guarantor hereby agrees and consents that, in addition to any methods of service of process provided for under applicable law, all service of process in any such suit, action or proceeding in any New York state or federal court sitting in the County of New York may be made by certified or registered mail, return receipt requested, directed to the Guarantor at the address indicated below, and service so made shall be complete five (5) days after the same shall have been so mailed.

22.    <u>Paragraph Headings</u>.  Any paragraph headings and captions in this Guaranty are for convenience only and shall not affect the interpretation or construction hereof.

23.    <u>Liability Unaffected by Release</u>.  Any other Person liable upon or in respect of any obligation hereby guaranteed, may be released without affecting the liability of Guarantor hereunder.

24.    <u>Joint and Several Obligations</u>.  If more than one Person comprises Guarantor, then each such Person's obligations and liability under this Guaranty shall be joint and several.

25.    <u>Notices</u>.  Any notice, demand, statement, request or consent made hereunder shall be in writing and delivered personally or sent to the party to whom the notice, demand or request is being made by Federal Express or other nationally recognized overnight delivery service, as follows and shall be deemed given when delivered personally or deposited with Federal Express or such other nationally recognized delivery service on the day of delivery or refusal:

If to Trustee:          To Trustee, at the address first written above

with a copy to:

Akerman LLP
666 Fifth Avenue
20th Floor
New York, New York 10103
Attention: Yariv Ben-Ari, Esq.

If to Guarantor:        To Guarantor, at the address first written.

with a copy to:

Tratner and Associates PLLC
80-02 Kew Gardens Road
Suite 605
Kew Gardens, New York 11415
Attention: Dov Tratner, Esq.

or such other address as either Guarantor or Trustee shall hereafter specify by not less than ten (10) days prior written notice as provided herein; provided, however, that notwithstanding any provision of this article to the contrary, such notice of change of address shall be deemed given only upon actual receipt thereof. Rejection or other refusal to accept or the inability to deliver because of changed addresses of which no notice was given as herein required shall be deemed to be receipt of the notice, demand, statement, request or consent.

26.    Principles of Construction.    All references to sections, paragraphs, schedules and exhibits are to sections, schedules and exhibits in or to this Guaranty unless otherwise specified. Unless otherwise specified, the words "hereof," "herein" and "hereunder" and words of similar import when used in this Guaranty shall refer to this Guaranty as a whole and not to any particular provision of this Guaranty. The recitals to this Guaranty shall be deemed a part hereof and all exhibits and schedules attached hereto, if any, are incorporated herein by reference for all purposes. Unless otherwise specified, all meanings attributed to defined terms herein shall be equally applicable to both the singular and plural forms of the terms so defined and "including" means including without limitation. Whenever the context requires, each gender shall include all other genders.

27.    Venue; Service of Process.

(a)    ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST TRUSTEE OR GUARANTOR ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY AT TRUSTEE'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT LOCATED IN THE CITY OF NEW YORK, COUNTY OF KINGS, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, OR IN ANY COMPETENT COURT IN TEL AVIV-JAFFA, ISRAEL, AND GUARANTOR WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

(b)    GUARANTOR DOES HEREBY DESIGNATE AND APPOINT: VCORP SERVICES, LLC, HAVING AN ADDRESS AT 25 ROBERT PITT DRIVE, SUITE 204, MONSEY, NY 10952, AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK STATE, AND AGREES THAT SERVICE OF PROCESS UPON SAID AUTHORIZED AGENT AT SAID ADDRESS AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO GUARANTOR IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON GUARANTOR IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW

{40865127;6}

YORK. GUARANTOR (I) SHALL GIVE PROMPT NOTICE TO TRUSTEE OF ANY CHANGED ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (II) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK STATE (WHICH SUBSTITUTE AUTHORIZED AGENT AND OFFICE SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK STATE OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.

(c)   GUARANTOR DOES HEREBY DESIGNATE AND APPOINT GABRIEL DARANOV, HAVING AN ADDRESS AT C/O U.S. REAL ESTATE REPRESENT LTD., 16 ABA HILLEL, RAMAT GAN 5250608, ISRAEL, AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUIT, ACTION OR PROCEEDING AGAINST TRUSTEE OR GUARANTOR ARISING OUT OF OR RELATED TO THIS NOTE IN ANY COMPETENT COURT IN TEL AVIV-JAFFA, ISRAEL, AND AGREES THAT SERVICE OF PROCESS UPON SAID AUTHORIZED AGENT AT SAID ADDRESS AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO GUARANTOR IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON GUARANTOR IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ISRAEL. GUARANTOR AND EACH SUCH AGENT AGREE TO COMPLY WITH THE INSTRUCTIONS OF ANY RECEIVER OR OTHER COURT APPOINTED OFFICER, INCLUDING SIGNING ANY DOCUMENT REQUIRED TO BE BROUGHT BEFORE ANY SUCH COURT OR OTHER AUTHORITY. GUARANTOR (I) SHALL GIVE PROMPT NOTICE TO TRUSTEE OF ANY CHANGED ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (II) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN ISRAEL (WHICH SUBSTITUTE AUTHORIZED AGENT AND OFFICE SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN ISRAEL OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.

28.   <u>Counterparts</u>. This Guaranty may be executed in any number of counterparts, each of which shall be an original and all of which shall constitute together but one and the same agreement.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be duly executed and delivered by its duly authorized official as of the date first above stated.

WYTHE BERRY FEE OWNER LLC,
a Delaware limited liability company

By: _____
Name: Yoel Goldman
Title: Authorized Signatory

ACKNOWLEDGEMENT

STATE OF NEW YORK        )
                         )ss.:
COUNTY OF NEW YORK    )

On the 27 day of February in the year 2017 before me, the undersigned, personally appeared Yoel Goldman personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the persons upon behalf of which the individual acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

BARRY MENDLOWITZ
Notary Public, State of New York
No. 01ME4864688
Qualified in Kings County
Commission Expires 9/02/18