WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary Holtzer
Matthew P. Goren
Robert S. Berezin
Richard D. Gage

*Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
: 
In re : Chapter 11
: 
**ALL YEAR HOLDINGS LIMITED,** : Case No. 21-12051 (MG)
: 
Debtor.[1] :
:
**Fed. Tax Id. No. 98-1220822** :
------------------------------------------------------------X

### SUPPLEMENTAL DECLARATION OF ASSAF RAVID IN SUPPORT OF CONFIRMATION OF THIRD AMENDED CHAPTER 11 PLAN OF <u>REORGANIZATION OF ALL YEAR HOLDINGS LIMITED</u>

I, Assaf Ravid, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1. On March 4, 2021, I was retained as the Chief Executive Officer and Chief Restructuring Officer of All Year Holdings Limited (the "**Debtor**"), a company organized as a BVI Business Company under the laws of the British Virgin Islands (the "**BVI**"). I am knowledgeable and familiar with the Debtor's business and financial affairs.

---

[1] The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

2. On December 16, 2021, the Debtor filed an application under the laws of the BVI with the Eastern Caribbean Supreme Court in the High Court of Justice, Commercial Division Virgin Islands (the "**BVI Court**") seeking the appointment of Paul Pretlove and Charlotte Caulfield of Interpath (BVI) Limited (formerly Kalo (BVI) Limited) as joint provisional liquidators (the "**JPLs**") under the applicable provisions of the BVI Insolvency Act 2003. The BVI Court entered an order appointing the JPLs on December 20, 2021. In connection with the appointment of the JPLs, the JPLs empowered me, and several other specific individuals, to maintain the Debtor's operations, pursue the Debtor's restructuring, and to continue to pursue and oversee the Chapter 11 Case.

3. This declaration (the "**Supplemental Declaration**") supplements my original declaration, dated September 16, 2022 [ECF No. 225] (the "**Original Declaration**"), and is filed in further support of the Debtor's request the Court confirm the *Chapter 11 Plan of Reorganization of All Year Holdings Limited* [ECF No. 123] (as amended on September 15, 2022 [ECF No. 214], November 4, 2022 [ECF No. 256], and December 9, 2022 [ECF No. 289], and as may be further modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**"),[2] pursuant to section 1129 of title 11 of the United States Code (the "**Bankruptcy Code**"). I have reviewed, and I am generally familiar with, the terms and provisions of the Plan and the requirements for confirmation of the Plan under section 1129 of the Bankruptcy Code. I was personally involved in the development of and

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in (i) the Plan, (ii) the *Debtor's Opening Brief in Support of Confirmation of Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited* [ECF No. 224] or (iii) the Original Declaration (as defined below), as applicable.

2

negotiations regarding the Plan and its related documents. I am authorized to submit this Supplemental Declaration on behalf of the Debtor.

4. Except as otherwise indicated herein, the facts set forth in this Supplemental Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the other individuals working under my supervision, information provided to me by the Debtor's professional advisors working under my direction, or my opinion based upon experience, knowledge, and information concerning the Debtor. If called upon to testify, I would testify competently to the facts set forth in this Supplemental Declaration.

5. The Original Declaration and my declaration, pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, in support of the Debtor's chapter 11 petition, dated December 14, 2021 [ECF No. 4], are incorporated herein by reference.

## The Revised Settlement and Third Amended Plan

6. On December 9, 2022, the Debtor amended its proposed Plan to incorporate the terms of the revised settlement (the "**Revised Settlement**") between and among the Debtor, the Sponsor, and the Notes Trustee, settling and resolving all current disputes arising out of or relating to the Plan, the Investment Agreement, and the MLPSA. To incorporate the terms of the Revised Settlement, the following modifications, among others, were reflected in the amended Plan provided to Voting Creditors prior to the Voting Deadline:

i.  <u>YG WV Interests as Excluded Assets</u>. I understand the definition of Excluded Assets was revised to clarify that the Debtor's interests in YG WV are Excluded Assets under the Plan and the Investment Agreement and, to the extent such interests have not otherwise been transferred, sold, assigned, or otherwise disposed of by the Debtor prior to the Effective Date in accordance with applicable law, the Debtor's interests in YG WV will vest in Wind-Down Co on the Effective Date. Neither the Debtor nor Wind-

