UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                      :

In re                         :      Chapter 11
                                        :

ALL YEAR HOLDINGS LIMITED,   :      Case No. 21-12051 (MG)
                                        :

               Debtor.[1]        :
                                        :

Fed. Tax Id. No. 98-1220822        :
------------------------------------------------------------X

## FINDINGS OF FACT, CONCLUSIONS OF LAW,
## AND ORDER CONFIRMING THIRD AMENDED CHAPTER 11 PLAN
## OF REORGANIZATION OF ALL YEAR HOLDINGS LIMITED

All Year Holdings Limited (the "**Debtor**"), as debtor and debtor in possession in

the above-captioned chapter 11 case (the "**Chapter 11 Case**"), and as "proponent of the plan"

within the meaning of section 1129 of title 11 of the United States Code (the "**Bankruptcy Code**"),

having proposed and filed:

    i.    the *Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated May 31, 2022 [ECF No. 123] (as modified and amended on September 15, 2022 [ECF No. 214], November 4, 2022 [ECF No. 256], and December 9, 2022 [ECF No. 289], and as may be further modified, amended, or supplemented from time to time in accordance with the terms thereof, and together with all exhibits and schedules thereto, the "**Plan**"),[2] a copy of which is annexed hereto as **Exhibit A**;

    ii.    that certain supplement to the Plan, dated and filed with this Court on January 3, 2023 [ECF No. 312] (as the documents contained therein may be further amended, modified, restated, or supplemented, the "**Plan Supplement**"); and

    iii.    the *Second Amended Disclosure Statement for Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated July 20, 2022 [ECF No. 157] (as supplemented by those certain disclosure statement supplements, dated September 15, 2022 [ECF No. 215], November 4, 2022 [ECF No. 257], and December 9, 2022 [ECF No. 290] (collectively, the

---

[1]    The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211.

[2]    Capitalized terms used but not herein defined have the meanings ascribed to them in the Plan.

"**Disclosure Statement Supplements**"), and as may be modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Disclosure Statement**");

and the Court having entered the *Order (i) Approving Proposed Disclosure Statement and the Form, Manner, and Sufficiency of Notice of the Disclosure Statement Hearing, (ii) Approving the Proposed Solicitation and Voting Procedures, (iii) Approving Forms of Ballots, Solicitation Packages, and Related Notices, (iv) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures for Confirmation of the Debtor's Chapter 11 Plan, and (v) Granting Related Relief* [ECF No. 160] on July 22, 2022 (the "**Solicitation Procedures Order**"); and the Court having considered the Debtor's opening brief in support of confirmation of the Plan, dated September 15, 2022 [ECF No. 224] and the Debtor's reply to certain objections to confirmation of the Plan, dated January 17, 2023 [ECF No. 327]; and the Court having considered the following affidavits and declarations (the "**Supporting Declarations**"):

     i.    the *Declaration of Assaf Ravid in Support of Confirmation of Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated September 16, 2022 [ECF No. 225] (the "**Ravid Declaration**");

    ii.    the *Declaration of Assaf Ravid Pursuant to Local Bankruptcy Rule 1007-2 in Support of All Year Holdings Limited's Chapter 11 Petition* [ECF No. 4] (the "**First Day Declaration**");

    iii.    the *Declaration of David B. Schechtman in Support of Motion of Parent Debtor Pursuant to 11 U.S.C. §§ 105, 363, and 503(b) and Fed. R. Bankr. P. 2002, 6004, and 9014 for Entry of Order (i) Approving Bid Protections and (ii) Granting Related Relief*, dated March 25, 2022 and filed as Exhibit C to ECF No. 66 (the "**Schechtman Declaration**");

    iv.    the *Declaration of John Burlacu of Donlin, Recano & Company, Inc. Regarding the Tabulation of Votes Cast on Third Amended Chapter 11 Plan of All Year Holdings Limited*, dated January 17, 2023 [ECF No. 329] (the "**Voting Certification**");

    v.    the *Affidavits of Service of Solicitation Materials* [ECF Nos. 205 and 305] (the "**Solicitation Affidavit**");

  vi.  the *Affidavits of Publication* [ECF Nos. 229 and 234] (the "**Publication Affidavits**");

  vii.  the *Affidavit of Service of Plan Supplement* [ECF No. 317] (the "**Plan Supplement Affidavit**");

  viii.  the *Affidavit of Service of Notice of Extended Plan Voting and Objection Deadlines* [ECF No. 318] (the "**Extended Plan Voting and Objection Deadlines Affidavit**"); and

  ix.  *Supplemental Declaration of Assaf Ravid in Support of Confirmation of Third Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited*, dated January 17, 2023 [ECF No. 328] (the "**Supplemental Ravid Declaration**");

and the Court being familiar with the Disclosure Statement and the Plan and other relevant factors affecting the Chapter 11 Case; and the Court being fully familiar with, and having taken judicial notice of, the entire record of the Chapter 11 Case; and upon the arguments of counsel and the evidence proffered and adduced at the Confirmation Hearing; and the Court having found and determined that the Plan should be confirmed as reflected in the Court's rulings made herein and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor; the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

  A.  <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). This Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Chapter 11 Petition. On December 14, 2021 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of unsecured creditors has been appointed in this Chapter 11 Case.

D.      Judicial Notice. This Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court.

E.      Adequacy of the Disclosure Statement. Pursuant to the Solicitation Procedures Order entered on July 22, 2022, the Court approved the Disclosure Statement and found, among other things, that the Disclosure Statement, including the Disclosure Statement Supplements, contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code and authorized the Debtor to solicit votes to accept or reject the Plan. Pursuant to the Solicitation Procedures Order, each of the Disclosure Statement Supplements was deemed approved pursuant to section 1125 of the Bankruptcy Code. Prior to the transmission of the Disclosure Statement, the Debtor did not solicit acceptances of the Plan by any holder of Claims or Interests.

