CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 655-6000
Michael Friedman
David T. B. Audley
Eric S. Silvestri

*Counsel to Assaf Ravid, as Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
|  |  |
|---|---|
| In re | Chapter 11 |
| **ALL YEAR HOLDINGS LIMITED,** | **Case No. 21-12051 (MG)** |
| Debtor. | |

-------------------------------------------------------------X

**DECLARATION OF ASSAF RAVID PURSUANT TO LOCAL BANKRUPTCY RULE
1007-2 IN SUPPORT OF PLAN ADMINISTRATOR'S RESPONSE TO BROOKLYN
METRO'S MOTION FOR ENTRY OF AN ORDER (I) DETERMINING ESCROWED
FUNDS ARE DUE TO PARAGRAPH PARTNERS LLC AND BROOKLYN METRO
HOLDINGS LLC AND (II) GRANTING RELATED RELIEF**

        I, Assaf Ravid, pursuant to section 1746 of title 28 of the United States Code,

hereby declare that the following is true and correct to the best of my knowledge, information, and

belief:[1]

        1.        On December 14, 2021, All Year Holdings Limited (the "**Debtor**") filed its

chapter 11 petition initiating this bankruptcy proceeding (the "**Chapter 11 Case**").  After the

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the *Plan Administrator's Response to Brooklyn Metro's Motion for Entry of an Order (I) Determining Escrowed Funds Are Due to Paragraph Partners LLC and Brooklyn Metro Holdings LLC and (II) Granting Related Relief*, filed contemporaneously herewith.

bankruptcy filing, Paragraph Partners LLC ("**Paragraph**") emerged as a potential plan sponsor for the Debtor's reorganization.  Paragraph then began conducting due diligence on the Debtor, its financial condition, and business operations.

2.      On January 14, 2022, the Debtor sent diligence materials to representatives of Paragraph, which consisted of spreadsheets showing (as of January 31, 2022) the Debtor's aged receivables, open water, open taxes, mechanic's liens and a status of security deposits for the Debtor's subsidiaries.  The email containing such diligence materials is attached hereto as **<u>Exhibit A</u>**.  This data was also included in a data room to which Paragraph had access no later than January 13, 2022.  Following diligence, on March 11, 2022, the Debtor and Paragraph entered into an Investment Agreement (as amended, the "**Investment Agreement**").

3.      Nowhere did the Investment Agreement require the Debtor to pay off or reduce the liabilities of the Transferred Entities.   To the contrary, Paragraph expressly acknowledged and agreed that the "Assets and Liabilities of the Transferred Entities, and the Business, [were] being transferred, directly or indirectly, on a "where-is" and, as to condition, "as-is" basis".  Investment Agreement § 5.10(b).  In addition, the Investment Agreement did not provide for any downward adjustments to the Purchase Price other than contingent reductions in case later diligence revealed that the Debtor owned less than the reported percentage of a Transferred Entity or real property.  *See* Investment Agreement § 2.02 (version executed on March 11, 2022).

4.      After entering into the Investment Agreement, Paragraph reneged on its obligations in the Investment Agreement and refused to commit to closing the transaction.  The Debtor to agree to mediation with Paragraph, following which, the Debtor and Paragraph agreed to resolve all issues between them and agreed to reduce the cash portion of the purchase price by

$2 million and the principal amount of the New Notes by $2 million.  On September 23, 2022,
counsel to the Debtor sent an email, attached hereto as **Exhibit B**, confirming the settlement terms
to Hon. Judge Lisa Beckerman, and copied counsel to Paragraph.

5.    Between the signing of the Investment Agreement and the closing on
March 31, 2023, the Debtor operated its business in the normal course, including after entry of the
Confirmation Order and 9019 Order fixing the purchase price at $43.5 million.

6.    Those business operations included administering the Debtor's subsidiaries,
some of which had liabilities, such as water bills, taxes, or mechanic's liens, others of which did
not.  In keeping with past practices and requests from limited partners, certain subsidiaries issued
distributions to the Debtor and the Debtor's limited partners of such subsidiaries.

7.    Between May 23, 2022 and the closing of the Investment Agreement,
transfers to the Debtor from such subsidiaries totaled $512,000 and dividends to limited partners
totaled $405,000.