3

      Down Co have any obligation to vest such interests in, or transfer such interests to, the Reorganized Debtor or the Sponsor.[3] *See* Plan § 1.42.

  ii.    <u>Additional Escrowed Funds</u>.  In accordance with the Revised Settlement, the Sponsor provided $4.5 million in Additional Escrowed Funds as an additional deposit, which was reflected in the amended Plan provided to Voting Creditors.  *See* Plan §§ 1.1, 5.1.

  iii.    <u>Revisions to the Sponsor Contribution</u>.  I understand that, pursuant to the Revised Settlement, the Sponsor Contribution was reduced from $60 million cash and New Notes to $43.5 million in cash less certain deductions.  Specifically, it is my understanding that the Sponsor will pay the Debtor $43.5 million in cash on the Effective Date *less* (1) the original $4.5 million in Escrowed Funds which, by agreement of the parties, was utilized by the Debtor as a debtor-in-possession loan, (2) the $4.5 million in Additional Escrowed Funds, (3) any amounts of the $5.2 million in Grand Living Settlement Proceeds utilized by the Debtor or any of its non-debtor subsidiaries prior to the Effective Date, and (4) the $2.5 million from the settlement of the dispute between the Sponsor and the Series C Notes Trustee over the MLPSA deposit, which amount will be paid by the Escrow Agent to the Debtor on the Effective Date in accordance with the MLPSA Settlement.  In addition, no New Notes will be issued as part of the Revised Sponsor Contribution and there will be no Purchase Price Adjustment under the Plan or the Investment Agreement.  *See* Plan §§ 1.106, 5.1, 5.2, 5.4.

    7.    Certain portions of the Revised Settlement were approved by the Court by order dated December 19, 2022 [ECF No. 301] (the "**9019 Order**").

    8.    The terms of the Revised Settlement and the modifications to the Plan were described in a third supplement to the Debtor's approved Disclosure Statement, dated December 9, 2023 [ECF No. 290] (the "**Third Disclosure Statement Supplement**").  I understand the amended Plan and the Third Disclosure Statement Supplement were served on holders of claims in the Voting Class on December 21, 2022.  The Debtor also published Hebrew translations of those documents to a website maintained for the Noteholders on or about December 29, 2023.

---

[3] As disclosed in the Plan Supplement, the Debtor amended and restated the YG WV LLC agreement on January 3, 2023, a true and correct copy of which is annexed hereto as **Exhibit A**.

4

**The Amended Plan Satisfies the Requirements for Confirmation**

9. I understand that, aside from the modifications to incorporate the terms of the Revised Settlement, the structure of the Plan and the Plan's treatment of Claims and Interests remains otherwise unchanged.

10. As noted in my Original Declaration, on the basis of my understanding of the Plan, as amended, the events that have occurred during the Debtor's Chapter 11 Case, including the Revised Settlement, and the various orders entered during the Chapter 11 Case and the requirements of the Bankruptcy Code, I believe that the Plan continues to satisfy all of the applicable requirements of section 1129(a) of the Bankruptcy Code.

11. In particular, and notwithstanding the revisions to the Sponsor Contribution as a result of the Revised Settlement, I believe that the Plan continues to satisfy the requirements of the "best interests" test under section 1129(a)(7) of the Bankruptcy Code and the feasibility requirements under section 1129(a)(11) of the Bankruptcy Code.

12. <u>Bankruptcy Code Section 1129(a)(7)</u>.  As set forth in my Original Declaration, I understand the Bankruptcy Code requires that, with respect to each impaired Class of Claims and Interests, each holder of a claim or equity interest must either (a) accept the Plan or (b) receive or retain under the Plan property having a present value, as of the Effective Date of the Plan, that is not less than the amount such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.  Notwithstanding the reduction in the Sponsor Contribution under the Investment Agreement as a result of the Revised Settlement from $60 million in cash and New Notes to $43.5 million in cash (less certain deductions set forth in the Investment Agreement), I believe that, under the Plan, all holders of impaired Allowed Claims and Interests will receive property with a value not less than the value such holder would receive in a liquidation under chapter 7 of the Bankruptcy Code.