F.   <u>Adequacy of the Solicitation Procedures</u>.

(a)   In accordance with the Solicitation Procedures Order, on September 1, 2022, the Debtor, through its voting agent, Donlin Recano & Company, Inc. (the "**Voting Agent**"), transmitted to each holder of a Claim in Class 4 (Remaining Unsecured Claims) (the "**Voting Class**"), the only class entitled to vote to accept or reject the Plan, a copy of the Solicitation Procedures Order, the Disclosure Statement, the Plan, the Confirmation Hearing Notice and the appropriate form of Ballot (collectively, the "**Solicitation Packages**").  A notice of the revised dates and deadlines with respect to the Confirmation Hearing [ECF No. 303] (the "**Amended Confirmation Hearing Notice**") was transmitted to each holder of a Claim in Class 4 on December 21, 2022.  With respect to the claims held by the Noteholders, the Debtor transmitted one Solicitation Package to the Notes Trustee on September 1, 2022 on account of the Noteholders' Claims in Class 4 (Remaining Unsecured Claims), which included a master Ballot to aggregate the votes for all such claims.  The documents that comprise the Solicitation Packages were also published by the Debtor on the Tel Aviv Stock Exchange for the benefit of individual Noteholders on September 2, 2022, September 7, 2022, and December 20, 2022.  The Debtor transmitted the First Disclosure Statement Supplement to the holders of Claims in Class 4 on September 23, 2022 and the Third Disclosure Statement Supplement to the holders of Claims in Class 4 on December 21, 2022.  The Solicitation Packages, including the Disclosure Statement Supplements, were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002 and 3017, the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), and the procedures set forth in the Solicitation Procedures Order.  The transmittal and service of the Solicitation Packages, including the Disclosure Statement Supplements, complied with the approved Solicitation Procedures, was appropriate and

satisfactory based upon the circumstances of the Chapter 11 Case, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable rules, laws, and regulations.  Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.  The Debtor and, to the extent applicable, its directors, affiliates, agents, financial advisors, professionals, and attorneys are entitled to the protection of section 1125(e) of the Bankruptcy Code.

(b)    On September 4, 2022, the Israeli Court approved the Debtor's motion for approval to convene a meeting of the Noteholders to vote on the transactions contemplated by the Plan and the Plan Investment Agreement (the "**Noteholder Meeting**").  The Noteholder Meeting was held on January 8, 2023 in accordance with the Solicitation Procedures Order, the Deeds of Trust, and otherwise applicable Israeli securities law.

(c)    The voting deadline (the "**Voting Deadline**") was set as 5:00 p.m. (Eastern Standard Time) on January 6, 2023 by notice to all creditors in the Voting Class.  The Voting Deadline was, thereafter, extended to 5:00 p.m. (Eastern Standard Time) on January 10, 2023, by order of the Court dated January 4, 2023 [ECF No. 314], and notice of the extension was provided to all creditors in the Voting Class on January 4, 2023 [ECF No. 318] (the "**Notice of Extended Plan Voting and Objection Deadlines**").  The instructions on the Ballots advised parties in the Voting Class that, for a Ballot to be counted, the Ballot must be properly executed, completed, and delivered to the Voting Agent so that it is received by the Voting Agent no later than the Voting Deadline.  The solicitation period gave holders of Claims in the Voting Class sufficient time to review the Disclosure Statement and Plan and make an informed decision to accept or reject the Plan.  Further, the Debtor filed the Plan Supplement seven days prior to the Voting Deadline to

ensure that all voting parties had sufficient time to review additional materials relating to the Plan that may bear on the manner in which they cast their votes.

(d)      The Debtor was not required to solicit votes from the holders of Claims or Interests in (i) Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), and Class 3 (General Unsecured Claims), as such Classes are unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are presumed to have accepted the Plan, and (ii) Class 5 (Subordinated Securities Claims) and Class 6 (Interests), as such Classes will not receive or retain any property under the Plan and, pursuant to section 1126(g) of the Bankruptcy Code, are deemed to reject the Plan.

G.      <u>Mailing and Publication of Confirmation Hearing Notice</u>.  On September 1, 2022, the Debtor caused to be mailed the Confirmation Hearing Notice to all creditors, interest holders, and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Solicitation Procedures Order, and published a notice substantially similar to the Confirmation Hearing Notice in *The New York Times* (National Edition) in English on September 16, 2022 and in *Haaretz*, an Israeli newspaper, in Hebrew on September 21, 2022, as reflected in the Publication Affidavits.  The Amended Confirmation Hearing Notice was mailed to all creditors, interest holders, and other parties in interest on December 20, 2022. The Notice of Extended Plan Voting and Objection Deadlines was mailed to all creditors, interest holders, and other parties in interest on January 4, 2023, as evidenced by the Extended Plan Voting and Objection Deadlines Affidavit.  Proper, adequate, and sufficient notice of the Confirmation Hearing and the deadline for filing objections to confirmation of the Plan has been given to all known holders of Claims or Interests and all other parties in interest, in accordance with the

Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Solicitation
Procedures Order.  No other or further notice was or shall be required.

H.    <u>Tabulation Results</u>.    As set forth in the Voting Certification, (i)
approximately 92.2% in number and (ii) approximately 96.1% in amount of the Ballots cast by
holders of Claims in Class 4 (Remaining Unsecured Claims) voted to accept the Plan in advance
of the Voting Deadline.    Accordingly, pursuant to the requirements of section 1126 of the
Bankruptcy Code, the Voting Class has accepted the Plan.

I.    <u>Plan Supplement</u>.    On January 3, 2023, the Debtor filed the Plan
Supplement, consisting of (i) the Plan Administration Agreement, (ii) the identification of the  Plan
Administrator, (iii) the organizational documents for the Reorganized Debtor, (iv) the Wind-Down
Budget for Wind-Down Co, (v) the Schedule of Retained Claims, Rights and Causes of Actions,
(vi) the Schedule of Assumed Contracts, (vii) the Amended Limited Liability Company Agreement
of YG WV LLC, and (viii) a summary of the Wind-Down Co Indemnity Agreements.  The Debtor
caused the Plan Supplement to be served on creditors and parties in interest on January 3, 2023 as
evidenced by the Plan Supplement Affidavit [ECF No. 317].  All such materials comply with the
terms of the Plan, and the filing and notice of such documents was good and proper in accordance
with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Solicitation
Procedures Order and all other applicable rules, laws, and regulations, and no other or further
notice is or shall be required.

J.    <u>Modifications of the Plan and Confirmation Dates</u>.  Pursuant to the first,
second, and third amendments to the Plan [ECF Nos. 214, 256, and 289], the Debtor made certain
amendments and modifications to the Plan, in accordance with the Plan Investment
Agreement.  The amendments and modifications to the Plan were made prior to the

commencement of solicitation of votes on the Plan and, in accordance with the Solicitation Procedures Order, the Debtor served the amended versions of the Plan and the Disclosure Statement Supplements, which set forth, among other things, the modifications to the Plan, on holders of Claims in the Voting Class. None of the amendments and modifications require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes to accept or reject the Plan under section 1126 of the Bankruptcy Code. The Plan as amended and modified shall constitute the Plan submitted for confirmation.

K.      <u>Bankruptcy Rule 3016(a)</u>.  In accordance with Bankruptcy Rule 3016, the Plan is dated and identifies the Debtor as the proponent of the Plan.

L.      <u>Burden of Proof</u>.  The Debtor has satisfied its burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

**<u>Compliance with Requirements of Section 1129 of Bankruptcy Code</u>**

M.      <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code and thereby satisfies section 1129(a)(1) of the Bankruptcy Code.