8.    Consistent with the Debtor's past practice from and after the appointment
of its restructuring officers, and prior to any distribution from a subsidiary to the Debtor or its
limited partners, the Debtor ensured that each subsidiary had sufficient capital to cover at least one
month's worth of its operating expenses and was able to pay its projected mortgage and tax
payments as they became due.  The calculation of those expenses was based on information
provided from Smart Management, the management company operating the Debtor's subsidiaries.

9.    In November 2022, the Debtor provided updated financials to Paragraph,
which, as with the materials provided in January 2022, included updated spreadsheets showing the
Debtor's aged receivables, open water, open taxes, mechanic's liens and status of security deposits
for the Debtor's subsidiaries.

10.     The financial condition of the Debtor's subsidiaries only improved during the period between the signing of the Investment Agreement and its closing date.  Specifically, all subsidiary liabilities decreased by a gross amount of $1,450,295.43, and the Debtor's responsibility for those liabilities decreased by $724,734.95 over this period, as shown in the spreadsheet prepared by the Debtor's restructuring officers, attached hereto as **Exhibit C**.

11.     In early January, 2023, the Debtor contacted representatives of Signature Bank, the lender and mortgagee under that certain multi-property mortgage loan secured by properties located at 648 Myrtle Avenue, 1361 Greene Avenue and 199 Weirfield Street (the "**Multi-Property Mortgage**") which was scheduled to mature on January 10, 2023.

12.     Despite several attempts to contact Signature Bank by phone and e-mail, the Debtor did not receive any response from Signature Bank until March 9, 2023 when Signature Bank requested certain information regarding the Multi-Property Mortgage, which by that time had long matured.  On March 24, 2023, the Debtor provided Signature Bank with all information responsive to its request including the financials and a rent roll for the properties securing the Multi-Property Mortgage.  The only information not provided to Signature Bank was the collection report, which had never been requested before by Signature Bank, and for which the Debtor needed to verify certain information with Yoel Goldman who had direct contact with the tenants.  The Debtor continued to discuss such request with Yoel Goldman until the closing of the Investment Agreement on March 31, 2023.

13.     Throughout this entire period, Paragraph was well aware that the Multi-Property Mortgage had already matured on January 10, 2023, well before this request was received, and informed the Debtor that it was in direct contact with Yoel Goldman to sell the Multi-Property Mortgage to Yoel Goldman, thereby resolving the issue with Signature Bank.  An email

confirming such sale sent by a representative of Paragraph is attached hereto as **Exhibit E**. Both Paragraph and Yoel Goldman informed the Debtor that they intended to pursue the sale of these properties after the closing of the Investment Agreement.

14.    In accordance with its duties as a debtor in possession and obligations under the Investment Agreement, the Debtor operated its business in the ordinary course and consistent with past practices to minimize liabilities and maximize value.

15.    During the period beginning from the signing of the Investment Agreement through its closing, all subsidiary liabilities decreased by a gross amount of $1,450,295.43, and the Debtor's responsibility for those liabilities decreased by $724,734.95.

16.    Indeed, during the pre-closing period, the total subsidiary liabilities were reduced by over $9 million as a result of the paydown of mortgage loans, and the Debtor's injection of $677,041.00 into the subsidiaries during the period from March 2022 through the closing of the Investment Agreement.

17.    At all times since January 2022, Paragraph was aware of the subsidiaries' liabilities. The subsidiary liabilities were disclosed in January 2022 during diligence. Paragraph also received periodic operating reports and the Debtor provided updates on its finances and operations after that. On March 24, 2023, Paragraph confirmed in writing that it had signed off and approved of the flow of funds in advance of Closing, including the purchase price, and did not indicate that a request for a $3.5 million "adjustment" would be sent three days later. Paragraph's email confirming its sign-off is attached hereto as **Exhibit D**.