13. As set forth in the Liquidation Analysis annexed as Exhibit H to the Disclosure Statement, the amount of proceeds available for distribution to the holders of Allowed Class 4 Remaining Unsecured Claims in a chapter 7 liquidation is estimated to range from $0 on the low end to a maximum amount of approximately $29.1 million in the high end scenario.[4] The Plan, however, as amended to reflect the Revised Settlement, provides approximately $43.5 million in cash to Class 4 Claimants (less certain deductions). Specifically, after accounting for (i) the $4.5 million in Escrowed Funds, which have been utilized by the Debtor as a debtor-in-possession loan, and (ii) the $5.2 million in Grand Living Settlement Proceeds, some or all of which the Debtor anticipates utilizing during the remainder of the Chapter 11 Case to maintain its operations and the operations of its non-debtor subsidiaries, the Debtor anticipates that at least $34 million in cash will be available from the revised Sponsor Contribution under the Investment Agreement for distribution to the holders of Allowed Class 4 Claims.

14. As the treatment of all other Classes of Claims and Interests remains unchanged under the amended Plan, I understand that all other Classes of Claims or Interests will receive at least as much under the Plan as they would in a hypothetical chapter 7 liquidation scenario. Accordingly, I believe that the Plan, as amended, satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

15. <u>Bankruptcy Code Section 1129(a)(11)</u>. I understand that section 1129(a)(11) of the Bankruptcy Code requires the Court determine the Plan is feasible as a condition

---

[4] Under the Liquidation Analysis annexed to the Disclosure Statement, which assumed a liquidation date of September 30, 2022, all or substantially all of the $5.2 million in Grand Living Settlement Proceeds was assumed to be available for distribution to holders of Allowed Claims under a hypothetical chapter 7 liquidation. Due to the extended timeline of the Chapter 11 Case, the Debtor anticipates utilizing the Grand Living Settlement Proceeds to fund its operations and the operations of its non-debtor subsidiaries during the remainder of the Chapter 11 Case. Accordingly, some or all of the Grand Living Settlement Proceeds will no longer be available for distribution to holders of Allowed Claims in a chapter 7 liquidation, which would further reduce the estimated recoveries to holders of Allowed Class 4 Remaining Unsecured Claims under a hypothetical chapter 7 liquidation.

WEIL:\98974341\6\12817.0007

precedent to confirmation. As set forth in the Original Declaration, the Plan is premised on the consummation of the Investment Agreement. I continue to believe the Investment Agreement has a strong likelihood of closing because, as a result of the Revised Settlement, certain portions of which were approved by the Court pursuant to the 9019 Order, the Debtor, the Sponsor, and the Notes Trustee have resolved all of their current disputes related to the Plan, the Investment Agreement, and the MLPSA. The Sponsor has committed to moving forward and closing under the Plan and the Investment Agreement, which I understand is binding and enforceable on the parties in accordance with its terms. The Sponsor's commitment to close on the Plan and Investment Agreement is further evidenced by the payment of $4.5 million in cash to the Escrow Agent as an additional deposit amount on December 21, 2022. Accordingly, I believe that the Plan, as amended, satisfies the "feasibility" requirements of section 1129(a)(11) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.


By: */s/ Assaf Ravid*
Name:  Assaf Ravid
Title:  Authorized Manager

# Exhibit A

**Amended and Restated Limited Liability Company Agreement of YG WV LLC**

# AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## YG WV LLC

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of YG WV LLC (the "Company") is entered into as of January 3, 2023, by All Year Holdings Limited, a British Virgin Islands Company, as the sole member of the Company (the "Member").

W I T N E S S E T H:

WHEREAS, the Company was formed as a limited liability company pursuant to and in accordance with the New York Limited Liability Company Law, as amended from time to time (the "Act") by filing the Company's Articles of Organization with the Secretary of State of the State of New York on January 31, 2017;

WHEREAS, the Member entered into that certain Limited Liability Company Agreement of YG WV LLC dated as of February 28, 2017 (the "Prior Agreement");

WHEREAS, under the Prior Agreement, the authority of Yoel Goldman, as organizer, to execute, deliver and file the Articles of Organization of the Company with the Secretary of State of New York was confirmed and such filing was ratified and approved;

WHEREAS, the Member commenced bankruptcy proceedings under chapter 11 of the Bankruptcy Code on December 14, 2021;

WHEREAS, pursuant to the Member's plan of reorganization (the "Plan")[1], the membership interest in the Company will vest in Wind-Down Co. upon the Effective Date;

WHEREAS, the Member desires to amend and restate the Prior Agreement.