(i)      <u>Designation of Classes or Interests (11 U.S.C. §§ 1122, 1123(a)(1))</u>. In addition to Administrative Expense Claims (Section 2.1 of the Plan), Fee Claims (Section 2.2 of the Plan), and Priority Tax Claims (Section 2.3 of the Plan), which need not be classified, Article III of the Plan designates six Classes of Claims against or Interests in the Debtor. The Claims or Interests placed in each Class are substantially similar to the other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims or Interests created under the Plan, and such

Classes do not unfairly discriminate between holders of Claims or Interests.  The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Articles III and IV of the Plan specify that holders of Claims against, or Interests in, the following Classes are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code (collectively, the "**Unimpaired Classes**"): Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), and Class 3 (General Unsecured Claims).   The Plan, therefore, satisfies section 1123(a)(2) of the Bankruptcy Code.

(iii)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles III and IV of the Plan designate holders of Claims or Interests in the following classes as impaired within the meaning of section 1124 of the Bankruptcy Code (collectively, the "**Impaired Classes**"): Class 4 (Remaining Unsecured Claims), Class 5 (Subordinated Securities Claims), and Class 6 (Interests).  The Plan, therefore, satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

(iv)     No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)     Implementation of Plan (11 U.S.C. § 1123(a)(5)).   The Plan, including the various documents and agreements set forth in the Plan Supplement, provide adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, through, among other things, (a) the consummation of the Plan Investment Agreement, (b) the provisions governing the Sponsor Contribution, and the

distributions under the Plan, (c) the administration of Wind-Down Co in accordance with Section 5.3 of the Plan, (d) the consummation and implementation of the BVI Plan of Arrangement in the BVI Proceeding, (e) the appointment of the Plan Administrator, and (f) the authorization for all actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case, in accordance with and subject to the terms of the Plan.

(vi)    Charter Provision Prohibiting Issuance of Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)).  The organizational documents for the Reorganized Debtor contained in the Plan Supplement provide that the Reorganized Debtor shall not issue any non-voting equity interests, unless and solely to the extent permitted by section 1123(a)(6) of the Bankruptcy Code.

(vii)    Selection of Officers and Trustees (11 U.S.C. § 1123(a)(7)). Pursuant to Section 5.3 of the Plan, on the Effective Date, the Plan Administrator will be appointed by the Notes Trustee, on behalf of the Noteholders, the key creditor constituency in Class 4 (Remaining Unsecured Claims) which has the greatest interest in the amounts recovered, if any, from the Excluded Assets (including, but without limitation, from the prosecution of Avoidance Actions and other Causes of Action) and any remaining Wind Down Cash Funding.  Pursuant to Section 5.5 of the Plan, the officers and directors of the Reorganized Debtor were selected by the Sponsor, who will hold or control 100% of the shares of the Reorganized Debtor upon the Effective Date.  Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code are satisfied.

(viii)    Impairment/Unimpairment of Classes of Claims or Interests (11 U.S.C. § 1123(b)(1)).  As contemplated by section 1123(b)(1) of the Bankruptcy Code, and pursuant to section 1124 of the Bankruptcy Code, Articles III and IV of the Plan classify and describe the treatment for each of the Unimpaired Classes and Impaired Classes for the Debtor.

(ix)    <u>Treatment of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>. In accordance with sections 365(b) and 1123(b)(2) of the Bankruptcy Code, Section 8.1 of the Plan provides all executory contracts and unexpired leases to which the Debtor is a party are deemed rejected, unless such contract or lease (i) is specifically designated by (x) the Reorganized Debtor or (y) Wind-Down Co as a contract or unexpired lease to be assumed or assumed and assigned on the Schedule of Assumed Contracts to be filed with the Plan Supplement; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) was previously assumed, assumed and assigned, or rejected pursuant to a Final Order of the Bankruptcy Court; (iv) is the subject of a motion to assume, assume and assign, or reject filed by the Debtor on or before the date hereof; or (v) is identified in Section 8.4 of the Plan.

(x)    <u>Retention of Causes and Actions/Reservation of Rights (11 U.S.C. § 1123(b)(3))</u>. As permitted by section 1123(b)(3)(B) of the Bankruptcy Code, the Plan provides for the retention of Avoidance Actions and other Causes of Action by the Reorganized Debtor and Wind-Down Co, as set forth in Sections 6.15 and 10.1 of the Plan and the Schedule of Retained Causes of Action.

(xi)    <u>Modification of Rights (11 U.S.C. § 1123(b)(5))</u>. As permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of holders of Claims in the Voting Class and the Non-Voting Impaired Classes and leaves unaffected the rights of holders of Claims in each of the Debtor's Unimpaired Classes.

(xii)    <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>. The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and applicable law, including the release, discharge, injunction and exculpation provisions set forth in Article IX of the Plan and the Court's retention of jurisdiction over all

matters arising in and related to the Chapter 11 Case set forth in Article XI, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(xiii)   <u>Debtor is Not an Individual (11 U.S.C. § 1123(c))</u>.  The Debtor is not an individual and, accordingly, section 1123(c) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

N.   <u>Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtor has complied with the applicable provisions of the Bankruptcy Code.

O.   The Debtor is an eligible debtor under section 109 of the Bankruptcy Code.

P.   The Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Bankruptcy Rules, the Solicitation Procedures Order, applicable non-bankruptcy law and all other applicable laws, rules, and regulations in transmitting the Plan, the Plan Supplement, the Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating the votes on the Plan.

Q.   <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtor's good faith is evident from the facts and record of this Chapter 11 Case, the Disclosure Statement (including the Disclosure Statement Supplements), the Supporting Declarations, the Confirmation Hearing, and the other proceedings held in this Chapter 11 Case.  The Plan, which seeks to implement the Plan Investment Agreement, was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate for the benefit of all parties in interest.  The Plan (including all documents necessary to effectuate the Plan), the Plan Investment Agreement, and the Definitive Documents were negotiated in good faith and at arms' length among the Debtor, the Sponsor, and the Notes Trustee,

on behalf of the Noteholders.  The Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms' length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration, and necessary for the success of the Chapter 11 Case.  Further, the Plan, including the vesting of the Debtor's membership interests in YG WV to Wind-Down Co on the Effective Date, complies with the applicable provisions of the New York Limited Liability Company Law (the "**NYLLCL**"), including Sections 603(a), 701(a), and 701(b) of the NYLLCL, and the Amended and Restated YG WV LLC Operating Agreement and does not violate the Wythe Berry Fee Member LLC Agreement, and section 1123(a)(5) of the Bankruptcy Code provides the Debtor with the means to implement the Plan notwithstanding otherwise applicable nonbankruptcy law.