18.    Prior to any distribution from a subsidiary, the Debtor ensured that the subsidiary had sufficient capital to cover at least one month's worth of its operating expenses and

was able to pay its projected mortgage and tax payments as they became due, thus continuing to reduce liabilities at the subsidiaries on a monthly basis.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: June 20, 2023
        New York, New York

/s/ *Assaf Ravid*
Assaf Ravid,
Plan Administrator
Former Chief Executive Officer and
Chief Restructuring Officer of All
Year Holdings Limited

**<u>Exhibit A</u>**

**Email from D. Sasson**

**Subject:**    Re: Information request AY

**Date:**    Friday, January 14, 2022 at 8:02:03 AM Eastern Standard Time

**From:**    Daniel Sasson

**To:**    Avi Philipson

**CC:**    Asaf Ravid, Stephen Gorodetsky, Avi Mermelstein, Ephraim

**Attachments:**    AR.xlsx, Rent Roll.xlsx, BVI Subsidiary Report - BVI Recap Properties - 1.12.22 - FINAL.xlsx, Property List - BVI Partners.xlsx

Please find requested items in the link below:

https://www.dropbox.com/sh/iogba2ylmuq5c61/AAB8pjoekcawXeUf8CnIMRGia?dl=0

Thanks,

Daniel Sasson
All Year Holdings


On Thu, Jan 13, 2022 at 4:35 PM Avi Philipson <aphilipson@graphgroup.com> wrote:
> Thanks,
>
> Can we get loan abstracts as well.
>
>
>
> > On Jan 13, 2022, at 3:44 PM, ravidasaf@gmail.com wrote:
> >
> > Daniel/Avi,
> > See below request.
> > Please provide ASAP.
> >
> > Thank you,
> > Asaf
> >
> > -----Original Message-----
> > From: Avi Philipson <aphilipson@graphgroup.com>
> > Sent: Thursday, January 13, 2022 3:43 PM
> > To: Asaf Ravid <ravidasaf@gmail.com>; Stephen Gorodetsky
> > <stephen@whalleycapital.com>
> > Subject: Information request AY
> >
> > Asaf,
> >
> >
> > Can you send the following information:
> >
> > 1) complete property list
> > 2) ownership details for each property (partners, % owned for each partner)
> > 3) most recent loan statements for properties
> > 4) most recent rent rolls with lease expirations
> > 5) aging report

>
>
>

## Exhibit B

**Email from M. Goren**

**Subject:**   AYH - mediation settlement
**Date:**   Friday, September 23, 2022 at 10:32:30 AM Eastern Daylight Time
**From:**   Goren, Matthew
**To:**   beckerman.chambers@nysb.uscourts.gov
**CC:**   Karra Puccia, Aaron M. Krieger, Ira S. Lipsius, Wickouski, Stephanie, Helena Honig, Holtzer, Gary, EvergreenRxWeilAssociates, Amnon Biss, Michael Friedman, Jacob, Shalom
**Attachments:** image001.jpg

**EXTERNAL SENDER**

Good morning, Your Honor.

Below please find a summary of the principal terms of the settlement between and among the Debtor, the Sponsor, and the Notes Trustee, on behalf of the Noteholders, which have been agreed to by counsel for each of those parties and who are copied on this email.  Subject to any further questions from Your Honor, we would anticipate reaching out to Judge Glenn's chambers later today to request a status conference at the Court's earliest convenience to relay the terms of the settlement and to discuss next steps with respect to the Plan and implementation of the settlement.  On behalf of the Debtor and the other parties, we wanted to thank you again for again for Your Honor's time and assistance in helping the parties reach this agreement. We are available should Your Honor have any further questions.

To settle and resolve all current disputes (the "Settlement") between and among the Debtor, the Sponsor, and the Notes Trustee, on behalf of the Noteholders (collectively, the "Parties") relating to the Plan, the Investment Agreement, the MLPSA, and the Parties' respective disputes, claims and obligations thereunder, the Parties agree as follows:

1. The YGWV interests will be Excluded Assets under the Plan and the Investment Agreement and the Debtor has no obligation to include the YGWV interests as part of the Reorganized Debtor or to transfer such interests to the Sponsor.
2. On the Plan Effective Date, the Sponsor shall receive $2.5 million in cash from the MLPSA deposit in full and final settlement and release of all claims arising under or relating to the MLPSA.  The remaining $5.0 million from the MLPSA deposit shall be released to the Notes Trustee, for the benefit of the Series C Noteholders, on the Plan Effective Date in full and final settlement and release of all claims arising under or relating to the MLPSA. Until the foregoing payments are made, all parties' rights and claims under the MLPSA will be reserved and the Israel litigation in respect of the MLPSA will be held in abeyance. Upon receipt of each of the foregoing payments, the Israel litigation in respect of the MLPSA shall be dismissed promptly thereafter.
3. The Sponsor commits to moving forward and closing under the Plan and the Investment Agreement under their current terms with no further adjustments or changes to the terms (other than as set for in Paragraph 4 and 6 below) or the provisions relating to assumed claims and liabilities, including all subsidiary liabilities, under the Plan and the Investment Agreement.
4. The Plan shall be revised to reduce the Sponsor Contribution by $2.0 million in cash and $2.0 million in principal amount of New Notes. The $2 million reduction in the New Notes shall be applied equally to reduce each of the first three scheduled note payments identified on Schedule A to the Form of Promissory Note attached to the Plan (e.g., reduce each of the first three payments by $666,666.67).
5. The Parties agree that the Notes Trustee and the Noteholders shall not have any Class 3 General Unsecured Claims under the Plan.
6. The Parties agree to reasonably extend the applicable deadlines and milestones under the Investment Agreement (approx. 21 days) to allow for the documenting of this settlement, amending of the Plan and Investment Agreement, and voting on the Plan and Investment Agreement.
7. The foregoing Section 2 is subject to a favorable vote by the Series C Bondholders.

8. Except as provided in this Settlement, this agreement shall not constitute a waiver of any Party's rights under the Investment Agreement.

9. This Settlement is based upon the suggestion of the mediator, U.S. Bankruptcy Judge Lisa Beckerman, and that suggestion has been accepted and recommended by counsel for each of the Parties.



**Matthew P. Goren**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
matthew.goren@weil.com
+1 212 310 8440 Direct
+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

**<u>Exhibit C</u>**

**Subsidiary Liabilities**

**AYH Updated Figures 3/28/23**

**Gross Figures**

| Total Open Water | Total Open Taxes(1) | Total AP(2) | Violations(3) | Total Mechanic's Liens(4) | Total Security Deposits | Potential AG Settlement(5) | EIDL Loans(6) | Total Amounts Owed |
|---|---|---|---|---|---|---|---|---|
| $ 98,702.77 | $ 987,895.91 | $ 444,198.53 | $ - | $ 612,754.01 | $ 795,115.52 | $ 450,659.08 | $ 1,054,600.00 | $ 4,443,925.82 |

**AYH's Responsibility**

| Total Open Water | Total Open Taxes(1) | Total AP Owed (2) | Violations(3) | Total Mechanic's Liens(4) | Total Security Deposits | Potential AG Settlement(5) | EIDL Loans(6) | Total Amounts Owed by AYH |
|---|---|---|---|---|---|---|---|---|
| $ 81,393.70 | $ 519,391.62 | $ 286,079.18 | $ - | $ 444,986.41 | $ 586,568.67 | $ 450,659.08 | $ 1,010,500.00 | $ 3,379,578.65 |

**Figures Provided to Philipson Before the Investment Agreement 1/12/22**

**Gross Figures**

| | Total Open Water | Total Open Taxes(1) | Total AP(2) | Violations(3) | Total Mechanic's Liens(4) | Total Security Deposits | Potential AG Settlement(5) | EIDL Loans(6) | Total Amounts Owed |
|---|---|---|---|---|---|---|---|---|---|
| | $ 470,581.44 | $ 1,649,251.77 | $ 696,085.04 | $ - | $ 802,554.01 | $ 1,221,148.99 | $ - | $ 1,054,600.00 | $ 5,894,221.25 |
| AYH Updated Figures | $ 98,702.77 | $ 987,895.91 | $ 444,198.53 | $ - | $ 612,754.01 | $ 795,115.52 | $ 450,659.08 | $ 1,054,600.00 | $ 4,443,925.82 |
| **Difference** | $ 371,878.67 | $ 661,355.86 | $ 251,886.51 | $ - | $ 189,800.00 | $ 426,033.47 | $ (450,659.08) | $ - | $ 1,450,295.43 |