NOW THEREFORE, in consideration of the investments and of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Member agrees as follows:

---

[1] *Third Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited*, Case No. 21-12051 (MG) (Bankr. S.D.N.Y. Dec. 9, 2022) [Dkt. No. 289].

# ARTICLE 1

# FORMATION AND TERM

1.1    Name.  The name of the limited liability company is **YG WV LLC**.

1.2    Reserved.

1.3    Principal Business Office.  The principal business office of the Company shall be located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211 or at such other location as may hereafter be determined by the Member.

1.4    Registered Office and Agent.  The address of the registered office of the Company in the State of New York is 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

1.5    Term.  The term of the Company commenced on the date of its formation and shall have a perpetual existence, unless the Company is dissolved before such date in accordance with the provisions of Article IX of this Agreement.

# ARTICLE 2

# PURPOSE AND POWERS OF THE COMPANY

2.1    Purpose.  The Company is formed for the primary purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful activity for which limited liability companies may be formed under the Act, including without limitation, the ownership of 50% of the membership interests in WYTHE BERRY MEMBER LLC, a Delaware limited liability company ("Propco Member") which entity owns l00% of the membership interests in WYTHE BERRY FEE OWNER LLC, a Delaware limited liability company ("Propco"), the fee owner of that certain property known as 94 North 13th Street, Brooklyn, New York and 121 North 12th Street, Brooklyn, New York (collectively, the "Property"), and to otherwise engage in any lawful activities necessary and incidental to and/or contemplated by the foregoing.

2.2    Powers.  In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have the power and is hereby authorized to take any and all actions necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purposes set forth in Section 2.1.

# ARTICLE 3

# MEMBERSHIP

3.1    Member.  The Member shall have the sole power and authority to (i) act for or on behalf of, or to bind, the Company, (ii) control the day-to-day management or the operation or control of the business and affairs of the Company, (iii) be an agent of the Company, (iv) transact any business in the name of the Company, and (v) act as manager of the Company.

3.2     Authorized Signatory.  The Member hereby appoints Assaf Ravid as the Authorized Signatory of the Company with the power to bind the Company, open bank accounts on behalf of the Company and manage the operations of the Company and Propco Member, all under the direction of and subject to the authority of the Member.

3.3     Capital Contributions.  The Member has not made contributions of capital to the Company as of the date hereof. The Member shall not be obligated to make any capital contributions to the Company but may, in its sole discretion, make additional capital contributions to the Company from time to time.

3.4     Assignability of Membership Interests.  The Member shall be permitted to assign its entire membership interest in the Company to any party, as determined in the Member's sole discretion.  For the avoidance of doubt, Wind-Down Co. shall be deemed to be and shall become an assignee and sole member of the Company, with all attendant rights and responsibilities of a member, upon the Effective Date of the Plan.

3.5     Effect of Assignment of Membership Interests.

(i)     The death, retirement, resignation, expulsion, bankruptcy or dissolution of any member shall not constitute an event that terminates the continued membership of any member or cause the limited liability company to be dissolved or its affairs to be wound up.

(ii)    An assignee of a membership interest may become a member with the sole consent of the member who assigned or proposes to assign such membership interest.

(iii)   An assignee of a membership interest becomes a member on the effective date of the assignment of such membership interest.

# ARTICLE 4

# ALLOCATION OF PROFITS AND LOSSES; DISTRIBUTIONS

4.1     Allocation of Profits and Losses.  The Company's profits and losses shall be allocated in a manner determined by the Member.

4.2     Distributions.  Distributions of cash or property shall be made at such times and in such amounts as determined by the Member.

# ARTICLE 5

# ADMINISTRATIVE MATTERS

5.1     Sole Member.  The Member is the sole member of the Company. Accordingly, the Company shall be disregarded for U.S. federal income tax purposes and the assets and liabilities and items of income and gain and loss and deduction shall be treated as the assets and liabilities

and items of income and gain and loss and deduction of the Member. Unless otherwise determined by the Member, the fiscal year of the Company shall be the calendar year.

## ARTICLE 6

## LIABILITY, EXCULPATION AND INDEMNIFICATION

6.1    <u>Liability</u>.  (a) Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the organizer and the Member of the Company (each a "<u>Covered Person</u>" and collectively "<u>Covered Persons</u>") shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being an authorized person or a Member of the Company.