R.    <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  Any payment made or to be made by the Debtor for services or for costs and expenses of the Debtor's professionals in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, is subject to the approval of this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

S.    <u>Identity of the Plan Administrator (11 U.S.C. § 1129(a)(5))</u>.  The Debtor disclosed (i) the identities and affiliations of the individuals proposed to serve as directors and officers of the Reorganized Debtor in the Disclosure Statement, and (ii) the identity, affiliations, and compensation of the Plan Administrator for Wind-Down Co in the Plan Supplement.  The Debtor has, therefore, complied with section 1129(a)(5) of the Bankruptcy Code.

T.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  The Plan does not provide for rate changes by the Debtor.  Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Case.

U.     <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis included in the Disclosure Statement (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that each holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

V.     <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  The legal, equitable, and contractual rights of Holders of Claims or Interests in the Unimpaired Classes are unaltered by the Plan and, therefore, are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  As set forth in the Voting Certification, the Voting Class has voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code.

W.     <u>Treatment of Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Allowed Administrative Expense Claims (including, without limitation, Allowed Fee Claims and any Allowed Claims arising under any debtor-in-possession financing provided to the Debtor) pursuant to Section 2.1 of the Plan, satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Priority Non-Tax Claims, pursuant to Section 4.1 of the Plan, satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.  The treatment of Priority Tax

Claims, pursuant to Section 2.3 of the Plan, satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

X.    <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  The Voting Class is impaired and has voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

Y.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The information in the Disclosure Statement, the Disclosure Statement Supplements, and the Supporting Declarations (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that there is a more than reasonable prospect that the Debtor will be able to meet its financial obligations under the Plan, including the payment of Allowed Administrative Expenses, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Z.    <u>Payment of Statutory Fees (11 U.S.C. § 1129(a)(12))</u>.  Notwithstanding anything to the contrary set forth in the Plan, all fees payable under section 1930 of title 28, United States Code, together with interest, if any, under section 3717 of title 31, will be paid on the Effective Date or thereafter as may be required pursuant to Section 12.1 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

AA.    <u>No Employee Compensation Plans (11 U.S.C. § 1129(a)(13))</u>.  The Debtor does not have any employees and, therefore, does not maintain any employee compensation or benefit plans.  Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

BB.    <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.  The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support

obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

CC.    <u>Debtor Is Not an Individual (11 U.S.C. § 1129(a)(15))</u>.  The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

DD.    <u>No Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>.  The Debtor is a moneyed, business, and/or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

EE.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>. Holders of Claims or Interests in Class 5 (Subordinated Securities Claims) and Class 6 (Interests) (collectively, the "**Non-Voting Impaired Classes**") will not receive or retain any property on account of their Interests or Claims and, as such, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that such holders are impaired and are deemed to have rejected the Plan because the Claims and Interests in the Non-Voting Impaired Classes are legally distinct in their respective legal nature from Claims and Interests in all other Classes and no holders of Claims or Interests junior to such classes, if any, are receiving any distributions under the Plan.  Based upon the evidence proffered, adduced, and presented by the Debtor at the Confirmation Hearing and the Ravid Declaration, the Plan does not discriminate unfairly against and is fair and equitable with respect to the Non-Voting Impaired Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.  Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

17

FF.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Plan is the only plan filed in this Chapter 11 Case, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

GG.    <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act and no governmental entity has objected to the confirmation of the Plan on any such grounds.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

HH.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the Court in the Chapter 11 Case, including evidence presented at the Confirmation Hearing and in the Supporting Declarations, the Debtor and the other Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code.

II.    <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

JJ.    <u>Implementation</u>.  All documents necessary to implement the Plan, including the Plan Investment Agreement, the BVI Plan of Arrangement, the documents contained in the Plan Supplement, the Definitive Documents, and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall, upon completion of documentation

18

and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

KK.    Executory Contracts and Unexpired Leases.    As part of the Plan Supplement, the Debtor filed the Schedule of Assumed Contracts.  The Debtor has exercised reasonable business judgment in determining whether to assume, assume and assign, or reject executory contracts and unexpired leases pursuant to Section 8.1 of the Plan and the Plan Supplement.  The assumption or assumption and assignment of any executory contract or unexpired lease pursuant to Section 8.1 of the Plan and the Plan Supplement shall be legal, valid, and binding upon the Debtor or the Reorganized Debtor or Wind-Down Co, as applicable, and their successors and assigns and all non-Debtor parties and their successors and assigns to such executory contracts or unexpired leases, all to the same extent as if such assumption had been effectuated pursuant to an order of this Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order.  Moreover, the Debtor has cured, or provided adequate assurance that the Debtor, the Reorganized Debtor or Wind-Down Co, or their successors and assigns, as applicable, will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed or assumed and assigned pursuant to the Plan.

LL.    Injunction, Exculpation, and Releases.  This Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code and authority under section 105 of the Bankruptcy Code to approve the injunctions or stays, injunction against interference with the Plan, releases, and exculpation, all as set forth in the Plan, including in Sections 10.5, 10.6, and 10.7 of the Plan, respectively.  As has been established based upon the record in the Chapter 11 Case and the evidence presented at the Confirmation Hearing, such provisions (i) were given in

exchange for good and valuable consideration; (ii) were integral to the agreements among the various parties in interest and are essential to the formulation and implementation of the Plan and the Plan Investment Agreement, as provided in section 1123 of the Bankruptcy Code; (iii) confer substantial benefits on the Debtor's Estate; (iv) are fair, equitable, and reasonable; and (v) are in the best interests of the Debtor, its Estate, and parties in interest. Moreover, failure to implement the injunctions, exculpation, and releases would impair the Debtor's ability to confirm and implement the Plan. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the injunctions, releases, and exculpation set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtor, the Reorganized Debtor, Wind-Down Co, creditors, and other interested parties. The releases of non-Debtors under the Plan are in accordance with the Plan Investment Agreement and are consensual and limited in scope as they only affect the stakeholders involved in the Debtor's reorganization efforts and the formulation of the Plan. The exculpations granted under the Plan are reasonable in scope as the exculpation provision does not relieve any party of liability for an act or omission to the extent such act or omission is the result of willful misconduct or gross negligence. The record of the Confirmation Hearing and the Chapter 11 Case is sufficient to support the injunctions, releases, and exculpation provided for in the Plan, including Sections 10.5, 10.6, and 10.7 of the Plan. Accordingly, based upon the record of the Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the injunctions, exculpation, and releases set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law. The mutual releases provided in Section 10.6(b) of the Plan shall be granted only to (a) the Debtor and the Reorganized Debtor; (b) the Notes Trustee and its representatives and advisors; (c) the Noteholders and their representatives and advisors; (d) the

Sponsor and its agents, officers, directors, principals, affiliates, representatives and advisors; (e) any current or former Chief Restructuring Officer or Associate Restructuring Officer of the Debtor; (f) any independent directors appointed to the board of the Debtor on or after January 1, 2021; (g) the JPLs; (h) the Authorized Managers; and (i) any advisors retained by the Debtor in connection with the Chapter 11 Case on or after December 29, 2020 (but not including Dov Tratner or Tratner and Associates PLLC). The Released Parties shall not include Yoel Goldman or Tzipporah Goldman in any capacity.