**AYH's Responsibility**

| | Total Open Water | Total Open Taxes(1) | Total AP Owed (2) | Violations(3) | Total Mechanic's Liens(4) | Total Security Deposits | Potential AG Settlement(5) | EIDL Loans(6) | Total Amounts Owed by AYH |
|---|---|---|---|---|---|---|---|---|---|
| | $ 330,965.62 | $ 853,056.93 | $ 458,956.03 | | $ 650,386.41 | $ 800,448.61 | $ - | $ 1,010,500.00 | $ 4,104,313.60 |
| AYH Updated Figures | $ 81,393.70 | $ 519,391.62 | $ 286,079.18 | | $ 444,986.41 | $ 586,568.67 | $ 450,659.08 | $ 1,010,500.00 | $ 3,379,578.65 |
| **Difference** | $ 249,571.93 | $ 333,665.31 | $ 172,876.85 | $ - | $ 205,400.00 | $ 213,879.94 | $ (450,659.08) | $ - | $ 724,734.95 |

**Notes**

(1) All outstanding tax amounts are being paid pursuant to a payment plan.  There is no requirement to have them paid off in full at the moment.  There are approximately 9 years left on each payment plan.
(2) AP consists of fines associated with violations, outstanding legal fees, outstanding broker commissions, oustanding consulting fees and outstanding repair costs.
(3) Fines associated with Violations are already included as part of any AP figure.
(4) Mechanic's Liens amounts are all subject to potential litigation.
(5) The Potential AG Settlement is still subject to negotiation and potential reduction of certain figures.
(6) Per the United States Small Business Administration website, each loan has a term of 30 years at a rate of 3.75%.

**<u>Exhibit D</u>**

**Email from S. Jacob**

Tuesday, June 20, 2023 at 15:36:09 Eastern Daylight Time

**Subject:** FW: Flow of Funds
**Date:** Friday, March 24, 2023 at 12:44:48 PM Eastern Daylight Time
**From:** Goltser, Jonathan
**To:** ravidasaf@gmail.com, ephraim@arbelcapital.com, dsassonaym@gmail.com
**CC:** Goren, Matthew, Kanoff, Justin

AYH team - see below. Paragraph is signed off on the funds flow.

Jonathan Goltser

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Jonathan.Goltser@weil.com
+1 212 310 8161 Direct
+1 212 310 8007 Fax

-----Original Message-----
From: Jacob, Shalom <SJacob@lockelord.com>
Sent: Friday, March 24, 2023 12:39 PM
To: Goltser, Jonathan <Jonathan.Goltser@weil.com>; Goren, Matthew <matthew.goren@weil.com>
Cc: Katz, Alan <akatz@lockelord.com>
Subject: Flow of Funds

I have been told our clients don't see any problem with it

Shalom Jacob
Locke Lord LLP
3 World Financial Center
New York NY 10281
212-415-8618
[http://images.lockelord.net//Locke_Lord_SQ_Logo_RGB_web.png]<http://images.lockelord.net/>

_____

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles |
Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm
Beach

For more information, including our privacy notices and policies, visit
www.lockelord.com<http://www.lockelord.com>

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or
exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any
dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by
accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or

monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

_____

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

**<u>Exhibit E</u>**

**Email from Graph Group.**

**Subject:** FW: FW: Goldman Building Sales
**Date:** Tuesday, June 20, 2023 at 4:07:44 PM Eastern Daylight Time
**From:** Helena Honig


---------- Forwarded message ---------
From: <ravidasaf@gmail.com>
Date: Mon, Jan 30, 2023 at 14:23
Subject: FW: Goldman Building Sales
To: <ephraim@arbelcapital.com>
CC: Daniel Sasson <dsassonaym@gmail.com>

---

**From:** Joseph Lehmann <jlehmann@graphgroup.com>
**Sent:** Monday, January 30, 2023 2:15 PM
**To:** Asaf Ravid <ravidasaf@gmail.com>; Stephen Gorodetsky <stephen@whalleycapital.com>; Avi Philipson <aphilipson@graphgroup.com>; Abe Greenhut <abe@greenrockfunding.com>
**Subject:** Goldman Building Sales

Asaf,

We approved the sale of the below buildings to Goldman, for $600,000.

- 1361 Greene Ave
- 199 Weirfield St
- 648 Myrtle Ave
- 3609 15th Ave

Please let me know if you need anything else from us.

Thank you.

--

**Joey Lehmann**
Director

270 Sylvan Avenue, Suite 2255
Englewood Cliffs, New Jersey 07632
T: 212.235.1231 Ext.1127 | F: 646.559.3800
jlehmann@graphgroup.com


--
Thanks,

Daniel Sasson
All Year Holdings