(b)    Except as otherwise expressly required by law, a Member, in its capacity as a Member of the Company, shall have no liability in excess of (i) the amount of its capital contributions to the Company, (ii) its share of any assets and undistributed profits of the Company, (iii) its obligation to make other payments expressly provided for in this Agreement and (iv) the amount of any distributions wrongfully distributed to it.

6.2    <u>Exculpation</u>.  (a) No Covered Person shall be liable to the Company, any Member or any other person or entity who has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith in connection with the formation of the Company or acting on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.

(b)    A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any person or entity as to matters the Covered Person reasonably believes are within such other person or entity's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits, losses or any other facts pertinent to the existence and amount of assets from which distributions to a Member might properly be paid.

6.3    <u>Indemnification</u>.  To the full extent permitted by applicable law, each Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this <u>Section 6.3</u> shall be

provided out of and to the extent of Company assets only, and no Member shall have personal liability on account thereof.

6.4     Expenses.  To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person in defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in Section 6.3 hereof.

## ARTICLE 7

## DISSOLUTION, LIQUIDATION AND TERMINATION

7.1     Events Causing Dissolution.  The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following:

(i)     the determination of the Member to dissolve the Company; or

(ii)    the entry of a decree of judicial dissolution under the Act.

7.2     Liquidation.  Upon dissolution of the Company, the Member shall carry out the winding up of the Company and shall immediately commence to wind up the Company's affairs; provided, however, that a reasonable time shall be allowed for the orderly liquidation of the assets of the Company and the satisfaction of liabilities to creditors so as to enable the Member to minimize the normal losses attendant upon a liquidation.  The proceeds of liquidation shall be distributed in the following order and priority:

(i)     first, to the creditors of the Company, including any Member if it shall be a creditor to the extent permitted by applicable law, in satisfaction of the liabilities of the Company, whether by payment or by establishment of adequate reserves, except for liabilities for distributions to the Member and any former members;

(ii)    second, to the Member and any former members in satisfaction of liabilities of the Company for distributions; and

(iii)   the balance, if any, to the Member, after giving effect to all contributions, distributions and allocations for all periods.

7.3     Termination.  The Company shall terminate when all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company, shall have been distributed to the Member in the manner provided for in this Article IX and the certificate of formation shall have been canceled in the manner required by the Act.

7.4     Claims of the Members.  The Member and former members shall look solely to the Company's assets for the return of their capital contributions, and if the assets of the Company

remaining after payment of or due provision for all debts, liabilities and obligations of the Company are insufficient to return such capital contributions, the Member and former members shall have no recourse against the Company or any other Member.

       7.5      Actions of Subsidiaries.  The Company shall not cause or consent to the dissolution, winding up or liquidation of the Company, Propco, Propco Member or any of their respective affiliates without the prior written consent of the Member.  The Company has not, and shall not, without the prior written consent of the Member, with respect to itself, Propco, Propco Member or to any other entity in which it has a direct or indirect legal or beneficial ownership interest (A) file a bankruptcy, insolvency or reorganization petition or otherwise institute insolvency proceedings or otherwise seek any relief under any laws relating to the relief from debts or the protection of debtors generally, (B) seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian or any similar official for such entity or for all or any portion of such entity's properties, (C) make any assignment for the benefit of such entity's creditors or (D) take any action that might cause such entity to become insolvent; has remained and intends to remain solvent and has maintained and intends to maintain adequate capital in light of its contemplated business operations.

## ARTICLE 8

## MISCELLANEOUS

       8.1      Separability of Provisions.  Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

       8.2      Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement.

       8.3      Entire Agreement.  This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior understandings or agreements between the parties.

       8.4      Governing Law.  This Agreement shall be governed by, and construed under, the laws of the State of New York (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

       8.5      Amendments.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, the undersigned, being the sole Member of the Company, intending to be legally bound hereby, have duly executed this Agreement as of the date first set forth above.

**Member:**

All Year Holdings Limited

_____
Name: Assaf Ravid
Title: Chief Restructuring Officer and
        Authorized Manager

IN WITNESS WHEREOF, the undersigned, being the sole Member of the Company, intending to be legally bound hereby, have duly executed this Agreement as of the date first set forth above.

**Member:**

All Year Holdings Limited

_____
Name: Ephraim Diamond
Title: Associate Restructuring Officer and Authorized Manager