MM. <u>Releases under Plan Investment Agreement</u>. The rights and obligations of the parties provided in connection with the releases set forth in Section 7.02 of the Plan Investment Agreement and the waivers and releases set forth in the MLPSA Settlement Agreement are in addition to the rights and obligations provided in Section 10.6 of the Plan.

NN. <u>Good Faith</u>. The Debtor and the Released Parties will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby, including, among other things, the Plan Investment Agreement, and (ii) take the actions authorized by this Confirmation Order and under the Plan.

OO. <u>Conditions Precedent to Confirmation and Effective Date</u>. Each of the conditions precedent in Section 9.1 and Section 9.2 of the Plan, other than those set forth in Section 9.1(a), Section 9.2(a), and Section 9.2(f), may be waived in writing with the consent of the Debtor, the Notes Trustee, and the Sponsor; *provided, however*, (i) the requirement that this Confirmation Order become a Final Order set forth in Section 9.2(a) may be waived in writing by the Debtor with the consent of the Sponsor and (ii) in the event that any of the Non-Securities Indemnity Claims are estimated in an amount greater than zero dollars ($0) for purposes of allowance or distribution under the Plan, the requirement that the Non-Securities Indemnity Claims be estimated

at zero dollars ($0) for all purposes under the Plan set forth in Section 9.2(f) may be waived in writing by the Notes Trustee in its sole discretion. For the avoidance of doubt, the approval or recognition of the treatment of Subordinated Securities Claims by the courts or regulatory authorities of Israel shall not be a condition precedent to the Effective Date.

PP.    Retention of Jurisdiction.  This Court may properly and, upon the Effective Date, shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, including, without limitation, any rights, Claims, or Causes of Action held by or accruing to the Debtor, the Reorganized Debtor, the Plan Administrator, or Wind-Down Co pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory, including, without limitation, Avoidance Actions, and the other matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

## **ORDER**

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.    Findings of Fact and Conclusions of Law.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.    Confirmation Hearing Notice.  The Confirmation Hearing Notice, the Amended Confirmation Hearing Notice, the Notice of Extended Plan Voting and Objection Deadlines, and the service and publication thereof, complied with the terms of the Solicitation Procedures Order, were appropriate and satisfactory based upon the circumstances of the Chapter

11 Case, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy

Rules, the Local Bankruptcy Rules, and the Solicitation Procedures Order.

3.      <u>Confirmation of Plan</u>.  The Plan and each of its provisions shall be, and

hereby are, CONFIRMED under section 1129 of the Bankruptcy Code.  The documents contained

in or contemplated by the Plan and the Plan Supplement, including, without limitation, the Plan

Investment Agreement and the Definitive Documents, are authorized and approved in all respects.

The terms of the Plan, all exhibits thereto, and the Plan Supplement are incorporated by reference

into and are an integral part of this Confirmation Order.

4.      <u>Objections and Reservations of Rights</u>.  All objections to confirmation of

the Plan that have not been withdrawn, waived, or settled, and all reservations of rights included

therein, are overruled on the merits for the reasons stated on the record of the Confirmation

Hearing.

5.      <u>Binding Effect</u>.  As of the Effective Date, the Plan shall bind all holders of

Claims against and Interests in the Debtor and their respective successors and assigns,

notwithstanding whether any such holders (a) are Impaired or Unimpaired under the Plan; (b)

are presumed to accept or deemed to reject the Plan; (c) failed to vote to accept or reject the Plan;

(d) voted to reject the Plan; or (e) will receive any distribution under the Plan; *provided, however*,

that the mutual releases set forth in Section 10.6(b) of the Plan shall only be binding on the parties

set forth therein, as modified by Paragraph LL of this Confirmation Order.

6.      <u>Implementation of Plan</u>.

(a)      Upon the Effective Date, all actions contemplated by the Plan (whether to

occur before, on, or after the Effective Date) shall be deemed authorized and approved in all

respects, in each case, in accordance with and subject to the terms hereof, subject to any necessary

approvals in the BVI Proceeding. All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtor, the Reorganized Debtor, and Wind-Down Co, and any corporate or limited liability company action required by the Debtor, the Reorganized Debtor, or Wind-Down Co, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the JPLs, the Authorized Managers, or the directors, managers, or officers of the Debtor, the Reorganized Debtor, or Wind-Down Co, subject to any necessary approvals in the BVI Proceeding. On or (as applicable) before the Effective Date, the Authorized Managers, and the authorized officers of the Debtor, the Reorganized Debtor, or Wind-Down Co, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor or Wind-Down Co, as applicable, including, but not limited to any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by Section 5.7 of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

(b)      On the Effective Date, in accordance with the Plan and the Plan Investment Agreement, subject to the satisfaction or waiver of all applicable conditions under the terms thereof: (A) the Sponsor (or its designees) shall (i) provide the Sponsor Contribution, *less* (1) the Escrowed Funds, (2) the Additional Escrowed Funds, (3) the amount of Grand Living Settlement Proceeds utilized by the Debtor or its non-Debtor subsidiaries prior to the Effective Date, and (4) the MLPSA Settlement Amount, as provided in the Plan Investment Agreement; (ii) direct the Escrow Agent (as defined in the MLPSA Settlement Agreement) to release the MLPSA Settlement Amount to the Debtor as part of the Sponsor Contribution; and (iii) be the sole shareholder of the

Reorganized Debtor, and on the Effective Date, shall hold 100% of the NewCo Shares free and clear of all Claims and Liens; and (B) the Disbursing Agent (on behalf of the Debtor) shall distribute Pro Rata the Class 4 ED Distribution to (x) the holders of Remaining Unsecured Claims that are Allowed as of the Effective Date, and (y) the Disbursing Agent, to be held in the Class 4 Disputed Claims Reserve, on behalf of holders of Disputed Remaining Unsecured Claims.

(c)    The terms of the Plan Investment Agreement, as modified and amended by each of the amendments thereto and the Settlement Order, are fully incorporated herein and shall be binding and enforceable against the parties thereto, including, without limitation, the releases and indemnities set forth in Section 7.02(b) of the Plan Investment Agreement. Neither the Reorganized Debtor nor the Sponsor shall have any liability for (i) Fee Claims, (ii) any amounts owed to any current officers or current directors of the Debtor or those serving in similar capacities for the period up to and including the Effective Date, or (iii) any payment to holders of Class 4 Remaining Unsecured Claims or any Subordinated Securities Claim.

(d)    On or as soon as practicable after the Effective Date, the Reorganized Debtor and Wind-Down Co may take such actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, subject in all respects to the provisions of the Plan and the rights vested in the Notes Trustee, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, transition services, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation

on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (iv) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law or to reincorporate in another jurisdiction.

(e)    For the avoidance of doubt, Excluded Assets to vest in Wind-Down Co under the Plan on the Effective Date means (a) any and all of the Debtor's direct or indirect rights (including the right to receive any income or proceeds) in and to (i) any collateral securing the Series C Notes and Series E Notes, (ii) the Debtor's membership interests in YG WV LLC, and (iii) the assets described in the agreements among the Debtor, DCP All Year Pref Equity LLC and DCP Kings Point LLC, including, without limitation, any membership interests in All Year Holdings Common LLC; (b) any and all claims and Causes of Action, whether known or unknown, contingent, liquidated or disputed, that the Debtor, the Noteholders, or the Notes Trustee may have against any third-parties, including, but not limited to, any current or prior officer, director, advisor, representative, consultant, or shareholder of the Debtor (subject to the releases provided in Section 7.02 of the Plan Investment Agreement), other than any claims and Causes of Action that the Debtor may have with respect to whether or not Yoel Goldman or Tzipporah Goldman have any ownership interests in any of the Transferred Entities (as defined in the Plan Investment Agreement), which shall be retained by the Reorganized Debtor and the Reorganized Debtor shall be authorized to assert any and all claims arising under any applicable law to recover any properties or property interests listed on the Schedule of Transferred Entities; (c) those certain Series D debentures of the Debtor held by All Year Holdings Funding LLC; and (d) those assets vested in

Wind-Down Co pursuant to the Plan. For the avoidance of doubt, the rights and claims in (i) the settlement agreement with regard to MY 2011 Grand LLC et al as approved by US Bankruptcy court on October 25, 2021 (case No. 19-23957 (RDD)) and the Grand Living Settlement Proceeds, subject to Sections 3.02(a) and 6.01 of the Plan Investment Agreement, and (ii) the Lofts on Devoe LLC shall not be Excluded Assets. For the avoidance of doubt, the Debtor's membership interests in YG WV LLC shall be Excluded Assets under the Plan and the Plan Investment Agreement and, to the extent such membership interests have not otherwise been transferred, sold, assigned, or otherwise disposed of by the Debtor prior to the Effective Date in accordance with applicable law, the Debtor's interests in YG WV LLC shall vest in Wind-Down Co on the Effective Date. Neither the Debtor nor Wind-Down Co shall have any obligation to vest such interests in, or transfer such interests to, the Reorganized Debtor or the Sponsor.

7.    <u>Cancellation of Existing Securities and Agreements</u>.

(a)    On the Effective Date, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases that shall be assumed by the Reorganized Debtor or assumed and assigned to Wind-Down Co under the Plan, and subject to consummation of the BVI Plan of Arrangement and any other necessary approvals in the BVI Proceeding, all agreements, instruments, and other documents evidencing or issued pursuant to the Notes, or any indebtedness or other obligations thereunder, and any Interests, and any rights of any holder in respect thereof, shall be deemed cancelled, discharged, and of no force or effect against the Debtor, the Reorganized Debtor, or Wind-Down Co, as applicable, and the obligations of the Debtor or Reorganized Debtor thereunder shall be deemed fully satisfied, released, and discharged.

(b)       Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtor as a result of the cancellations, terminations, satisfaction, releases, discharges, or transactions provided for in the Plan shall be deemed null and void and shall be of no force and effect.  Nothing contained in the Plan shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtor or any of its counterparties under any executory contract or lease to the extent such executory contract or lease has been assumed or assumed and assigned  pursuant to a Final Order of the Bankruptcy Court or hereunder.

8.       Cancellation of Liens.  Except as otherwise specifically provided in the Plan, upon the payment in full in Cash of a Secured Claim, any Lien securing such Claim, shall be deemed released, and the holder of such Secured Claim shall be directed to release any collateral or other property of the Debtor or the Reorganized Debtor held by such holder and to take such actions as may be requested by the Debtor, the Reorganized Debtor or the Plan Administrator, as applicable, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtor or the Reorganized Debtor.

9.       Distributions.  The Disbursing Agent shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.  The Reorganized Debtor shall make all distributions with respect to all Unimpaired Claims in the ordinary course of business, which Unimpaired Claims shall not be subject to the claims reconciliation procedures set forth in the Plan, and the Reorganized Debtor shall satisfy, dispute, pursue, or otherwise reconcile each Unimpaired Claim in the ordinary course of business.  The Plan Administrator shall be the Disbursing Agent with respect to all other Claims to be satisfied,

disputed, pursued, or otherwise reconciled in accordance with the Plan. The procedures set forth in the Plan regarding the distributions to be made under the Plan and the appointment and powers of the Disbursing Agent, including, without limitation, the procedures set forth in Article VI of the Plan, are approved in their entirety.

10. <u>Procedures for Disputed Claims</u>. The procedures governing the reconciliation of Disputed Claims, including, without limitation, those set forth in the provisions regarding the allowance, disallowance, estimation, settlement, and objections to Disputed Claims in Article VII of the Plan, are approved in their entirety.

11. <u>Setoff and Recoupment</u>. Pursuant to Section 6.15 of the Plan, the Reorganized Debtor, solely as to Unimpaired Claims, or Wind-Down Co, solely as to the Remaining Unsecured Claims, as applicable, or their designee (including, without limitation, the Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Reorganized Debtor or Wind-Down Co may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law (other than the released Causes of Action); <u>provided</u>, that neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Reorganized Debtor or Wind-Down Co or its successor, of any claims, rights, or Causes of Action that the Reorganized Debtor or Wind-Down Co, or its successor or assign may possess against the holder of such Claim (other than the released Causes of Action).

12. <u>Executory Contracts</u>. Pursuant to Section 8.1(a) of the Plan, as of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed rejected by the Debtor, unless such contract or

unexpired lease (i) is specifically designated (x) by the Reorganized Debtor or (y) by Wind-Down

Co as a contract or unexpired lease to be assumed or assumed and assigned on the Schedule of

Assumed Contracts to be filed with the Plan Supplement; (ii) previously expired or terminated

pursuant to its own terms or by agreement of the parties thereto; (iii) was previously assumed,

assumed and assigned, or rejected pursuant to a Final Order of this Court; (iv) is the subject of a

motion to assume, assume and assign, or reject filed by the Debtor on or before the date hereof; or

(v) is identified in Section 8.4 of the Plan.  Pursuant to Section 8.1(b) of the Plan, subject to the

occurrence of the Effective Date, entry of this Confirmation Order constitutes approval of the

assumption, assumption and assignment, or rejection provided for in the Plan pursuant to sections

365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the

Reorganized Debtor or Wind-Down Co, as applicable, has provided adequate assurance of future

performance under such assumed executory contracts and unexpired leases.  Each executory

contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in

and be fully enforceable by the Reorganized Debtor or Wind-Down Co, as applicable, in

accordance with its terms, except as modified by the provisions of the Plan, any order of this Court

authorizing and providing for its assumption, or applicable law. The organizational documents for

the Debtor's non-debtor subsidiaries are not treated as executory contracts subject to assumption

or rejection under the Plan and will continue in full force and effect and vest in the Reorganized

Debtor on the Effective Date (except with respect to the organizational documents for (i) YG WV

LLC and (ii) All Year Holdings Common LLC and each of its direct and indirect subsidiaries,

which shall vest in Wind-Down Co on the Effective Date).

13.    <u>Assumption Releases</u>.  Assumption and assignment of any executory

contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and

satisfaction of any Claims against the Debtor or defaults by the Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtor assumes, or assumes and assigns, such executory contract or unexpired lease.  In accordance with section 365(k) of the Bankruptcy Code, assumption and assignment of any executory contract or unexpired lease releases the Debtor and the Reorganized Debtor form any liability for breach of such contract or unexpired lease occurring after the Effective Date.  Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired lease.

14.    <u>Professional Compensation</u>.

(a)    All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file and serve on counsel to the Debtor, the U.S. Trustee, counsel to the Notes Trustee, and counsel for the Plan Administrator on or before the date that is forty-five (45) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Petition Date through the Effective Date.  Objections to any Fee Claims must be filed and served on counsel to the Debtor, the U.S. Trustee, counsel to the Notes Trustee, counsel for the Plan Administrator, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtor and the party requesting compensation of a Fee Claim, or as approved by the Court).

(b)      Allowed Fee Claims shall be paid in full, in Cash, by the Plan Administrator in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which an order relating to any such Allowed Fee Claim is entered or as soon as reasonably practicable thereafter; or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtor, Reorganized Debtor or the Plan Administrator. Notwithstanding the foregoing, any Fee Claims that are authorized to be paid pursuant to any administrative orders entered by the Bankruptcy Court may be paid at the times and in the amounts authorized pursuant to such orders.

(c)      No later than 10 days prior to the Effective Date, holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services prior to the Effective Date to the Debtor, the Sponsor and the Notes Trustee, and the Debtor (or Plan Administrator if applicable) shall, subject to the Plan, separately escrow from funds of the Debtor such estimated amounts in a Professional Fees Escrow Account for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties.  If a holder of a Fee Claim does not provide an estimate, the Debtor or the Plan Administrator, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim, and provide notice thereof to the Notes Trustee and the Sponsor.  The Professional Fees Escrow Account shall be treated as a trust account for the benefit of holders of Fee Claims and otherwise subject to the terms of the Plan.  When all such Allowed Fee Claims have been paid in full, any remaining amount in a Professional Fees Escrow Account shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, Wind-Down Co for distribution in accordance with the terms hereof without any further action or order of the Bankruptcy Court.

(d)     The Plan Administrator is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date, including for services rendered or expenses incurred by the professionals of the Debtor or Wind-Down Co, as applicable, in the ordinary course and without the need for Bankruptcy Court approval.

15.     <u>Vesting of Assets</u>.  On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, (i) all Excluded Assets and Wind Down Funding Cash shall be transferred to Wind-Down Co free and clear of all Claims, Liens, encumbrances, charges, and other interests except as provided pursuant to the Plan and this Confirmation Order, and (ii) all Transferred Entities (as defined in the Plan Investment Agreement) and any and all remaining property of the Debtor's Estate, except for the Excluded Assets, shall remain in, or vest in, the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as expressly provided pursuant to the Plan and this Confirmation Order.  On and after the Effective Date, Wind-Down Co, with respect to clause (i) above, and the Reorganized Debtor, with respect to clause (ii) above, may take any action, including, without limitation, the operation of their businesses; the assertion of any Causes of Action; the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether or not in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided in the Plan.  Without limiting the foregoing, each of the Reorganized Debtor and Wind-Down Co, as applicable, may pay the respective charges

that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

16.    <u>Discharge</u>.    Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise expressly provided in the Plan, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities of the Debtor that arose prior to the Effective Date.  Upon the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting against the Debtor, the Reorganized Debtor, or Wind-Down Co any such waived, released or discharged Claim against or terminated Interest in the Debtor.

17.    <u>Retention of Causes of Action/Reservation of Rights</u>.  Except as otherwise provided in Sections 10.5, 10.6 and 10.7 of the Plan or this Confirmation Order, nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of its Estate in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtor.  With respect to Unimpaired Claims, except as otherwise provided in the Plan, the Reorganized Debtor shall have, retain, reserve, and be entitled to assert all rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights in respect of any Unimpaired Claim

may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Case had not been commenced. With respect to Impaired Claims, except as otherwise provided in the Plan, Wind-Down Co shall have, retain, reserve, and be entitled to assert all rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights in respect of any Unimpaired Claim may be asserted after the date of this Confirmation Order and Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

18.     <u>Terms of Injunctions or Stay</u>.  Unless otherwise provided in the Plan, this Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the date of this Confirmation Order, shall remain in full force and effect until the closing of the Chapter 11 Case.

19.     <u>Injunction Against Interference with Plan</u>.  Upon entry of this Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan, provided, however, the foregoing shall not enjoin or prevent any party from taking any action to enforce any rights or obligations granted pursuant to the Plan.

20.     <u>Injunction, Releases, and Exculpation</u>.  For the avoidance of doubt, the injunctions, releases, and exculpation provisions embodied in the Plan, including (a) the Injunction Provision (Section 10.5), (b) the Estate Releases (Section 10.6(a)), (c) the Mutual Releases (Section 10.6(b)), and (d) the Exculpation Provision (Section 10.7), are hereby approved and shall

be effective immediately on the Effective Date, without further order or action by the Court, any of the parties to such releases, or any other Entity.

21.     <u>DCP Transactions</u>.  For the avoidance of doubt, nothing herein, in the Plan or in any of the Plan Supplement documents shall impair, prejudice, modify or otherwise limit (i) the rights or obligations of the parties to the Recapitalization Agreement, the Second A&R LLCA or the MIPA (each as defined in the *Parent Debtor's Motion Pursuant to Bankruptcy Code §§ 105(a) and 363 and Bankruptcy Rule 9019 for Approval of Settlement Providing for Recapitalization of Non-Debtor All Year Equity Partners LLC* [ECF No. 25]) (collectively, the "**DCP Agreements**") or (ii) the *Order Approving Settlement Providing for Recapitalization of All Year Equity Partners LLC* [ECF No. 34] (the "**DCP 9019 Order**"), and each of the DCP Agreements and the DCP 9019 Order shall remain in full force and effect; *provided, however*, that on and after the Effective Date the rights and obligations of All Year Holdings Common LLC pursuant to such agreements shall vest in Wind-Down Co.

22.     <u>Payment of Statutory Fees</u>.  On the Effective Date and thereafter as may be required, with respect to any Impaired Claims, Wind-Down Co shall make all required filings and pay all fees incurred pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Debtor's case, until such time as a final decree is entered closing the Debtor's case, a Final Order converting the Debtor's case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing the Debtor's case is entered.  With respect to any Unimpaired Claims, the Reorganized Debtor shall make all aforementioned required filings and pay all such fees, if any.

23.    <u>Post-Confirmation Reports</u>.    The Plan Administrator for Wind-Down Co shall be responsible for filing the post-confirmation quarterly reports required under the U.S. Trustee Operating Guidelines for Region 2 and the closing reports required by Local Bankruptcy Rule 3022 for the Debtor.

24.    <u>Exemption from Transfer Taxes</u>.    Pursuant to section 1146 of the Bankruptcy Code, (a) the making or delivery of any instrument of transfer in connection or furtherance of the Plan, and any financing by the Sponsor, (b) the issuance, transfer or exchange of any securities, instruments or documents pursuant to, in implementation of or as contemplated in the Plan and the Plan Investment Agreement, (c) the creation of any Lien, mortgage, deed of trust, or other security interest, (d) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with the Plan Investment Agreement and the Membership Interest Purchase Agreement annexed as Exhibit 3 to the Debtor's *Motion for Order Authorizing the Sale of Debtor's Interest in Ralph & Ralph Properties, LLC, Compromise of Controversy, and Granting Related Relief* [ECF No. 309], (e) all transfers and distributions by Wind-Down Co in furtherance of the Plan, and (f) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, this Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment to the fullest extent provided by law, including, but not limited to: (i)

mortgage recording taxes imposed under Article 11 of the tax law of the State of New York, (ii) the New York Real Estate transfer tax imposed under Article 31 of the Tax Law of the State of New York (including by reason of a change in the equity ownership of the Debtor), (iii) the New York City Real Property transfer tax imposed by title 11, chapter 21 of the New York City Administrative Code (including by reason of a change in the equity ownership of the Debtor) and, (iv) any similar tax on the recording of deeds, transfers or property or ownership interests in property, recording of mortgages or other security instruments imposed by the State of New York, or any political subdivision thereof.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded (including, without limitation, the Register of the City of New York) shall, pursuant to this Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.  All governmental authorities and any other taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect from the Properties, any taxes from which the transactions effectuated pursuant to the Plan and Confirmation Order are exempt, pursuant to and in furtherance of section 1146(a) of the Bankruptcy Code and to the greatest extent provided by law, including but not limited to, New York State Real Estate Transfer Taxes, and any mortgage recording tax, and any penalties, interest, or additions to any tax related thereto.

25.    <u>Documents, Mortgages, and Instruments</u>.    Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

26.     <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>.    Except as

otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation

Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or

any other court, such reversal, stay, modification or vacatur shall not affect the validity or

enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken

by the Debtor, the Reorganized Debtor or Wind-Down Co, as applicable, prior to the effective date

of such reversal, stay, modification, or vacatur.    Notwithstanding any such reversal, stay,

modification, or vacatur of this Confirmation Order, any such act or obligation incurred or

undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of

such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of

this Confirmation Order and the Plan or any amendments or modifications thereto.

27.     <u>Retention of Jurisdiction</u>.    On and after the Effective Date, pursuant to

sections 105 and 1142 of the Bankruptcy Code, this Court shall retain non-exclusive jurisdiction

over all matters arising in, arising under, and related to the Chapter 11 Case, including, without

limitation, any rights, Claims, or Causes of Action held by or accruing to the Debtor, the

Reorganized Debtor, the Plan Administrator, or Wind-Down Co. pursuant to the Bankruptcy Code

or pursuant to any federal statute or legal theory, including, without limitation, Avoidance Actions,

and the other matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

28.     <u>Modifications and Amendments</u>.    Subject to all consent rights of the

Sponsor and the Notes Trustee, respectively, under the Plan Investment Agreement, the Debtor

reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend,

modify, or supplement the Plan after entry of this Confirmation Order, in the manner provided for

by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without

additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan and subject to the reasonable consent of the Notes Trustee and the Sponsor, the Debtor may remedy any defect or omission or reconcile any inconsistencies in the Plan or this Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.  Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement, with the consent of the Notes Trustee and the Sponsor (such consent not to be unreasonably withheld), without further order or approval of the Bankruptcy Court.

29.    <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

30.    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof; <u>provided</u>, <u>however</u>, that corporate or entity governance matters relating to the Debtor or the Reorganized Debtor, shall be governed by the laws of the state of incorporation or organization of the Debtor or Reorganized Debtor.

31.     <u>Applicable Nonbankruptcy Law</u>.  Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable, notwithstanding any otherwise applicable nonbankruptcy law.

32.     <u>Waiver of Filings</u>.  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with this Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the date of this Confirmation Order.

33.     <u>Notice of Entry of Confirmation Order and Occurrence of Effective Date</u>. Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), the Debtor shall cause to be served a combined notice of entry of this Confirmation Order and the occurrence of the Effective Date (the "**Notice of Effective Date**") on all known creditors and interest holders, the U.S. Trustee, and other parties in interest by first-class mail, postage prepaid, as soon as practicable after the occurrence of the Effective Date.  Wind-Down Co shall cause the Notice of Effective Date to be published in *The New York Times* (National Edition) in English and in *Haaretz*, an Israeli newspaper, in Hebrew, with reasonable adjustments and modifications to account for publication limitation, as soon as practicable after the occurrence of the Effective Date.  The notice described herein is adequate under the circumstances, and no other or further notice is necessary.

34.     <u>Substantial Consummation</u>.   On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

35.     <u>Final Order</u>.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

36.    <u>Inconsistency</u>.    To the extent there is any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

37.    <u>Stay of Confirmation</u>.  Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order shall be effective and enforceable immediately upon its entry.

38.    <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

**IT IS SO ORDERED:**

Dated:  January 31, 2023
             New York, New York

                                                            ___ _____**/s/ Martin Glenn**_____
                                                            MARTIN GLENN
                                                            Chief United States Bankruptcy Judge

**<u>Exhibit A</u>**

**Plan**